1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:  (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

| | |
|---|---|
| 12 VERIGY US, INC, a Delaware Corporation, | Case No. |
| 13        Plaintiff, | **COMPLAINT FOR:** |
| | **(1) BREACH OF WRITTEN CONTRACT;** |
| 14     vs. | **(2) MISAPPROPRIATION OF TRADE** |
| | **SECRETS; (3) COMPUTER FRAUD AND** |
| 15 ROMI OMAR MAYDER, an individual; | **ABUSE ACT; (4) ELECTRONIC** |
| WESLEY MAYDER, an individual; SILICON | **COMMUNICATIONS PRIVACY ACT** |
| 16 TEST SYSTEMS, INC., a California Corporation; | **(TITLE II); (5) UNAUTHORIZED ACCESS** |
| and SILICON TEST SOLUTIONS, LLC, a | **TO COMPUTERS, COMPUTER SYSTEMS** |
| 17 California Limited Liability Corporation, | **AND COMPUTER DATA; (6) UNFAIR** |
| inclusive, | **COMPETITION UNDER BUS. & PROF.** |
| 18 | **CODE § 172000 ET SEQ.; (7) COMMON** |
|        Defendants. | **LAW UNFAIR COMPETITION; (8)** |
| 19 | **BREACH OF DUTY OF LOYALTY; (9)** |
| | **VIOLATION OF LANHAM ACT; (10)** |
| 20 | **FALSE ADVERTISING; (11)** |
| | **INTENTIONAL INTERFERENCE WITH** |
| 21 | **PROSPECTIVE ECONOMIC** |
| | **ADVANTAGE; (12) DECLARATORY** |
| 22 | **RELIEF; (13) IMPOSITION OF** |
| | **CONSTRUCTIVE TRUST; (14) UNJUST** |
| 23 | **ENRICHMENT** |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |
| 26 | Complaint Filed: |
| | Trial Date:     None Set |
| 27 | |
| 28 | |

1    Plaintiff Verigy US, Inc. ("Verigy" or "plaintiff"), for its Complaint against Defendants

2    Silicon Test System, Inc. and Silicon Test Solutions, LLC (collectively, the "STS Entities"), Romi

3    Omar Mayder ("Mayder"), and Wesley Mayder (collectively, "defendants"), alleges as follows:

4    **NATURE OF THE ACTION**

5    1.    This action arises out of Mayder's breach of contract and defendants' wrongful

6    misappropriation of electronically stored documents, valuable trade secrets and proprietary

7    information from Verigy.  Unless defendants are enjoined from continuing their wrongful

8    activities, Verigy will likely suffer irreparable injury to its business for which pecuniary damages

9    do not provide an adequate remedy.

10    **THE PARTIES**

11    2.    Verigy is a corporation duly organized and existing under the laws of the state of

12    Delaware with its principal place of business at 10100 N. Tantau Avenue, Cupertino, California,

13    95014.  Verigy designs, develops, manufactures and sells advanced test systems and solutions for

14    the semiconductor industry.  Verigy is a spin-off from Agilent Technologies, Inc. ("Agilent") and

15    successor-in-interest to certain of Agilent's intellectual property.  Agilent is a spin-off from

16    Hewlett Packard Company ("HP") and successor-in-interest to certain of HP's intellectual

17    property.

18    3.    Verigy is informed and believes, and on that basis alleges, that Mayder is an

19    individual residing at 1331 Sierra Avenue, San Jose, California.

20    4.    Verigy is informed and believes that Wesley Mayder is an individual residing at

21    19171 Oahu Lane, Saratoga, California.  Verigy is informed and believes, and on that basis

22    alleges, that Romi Omar Mayder and Wesley Mayder (collectively the "Mayders") are brothers

23    and are engaged in business together.

24    5.    Verigy is informed and believes, and on that basis alleges, that Silicon Test Systems,

25    Inc. is a corporation duly operating and existing under the laws of California with its principal

26    place of business located at 3031 Tisch Way, Suite 309, San Jose, California.

27    6.    Verigy is informed and believes, and on that basis alleges, that Silicon Test

28    Solutions, LLC. is a limited liability corporation duly operating and existing under the laws of

1

1    California, wholly owned by the Mayders, with its principal place of business located at 1331

2    Sierra Avenue, San Jose, California.

3         7.    Verigy is informed and believes, and on that basis alleges, that except where

4    otherwise explicitly alleged, each of the defendants, inclusive, is, and at all relevant times herein

5    mentioned was, the agent, partner, joint venturer, employee, alter ego, and/or conspirator of the

6    remaining defendants, and is, and at all relevant times herein mentioned was, in performing and

7    failing to perform the acts and conduct hereinafter alleged, acting within the course and scope of

8    such agency, partnership, joint venture, employment, and/or conspiracy.  Verigy is further

9    informed and believes, and on that basis alleges, that the acts and conduct of each of the

10   defendants were known to, and authorized and ratified by, the remaining defendants, and that each

11   of the defendants is legally responsible for the conduct and damages herein alleged.

## JURISDICTION AND VENUE

13        8.    Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction under the

14   Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701 *et seq.*, the Computer Fraud

15   and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, and the Lanham Act, 15 U.S.C. § 1125(a).

16   The Court has supplemental jurisdiction over Verigy's related claims for relief arising under

17   California law pursuant to 28 U.S.C. § 1367(a).

18        9.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of

19   the events that gave rise to Verigy's claims took place within the District, defendants' tortious

20   conduct was directed at this District, Verigy was injured by defendants' tortious conduct in this

21   District, and, upon information and belief, defendants reside in this District.

## INTRADISTRICT ASSIGNMENT

23        10.   Intradistrict assignment, pursuant to Local Rule 3-2(c), is proper in the San Jose

24   division, as at least a substantial part of the events or omissions which give rise to the claims

25   occurred in Santa Clara County, and, upon information and belief, Defendants reside in Santa

26   Clara County.

27

28

VERIGY US, INC.'S COMPLAINT

# FACTUAL ALLEGATIONS

## Mayder's Employment

11.    Verigy designs, develops, manufactures and sells advanced test systems and solutions for the semiconductor industry.  Due to the different architectures and functionalities of semiconductors, semiconductor test equipment and services are generally categorized by the type of semiconductors tested. The two general categories are: 1) equipment used to test memory semiconductors, referred to as memory testing; and 2) equipment used to test non-memory semiconductors, which includes testers for testing less complex, discrete semiconductors, and testers designed to test very complex, highly integrated semiconductors commonly referred to as System-on-a-Chip ("SOC"), or System-in-a-Package ("SIP").

12.    Verigy offers a single platform for each of the two general categories of devices being tested: 1) Verigy's 93000 Series platform, designed to test SOC, SIP and high-speed memory devices, and 2) Verigy's Versatest V5000 Series platform, designed to test memory devices, including flash memory and multi-chip memory packages.  As part of Verigy's single scalable platform strategy, Verigy develops and offers performance and capability enhancements to its platforms as part of its product development roadmap.  Verigy also provides a range of services that assist its customers in quickly and cost effectively delivering the innovative, feature-rich products demanded by the end users.

13.    Mayder was employed by Verigy as a Research and Development Engineer in the Memory Test Division from June 1, 2006 until September 22, 2006 and by HP and Agilent, Verigy's predecessors-in-interest, from June 15, 1998 until Verigy was founded and spun off from Agilent on May 31, 2006.

14.    One project that Mayder worked on at Verigy (referred to in this Complaint as the "Verigy Project" to preserve secrecy) involved research and development using technology to increase the parallelism of Verigy's testers.

## Verigy's Confidential and Proprietary Information and Trade Secrets

15.    As a condition of his employment with Verigy, Mayder was required to sign, and did sign, an Agreement Regarding Confidential Information and Proprietary Developments (the

3

"ARCIPD"). Attached hereto as Exhibit A is a true and correct copy of the ARCIPD signed by

Mayder. The ARCIPD contains the following provisions pertinent to this action:

1.      This Agreement concerns trade secrets, confidential business and technical information, and know-how not generally known to the public which will become known to or acquired or produced by me in connection with my employment by Verigy (hereinafter "Confidential Information.")    Confidential Information includes, without limitation, information on Verigy organizations and structure; staffing; finance; strategic plans; information on employee performance, compensation, assignments; information on research and development, manufacturing and marketing; as well as information which Verigy receives from third parties under an obligation of confidentiality. Confidential Information also includes information of the foregoing types that I received during any period of employment with Agilent Technologies, Inc., whether such information relates to Agilent or is or was received from third parties under an obligation of confidentiality.  I agree: (a) to use such Confidential Information only in the performance of Verigy duties; (b) to hold such Confidential Information in confidence and trust; and (c) to use all reasonable precautions to ensure that such Confidential Information is not disclosed to unauthorized persons or used in an unauthorized manner, both during and after my employment with Verigy.

2.      This Agreement also concerns inventions or discoveries (whether or not patentable) designs, works of authorship, mask works, improvements, data, processes, computer programs and software (herein called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by Verigy or that relate to the research and development or the business of Verigy.  Such Proprietary Developments are the sole property of Verigy, and I agree: (a) to disclose them promptly to Verigy; (b) to assign them to Verigy; and (c) to execute all documents and cooperate with Verigy in all necessary activities to obtain patent, copyright, mask works and/or trade secret protection in all countries, at Verigy US, Inc.'s expense.

3.      The product of all work performed by me during and within the scope of my Verigy employment including, without limitation, any reports, documents drawings, computer programs, devices and models, including all copies thereof, will be the property of Verigy and Verigy will have the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such a work product.

4.      I will not remove any Verigy property from Verigy premises without Verigy US, Inc.'s permission

5.      Upon termination of my employment with Verigy, I will return all Verigy property to Verigy unless Verigy authorizes me in writing to retain such property.

(ARCIPD, Ex. A.)

16.   Verigy has developed the proprietary and trade secret methods, technologies, operations and strategies related to its memory test business and other business operations (Verigy's "Trade Secrets") at substantial effort and expense.  Verigy has acquired and/or developed the Trade Secrets as a result of significant expenditures on research and development, testing, analysis, business planning, market research, customer and supplier relationships, procurement processes and others.

17.   While Mayder was employed by Verigy and Verigy's predecessors-in-interest, he was responsible for several research and development projects for the creation of new products to improve and advance Verigy's silicon chip testing systems, including the Verigy Project.  During each of these projects Mayder had access to Verigy's Confidential Information and Trade Secrets relating to his projects as well as other projects being developed by other employees.  In addition, Mayder had Confidential Information and Trade Secrets regarding Verigy's business relationship with third parties including Verigy's past, present, and prospective component suppliers and customers.  Mayder also had Confidential Information and Trade Secrets compiled from third-party customers that would likely be considered their proprietary and confidential materials and that was only shared with Verigy pursuant to a non-disclosure agreement.  Mayder also had Confidential Information and Trade Secrets relating to Verigy's product strategy; forecasted business demand; actual product consumption; business processes and tools; product technology roadmaps; product features and performance; product architecture; product development schedules; qualification processes and results; contract manufacturer agreements and business relationship; and future manufacturing strategies.

18.   Verigy's Trade Secrets are valuable to Verigy because they are not generally known to Verigy's competitors and are not readily available to the public.  Verigy derives substantial economic value from its Trade Secrets not being generally known to the public or its competitors, who could obtain economic value from their unauthorized disclosure or use.

19.   Because its Trade Secrets, Confidential Information and Proprietary Developments are so valuable, Agilent, until the sale of its intellectual property to Verigy, and Verigy, since the purchase of the intellectual property, have taken reasonable and appropriate measures to protect

1    such information. For example, all Verigy employees, consultants and contractors are required to

2    sign the ARCIPD; all customers, vendors and suppliers are required to sign a non-disclosure

3    agreement; access to all of Verigy's offices is restricted and all employees must have a keycard to

4    proceed past the public lobby in Verigy's buildings; all visitors to all of Verigy's offices must sign

5    into and out of a log and be escorted by a Verigy employee while on the premises; technical

6    documents such as project data sheets and customer requirements are protected on the computer

7    system and only authorized users can access them; and confidential documents sent to third parties

8    are customarily marked "confidential." In addition, the existence and importance of Verigy's

9    Trade Secrets, Confidential Information and Proprietary Developments is addressed and

10   emphasized with new employees in connection with their joining Verigy and again at exit

11   interviews.

12        **Mayder's Theft of Trade Secrets and Establishment of Silicon Test Solutions**

13        20.    In or about June, 2006, while Mayder was still employed by Verigy, the domain

14   name "silicontest.com" was registered with Network Solutions, an on-line registration service for

15   domain names, on behalf of Mayder. The administrator's name for the website is Romi Mayder.

16        21.    Verigy is informed and believes, and on that basis alleges, that Mayder began

17   seeking investors for his competing venture in or about early June 2006. At 1:24 p.m. on Monday,

18   June 12, 2006, during his workday at Verigy, Mayder sent an email to a third party potential

19   investor (the "Potential Investor") without benefit of a confidentiality or non-disclosure agreement

20   ("NDA") from his account at romi.mayder@yahoo.com. The document attached to the email

21   contains Verigy Trade Secrets and indicates in the document properties that it was created at

22   Agilent Technologies. The document is virtually identical to a document created by Mayder at

23   Verigy for the Verigy Project.

24        22.    Verigy is informed and believes, and on that basis alleges, that on or before June 12,

25   2006, Mayder contacted a third party component supplier on behalf of the STS entities to get a

26   quote for a device (the "STS Device") that was virtually identical to the device he was

27   simultaneously developing at Verigy as part of his duties at Verigy on the Verigy Project.

28

23.   Verigy is informed and believes, and on that basis alleges, that at 11:39 a.m. on Wednesday, June 14, 2006, during his workday at Verigy, Mayder sent an email to the Potential Investor, again with the benefit of an NDA, enclosing a document he claimed was the a request for quotation ("RFQ") for the STS Device. Verigy is informed and believes, and on that basis alleges, that this RFQ contained Verigy's Confidential Information and Trade Secrets and was in fact almost identical to Trade Secret documents Mayder worked on at Verigy for the Verigy Project. The documents are so similar that they share typographical errors. Further, Mayder's RFQ contains references to Verigy within the document that he neglected to remove before sending the supposed STS document to the third party component supplier's representative. The document properties of the RFQ show that it was not created by Mayder but by another Verigy employee.

24.   Verigy is informed and believes, and on that basis alleges, that on or about Tuesday, June 20, 2006, Mayder contacted a representative for another third party component supplier on behalf of the STS entities and sent them a request for quotation ("RFQ") for the STS Device, again without benefit of an NDA. This document was also sent to the Potential Investor without benefit of an NDA. This RFQ appears to be an update of the RFQ sent to the Potential Investor on June 14, 2006, containing the same typographical errors as the June 14, 2006 RFQ. Mayder sent the document as an attachment to an email at 9:43 a.m., during Mayder's workday at Verigy.

25.   On Monday, June 26, 2006, Mayder shared documents concerning Verigy—and prospective STS—customer requirements as well as block diagrams of the customers'/prospective customers' device requirements for with the Potential Investor, again without benefit of an NDA. These documents appear to be identical to Confidential Information and Trade Secret documents created at Verigy. One of the documents, an excel spreadsheet, contains the same typographical errors as the original Verigy documents and the document properties shows that the document was not created by Mayder but by another Verigy employee.

26.   On July 9, 2006, Mayder shared a number of documents containing Verigy Confidential Information and Trade Secrets with the Potential Investor without benefit of a NDA, including a powerpoint presentation, an excel spreadsheet and a technical data sheet describing the

1     STS Device. Verigy is informed and believes, and thereon alleges, that Mayder later shared this

2     information or similar information with Verigy customers Intel, Micron, Spansion and Sandisk.

3        27.    On August 27, 2006, Mayder sent a draft patent application containing Verigy

4     Confidential Information and Trade Secrets to the Potential Investor without benefit of a NDA.

5     This document is still marked "Memory Test Division," the Verigy division that Mayder worked

6     in. This document appears to incorporate the technical specifications and designs and/or very

7     similar technical specifications and designs to those Mayder developed at Verigy during the

8     Verigy Project.

9        28.    On September 8, 2006, prior to Mayder's resignation from Verigy, Silicon Test

10     Solutions, LLC was registered with the Secretary of State of California.

11        29.    On September 20, 2006, as part of his ongoing negotiations with a third party

12     component supplier to manufacture the STS Device containing Verigy's Confidential Information

13     and Trade Secrets, Mayder asked the Potential Investor to ensure that the NDA they were

14     negotiating with a component supplier be changed to have an effective date of October 1, 2006

15     instead of September 13, 2006, as Mayder was still employed by Verigy on September 13, 2006,

16     the date apparently reflected in the draft NDA with the component supplier.

17        30.    Mayder resigned from his employment with Verigy effective September 22, 2006.

18     Verigy conducted an exit interview on September 20, 2006. As part of the exit interview, Mayder

19     was reminded of his continuing obligations to Verigy.

20        31.    On September 24, 2006, Mayder sent an email to the Potential Investor regarding a

21     meeting the next day with patent counsel to file a provisional patent for the STS Device. In the

22     email, Mayder asks the Potential Investor to tell the patent counsel that the author of the patent

23     disclosure was the Potential Investor and not Mayder. In fact, Verigy is informed and believes,

24     and on that basis alleges, that the patent disclosure presented to Mayder's patent counsel was

25     written by Mayder while he was employed at Verigy.

26        32.    Verigy is informed and believes, and on that basis alleges, that on or about

27     September 28, 2006, defendants caused a provisional patent application containing Verigy's Trade

28

Secrets and Confidential Information to be filed with the United States Patent and Trademark Office.

33.    Verigy is informed and believes, and on that basis alleges, that in or about December, 2006, defendants caused a provisional utility patent application containing Verigy's Confidential Information and Trade that claims priority to the provisional patent application filed on or about September 28, 2006.

### FIRST CAUSE OF ACTION
**(Breach of Written Contract Against Mayder)**

34.    Verigy realleges paragraphs 1-32 above as if fully set forth herein.

35.    Upon joining Verigy, Mayder was required to sign, and did sign, the ARCIPD. Pursuant to the ARCIPD, Mayder agreed not to use or disclose Verigy's Confidential Information as defined in the ARCIPD.  Moreover, pursuant to the ARCIPD, Mayder agreed to assign to Verigy all Inventions, conceived by him while employed at Verigy, as defined in the ARCIPD.

36.    The ARCIPD was supported by consideration and was a material inducement for Verigy to agree to employ and/or continue to employ Mayder and pay compensation to him.

37.    Verigy performed all conditions and covenants required to be performed by it pursuant to the ARCIPD with Mayder, save and except those excused by the acts and omissions of Mayder.

38.    Mayder has materially breached his contract with Verigy by, *inter alia,* using and disclosing Verigy's Trade Secrets, Confidential Information and/or Proprietary Developments; removing Verigy's Trade Secrets, Confidential Information and/or Proprietary Developments from Verigy's premises without permission; failing to return Verigy's Trade Secrets, Confidential Information and/or Proprietary Developments upon termination of employment; competing with Verigy during employment; and failing to assign his right, title and interest to any inventions conceived by him during his employment at Verigy.

39.   As a result of Mayder's continuing breach of the ARCIPD, Verigy has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law, thus entitling Verigy to injunctive relief.

40.   As a proximate result of the conduct alleged above, Verigy has been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Misappropriation of Trade Secrets Against All Defendants )
(California Civil Code § 3426 et seq.)

41.   Verigy realleges paragraphs 1-40 above as if fully set forth herein.

42.   Verigy's Trade Secrets as described herein are trade secrets as defined by the California Uniform Trade Secrets Act, California Civil Code Section 3426 *et seq.* (the "UTSA"). Verigy has taken reasonable efforts under the circumstances to preserve the confidentiality of its trade secrets, and this information derives economic value from not being generally known.

43.   Verigy is informed and believes and on that basis alleges that defendants have acquired Verigy's trade secret information by improper means, including, without limitation, theft and breach of duty to maintain secrecy.  Such acts constitute misappropriation under the UTSA.

44.   Verigy is informed and believes and on that basis alleges that defendants have misappropriated Verigy's trade secret information as described herein, and are presently using Verigy's trade secret information in connection with their own business activities, and not on behalf of Verigy, without Verigy's express or implied consent authorization or authority.  Such acts constitute misappropriation of trade secrets under the UTSA.

45.   Verigy is informed and believes, and on that basis alleges that defendants have either misappropriated or threatened to misappropriate, have either used or threatened to use, and have either disclosed or threatened to disclose Verigy's trade secret information.

46.   The conduct of defendants has caused, and will continue to cause, irreparable harm to Verigy.  Unless and until enjoined, defendants will continue to receive the benefit of the Trade Secrets misappropriated from Verigy, which have aided and will continue to aid defendants to compete unfairly against Verigy.  Moreover, defendants will continue to expand their business, solicit customers of Verigy and disclose Verigy's Trade Secrets to third parties.  Verigy will

1  forever lose the value of its significant investment of time and money in its Trade Secrets.

2  Verigy's competitive position, based upon its valuable knowledge, access to and use of its Trade

3  Secrets, will be irretrievably lost.  Further, Defendants will be unjustly enriched in an amount that

4  is separate and distinct from Verigy's damages.

5      47.    Verigy is informed and believes, and on that basis alleges that Defendants have

6  wrongfully acquired gains resulting from the conduct described in this Complaint, and accepted

7  such gains with the knowledge that the gains came from such conduct.  Thus, Defendants hold that

8  wrongfully acquired gains in constructive trust for the benefit of Verigy, and Verigy is entitled to

9  an accounting of those gains.

10      48.    As a proximate result of the actual and threatened misappropriation of Verigy's trade

11  secrets by defendants, Verigy has been damaged in that defendants have and will continue to

12  receive the benefits of the trade secrets, which have aided and continue to aid defendants to

13  compete unfairly against Verigy, and Verigy will suffer the loss of revenues from sale of its

14  products and services.  Verigy is entitled to actual damages or royalties.

15      49.    Verigy is informed and believes and on that basis alleges that in misappropriating

16  Verigy's Trade Secrets, and engaging in the willful and malicious conduct and omissions alleged

17  herein, defendants are guilty of oppression, fraud and malice.  Verigy is therefore entitled to

18  exemplary or punitive damages and attorneys' fees.

19                           **THIRD CLAIM FOR RELIEF**
                             **Computer Fraud and Abuse Act**
20                                (18 U.S.C. § 1030)
                              (Against All Defendants)
21

22      50.    Verigy realleges paragraphs 1-49 above as if fully set forth herein.

23      51.    Verigy's computers are used in interstate and/or foreign commerce or

24  communication.

25      52.    Verigy is informed and believes and thereon alleges that defendants knowingly and

26  with intent to defraud accessed Verigy's protected computers without authorization and/or

27  exceeded their authorized access and so furthered their intended fraud and obtained Verigy's

28  valuable confidential and proprietary information, all in violation of the CFAA, 18 U.S.C. §1030.

53.   Verigy is informed and believes and thereon alleges that defendants knowingly and intentionally accessed Verigy's protected computers without authorization and purposely caused Verigy damage by collecting and disseminating confidential and proprietary information in violation of 18 U.S.C. § 1030.

54.   Defendants' damage and illegal misuse of Verigy's protected computers caused Verigy to suffer a loss greater than $5,000 in value during a one year period, in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### Electronic Communications Privacy Act (Title II)
(18 U.S.C. § 2701 *et seq.*)
(Against All Defendants)

55.   Verigy realleges paragraphs 1-54 above as if fully set forth herein.

56.   Verigy's confidential and proprietary electronic communications are not readily accessible to the general public and are transferred by a system that affects interstate or foreign commerce.

57.   Verigy is informed and believes and thereon alleges that defendants intentionally accessed, intercepted, disclosed and endeavored to disclose without authorization, or by intentionally exceeding an authorization to access, Verigy's confidential and proprietary electronic communications, and thereby obtained unauthorized access to a wire or electronic communication while it was in electronic storage, all in violation of 18 U.S.C. section 2701 *et seq.*

58.   Verigy is informed and believes and thereon alleges that defendants used or endeavored to use without authorization or by intentionally exceeding authorization Verigy's confidential and proprietary electronic communications, while knowing or having reason to know that the information was obtained through interception of electronic communications in violation of the ECPA, 18 U.S.C. § 2511.

59.   Verigy is entitled to an injunction restraining defendants and all persons acting in concert with them from engaging in further such acts in violation of the Electronic Communications Privacy Act.

60.   Verigy is further entitled to recover from defendants the damages it has sustained and

1  will sustain as a result of defendants' wrongful acts as alleged above. Verigy is entitled to actual

2  damages plus any profits made by defendants as a result of the violation or statutory damages of

3  $10,000. Verigy is further entitled to punitive damages under 18 U.S.C. § 2520(b) due to

4  defendants' oppressive, malicious and reckless conduct.

5      61.    Defendants are entitled to attorneys' fees and litigation costs pursuant to 18 U.S.C. §

6  2520 (b)(3).

7                        **FIFTH CLAIM FOR RELIEF**
                  **Unauthorized Access To Computers, Computer Systems**
8                             **And Computer Data**
                         (California Penal Code §502)
9                           (Against All Defendants)

10     62.    Verigy realleges paragraphs 1-61 above as if fully set forth herein.

11     63.    Verigy is informed and believes, and on that basis alleges, that by the acts alleged in

12  the preceding paragraphs, defendants knowingly accessed and without permission used data,

13  computers, computer systems and/or a computer network in order to devise and/or execute a

14  scheme or artifice to defraud, deceive or extort, and/or to wrongfully control or obtain money,

15  property or data from Verigy, in violation of California Penal Code § 502.

16     64.    Verigy is informed and believes, and on that basis alleges, that by the acts alleged in

17  the preceding paragraphs, defendants knowingly accessed and without permission took, copied

18  and/or made use of data from a computer, computer system and/or a computer network owned by

19  Verigy, in violation of California Penal Code § 502.

20     65.    Verigy has suffered damage and loss as a result of defendants' violations of Penal

21  Code § 502. Verigy is entitled to recover from defendants for the actual damages sustained by

22  Verigy as a result of defendants' wrongful acts as described in this Complaint, in an amount to be

23  proven at trial.

24     66.    Verigy is entitled to injunctive relief under Penal Code § 502.

25     67.    Verigy is informed and believes and on that basis alleges that defendants acted with

26  oppression, malice, and fraud. Verigy is therefore entitled to an award of punitive damages.

27     68.    Verigy is entitled to an award of attorneys' fees under Penal Code § 502.

28                        **SIXTH CAUSE OF ACTION**

**(Unfair Competition Under Bus. & Prof. Code § 17200 *et seq.*
Against All Defendants)**

69.     Verigy realleges paragraphs 1-68 above as if fully set forth herein.

70.     Verigy is informed and believes, and on that basis alleges, that Defendants' wrongful conduct as set forth in the Complaint constitutes statutory unfair competition under California Business & Professions Code Sections 17200 *et seq.* ("Section 17200").

71.     These acts and practices, as described in the preceding paragraphs, are unlawful and unfair in violation of Section 17200.

72.     Verigy is informed and believes, and on that basis alleges, that defendants threaten and propose to perform further acts of unfair competition and that, unless and until restrained by appropriate injunctive relief, Verigy will continue to suffer irreparable harm for which there is no adequate remedy at law.

73.     As a direct and proximate cause of defendants' unfair competition, defendants have been unjustly enriched as Verigy's expense in an amount not yet ascertained.  Verigy is entitled to an accounting and restitution from defendants in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
**(Common Law Unfair Competition Against All Defendants)**

74.     Verigy realleges paragraphs 1-73 above as if fully set forth herein.

75.     Verigy is informed and believes, and on that basis alleges, that defendants' conduct as set forth in this Complaint constitutes unfair competition under the common law of the state of California.

76.     Unless defendants are restrained by appropriate injunctive relief, Verigy will suffer immediate and irreparable harm for which there is no remedy at law.

77.     Verigy is informed and believes, and on that basis alleges that Defendants have wrongfully acquired gains resulting from the conduct described in this Complaint, and accepted such gains with the knowledge that the gains came from such conduct. Thus, Defendants hold the wrongfully acquired gains in constructive trust for the benefit of Verigy, and Verigy is entitled to an accounting of those gains

78.   As a proximate result of defendants' conduct, Verigy has been damaged in an amount according to proof at trial.

79.   Verigy is informed and believes and on that basis alleges that defendants' unfair competition was willful, oppressive and malicious conduct and that defendants are guilty of oppression, fraud and malice.   Verigy is therefore entitled to exemplary or punitive damages

## EIGHTH CAUSE OF ACTION
### (Breach of Duty of Loyalty Against Mayder)

80.   Verigy realleges paragraphs 1-79 above as if fully set forth herein.

81.   As an employee of Verigy, Mayder at all times owed Verigy a duty of loyalty, pursuant to which Mayder was bound at all times to give preference to the business of Verigy, not to do anything which would cause Verigy harm, to disclose to Verigy all material information concerning its business, and to perform his duties to and exclusively for the benefit of Verigy.

82.   By engaging in the acts set forth in the Complaint, Mayder breached his duty of loyalty.

83.   As a result of Mayder's breach of the duty of loyalty, Verigy has been damaged in an amount to be proven at trial.

84.   Verigy is informed and believes and on that basis alleges that Mayder's breach of the duty of loyalty was willful, malicious, oppressive and fraudulent, justifying an award of punitive damages.

## NINTH CLAIM FOR RELIEF
### Violation of Lanham Act
### (15 U.S.C. § 1125(a))
### (Against all Defendants)

85.   Verigy realleges paragraphs 1-84 above as if fully set forth herein.

86.   By their actions set forth above, defendants have violated and are violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).   Upon information and belief, defendants have falsely designated themselves as the source of origin of the Verigy Project which is incorporated, in whole or in part, within the STS Device.   That false designation of origin and false description

1    of fact is likely to cause confusion, or to cause mistake, or to deceive customers as to the origin of

2    the STS Device.  Defendants further make the false and misleading statement on the STS Entities'

3    website at www.silicontests.com that "We have invented a new paradigm for substantially

4    increasing parallelism of ATE test cells."

5         87.    Defendants' advertising includes, but is not limited to, the STS Entities' web page at

6    www.silicontests.com, and upon information and belief, Mayder's correspondence and

7    presentations to Touchdown Technologies, Intel, Micron, Spansion and Sandisk.  Upon

8    information and belief, these advertisements contain false and misleading representations and

9    statements of fact concerning the origin of the STS Device and other false and misleading

10   statements concerning Verigy and its products, in violation of § 43(a) of the Lanham Act, 15

11   U.S.C. § 1125 (a).

12        88.    Defendants' public statements actually deceived or have the tendency to deceive a

13   substantial segment of the audience for which they were intended.

14        89.    Defendants' public statements were made in interstate commerce, and the STS

15   Entities have made the STS Device available in interstate commerce by publicly advertising it on

16   the Internet at www.silicontests.com.

17        90.    The deception resulting from these statements is material, in that they are very likely

18   to influence the purchasing decisions of customers.

19        91.    Verigy has been, or is likely to be, injured as a result of defendants'

20   misrepresentations either by direct diversion of contracts from itself to the STS Entities or other

21   competitors, or by the lessening of the good will which Verigy and its memory test products enjoy

22   in the marketplace.

23        92.    Verigy is informed and believes and thereon alleges that defendants acted in bad faith

24   by disseminating said false or misleading statements.

25        93.    Upon information and belief, customers of Verigy have relied on defendants' false

26   advertising and such reliance has economically impacted Verigy's business.

27        94.    As a proximate result of said false statements and false designation, Verigy has

28   suffered or will suffer damages in an amount to be determined at trial.

95.   Verigy is entitled to recover from defendants the damages sustained by it as a result of defendants' wrongful acts as alleged in this Complaint.   Verigy is further entitled to recover from defendants the gains, profits, and advantages they have obtained as a result of their wrongful acts as alleged in this Complaint.   Verigy is at present unable to ascertain the full extent of these gains, profits, and advantages.   Verigy is further entitled to treble damages as a result of defendants' willful bad faith.

96.   Verigy is entitled to an injunction restraining defendants, their officers, agents, employees, and all persons acting in concert with them, from engaging in further unlawful acts and from reaping any additional commercial advantage from their false representations and false designation of the origin of the STS Device.

97.   Verigy is informed and believes and on that basis alleges that Mayder's breach of the Lanham Act was willful, malicious, oppressive and fraudulent, justifying an award of attorneys' fees.

### TENTH CLAIM FOR RELIEF
#### False Advertising
(California Business and Professions Code § 17500)
(Against all Defendants)

98.   Verigy realleges paragraphs 1-97 above as if fully set forth herein.

99.   By their actions set forth above, defendants have violated and are violating Section 17500 of the California Business and Professions Code ("Section 17500").   Upon information and belief, the STS Entities have falsely designated themselves as the source of origin of the Verigy Project incorporated, in whole or in part, within the STS Device.   That false designation of origin is untrue and misleading.

100.   Defendants' repeated public statements and advertisements includes but is not limited to the STS Entities' web page at www.silicontests.com, and upon information and belief, Mayder's correspondence and presentations to Touchdown Technologies, Intel, Micron, Spansion and Sandisk.   Upon information and belief, these advertisements contain false and misleading representations and statements of fact concerning the origin of the STS Device and other false and misleading statements concerning Verigy and its products, in violation of in violation of Section

1    17500.

2    101. Verigy is informed and believes and thereon alleges that defendants knew, or should

3    have known, that the public statements and advertisements were misleading and untrue.

4    102. Verigy has been, or is likely to be, injured as a result of defendants'

5    misrepresentations either by direct diversion of contracts from itself to the STS Entities or other

6    competitors, or by the lessening of the good will which Verigy and its memory test products

7    product enjoy in the marketplace.

8    103. Verigy is informed and believes and thereon alleges that defendants acted in bad faith

9    by disseminating said false or misleading statements.

10    104. The acts and practices alleged herein are continuing to be practiced by defendants

11    and will cause great and irreparable harm to Verigy and the public at large unless and until

12    restrained by order of this Court. Verigy has suffered and will imminently suffer further harm,

13    including the loss of proprietary information and competitive position, the amount of which will

14    be difficult to ascertain. Verigy will be without an adequate remedy at law. Verigy is entitled to

15    an injunction restraining defendants, as well as their officers, agents, employees, and all persons

16    acting in concert with them from publishing unfair, deceptive, untrue or misleading advertising as

17    alleged in this Complaint.

18    105. As a direct result of the misleading and untrue public statements and advertising

19    alleged herein, defendants have been unjustly enriched in an amount not yet ascertained. Verigy is

20    entitled to an accounting and restitution from defendants in an amount to be determined at trial.

21    **ELEVENTH CLAIM FOR RELIEF**
**Intentional Interference With Prospective Economic Advantage**

22    (Against all Defendants)

23    106. Verigy realleges paragraphs 1-105 above as if fully set forth herein.

24    107. Verigy had a reasonable probability of prospective economic advantage from its

25    customers and prospective customers Intel, Micron, Spansion and Sandisk.

26    108. Defendants knew of these prospective economic relationships with Intel, Micron,

27    Spansion and Sandisk, and Verigy is informed and believes and on that basis alleges that

28    defendants intentionally and wrongfully induced, and proximately caused, disruptions of those

18

1    relationships.

2         109.  The independently wrongful conduct of defendants as alleged, includes but is not

3    limited to defendants' violations of the ECPA, CFAA, Lanham Act, Section 17200, Section 17500

4    and California Penal Code Section 502.

5         110.  As a result of defendants' conduct, Verigy has been damaged in an amount to be

6    proven at trial.

7         111.  Defendants' acts have also caused injury to Verigy and, unless and until restrained by

8    appropriate injunctive relief, Verigy will continue to suffer irreparable harm for which there is no

9    adequate remedy at law.

10                          **TWELFTH CLAIM FOR RELIEF**
                                  **(Declaratory Relief)**
11                              (Against All Defendants)

12        112.  Verigy realleges paragraphs 1-111 above as if fully set forth herein.

13        113.  Verigy spent substantial resources researching and developing the Verigy Project.

14        114.  Verigy is informed and believes and thereon alleges that defendants acquired their

15    information and knowledge regarding the Verigy Project, including, but not limited to,

16    information regarding the design features; modifications; documentation; interfaces; know how,

17    research projects and/or studies regarding the Verigy Project; plans for future improvements to the

18    Verigy Project; documentation, RFQs, cost proposals and presentations to customers and potential

19    customers for the Verigy Project; requirements, needs, and/or planned projects of customers and

20    potential customers for the Verigy Project; product strategy; forecasted business demand; actual

21    product consumption; business processes and tools; product technology roadmaps; product

22    features and performance; product architecture; product development schedules; qualification

23    processes and results; contract manufacturer agreements and business relationship; future

24    manufacturing strategy and financial information (collectively, the "Related Information"), solely

25    by virtue of Mayder's employment relationship with Verigy.

26        115.  Pursuant to the ARCIPD and the California Labor Code § 2860, Verigy owns the

27    Verigy Project and Related Information.

28        116.  Verigy is informed and believes and thereon alleges that defendants wrongfully

acquired the Verigy Project and Related Information, and, among other things, incorporated it into

and used it in developing the STS Device and, on information and belief, other intellectual

property, product(s) and material(s). Thus, pursuant to Labor Code Section 2860, Verigy is the

rightful owner of the STS Device and related intellectual property and products, including, but not

limited to, the STS Device, any other STS Entities' products incorporating the Verigy Project and

Related Information or other Verigy Confidential Information, Trade Secrets or Proprietary

Developments; any intellectual property assigned to, owned by or invented by any of the

defendants that incorporate the Verigy Project and Related Information or other Verigy

Confidential Information, Trade Secrets or Proprietary Developments; any patent applications,

provisional patent applications, or patents that incorporate the Verigy Project and Related

Information or other Verigy Confidential Information, Trade Secrets or Proprietary Developments;

and any other product(s) or material(s) developed by defendants using or incorporating the Verigy

Project and Related Information or other Verigy Confidential Information, Trade Secrets or

Proprietary Developments (collectively, the "Disputed Material").

117. At present, an actual and justifiable controversy exists between Verigy and

defendants concerning their respective rights and duties regarding the Disputed Material.

118. Verigy contends that, pursuant to the ARCIPD and California Labor Code § 2860, it

is the sole owner of the Disputed Material.

119. By their actions as alleged in this Complaint, defendants dispute this contention, and

contend that they own the Disputed Material, and that Verigy has no right, title, or interest in any

of the Disputed Material.

120. Verigy desires a judicial determination and declaration of its and defendants'

respective rights and duties with respect to the Disputed Material and specifically requests this

Court to declare that Verigy is the sole owner of defendants' rights, title and interest in the

Disputed Material.

121. A determination by this Court of the respective rights and duties of Verigy and

defendants is necessary and proper at this time so that Verigy can determine its rights with respect

to the Disputed Material, and whether defendants have any right, title, or interest in such Disputed

1  Material.

2  ## THIRTEENTH CLAIM FOR RELIEF
   ### (Imposition Of Constructive Trust)
3  ### (Against All Defendants)

4  122.  Verigy realleges paragraphs 1-121 above as if fully set forth herein.

5  123.  At all times relevant to this Complaint, a confidential relationship existed between

6  Verigy and defendant Mayder by virtue of his employment with Verigy and his execution of the

7  ARCIPD.

8  124.  Until its discovery of the facts alleged herein, Verigy believed implicitly in the

9  integrity and truthfulness of defendant Mayder, and reposed absolute trust and confidence in him.

10  125.  Mayder violated his confidential relationship with Verigy by founding the STS

11  Entities, developing and marketing the STS Device and, on information and belief, other

12  product(s) and material(s), by using or incorporating the Verigy Project and/or Related

13  Information without disclosing and turning over such product(s) and material(s) to Verigy, and

14  taking the other actions alleged herein, all while employed by Verigy.

15  126.  Defendants' acquisition and retention of the Disputed Materials is wrongful.

16  Defendants therefore hold the Disputed Materials as an involuntary or constructive trustee for the

17  benefit of Verigy.

18  ## FOURTEENTH CAUSE OF ACTION
   ### (Unjust Enrichment Against All Defendants)
19

20  127.  Verigy realleges paragraphs 1-126 above as if fully set forth herein.

21  128.  Verigy is informed and believes and on that basis alleges that as a proximate and

22  legal result of defendants' wrongful and/or unlawful conduct as alleged in this Complaint,

23  defendants have been unjustly enriched, including without limitation by unjustly retaining the

24  benefits from unauthorized use of Verigy's Confidential Information, Trade Secrets and Related

25  Information.

26  129.  Verigy is entitled to recover from Defendants the gains, profits, advantages and

27  unjust enrichment that they have obtained as a result of their wrongful and/or unlawful acts.

28

**PRAYER**

Verigy prays for judgment against defendants as follows:

1.     That defendants, their directors and officers, agents, servants, employees, and all other persons acting in active concert or privately or in participation with them, and each of them, be preliminarily and permanently enjoined from the wrongful acts and conduct set forth above.

2.     That defendants, their directors and officers, agents, servants, employees, and all other persons acting in active concert or privately or in participation with them, and each of them, be preliminarily and permanently enjoined from:

(a)     accessing, using, copying, publishing, disclosing, using, attempting to use or disclose, transferring, selling or otherwise distributing, directly or indirectly, any of Verigy's Trade Secrets, Related Information, confidential and/or proprietary business information, and any product developed with the use of, with reference to, derived from, or incorporating all or any part of Verigy's trade secret and/or confidential and proprietary business information;

(b)     unfairly competing with Verigy;

(c)     engaging in false, misleading, and deceptive promotional activities that can, or is likely to mislead members of the public; and

(d)     interfering with Verigy's business relationships with Intel, Micron, Sandisk and Spansion.

3.     A preliminary and permanent injunction ordering defendants, their directors and officers, agents, servants, employees, and all other persons acting in active concert or privately or in participation with them, and each of them, to:

(a)     assign all rights, title and interest in the Disputed Material to Verigy; and

(b)     deliver and/or destroy any marketing material, advertisements, or other items that violate 15 U.S.C. § 1125(a) or Section 17500.

4.     That defendants be ordered to deliver to Verigy possession of:

(a)     all Verigy documents, computer files, or other tangible Verigy things, including, but not limited to, those things which refer to, reflect, constitute, or in any way embody any of Verigy's Trade Secrets or confidential and/or proprietary information; and

(b)    any and all things created, incorporating, referencing, based upon, or derived from Verigy's Trade Secrets or confidential and/or proprietary information.

5.    That Verigy receive such other injunctive relief as Verigy may request and the Court may deem just and proper.

6.    That defendants be required to account for all gains, profits, and advantages derived from their acts of misappropriation and other violations of law.

7.    That all gains, profits and advantages derived by defendants from acts of misappropriation and other violations of law be deemed to be in constructive trust for the benefit of Verigy.

8.    For an order declaring that, pursuant to the ARCIPD and California Labor Code Section 2860, Verigy is the sole owner of the Disputed Material.

9.    For an order requiring defendants to disgorge profits earned from their unlawful conduct.

10.    For an award of restitution, unjust enrichment, actual damages, statutory damages and compensatory damages according to proof at trial;

11.    For punitive and exemplary damages according to proof at trial;

12.    For attorney fees, costs of suit and prejudgment and postjudgment interest, as provided under applicable law; and

13.    For such other, further, and/or different relief, in law or equity, as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Verigy US, Inc. hereby demands a trial by jury on each of its claims for relief that are triable before a jury.

Dated:  August 21, 2007                    BERGESON, LLP


By:_____
    John W. Fowler
    Attorneys for Plaintiff
    VERIGY US, INC.