E-FILED on:   8/24/07

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>　　　　　　Defendants. | Case No. C07-04330 RMW (HRL)<br><br>ORDER GRANTING PLAINTIFF VERIGY US, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION **(Redacted Version)**<br><br>**[CONFIDENTIAL—FILED UNDER SEAL]** |

## I. BACKGROUND

Plaintiff Verigy US, Inc., ("Verigy") filed an *ex parte* application for restraining order, order to show cause relating to preliminary injunction, and order for certain expedited discovery against defendants Romi Omar Mayder ("Mayder"), Wesley Mayder, Silicon Test Systems, Inc. and Silicon Test Solutions, LLC.  Verigy is engaged in the business of designing, developing, manufacturing, and selling advanced test systems and solutions for the semiconductor industry. Decl. of Ira Leventhal Supp. Appl. TRO ("Leventhal Decl.") ¶ 3.  Verigy is a spin-off from Agilent Technologies, Inc., which in turn was a spin-off of Hewlett Packard. *Id.*  Beginning in

1

June 1998, Mayder worked as an engineer at Agilent (and its predecessor-in-interest, HP) in the area of research and development of new products for testing of memory chips. *Id.* ¶ 2. After the Verigy spin-off, Mayder worked as an engineer in a similar capacity for Verigy from June 1, 2006 to September 22, 2006. *Id.* He was responsible for several research and development projects for the creation of new products for silicon chip testing systems. *Id.* ¶ 6. In working on these projects he had access to, *inter alia*, confidential information regarding projects being developed by Verigy as well as information regarding the identity of and Verigy's business relationships with third parties, including past, present, and potential component suppliers and customers. *Id.*

All Verigy employees, consultants, and contractors are required to sign an Agreement Regarding Confidential Information and Proprietary Developments ("ARCIPD"). *Id.* ¶ 7. Mayder signed an ARCIPD with Verigy. Decl. of Manuel Guerzoni Supp. Appl. TRO ("Guerzoni Decl.") ¶ 4. Customers, vendors, and suppliers are required to sign a non-disclosure agreement. *Id.* Verigy restricts access to its office and routinely marks confidential documents as such. In addition, Verigy maintains its technical documents, such as project data sheets and customer requirements on restricted-access computer systems. *Id.* Agilent similarly protected the confidentiality of its confidential and proprietary information. *Id.*

In 2006 Mayder worked on Verigy's ▮▮▮▮ project, which involved development of new technology that would greatly increase the parallelism of the system. *Id.* ¶ 8. While working on this project, Mayder was privy to Verigy's confidential business plans and strategy regarding ▮▮▮▮▮▮▮▮▮▮, potential manufacturers and suppliers, materials and implementations, and customer requirements. *Id.* Mayder also worked as the technical RFQ lead and the memory test systems hardware design engineer for the ▮▮▮▮▮▮▮▮ project and related ▮▮▮▮▮ project, which were part of the ▮▮▮ project. *Id.* ¶ 9. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 12, 14. Current work in this area by Verigy includes the ▮▮▮▮▮▮▮▮ which is currently in fabrication. *Id.* ¶ 16. As part of his work for Verigy, Mayder wrote a document entitled ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. *Id.* Because few manufacturers will manufacture such devices, it is expensive

2

to do so. *Id.* ¶¶ 12-15. Thus, information on costs, materials, specifications of the product, consideration of alternate implementation strategies, placement of the device, and selection of manufacturer are valuable confidential and proprietary information. *Id.* Mayder had access to this confidential information through his work at Verigy. In addition, he had access to confidential information regarding Verigy's business relationships with third parties, including its past, present, and prospective component suppliers and customers, and confidential and proprietary information compiled from third-party customers and shared with Verigy pursuant to non-disclosure agreements. *Id.*

In June 2006, while Mayder was still employed at Verigy, the domain name "silicontests.com" was registered with Mayder listed as the administrator. Decl. of Melinda Morton Supp. Appl. TRO ("Morton Decl.") ¶ 3; Ex. A. At that time Mayder also approached Robert Pochowski, a former Agilent vice president, for potential investment in a new venture Mayder was starting called "Silicon Test Systems." Decl. of Robert Pochowski Supp. Appl. TRO ("Pochowski Decl.") ¶ 4. Mayder disclosed his idea of a new way to test systems without seeking a non-disclosure agreement from Pochowski. *Id.* ¶¶ 5-6. He also sent Pochowski an RFQ for ███████████████, a document called ███████████████ and a document called ███████████. *Id.* ¶¶ 7, 9. Mayder requested Pochowski to send these documents to ██████. *Id.* Pochowski did not do so. *Id.* Mayder also met with and shared these documents with potential clients, including Verigy clients. *Id.* ¶ 16. The properties window for all of these documents indicate that they were in fact Agilent documents. *Id.* ¶ 18. The original document title of one document was ███████████████████ which was a document Mayder wrote for Verigy while employed there. *Id.* ¶ 19. The other documents were authored by Andy Lee and Hanh Lai of Agilent. *Id.* ¶ 20. On August 27, 2006, Mayder sent to Pochowski via email a draft patent application allegedly containing Verigy trade secrets. *Id.* ¶ 13. This document was still marked with the identification designating the Verigy division Mayder worked in. *Id.*, Ex. F.

In early July 2007, following Mayder's resignation from Verigy, Verigy was informed that Mayder was marketing a product that seemed similar to Verigy's products. Leventhal Decl. ¶ 25.

3

ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION -- CASE NO. C07 04330 RMW

Verigy's counsel contacted Mayder on July 6 and 9, 2007 to remind Mayder of his obligations under the ARCIPD and to ask for assurances that he was in compliance with that agreement. Morton Decl. ¶ 8, Ex. E. In late July, Pochowski informed Verigy that he had been involved with Mayder and Silicon Test Systems, Inc. and Silicon Test Solutions, LLC. Leventhal Decl. ¶ 26. On August 11 and 14, 2007, Pochowski provided certain documents and emails transmitted from Mayder to Verigy and its counsel. *Id.* ¶ 9. Based on those documents, Verigy's counsel determined that the documents transmitted to Pochowski were similar to Verigy documents that Mayder had drafted or otherwise had access to. *Compare e.g.*, Pochowski Decl., Ex. A *with* Decl. of Andrew Lee Supp. Appl. TRO ("Lee Decl."), Ex. A (document sent to Pochowski containing the same typographical errors as Verigy document drafted by Mayder). Further investigation revealed that during the time he was employed by Verigy, Mayder may have used Verigy's computers and its network to conduct business related to Silicon Test Systems, Inc. and Silicon Test Solutions, LLC and that Mayder had started developing a competing product to the one Mayder was working on at Verigy. *Id.* at 10. According to plaintiff, the products advertised on the Silicon Test Systems website at www.silicontests.com appear to perform the same functions as Verigy's ▓▓▓ product designs and the ▓▓▓▓▓▓▓▓▓▓▓ currently in production. Leventhal Decl. ¶ 21.

    Verigy's counsel gave notice of Verigy's motion for a temporary restraining order to defendants by telephone on August 21, 2007. Morton Decl. ¶¶ 12-13. Copies of the complaint and public-redacted version of the TRO papers were sent electronically to defendants on August 22, 2007.

## II.  ORDER

    This matter having come before the court on the *ex parte* application of plaintiff Verigy US, Inc. for a Temporary Restraining Order, Order Authorizing Expedited Discovery, and Order to Show Cause Re Preliminary Injunction;

1      AND, the court having read the Complaint, the declarations of Robert Pochowski, Ira Leventhal, Manuel Guerzoni, Ken Hanh Duc Lai, Andrew N. Lee, and Melinda M. Morton and the memorandum of points and authorities submitted in support of the *ex parte* application;

     AND, defendants having been given telephonic and electronic notice of plaintiff's application for these orders;

     AND, the court finding that, absent a temporary restraining order granted without further notice, (1) plaintiff is likely to suffer irreparable harm including harm to its competitive position, loss of future sales, disclosure of confidential business information, and loss of goodwill in the marketplace, and (2) evidence may be lost or destroyed;

     AND, good cause appearing;

**IT IS HEREBY ORDERED THAT:**

1.     Defendants ROMI OMAR MAYDER ("Mayder"), WESLEY MAYDER, SILICON TEST SYSTEMS, INC. and SILICON TEST SOLUTIONS, LLC (the "STS Entities") as well as their agents, servants, employees, attorneys, and any other persons in active concert or participation with them who receive actual notice of this Temporary Restraining Order, by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

    (a)     accessing, altering, downloading, copying, forwarding, disclosing, using, marketing, disseminating, selling, licensing, leasing, transferring, making any use of, attempting to disclose or use, or disposing of, Verigy's trade secrets and/or confidential or proprietary information (which includes the confidential information of Verigy's predecessor, Agilent Technologies, Inc.), as identified in Exhibit A attached hereto (the "Trade Secret Property");

    (b)     accessing, altering, downloading, copying, forwarding, disclosing, using, marketing, disseminating, selling, licensing, leasing, transferring, making any use of, attempting to disclose or use, or disposing of any product developed with the use of, derived from, or incorporating all or any part of Verigy's Trade Secret Property;

5

ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION -- CASE NO. C07 04330 RMW

 (c) deleting, destroying, or altering, in whole or in part, any information (electronic, documentary or otherwise) in any media (paper, hard drive, caches, CD-ROMS, diskettes, USB memory devices, or any other media, digital or otherwise), relevant to any of the issues in this action;

 (d) deleting, destroying, or altering, in whole or in part, any information or electronic mail to or from romi.mayder@yahoo.com; romi.mayder@silicontests.com; bob.pochowski@silicontests.com; info@silicontests.com and wes@wedirect.com; in any media (paper, hard drives, caches, CD-ROMS, diskettes, flash drives, back-up drives, internet storage or any other media, digital or otherwise), relevant to any of the issues of this action;

 (e) soliciting Verigy's existing or potential customers, clients, or suppliers with whom the defendants came into contact, or whose identities were learned, solely as a result of his employment with Verigy;

 (f) making knowingly false or misleading statements to Verigy's existing or potential clients, customers or suppliers orally, in print, by electronic mail, or on the STS website about Verigy's operations, capabilities, products and product plans; and

 (g) making knowingly false or misleading statements to Verigy's existing or potential clients, customers or suppliers orally, in print, by electronic mail, or on the STS website about operations, and the origins and capabilities of the STS products;

2. Defendants, their agents, employees, contractors, partners, representative, assigns and all those acting in concert with Defendants, are required to preserve and immediately return to Verigy all materials (in electronic, written, or other form) in any media (paper, hard drives, cashes, CD-ROMS, diskettes, USB storage devices, or any other media, digital or otherwise), constituting, containing or derived from Verigy's Confidential Information (as defined in the ARCIPD, attached hereto as Exhibit B), and all copies of such materials.

3. Following receipt of this order Defendants must immediately copy, and maintain said copy without modification, the hard drives of all computers used by any defendant for the

6

business of defendant Silicon Test Systems, Inc. and Silicon Test Solutions, LLC, for the purpose of preserving evidence.

4. Verigy may depose Romi Omar Mayder and Wesley Mayder on five (5) days' notice, which notice may be served forthwith.

5. Verigy may forthwith propound a narrowly tailored Request for Production, Inspection, and Copying of Documents and Things and/or a set of Interrogatories not to include more than 15 questions with no subparts to defendants and defendants shall respond to such requests within seven (7) calendar days of service upon them.

6. This Temporary Restraining Order is entered on August 24, 2007 at 10:00 a.m. and shall expire on September 7, 2007 at 5:00 p.m. unless prior to that date and time, the Order is vacated or extended by this court for good cause shown, or unless plaintiff and defendants stipulate to such extension or vacation, such stipulation being subject to the court's approval.

Pursuant to Civil Local Rule 65-1 (c), **DEFENDANTS ARE FURTHER HEREBY ORDERED TO APPEAR AND SHOW CAUSE** why a preliminary injunction should not be entered against them with respect to the matters contained in this Temporary Restraining Order, such Show Cause hearing to take place in this court on Friday, September 7, 2007, at 9:00 a.m., unless otherwise ordered by this court. In connection with such Show Cause hearing, plaintiff shall serve a copy of this Temporary Restraining Order and all supporting papers on defendants by 5:00 p.m. on August 25, 2007. Defendants shall file, and serve by hand upon plaintiff's attorneys, any opposition to the issuance of a preliminary injunction with respect to the matters contained in the Temporary Restraining Order no later than 5:00 p.m. on August 31, 2007. Plaintiff shall file and serve by hand upon defendants' counsel, any reply and/or supplemental papers in support of its motion for preliminary injunction by 5:00 p.m. on September 4, 2007.

//
//
//
//

7

ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION -- CASE NO. C07 04330 RMW

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, this Temporary Restraining Order shall be subject to, and is effective upon giving to the Clerk of this Court by plaintiff on or before August 27, 2007 security in the form of a surety bond or undertaking or deposit according to law in the amount of $100,000.

**IT IS SO ORDERED.**

Dated: August 24, 2007                    By: _____/s/ Ronald M. Whyte_____
                                                Honorable Ronald M. Whyte
                                                United States District Judge

8

ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION -- CASE NO. C07 04330 RMW

CONFIDENTIAL—EXHIBIT SUBMITTED UNDER SEAL

EXHIBIT A

CONFIDENTIAL

Until a protective order is entered, information contained in this Exhibit A shall be treated as though it was marked "CONFIDENTIAL" pursuant to section 7.2 of the Northern District court's suggested Stipulated Protective Order. Upon entry of a protective order, the provisions of that order shall apply.

Verigy's Trade Secret Property, for the purpose of this Temporary Restraining Order only, includes:

1. Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to:

   (a) The projects code-named: ▮▮▮▮▮;
   (b) The projects code-named by Mayder as ▮▮▮▮;
   (c) Non-public customer device requirements, pricing strategies, business relationships with Verigy's[1] customers and potential customers;
   (d) Non-public information gathered or developed by Verigy concerning ▮▮▮▮;
   (e) Verigy's non-public product strategy;
   (f) Verigy's non-public forecasted business demand;
   (g) Verigy's non-public product architecture;
   (h) Verigy's non-public qualification processes and results;
   (i) Verigy's non-public contract manufacturer agreements and business relationships;
   (j) Verigy's non-public block diagrams, specifications and engineering drawings and diagrams; mechanical drawings; EECAD and MECAD files;
   (k) Verigy's non-public future manufacturing strategies;
   (l) Verigy's non-public RFQs and associated documents;
   (m) Verigy's non-public processes and forms for gathering customer information and requirements;
   (n) Verigy's non-public processes and forms for requesting information and/or quotations from manufacturers and/or component suppliers;
   (o) Verigy's manufacturing requirements and timing;
   (p) Verigy's plans for future improvements to its products;

---

[1] All references to "Verigy" in this list include Verigy's predecessors-in-interest, Agilent and HP.

ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION -- CASE NO. C07 04330 RMW

1

CONFIDENTIAL—EXHIBIT SUBMITTED UNDER SEAL

(q) Verigy's non-public communications with component suppliers and contract manufacturers;
(r) Documents marked "Agilent Confidential" or "Verigy Confidential;"
(s) Exhibits B and C to the Leventhal Declaration submitted in support of Verigy's Application for a TRO;
(t) Exhibits A, B, C, and D to the Lai Declaration submitted in support of Verigy's Application for a TRO;
(u) Exhibits A and B to the Lee Declaration submitted in support of Verigy's Application for a TRO; and
(v) Exhibits A, B, C, D, E, and F to the Pochowski Declaration submitted in support of Verigy's Application for a TRO.

2. Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to:



3. Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and

CONFIDENTIAL—EXHIBIT SUBMITTED UNDER SEAL

development not contained in the published applications or patents relating to the inventions described in the following patents:

(a) Timing calibration and timing calibration verification of electronic circuit testers (US Pat. 6570397 - Filed Aug 7, 2001)
(b) Zero insertion force printed circuit assembly connector system and method (US Pat. 7147499 - Filed Oct 19, 2005)
(c) Parallel calibration system for a test device (US Pat. 7106081 - Filed Jul 8, 2004)

3. Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development not contained in the published applications relating to the inventions described in the following patent applications:

(a) Method and apparatus for a DUT contactor  (Application #20070090849)
(b) Method and apparatus for non-contact cleaning of electronics  (Application #20060236495)
(c) Mock wafer, system calibrated using mock wafer, and method for calibrating automated test equipment (Application #20060132162)
(d) Parallel calibration system for a test device  (Application #20060006896)
(e) Timing calibration and timing calibration verification of electronic circuit testers  (Application #20030030453)
(f) Resource Matrix, System, And Method for Operating Same (Application # 20070096757)

4. Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to inventions described in the following disclosures made by Mayder while at Verigy:



CONFIDENTIAL—EXHIBIT SUBMITTED UNDER SEAL



5. Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and any provisional patent applications, patent applications or patents claiming priority to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

4

ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION -- CASE NO. C07 04330 RMW

# Verigy US, Inc.
## Agreement Regarding Confidential Information and Proprietary Developments (ARCIPD)

| EMPLOYEE NAME (Last, First, M.I.) | EMPLOYEE NUMBER |
|---|---|
| Mayder, Romi O | 00330819 |

1. I understand that this Agreement is not a contract for employment with Verigy US, Inc.

2. This Agreement concerns trade secrets, confidential business and technical information, and know-how not generally known to the public which will become known to or acquired or produced by me in connection with my employment by Verigy (hereinafter "Confidential Information"). Confidential Information includes, without limitation, information on Verigy organizations and structure; staffing; finance; strategic plans; information on employee performance, compensation, assignments; information on research and development, manufacturing and marketing; as well as information which Verigy receives from third parties under an obligation of confidentiality. Confidential Information also includes information of the foregoing types that I received during any period of employment with Agilent Technologies, Inc., whether such information relates to Agilent or is or was received from third parties under an obligation of confidentiality. I agree: (a) to use such Confidential Information only in the performance of Verigy duties; (b) to hold such Confidential Information in confidence and trust; and (c) to use all reasonable precautions to assure that such Confidential Information is not disclosed to unauthorized persons or used in an unauthorized manner, both during and after my employment with Verigy.

3. This Agreement also concerns inventions and discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (herein called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by Verigy or that relate to the research and development or the business of Verigy. Such Proprietary Developments are the sole property of Verigy, and I agree: (a) to disclose them promptly to Verigy; (b) to assign them to Verigy; and (c) to execute all documents and cooperate with Verigy in all necessary activities to obtain patent, copyright, mask works and/or trade secret protection in all countries, at Verigy US, Inc.'s expense.

In compliance with prevailing provisions of relevant state statutes[1], this Agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

4. I agree to honor any valid disclosure or use restrictions on Confidential Information known to me and received from any former employer or any other party prior to my employment by Verigy, and I agree not to bring onto the premises of Verigy any such information in whatever physical form without prior written consent of such former employer or other party.

5. The product of all work performed by me during and within the scope of my Verigy employment including, without limitation, any reports, documents, drawings, computer programs, devices and models, including all copies thereof, will be the property of Verigy and Verigy will have the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such a work product.

6. I will not remove any Verigy property from Verigy premises without Verigy US, Inc.'s permission.

7. I agree not to disrupt, damage or interfere with the operation or business of Verigy by soliciting, recruiting, contracting with or employing its employees or independent contractors on my own behalf or any other person or entity, both during my employment at Verigy and for a period of two years following termination of my employment.

8. Upon termination of my employment with Verigy, I will return all Verigy property to Verigy unless Verigy authorizes me in writing to retain such property.

9. The provisions of this Agreement will be separately construed. If any of them is held to be unenforceable, the remaining provisions will not be affected.

| EMPLOYEE SIGNATURE | DATE |
|---|---|
| /s/ Romi Mayder | May 06, 2006 |

[1] Including: California Labor Code, Section 2870; Illinois 765ILCS1060/1-3, "Employees Patent Act;" Washington Rev. Code, Title 49RCW; Labor Regulations, Chapter 49.44.140; Minnesota Statutes, 13A, Section 181.78; and North Carolina General Statutes, Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

1-WA/2533973.1

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Melinda Morton             mmorton@be-law.com

**Counsel for Defendants:**

(No Appearance)

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

Dated: 8/24/07                              MAG
                                           **Chambers of Judge Whyte**