DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
JOHN W. FOWLER, Bar No. 037463
jfowler@be-law.com
MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff
VERIGY US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>Defendants. | Case No. C07 04330 RMW (HRL)<br><br>**VERIGY'S NOTICE OF MOTION AND MOTION TO COMPEL AMENDED RESPONSE AND RESPONSIVE INFORMATION TO REQUEST FOR PRODUCTION NO. 17 FROM ROMI MAYDER AND SILICON TEST SYSTEMS, INC.; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Honorable Howard R. Lloyd<br>Ctrm: 2<br><br>Complaint Filed: August 22, 2007<br>Trial Date: None Set |

**PUBLIC VERSION OF HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

**DOCUMENT SUBMITTED UNDER SEAL**

## NOTICE OF MOTION AND MOTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on Tuesday, October 16, 2007, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Howard R. Lloyd, United States Magistrate Judge, in the United States District Court for the Northern District of California, San Jose Division, 280 South First Street, San Jose, California, plaintiff Verigy US, Inc. ("Verigy"), shall and hereby does move the Court (on shortened time pursuant to stipulation) for an order compelling defendants Romi Omar Mayder ("Mayder") and Silicon Test Systems, Inc. ("STSI") (collectively, "Defendants") to produce bit for bit copies – *i.e.*, mirror images – of Romi Mayder's and STSI's computer's hard drives.

The motion is made pursuant to Rule 37 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Rule 37-2 of the Civil Local Rules for the Northern District of California ("N.D.Cal. Civil L.R.") on the grounds that Defendants' responses to Verigy's identical Requests for Production No. 17 are non-responsive.

This motion is based upon this notice of motion and motion, the supporting memorandum of points and authorities, the declarations of John Fowler, Melinda Morton and Donald Gagliardi served and filed herewith, the complete files and records in this action, and such additional evidence and argument as may hereinafter be presented.

## STATEMENT OF ISSUES

(N.D. Cal. Civil L.R. 7-4)

1. Should Defendants be compelled to produce bit for bit copies – *i.e.*, mirror images – of Romi Mayder's and STSI's computer hard drives?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case involves the misappropriation of Verigy's valuable trade secrets and confidential information by Romi Mayder, a former Verigy employee, as well as by the new companies he formed, Silicon Test Systems Inc. and Silicon Test Solutions, LLC, along with Mayder's brother, Wesley Mayder, an investor in STSI.

Romi Mayder was a long-term and trusted employee of Verigy and its predecessors-in-interest, Agilent Technologies, Inc. ("Agilent") and Hewlett Packard Company ("HP") who abruptly resigned his employment in September 2006.

In early July 2007, Verigy learned that Mayder was marketing a product very similar to Verigy's memory test products and began an investigation to determine whether Mayder was using Verigy trade secrets and/or other Verigy confidential information. Verigy's investigation revealed that Mayder, in June 2006 and while still employed at Verigy, registered a domain name "silicontests.com" and approached Robert Pochowski, a former Agilent vice president for potential investment in a new venture he was starting called "Silicon Test Systems." In early August 2007, Pochowski provided Verigy with documents and e-mails from Mayder which made it clear that Mayder had been using Verigy trade secrets and confidential information. Further investigation revealed that, during the time he had been employed by Verigy, Mayder may have used Verigy's computer network for work related to STSI and Silicon Test Solutions, LLC and that her had started developing a competing product that appears to be identical to the product he had been working on at Verigy.

On August 21, 2007, Verigy filed this action and sought a temporary restraining order, an order to show cause re preliminary injunction, and an order authorizing expedited discovery. Verigy's Ex Parte Application was granted by the Honorable Ronald M. Whyte on August 24, 2007. A hearing on the motion for preliminary injunction has been scheduled for November 9, 2007.

Verigy propounded requests for production and special interrogatories for both Romi Mayder and STSI on August 24, 2007. Defendants served objections and responses to the discovery on August 31, 2007. The parties have met and conferred but were unable to resolve the dispute regarding Defendants' refusal to produce bit-for-bit copies of Mayder's and STSI's hard drive in response to the identical Requests for Production No. 17. Defendants' counsel twice agreed to produce the bit for bit copies of hard drives during meet-and-confer sessions, first on August 29 and then again on September 26, 2007.

Verigy has complied with Fed.R.Civ.P. 37 and N.D.Cal. Civil L.Rs. 1-5(n) and 37-1 by

meeting and conferring in person and by telephone with defense counsel on multiple occasions, with the result that the issues have been narrowed to a single one which could not be resolved: whether Defendants must produce a bit-for-bit copies of Mayder's and STSI's hard drives in response to the identical Request for Production No. 17 propounded to both Mayder and STSI.

**II. DISCOVERY IN DISPUTE**

On August 24, 2007, Verigy served both Mayder and STSI its First Set of Requests for Production. (Declaration of Melinda Morton in Support of Verigy's Motion to Compel ("Morton Decl."), ¶3, Exs. A and B.) On August 31, Mayder and STSI served their respective (and identical) responses to the requests for production. (*Id.*, ¶7, Exs. D and E.) The text of the request and response is as follows:

**REQUEST FOR PRODUCTION NO. 17:**

A bit for bit copy (in machine readable form) of all hard drives of all computers, including, but not limited to, desktop computers, laptop computers, USB memory devices, PDAs, and other memory storage devices that have been or are currently used by YOU.



(*Id.*, Exs. A, B. C. D.)

Meanwhile, during a telephone conference on August 29, 2007, Defendants' counsel, Kevin M. Pasquinelli agreed to produce bit for bit copies – *i.e.*, a mirror image – of Mayder's and STSI's computer hard drives. (Morton Decl., ¶4.; Fowler Decl., ¶3.) Mr. Pasquinelli asked whether Verigy would prefer Defendant's expert to provide the copies at Verigy's expense, or whether Verigy would prefer that its own expert make the copy. (*Id.*) Verigy's counsel, Melinda Morton, confirmed the agreement in an e-mail to Pasquinelli on August 30, 2007. (Morton Decl., ¶5, Ex. C.) On August 31, 2007, however, Mr. Pasquinelli contacted Ms. Morton by telephone and advised her that Mayder would not be providing the mirror image of the hard drive after all

because he had supposedly "misread the Court's order [of August 24]." (Morton Decl., ¶6.) The August 24 Order, among other things, required Defendants to "copy and maintain without modification the hard drives of all computers used by any defendant for the business of [STSI] and Silicon Test Solutions, LLC, for the purpose of preserving evidence." (Morton Decl. Ex. I, Docket No. 24, at 6:26-27.)

Subsequently, counsel had a further meet-and-confer session on September 26, 2007, following a deposition in Verigy's counsel's offices. (Morton Decl., ¶8; Fowler Decl., ¶ 4.) The discussion was memorialized in a letter from Verigy counsel Don Gagliardi. (Declaration of Donald P. Gagliardi ("Gagliardi Decl."), ¶ 7 and Ex. F.) Notably, Defendants' counsel again agreed to produce the bit for bit copies of their clients' hard drives subject to agreed-upon conditions as outlined in the letter. Nevertheless, the following day, September 27, Mr. Pasquinelli, sent an email disavowing the agreement. (*Id.*, ¶6, Ex. E.)

On the morning of October 1, 2007, in a final effort to avoid this motion, Mr. Gagliardi and one of his colleagues, Marc van Niekerk, had a telephone conference with Mr. Pasquinelli to agree upon the parameters for turning over the bit for bit copies of the hard drives. (*Id.*, ¶8). Mr. Pasquinelli said he would check in with his client and get back to Verigy's counsel by the end of the day; however,he did not respond until 11:26 p.m. (*Id;* Morton Decl. ¶ 14 Ex. I.) Mr. Pasquinelli's late night email indicated that his client continued to have "privilege and privacy concerns." (Morton Decl., ¶ 14, Ex. I.)

For the reasons set forth below, Mayder and STSI should each be compelled to amend their respective responses to Verigy's Request for Production No. 17 and to be further compelled to produce bit for bit copies – *i.e.*, mirror images – of Mayder's and STSI's computer hard drives.

## III. ARGUMENT

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26. Furthermore, "[i]f a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34 . . . fails to permit inspection as requested, the discovering party may move for an order . . . compelling inspection in accordance with the request." Fed.R.Civ.P. 37.

Verigy's Requests for Production No. 17 require Mayder and STSI to produce a bit for bit copy of the Mayder and STSI hard drives. (*See*, Morton Decl., ¶3 and Exs. A and B.) Romi Mayder and STSI objected and refused to produce the requested bit for bit copies. (*See id.*, ¶7 and Exs. D and E.)

**A. THERE IS GOOD CAUSE FOR VERIGY'S REQUEST NO. 17**

There is good cause for Verigy's request for mirror images. First, Mayder has produced only one email regarding his STSI work dating prior to his September 2006 resignation from Verigy. (Morton Decl., ¶ 18.) However, Mr. Pochowski, a third party and key witness in tis matter, has produced a host of emails, Powerpoints, data sheets and patent disclosures from Mayder that were created during Mayder's employment at Verigy. (*See, e.g.*, Pochowski Declaration, Docket No.11 (confidential version is located between Docket Nos. 17-21).) It is, at best, highly suspicious that Mayder "no longer has" any of these emails showing that he was working on behalf of STSI while still employed at Verigy, and production of the mirror images will allow Verigy's forensics expert to investigate these discrepancies. *See Ameriwood Industries, Inc. v. Liberman*, No. 4:06 CV524-DJS, 2006 WL 3585291 (E.D.Mo. December 27, 2006) ("discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image"); *Simon Prop. Group v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (allowing plaintiff to use mirror image where there were "troubling discrepancies with respect to defendant's document production"). Obviously, production of the mirror images will allow Verigy to ascertain when and under what circumstances these documents were deleted from Mayder's computer, which would be useful and relevant information for the preliminary injunction.

In addition, the evidence produced to date demonstrates Mayder's willingness manipulate the evidence. Thus far, he has [redacted] (Morton Decl., Ex. F), [redacted] [redacted] (Morton Decl., Ex. H), and [redacted] [redacted] so that the effective date occurred after he left Verigy (Morton Decl,, Ex. G). These documents demonstrate Mayder's pattern of altering documents and concealing the truth about the STSI product and intellectual property. Production of the mirror

images and a subsequent examination by Verigy's forensics expert will allow Verigy to determine the true scope of Mayder's activities and true nature and extent of Mayder's malfeasance.

While it is true that Judge Whyte's August 24 Order – which is not a discovery order – does not in itself require that the hard drives be turned over in discovery, Judge Whyte's order does require that the hard drives be preserved as evidence, which impliedly contemplated that mirror image copies of the hard drives would indeed be turned over at some point in the litigation. (*See* Morton Decl., ¶ 15, Ex. J.) Judge Whyte's order cannot be said to immunize Defendants from turning over the hard drives.

Furthermore, while it is true that Defendants' counsel has offered to produce metadata for specific documents if requested, such an offer is insufficient. Requiring Verigy to give a list of documents for which it seeks metadata will tip Defendants off as to which documents Verigy considers to be important and would impermissibly intrude into Verigy's attorney work product. Also, this offer would not resolve the issue of the apparent mass deletions. Given the evidence of Mayder's clear willingness to alter dates and documents, the only way that Verigy can ascertain the true authors and dates for documents is by examining the source hard drives. Finally, Defendants have produced several documents that are allegedly in native format with the metadata already produced. (*See, e.g.*, Morton Decl., ¶ 16, Ex. K.) However, an examination of the document properties shows that the metadata has been impermissibly altered by Defendants' counsel (*i.e.*, [REDACTED] ). (*Id.*, ¶ 17, Ex.L.)

**B. VERIGY HAS OFFERED CONCESSIONS TO ASSUAGE ANY PRIVACY OR PRIVILEGE CONCERNS**

Defendants' most recent reason for refusing to produce the mirror images is "privilege and privacy concerns." However, during the meet and confer session on September 27, 2007, the parties agreed on a procedure for removing all privileged documents from the mirror images through the use of a third party neutral forensics expert. (*Id.*, ¶ 8; Fowler Decl., ¶ 4.) On October 1, 2007, Verigy agreed to allow Defendants to remove all personal photographs and videos on the mirror images that were not related to Verigy or STSI. (Gagliardi Decl., ¶ 8.) In the event that

privileged documents are inadvertently left on the mirror image, Verigy's counsel will comply with their ethical obligations and inform Defendants' counsel immediately upon discovery of any such documents, as Verigy's counsel has previously done in this action. As for any remaining personal, private information that may reside on the hard drives having no relevance to this litigation, Verigy's counsel has no use for and is entirely uninterested in such information. Finally, there is a protective order in place in this action and the mirror images could be marked "Highly Confidential—Attorneys' Eyes Only" to give Defendants further assurances as to the secrecy of the mirror images.

### C. DEFENDANTS' COUNSEL HAS TWICE AGREED TO PRODUCE THE MIRROR IMAGES AND SHOULD NOT BE ALLOWED TO RENEGE ON THIS AGREEMENT

As discussed above, Defendants' counsel *twice* specifically agreed during meet-and-confer sessions to produce bit for bit copies of the hard drives – once on August 29, 2007 and a second time on September 26, 2007. (Morton Decl., ¶¶4, 8 and Ex. C (memorializing the first such agreement); Fowler Decl., ¶¶3, 4; *see also*, Gagliardi Decl., ¶7 and Ex. F) (memorializing the second such agreement). The first time Defendants reneged, Mr. Pasquinelli claimed that he had misread the August 24 Order. (Morton Decl., ¶ 8.) Even assuming Mr. Pasquinelli's first agreement was arguably a mistake and therefore excusable, there is no such excuse regarding Defendants' counsel's second agreement. Verigy's counsel sent Defendants' counsel a meet and confer letter on September 18, 2007 setting forth Verigy's position with respect to Request No. 17. (Gagliardi Decl., ¶ 2, Ex. A.) Daniel Mount, Defendants' lead counsel, and Mr. Pasquinelli were both physically present during the September 26, 2007 meet and confer, and at that time they both agreed to produce the mirror images. (Morton Decl., ¶ 8; Fowler Decl., ¶ 4.) This agreement was not conditioned on receiving permission from Mayder, nor was it termed "tentative" or "conditional" in any respect whatsoever. (Morton Decl., ¶ 8.) Yet Defendants' counsel reneged for the second time. (Morton Decl., ¶ 9; Gagliardi, ¶ 6, Ex. E.) Defendants' counsel twice agreed to produce the mirror images, and has twice reneged. Counsel should be compelled to comply with the discovery agreements they made. *See Scarfo v. Cabletron Systems, Inc.,* 153 F.R.D. 9, 11-12 (D.N.H. 1994).

## IV. CONCLUSION

For the forgoing reasons, Verigy respectfully requests that the Court issue an order compelling Romi Mayder and STSI to produce bit for bit copies – *i.e.*, a mirror images – of Romi Mayder's and STSI's computer's hard drives.

Dated: October 2, 2007

BERGESON, LLP

By: /s/
Melinda M. Morton

Attorneys for Plaintiff
VERIGY US, INC.