1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:   (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation,<br><br>      Plaintiff,<br><br> vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>      Defendants. | Case No. C07 04330 RMW (HRL)<br><br>**VERIGY'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL AMENDED RESPONSE AND RESPONSIVE INFORMATION TO REQUEST FOR PRODUCTION NO. 17 FROM ROMI MAYDER AND SILICON TEST SYSTEMS, INC.**<br><br>Date:   October 19, 2007<br>Time:  10 a.m.<br>Place:  Courtroom: 2<br>Judge:  Honorable Howard R. Lloyd<br><br><br>Complaint Filed: August 22, 2007<br>Trial Date:    None Set |

Plaintiff Verigy US, Inc. ("Verigy") respectfully submits the following reply brief in support of its motion for an order compelling defendants Romi Omar Mayder ("Mayder") and Silicon Test Systems, Inc. ("STSI") (collectively, "Defendants") to produce bit for bit copies – *i.e.,* mirror images – of Romi Mayder's and STSI's computer's hard drives.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants do not deny in their opposition that they *twice* agreed to produce bit for bit copies of their hard drives (*i.e.*, mirror images) during the meet and confer process and then reneged on these agreements. That should end the matter on the instant motion. Defendants should be compelled to honor counsel's agreements made during the meet and confer process.

Defendants do say in their opposition, after forcing this motion by reneging on their prior agreements to produce mirror images of their hard drives, that they will produce them after all – but only to an appointed special master pursuant to a drawn out "protocol" that will ensure, at this late date, that Verigy will not have access to the information until long after its reply is due on its pending motion for preliminary injunction (October 25, 2007), and long after the hearing on the motion (November 9, 2007). Such a position is unfairly prejudicial to Verigy.

On the other hand, Defendants' interest in preserving privileged information can be adequately protected through Defendants' *direct and immediate production to Verigy* of the mirror images together with Defendants' creation of a privilege log setting forth each assertedly privileged item. Verigy stipulates, and will submit to a Court order, that such items will not be used by Verigy (absent a subsequent ruling from the Court that a given item is not in fact privileged), nor will Verigy use any other actually privileged items on the hard drives inadvertently left off the privilege log, and no waiver of any privilege will attach to those items identified on the log or in the hard drives simply by virtue of production of the hard drives. This is the protocol that should be used, not the cumbersome and unfairly time consuming special master procedure suggested by Defendants.

For these reasons, as more fully discussed below and in the moving papers, Defendants should be compelled to immediately produce the bit for bit copies of their hard drives to Verigy.

1

## II. ARGUMENT

### A. Defendants Do Not Refute That They Reneged on Their Prior Agreement to Produce Bit-for-Bit Copies of Hard Drives.

Defendants' opposition to Verigy's motion to compel is distinguished by the absence of any denial (or evidence supporting a denial) of *a fact evidenced in* Verigy's moving papers:

> Defendants' counsel *twice* specifically agreed during meet-and-confer sessions to produce bit for bit copies of the hard drives – once on August 29, 2007 and a second time on September 26, 2007. (Morton Decl., ¶¶4, 8 and Ex. C (memorializing first such agreement); Fowler Decl, ¶¶3,4; *see also*, Gagliardi Decl., ¶7 and Ex. F (memorializing the second such agreement).)

(Motion, at 7:11-15) (emphasis in original). As mentioned, defense counsel does *not* deny the existence of such agreements. Nor does defense counsel deny that their clients have *reneged on* such agreements. (*See*, Morton Decl., ¶9; Gagliardi Decl., ¶6 and Ex. E (copy of email from defense counsel dated September 27, 2007 (the day after the second agreement to produce bit for bit copies), at p.2) ("'Bit for Bit' copy of the disk drive #17: Unfortunately, Mr. [Romi] Mayder is not open to producing his disk drives.").)

Defendants' agreement to produce the bit for bit copies of hard drives should be the beginning and end of the discussion on the instant motion to compel. As mentioned in the moving papers: "Defendants should be compelled to comply with the discovery agreements they made. *See Scarfo v. Cabletron Systems, Inc*., 153 F.R.D. 9, 11-12 (D.N.H. 1994)." (Motion, at 7:26-28). Otherwise, Defendants will have been permitted to flaunt the rules requiring that the necessary meet and confer process for discovery disputes be conducted *in good faith*. *See*, Fed.R.Civ.P. 37(a)(2); N.D.Cal. Civil L.R. 1-5(n) ("'Meet and confer' . . . means to communicate directly and discuss *in good faith* the issue(s) required . . .") (emphasis added); & N.D.Cal. Civil L.R. 37-1(a).

### B. Defendants Misconstrue the Relevant Case Law: No Special Master Protocol is Required for Producing Bit for Bit Copies of Hard Drives.

Although Defendants argue in one breathe that "[t]he courts reject simply turning over a bit-for-bit copy of one's hard drive to another" (Opposition Brief, at 1:1-2), Defendants concede, *as they must*, in the very next breathe that "production of a bit-for-bit copy of a hard drive is *frequently allowed*." (*Id.*, at 1:2-3) (emphasis added); *see, e.g., Balboa Threadworks, Inc. v.*

2

*Stucky*, 2006 WL 763668 *3 (D.Kan. March 24, 2006)("It is not unusual for a court to enter an order requiring the mirror imaging of the hard drives of any computers that contain documents responsive to an opposing party's request for production of documents"), *citing, Communications Center, Inc. v. Hewitt,* 2005 WL 3277983 *1 (E.D.Cal. 2005).  "Thus, *in similar cases where trade secrets and electronic evidence are both involved, the courts have granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation*.  This is one method of assuring the preservation of evidence since electronic evidence can be easily erased and manipulated, either intentionally or unintentionally (by overwriting through continued use of the computer." *Balboa Threadworks, Inc. v. Stucky*, 2006 WL 763668 * 3 (citations omitted; emphasis added).

Defendants imply that such production of bit for bit copies of hard drives is permitted only pursuant to a particularized form of "protocol":

> The protocols they [district courts] impose generally involve appointing a neutral technical expert as a special master to hold the bit-for-bit copy and to conduct all searches.  The requesting party submits proposed keywords for searching the drive to the producing party, and the producing party has an opportunity to object to those searches.  The special master conducts approved searches and gives the results to the producing party.  The producing party then reviews the documents, decides which are responsive to an existing request for production and which are objectionable, logs documents to be withheld based on privilege, applies Bates-numbering and confidentiality designations, and then turns over the remaining documents to the requested party.

(*See id*., at 1:19 – 2:7) (citing no specific authorities).  However, Defendants' implied assertion that this is the only procedure under which the production of bit for bit copies of hard drives is allowed or advisable is an incorrect and misleading distillation of the case law.  More correctly construed and harmonized, the relevant cases stand for the proposition that *direct production* of bit for bit copies of hard drives *is permitted in cases involving trade secrets and electronic evidence* and that there is no fixed protocol for production in all cases.

In *Ameriwood v. Liberman*, 2006 WL 382591 (E.D.Mo. Dec. 27, 2006), a trade secret misappropriation case cited by Defendants, the court noted that while there was no "routine right of **direct access** to a party's electronic information system, . . . such access *might be justified in some circumstances*." 2006 WL 382591 *2 (emphasis added).  "'*Courts have found that such*

3

*access is **justified in cases involving both trade secrets and electronic evidence***, and granted permission to obtain mirror images of the computer equipment'" in such cases. *Id.* (emphasis added; citations omitted). None of the other decisions cited by Defendants involve trade secret misappropriation and are thus distinguishable for that reason alone.

For example, *Hedenburg v. Aramark*, 2007 WL 162716 (W.D.Wash. Jan. 17, 2007), an employment case cited by Defendants, the district court observed that "[t]he common thread of these cases is that *a thorough search of an adversary's computer is sometimes permitted where the contents of the computer go to the heart of the case*. This court has in other cases permitted mirror image searches of computers *where, for example, one party demonstrates the likelihood that trade secrets were forwarded to or sent by it*. Here, the central claims the case are wholly unrelated to the contents of plaintiff's computer." 2007 WL 162716 *2 (emphasis added). Similarly, in a product defect decision cited by Defendants, *In re Ford Motor Company,* 345 F.3d 1315 (11th Cir. 2003), the court ruled that, "[w]hile some kind of *direct access* [to an adversary's electronic databases] might be *permissible in certain cases*, this case has not been shown to be one of those cases . . . without at-the-outset a factual finding of some non-compliance with discovery rules." 345 F.3d at 1317 (emphasis added).[1]

In *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050 (S.D.Cal. 1999), a trademark infringement (*not* trade secret misappropriation) case cited by Defendants, the plaintiff "request[ed] that it be able to access Defendant's hard drive to attempt to recover deleted files which may be stored on the hard drive of Defendant's personal computer." 60 F. Supp.2d at 1052. The district court specifically stated that "[t]he only restriction in this discovery is that the producing party be protected against undue burden and expense and/or invasion of privileged matter." *Id.*, at 1053. The court therefore granted the motion to compel such discovery, and while

---

[1] Here, unlike in *In re Ford Motor Company*, there is evidence of non-compliance with the discovery rules. As shown in the moving papers (Motion, at 5:23 – 6:2, *citing* Morton Decl., Exs., F, G & H), Romi Mayder has doctored evidence in this case. This evidence is un-refuted by Defendants, who pointedly declined to comment on it in their opposition. (*See,* Opposition Brief, at 2:18-22).

4
VERIGY'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL         Case No. C07-04330 RMW (HRL)

the court devised a protocol to meet the defense's privilege concerns, *id*., at 1054-55, the court did not state nor suggest that this would be required in all cases under all circumstances.

Underscoring that the *Playboy Enterprises* protocol was an ad hoc construct, not an inflexible rule of law, the district court in *Simon Property Group, L.P. v. mySimon, Inc.,* 194 F.R.D. 639, (S.D.Ind. 2000) (another trademark infringement decision cited by Defendants), in allowing plaintiff access to the defendant's hard drives, stated:

> The challenge here is to arrange for this effort to be undertaken without undue burdens on defendant, in terms of its business, its relationships with its attorneys, and the privacy of its founders. The court believes that the basic structure adopted by the court in *Playboy Enterprises, [supra]*, offers the best approach here, although *the court is not adopting at this time all aspects of that court's protocol.*

194 F.R.D. at 641 (emphasis added).

In an antitrust case cited by Defendants, *Rowe Entertainment, Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421 (S.D.N.Y. 2002), the court stated: "The protocol set forth here for the defendants' production of emails is *necessarily only a set of guidelines*, and *the parties are free to add detail and otherwise modify the protocol by agreement*." 205 F.R.D. at 432 (emphasis added).[2] Similarly, in *Balboa Threadworks, Inc. v. Stucky, supra,* 2006 WL 763668, a copyright infringement decision cited by Defendants, the district court ordered production of mirror images "in accordance with the protocol previously agreed to by the parties." 2006 WL 763668 *4. In light of the parties' agreement on the procedure for production, the court pointedly declined to consider the need for a special master. *Id*., *4 n.4.

Thus, a fair reading of the case law suggests that there is no necessary, fixed, special master protocol which must be followed in every case for the production of bit for bit hard drives. Further, *direct access* to hard drives is permitted in cases like this one, involving both trade secrets and electronic evidence. The district court must merely in each case protect against undue burden to the producing party and refrain from an "invasion of privileged matter." *Playboy Enterprises*,

---

[2] As discussed above, the parties in this case did reach agreement twice on the production of bit for bit copies of Defendants' hard drives, and twice Defendants reneged on those agreements.

60 F.Supp.2d at 1053; *see also, Ameriwood*, 2006 WL 3825291 *2. And, in cases – like this one – where the parties have agreed on a protocol, the court enforces the agreement. *Balboa,* 2006 WL 763668 *4 & n.4; *see also, Rowe*, 205 F.R.D. at 432 (parties free to agree to their own protocol).

### 1. Defendants Would Not be Prejudiced by Direct Production to Verigy.

In this case, there is no undue burden to Defendants in producing bit to bit copies of their hard drives because these have already been created back in July 2007, and ordered preserved by Judge Whyte in his August 24 order, and they can be readily updated. Defense counsel effectively conceded the lack of prejudice in twice agreeing to production, initially unconditionally.

Further, Defendants' interest in preserving privileged information can be adequately protected through a streamlined protocol involving Defendants' *direct and immediate production to Verigy* of the bit for bit copies of their hard drives. Defendants can simultaneously, or even afterward, create a privilege log setting forth each assertedly privileged item. Verigy stipulates, and will submit to a Court order, that such items will not be used by Verigy (absent a subsequent ruling from the Court that a given item is not in fact privileged), nor will Verigy use any other actually privileged items on the hard drives inadvertently left off the privilege log, and no waiver of any privilege will attach to those items identified on the log or in the hard drives simply by virtue of production of the hard drives.

### 2. Verigy Would be Prejudiced by Defendants' Proposed 'Protocol'.

On the other hand, while it may earlier on have been agreeable to appoint a special master who would receive production of the bit for bit copies of hard drives and preside over a word search protocol – and, indeed, the parties did agree to a variation of this *several weeks ago* on September 26 but Defendants reneged the very next day (*see,* Gagliardi Decl., ¶7 and Ex.F) –, it is now no longer a fair and workable procedure for providing the evidence in advance of the impending October 25, 2007 deadline for Verigy's reply brief on its motion for preliminary injunction set to be heard November 9. Instead, such a cumbersome and time consuming protocol would unfairly reward Defendants for their bad faith delay tactics in agreeing, then refusing, then re-agreeing, then re-refusing (thus forcing this motion) and now finally relenting (under unilateral conditions) to produce bit for bit copies of hard drives.

1  The protocol now suggested by Defendants would be undeniably – and unnecessarily –
2  time consuming and unfairly prejudicial to Verigy.  Instead of Verigy directly receiving the bit for
3  bit copies of hard drives and immediately commencing review of them, first, a special master
4  would need to be appointed then brought up to speed on the nature of his or her charge.  This
5  could several days and possibly weeks.  Second, under Defendants' proposed protocol, the special
6  master would receive keyword searches and the defense would "ha[ve] an opportunity to object to
7  those searches" (Opposition Brief, at 2:1-3), thereby delaying the actual searching for an
8  unspecified period of time but undoubtedly several days.  Third, the special master would then
9  "give[] the results to the producing party" (*id.*, at 2:4), *i.e.,* Defendants, *not* Verigy.  Then, fourth,
10  Defendants would get to delay further the day of production by days or weeks by "decid[ing]
11  which are responsive to an existing request for production and which are objectionable, log[ging]
12  documents to be withheld based on privilege, appl[ying] Bates-numbering and confidentiality
13  designations." (*Id*., at 2:5-7).  Only after all of this has been done, only then would the remaining
14  documents be turned over to Verigy.  (*Id.*).

15  Yet, as mentioned, Verigy faces an impending October 25 deadline for its reply brief on its
16  pending motion for preliminary injunction set to be heard November 9, in anticipation of which
17  Judge Whyte expressly ordered that the hard drives be preserved.  (Order, filed August 24, 2007
18  [Docket No. 24], at 6:26-27].)   Due process, if not common sense, requires that Verigy be
19  allowed to examine bit for bit copies of the hard drives meaningfully in advance of October 25.
20  Moreover, as discussed, Defendants agreed to produce the bit for bit copies of their hard drives
21  *unconditionally* more than six weeks ago.  Finally, this is a trade secret misappropriation case.
22  Under the circumstances, the case law does not require the creation of a costly and time-
23  consuming protocol as a pre-condition for production of the bit for bit hard drives.

24  **C.  Any Special Master Costs Should be Borne by Defendants, *not* Verigy.**

25  Assuming *arguendo* that the Court appoints a special master, the Court should nevertheless
26  reject Defendants' contention that Verigy shoulder the special master's fees.

27  Ordinarily, the producing party bears the costs of production. 2 Schwarzer, Tashima &
28  Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, ¶ 11:1937 (2005), at

7
VERIGY'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL           Case No. C07-04330 RMW (HRL)

p.11-236; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) ("the presumption is that the responding party must bear the expense of complying with discovery requests").  Further, Defendants – not Verigy – created the peculiar circumstances in which production of the bit for bit copies is warranted and under which such production might arguably be made at some expense to a third party special master.  As Verigy stated in the moving papers:

> [T]he evidence produced to date demonstrates [Romi] Mayder's willingness to manipulate the evidence.  Thus far he has backdated a laboratory notebook [citation to evidence], lied to patent counsel concerning the true author of a patent disclosure [citation], and postdated an agreement with a suppler so that the effective date occurred after he left Verigy. [Citation].  These documents demonstrate Mayder's pattern of altering documents and concealing the truth about the STSI product and intellectual property.  Production of the mirror images and a subsequent examination by Verigy's forensic's expert will allow Verigy to determine the true scope of Mayder's activities and true nature of the extent of Mayder's malfeasance.

(Motion, at 5:23 – 6:2, *citing* Morton Decl., Exs., F, G & H).  Defendants decline to dignify the "aspersions" by refuting them. (Opposition Brief, at 2:18-22).   So be it: Romi Mayder's willingness to manipulate evidence is un-refuted for purpose of this motion.   It is Mayder's willingness to tamper with evidence that warrants the production of the bit for bit copies of the hard drives – and it is Defendants themselves – in order to protect *their* privacy and *their* privilege rights as to information on the hard drives – who request that the production be made not directly to Verigy but instead to a third party special master.  Under these circumstances, it is Defendants, not Verigy, who should pay for the expense of a special master if one is appointed.

## III.    CONCLUSION

For the forgoing reasons, Verigy respectfully requests that the Court issue an order compelling Romi Mayder and STSI to produce bit for bit copies – *i.e.,* a mirror images – of Romi Mayder's and STSI's computer's hard drives.

Dated:  October 12, 2007                BERGESON, LLP


By: _____/s/_____
              Melinda M. Morton

Attorneys for Plaintiff
VERIGY US, INC.

8
VERIGY'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL        Case No. C07-04330 RMW (HRL)