Daniel S. Mount, Esq. (Cal. Bar No. 77517)
Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
Kevin M. Pasquinelli, Esq. (Cal. Bar No. 246985)
Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax:    (408) 998-1473
Email: dmount@mount.com
       kspelman@mount.com
       dfingerman@mount.com
       kpasquinelli@mount.com

Attorneys for Defendants Romi Mayder, Wesley Mayder,
Silicon Test Systems Inc., and Silicon Test Solutions LLC

United States District Court
Northern District of California, San Jose Division

| | |
|---|---|
| VERIGY U.S. INC., a Delaware corporation | Case No. 5:07-cv-04330 (RMW) (HRL) |
| Plaintiff, | **Defendants' Opposition to Verigy's Letter-Motion to Strike Exhibit C** |
| vs. | |
| ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS INC., a California corporation; SILICON TEST SOLUTIONS LLC, a California limited liability corporation, | Hearing: None<br>Judge:   Hon. Howard R. Lloyd |
| Defendants. | |

**Introduction**

Verigy's letter-motion does not object to this court's October 24, 2007 ruling on the protocol for production of the defendants' hard drives. Instead, Verigy seeks to strike some dicta from the court's order and an exhibit submitted by the defendants.[1]

Rule 408 of the Federal Rules of Evidence generally bars the use of confidential settlement communications to establish or negate liability or to impeach the credibility of a witness. Verigy seeks to shoehorn Exhibit C into Rule 408 by misstating the defendants' argument.

Rule 408 expressly allows use of settlement communications for "negating a contention of undue delay." The defendants used Exhibit C only after Verigy accused them of delaying discovery. Exhibit C shows the legitimacy of the defendants' concerns about past discovery abuses. The legitimacy of these concerns explains why the defendants did not simply hand over their hard drives and negates Verigy's accusation of undue delay.

Exhibit C also shows Verigy's wrongful conduct during negotiations, when it made abusive search requests. The discovery motion had no direct bearing on liability, and no witness was impeached. Furthermore, it is questionable whether Verigy considered Exhibit C to be a confidential settlement communication at any time before it realized that its discovery motion lacked merit. Therefore, the court should deny Verigy's letter-motion.

**Argument**

**I. The defendants used Exhibit C to negate Verigy's contention of undue delay**

Rule 408 expressly allows the use of confidential settlement communications for "negating a contention of undue delay."[2] A legitimate explanation for delay negates a contention that a delay was "undue."[3] Here, the defendants explained their "unwillingness to immediately accede to [Verigy's] requested consent" to search their hard drives by demonstrating Verigy's past abusive conduct.[4]

When Verigy sought unfettered access to the defendants' hard drives, the defendants asked for a protective search protocol to safeguard legitimate interests, such as privileges and privacy. The

---

[1] Docket Nos. 81 and 78, respectively
[2] Rule 408(b)
[3] *See e.g.*, *Freidus v. First National Bank*, 928 F.2d 793, 795 (8th Cir. 1991)
[4] *Freidus*, 928 F.2d at 795

Case No. 5:07-cv-04330 (RMW) (HRL)                                                                                              Page 1
Defendants' Opposition to Verigy's Letter-Motion to Strike Exhibit C

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

courts uniformly recognize that such protection is warranted because one adversary's unfettered access to another's computer systems is likely to result in abusive or overbroad searching beyond the scope of discovery permitted by Rule 26 of the Federal Rules of Civil Procedure.[5]

Verigy replied that the defendants merely sought to delay discovery. Verigy introduced its October 12 reply brief with this argument:

> Defendants do say in their opposition, after forcing this motion … that they will produce [the hard drives] after all — but only to an appointed special master pursuant to a drawn out "protocol" that will ensure, at this late date, that Verigy will not have access to the information until long after its reply is due on its pending motion for preliminary injunction (October 25, 2007), and long after the hearing on the motion (November 9, 2007). Such a position is unfairly prejudicial to Verigy.[6]

At the October 19 hearing, the defendants sought to negate this accusation of undue delay by emphasizing the legitimacy of their concerns about Verigy's past conduct. They informed the court at the hearing that Verigy had previously requested abusive and overbroad searches. The court expressed doubt about this assertion and noted in its written Order On Plaintiff's Motion To Compel that it initially believed this argument was advanced "somewhat facetiously."[7]

In subsequent briefing, the defendants proved their argument was not facetious by submitting the email in which Verigy had requested the overbroad searches. This proved Verigy's past conduct and demonstrated that the defendants had good reason for resisting Verigy's unfettered access to their hard drives. In the accompanying letter brief, the defendants explained:

> Verigy's proposal in section 3 would give it unfettered access to search the disks, which ignores the point of this exercise. The Defendants articulate two kinds of searches in sections 3a and 3b. Searches in 3a are presumptively within the scope of Rule 26, relating directly to Verigy's alleged trade secrets and the status of the disks. Searches in

---

[5] *See e.g.*, *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003); *Playboy Enterprises Inc. v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999); *Hedenburg v. Aramark Am. Food Servs.*, 2007 U.S. Dist. LEXIS 3443 (W.D. Wash. 2007); *Simon Property Group L.P. v. MySimon Inc.*, 194 F.R.D. 639 (S.D. Ind. 2000); *Ameriwood Industries Inc. v. Liberman*, 2006 U.S. Dist. LEXIS 93380, 2006 WL 3585291 (E.D. Mo. Dec. 27, 2006); *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421 (S.D.N.Y. 2002); *Balboa Threadworks Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 U.S. Dist. LEXIS 29265, 2006 WL 763668 (D. Kan. 2006)

[6] Verigy's Reply in support of the motion to compel (Docket No. 60), at 1:10–15

[7] Order at 3:16–18, October 24, 2007, Docket No. 81

> section 3b *may* be within the scope of Rule 26, but are not necessarily so. Thus, the Defendants must have an opportunity to object. …
>
> There might be abuses without the 3b protections. Indeed, Plaintiffs have already demonstrated their willingness to make overly broad requests for production. For example, in pre litigation discussions they requested they [the hard drives] be searched for the letter "V." Attachment C is a true and correct copy of the letter making this request.[8]

The defendant's efforts to obtain a protective protocol were designed to protect legitimate interests. Only after Verigy's accusation of undue delay did the defendants proffer Exhibit C to demonstrate past abuses. This proved the reasonableness of the defendants' explanation for their "unwillingness to immediately accede to [Verigy's] requested consent" to search the hard drives.[9] The court agreed and did not find any undue delay.

## II. Rule 408 allows settlement documents to show wrongful conduct during negotiations

Rule 408 allows a party to introduce settlement communications to show that wrongful conduct occurred in the course of negotiations.[10] As discussed above, Exhibit C proves Verigy's abusive requests during negotiations. The court found Verigy's past request to be "patently overbroad."[11] The past attempt to go fishing beyond the scope of discovery permitted by Rule 26 during settlement discussions was wrongful.

## III. Exhibit C does not establish or negate liability

Rule 408's chief purpose is to prevent the use of settlement communications to prove (or disprove) liability. The opening sentence of the Advisory Committee Note to Rule 408 states, "As a matter of general agreement, evidence of an offer to compromise a claim is not receivable in evidence as an admission of, as the case may be, the validity or invalidity of the claim." The remainder of the Notes from the Advisory Committee, House, and Senate also focus on this issue. Verigy does not suggest in its letter-motion to strike Exhibit C that the defendants used the exhibit for this purpose.

---

[8] Defendants' October 22, 2007 letter brief at page 1, ¶ 3 (emphasis in the original) and page 2, ¶ 3
[9] *Freidus*, 928 F.2d at 795
[10] *Uforma/Shelby Business Forms Inc. v. NLRB*, 111 F.3d 1284, 1293–94 (6th Cir. 1997)
[11] Order On Plaintiff's Motion to Compel at 4:2

### IV. There was no testifying witness to impeach

Rule 408 also prohibits the use of settlement documents for "impeachment."[12] This assumes that there is a testifying *witness* to impeach.[13] There was no witness in this case, however. No testimony was taken at the hearing, and the defendants did not mention any written declaration. Indeed, Verigy makes no attempt to identify any *witness* whose credibility is at issue.

Instead, Verigy identifies only one statement by its *counsel*, made during oral argument. Even if the exhibit does impeach Verigy's *counsel*, as opposed to a *witness*, Rule 408 does not apply to oral arguments of counsel.[14] Lawyers may argue about the credibility and impeachment of testifying witnesses, but it would be awkward for Verigy's counsel (whom the defendants believe to be generally honest and honorable) to argue that her own credibility in representations to the court was impeached.

### V. The defendants did not impeach any statement by Verigy's counsel

Verigy's letter-motion to strike Exhibit C identifies two statements by its counsel during or argument as being relevant.

First, Verigy argues that the "Defendants offered Exhibit C in an attempt to (1) impeach Verigy's statements [by its counsel, during oral argument] that it had no intention of running unreasonable queries."[15] This ignores the plain text of the defendants' brief. The fact asserted in that statement concerns Verigy's state of mind and its intentions for future conduct. Neither the defendants nor the court referred to Verigy's state of mind or future intentions, however. Rather, the defendants and the court both discussed how search terms that Verigy had requested *in the past* were "patently overbroad."[16] Thus, Verigy's counsel's statement was not contradicted or impeached, and the court does not appear to have questioned the credibility of that assertion or the attorney who uttered it.

---

[12] Rule 408(a)
[13] *See e.g.*, *Brocklesby v. U.S.*, 767 F.2d 1288, 1292–94 (9th Cir. 1985)
[14] *See Brocklesby*, 767 F.2d at 1293, footnote 2 (mentioning the use of a settlement communication during counsel's oral arguments in a post-trial hearing)
[15] Verigy's letter-motion at page 2, ¶ 3
[16] Order On Plaintiff's Motion to Compel at 4:2

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Second, Verigy identifies: "Defendants offered Exhibit C in an attempt to … (2) to show that Verigy had previously agreed to share search terms with Defendants." Verigy provides no explanation why it believes this is relevant. Verigy does not argue that this tends to impeach or to establish or negate a claim or defense. No contrary statement by any witness or by Verigy's counsel is identified. In fact, Verigy's letter-motion identifies no reason at all why proof of Verigy's earlier agreement to share search terms was inappropriate for any reason, let alone under Rule 408.

## VI. It is questionable whether Exhibit C is a settlement document

Rule 408 is only triggered where a party seeks to introduce evidence of "statements made in compromise negotiations regarding the claim."[17] This requires that the statement be intended to further negotiations to compromise and release a disputed claim.[18] The email in Exhibit C does not appear to have been intended to compromise a disputed claim. Also, Verigy differentiated between Exhibit C and other pre-litigation communications, where it contemporaneously asserted protection under Rule 408.

### A. Verigy did not appear to be offering to compromise a disputed claim

During negotiations, the defendants proposed that they would be released from all claims without the need for litigation if Verigy found nothing improper on the hard drives. Verigy's counsel indicated that Verigy would *not* release its claims on the basis of what it found on the hard drives. Verigy was apparently fishing for pre-litigation discovery.

In the absence of an offer to release claims, Verigy's email in Exhibit C was a naked request to search the defendants' hard drives and not an offer to settle.

### B. Verigy differentiated between some documents where it claimed Rule 408 status and other documents, where it did not

Even if an uncommunicated offer to release claims were somehow on the table, Verigy appeared to indicate at the time of the communication that it did not intend Exhibit C to be a confidential settlement document.

---

[17] Rule 408(a)(2)

[18] *Winchester Packaging v. Mobil Chemical Co.*, 14 F.3d 316 (7th Cir. 1994); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2d Cir. 1997)

Exhibit C is an email dated August 6, 2007. The instant letter-motion relies on an earlier email between the parties, dated July 24, 2007. Verigy argues that the July 24 email shows its understanding "that all communications regarding the dispute" between the parties and their attorneys leading up to this litigation were in contemplation of settlement. The text of the July 24 email belies this argument, however. Instead, it shows that Verigy's practice in this case was to differentiate between (1) some documents for which it claimed settlement-document status and (2) other documents.

The July 24 email states, in its entirety:

> Enclosed please find the draft agreement. We look forward to discussing this with you tomorrow. *The document* should be treated as a confidential settlement communication under both the state and federal rules.[19]

The attached document, "verigy-mayder agreement.doc" was not a proposed settlement, as the file name suggests. Rather, it was Verigy's proposed protocol for searching the defendants' hard drives and for maintaining the confidentiality of information during negotiations.

Verigy acknowledges in its letter-motion that the July 24 email was part of an extended discussion.[20] In parentheses, Verigy explains that, although it chose to incorporate earlier emails within the July 24 email, it was withholding those other emails from the court.[21] The practice of incorporating earlier emails at the bottom of each subsequent message in a chain is common among attorneys. This also occurred in Exhibit C (the August 6 email).

Thus, Verigy chose to incorporate many earlier emails each time it sent a new one. Verigy also chose at the time to specifically designate only "the document" attached to the July 24 email as a "confidential settlement communication." Verigy had declined to assert that status for the July 24 email itself or for any other individual email, however. That status was reserved for "the document" attached to the July 24 email. By differentiating between (1) "the document" and (2) the emails that

---

[19] Verigy's letter-motion at Exhibit B (emphasis added)
[20] Verigy's letter-motion at page 2, ¶ 1
[21] Verigy's letter-motion at page 2, ¶ 1

Case No. 5:07-cv-04330 (RMW) (HRL)                                                                                  Page 6
Defendants' Opposition to Verigy's Letter-Motion to Strike Exhibit C

1  were the main part of the discussion, Verigy evinced a contemporaneous intention to limit its claim
2  for protection under Rule 408 to "the document."[22]

### Conclusion

Verigy does not seek any substantive change to this court's October 24, 2007 ruling on its discovery motion. Verigy does not object to the protocol. It seeks only to strike some dicta and an exhibit to the defendants' brief.

The defendants offered Exhibit C to negate Verigy's accusation of undue delay and to show Verigy's wrongful conduct during negotiations. The document does not establish or negate liability. There was no witness to impeach. No statement of counsel was impeached. Given Verigy's contemporaneous practice of differentiating between various documents, it did not appear to assert Rule 408 status for the August 6 email in Exhibit C.

Accordingly, the court should deny Verigy's letter-motion to strike Exhibit C and references to Exhibit C from the record.

Dated: November 8, 2007         Mount & Stoelker, P.C.
                                Daniel H. Fingerman

                                /s/
                                Attorneys for Defendants Romi Mayder, Wesley Mayder,
                                Silicon Test Systems Inc., and Silicon Test Solutions LLC

Z:\CLIENTS\S CLIENTS\Sites001\Attorney_Notes\Working Pleadings\Opp re Mtn Strike Exhbit C.doc

---

[22] The defendants do not adopt Verigy's position; they merely note that Verigy showed that intention.