1  Daniel S. Mount, Esq. (Cal. Bar No. 77517)
   Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
2  Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
   Kevin M. Pasquinelli, Esq. (Cal. Bar No. 246985)
3  Mount & Stoelker, P.C.
4  RiverPark Tower, Suite 1650
   333 West San Carlos Street
5  San Jose CA 95110-2740
   Phone: (408) 279-7000
6  Fax:   (408) 998-1473
7  Email: dmount@mount.com
          kspelman@mount.com
8         dfingerman@mount.com
          kpasquinelli@mount.com
9
   Attorneys for Defendants Romi Mayder, Wesley Mayder,
10 Silicon Test Systems Inc., and Silicon Test Solutions LLC

United States District Court
Northern District of California, San Jose Division

| | |
|---|---|
| VERIGY U.S. INC., a Delaware corporation<br><br>Plaintiff,<br><br>vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS INC., a California corporation; SILICON TEST SOLUTIONS LLC, a California limited liability corporation,<br><br>Defendants. | Case No. 5:07-cv-04330 (RMW) (HRL)<br><br>**Defendants' Sur-Reply in Opposition to Order to Show Cause Re Preliminary Injunction**<br><br>Date:   December 14, 2007<br>Time:  9:00 a.m.<br>Judge: Hon. Ronald M. Whyte |

**Submitted Under Seal**
**Redacted Version For Public Filing**

**Redacted Version For Public Filing**

# Table of Contents

Introduction..................................................................................................................................1

Argument......................................................................................................................................3

I. Flash Enhancer does not use Verigy's alleged compilation ...................................................3

    ███████████████████████████████████████████████████..................................3

    B. NOR testing features ███████████████████████ and do not naturally evolve from NAND testing features ...................................................................................3

    C. Any similarity between Flash Enhancer and ██████ is due to similarities between the ███████████████████████████████████████████████████..................5

    D. The original █████████████████..................................................................6

    E. The timing of Flash Enhancer's development and Intel's testimony support independent development...........................................................................................................................7

II. Verigy's compilation is not a valid trade secret .....................................................................7

    A. Two publications completely disclose the concept and design for a tester signal fan-out device with control circuitry, ████████████████████████..................................7

        (1) Micron's '112 patent ....................................................................................................9

        (2) Form Factor's '435 patent application ......................................................................10

    B. Verigy has no consistent policy for handling confidential information ............................11

III. Verigy's witnesses lack credibility and have substantial bias............................................12

    A. Ira Leventhal contradicts Verigy's position in this action and his own testimony .............12

    B. Bob Pochowski is biased ███████████████████████████████████████████████.................................................................................................13

    C. Wei Wei retracted several opinions in his deposition.........................................................14

    D. Verigy cannot impeach Romi Mayder about anything relevant to this lawsuit .................15

IV. Injunctive relief is inappropriate in this case.......................................................................15

    A. No injunction is appropriate ..............................................................................................15

    B. The longest-possible injunction is two weeks ..................................................................16

Conclusion ..................................................................................................................................17

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Redacted Version For Public Filing**

## Introduction

In Verigy's initial accusation, it accused Romi Mayder of stealing a trade-secret concept, of a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The ▮▮▮▮▮▮ RFQ set forth ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The concept of, and indeed the details of, such test signal fan-out devices with control circuitry have been publicly taught in Micron's U.S. Patent No. 6,366,112 and Form Factor's U.S. Patent Application Publication No. 2006/0170435. Therefore, Verigy had to admit that such concepts and design features cannot be trade secrets.

Verigy now articulates anew what it claims to be a trade secret. Verigy now claims that the ▮▮▮▮▮▮ set forth in the ▮▮▮▮▮▮ RFQ directed to ▮▮▮▮▮▮ was a protectable trade secret because it contained not just ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but also contained ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The concept of a fan-out device with control circuitry is not a secret — but when Verigy coupled this with a second pillar, confidential customer requirements, Verigy could claim it had assembled confidential information (at page 18, lines 1–4 of its reply):

> Verigy's trade secrets are not the specific individual features of the ▮▮▮▮▮▮▮▮▮▮▮▮, they are the combination of technical features embodied in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which was designed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It is the combination of these elements that constitutes a trade secret.

Pillar one of this combination is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pillar two is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

One most fundamental flaw in Verigy's application is: STS is not using anything from the second pillar of this combination. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**Redacted Version For Public Filing**

1 ▰
2 ▰
3 ▰
4 ▰
5 Verigy's compilation does not support injunctive relief. The ▰
6 (pillar one) is not secret. More clearly, the defendants are not using ▰
7 (pillar two). STS designed its Flash Enhancer product ▰
8 ▰
9 ▰
10 ▰
11 ▰
12 ▰

Moreover, it is dubious whether Verigy's compilation qualifies for trade-secret protection. Verigy has not followed a consistent policy for handling confidential information, and the defendants have identified at least two public documents (the '112 patent and the '435 patent application) that ▰. Although some Verigy's expert argues that some details are not expressly articulated in those documents, these details are inherent for the kind of application they describe.

Verigy's application also relies on questionable testimony and irrelevant *ad hominem* attacks against Romi Mayder. Verigy's chief witness, Ira Leventhal, admits being unqualified in the subject matter of his testimony and contradicts positions taken in Verigy's brief. Robert Pochowski has a bias after he unsuccessfully tried to extract from Mr. Mayder an unfair share of STS while they were business partners.

Injunctive relief is inappropriate in this case because the defendants are not using the second pillar of Verigy's alleged compilation. An injunction can only address ongoing or future conduct. Moreover, in light of the important admission by Verigy's expert that the allegedly-confidential ▰, any injunction longer than two weeks would be improper.

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Redacted Version For Public Filing

# Argument

## I. Flash Enhancer does not use Verigy's alleged compilation

Verigy asserts that Flash Enhancer is derived from the two-pillar compilation found in the ▮▮▮▮▮. STS did use some of pillar one, ▮▮▮▮▮▮▮▮▮▮. STS used nothing from pillar two, however, because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**B. NOR testing features** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **and do not naturally evolve from NAND testing features**

---

[1] Supplemental Mayder Declaration ¶ 18
[2] Supplemental Mayder Declaration ¶ 19
[3] Supplemental Mayder Declaration ¶ 20
[4] Supplemental Mayder Declaration ¶ 21
[5] Weber Supplemental Declaration ¶¶ 8–12; Supplemental Mayder Declaration ¶ 21

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Redacted Version For Public Filing

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were not the confidential information gathered by Verigy or
2  available to Mayder while at Verigy. Moreover, as discussed in the defendants' opposition brief,[6]
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[lines 4–23 redacted]
24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While it is true that a

Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

---

[6] Opposition at 6:22 – 7:15
[7] Supplemental Pasquinelli Declaration, Exhibit F: ▮▮▮▮▮▮▮, dated May 3, 2006.
[8] ▮▮▮▮▮▮▮▮▮▮▮ (May 24, 2006), VER00980-81, Exhibit 22 to the Leventhal Deposition (reproduced now as exhibit C to the Pasquinelli Supplemental Declaration)
[9] Supplemental Declaration of Dr. Blanchard ¶¶ 26–31
[10] Supplemental Declaration of Dick Weber ¶12.4
[11] Supplemental Declaration of Dick Weber ¶¶ 8 and 12

**Redacted Version For Public Filing**

1  resource-sharing chip can, in theory, be developed for both types of memory, ▓▓▓▓▓.
2  It is undisputed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It is undisputed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It is undisputed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8  ▓▓▓▓▓▓▓ Suggesting otherwise is purely speculative. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12  Verigy also asserts that the only significant difference between testing NAND and NOR flash
13 memory is in the testing software. This assertion glosses over the myriad differences between the
14 technologies. Verigy's only support is the opinion of Wei Wei, who concludes that such features as
15 random access speed and pin density are of "dubious importance." ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

18  **C. Any similarity between Flash Enhancer and ▓▓▓▓▓ is due to similarities between the**
19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20  Verigy argues that any similarity between the ▓▓▓▓▓▓▓▓▓ and Flash Enhancer
21 must be due to Mr. Mayder's erstwhile access to Verigy's confidential information. California has
22 rejected this notion under its trade-secret law.[14] Verigy must show some *actual* use or disclosure of
23 its alleged trade secret.[15]
24  Verigy identifies several similarities between its ▓▓▓▓▓▓▓▓▓ and Flash
25 Enhancer. But these similarities are due to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[12] Supplemental Declaration of Dick Weber ¶12.2
[13] Supplemental Declaration of Dick Weber ¶12
[14] Compare *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002) with *PepsiCo. Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995)
[15] *Whyte*, 101 Cal. App. 4th 1443

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1  ██████████████████████████████████████████. Although they have significant differences, NOR
2  and NAND flash memory are still both species of flash memory. One would naturally expect
3  manufacturers of flash memory ████████████████████████████. It would be
4  surprising if ███████████████████████████████████████████
5  ███████████████████████████.

      Verigy identifies several functional characteristics of Flash Enhancer that overlap with its
7  ██████████████████. These are present in Flash Enhancer because ████████████████
8  ████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████
13 ██████████████████████████.

      Verigy's argument that these features are derived from ████████ overlooks the undisputed
15 facts that ████████████████████████████████████████████ (pillar two)
16 and that ███████████████████████████████████ (pillar one) at its disposal. Thus,
17 it is not surprising that some obvious design choices and some features necessary for *any* resource-
18 sharing product are shared. These features are obvious design choices that any competent engineer
19 would know, and would be embodied in *any* resource-sharing chip.[18]

      Moreover, several of these features are *not* specified in ████████.[19] For example, the
21 ████████████████████████████████████████████████████████████
22 ████████ SP4T signifies a single pole, quadruple throw switch. This is not the same as a 1:2
23 topology of single pole, single throw (SPST) switches.[21]

    **D. The original** ████████████████████████

---

[16] Supplemental Declaration of Dick Weber ¶ 9
[17] Supplemental Declaration of Dick Weber ¶¶ 10–11
[18] Wei deposition at 105:3–11 (reproduced as Exhibit O to the Supplemental Pasquinelli Declaration); Blanchard Supplemental Declaration at ¶ 22.a.ii.
[19] Supplemental Pasquinelli Declaration: Ex F ████████████, May 3, 2006
[20] Supplemental Pasquinelli Declaration: Ex F ████████████, May 3, 2006, page 1, ¶A
[21] Supplemental Blanchard Declaration: ¶¶ 33–34

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Redacted Version For Public Filing**

1. STS does not deny using different names for its products at different times. The names
2. include ▮▮▮▮▮. Verigy wants to conclude the lack of a
3. formal document announcing the abandonment of the early ▮▮▮ indicates that ▮▮ was
4. simply renamed Flash Enhancer. This classic big-corporation thinking ignores the reality that STS
5. ▮▮▮▮▮.

6. Verigy also speculates, without support, that ▮▮▮ would have formally cancelled its
7. project and assigned a new name and project number to Flash Enhancer if the changes were more
8. than a natural evolution.[22] This is pure speculation. Furthermore, ▮▮▮
9. ▮▮▮
10. ▮▮▮

11. Verigy makes no attempt to adduce actual evidence for its speculation, such as a declaration
12. or documents from ▮▮▮. Therefore, the court should ignore the speculation and conclude that
13. the evidence would have been harmful to Verigy.[24]

### E. The timing of Flash Enhancer's development and Intel's testimony support independent development

Verigy argues that it may rest after showing two facts: (1) Romi Mayder had access to its confidential information while he was an employee and (2) STS later developed a product bearing some resemblance to the ▮▮▮.[25] The defendants have demonstrated that STS independently developed the Flash Enhancer product, however. The direct evidence on this point is not just the testimony of Romi Mayder, but also the unchallenged and unassailable testimony of Intel. Verigy belittles the Mayder testimony evidence as "self-serving" and urges the court to ignore it. But the defendants' evidence is supported by Verigy's own expert and is independently corroborated by Intel, an independent third party.

### II. Verigy's compilation is not a valid trade secret

### A. Two publications completely disclose the concept and design for a tester signal fan-out device with control circuitry, ▮▮▮

---

[22] Plaintiff's Reply and Supplemental Brief re: Order to Show Cause re: Preliminary Injunction page 8, lines 4–5
[23] Pasquinelli Supplemental Declaration ¶ 20 and Exhibit R
[24] *See e.g.*, Fed. R. Evid. 1002 and cases cited the defendants' objections that accompany this brief
[25] Reply at 20

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Redacted Version For Public Filing**

It is axiomatic that a "trade secret" exists only if the information is actually secret.[26] Trade-secret status is lost if the information is published.[27] All the concepts and design features of a tester signal fan-out device with control circuitry ███████████████ are contained in at least two separate public documents: Micron's '112 patent and Form Factor's '435 application.[28] Accordingly, if there ever had been any secrecy associated with the concepts and design features for a tester signal fan-out device with control circuitry ███████████████ ███████, that status was destroyed in 2002, when the '112 patent issued.[29]

In *DVD Copy Control Assn. v. Bunner*, the plaintiff sought to enjoin the defendant from disclosing a trade secret after others had posted it on the Internet. Entry of a preliminary injunction was reversed because the trial court had not found that the information was still secret at the time the defendant posted it:[30]

> [T]he secrecy element becomes important at two points. First, if the allegedly proprietary information contained in DeCSS was already public knowledge when Bunner posted the program to his Web site, Bunner could not be liable for misappropriation by republishing it because he would not have been disclosing a trade secret. Second, even if the information was not generally known when Bunner posted it, if it had become public knowledge by the time the trial court granted the preliminary injunction, the injunction (which only prohibits *disclosure*) would have been improper because [the plaintiff] could not have demonstrated interim harm.

The '112 patent and the '435 application each fully disclose a tester signal fan-out device with control circuitry, ███████████████. Verigy tries to avoid this conclusion by offering the declaration of Wei Wei, who identifies three supposed points of difference between that concept and the '112 patent and two supposed points of difference with the '435 application. Mr. Wei's deposition shows, however, that he overlooked portions of those documents that contain "missing" elements. The other "missing" elements were so obvious, even to a novice engineer, that the documents' authors felt it unnecessary to expressly state them.

---

[26] *See e.g.*, Cal. Civ. Code § 3426.1(d) (defining "trade secret"); *Accuimage Diagnostics Corp. v. Terarecon Inc.*, 260 F. Supp.2d 941, 950 (N.D.Cal. 2003); *American Paper & Packaging Products v. Kirgan*, 183 Cal.App.3d 1318, 1326 (1986)
[27] *DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251–52 (2004)
[28] *See generally* Blanchard Supplemental Declaration at section II
[29] *DVD Copy Control Assn.*, 116 Cal. App. 4th at 251–52
[30] *DVD Copy Control Assn.*, 116 Cal. App. 4th at 251–52 (emphasis in the original; footnote omitted)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Redacted Version For Public Filing

### (1) Micron's '112 patent

Mr. Wei identified two features in the ▮▮▮▮▮▮▮▮▮▮ that he asserts are missing from the '112 patent: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Each of these assertions is wrong.

On the first point, Mr. Wei ignored the fundamental purpose of the '112 patent and the clear disclosure in Figure 8. Figures 8A through 8D show the Util0 test channel, which drives the switching logic. Figure 8B shows Util0 to be a single channel:



FIGURE 8B

It is physically impossible for one channel to carry more than one signal at a time, so multiple signals must be sent in series.[31] This is what *serial* means — in contrast to *parallel*, where multiple signals are sent simultaneously through multiple channels.[32] In his deposition, Mr. Wei acknowledged that, if his conclusion were correct, Util0 would set all switches on or off together but could not set them individually.[33] This contradicts the patent's express disclosure that test signals are "selectively" transmitted.[34] It would also defeat the fundamental purpose of the patent, which is to share tester resources by splitting signals and controlling each switch individually.[35] Mr. Wei also acknowledged in his deposition that a serial controller is the natural choice for this kind of application: "one of ordinary skill in the art" would "choose a serial-type interface over parallel" to achieve the desired goal.[36]

On the second point (▮▮▮▮▮▮▮▮▮▮▮▮), Mr. Wei also overlooked portions of the '112 patent disclosure. The patent discloses selectively controlling switches "by control signals

---

[31] Blanchard Supplemental Declaration at ¶ 22.a.
[32] Blanchard Supplemental Declaration at ¶ 22.a.
[33] Wei deposition at 81:21–82:4; Blanchard Supplemental Declaration at ¶ 22.a.i.
[34] '112 patent at 11:37–47 (reproduced as Exhibit E to the Blanchard Supplemental Declaration)
[35] Blanchard Supplemental Declaration at ¶ 22.a.i.
[36] Wei deposition at 105; Blanchard Supplemental Declaration at ¶ 22.a.ii.

generated by a controller."[37] The patent notes that the controller *may* be "a computer",[38] so Mr. Wei assumes that this hypothetical embodiment is the only possible one. This contradicts figure 8B, however, which shows the controller 120 to be part of "a single test site S of the multiplex circuit 80."[39] A controller need not be implemented outside of the chip, and the controller may be as simple as a shift register.[40] Mr. Wei acknowledged this in his deposition: "people working in the digital or ASIC design industry would know the shift register concept and serial interface concepts," and "such a design engineer would provide that solution."[41]

### (2) Form Factor's '435 patent application

Mr. Wei identified only three features in the ▇▇▇▇▇▇▇▇▇▇▇▇▇ that he asserts are missing from the '435 application: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Each of these assertions is wrong, as summarized below and discussed in more detail in the supplemental declaration of Dr. Blanchard.

An ASIC's logical functions are set during its manufacture. An FPGA is a set of logic gates capable of being programmed after its manufacture, or "in the field."[42] Although the preferred embodiment of the '435 application (e.g., in Figure 8) uses an FPGA, the written description states than an ASIC may be used:

> In accordance with the present invention, a probe card is provided with a programmable IC, such a Field Programmable Gate Array (FPGA), Programmable Logic Device (PLD), Application Specific Integrated Circuit (ASIC) or other IC providing programmable routing from individual test signal channels to a number of different probes.[43]

At his deposition, Mr. Wei acknowledged that the '435 application discloses the use of an ASIC and that this could be built ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[44]

---

[37] '112 patent at 2:60–61 and 11:27–47
[38] '112 patent at 11:34
[39] '112 patent at 11:27–36
[40] Blanchard Supplemental Declaration ¶ 22.b.
[41] Wei deposition at 85:1–86:3; Blanchard supplemental declaration ¶ 22.b.
[42] *See e.g.*, Field-Programmable Gate Array, Free Online Dictionary of Computing, accessed November 28, 2007, available at http://foldoc.org/?fpga
[43] '435 patent application at ¶ [0016] (reproduced as Exhibit D to the Blanchard Supplemental Declaration); Blanchard Supplemental Declaration at ¶ 21.a.
[44] Wei deposition at 144:21–24

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Redacted Version For Public Filing**

1    Although Mr. Wei is correct that the '435 application does not *expressly* disclose a 13-volt
2    programming requirement, neither does the ████████████. Accordingly, this is not a valid
3    ground upon which to distinguish the ████████████ from the '435 application. Even if it
4    were, a 13-volt requirement is inherent in the device described by the '435 application.[45] A patent
5    "inherently" discloses any feature necessary for its invention to function but which the inventor felt
6    was too obvious to mention expressly.[46] The '435 device is generalized to include any DUT. If the
7    DUT is a flash memory device, the 13-volt programming requirement is public and well known from
8    dozens of sources, such as flash memory manufacture data sheets, which are widely available on the
9    Internet.[47] Moreover, Mr. Wei acknowledged in his deposition that the '435 application does not
10   limit the voltage the device can handle.[48]

11   Finally, Mr. Wei distinguishes the '435 application from ██████ on the ground that the
12   '435 application does not specify ████████████████████████. The '435 application
13   does describe, however, "programmable routing from individual test signal channels to a number of
14   different probes."[49] Switches are the obvious implementation for this idea to any engineer working in
15   the industry.[50] Even a novice engineer would consider implementing this with switches.[51] Mr. Wei
16   even admits that "changing the number of switch channels and number of switches per channel are
17   common engineering choices."[52]

18   **B. Verigy has no consistent policy for handling confidential information**

19   Under California law, a trade secret must be "the subject of efforts that are reasonable under
20   the circumstances to maintain its secrecy."[53] Ira Leventhal testified that ████████████
21   ████████████████████ but elected to hide that document from the court by not
22   submitting it as an exhibit.[54] As discussed in the accompanying objections, this testimony about the

---

[45] Blanchard Supplemental Declaration at ¶ 22.b.
[46] *See e.g., Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373, 1377–82 (Fed. Cir. 2003)) (discussing more than a century of caselaw, beginning with *Tilghman v. Proctor*, 102 U.S. 707, 711 (1881))
[47] Blanchard Supplemental Declaration ¶ 21.b.
[48] Wei deposition at 146:9–11
[49] '435 application at ¶ [0016]
[50] Blanchard Supplemental Declaration ¶ 21.c.
[51] Blanchard Supplemental Declaration ¶ 21.c.
[52] Wei declaration ¶ 56
[53] Cal. Civ. Code § 3426.1(d)(2)
[54] Leventhal Deposition 10/4/07 at 48:25–49:4 (reproduced as Exhibit B to the Pasquinelli Supplemental Declaration)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Redacted Version For Public Filing

contents of a document is inadmissible under Federal Rule of Evidence 1002. Since there is no evidence that a policy exists, the court should conclude that Verigy has no such policy.

Moreover, the testimony about Verigy's policy has changed over time. First, Verigy's position was that its policy held that confidential documents were marked with an appropriate legend to indicate that status. The defendants' opposition exposed Verigy's failure to follow that instruction: there were no confidentiality markings on the documents that are the foundation of Verigy's assertion that Romi Mayder disclosed confidential information.

Now, Verigy claims that its policy holds that the default status for all documents is "internal," and a confidential document is marked only when it is distributed externally. Verigy has failed to follow this alleged policy, too. The defendants have identified "external" documents that lack such markings (but which Verigy claims in this action are confidential) as well as "internal" documents that do have such markings.[55]

In one crucial example, Verigy elected not to mark as confidential its letter to ▮▮▮ that announced Verigy's ▮▮▮.[56] A letter to a third party is the epitome of an "external" document. According to Verigy's story of the week, no confidential document goes out the door without a confidential marking, applied automatically by a template. This proves either that (1) Verigy did not really intend the ▮▮▮ to be confidential, or (2) Verigy's changing story about a confidentiality policy lacks factual basis. It also demonstrates the lack of care to maintain the secrecy of the allegedly "secret" information asserted in this action.

### III. Verigy's witnesses lack credibility and have substantial bias

Verigy relies chiefly on the declaration testimony of Ira Leventhal, Robert Pochowski, and Wei Wei. These witnesses' written testimony cannot be credited. Their depositions undermine their qualifications and expose inaccuracies or exaggerations. Also, Mr. Pochowski has a substantial bias against Romi Mayder, which gives him ample reason to distort the facts.

**A. Ira Leventhal contradicts Verigy's position in this action and his own testimony**

---

[55] Pasquinelli Supplemental Declaration at ¶¶ 5–7 and Exhibits C, D, E
[56] Pasquinelli Supplemental Declaration at ¶ 18 and Exhibit P

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

    Ira Leventhal, Verigy's star witness, is a Senior Research and Development Manager, and oversees creation of Verigy confidential information and intellectual property.[57] While he purports to testify about Verigy's policy for handling confidential information, he also elects to conceal the written policy from this court. Mr. Leventhal also admitted in his deposition that he does not know the policy's instructions on key points and that he routinely substitutes his own personal judgment for the policy.[58] Since Verigy is hiding the policy, in favor of shaky testimony, the court should infer that no written policy exists or that the document would be harmful to Verigy's case.[59]

    Mr. Leventhal offers opinion testimony in his declarations about the existence and content of trade secrets. He admits having no qualification to express such opinions, however:

> I'm not an expert on the legal definition of trade secrets, but I — my unprofessional opinion would be that we have many. Unprofessional with respect to trade secret definitions, that is.[60]

    In addition to being unqualified, Mr. Leventhal's declarations contradict the position Verigy takes in its reply brief. Verigy expressly disclaimed trade-secret status in any individual element of its ▮▮▮▮▮▮ concept — instead claiming trade-secret status in the compilation of those elements.[61] Mr. Leventhal contradicts this express disclaimer when he asserts trade-secret status in 24 bullet-pointed individual elements.[62]

    Underscoring Mr. Leventhal's lack of qualifications, he also testified that he believes trade secrets can appear in published documents. Indeed, he testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[63] One of Verigy's published patent applications discloses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[64]

**B. Bob Pochowski is biased** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[57] *See* Ira Leventhal's first declaration at ¶ 2 and 6–7
[58] *See* Leventhal Deposition 10/4/07 at 47–54
[59] *See* Fed. R. Evid. 1002 and the accompanying objections to Mr. Leventhal's testimony
[60] Leventhal Deposition 10/4/07 at 47:11–14
[61] Reply at 18:1–4
[62] Leventhal Supplemental Declaration at ¶ 6
[63] Leventhal Deposition 10/4/07 at 47:8–14
[64] U.S. Patent Application Publication No. 2007/0247140 (Exhibit Q to Pasquinelli Supplemental Declaration)

**Redacted Version For Public Filing**

1 ▬
2 ▬
3 ▬
4 ▬
5 ▬
6 ▬
7 ▬
8 ▬
9 ▬
10 ▬
11 ▬
12 ▬
13 ▬
14 ▬
15 ▬

16 **C. Wei Wei retracted several opinions in his deposition**

17     As explained in more detail above, Verigy's expert expressed several bold opinions in his

18 declaration but retracted them in his deposition. Twice, he stated opinions about documents without

19 fully reading them. When the portions he omitted were brought to his attention, his opinions changed

20 and no longer supported Verigy. For example, he initially opined that Micron's '112 patent did not

21 disclose a "serial" controller, but he later admitted that any engineer would understand that the

22 disclosed controller was serial. After opining that a difference in the number of switch channels

23 disclosed in two documents was significant, he later admitted that "changing the number of switch

24 channels and number of switches per channel are common engineering choices."[71]

---

[65] Mayder Supplemental Declaration ¶¶ 10–12
[66] Mayder Supplemental Declaration ¶ 23
[67] Mayder Supplemental Declaration ¶ 24
[68] Mayder Supplemental Declaration ¶ 26 and Exhibit M
[69] Mayder Supplemental Declaration ¶ 27
[70] Mayder Supplemental Declaration ¶ 27
[71] Wei declaration ¶ 56

Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

**Redacted Version For Public Filing**

1  Considering these reversals, the court should discount the technical opinions expressed in his
2  declaration.

### D. Verigy cannot impeach Romi Mayder about anything relevant to this lawsuit

4  Verigy goes to extraordinary length to smear Romi Mayder's ▮▮▮▮▮ and character,
5  consuming four pages of its reply with tripe. It does not even attempt to impeach Mr. Mayder's
6  statements *in this litigation*. Instead, Verigy focuses on his ▮▮▮▮▮ and ▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[73] Verigy does
9  not even attempt to show — because it cannot — that Mr. Mayder ever sought to use these papers for
10  any purpose. He simply produced them in this action because he was so required.

11  Verigy leans on Mr. Pochowski and Heather Flick to distort the context surrounding ▮
12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### IV. Injunctive relief is inappropriate in this case

#### A. No injunction is appropriate

19  A preliminary injunction can preserve the *status quo* during litigation and prevent likely
20  irreparable harm, but it may only address *future* conduct.[76] It may not remediate past harm.[77] The
21  Uniform Trade Secrets Act requires an injunction to terminate once a trade secret ceases to be
22  secret.[78] If a trade secret is published publicly, there can be no injunction.[79] Since Micron's '112

---

[72] Mayder Supplemental Declaration ¶ 30
[73] Mayder Supplemental Declaration ¶ 30
[74] Mayder Supplemental Declaration ¶ 15–16
[75] Mayder Supplemental Declaration ¶ 15–16 and Exhibit F
[76] *See e.g., Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); *LaFreniere v. Regents of the Univ. of Cal.*, 2006 U.S. Dist. Lexis 47252 (N.D. Cal. 2006); *U.S. v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952)
[77] *Id.*
[78] Cal. Civ. Code § 3426.2; *DVD Copy Control Assn.*, 116 Cal. App. 4th 241
[79] *DVD Copy Control Assn.*, 116 Cal. App. 4th 241

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Redacted Version For Public Filing**

1  patent and Form Factor's '435 patent application each completely disclose ▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮, injunctive relief became unavailable on the first date of publication (in 2002).
3  Verigy's compilation also lacks trade-secret status because Verigy has not taken reasonable
4  steps to maintain its secrecy.[80] With no consistent policy for handling confidential or secret
5  information, Verigy has no means to ensure that secret information remains secret.
6  The court may also consider the public interest and potential harm to third parties.[81] ▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**B. The longest-possible injunction is two weeks**

If the court does order an injunction, its maximum term is two weeks. The Uniform Trade Secrets Act generally prohibits injunctions from existing longer than the asserted trade secret exists.[87] It does, however, in rare cases, permit longer a injunction to account for a competitive advantage unfairly gained over the trade secret's owner.[88] Since Verigy ▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it lacks standing to invoke this provision.

Even if Verigy could invoke this provision, however, its expert testified that he could write the ▮▮▮▮▮▮▮▮▮▮▮ in two weeks if he had access to the public patent documents and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Verigy proffered Wei Wei as an expert in the field of resource sharing. In his deposition, Mr. Wei was asked how much time he would need to create the ▮▮▮▮▮▮▮▮▮▮▮ if he started from the same

---

[80] Cal. Civ. Code § 3426.1(d) (defining "trade secret")
[81] *See e.g., Posdata Co. Ltd. v. Kim*, 2007 U.S. Dist. Lexis 48359, *13–14 (N.D. Cal. June 15, 2007)
[82] Weber Supplemental Declaration ¶¶ 4–7
[83] Weber Supplemental Declaration ¶ 6
[84] Weber Supplemental Declaration ¶ 4
[85] Weber Supplemental Declaration ¶ 6–7
[86] Weber Supplemental Declaration ¶ 7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[87] Cal. Civ. Code § 3426.2(a)
[88] Cal. Civ. Code § 3426.2(a)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

point Romi Mayder did in ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓[89] Mr. Wei responded: "If those assumptions, those information are made available, then coming up with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, a [sic] initial pass probably takes a couple of weeks."[90] Mr. Wei was also asked if he had the '435 patent application and ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, how long a competent engineer would need to create ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. He responded: "somewhere around a few weeks with that assumption being established."[91]

Dr. Blanchard agrees (after reviewing the same patent documents and reading Mr. Wei's deposition transcript) two weeks is a reasonable estimate of time for a competent engineer to create a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[92]

The following facts are undisputed and supported by the declarations of Dick Weber of Intel:

- Resource sharing solutions for a tester signal fan-out device with control circuitry are publicly known and available from sources such as Micron's '112 patent and Form Factor's '435 patent application.
- These public documents make any assertion of trade-secret status of that information unavailing as of November 2006.
- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This is consistent with both sides' expert-witness estimates for a competent engineer to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Thus, two weeks is the maximum possible lead time that STS could have gained unfairly if it had used Verigy's trade secrets.

## Conclusion

The defendants are not using Verigy's asserted compilation, and Verigy has proffered no reason to believe they might use it in the future. There is no conduct to enjoin. Moreover, Verigy's compilation is not a trade secret because it is published in two different places and Verigy has not taken reasonable steps to maintain its confidentiality. With no ongoing or future conduct and no trade secret, no injunction is appropriate.

---

[89] Wei deposition at page 96
[90] Wei deposition at 97:8–11
[91] Wei deposition page 142, line 3 to page 143, line 5.
[92] Supplemental Declaration of Dr. Blanchard, ¶¶ 23–25

**Redacted Version For Public Filing**

| | |
|---|---|
| Dated: November 30, 2007 | Mount & Stoelker, P.C.<br>Daniel H. Fingerman<br><br>_____/s/_____<br>Attorneys for Defendants Romi Mayder, Wesley Mayder, Silicon Test Systems Inc., and Silicon Test Solutions LLC |