Daniel S. Mount, Esq. (Cal. Bar No. 77517)
Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
Kevin M. Pasquinelli, Esq. (Cal. Bar No. 246985)
MOUNT & STOELKER, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA 95110-2740
Phone: (408) 279-7000
Fax:   (408) 998-1473
Email: dmount@mount.com
       kspelman@mount.com
       dfingerman@mount.com
       kpasquinelli@mount.com

Attorneys for Defendants ROMI MAYDER; WESLEY MAYDER;
SILICON TEST SYSTEMS INC.; and SILICON TEST SOLUTIONS LLC

Additional Counsel listed on signature page

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| VERIGY U.S. INC., a Delaware corporation<br><br>Plaintiff,<br><br>vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS INC., a California corporation; SILICON TEST SOLUTIONS LLC, a California limited liability corporation,<br><br>Defendants. | Case No. 5:07-cv-04330 (RMW) (HRL)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br>**[Local Rule 16-9]**<br><br>JUDGE: HON. RONALD M. WHYTE<br><br>Date: Dec. 7, 2007<br>Time: 10:30 a.m.<br>Courtroom: 6, 4th Floor |

DOCUMENT SUBMITTED UNDER SEAL
REDACTED VERSION FOR PUBLIC FILING

# JOINT CASE MANAGEMENT STATEMENT

Pursuant to Fed. R. Civ. Proc. 26(f) and Northern District of California Local Rule 16-9, Plaintiff VERIGY U.S. INC., ("Verigy") and Defendants, ROMI MAYDER; WESLEY MAYDER; SILICON TEST SYSTEMS INC.; and SILICON TEST SOLUTIONS LLC ("Defendants") hereby submit the following Joint Case Management Statement:

## 1. JURISDICTION AND SERVICE:

a. This Court has subject matter and personal jurisdiction over the action and the parties.

b. No named parties remain to be served, and all named parties have appeared.

## 2. FACTS:

<u>Plaintiff contends as follows:</u> On August 22, 2007, Verigy filed this action against Defendants alleging breach of contract, trade secret misappropriation, violation of the Computer Fraud and Abuse Act, violation of the Electronic Communications Privacy Act, violation of California Penal Code § 502, violation of California Bus. & Prof. Code § 17200, common law unfair competition, breach of duty of loyalty, violation of the Lanham Act, violation of California Bus. & Prof. Code § 17500, Intentional Interference with Prospective Economic Advantage, Unjust Enrichment, and seeking Declaratory Relief and a Constructive Trust.

This case involves the misappropriation of Verigy's valuable trade secrets and confidential information by Romi Mayder ("Mayder") a former Verigy employee, the new companies he formed, Silicon Test Systems Inc. and Silicon Test Solutions, LLC (collectively, the "STS Entities") and Mayder's brother Wesley Mayder, a conspirator, agent, partner and/or alter ego of the other Defendants. Mayder was a long-term and trusted employee of Verigy and its predecessors-in-interest, Agilent Technologies, Inc. ("Agilent") and Hewlett Packard Company ("HP") who abruptly resigned his employment in September 2006. Prior to Mayder's departure from Verigy, Mayder incorporated a company and began marketing a product for the STS Entities that was virtually identical to the product he was working on at the same time as a Verigy employee. Further, he approached Verigy customers and others, presented them with documents taken from Verigy and

claimed that his product was owned and developed by the STS Entities. In fact, these documents and his product that were presented to third parties without benefit of a confidentiality agreement were Verigy property pursuant to both the Agreement Regarding Confidential Information and Proprietary Developments (the "ARCIPD") that Mayder signed with Verigy and the California Labor Code Section 2860.

Principal Factual Issues in Dispute:

(a) Whether Defendants have improperly possessed, used and disclosed and continue to improperly possess, use and disclose Verigy's trade secrets.

(b) Whether Defendants improperly copied and used Verigy electronic documents without authorization or permission.

(c) Whether Mayder improperly possessed, used and disclosed and continues to improperly possess, use and disclose Verigy's confidential information.

(d) Whether Defendants were and are involved in misleading advertising.

(e) Whether Defendants interfered with Verigy's prospective economic advantage.

(f) Whether Defendants' actions are willful.

Defendants contend as follows:

Romi Mayder left the employment of Verigy, and started a company STS to develop a product that Verigy had decided it did not want to develop. The proposed product was a fan-out circuit to serve the NAND market requirements.

STS learned that NAND manufacturers had no apparent desire to buy a fan-out circuit, so STS found other companies, who manufactured NOR Chips, (and who had different requirements) and STS has developed a fan-out circuit to meet the special requirements of these companies. (Intel & Spansion).

STS contends that it is free to address this market demand, as it can do so, without using any

Verigy trade secrets.

Verigy has asserted that it is entitled to assert trade secret protection for over 65 separate alleged trade secrets. Verigy claims that it is entitled to trade secret protection for useful information even if it (or others) has published this useful information in patent applications and/or other public documents. (See deposition of Ira Leventhal).

Verigy also claims that it is entitled to treat as confidential, information that was never so designated.

STS asserts by cross-complaint, that it is entitled to an adjudication regarding the non-secret status of the 65 trade secrets that Verigy asserts in their 2019(d) statement.

3.  **LEGAL ISSUES:**

Plaintiff contends as follows:

Principal Legal Issues in Dispute:

(a) Whether Defendants and any entities and persons in active concert, privity or participation with Defendants should be preliminarily and permanently enjoined under Cal. Civil Code §§ 3426 *et seq.*, Cal. Bus. & Prof. Code §§ 17200, 17500, the Lanham Act, and/or California common law from all actions that misappropriate any Verigy trade secrets, or violate Verigy's contractual rights, that unfairly compete or that constitute misleading advertising.

(b) Whether Defendants misappropriate Verigy's trade secrets as a matter of law.

(c) Whether Defendants unfairly compete with Verigy as a matter of law.

(d) Whether Mayder breached his contract with Verigy as a matter of law.

(e) Whether Defendants violated the ECPA as a matter of law.

(f) Whether Defendants violated the CFAA as a matter of law.

  (g)  Whether Defendants violated Cal. Penal Code § 502 as a matter of law.

  (h)  Whether Mayder breached his duty of loyalty as a matter of law.

  (i)  Whether Defendants intentionally interefered with Verigy's prospective economic advantage as a matter of law.

  (j)  Whether Defendants violated the Lanham Act as a matter of law.

  (k)  Whether Defendants violated Cal. Bus. & Prof. Code § 17500 as a matter of law.

  (l)  Whether Defendants are unjustly enriched as a matter of law.

  (m)  Whether Verigy is entitled to a constructive trust as a matter of law.

  (n)  Whether Verigy is entitled to declaratory relief as a matter of law.

  (o)  Whether Verigy is entitled to enhanced damages due to Defendants' willful and malicious conduct.

  (p)  Whether Verigy is entitled to damages.

  (q)  Whether Verigy is entitled to an award of prejudgment or postjudgment interest, costs and attorneys' fees.

<u>Defendants contend as follows:</u>

Principal Legal Issues in Dispute:

(a) Whether the asserted trade secrets contained in Verigy's 2019(d) are entitled to trade secret protection.

(b) Whether public dissemination and/or availability of the information makes the alleged secret information not protectable.

**4.** **<u>MOTIONS:</u>**

<u>Plaintiff contends as follows:</u> Verigy obtained a temporary restraining order on August 24, 2007. Verigy currently has a pending motion for preliminary injunction, set for hearing on December 14, 2007. There is also a motion to strike pending before Judge Lloyd that has been fully briefed. No

hearing is set for this motion. In addition, Verigy anticipates filing a motion or motions for summary judgment or summary adjudication, a motion for contempt, and discovery motions as necessary.

<u>Defendants contend as follows:</u>

STS contemplates motion practice regarding discovery, due to the broad nature of Verigy's 2019(d) statement and vagueness of trade secret descriptions.

STS also contemplates motions to obtain a more definitive 2019(d) statement.

STS also contemplates discovery motions regarding Mr. Pochowski's claim that he and Verigy have a joint interest in this litigation and are entitled to treat communications as privileged.

## 5. **AMENDMENT OF PLEADINGS**

<u>Plaintiff contends as follows:</u> Verigy may amend its pleading to add additional parties and/or new claims. Verigy proposes January 15, 2008 as the deadline for adding new claims and parties. Verigy respectfully notes that it is not claiming trade secret protection for information contained in patents.

<u>Defendants contend as follows:</u>

STS may amend its counter-claims, upon review of the factual basis for Verigy's assertions of trade secret protection. If Verigy continues to assert that it is entitled to trade secret protections for information contained in patens and other publications, (as Mr. Leventhal has so testified to date), amendments to pleadings may be made to assert added claims in the cross-complaint.

January 15, 2008 should be a suitable date for amendment presuming Verigy produces appropriate records.

## 6. **EVIDENCE PRESERVATION:**

<u>Plaintiff contends as follows:</u> Verigy has instructed all relevant personnel to retain copies of emails and other documents that are potentially relevant to issues reasonably evident in this action. Verigy has also collected and will preserve documents, including electronic documents, that appear to be relevant to the issues reasonably evident to the parties' claims and defenses.

1

2    <u>Defendants contend as follows:</u>

3    Defendants possess two computer systems that have potentially relevant evidence to this
4    dispute. Before Plaintiffs filed their complaint, Defendants agreed not to delete any electronic files on
5    the computer systems.. Defendants at that time also made a mirror image copy of the disk drives. The
6    image copies remain in the possession of a third party computer forensics consultant, ADR.

7    Since litigation began, the parties had a dispute over Plaintiff's direct access to Defendant's
8    disk drives. The parties submitted motions to the court regarding the proper protocol for access.
9    Judge Lloyd agreed with Defendants' proposed protocol and ordered copies of the disk drives be put
10   in the custody of a special master. Since then, Plaintiff has requested multiple queries on the disk
11   drives and Defendants have complied according to the order.

12

13   **7.    DISCLOSURES:**

14   The parties exchanged initial disclosures pursuant to Fed. R. Civ. Proc. 26 and the Court's
15   August 22, 2007 Order on November 30, 2007.

16

17   **8.    DISCOVERY:**

18   <u>Plaintiff contends as follows:</u>  Verigy agrees to the limitations set forth in the Federal Rules of
19   Civil Procedure. Specifically, Verigy proposes that there should be ten depositions per side pursuant
20   to F.R.C.P. 30 (a)(2)(a) and a limit of 25 interrogatories per party pursuant to F.R.C.P. 33(a). Verigy
21   proposes a limit of 30 requests for admission per side excluding requests relating to authenticity of
22   documents. Verigy proposes producing documents in .pdf format provided that both sides make the
23   native file format document available upon request for examination of metadata (subject to any
24   privilege issues). The parties previously stipulated that privileged and work product materials
25   associated with the parties' litigation counsel need not be logged. Verigy proposes the following
26   "clawback" agreement and requests that the Court include this agreement in the CMC Order:

27   > The inadvertent disclosure of any document which is subject to a legitimate claim that the document should have been withheld from disclosure as Protected Material shall NOT waive
28   > any privilege or other applicable protective doctrine for that document or for the subject matter of the inadvertently disclosed document if the producing party, upon becoming aware

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

of the disclosure, promptly requests its return and takes reasonable precautions to avoid such inadvertent disclosure. Except in the event that the requesting party disputes the claim, any documents which the producing party deems to contain inadvertently disclosed Protected Material shall be, upon written request, promptly returned to the producing party or destroyed at the producing party's option. This includes all copies, electronic or otherwise, of any such documents. In the event that the producing party requests destruction, the requesting party shall provide written certification of compliance within thirty (30) days of such written request. In the event that the requesting party disputes the producing party's claim as to the protected nature of the inadvertently disclosed material, a single set of copies may be sequestered and retained by and under the control of requesting party for the sole purpose of seeking court determination of the issue pursuant to Federal Rule of Civil Procedure 26(b)(5)(B). Any such Protected Material inadvertently disclosed by the producing party to the requesting party pursuant to this Agreement, shall be and remain the property of the producing property. To the extent there may be inconsistency between this agreement, Federal Rule of Civil Procedure 26(b)(5) and the accompanying Committee Note, Rule 26(b)(5)(B) and the Committee Note shall control.

Verigy's proposed discovery schedule is included in the Schedule below in Section 17.

Verigy notes that Mr. Fowler did not agree to the 90 day schedule proposed below by Defendants. Verigy understands that Defendants wish to make this proposal, but requests that the Court enter a schedule at this Case Management Conference so that the trial in this action will not be unduly delayed. Verigy does not believe that entry of a case management schedule will interfere with mediation.

Defendants contend as follows:

Defendants believe that interrogatories should be liberally used to ferret out the factual basis for the 65 trade secrets Verigy claims have been misappropriated. Four interrogatories per trade secret at issue are reasonably necessary.

Requests for admissions should be without numerical limitation.

The proposed clawback is an acceptable provision.

Mr. Mount and Mr. Fowler had agreed, as lead counsel for both parties, that a discovery cut-off and final scheduling should be done at a Case Management Conference to be scheduled approximately 90 days after the ruling on the preliminary injunction. The 90 day schedule would have allowed the private mediation efforts with JAMS to be conducted

Counsel for defendants still believes this is a prudent schedule.

9.  **CLASS ACTIONS:**

The present litigation is not a class action, and this sub-section is therefore not applicable.

**10.  RELATED CASES:**

Plaintiffs and Defendants are not aware of any cases related to this litigation.

**11.  RELIEF:**

<u>Plaintiff contends as follows:</u> Verigy seeks a preliminary and permanent injunction against Defendants, their directors and officers, agents, servants, employees, and all other persons acting in active concert or privately or in participation with them, and each of them, enjoining them from (a) the wrongful acts and conduct set forth in the Complaint; (b) accessing, using, copying, publishing, disclosing, using, attempting to use or disclose, transferring, selling or otherwise distributing, directly or indirectly, any of Verigy's trade secrets or confidential information, and any product developed with the use of, with reference to, derived from, or incorporating all or any part of Verigy's trade secret and/or confidential information; (c) unfairly competing with Verigy; (d) engaging in false, misleading, and deceptive promotional activities that can, or is likely to mislead members of the public; and (e) interfering with Verigy's business relationships with Intel, Micron, Sandisk and Spansion.

Verigy also seeks a preliminary and permanent injunction ordering defendants, their directors and officers, agents, servants, employees, and all other persons acting in active concert or privately or in participation with them, and each of them, to: (a) assign all rights, title and interest in the materials constituting or derived from Verigy's trade secret and/or confidential information to Verigy; (b) deliver and/or destroy any marketing material, advertisements, or other items that violate 15 U.S.C. § 1125(a) or Cal. Bus. & Prof. Code § 17500; (c) deliver and/or destroy all Verigy documents, computer files, or other tangible Verigy things, including, but not limited to, those things which refer to, reflect, constitute, or in any way embody any of Verigy's trade secrets or confidential information; and (d) deliver and/or destroy any and all things created, incorporating, referencing, based upon, or derived from Verigy's trade secrets or confidential information.

Verigy also seeks (1) an accounting of all gains, profits, and advantages derived from Defendants' acts of misappropriation and other violations of law; (2) that all gains, profits and advantages derived by Defendants from acts of misappropriation and other violations of law be

deemed to be in constructive trust for the benefit of Verigy; (3) an order declaring that, pursuant to the ARCIPD and California Labor Code Section 2860, Verigy is the sole owner of the things which constitute or in any way embody any of Verigy's trade secrets or confidential information; (4) an order requiring Defendants to disgorge profits earned from their unlawful conduct; (5) an award of restitution, unjust enrichment, actual damages, statutory damages and compensatory damages according to proof at trial; (6) punitive and exemplary damages according to proof at trial; (7) attorney fees, costs of suit and prejudgment and postjudgment interest, as provided under applicable law; and (8) such other, further, and/or different relief, in law or equity, as the Court may deem just and proper. The amount and method of computation of damages sought by Verigy cannot be determined without the benefit of discovery and expert testimony. However, as an initial calculation, Verigy provides the following computation of damages:

1.  Breach of Contract: Verigy seeks damages caused by Mayder's breach of contract in the form of lost profits and/or other compensatory damages. Lost profits would be computed by determining lost sales resulting from Mayder's breaches reduced by incremental costs associated with such lost sales, all price reductions given as a result of Mayder's breaches and additional costs incurred as a result of Mayder's breaches. Other compensatory damages, such as lost goodwill, would be computed by determining the long-term impact on Verigy's profitability associated with Mayder's breaches (such as lost customers, decreased sales volume, decreased sales price, increased costs) and determining the loss in goodwill associated with such loss in profitability.

2.  Misappropriation of Trade Secrets: Verigy seeks damages caused by Defendants' misappropriation of trade secrets in the form of lost profits, reasonable royalty and/or compensatory damages. Verigy also seeks Defendants' unjust enrichment resulting from the misappropriation of Verigy's trade secrets. Lost profits would be computed by determining lost sales resulting from Defendants' misappropriation of trade secrets reduced by incremental costs associated with such lost sales, all price reductions given as a result of Defendants' misappropriation of trade secrets and additional costs incurred as a result of Defendants' misappropriation of trade secrets. Reasonable royalty would be computed based on the value of the trade secrets to Verigy, value to Defendants considering Defendants' profits associated with the trade secrets and alternatives to the

use of the trade secrets. Other compensatory damages, such as lost goodwill, would be computed by determining the long-term impact on Verigy's profitability associated with Defendants' misappropriation of trade secrets (such as lost customers, decreased sales volume, decreased sales price, increased costs) and determining the loss in goodwill associated with such loss in profitability. Unjust enrichment would be computed by calculating the costs associated with the Verigy project, including but not limited to research and development costs and salaries, Mayder's salary from June 6, 2006 through September 22, 2006, Defendants' additional avoided costs, Defendants' profit from sales of products resulting from the misappropriation of trade secrets as well as the value of the trade secrets misappropriated from Verigy, based on the potential profits these trade secrets could produce and the projected value of all patent rights that should have been assigned to Verigy. In addition, Verigy seeks exemplary damages.

3.      Computer Fraud and Abuse Act:  Verigy seeks damages caused by Defendants' violation of the CFAA in the form of compensatory damages. Compensatory damages would be computed by calculating the costs associated with investigating Mayder's unauthorized use of Verigy computers, including but not limited to Verigy employee time, Verigy's computer forensics expert, the third party neutral forensics expert, as well as the value of the information obtained in violation of the CFAA.

4.      Electronic Communications Privacy Act:  Verigy seeks damages caused by Defendants' violation of the ECPA in the form of compensatory damages. Compensatory damages would be computed by calculating the costs associated with investigating Mayder's unauthorized use of Verigy computers, including but not limited to Verigy employee time, Verigy's computer forensics expert, the third party neutral forensics expert, as well as the value of the information obtained in violation of the ECPA. In addition, Verigy's compensatory damages include any profits made by Defendants as a result of the violation of the ECPA. In the event that the actual damages are less than $10,000, Verigy seeks statutory damages of $10,000. In addition, Verigy seeks punitive damages.

5.      Unauthorized Access to Computers, Computer Systems and Computer Data: Verigy seeks damages caused by Defendants' violation of Penal Code § 502 in the form of compensatory damages. Compensatory damages would be computed by calculating the costs

associated with investigating Mayder's unauthorized use of Verigy computers, including but not limited to Verigy employee time, Verigy's computer forensics expert, the third party neutral forensics expert, as well as the value of the information obtained in violation of Penal Code § 502. In addition, Verigy's compensatory damages include any profits made by Defendants as a result of the violation of Penal Code § 502. In addition, Verigy seeks punitive damages.

   6.   Statutory Unfair Competition: Verigy seeks restitution from Defendants in the form of unjust enrichment. Unjust enrichment would be computed by calculating the costs associated with the Verigy project, including but not limited to research and development costs and salaries, Mayder's salary from June 6, 2007 through September 22, 2007, as well as the value of the trade secrets and confidential information Defendants used to unfairly compete.

   7.   Common Law Unfair Competition: Verigy seeks unjust enrichment and restitution from Defendants in the form of unjust enrichment. Unjust enrichment would be computed by calculating the costs associated with the Verigy project, including but not limited to research and development costs and salaries, Mayder's salary from June 6, 2006 through September 22, 2006, Defendants' additional avoided costs, Defendants' profit from sales of products, as well as the value of the trade secrets and confidential information Defendants used to unfairly compete.

   8.   Breach of Duty of Loyalty: Verigy seeks damages caused by Mayder's breach of his duty of loyalty to Verigy in the form of lost profits, reasonable royalty and/or compensatory damages. Verigy also seeks Mayder's unjust enrichment resulting from the breach of his duty of loyalty to Verigy. Lost profits would be computed by determining lost sales resulting from Mayder's breach of duty of loyalty reduced by incremental costs associated with such lost sales, all price reductions given as a result of Mayder's breach of duty of loyalty and additional costs incurred as a result of Mayder's breach of duty of loyalty. Reasonable royalty would be computed based on the value of the trade secrets and confidential information to Verigy, value to Mayder considering Mayder's profits associated with the trade secrets and confidential information and alternatives to the use of the trade secrets and confidential information. Other compensatory damages, such as lost goodwill, would be computed by determining the long-term impact on Verigy's profitability associated with Mayder's breach of duty of loyalty (such as lost customers, decreased sales volume,

decreased sales price, increased costs) and determining the loss in goodwill associated with such loss in profitability. Unjust enrichment would be computed by calculating the costs associated with the Verigy project, including but not limited to research and development costs and salaries, Mayder's salary from June 6, 2006 through September 22, 2006, Mayder's additional avoided costs, Mayder's profit from sales of products resulting from Mayder's breach of duty of loyalty as well as the value of the confidential information and trade secrets misappropriated from Verigy, based on the potential profits these trade secrets could produce and the projected value of all patent rights that should have been assigned to Verigy. In addition, Verigy seeks punitive damages.

9.      Lanham Act: Verigy seeks damages caused by Defendants' violations of the Lanham Act in the form of lost profits and/or compensatory damages. Verigy also seeks Defendants' unjust enrichment resulting from Defendants' violations of the Lanham Act. Lost profits would be computed by calculating the costs involved in communicating with customers regarding Defendants' false claims, and any sales lost as a result of Defendants' false statements. Other compensatory damages, such as lost goodwill, would be computed by determining the long-term impact on Verigy's profitability associated with Defendants' violations of the Lanham Act (such as lost customers, decreased sales volume, decreased sales price, increased costs) and determining the loss in goodwill associated with such loss in profitability. Unjust enrichment would be computed by calculating the costs associated with the Verigy project, including but not limited to research and development costs and salaries, Mayder's salary from June 6, 2006 through September 22, 2006, Defendants' additional avoided costs, Defendants' profit from sales of products resulting from the Defendants' violations of the Lanham Act. In addition, Verigy seeks treble damages.

10.     California Business and Professions Code § 17500: Verigy seeks restitution from Defendants. Restitution would be computed by calculating the costs involved in communicating with customers regarding Defendants' false claims, Verigy's lost profits as well as the loss to Verigy's goodwill.

11.     Intentional Interference with Prospective Economic Advantage: Verigy seeks damages caused by Defendants' intentional interference with prospective economic advantage in the form of lost profits and/or compensatory damages. Verigy also seeks Defendants' unjust enrichment

Case No. 5:07-cv-04330 (RMW) (HRL)
JOINT CMC STATEMENT

Page 12

resulting from the Defendants' intentional interference with prospective economic advantage. Lost profits would be computed by determining lost sales resulting from Defendants' intentional interference with prospective economic advantage reduced by incremental costs associated with such lost sales, all price reductions given as a result of Defendants' intentional interference with prospective economic advantage and additional costs incurred as a result of Defendants' intentional interference with prospective economic advantage. Other compensatory damages, such as lost goodwill, would be computed by determining the long-term impact on Verigy's profitability associated with Defendants' intentional interference with prospective economic advantage (such as lost customers, decreased sales volume, decreased sales price, increased costs) and determining the loss in goodwill associated with such loss in profitability. Unjust enrichment would be computed by calculating the Defendants' avoided costs and, Defendants' profit from sales of products resulting from Defendants' intentional interference with prospective economic advantage. In addition, Verigy seeks punitive damages.

12.    Unjust Enrichment: Unjust enrichment would be computed by calculating the costs associated with the Verigy project, including but not limited to research and development costs and salaries, Mayder's salary from June 6, 2006 through September 22, 2006, Defendants' additional avoided costs, Defendants' profit from sales of products as well as the value of the confidential information and trade secrets misappropriated from Verigy, based on the potential profits these trade secrets could produce and the projected value of all patent rights that should have been assigned to Verigy.

Verigy notes that Defendants have not fully complied with paragraph 11 of the Northern District Standing Order re: Contents of Joint Case Management Statement, and requests that the Court order Defendants to file and serve a document describing the "bases on which [Defendants] contend[] damages should be calculated if liability is established" against Defendants for the eleven causes of action other than trade secrets for which Verigy seeks damages. (N.D. Cal. Standing Order re: Contents of Joint Case Management Statement.)

<u>Defendants contend as follows:</u>

Defendants seek a denial of all relief sought by Plaintiff, and a declaration that the alleged

trade secrets are not entitled to trade secret protection.

Trade secret law allows for recovery of damages based on Plaintiff's lost profits or Defendants' illicit profits due to a misappropriated trade secret.

## 12. SETTLEMENT AND ADR:

The parties have agreed to private mediation.

Plaintiff asserts that there is no agreement as to a specific private mediator or service, and also objects to defendants reference to pre-litigation settlement negotiations during which there was no agreement on alternative dispute resolution.

Defendants assert that the parties have agreed to use JAMS, and had previously agreed that John Flaherty was mutually acceptable. On Tuesday, November 20, 2007, Mr. Fowler indicated he as not sure Mr. Flaherty was acceptable.

## 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES:

The Parties do not consent to have a Magistrate Judge conduct all further proceedings including trial and entry of judgment.

## 14. OTHER REFERENCES:

The Parties contend that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## 15. NARROWING OF ISSUES

Plaintiff contends as follows: Verigy contends that issues may be narrowed by dispositive motions. Verigy currently has no requests to bifurcate issues, claims or defenses.

Defendants contend as follows:

Not applicable.

## 16. EXPEDITED SCHEDULING

Plaintiff contends as follows: Verigy does not currently believe this case can be handled on

an expedited basis with streamlined procedures.

<u>Defendants contend as follows:</u>

Not applicable.

17. **SCHEDULING**

<u>Plaintiff proposes the following Schedule:</u>

| EVENT | SUGGESTED DATE |
|---|---|
| Deadline for Initial Disclosures | November 30, 2007 |
| Last Day to Amend Pleadings by Adding New Claims or New Parties | January 15, 2008 |
| Close of Fact Discovery | May 23, 2008 |
| Last Day to serve Expert Disclosures pursuant to F.R.C.P. 26(a)(2) | June 13, 2008 |
| Close of Expert Discovery | July 15, 2008 |
| Last Day to File Dispositive Motions | August 22, 2008 |
| Last Day to File Pretrial Disclosures pursuant to F.R.C.P. 26(a)(3)(c) | October 31, 2008 |
| Pretrial Conference | November 13, 2008 |
| Trial | December 1, 2008 |

Verigy specifically objects to Defendants' request for 260 interrogatories and for 10 depositions per party. The limits imposed by the F.R.C.P should be applied here, and if Defendants need additional discovery, they should petition the Court for leave at that time. Verigy also notes that, as discussed above, Mr. Fowler never agreed to a further CMC in 90 days. Verigy respectfully requests that the Court enter a schedule at this time so that the trial in this action will not be unduly delayed. Verigy does not believe that entry of a case management schedule will interfere with mediation and anticipates that the mediation can be scheduled in January 2008. Verigy objects to Defendants' proposed schedule. Eighteen months is much too long for discovery and would result only in a delay of trial in this action. There are only a few parties involved in this action and most, if not all, documents and potential witnesses are located in the Bay Area.

<u>Defendants propose the following discovery schedule and limitations:</u>

Mr. Mount and Mr. Fowler had agreed, as lead counsel for both parties, that a discovery cut-

off and final scheduling should be done at a Case Management Conference to be scheduled approximately 90 days after the ruling on the preliminary injunction. The 90 day schedule would have allowed the private mediation efforts with JAMS to be conducted

    Counsel for defendants still believes this is a prudent schedule.

    If the prior agreement regarding scheduling is not approved by the Court, the need for somewhat cumbersome discovery is feared.

    Plaintiff claims extraordinary trade secrets. Indeed one trade secret identified is [BEGIN CONFIDENTIAL] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ [END CONFIDENTIAL]

    Interrogatories will be needed to give meaning to these. Motion practice may follow. Therefore, 18 months for fact discovery is reasonably expected.

    a. <u>Documents:</u> No limit on the number of documents requested.

    b. <u>Interrogatories:</u> 260 total interrogatories.

    c. <u>Requests for Admissions:</u> No limit.

    d. <u>Depositions:</u> Ten per party.

    e. <u>Completion of Percipient Discovery (Items A-D above):</u> 18 months.

    f. <u>Expert Witness Discovery:</u> 60 days after close of percipient witnesses.

| EVENT | SUGGESTED DATE |
|---|---|
| Deadline for Initial Disclosures | November 30, 2007 |
| Last Day to Amend Pleadings by Adding New Claims or New Parties | 30 days after courts order regarding preliminary injunction |
| Close of Fact Discovery | May, 29 2009 |
| Last Day to serve Expert Disclosures pursuant to F.R.C.P. 26(a)(2) | June 30, 2009 |
| Close of Expert Discovery | July 31, 2009 |
| Last Day to File Dispositive Motions | September 11, 2009 |
| Last Day to File Pretrial Disclosures pursuant to F.R.C.P. 26(a)(3)(c) | November 13, 2009 |
| Pretrial Conference | November 27, 2009 |
| Trial | December 14, 2009 |

18. **TRIAL**

The parties propose that this case be tried to a jury with an expected length of trial of 10 court days, with each side to have equal time.

19. **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The parties have filed the "Certification of Interested Entities or Persons" pursuant to L.R. 3-16 and have no additional interests to report..

20. **OTHER MATTERS TO EXPEDITE CASE**

Plaintiff contends as follows: Verigy cannot currently identify any other matters that may facilitate the just, speedy and inexpensive disposition of this matter. Verigy agrees that private mediation should be conducted soon after the ruling on the preliminary injunction, but does not agree that the mediation would affect the proposed schedule.

Defendants contend as follows:

JAMS mediation within 90 days of the ruling on the injunction, as mentioned above per prior agreement, is believed wise.

Dated: December 3, 2007         MOUNT & STOELKER, P.C.

　　　　　　　　　　　　　　　　　　　/s/ Daniel S. Mount
                                Daniel S. Mount, Esq.
                                Attorneys for Defendants ROMI MAYDER; WESLEY MAYDER; SILICON TEST SYSTEMS INC.; and SILICON TEST SOLUTIONS LLC

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

BERGESON, LLP

/s/ Melinda M. Morton

DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
JOHN W. FOWLER, Bar No. 037463
jfowler@be-law.com
MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff VERIGY US, INC.