1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone: (408) 291-6200
6  Facsimile: (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation, | Case No. C07 04330 RMW (HRL) |
| Plaintiff, | |
| vs. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE RE: CONTEMPT AGAINST DEFENDANTS ROMI MAYDER AND SILICON TEST SYSTEMS, INC.** |
| ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive, | |
| Defendants. | Judge: Honorable Ronald M. Whyte |
| | Complaint Filed: August 22, 2007<br>Trial Date: None Set |

**PUBLIC REDACTED VERSION OF**

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

**DOCUMENT SUBMITTED UNDER SEAL**

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Verigy U.S., Inc. ("Verigy") moves this Court for an Order requiring defendants Romi Mayder ("Mayder") and Silicon Test Systems, Inc. ("STS") to appear and show cause why they should not be found in contempt for violating this Court's Order Granting Plaintiff Verigy US, Inc.'s Application for Temporary Restraining Order (the "Order"), entered on August 24, 2007. Mayder and STS have violated paragraphs 1(a) and (b) of the Order by "accessing,…disclosing, using, marketing, disseminating,…, making any use of, [and/or] attempting to disclose or use" the STS product code-named ▮▮▮▮▮▮" which is both specifically identified in Exhibit A to the Order (*see* items 1 (a), (b) and 5) and "developed with the use of, derived from, or incorporating all or any part of" items 1(a), (b) and 5 of Exhibit A to the Order. (Order at 5, Ex. A.)

On August 24, 2007, this Court granted Verigy's application for a temporary restraining order ("TRO"). The resulting Order enjoined defendants from, among other things, (1) "accessing,…disclosing, using, marketing, disseminating,…, making any use of, [and/or] attempting to disclose or use" any of the enumerated Trade Secret Property; and (2) "accessing,…disclosing, using, marketing, disseminating,…, making any use of, [and/or] attempting to disclose or use" any product "developed with the use of, derived from, or incorporating all or any part of Verigy's Trade Secret Property." Verigy's Trade Secret Property is identified in Exhibit A to the Order, and includes, in relevant part,

> 1. Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to:
>    (a) The projects code-named ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
>    (b) The projects code-named by Mayder as ▮▮▮▮▮▮▮▮;
>    . . .
>    (l) Verigy's non-public RFQs and associated documents;
>    . . .
>    (u) Exhibit[] A to the Lee Declaration submitted in support of Verigy's Application for a TRO; and
>    (v) Exhibit[] F to the Pochowski Declaration submitted in support of Verigy's Application for a TRO.

(Order, Ex. A, Paragraph 1.) In addition, Defendants were enjoined from using

1  Inventions, designs, plans, know-how, research, techniques, proprietary or confidential
2  information, tools, processes, software, hardware, economics and/or research and development relating to the ███████████████████████████████████ and any
3  provisional patent applications, patent applications or patents claiming priority to ███
4  ████████████████████████████.

(Order, Ex. A, Paragraph 5.)

5

6        On Monday, December 3, 2007, Verigy received a brazen email from Mayder requesting
7  that Verigy sign an NDA *with STS* so that Verigy could work together with Mayder, STS and one
8  of Verigy's key customers to integrate STS' Flash Enhancer product with Verigy's v5400 product.
9  (*See* Declaration of Melinda Morton (Morton Decl.") at ¶ 3, Ex. A.)  This email indicates that
10  Mayder and STS have all but ignored the Order, have continued to use, market and disclose the
11  STS product, and have conducted business as usual.  As a result, Verigy is now forced into the
12  position of being asked by one of its key customers to cooperate with STS to facilitate the
13  interface between the STS product that is the subject of the Order and Verigy's testing equipment,
14  and, in effect, to assist Mayder and STS continue to violate that very Order.  Mayder and STS'
15  untenable conduct is causing damage to Verigy's goodwill and to its ability to do business with
16  this key customer.

17        Defendants' protestations in their various filings notwithstanding, there can be little serious
18  question that the current STS product is merely an evolution of Mayder's original "█████████
19  which was specifically named as Trade Secret Property in the Order.  The ███████████ dated
20  November 15, 2006 is almost identical to the "Flash Enhancer" datasheet (for the current STS
21  product) from January 2007.  (*Compare* Morton Decl., Exs. D & E.)  Despite Defendants'
22  disingenuous claims that the Flash Enhancer is a "completely different product," these two
23  datasheets bear the exact same Honeywell project number, and substantial evidence submitted
24  with Verigy reply papers details the gradual evolution of ████████ (*See, e.g,* Verigy's Reply and
25  Suppl. Brief Re: Preliminary Injunction at 7-10 and declarations cited therein; Morton Decl. Ex.E
26  at SITES050384; Morton Decl. Ex. D at POC0498.)  In July 2007, less than a month before this
27  lawsuit was filed, Mayder was still calling his product the ██████ chip and informing his brother
28  that it "████████████████████████████████████."  (Morton Decl., Ex. F.)  Further, Honeywell was

2

1  still using the ▓▓▓▓ codename in September 2007, nearly a month after the Order was entered
2  by this Court.  (*See* Morton Decl., Ex. G (first email in string on p. SITES050958 has the subject
3  "▓▓▓▓ status").)  Further, there is also little question that this product was, at least in part,
4  derived from the Verigy ▓▓▓▓▓▓▓▓▓▓ projects which Mayder played a substantial role in
5  while at Verigy.  In fact, Mayder admitted that he used ▓▓▓▓▓▓▓▓ documents to start
6  work on his ▓▓▓▓▓▓.  (Morton Decl., Ex. C at 185:7-15)

Indeed, Mayder testified at his deposition and has produced documents demonstrating that he has continued to negotiate with both ▓▓▓▓▓▓▓▓ since the Order, thus disclosing, using, disseminating and marketing the Trade Secret Property (and/or a product developed with the use of, derived from, or incorporating all or any part of the Trade Secret Property) in violation of (at least) paragraphs 1(a) and (b).  (*See, e.g.,* Morton Decl., Exs. C at 346:14-347:11, H, I, J, K.)  Mayder and STS have also continued to work with Honeywell to further refine the STS product, which necessarily involved accessing, disclosing, and using the Trade Secret Property (including the ▓▓▓▓ product developed with the use of, derived from, or incorporating the Trade Secret Property) in violation the Order.  (*See, e.g.,* Morton Decl., Exs.G, K.)  Finally, Mayder deliberately accessed, used and printed an electronic copy of Exhibit A to the Pochowski Declaration after the litigation commenced ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Mayder Decl. in Suppport of Defendants' Response For Order to Show Cause Re: Preliminary Injunction, ¶ 30, Ex. D; Morton Decl., Ex. C at 316:22-317:7; 318:21-321:19.)  Mayder and STS' ongoing willful solicitation of business using the Trade Secret Property and a product developed using, derived from, or incorporating that Trade Secret Property is a violation of paragraph 1 of the Order.  Defendants cannot be allowed to ignore their court-imposed obligations and their conduct warrants a finding of contempt.

## ARGUMENT

A court's authority to impose sanctions for contempt of its orders is an inherent and integral element of its powers. *See, e.g., Gunn v. University Comm. to End War*, 399 U.S. 383, 389 (1970); *Davies v. Grossman*, 930 F.2d 1390, 1393 (9th Cir. 1991). The standard of proof for a finding of civil contempt is clear and convincing evidence. *Balla v. Idaho State Board of*

1  *Corrections*, 869 F.2d 461, 466 (9th Cir. 1989); *U.S. v. Powers*, 629 F.2d 619, 626 n.6 (9th Cir.
2  1980).   Here, there can be no question that Mayder and STS have violated the Order.  The Order
3  explicitly prohibits all defendants from accessing, using, disseminating, disclosing and marketing
4  the Trade Secret Property and/or any product developed with the use of, derived from, or
5  incorporating all or any part of the Trade Secret Property.  Mayder and STS' activities clearly
6  constitute "using," "disclosing" and "marketing," as he has been meeting with potential clients,
7  working with Honeywell engineers to refine the original product, and even accessing an electronic
8  copy of a document he was specifically enjoined from accessing.  As discussed above, the STS
9  product is, at the very least, developed with the use of, derived from, or incorporating part of the
10 Trade Secret Property.

11       This Court clearly contemplated that Mayder and STS would be unable to make any use of
12 Verigy's Trade Secret Property, including the STS product, while the Order was in effect, as the
13 bond was set at $100,000.  (Order at 8.)  This amount was intended to compensate Defendants if
14 the Order was issued erroneously.  The Order has been in effect since August 24, 2007, yet
15 Defendants have not petitioned the Court to dissolve, modify or clarify the Order and, it would
16 seem, have all but ignored the far reaching effects of the Order and continued to conduct business
17 as usual.  Mayder's latest ploy is to ask Verigy to help him do business with its key customer so he
18 can continue to violate the very Order Verigy was forced to seek after its discovery of his
19 wrongful conduct.

20                                    **REMEDIES**

21       A court may impose sanctions for civil contempt to coerce obedience to a court order or to
22 compensate the party pursuing the contempt action for injuries resulting from the contemptuous
23 behavior, or both.  *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947). Courts
24 have broad discretion in fashioning coercive civil contempt remedies. *Perfect Fit Industries, Inc.*
25 *v. Acme Quilting Co.*, 673 F.2d 53, 57 (2nd Cir. 1982); *see also United Mine Workers of Am.,* 330
26 U.S. at 304.  Verigy seeks an order requiring Mayder and STS to cease using, disclosing,
27 disseminating and marketing the STS product and materials related to the STS product, as well as
28 any sanctions this Court might deem appropriate.

Plaintiff also seeks compensatory payment of the fees and costs incurred by it in pursuing this action.  This relief is generally available where the violations were undertaken willfully, as in this case. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975).  In this Circuit, there is also clear precedent for the award of attorneys' fees even where the contempt is not willful. *Perry v. O'Donell*, 759 F.2d 702, 704 (9th Cir. 1985).[1]

## **CONCLUSION**

Mayder and STS' conduct demonstrates a clear disregard of the Order. The continued use and disclosure of the Trade Secret Property and/or a product developed with the use of, derived from, or incorporating the Trade Secret Property are preventing Verigy from realizing the benefits of its significant investment in that property and in this action filed to protect that property. Mayder and STS' conduct is also now damaging Verigy's relationship with one of its key customers.  Verigy needs the Court's intervention in order to maintain the status quo which was supposed to have been established via the Order.  The Court should find Mayder and STS in contempt, and order sanctions to coerce compliance with the Order and remedy the damage done, including, at the very least, compensating Verigy for the costs of bringing this application.

Dated:  December 5, 2007                      BERGESON, LLP

                                              By:  _____/S/_____
                                                        Melinda M. Morton

                                              Attorneys for Plaintiff
                                              VERIGY US, INC.

---

[1] If the Court grants Verigy's request for attorneys' fees and costs, Verigy will submit a separate motion for specific fees and costs incurred in connection with these contempt proceedings.