**Submitted Under Seal — Redacted Version For Public Filing**

Daniel S. Mount, Esq. (Cal. Bar No. 77517)
Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
Kevin M. Pasquinelli, Esq. (Cal. Bar No. 246985)
Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA 95110-2740
Phone: (408) 279-7000
Fax:   (408) 998-1473
Email: dmount@mount.com
       kspelman@mount.com
       dfingerman@mount.com
       kpasquinelli@mount.com

Attorneys for Defendants Romi Mayder, Wesley Mayder,
Silicon Test Systems Inc., and Silicon Test Solutions LLC

United States District Court
Northern District of California, San Jose Division

| | |
|---|---|
| VERIGY U.S. INC., a Delaware corporation | Case No. 5:07-cv-04330 (RMW) (HRL) |
| Plaintiff, | **Defendants' Opposition to OSC re Contempt** |
| vs. | Date: April 11, 2008 |
| | Time: 9:00 a.m. |
| ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS INC., a California corporation; SILICON TEST SOLUTIONS LLC, a California limited liability corporation, | Judge: Hon. Ronald M. Whyte |
| Defendants. | |

**Submitted Under Seal**
**Redacted Version For Public Filing**

**Submitted Under Seal — Redacted Version For Public Filing**

# Table of Contents

Table of Contents ...................................................................................................................... i

Table of Authorities .................................................................................................................. ii

Introduction ............................................................................................................................... 1

Argument ................................................................................................................................... 2

I. The defendants complied with the TRO ................................................................................ 2

    A. The changing nature of Verigy's alleged trade secrets ...................................................... 3

    B. The defendants never had possession of Verigy's documents during this litigation .......... 3

    C. The defendants did not possess any *secret* Verigy information after September 2006 ..... 4

    D. STS refrained from selling its Flash Enhancer product while the TRO was in effect ....... 5

    E. Verigy has not proved any violation by clear and convincing evidence ........................... 5

II. To the extent there is disagreement about compliance with the TRO, the TRO is ambiguous ........ 6

    A. A TRO can only prohibit conduct specified within its four corners .................................. 6

    B. STS and Mr. Mayder acted based on their good faith understanding of the TRO .......... 10

III. Verigy waived the benefit of the TRO with respect to many documents ......................... 11

IV. If contempt is found, the only appropriate relief is a declaration of contempt ................. 12

    A. This is a civil (not criminal) contempt proceeding ......................................................... 12

    B. Injunctive relief is unavailable ........................................................................................ 13

        (1) The court lacks authority to grant injunctive relief for contempt ................................. 13

        (2) Any injunctive relief would be punitive because the TRO is no longer operative ....... 13

    C. Coercive monetary sanctions are unavailable ................................................................. 14

    D. Verigy has made no showing to justify compensatory relief .......................................... 14

    E. If compensatory relief is granted, it is limited to Verigy's costs solely allocated to this motion ........................................................................................................................... 15

Conclusion .............................................................................................................................. 16

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

# Table of Authorities

18 U.S.C. § 401 ..................................................................................................................13

Fed. R. Civ. Proc. 65 .....................................................................................................7, 9, 13

*Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461 (9th Cir. 1989) ........................5, 10, 12

*eBay Inc. v. MercExchange LLC*, 547 U.S. 388 (2006) ..............................................13, 14

*Fonar Corp. v. Deccaid Services Inc.*, 983 F.2d 427 (2d Cir. 1993) ...................6, 7, 9, 10

*Gates v. Shinn*, 98 F.3d 463 (9th Cir. 1995) ............................................................................6

*General Signal Corp. v. Donallco Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) ...............12, 14

*Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624 (1988) ("*Feiock*") ............................2, 12, 13, 14

*International Union v. Bagwell*, 512 U.S. 821 (1994) ..............................................2, 12, 14

*In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902) .........................................................................13, 14

*Penfield Co. of California v. SEC*, 330 U.S. 585 (1947) ..............................................12, 13, 14

*Schmidt v. Lessard*, 414 U.S. 473 (1974) .................................................................................7

*Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 (9th Cir. 1982) ...........7, 10, 12

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

### Introduction

Romi Mayder and STS complied with this court's temporary restraining order (TRO). The defendants were enjoined from such acts as accessing, using, marketing, or selling "Verigy's trade secrets and/or confidential or proprietary information" set forth in Exhibit A to the TRO. The TRO did not, however, prohibit the defendants from accessing or using any non-secret information listed in Exhibit A to the TRO.

Verigy's motion does not establish that the defendants used any of the secret information listed in Exhibit A to the TRO. Thus, Verigy has not met its high burden of proving a violation by clear and convincing evidence.

During the six months when the TRO was operative, STS did not have possession of any Verigy documents, and ███████████████████████████████████████. ███████████████████████████████████████████████████████████████. This novel work did not require Verigy's alleged trade secrets or any access to Verigy's alleged trade secrets. ███████████████████████████████████████. The court agreed in its preliminary injunction order that these recent developments are "relatively significant changes from ███████████████████████, including ███████████████████████ and some features added based on customer requirements that were not originally collected by Verigy."[1]

The defendants have been candid about their ongoing development work in the months after the TRO was entered. The court was aware of and referenced this work in its conclusion that the defendants had obtained a five-month head start by Mr. Mayder's initial use of Verigy's information — before he took STS in a different direction.

Even if the defendants are found to have used some information inappropriately, they cannot be held in contempt for violating an ambiguous TRO. The court used Verigy's proposed order as the basis for the TRO. Verigy drafted its proposed order in a way that violates Rule 65. The TRO does not, for example, contain within its four corners the information or documents the defendants were enjoined from using. Instead, Verigy elected to refer to documents found elsewhere and did not

---
[1] Order Granting in Part Plaintiff's Motion for a Preliminary Injunction (February 29, 2008) at 23:22–25

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

incorporate them into its proposed order. Thus, if the defendants are found to have used information inappropriately, they cannot be held in contempt for violation of the TRO if that information is not contained within the TRO itself.

Even if the TRO did not violate Rule 65, the defendants cannot be held in contempt for complying with their good-faith understanding of the order. The TRO is particularly ambiguous in light of Verigy's changing position in the briefing that followed the TRO. Verigy substantially narrowed its claimed trade secrets in subsequent briefing. The court acknowledged this quagmire in the preliminary injunction order and again at the recent case management conference, when it noted that Verigy would have to replace its vague and overbroad § 2019 trade-secret disclosure.

Verigy has also waived some portions of the TRO that it now accuses the defendants of violating. Verigy reduced the confidentiality designation of some of these documents under the stipulated protective order from "Highly Confidential — Attorneys Eyes Only" to "Confidential." Verigy did this to permit the defendants to access those documents during this litigation. Now, Verigy complains that the defendants did what it invited them to do, claiming that the TRO enjoined their access to one of those documents. Verigy's rights under the TRO were waived, however, when it invited the defendants to access those documents.

If the defendants are held in contempt, the only appropriate relief is a declaration of contempt. Verigy does not specify the scope or amount of any other relief sought in its motion. It requests unspecified sanctions, an unspecified order regarding future conduct, and unspecified compensation. Verigy has not articulated or measured any harm resulting from the alleged violation of the TRO. This court lacks authority to award injunctive relief. Punitive relief is unavailable because this is a civil, not criminal, contempt proceeding.[2] Coercive relief is unavailable because the TRO is no longer operative, after it was replaced with the preliminary injunction. Compensatory relief is unavailable because Verigy has made no showing of harm.

### Argument

### I. The defendants complied with the TRO

---

[2] To the extent this is deemed a proceeding for criminal contempt, the defendants hereby invoke their right to all requisite criminal procedures and a trial by jury. *See e.g., International Union v. Bagwell*, 512 U.S. 821 (1994); *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 633–34 and footnote 6 (1988) (*Feiock*)

Case No. 5:07-cv-04330 (RMW) (HRL)  
Defendants' Opposition to OSC re Contempt                                                                Page 2

**Submitted Under Seal — Redacted Version For Public Filing**

Romi Mayder and STS complied with the TRO as they understood it. In November 2006, before this litigation began, STS had already moved in a direction away from any work Verigy had done. Verigy acknowledges that Romi Mayder began doing original work in November 2006, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■[3] ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Verigy accuses Romi Mayder and STS of violating the TRO by accessing, disclosing, using, marketing, and disseminating "Verigy's trade secrets and/or confidential or proprietary information (which includes the confidential information of Verigy's predecessor, Agilent Technologies, Inc.), as identified in Exhibit A attached hereto (the 'Trade Secret Property')." All but one of the accusations relate to STS's continued development of Flash Enhancer while the TRO was in place.

Even if STS's Flash Enhancer product contains some Verigy trade secrets, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ STS did not have possession of any relevant Verigy documents during this time.[4] Therefore, STS's work during the last six months was not a "use" of Verigy's trade secrets and did not rely on access to any Verigy trade secrets.

**A. The changing nature of Verigy's alleged trade secrets**

After the TRO was entered, Verigy withdrew the original, expansive set of information that it alleged to be trade secrets and upon which the TRO was based.[5] In its place, Verigy substituted a different, narrower set of information. The defendants knew while the TRO was operational that none of those pieces of information was a trade secret. The court agreed in its preliminary injunction order "that the individual items that Verigy claims are trade secrets are not themselves trade secrets."[6] The defendants worked on their reasonable understanding that they could use non-secret elements which, by definition, cannot be trade secrets.

**B. The defendants never had possession of Verigy's documents during this litigation**

---

[3] *See* Defendants' Sur-Reply in Opposition to Order to Show Cause Re Preliminary Injunction at 3:20–24; 16:18 – 17:16
[4] Supplemental Declaration of Romi Omar Mayder, filed 11/30/2007, at ¶¶ 6–7
[5] Preliminary injunction order at 11:2–10
[6] Order Granting in Part Plaintiff's Motion for a Preliminary Injunction (February 29, 2008) at 14:7–8

**Submitted Under Seal — Redacted Version For Public Filing**

1  Romi Mayder terminated his employment with Verigy on Thursday September 21, 2006. On
2  Monday, September 25, 2006, Mr. Mayder installed a new operating system on his computer.[7] To
3  the best of everyone's knowledge, that operation caused the destruction of any Verigy documents that
4  were on that computer.[8] Verigy conducted months of discovery and examination of Mr. Mayder's
5  hard drive through a Special Master appointed by the court.[9] This extensive investigation has not
6  turned up any confidential Verigy documents in Mr. Mayder's possession.[10]

**C. The defendants did not possess any *secret* Verigy information after September 2006**



14  In the preliminary injunction order, the court reasoned that STS had obtained "head start" by
15  using some Verigy information before November 2006 and that ▬▬▬▬▬▬
16  ▬▬▬▬ earlier than he otherwise might have been. The court also concluded that the
17  publicly-available ▬▬▬▬▬[11] and ▬▬▬[12] disclosed Verigy's putative
18  secrets generally, but without sufficient detail to fully enable an engineer to build a product based on
19  ▬▬▬, without additional information.[13] The court also explained, however, that "Flash
20  Enhancer has some relatively significant changes from ▬▬▬▬▬▬▬▬,
21  including ▬▬▬▬▬▬▬▬ and some features added based on
22  customer requirements" ▬▬▬▬▬▬.[14] Romi

---

[7] Supplemental Declaration of Romi Omar Mayder, filed 11/30/2007, at ¶ 7
[8] Destruction of those files was appropriate because Mr. Mayder's Agreement Regarding Confidential Information and Proprietary Developments ("ARCIPD") with Verigy prohibited Mr. Mayder from retaining them.
[9] *See* Magistrate Judge Lloyd's 10/24/2007 Order Regarding Verigy US, Inc.'s Motion to Compel and Setting Forth Protocol for Examination of Disk Drive
[10] Supplemental Declaration of Romi Omar Mayder, filed 11/30/2007, at ¶ 6
[11] ▬▬▬▬▬▬
[12] ▬▬▬▬▬▬
[13] Preliminary injunction order at 14:16–18
[14] Preliminary injunction order at 23:22–25

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

1  Mayder is a smart engineer who was fully capable of reducing the Flash Enhancer chip to practice
2  with his access to that publicly-available information and requirements from STS's customers.
3  　　　The requirements that ████████████████████████ cannot be construed as
4  derived from any Verigy information. Even if STS obtained ████████████ sooner than it would
5  have without prior access to Verigy's information, ████████████████ do not belong to
6  Verigy.

7  　　**D. STS refrained from selling its Flash Enhancer product while the TRO was in effect**
8  　　　Although STS has always been confident that Flash Enhancer does not contain Verigy trade
9  secrets, it still gave a wide berth to the TRO's prohibition on selling products. █████
10 ███████████████████████████████████████████████████████████████████████
11 ███████████████████████████████████████████████████████████████████████
12 ███████████████
13 　　　This ███████ is not inconsistent with STS's continued
14 development work during the same time. As the court acknowledged in its preliminary injunction
15 order, Flash Enhancer contains significant advancements over ████████████████. Those
16 advancements ████████████████████████████████ as well as Mr. Mayder's own
17 ingenuity.█████████████████████████████████████████████████████
18 ████████████████

19 　　**E. Verigy has not proved any violation by clear and convincing evidence**
20 　　　A contempt citation requires Verigy to prove a violation of the TRO by clear and convincing
21 evidence.[17] Verigy has not adduced such evidence.
22 　　　Verigy chiefly relies on █████████████████████████████████
23 ███████████████████████████████████████████████████████████████████████
24 ███████████████████████████████████████████████████████████████████████
25 ███████████████████████████████████████████████████████████████████████
26
27 ───────────────
   [15] Mayder Declaration at ¶ 3 and Exhibit A
28 [16] Mayder Declaration at ¶¶ 5, 9
   [17] *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461 (9th Cir. 1989)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

1. Verigy argues that these emails are self-evident proof that Mr. Mayder and STS violated the TRO. The emails do not suggest any violation, however. ███████████████████████████████████████████████████████████████████████████████████████████████████████

2. Verigy also submitted a declaration of Michael Stebbins on March 7, 2008, three months after filing its motion.[19] It suggests — but stops far short of proving by clear and convincing evidence — that ██████████████████████████████████ after entry of the TRO. For support, Verigy submits ██████████████████████████████ and portions of the deposition testimony of Intel's 30(b)(6) witness, David McMann.[20] ████████████████████████████████████████████████████████████████████████████████████████████████████████ Thus, the testimony does not prove by clear and convincing evidence that ████████████████████████████████████████.

That is the end of Verigy's evidence. Verigy offers no evidence about the content of that proposed work. Verigy offers no evidence that any work was done by STS in Verigy's absence. A request for assistance to do work that would likely not have violated the TRO is not clear and convincing evidence that the TRO was violated.

## II. To the extent there is disagreement about compliance with the TRO, the TRO is ambiguous

### A. A TRO can only prohibit conduct specified within its four corners

An injunction must clearly define the conduct it prohibits.[21] In a trade-secret case, a TRO must specifically and unambiguously identify the information to which it relates.[22] It must "describe in reasonable detail — and not by referring to the complaint or other document — the act or acts

---

[18] *See* section III, below
[19] Ordinarily, the court should ignore this declaration because a moving party is supposed to submit all relevant evidence with its motion. The defendants want to resolve this matter on the merits, however, so they do not object to the untimeliness of Mr. Stebbins' declaration or the improper argument contained therein.
[20] Stebbins Declaration Exhibits 1 and 2, respectively
[21] *See e.g., Gates v. Shinn*, 98 F.3d 463 (9th Cir. 1995); *Fonar Corp. v. Deccaid Services Inc.*, 983 F.2d 427 (2d Cir. 1993)
[22] *Fonar*, 983 F.2d 427

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

restrained or required."[23] In other words, the TRO must contain all the allegedly secret information and documents within its four corners, including its exhibits.[24]

In this case, the court based its TRO upon a proposed order submitted by Verigy which violated this basic tenet of Rule 65(d). The Supreme Court has explained that "the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."[25]

The Second Circuit examined this fundamental rule in factual situation remarkably similar to the one in this case, in *Fonar v. Deccaid Services*.[26] In *Fonar*, the plaintiff sold magnetic resonance imaging (MRI) scanners. Its scanners are operated with "Operational Software," and the plaintiff had created copyrighted, unpublished "Maintenance Software" to diagnose problems and perform maintenance. The defendants were accused of misappropriating trade secrets and infringing copyrights by using the Maintenance Software. The District Court enjoined the use of "Maintenance Software" but did not specify which programs were in that category. When the defendants continued performing maintenance services using the software, the plaintiff moved for a finding of contempt. The District Court found the defendants in contempt, but the Second Circuit reversed:[27]

> A district court may punish for disobedience of an order only if the order is clear and unambiguous. The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. An unclear order provides insufficient notice to justify a sanction as harsh as contempt. The contempt order in the instant case was predicated on alleged violations of an unclear restraining order. The order prohibited defendants from "using plaintiff's copyrighted 'Maintenance Software'," but never defined precisely what constituted "Maintenance Software." Indeed, even at this stage in the proceedings, there is nothing in the record to identify the programs that comprise this protected software. Throughout, Fonar has adhered to the most elusive of definitions and has refused repeatedly to provide the documents that would narrow and clarify the issue. For example, in the affidavits supporting Fonar's motion for a TRO, "Maintenance Software" was defined as "all software other than Operational Software ..., including but not limited to, 'diagnostic and maintenance software', 'field

---

[23] Fed. R. Civ. Proc. 65(d)(1)(C); *See also Fonar*, 983 F.2d at 428–30
[24] *Fonar*, 983 F.2d 427; Fed. R. Civ. Proc. 65(d)(1)(C)
[25] *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)
[26] *Fonar*, 983 F.2d 427
[27] *Fonar*, 983 F.2d 427, 429–30 (quotation marks and citations omitted)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

> engineering utilities software' and 'editors and utilities software'." Notably, these affidavits do not define "Operational Software." Even the copyright deposit does not contain a table of contents, program menu, or any other complete listing of the protected programs. ...
>
> Fonar argues that defendants knew precisely what was prohibited, notwithstanding any vagueness in the restraining order. Even if this were true, Fonar's argument would be unpersuasive. Although specificity is designed in part to ensure that a party receives notice of precisely what conduct is out-lawed, it also serves to facilitate appellate review. Unless the trial court carefully frames its orders of injunctive relief, it is impossible for an appellate tribunal to know precisely what it is reviewing. That is the situation in the instant case.

That, too, is the situation here. In this case, Verigy drafted its proposed TRO in a way that violated Rule 65. When the court based its TRO upon Verigy's proposed order, it reused the error-ridden document that Verigy had recommended. Verigy could have, but elected not to, include the documents referred-to in its proposed order as exhibits. It apparently had already compiled those documents, but simply elected not to include them in the order. Verigy also could have, but elected not to, set forth the contents of those documents in the body of its proposed order. Instead of drafting the TRO to comply with Rule 65, Verigy elected to simply refer to documents found elsewhere — an election that violates the specificity requirements of Rule 65(d).

The TRO that Verigy drafted defines its "Trade Secret Property", in relevant part, to be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[28] The TRO does not specify, however, ▮▮▮▮▮▮▮▮▮▮. Nor does it specify ▮▮▮▮▮▮▮ Nor does it identify a specific document or piece of information constituting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Although the "Background" section of the TRO mentions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it does not state the specific contents of the information that ▮▮▮▮

---

[28] Verigy's Memorandum of Points & Authorities in Support of Application For an Order to Show Cause Re: Contempt Against Defendants Romi Mayder and Silicon Test Systems Inc. ("Motion") at 1:20–21

Case No. 5:07-cv-04330 (RMW) (HRL)  
Defendants' Opposition to OSC re Contempt

Page 8

**Submitted Under Seal — Redacted Version For Public Filing**

▓▓▓▓[29] Nor does the TRO (or Verigy's proposed order) incorporate the contents any of the underlying documents that are referred-to into its text. The "Background" section mentions, for example, documents titled "▓▓▓▓;" "▓▓▓▓;" and "▓▓▓▓▓▓," but those document are conspicuously *not* exhibits to the TRO, and their contents are not set forth in the TRO.[30] Instead, the TRO merely refers to them by title. The TRO does incorporate its own Exhibit A, which lists some documents as being exhibits to declarations that were before the court. The documents referred to were not, however, exhibits to the TRO itself.

Oblique references to documents in the TRO cannot be the basis for enjoining the defendants from using those documents or their contents. Rule 65 requires that "Every order granting an injunction and every restraining order must ... describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required."[31] Even if Verigy had proved by clear and convincing evidence that the defendants had actual knowledge of what documents and information the court intended to enjoin them from using (which it hasn't), it must also show that the TRO contained those documents or their contents within its four corners.[32]

This problem is particularly acute in this case, given Verigy's changing position about what trade secrets it actually possesses. Verigy sought a TRO based upon an expansive, but vague, § 2019 statement. Verigy then disclaimed most of the scope of that § 2019 statement in its subsequent briefs seeking a preliminary injunction:[33]

> Verigy's trade secrets are not the specific individual features of the ▓▓▓▓, they are the combination of technical features embodied in the ▓▓▓▓ which was designed to ▓▓▓▓ ▓▓▓▓. It is the combination of these elements that constitutes a trade secret.

The court noted this remarkable contraction of Verigy's position in its preliminary injunction order.[34] The court also appeared to recognize at the recent case management conference that Verigy's § 2019 statement is inconsistent with its current position, when it ordered the parties to meet and

---

[29] *See* TRO at 2–3 (quoting from 2:19–21)
[30] *See e.g.*, TRO at 3:15–22
[31] Fed. R. Civ. Proc. 65(d)(1)(C)
[32] *Fonar*, 983 F.2d at 429–30
[33] Verigy's reply brief seeking preliminary injunction, at 18:1–4
[34] Preliminary injunction order at 10:24–28

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

confer about narrowing that statement.[35] Like the plaintiff in *Fonar*, Verigy "has adhered to the most elusive of definitions and has refused repeatedly to provide the documents that would narrow and clarify the issue."[36]

Accordingly, the defendants cannot be found in contempt of the TRO that Verigy drafted for this action. Verigy's contempt motion should be denied.

### B. STS and Mr. Mayder acted based on their good faith understanding of the TRO

The defendants' conduct between August 24, 2007 and February 29, 2008 was based on their good-faith interpretation of the TRO.[37] Even if Verigy (or the court) understood the TRO in a different way, the court should respect that the defendants acted good faith based upon their understanding.[38]

As a preliminary matter, one should be wary of using the court's conclusions in the preliminary injunction order as a basis for interpreting the TRO for this motion. The legal standards in a preliminary injunction proceeding are different from the standards in a contempt proceeding. An injunction may be obtained upon a showing by a preponderance of the evidence. Contempt, on the other hand, must be proven by the higher standard of clear and convincing evidence.[39] Verigy has the burden to prove each element of contempt by clear and convincing evidence.[40]

A few days after the court entered the TRO, Mr. Mayder interviewed Dr. Richard Blanchard.[41] At that time, the defendants were considering retaining Dr. Blanchard as an expert for this litigation.[42] After Dr. Blanchard signed a copy of the confidentiality protective order, he read the TRO and Verigy's moving papers, then spent several hours asking Mr. Mayder questions about STS, Flash Enhancer, and related matters.[43] At the end of that meeting, Mr. Mayder asked Dr. Blanchard for his honest, candid opinion about whether any relevant Verigy trade secrets really existed and, if so, whether the defendants had misappropriated them. Dr. Blanchard's opinion at that time was

---

[35] *See* the 3/14/2008 Minute Order following the Case Management Conference
[36] *Fonar*, 983 F.2d at 429
[37] *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 (9th Cir. 1982)
[38] *Vertex Distributing*, 689 F.2d 885
[39] *Balla*, 869 F.2d at 466
[40] *Balla*, 869 F.2d at 466
[41] Mayder Declaration at ¶ 7
[42] Mayder Declaration at ¶ 7
[43] Mayder Declaration at ¶ 7

**Submitted Under Seal — Redacted Version For Public Filing**

essentially as expressed (in more detail) in his declarations subsequently filed in this case.[44] The defendants' good faith understanding of the TRO, summarized above, was based in part on Dr. Blanchard's opinion.

### III. Verigy waived the benefit of the TRO with respect to many documents

As the TRO reflects, Verigy initially attempted to prevent the defendants' access to many documents while litigation was ongoing. On October 2, 2007, however, Verigy waived some provisions of the TRO and permitted the defendants to access many of those documents for litigation purposes. On that date, Verigy's counsel downgraded its confidentiality designation of many documents from "Highly Confidential" to "Confidential."[45] Under the protective order entered in this action, this change gave all parties to this action the right to access the affected documents. Verigy thereby waived its right to seek a contempt citation against any party that accessed those documents during litigation.

In this motion, Verigy alleges that Mr. "Mayder deliberately accessed, used and printed an electronic copy of Exhibit A to the Pochowski Declaration after the litigation commenced at the offices of Christ Straube, Honeywell's sales representative." In the preliminary injunction proceedings, Verigy argued that this document is substantially identical to another document entitled "█████████████," produced separately in this litigation by Verigy and by Robert Pochowski.[46]

The "█████████████" document is one of the documents that Verigy down-designated, however — giving Mr. Mayder permission to "access, use, and print" it for purposes of this litigation. Verigy's production numbers for this document were VER02209–02211, and Mr. Pochowski's production numbers were POC00004–00006. Mr. Pochowski designated this document "Confidential," not "Highly Confidential." Melinda Morton, one of Verigy's attorneys in this action, sent a letter to the defendants' counsel on October 2, 2007, reducing the designation of specified documents.[47] She identified those documents by listing ranges of Bates-numbers.[48] One of those

---

[44] Mayder Declaration at ¶ 7
[45] Pasquinelli Declaration ¶ 5 and Exhibit D
[46] *See e.g.*, Declaration of Melinda Morton re Ex Parte re TRO (filed 8/21/2007) at ¶ 4 and Exhibit B
[47] Pasquinelli Declaration ¶ 5 and Exhibit D
[48] Pasquinelli Declaration ¶ 5 and Exhibit D

Case No. 5:07-cv-04330 (RMW) (HRL)
Defendants' Opposition to OSC re Contempt

Page 11

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

Bates-ranges was VER02008–02243. On October 8, 2007, Verigy re-produced those documents, with the reduced confidentiality designations.[49]

Since Verigy voluntarily permitted all parties to access the down-designated documents during this litigation, it waived its right to claim that any party should not access them. Verigy waived its right to seek a contempt citation against Mr. Mayder or STS for doing what it invited them to do.

Even if the court finds no waiver, the defendants were reasonable in their belief that a waiver existed. Since Verigy has already taken the position that the document viewed by Mr. Mayder is substantially identical to the documents it down-designated, Mr. Mayder is in substantial compliance with the TRO, even if there is a technical violation. "Substantial compliance with a court order is a defense to an action for civil contempt."[50]

Accordingly, no defendant can be found in contempt for accessing, using, or printing any of the down-designated documents.[51]

## IV. If contempt is found, the only appropriate relief is a declaration of contempt

### A. This is a civil (not criminal) contempt proceeding

Verigy initiated this civil (not criminal) proceeding, seeking compensation and sanctions.[52] No constitutional criminal-procedure protections were used in this proceeding (such as prosecution by an independent special prosecutor), and the defendants were not offered a jury trial on any issue relating to the alleged contempt.[53] This court may not impose any punitive sanction as a remedy for civil contempt.[54]

The remedies for civil contempt include coercive sanctions and compensatory relief. A "coercive" sanction is one expressly designed to coerce the contemnor to comply with an earlier court order which is still in effect.[55] A civil contemnor may be fined or jailed as a means to coerce

---

[49] Pasquinelli Declaration ¶ 5 and Exhibit E
[50] *Balla*, 869 F.2d at 466 (citing *General Signal Corp. v. Donallco Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986))
[51] *Vertex Distributing*, 689 F.2d 885
[52] Verigy's proposed order, filed on 12/5/2007
[53] *International Union*, 512 U.S. 821 (1994); *Feiock*, 485 U.S. 624, 633–34; *Penfield Co. of California v. SEC*, 330 U.S. 585 (1947)
[54] *International Union*, 512 U.S. 821 (1994); *Feiock*, 485 U.S. 624, 633–34; *Penfield*, 330 U.S. 585
[55] *Penfield*, 330 U.S. at 590–92

Case No. 5:07-cv-04330 (RMW) (HRL)                                                              Page 12
Defendants' Opposition to OSC re Contempt

**Submitted Under Seal — Redacted Version For Public Filing**

compliance.[56] The civil contemnor must have the ability to completely avoid the coercive remedy by complying with the earlier court order, however. As the Supreme Court has characterized this rule, civil contemnors must "carry the keys of their prison in their own pockets," or the sanction is punitive, rather than coercive.[57]

### B. Injunctive relief is unavailable

#### (1) The court lacks authority to grant injunctive relief for contempt

By statute, this court cannot grant injunctive relief as a remedy for contempt. "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as ... (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."[58] This statute limits the court's authority to grant relief for contempt to "fine or imprisonment, or both." No statute authorizes injunctive relief for contempt.

Verigy already moved for a preliminary injunction under Rule 65, and the court already weighed the evidence and arguments when it entered the preliminary injunction on February 29, 2007. The present motion offers no evidence or arguments concerning the well-established principles of equity that must guide the court in granting injunctive relief.[59] Therefore, no injunctive relief is now available beyond what was ordered in the preliminary injunction. Although Verigy might in the future move to alter or amend the preliminary injunction, it has not done so now.

#### (2) Any injunctive relief would be punitive because the TRO is no longer operative

Any relief granted in connection with a civil contempt motion must be compensatory or coercive — i.e., designed to compensate Verigy or to compel compliance with an *operative* court order. Since the TRO was replaced with a preliminary injunction on February 29, 2007, the TRO is no longer operative. A temporary restraining order dissolves upon entry of a preliminary injunction that replaces it.[60] The court replaced the TRO with a preliminary injunction having a different scope, different conditions, and a different term — all of which the court found to be more appropriate than the TRO's scope, conditions, and term after balancing the traditional equity factors that federal courts

---

[56] *Penfield*, 330 U.S. at 590–92
[57] *Feiock*, 485 U.S. at 633 (quoting *Penfield*, 330 U.S. at 590 and *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902))
[58] 18 U.S.C. § 401
[59] *See eBay Inc. v. MercExchange LLC*, 547 U.S. 388 (2006)
[60] *See* Fed. R. Civ. Proc. 65

**Submitted Under Seal — Redacted Version For Public Filing**

must consider.[61] Verigy presents no evidence or arguments in the present motion that affect the court's balancing of the equitable factors.[62] This does not preclude Verigy from seeking alteration of the preliminary injunction in a future motion, but such relief is unavailable in this proceeding.

Moreover, the court also cannot simply add time to the existing preliminary injunction. A sanction having a fixed term is punitive, not coercive, and is therefore unavailable in a civil contempt proceeding.[63] A non-punitive sanction necessarily requires that the civil contemnor be able to avoid the sanction and "carry the keys" to his own cell.[64]

### C. Coercive monetary sanctions are unavailable

Monetary sanctions (other than pure compensation) must also be coercive rather than punitive.[65] The TRO was dissolved, and Verigy does not suggest that the defendants are not in full compliance with the preliminary injunction that replaced the TRO. Thus, there is no conduct to coerce, so coercive monetary sanctions are likewise unavailable. Even a fine as small as a $50 fine is unavailable if the defendants have no opportunity to avoid it by future compliance with the (dissolved) TRO.[66]

### D. Verigy has made no showing to justify compensatory relief

If any defendant is found in contempt, *compensatory* relief may, in principle, be available. Compensatory awards are limited, however, to "actual losses *sustained as a result of the contumacy.*"[67] Verigy's motion contains no argument — let alone evidence — that Verigy was harmed by the alleged violations. Verigy has shown no lost sales, no unjust enrichment, or other facts that would justify a compensatory award.

Verigy notes in passing that it incurred costs to bring this motion before the court. While that argument is plausible, Verigy is bootstrapping. It implies that Verigy filed a motion for the purpose of recovering the cost of the motion. Moreover, Verigy presents no evidence suggesting that it incurred any costs in connection with this motion that would not have been incurred otherwise.

---

[61] *eBay*, 547 U.S. 388
[62] *eBay*, 547 U.S. 388
[63] *Feiock*, 485 U.S. at 633
[64] *Feiock*, 485 U.S. at 633 (quoting *Penfield*, 330 U.S. at 590 and *Nevitt*, 117 F. at 461)
[65] *International Union*, 512 U.S. 821 (1994); *Feiock*, 485 U.S. 633–34; *Penfield*, 330 U.S. 585
[66] *Penfield*, 330 U.S. 585 (approved in *Feiock*, 485 U.S. at 633–34)
[67] *General Signal*, 787 F.2d at 1380 (emphasis in the original) (quotation marks and citation removed)

Case No. 5:07-cv-04330 (RMW) (HRL)                                                                Page 14
Defendants' Opposition to OSC re Contempt

Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

**Submitted Under Seal — Redacted Version For Public Filing**

Verigy was already conducting extensive discovery in this case when it discovered the alleged violations. Verigy does not present clear and convincing evidence that it did any investigatory work in connection with this motion that it would not have done otherwise.

The timing of Verigy's motion is also suspect. The motion was filed on December 5, 2007 — nine days before the hearing on the preliminary injunction. This timing suggests that Verigy filed this motion with intent to color the court's thinking about the defendants' character and to gain an advantage in the preliminary injunction proceedings. Verigy does not present clear and convincing evidence that the attorney work done in connection with this motion was not done solely to bring the alleged violations before the court and not for these other, improper, purposes.

**E. If compensatory relief is granted, it is limited to Verigy's costs solely allocated to this motion**

Verigy has not even attempted to prove any traditional damages in this motion. Therefore, the only "damages" it can plausibly establish are the costs it incurred to bring this motion. As discussed above, however, Verigy's counsel did not do any extra investigatory work to discover the alleged violations, and it is likely that Verigy brought this motion for improper purposes while the preliminary injunction motion was pending.

Accordingly, any compensatory award to Verigy should be limited to the costs solely allocated to bringing this motion. Those costs should be limited to the cost of attorney time to draft Verigy's five-page motion and the skeletal declarations submitted with it, and the paralegal time necessary to compile exhibits for those declarations that were already in Verigy's possession.

Since Verigy made no effort to show the amount of those costs in its motion, compensatory relief should be denied in its entirety. If the court grants Verigy an opportunity to present evidence of those costs, however, its relief should be limited to the costs discussed above.

If the court is inclined to grant compensatory relief for the costs incurred in connection with this motion, the defendants wish to avoid unnecessary motion practice concerning the amount of money awarded. Therefore, the defendants suggest the following procedure: Verigy should submit a bill of costs to the defendants. If the defendants feel the bill is unreasonable, the parties would meet and confer. The parties would then return to this court only if they cannot reach agreement.

Submitted Under Seal — Redacted Version For Public Filing

## Conclusion

The defendants complied with the TRO as they understood it. Since their understanding was reasonable at that time, the court must respect that understanding and cannot find them in contempt. Moreover, Verigy waived some of the protections that it now asserts against the defendants. Even if the court finds STS and Mr. Mayder in contempt, the only relief it can grant Verigy is a declaration that they are in contempt. The court must deny any punitive, coercive, or compensatory relief.

Dated: March 21, 2008

Mount & Stoelker, P.C.
Daniel H. Fingerman

_____/s/_____
Attorneys for Defendants Romi Mayder, Wesley Mayder, Silicon Test Systems Inc., and Silicon Test Solutions LLC