1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
4  MICHAEL W. STEBBINS, Bar No. 138326
   mstebbins@be-law.com
5  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
6  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
7  Facsimile:   (408) 297-6000

8  Attorneys for Plaintiff
   VERIGY US, INC.

               UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA

                      SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation,<br><br>                    Plaintiff,<br><br>       vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>                    Defendants. | Case No. C07 04330 RMW (HRL)<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE RE: CONTEMPT AGAINST DEFENDANTS ROMI MAYDER AND SILICON TEST SYSTEMS, INC.**<br><br>Date:   April 11, 2008<br>Time:  9:00 a.m.<br>Judge: Honorable Ronald M. Whyte<br><br><br>Complaint Filed:   August 22, 2007<br>Trial Date:              None Set |

**PUBLIC REDACTED VERSION OF HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY DOCUMENT SUBMITTED UNDER SEAL**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   ADDITIONAL FACTUAL BACKGROUND ................................................................... 2

    A.   The Temporary Restraining Order ........................................................................... 2

    B.   Flash Enhancer is Clearly Covered by the TRO ....................................................... 3

    C.   Defendants' Ongoing Violation of the TRO ............................................................. 4

III.  ARGUMENT ....................................................................................................................... 5

    A.   Defendants Have Not "Substantially Complied" With the TRO ............................. 6

    B.   The TRO is Clear and Specific ................................................................................. 7

    C.   Defendants' Conduct Is Unreasonable ................................................................... 10

    D.   Compensatory Sanctions are Appropriate .............................................................. 12

        1.   An Extension of the Injunction Will Provide Full Remedial Relief ......... 13

        2.   The Court Should Also Award Verigy's Attorneys' Fees and Costs ........ 15

IV.   CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Federal Cases**

*A&M Records, Inc. v. Napster. Inc.*
284 F.3d 1091 (9th Cir. 2002) ............................................................................... 7

*Chambers v. NASCO, Inc.*
501 U.S. 32 (1991) ................................................................................................ 5

*Citizens For A Better Environment v. Wilson*
775 F.Supp. 1291 (N.D. Cal. 1991) ..................................................................... 5

*Crystal Palace v. Mark Twain*
817 F.2d 1361 (9th Cir. 1987) ...................................................................... 10, 12

*CSL, L.L.C. v. Imperial Bldg. Products, Inc.*
2006 WL 3526924 ............................................................................................... 14

*Davies v. Grossman*
930 F.2d 1390 (9th Cir. 1991) ............................................................................. 14

*Dekar Industries, Inc. v. Bissett-Berman Corp.*
434 F.2d 1304 (9th Cir. 1970) ......................................................................... 8, 10

*E. & J. Gallo Winery v. Gallo Cattle Co.*
967 F.2d 1280 (9th Cir. 1992) ............................................................................... 7

*Federal Trade Comm'n v. Gill*
183 F.Supp. 1171 (C.D. Cal. 2001) .................................................................... 14

*Fonar v. Deccaid Services*
983 F.2d 427 (2nd Cir. 1983) ................................................................................ 9

*Gnesys, Inc. v. Greene*
437 F.3d 482 (6th Cir. 2005) ........................................................................... 8, 10

*Go-Video v. Motion Picture Ass'n of America (In re Dual Deck)*
10 F.3d 693 (9th Cir. 1993) ............................................................................ 6, 10

*Goya Foods, Inc. v. Wallack Management Co.*
290 F.3d 63 (1st ................................................................................................... 11

*Gunn v. University Comm. to End War*
399 U.S. 383 (1970) ............................................................................................ 14

*Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*
674 F.2d 1336 (9th Cir. 1982) ............................................................................... 9

*In re Hendrix*
986 F.2d 195 (7th Cir. 1993) ............................................................................... 11

*International Union, United Mine Workers of America v. Bagwell*
  412 U.S. 821 (1994) ........................................................................................................ 14

*John T. v. The Delaware County Intermediate Unit*
  318 F.3d 545 (3rd Cir. 2003) ........................................................................................... 13

*Johnson v. Radford*
  449 F.2d 115 (5th Cir. 1971) ............................................................................................. 9

*Klett v. Pim*
  965 F.2d 587 (8th Cir. 1992) ........................................................................................... 13

*McComb v. Jacksonville Paper Co.*
  336 U.S. 187 (1949) ............................................................................................ 11, 12, 14

*Oliner v. Kontrabecki*
  305 B.R. 510 (N.D. Cal. 2004) .......................................................................................... 6

*Perfect Fit Industries, Inc. v. Acme Quilting Co.*
  673 F.2d 53 (2nd Cir. 1982) ............................................................................................ 12

*Perry v. O'Donell*
  759 F.2d 702 (9th Cir. 1985) ........................................................................................... 15

*Reno Air Racing Ass'n, Inc. v. McCord*
  452 F.3d 1126 (9th Cir. 2006) ........................................................................................... 9

*Robin Woods, Inc. v. Woods*
  815 F.Supp 856 (W.D. Pa. 1992) .................................................................................... 14

*S.E.C. v. Hickey*
  322 F.3d 1123 (9th Cir. 2003) ......................................................................................... 14

*Sailor Music v. The Gap Stores*
  668 F.2d 84 (2nd Cir. 1981) .............................................................................................. 8

*Scandia Down Corp. v. Euroquilt, Inc.*
  772 F.2d 1423 (7th Cir. 1985) ................................................................................... 11, 12

*Soft Sheen Products, Inc. v. Revlon*
  1989 WL 58317 (N.D. Ill, June 1, 1989) ......................................................................... 9

*United States v. United Mine Workers*
  330 U.S. 258, 303-04 (1947) ........................................................................................... 12

**State Cases**

*Cubic Corp. v. Marty*
  185 Cal. App.3d 438 (1986) .............................................................................................. 8

*People v. Custom Craft Carpets, Inc.*
  159 Cal. App.3d 676 (1984) .............................................................................................. 8

**Federal Statutes and Rules**

18 U.S.C. § 401 .................................................................................................................. 14

Fed. R. Civ. Proc. 65(d) ................................................................................................... 7, 9

**Other Authorities**

Schwarzer, et al., Federal Civil Procedure Before Trail at 13:229 ................................. 14

**I.  INTRODUCTION**

Defendants' principal arguments against this contempt motion are the same tired arguments that were made in their preliminary injunction briefing: that Verigy has failed to specify any trade secrets and that, even if Verigy has done so, their Flash Enhancer does not *really* contain any of those trade secrets. Indeed, Defendants' initial response to Verigy's contempt motion stated that "the gravamen of Verigy's application is the alleged misuse of 'trade secrets' associated with the ▇▇▇▇▇▇▇▇" and that Verigy's application was "for sanctions for alleged misuse of a trade secret." (Defendants' Response to Verigy's Application for OSC Re: Contempt ("Defendants' Response), Docket No. 138 at 1, 2.) This assertion shows Defendants' basic misunderstanding of the contempt motion. Verigy does *not* seek "sanctions for alleged misuse of a trade secret," rather, it seeks sanctions for contempt for repeated willful violations of the TRO.

Defendants have presented a host of excuses for their noncompliance with the TRO, but none of these excuses are legitimate defenses to civil contempt. The intentions of the parties, as well as any asserted "good faith" by Defendants are simply irrelevant. Verigy does not have to prove that Defendants acted in bad faith when they repeatedly violated the TRO by marketing, disclosing, and using the Trade Secret Property, Verigy just has to show that Defendants did so.

Defendants could have asked this Court for clarification if they believed the TRO was unclear. They chose not to. Defendants could have moved the Court for modification of the TRO if they believed it was wrong or overly broad. They chose not to. Defendants could have stopped refining, marketing and disseminating their product that is based on Verigy's proprietary ASIC design and given the TRO a broad berth. They chose not to. Defendants took the chance, at their own peril, that these violations would go undiscovered, or that the Court would excuse their behavior in light of claims that Flash Enhancer is totally different and an expected victory on the preliminary injunction. Instead, the Court found that Flash Enhancer "is substantially based upon Verigy's trade secrets." (Preliminary Injunction Order at 23.)

The record definitively demonstrates that Defendants have not even for a moment allowed this litigation or the TRO to impede their efforts to sell and market Flash Enhancer. Indeed, the record shows that even after the preliminary injunction issued, specifically prohibiting direct or

1

indirect marketing of Flash Enhancer, Defendants issued a press release declaring that Verigy "was <u>denied</u> a preliminary injunction prohibiting defendants Romi Omar Mayder, Wesley Mayder, Silicon Test Systems, Inc. and Silicon Test Solutions, LLC from bringing STS products to the ATE market." Defendants are now banking on the fact that they have only five months to wait until continuing to misuse Verigy's trade secrets.

As the TRO has now expired due to the issuance of the Preliminary Injunction, the only way Verigy can obtain full remedial relief is an extension of the Preliminary Injunction to compensate for the ongoing damage to customer goodwill and the value of its trade secrets during the time Defendants ignored the TRO. As the Court has recognized, Defendants jump started their business once by using Verigy's trade secrets for their product design, and they should not be allowed to do it again by benefiting from an additional six months of improper use in violation of the TRO.

## II.  ADDITIONAL FACTUAL BACKGROUND

### A.  The Temporary Restraining Order

The Court's TRO, dated August 24, 2007, prohibited defendants from, among other things, (a) "accessing,…disclosing, using, marketing, disseminating,…, making any use of, [and/or] attempting to disclose or use" any of the enumerated Trade Secret Property; and (b) "accessing,…disclosing, using, marketing, disseminating,…, making any use of, [and/or] attempting to disclose or use" any product "developed with the use of, derived from, or incorporating all or any part of Verigy's Trade Secret Property."

Verigy's Trade Secret Property is identified in Exhibit A to the TRO, and includes, in relevant part,

> 1. Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to:
>    (a) The projects code-named ▮▮▮▮▮▮▮▮▮▮
>    (b) The projects code-named by Mayder as ▮▮▮▮▮▮▮▮;
>        . . .
>    (l) Verigy's non-public RFQs and associated documents;
>        . . .

1  (u) Exhibit[] A . . . to the Lee Declaration submitted in support of Verigy's Application for a TRO; and
2  (v) Exhibit[] F to the Pochowski Declaration submitted in support of Verigy's Application for a TRO.

(Order, Ex. A, Paragraph 1.)  In addition, Defendants were enjoined from using

> Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to the ███████████████████████████████████████ and any provisional patent applications, patent applications or patents claiming priority to ███████████████████████████████

(Order, Ex. A, Paragraph 5.)

**B.    Flash Enhancer is Clearly Covered by the TRO**

The Court found in the February 29, 2008 Preliminary Injunction Order ("Preliminary Injunction Order" that Flash Enhancer "is substantially based upon Verigy's trade secrets" and "is, at the very least, ██████████████████████████████████████████." (Preliminary Injunction Order at 23.)  Thus, there is simply no question that Flash Enhancer is and was covered by the TRO.

███████████████████████████████████████████████, (the "█████████ ██████████") clearly encompasses Flash Enhancer.  The █████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████." (Stebbins Reply Decl., Ex. 3, at POC00208.)[1]  ████████████████████████ also states that the ASIC "████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ (*Id.* at POC00221)  These are the same specifications found in the Flash Enhancer datasheet.  (*See, e.g.,* Pochowski Reply Decl. Re: Prelim. Inj., Ex. 2.)  The █████████████████████ also ████████████████████████████████████████████████████████████████████████

---

[1] For the Court's convenience, the provisional patent application and the utility patent application claiming priority to it, both previously submitted in the Pochowski Reply Declaration Re: Preliminary Injunction, are attached to the Stebbins Reply Declaration as Exs. 3 and 4.  These documents were cited in the Application in their original declarations in support of Verigy's Reply and Suppl. Brief Re: Preliminary Injunction.  (Application at 2.)

3

1  █████████████." (*Id.* at POC00211.) The December 2007 ██████████
2  ████████████████████████████████ also clearly describes the features and
3  functionalities that comprise Flash Enhancer. (*Id.* at Ex. 4.) Defendants provide no evidence to
4  the contrary.

### C. Defendants' Ongoing Violation of the TRO

As set forth in Verigy's Brief in Support of Application for an Order to Show Cause re: Contempt (Docket No. 132) ("Application"), Defendants have effectively ignored the TRO and conducted business as usual. Some facts bear additional emphasis.

On December 3, 2007, Mayder sought to have Verigy sign an NDA *with STS* so that Verigy could work together with Mayder, STS and Spansion, one of Verigy's key customers, to integrate the Flash Enhancer with Verigy's v5400 product. (*See* Morton Decl. at ¶ 3, Ex. A.) Verigy filed the Application for an Order to Show Cause re: Contempt two days later, on December 5, 2007.[2]

In the deposition of an Intel representative, David L. McMann, taken on January 9, 2008, it was revealed that:

- Mayder never told Intel that Verigy alleged that Mayder had stolen its trade secrets, he merely stated that "████████████████████████████████████████████." (McMann Depo. at 22:1-9; 42:5-13.)

- Mayder never told Intel that he had worked on a resource sharing ASIC solution while employed at Verigy immediately prior to starting Silicon Test Systems, Inc. (McMann Depo. at 54:14-55:8.)

- Mayder did not inform Intel that there was a temporary restraining order in this action. (McMann Depo. at 35:18-21.)

- Mayder delivered Flash Enhancer prototypes to Intel. (McMann Depo. at 35:22-24.)

- After learning of the temporary restraining order, Intel stopped evaluating the Flash Enhancer product and its outside counsel took possession of them. (McMann Depo. at 37:15-38:22.)

---

[2] The Application was filed in good faith in a timely attempt to stop behavior injuring Verigy's customer goodwill and exposing Verigy's trade secrets, and not, as Defendants suggest, to influence the preliminary injunction hearing.

(*See* Declaration of Michael W. Stebbins ("Stebbins Decl.") at ¶ 4, Ex. 2.)[3] The evidence cited here and in the Application confirm that since issuance of the TRO, defendants have not altered their commercial behavior whatsoever and have continued to disclose, disseminate, market and use Flash Enhancer.

Moreover, in a series of actions which underscore defendants' misinterpretation of the law and misguided *hubris*, <u>after</u> issuance of this Court's February 29, 2008 Order granting the preliminary injunction, Mayder issued another press release, entitled "**US Court Denies Injunction Sought by Verigy,"** which stated that Verigy:

> . . . was denied a preliminary injunction prohibiting defendants Romi Omar Mayder, Wesley Mayder, Silicon Test Systems, Inc. and Silicon Test Solutions, LLC from bringing STS products to the ATE market. Specifially [sic] the US court found that Romi Mayder could have developed STS products without exposure [sic]Verigy trade secrets. Silicon Test Systems values its intellectual property highly and thus STS is very pleased with the court's decision.

(Stebbins Reply Decl. at ¶ 4, Ex. 5.) Incredibly, when confronted with the fallaciousness of this press release and the fact it obviously constituted "direct or indirect marketing" of the offending product (STS' *only* product) in violation of the preliminary injunction, defendants' counsel actually attempted to justify its issuance. (*Id.* at ¶ 5, Ex. 6.) At Verigy's insistence, defendants finally withdrew the press release, but the withdrawal came too late, as the release had been picked up by a number of websites discussing Verigy. (*Id*. at ¶ 7, Ex. 8.)

**III.    ARGUMENT**

Courts have the "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991). The standard for proving contempt is to show by clear and convincing evidence that the enjoined party failed to comply with a court order. *Citizens For A Better Environment v. Wilson,* 775 F.Supp. 1291, 1299-1300 (N.D. Cal. 1991). Once the moving party has shown noncompliance, the "burden then shifts to the contemnors to demonstrate why they were unable to comply." *Oliner v. Kontrabecki,* 305

---

[3] Defendants take issue with Verigy's submission of the Stebbins Decl., claiming it is untimely. Contrary to Defendants' assertion, the declaration is timely because it was filed on March 7, 2008, exactly 35 days before the April 11, 2008 hearing on Verigy's motion. *See* Civ. L.R. 7-2.

5

1  B.R. 510, 520 (N.D. Cal. 2004).  Here, Verigy has shown that Defendants repeatedly violated the

2  TRO, essentially ignoring the prohibitions contained therein.  The evidence of Defendants'

3  malfeasance has come to light without the benefit of extensive third party discovery.  Once Verigy

4  subpoenas ▮▮▮▮▮▮▮▮▮▮ and others with whom Mayder has dealt since August 2007,

5  defendants' utter disregard of the TRO will be even more transparent.  Defendants have failed to

6  demonstrate any compelling reasons for their failure to comply with the TRO and, in fact, all

7  signs, including the arguments set forth in Defendants' opposition to this motion, point to the

8  reality that Defendants' conduct was purposeful and calculated.  Accordingly, Defendants should

9  be found in contempt.

10  **A.  Defendants Have Not "Substantially Complied" With the TRO**

11  Although "substantial compliance" with a court's order is a defense to civil contempt, *Go-*

12  *Video v. Motion Picture Ass'n of America (In re Dual Deck),* 10 F.3d 693, 695 (9th Cir. 1993),

13  Defendants' actions do not even approach substantial compliance.  The evidence shows that

14  Defendants carried on with business as usual as though the TRO never existed.

15  The TRO explicitly prohibits all defendants from accessing, using, disseminating,

16  disclosing and marketing the Trade Secret Property, and/or any product developed with the use of,

17  derived from, or incorporating all or any part of the Trade Secret Property as discussed *supra.*

18  Mayder and STS' activities as detailed *supra* and in the Application and clearly constitute "using,"

19  "disclosing" and "marketing."  As determined by the Court in the Preliminary Injunction Order,

20  Flash Enhancer is, at the very least, developed with the use of, derived from, or incorporating part

21  of the Trade Secret Property.  (Preliminary Injunction Order at 23.)

22  Indeed, not only did Defendants continue to market, disseminate, disclose and use the

23  Trade Secret Property as embodied in the Flash Enhancer, but Mayder deliberately accessed and

24  used a document whose use was specifically prohibited *by name* in the TRO: Exhibit A to the Lee

25  Declaration (also identified at least four other times in the TRO as (1) as Verigy's non-public

26  RFQs; (2) Verigy's non-public communications with component suppliers; (3) Documents marked

27

28

1  "Agilent Confidential"; and (4) Performance Requirements for the ▮▮▮▮▮▮▮▮.[4] Mayder's

2  deliberate use of this document, and the subsequent attempts to justify its use, are compelling

3  evidence that Defendants did not even attempt "substantial compliance" with the TRO.[5]

### B. The TRO is Clear and Specific

The TRO enjoins Defendants from "accessing,…disclosing, using, marketing, disseminating,…, making any use of, [and/or] attempting to disclose or use" any of the enumerated Trade Secret Property; and (2) "accessing,…disclosing, using, marketing, disseminating,…, making any use of, [and/or] attempting to disclose or use" any product "developed with the use of, derived from, or incorporating all or any part of Verigy's Trade Secret Property." These are all words whose plain meaning is clear. Trade Secret Property, defined in Exhibit A to the TRO, also contains clear statements as to what is enjoined, such as "Inventions, designs, plans,[ etc.]…relating to the ▮▮▮▮▮▮▮▮." Defendants argue that the TRO is impermissibly vague and improperly refers to documents not attached to the TRO, but neither of these assertions accurately states the law in the Ninth Circuit.

It is true that a preliminary injunction must be "specific in terms" and "describe in reasonable detail…the act or acts sought to be restrained." Fed. R. Civ. Proc. 65(d). However, the Ninth Circuit has clearly stated that "We do not set aside injunctions under this rule 'unless they are so vague that they have no reasonably specific meaning.'" *A&M Records, Inc. v. Napster. Inc.,* 284 F.3d 1091, 1097 (9th Cir. 2002), quoting *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1297 (9th Cir. 1992). This is a lofty standard, and one that Defendants fail to meet.

---

[4] Verigy's opening brief contains a typographical error at page 3, line 17—although the document is identified there as Exhibit A to the Pochowski Declaration, the discussion, cited deposition excerpts and Mayder Declaration exhibit (as well as Defendants' discussion in their opposition) deal with the correct exhibit, which is Exhibit A to the Lee Declaration (the ▮▮▮▮▮▮▮▮). For the Court's convenience, Verigy attaches Ex. D to Mayder's Declaration and Exhibit A to the Lee Declaration to the Stebbins Reply Declaration as Exs. 9 & 10.

[5] Defendants' arguments that Verigy somehow waived the TRO by reducing the confidentiality designations of *other* documents, to the extent it is decipherable, is unavailing. First, this document remains "Highly Confidential" to this date. Verigy did reduce certain other documents to "confidential," but such designation neither defeats trade secret status (as the documents remain confidential and not publicly disseminated) nor gives Mayder permission to violate a court order. Defendants cite no case law in support of this assertion, and Verigy was unable to find any such cases after a diligent search.

1  Courts have upheld injunctions in other cases with similar or even much broader terms. *See, e.g.,*
2  *Gnesys, Inc. v. Greene,* 437 F.3d 482, 490 (6th Cir. 2005) (injunction prohibiting defendants from
3  selling products that infringe identified patents or using "Plaintiff's trade secrets or proprietary
4  information, namely, Plaintiff's confidential information and know-how relating to its products
5  and processes, including those for separating two immiscible liquids of different densities.");
6  *Dekar Industries, Inc. v. Bissett-Berman Corp.,* 434 F.2d 1304, 1306 (9th Cir. 1970) (injunction
7  that did not set forth specific trade secrets but enjoined use of "methods and techniques of
8  manufacture of electrolytic cells (couolmeters) in quantity and with reliable characteristics" was
9  adequately specific.); *Sailor Music v. The Gap Stores,* 668 F.2d 84, 86 (2nd Cir. 1981) (Injunction
10 prohibiting defendant from "rendering any public performances by means of radio broadcasts over
11 loudspeakers which would infringe plaintiff's copyrighted musical compositions" was sufficiently
12 specific.); *cf. Cubic Corp. v. Marty,* 185 Cal. App.3d 438, 456 (1986) (Injunction prohibiting
13 exploitation of rights under a certain US Patent was not unduly vague); *People v. Custom Craft*
14 *Carpets, Inc.,* 159 Cal. App.3d 676, 681 (1984) ("The injunction need not etch forbidden actions
15 with microscopic precision, but may instead draw entire categories of proscribed conduct.").
16 Here, there is no question that the provisions of the TRO that Defendants are alleged to have
17 violated set forth in reasonably adequate detail what conduct is prohibited.

18       Defendants claim that each document that is sought to be protected as a trade secret must
19 be attached to the TRO, and further claim that the TRO does not specify the "inventions, designs,
20 plans know-how, research, techniques, tools, processes, software, hardware [or]economics."
21 (Opp'n at 8.) However, Defendants incorrectly describe both the law and the TRO. The TRO
22 specifies that inventions, designs, etc. "*relating to*" specific topics are enjoined—there is no
23 requirement that each document be named or described. Applying such a requirement would be
24 impossible, as (1) trade secrets in any case are contained in numerous documents, which would
25 require TROs to be thousands of pages; and (2) such inventions and designs are in the possession
26 of Defendants and the TRO was issued prior to any discovery. A plaintiff can only specify the
27 topics, processes, and areas that are its trade secrets—it does not have the requisite knowledge to
28 list specific inventions or designs that Defendants have created from these trade secrets. Indeed,

8

VERIGY'S REPLY TO OPPOSITION                                                    C07-04330 RMW (HRL)

1  courts have noted that "the use of more specific language in an injunction is not necessarily
2  desirable because it increases opportunities for evasion." *Soft Sheen Products, Inc. v. Revlon,*
3  1989 WL 58317, Civ. NO. 86 C 1753, *1 (N.D. Ill, June 1, 1989).

4      It is true that F.R.C.P prohibits incorporation of materials in other documents to describe
5  the acts enjoined. Fed. R. Civ. Proc. 65(d). However, there is no requirement in the Federal Rules
6  or in any known case law that requires TROs to contain "all the allegedly secret information *and*
7  *documents* within its four corners." (Opp'n at 7, emphasis added.) Defendants cite to a Second
8  Circuit decision, *Fonar v. Deccaid Services,* 983 F.2d 427 (2nd Cir. 1983), in support of this
9  position. However, *Fonar* does not accurately state the law in this Circuit, and Defendants
10 misconstrue its holding. The Ninth Circuit has allowed incorporation by reference of documents
11 attached to the injunction, *Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.,* 674 F.2d 1336,
12 1343 (9th Cir. 1982), as well as incorporation of exhibits to declarations filed with an application
13 for a TRO, *Reno Air Racing Ass'n, Inc. v. McCord,* 452 F.3d 1126, 1133 (9th Cir. 2006). Further,
14 *Fonar* concerned a preliminary injunction, entered after extensive briefing. Here, the injunction at
15 issue is a TRO, and "a temporary injunction is intended to be temporary, to meet the exigencies of
16 the situation, and necessarily at times lacks the degree of precision which may be required on final
17 decree." *Johnson v. Radford,* 449 F.2d 115, 117 (5th Cir. 1971).

18     Even if *Fonar* was applicable, it is easily distinguished. In that case, at the preliminary
19 injunction stage, plaintiff had failed to produce any copies of the copyrighted software or even
20 provide a list of the relevant programs included in the term "Maintenance Software." *Fonar,* 983
21 F.2d at 429. The injunction excluded "Operations Software," but failed to describe what that
22 software was. *Id.* Here, the TRO is much more specific than the *Fonar* injunction, as it
23 specifically enjoins marketing, using, and disseminating inventions, plans and designs related to a
24 specific ███████████████████████████, identified by number, as well as such inventions,
25 plans and designs related to ████████████████████████████████████████
26 ████████ It further enjoins use of inventions, plans and designs relating to the ██████ project
27 or derived from the ██████ project.
28

1   Where the defendant previously worked for the plaintiff and assisted in developing the
2   trade secrets, it "ill behooves [defendant] and those in privity with him to now assert they do not
3   know." *Dekar Industries, Inc.,* 434 F.2d at 1305-06; *Gnesys, Inc. v. Greene,* 437 F.3d 482, 494
4   (6th Cir. 2005) ("The Court fails to see how Defendant, who worked for Plaintiff, could not have
5   realized that this was sensitive information belonging to Plaintiff and protected by the
6   injunction."). Mayder, having worked on this very technology at Verigy for at least nine months,
7   knew what he did, knew what he took, and clearly knew what was prohibited by the TRO.
8   Further, as the ▮▮▮▮▮ project was secretly instituted by Mayder on Verigy time, it cannot be said
9   that he does not understand what the project was or what the technology entailed. Defendants
10  clearly knew what they should not do, but did it anyway.

11  **C.   Defendants' Conduct Is Unreasonable**

12  The rule long recognized in the Ninth Circuit is that parties subject to a court order must
13  take "all reasonable steps within [their] power to comply." *Go-Video,* 10 F.3d 693 at 695 (internal
14  quotation omitted); *Crystal Palace v. Mark Twain,* 817 F.2d 1361, 1365 (9th Cir. 1987).
15  Defendants did not take any reasonable steps to comply with the TRO. Defendants aver that they
16  did not sell Flash Enhancer to ▮▮▮▮▮▮▮▮ this claim is, at best, problematic. First, the prototype
17  chips were not even available until November 2007, and until that point, Defendants had no
18  product to sell. (Stebbins Decl., Ex. 1.) Second, although selling is one of the prohibited
19  activities, so are marketing, disseminating, disclosing, altering, using, and attempting to disclose
20  or use. Defendants could have stopped marketing the product to potential customers and stopped
21  work with ▮▮▮▮▮▮ on the ASIC containing Verigy trade secrets, but instead Defendants chose
22  to continue develop that product, hoping the Court would eventually buy their argument that Flash
23  Enhancer was "completely different" than their original copied design. The Court did not.
24  Defendants did not even inform potential customers that there was a TRO in place.
25  (Stebbins Decl., Ex. 2 at 35:18-21.) Accordingly, Defendants acted contumaciously and deserve
26  to be sanctioned.
27  Defendants claim that their expert, Dr. Richard Blanchard, opined that Flash Enhancer did
28  not contain any trade secrets, and that Defendants relied upon that opinion – which was

10
VERIGY'S REPLY TO OPPOSITION                                              C07-04330 RMW (HRL)

purportedly offered even before Dr. Blanchard was retained when he was still "objective." Importantly, defendants have failed to submit a declaration from Dr. Blanchard in opposition to this motion, and Mayder's self-serving declaration about what he purportedly said is inadmissible hearsay. (*See* Verigy's Obj. to Evid. In Opp. at 2.)

However, even if there were any reliable evidence of Blanchard's comment, it is irrelevant. Defendants in trade secret cases always argue that their product does not contain trade secrets of their opponents, and the truth of these arguments is resolved through the preliminary injunction process. The purpose of the TRO is to maintain the *status quo* and safeguard the plaintiff's intellectual property and goodwill until such a determination can be made. If Defendants' position was correct, then every defendant in every trade secret case could ignore the TRO, gambling with impunity that ultimately they might prevail on the preliminary injunction. Here, defendants took that gamble and lost.

Indeed, after entry of the TRO, Defendants had ample opportunity to seek clarification, modification or even reconsideration of the Court's order, but chose not to do so. In relying on their own judgment instead of seeking clarification from the Court, they "took a calculated risk" and "acted at their own peril." *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 193 (1949). "A person subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage." *In re Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993); *Goya Foods, Inc. v. Wallack Management Co.,* 290 F.3d 63, 75(1st Cir. 2002) ("When a legitimate question exists as to the scope or effectiveness of a court's order, those who know of the decree, yet act unilaterally, assume the risk of mistaken judgments.); *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1432 (7th Cir. 1985) ("The right to seek clarification or modification of the injunction provides assurance, if any be sought, that proposed conduct is not proscribed. [Defendant] did not seek modification or clarification from the district court,…[and thus defendant] has only itself to blame for its current predicament."). Because Defendants failed to seek assistance from the Court, and in fact, sought to extend the TRO herein several times, the current protestations about the purported uncertainty of the TRO lack merit.

In addition, Defendants' insistence that they acted in good faith is irrelevant: the law is

11

1  clear that in a contempt proceeding good faith is beside the point. "Civil…contempt is a sanction
2  to enforce compliance with an order of the court or to compensate for losses or damages sustained
3  by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the
4  defendant did the prohibited act." *McComb,* 336 U.S. at 191 ("an act does not cease to be a
5  violation of a law and of a decree merely because it may have been done innocently."); *Scandia*
6  *Down,* 772 F.2d at 1432 ("what the injunction actually says—not what the parties think it ought to
7  have said—controls subsequent proceedings in contempt."). The Ninth Circuit has reiterated that
8  "it does not matter what the intent of the applicants was when they disobeyed the court's order."
9  *Crystal Palace,* 817 F.2d at 1365. Accordingly, Defendants' purported good faith, whether based
10 on Dr. Blanchard's supposed comment or otherwise, is irrelevant to this motion.

**D.    Compensatory Sanctions are Appropriate**

12 Courts have broad discretion in fashioning civil contempt remedies. *Perfect Fit Industries,*
13 *Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2nd Cir. 1982); *see also United States v. United Mine*
14 *Workers*, 330 U.S. 258, 303-04 (1947). In the Application, made when the TRO was still in
15 effect, Verigy requested that the Court require Mayder and STS to cease using, disclosing,
16 disseminating and marketing the STS product and materials related to the STS product, as well as
17 any other sanctions this Court might deem appropriate. Defendants argued in their December 7,
18 2007 Response that the preliminary injunction order would be helpful in deciding the issue of
19 contempt, and asked that the contempt hearing be delayed until after the preliminary injunction
20 order was issued.[6] (Defendants' Response at 2.) As a result of the ensuing delay, the coercive
21 sanctions requiring Defendants to comply with the TRO and penalizing them for non-compliance
22 are no longer available, as the TRO has expired.[7] However, Verigy is entitled to compensatory

---

[6] Interestingly, Defendants initially claimed that the Court should defer consideration until the Court "has ruled on the existence of a trade secret and the propriety of issuance of a preliminary injunction." (Defendants' Response at 2.) Now, after the issuance of a preliminary injunction finding "substantial" use of Verigy's trade secrets, Defendants opportunistically claim that "one should be wary of using the court's conclusions in the preliminary injunction order as a basis for interpreting the TRO for this motion." (Opp'n at 10.)

[7] The Court could, however, order coercive sanction to ensure compliance with the preliminary injunction order, especially given Defendants' continued contumacious conduct. Indeed, Defendants' request to delay both the contempt hearing and the preliminary injunction hearing

1  sanctions, as such sanctions are available after expiration of an injunction. *Klett v. Pim,* 965 F.2d

2  587, 590 (8th Cir. 1992) ("If the underlying injunction abates for a reason that does not go to the

3  jurisdiction of the issuing court, however, a compensatory civil sanction may still be brought.");

4  *John T. v. The Delaware County Intermediate Unit,* 318 F.3d 545, 554 (3rd Cir. 2003) ("If civil

5  contempt sanctions are not designed to punish, they may be retroactive. District courts hearing

6  civil contempt proceedings are afforded broad discretion to fashion a sanction that will achieve

7  full remedial relief."). To achieve "full remedial relief" in this action for Defendants' extensive

8  contumacious behavior, the remedy that will best compensate Verigy is an extension of the

9  Preliminary Injunction for six months, the approximate term of the TRO that Defendants

10  repeatedly violated and ignored. In addition, Verigy seeks its attorneys' fees for the briefing and

11  limited discovery that Verigy conducted for the contempt motion.

**1.     An Extension of the Injunction Will Provide Full Remedial Relief**

13  The Court has already decided that Flash Enhancer contains Verigy trade secrets and that

14  defendants' improper conduct gave them an unfair head start on their own product. (Preliminary

15  Injunction Order at 23.) What is now also clear is that their head start was extended by several

16  *additional* months while they continued to develop and market their purloined ASIC, effectively

17  ignoring the TRO. For almost six months, defendants conducted business as usual while relying

18  upon the vain hope that the court would eventually find there were no trade secrets and they could

19  argue that their use of Verigy's materials while the TRO was pending was justified or at least

20  harmless.

21  Defendants' contempt has damaged Verigy's goodwill with clients and reputation, as well

22  as to the value of the trade secrets and other confidential business information that Defendants

23  continued to exploit. Because this sort of damage is difficult to quantify, it is best remedied by

---

could be seen as a deliberate attempt to continue commercializing their product without court
intervention.

injunctive relief.[8]

Defendants claim that the Court is constrained by 18 U.S.C. § 401. However, the court's authority to impose sanctions for contempt of its orders stems from both its inherent powers as well as statutory powers. See, e.g., *Gunn v. University Comm. to End War*, 399 U.S. 383, 389 (1970); *Davies v. Grossman*, 930 F.2d 1390, 1393 (9th Cir. 1991); Schwarzer, *et al.,* Federal Civil Procedure Before Trial at 13:229. The Supreme Court stated that "Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *International Union, United Mine Workers of America v. Bagwell,* 412 U.S. 821, 831 (1994). Likewise, courts have "broad equitable power to order appropriate relief in civil contempt proceedings." S.E.C. v. Hickey, 322 F.3d 1123, 1128 (9th Cir. 2003). Numerous courts have ordered equitable relief or sanctions other than fines or imprisonment in civil contempt proceedings. *See, e.g., McComb,* 336 U.S. 187 at 193 ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts, such as the production of books."); *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) (ordering a freeze of assets as a sanction for contempt); *Robin Woods, Inc. v. Woods,* 815 F.Supp 856, 875 (W.D. Pa. 1992) (finding that an extension of an injunction was "within the range of sanctions that a court can lawfully impose" in a contempt proceeding), overturned on other grounds, 28 F.3d 396 (3rd Cir. 1994); *Federal Trade Comm'n v. Gill,* 183 F.Supp. 1171, 1186 (C.D. Cal. 2001) (ordering defendants to rescind contracts as a sanction for civil contempt); *CSL, L.L.C. v. Imperial Bldg. Products, Inc.,* 2006 WL 3526924, Civ. No. C-03-05566, *13 (N.D. Cal., Nov. 21, 2006)

---

[8] It is well established that "difficulties in quantifying damages does not bar recovery." *See, e.g., C.S.L., LLC v. Imperial Building Products,* 2006 WL 3526924, *10 (N.D. Cal. Nov. 21, 2006). Verigy has not engaged in extensive discovery regarding the extent of Defendants' contumacious behavior or the monetary damages to Verigy, focusing instead on the merits of the case. The only discovery regarding such behavior taken to date is a subpoena and limited deposition of Intel. If the Court feels it appropriate to award monetary damages instead of an injunction, Verigy requests permission to undertake additional limited discovery to determine the extent and true costs of Defendants' contumacious activities, followed by briefing as to the appropriate monetary sanctions.

(ordering destruction of packaging as sanction for civil contempt).  Here, equitable relief is the only remedy that can truly compensate the damage to Verigy's trade secrets and its customer goodwill.  (*See* Verigy's Application for a Temporary Restraining Order at 20.)

### 2. The Court Should Also Award Verigy's Attorneys' Fees and Costs

Plaintiff also seeks compensatory payment of the fees and costs incurred by it in pursuing this action.  In this Circuit, there is clear precedent for the award of attorneys' fees even where the contempt is not willful.  *Perry v. O'Donell*, 759 F.2d 702, 704 (9th Cir. 1985).  Verigy has incurred fees and costs as a direct result of Defendants' noncompliance.  Verigy should not have to bear the burden of these fees and costs, which include fees and costs associated with Verigy's efforts to determine and confirm Defendants' noncompliance and in connection with the briefing and hearing of this matter.  Upon a finding of contempt and/or at the Court's direction, Verigy will provide evidentiary support for the fees and costs it seeks to recover.

## IV. CONCLUSION

For all of the foregoing reasons, Verigy respectfully requests that the Court enter an order finding Defendants in civil contempt for its violations of the TRO, and that the Court grant the compensatory and coercive remedies as described herein.  Beyond Defendants' repeated violations of the TRO, it is now apparent that Defendants have taken a similarly cavalier attitude toward compliance with the Preliminary Injunction.  It is up to the Court to treat this as a continuing contumacy or a new violation.

Dated:  March 28, 2008                                    BERGESON, LLP

By:      /s/
     Michael W. Stebbins
     Attorneys for Plaintiff
     VERIGY US, INC.