DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
JOHN W. FOWLER, Bar No. 037463
jfowler@be-law.com
MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff
VERIGY US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>Defendants. | Case No. C07 04330 RMW (HRL)<br><br>**VERIGY'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER RELIEVING VERIGY OF DUTY TO RESPOND TO SECOND SET OF REQUESTS FOR ADMISSION PROPOUNDED BY DEFENDANTS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: June 17, 2008<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Hon. Howard R. Lloyd<br><br>Complaint Filed:   August 22, 2007<br>Trial Date:             None Set |

# NOTICE OF MOTION AND MOTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on Tuesday, June 17, 2008, at 10:00 a.m.,[1] or as soon thereafter as the matter may be heard, in the courtroom of the Hon. Howard R. Lloyd, United States Magistrate Judge, Courtroom 2 of the United States District Court for the Northern District of California, San Jose Division, 280 South First Street, San Jose, California, plaintiff Verigy U.S., Inc. ("Verigy"), shall and hereby does move the Court for a protective order relieving Verigy of the duty to respond to defendants' second set of requests for admission.

The motion is made pursuant to Rules 26(c), 26(g) and 37 of the Federal Rules of Civil Procedure on the grounds that good cause exists for issuance of an order forbidding the aforementioned requests for admission to protect Verigy from annoyance, oppression, or undue burden or expense.

This motion is based upon this notice of motion and motion, the supporting memorandum of points and authorities, the declaration of Melinda Morton, the complete files and records in this action, and such additional evidence and argument as may hereinafter be presented.

# STATEMENT OF ISSUES

(N.D. Cal. Civil L.R. 7-4)

1. Should a protective order issue relieving Verigy of the duty to respond to defendants' second set of requests for admission, totaling 278 separate requests, given that the Court had ordered that only "limited discovery" be conducted, that the Court ordered that Defendants could do a request for admissions and not multiple sets, and that 244 of the requests concerned Plaintiff's Initial 2019.210 disclosure that Defendants knew would be amended the very next day after service of the requests for admission?

---

[1] Concurrently with this motion, Verigy is filing a motion to shorten time so that this matter may be heard at the same time as Defendants' pending motion to compel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND BACKGROUND

This case involves the misappropriation of Verigy's valuable trade secrets and confidential information by Romi Mayder ("Mayder") a former Verigy employee, the new companies he formed, Silicon Test Systems Inc. and Silicon Test Solutions, LLC (collectively, the "STS Entities") and Mayder's brother Wesley Mayder, an investor and/or partner in the STS Entities.

Mayder was a long-term and trusted employee of Verigy who abruptly resigned his employment in September 2006. In early July, Verigy learned that Mayder was marketing a product very similar to Verigy's products and began an investigation to determine whether Mayder was using Verigy trade secrets. On August 22, 2007, after Verigy's investigation revealed that Mayder had missapropriated and was using Verigy's trade secrets, it filed this action and sought a temporary restraining order. The temporary restraining order was granted by the Hon. Ronald M. Whyte on August 24, 2007 and was extended through his decision on Verigy's motion for preliminary injunction, on February 28, 2008. On that date, Judge Whyte granted the preliminary injunction which restrained and enjoined defendants for an additional period of five (5) months "from directly or indirectly marketing, distributing, selling, licensing, leasing, transferring or disposing of…Flash Enhancer, or any product developed with the use of, derived from, or incorporating all, or any part [of] Flash Enhancer."[2] Judge Whyte found that the Defendant's Flash Enhancer "is substantially based on Verigy's Trade Secrets" (*Id.* at p. 23.) Following the Preliminary Injunction, Plaintiff decided to review and narrow its initial 2019.210 statement in light of Judge Whyte's analysis of the trade secret claims.

## II. DISCOVERY IN DISPUTE

On March 14, 2008, U.S. District Judge Ronald M. Whyte issued a Civil Minute Order (the "March 14 Order") following a case management conference, in which Judge Whyte ordered

---

[2] Order Granting In Part Plaintiff's Motion For A Preliminary Injunction; Etc. (Declaration of Melinda Morton ("Morton Decl."), Exhibit N, p. 28.) The Order sets forth in detail the facts of this case.

that, "The parties are to meet and confer as to the trade secret list.  The parties are to do a *limited amount* of discovery . . . Defendant to do *request for admissions* and interrogatories." (Morton Decl.., ¶ 3 and Ex. A) (emphasis added).)  Discovery was limited so that Verigy could amend its trade secret disclosure and so the parties could meet and confer regarding the amended disclosure.  The Court gave each side an opportunity to list what discovery it felt was needed between March 14, 2008 and May 23, 2008, and granted both sides' requests as to the discovery requested.  (*See id.*)  Defendants did not ask the Court to allow service of a third set of requests for production; nor did they ask permission to serve multiple sets of requests for admission.  The Court set a further CMC for May 23, 2008, and no trial schedule or discovery cut-off has been set.  (*Id.*)

On March 25, 2008, Defendants served a third request for production of documents, despite the Court's Order that Defendants could serve only a "request for admissions and interrogatories." (*Id.* at ¶ 5, Ex. B.)  Plaintiff's counsel requested that Defendants withdraw the third request, but Defendants' counsel refused to do so.  (*Id.*)

Less than a week after this dialogue, on April 2, 2008, defendants served a first set of requests for admission, with 65 separate requests. (Morton Decl., ¶ 6 and Ex. C.)  Plaintiff has responded to these requests.  (*Id.*)

Eleven days later, on Sunday night, April 13, 2008, while the first set of requests for admissions was still pending, defendants served by email a *second* set of requests for admission to plaintiff Verigy – a 72-page document with 278 separate requests (the"Second Set of Requests"). (Morton Decl., ¶ 7 and Ex. D).)  Requests for admission nos. 100 – 343 all relate to Verigy's initial trade secret disclosure which defense counsel knew was to be amended the very next day, Monday, April 14.[3]  (*Id*. at ¶¶ 4, 8 and Ex. D.)  Indeed, in their haste to serve the Second Set of Requests, counsel neglected to sign either the discovery requests or the proof of service, in violation of Fed. R. Civ. P. 26(g).  (*Id.* at ¶ 9, Ex. E.)  Accordingly, the requests were moot when

---

[3] As the Second Set of Requests is marked "confidential" (as it quotes from Verigy's Initial Trade Secret Disclosure), Verigy does not quote any requests in there entirety here, so that this memorandum can be filed publicly.

drafted and could only have been propounded for the improper and vexatious purpose of harassing Verigy and its counsel.

Obviously, defendants have abused the "limited" discovery allowed under the March 14 Order by propounding on Verigy 343 requests for admission and 39 requests for production of documents within a month of the March 14 Order.

On April 14, 2008, Plaintiff informed Defendants that due to travel plans of a key Verigy employee, Verigy would need a few additional days to serve the amended trade secret disclosure, and that it would be served by April 18, 2008. (*Id.* at ¶ 10.) The amended disclosure was served, as promised, on April 18, 2008, and it significantly narrowed the trade secrets at issue in this case as well as providing additional detail as to the remaining trade secrets. (*Id.* at ¶¶ 10, 11 and Exs. F. G.)

On Monday, April 28, 2008, the parties met and conferred regarding the Second Set of Requests and Defendants' Motion to Compel. (*Id.* at ¶ 12.) The parties agreed to postpone the hearing on the motion to compel and to postpone the deadline for Plaintiff's response to the Second Set of Requests due to the amended trade secret disclosure. (*Id.*) The parties attempted to negotiate a stipulation regarding the amended trade secret disclosure and these discovery disputes. (*Id.*) Unfortunately, the parties were unable to reach agreement, as Defendants demanded that Plaintiff pay their attorneys fees incurred in drafting the motion to compel as well as their fees for drafting the proposed stipulation. (*Id.* at ¶ 13, Ex. H.) Defendants also required that Plaintiff stipulate that Defendants did not misappropriate any of the withdrawn trade secrets. (*Id.*) Verigy drafted a different stipulation, offering to stipulate that the withdrawn trade secrets were no longer part of the case, provided that if later discovery showed that Defendants had not been forthcoming, Verigy could further amend its trade secret disclosure and Defendants would have an opportunity to take discovery regarding any additions. (*Id.* at ¶ 14, Ex. I.) Verigy was not willing to pay Defendants' attorneys fees, and did not request any attorneys' fees for preparing the alternate stipulation. (*Id.*) Defendants refused to accept Verigy's stipulation, as "it asserts no admissions or grants any rights that Defendants do not already posses[s]." Defendants maintained that payment of attorneys fees for the motion to compel and the stipulation were "critical." (*Id.* at ¶ 15, Ex. J.)

4
VERIGY'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER RE: SECOND SET OF REQUESTS FOR ADMISSION
C07-04330 RMW (HRL)

On May 13, 2008, the parties met and conferred by telephone conference pursuant to Rule 37-1 of the Northern District of California Civil Local Rules.[4] (*Id.* at ¶16, Ex. K.) Mr. Pasquinelli, on behalf of Defendants, refused to withdraw the Second Set of Requests. (*Id.*) Verigy's counsel offered to stipulate that the withdrawn trade secrets were out of the case (without any provision that Verigy be allowed to later amend if discovery showed that Defendants had not been forthcoming), but Mr. Pasquinelli was unwilling to enter into any stipulation unless it included a stipulation that Defendants did not misappropriate any of the trade secrets in the Initial Trade Secret Disclosure. (*Id.*) Counsel for the parties discussed the issues but were unable to reach any accord. (*Id.*)

## III.    ARGUMENT

Rule 26(c)(1) of the Federal Rules of Civil Procedure[5] provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending….The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery.

Fed.R.Civ.P. 26(c)(1).

Further, Rule 26(g) requires sanctions for discovery served "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." The request for admissions at issue here is precisely the kind of discovery against which Rules 26(c)(1) and 26(g) were designed to protect.

Verigy has good cause to seek a protective order, as responding to the 278 requests would take substantial time and investigation. (Morton Decl., ¶ 17.) Defendants' 278 request violate the Court's March 14, 2008 Order, relate to matters that were withdrawn from the case, and are unduly burdensome in light of the lack of relevance to the case. Further, as Defendants' counsel

---

[4] The Second Set of Requests was served by Mount & Stoelker on behalf of all Defendants. Defendant Wesley Mayder is now represented by separate counsel. To the extent this motion seeks sanctions, such sanctions are not sought against Russo & Hale, Wesley Mayder's new counsel.

[5] All references to "Rule__" refer to the Federal Rules of Civil Procedure.

1  knew that an amended trade secret disclosure was scheduled to be served the day after the Second

2  Set of Requests was served, and as 244 of the requests related to the Initial Trade Secret

3  Disclosure, the Second Set of Requests was served for "an improper purpose," and Defendants

4  and/or Defendants' counsel, Mr. Pasquinelli, should be sanctioned pursuant to Rule 26(g).

   A.   **THERE IS GOOD CAUSE TO STRIKE THE SECOND SET OF REQUESTS DUE TO LACK OF RELEVANCE AND UNDUE BURDEN.**

Although the Federal Rules do not place a limit on the number of requests for admission that can be served, there are, nonetheless, general limitations that apply. The Court can limit requests if: (1) the discovery is not relevant "to any party's claim or defense," or (2) the burden or expense outweighs its likely benefit. Rule 26(b). Here, 244 of the requests are not relevant "to any party's claim or defense," as they relate to the Initial Trade Secret Disclosure that has been withdrawn from the case. The only trade secrets at issue in this case are those in the Amended Trade Secret Disclosure. Verigy has offered to stipulate to this point, but Defendants have been unwilling. (*See, e.g.,* Morton Decl., ¶ 16, Ex. K.)

During the meet and confer on May 13, 2008, Defendants claimed for the first time that the Second Set of Requests was relevant to Defendants' counter-claims in this action. However, as a result of the Court's February 29, 2008 Order, Defendants filed an amended pleading on March 25, 2008. (*Id.* at ¶ 18.) This amended pleading was filed before the Second Set of Requests was served, and it omitted the counterclaims.[6] As Defendants have waived the counterclaims, they cannot be a basis for relevance. Further, even if the original counterclaims were still at issue in this case, they do not provide a basis for relevance. Defendants asked for "a declaration that any and all of the trade secrets identified in Plaintiff's CCP § 2019.210 disclosure do not constitute trade secrets under the UTSA," but do not ask for a declaration that Defendants did not misappropriate the trade secrets identified in the 2019.210 disclosure. ((*Id.* at ¶19, Ex.M (¶ 13 of the Counterclaims).) As none of the requests in the Second Set of Requests relate to whether the

---

[6] Under Federal Rule 15, Local Rule 10-1 and relevant caselaw, an amended pleading supersedes the original pleading and renders it of no legal effect. Any causes of action alleged in the original

trade secrets in Verigy's Initial Trade Secret Disclosure constituted trade secrets, there is no basis for relevance in the waived counterclaims.

The Second Set of Requests is unduly burdensome because responses to requests for admission must be based on reasonable inquiry. *See* Rule 36. Verigy is therefore required to undertake a good faith investigation as to each of the 278 requests. *Id.* As 244 of the requests relate to admissions regarding trade secrets that are not part of this case, the burden of the investigation would greatly outweigh its benefits. Such an investigation would accomplish nothing more than to make Verigy spend money investigating issues that are not germane to any claim or defense in this case to confirm whether Verigy possesses any documents "proving that Defendants misappropriated trade secrets relating to" the withdrawn trade secrets. (Morton Decl., Ex. D(*see, e.g.,* Request No. 157.) As 244 of the requests seek an admission that Verigy possesses "no documents" relating to misappropriation of the trade secrets listed in the Initial Trade Secret Disclosure, each of these 244 requests would require an extensive search of documents and email, requiring many hours spent investigating each of request for admission. (*Id.* at ¶ 17.) This exercise would be costly and burdensome, given Verigy's size and number of engineering employees who may have had communications with Mr. Romi Mayder. (*Id.*)

B.  THE SECOND SET OF REQUESTS VIOLATES THE MARCH 14, 2008 COURT ORDER

The March 14 Order allowed only limited discovery, and specifically outlined what discovery Defendants would be allowed to propound prior to the May 23, 2008 Case Management Conference. (*Id.* at ¶ 3, Ex. A.) The parties were to use that time to meet and confer regarding an amended trade secret disclosure.[7] (*Id.*) Defendants first ignored the March 14 Order by serving a request for production of documents, which was not permitted under the order. (*Id.* at ¶ 5, Ex. B.) Defendants then ignored the Court's direction to perform only "limited discovery" by serving

---

pleading that are not alleged in the amended pleading are deemed waived. *See* Rule 15, Civ. Local R. 10-1; *see also London v. Coopers & Lybrand,* 644 F.2d 811, 814 (9th Cir. 1981).

[7] Verigy served the Amended Trade Secret Disclosure on April 18, 2008, but Defendants have yet to approach Verigy with any alleged deficiencies in it, despite the Court's direction for the parties to attempt to resolve any issues prior to the May 23, 2008 CMC. (Morton Decl., ¶10.)

1  two sets of requests for admission, totaling 343 individual requests for admission in less than two
2  weeks.  The language of the March 14 Order indicates that Defendants were to serve only one set
3  of Requests for Admission, just as Verigy was to serve only one third party subpoena and one set
4  of requests for production.  (*Id.* at Ex. A.)  Further, 244 of Defendants' requests for admission
5  related to the Initial Trade Secret Disclosure that was amended and that Defendants knew would
6  be amended (indeed, the amendment was at *Defendants'* request).  (*Id.* at ¶¶ 3, 7, 8.)  These
7  actions violate both the plain language and the spirit of the March 14 Order, and for these reasons,
8  Verigy is entitled to a protective order forbidding the Second Set of Requests in its entirety.

### C. DEFENDANTS SHOULD BE SANCTIONED FOR SERVING THE SECOND SET OF REQUESTS WITH AN IMPROPER PURPOSE

11  Rules 26(g) and 37 allow the award of sanctions if Defendants' actions were without
12  "substantial justification."  Rule 26(g) allows sanctions for discovery documents served for "an
13  improper purpose."  Rule 37 allows for an award of reasonable attorneys' fees if the protective
14  order is granted.  Here, there is no support for a claim of "substantial justification."
15  There is no question that the Second Set of Requests was served to harass Verigy and/or to
16  "needlessly increase the cost of litigation."  Rule 26(g).  As discussed above, the 278 requests for
17  admission were served in violation of the March 14 Order.  Further, Defendants served these 278
18  requests for admission on a Sunday night, the evening before Verigy was to serve its Amended
19  Trade Secret Disclosure that would render 244 of the requests for admission moot.  (Morton Decl.,
20  ¶¶ 7, 8.)  After the Amended Trade Secret Disclosure was served, Verigy asked Defendants to
21  withdraw the requests for admission, but Defendants refused to do so unless Verigy (1) stipulated
22  to pay Defendants' attorneys' fees in bringing their motion to compel document requests and for
23  drafting the proposed stipulation; and (2) affirmatively stipulated that Defendants had not
24  misappropriated any of the withdrawn trade secrets.  (*Id.* at ¶ 13, Ex. H.)  Verigy agreed to
25  stipulate that the withdrawn trade secrets were out of the case, but Defendants refused to negotiate.
26  (*Id.* at ¶¶ 14, 16, Exs. I, K.)  Defendants' last minute service of 278 requests for admission in
27  violation of the March 14 Order, combined with their refusal to withdraw requests for admission

1 that are not relevant to the case, demonstrates that the requests were signed and served without
2 "substantial justification" in violation of Rule 26(g).

3   Should the Court agree that sanctions are appropriate, Verigy will submit a declaration of
4 the fees and costs incurred in connection with the Second Set of Requests and this motion.

## IV. CONCLUSION

6   For the foregoing reasons, Verigy respectfully requests that the Court grant its motion for
7 protective order relieving plaintiff Verigy of the duty to respond to defendants' second set of
8 requests for admission and granting Verigy's request for sanctions pursuant to Rules 26(g) and 37.

10 Dated:  May 13, 2008     BERGESON, LLP

By: _____/s/_____
    Melinda M. Morton

Attorneys for Plaintiff
VERIGY US, INC.