1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:   (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation<br><br>Plaintiff,<br><br>vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>Defendants. | Case No.  C07 04330 RMW (HRL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL AMENDED RESPONSES AND PRODUCTION OF RESPONSIVE DOCUMENTS TO DISCOVERY**<br><br>Date:    June 10, 2008<br>Time:   10:00 a.m.<br>Judge:  Honorable Howard R. Lloyd<br>Ctrm.:   2<br><br>Complaint Filed:   August 22, 2007<br>Trial Date:           None Set |

**TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND ...................................................................... 1

II. DISCOVERY IN DISPUTE ............................................................................................ 2

III. ARGUMENT .................................................................................................................... 5

    A. Defendants' Motion Should Be Denied Because It Seeks to Compel the Production of Documents Which Are Irrelevant to This Action. ........................... 5

    B. The Requests are Overly Broad and Unduly Burdensome ..................................... 8

    C. Defendants' Motion Should Be Denied Because Verigy's Interpretation of the Language of the Document Requests Was Reasonable and Appropriate ......... 8

    D. Verigy Acted With Substantial Justification, but Defendants' Continued Pursuit of the Motion to Compel is Without Substantial Justification .................. 11

IV. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Beneficial Franchise Company, Inc. v. Bank One*
 205 F.R.D. 212 (N.D. Ill. 2001) ........................................................................................... 9

*Biovail Laboratories, Inc. v. Anchen Pharmaceuticals, Inc.*
 233 F.R.D. 648 (C.D.Cal.,2006) .......................................................................................... 9

*Computer Economics, Inc. v. Gartner Group, Inc.*
 50 F. Supp. 2d 980 (S.D. Cal. 1999) .................................................................................... 6

*Fidelity National Title Ins. Co. of New York v. TCF National Bank*
 No. 02 C 668, WL 22455505, at *1 (N.D. Ill. Oct. 28, 2003) ............................................. 9

*Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union,AFL-CIO-CLC*
 103 F.3D 1007 ..................................................................................................................... 6

*In re Greenwood Air Crash*
 161 F.R.D. 387 (S.D.Ind.1995) ........................................................................................... 9

*In re Sulfuric Acid Antitrust Litig.*
 231 FRD 331 (N.D. IL 2005) ............................................................................................ 11

**State Cases**

*Advanced Modular Sputtering v. Superior Court*
 132 Cal.App.4th 826 ............................................................................................................ 6

**Federal Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................. 5

**State Statutes**

Cal. Civ. Code §2019.210 ................................................................................................... 2, 6, 10

Cal. Civ. Code §3426.1(d)(2) .............................................................................................. 2, 3, 10

Plaintiff, Verigy US, Inc. ("Verigy") respectfully submits the following memorandum of points and authorities in opposition to the motion to compel amended responses and production of responsive documents to the second set of requests for production of documents brought by defendants Romi Omar Mayder, an individual, Wesley Mayder, an individual, Silicon Test Systems, Inc. a California Corporation, and Silicon Test Solutions, LLC ("Defendants").

## STATEMENT OF ISSUES

(N.D. Cal. Civil L.R. 7-4)

1. Should Verigy be compelled to produce additional documents in response to Defendants' Second Set of Requests for Production (the "Requests") when (1) Verigy already produced documents in response to the plain meaning of the Requests; (2) Verigy made a good faith effort to construe the Requests in light of the language of the UTSA and Defendants' pleadings; (3) the Requests are not relevant, as at Defendants' request, Verigy amended and narrowed its trade secret disclosure and the Requests relate to trade secrets that are no longer part of this case, and (4) the Requests are overly broad and unduly burdensome in light of the lack of relevance to the case?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND

This case involves the misappropriation of Verigy's valuable trade secrets and confidential information by Romi Mayder ("Mayder") a former Verigy employee, the new companies he formed, Silicon Test Systems Inc. and Silicon Test Solutions, LLC (collectively, the "STS Entities") and Mayder's brother Wesley Mayder, an investor and/or partner in the STS Entities.

Mayder was a long-term and trusted employee of Verigy who abruptly resigned his employment in September 2006. In early July, Verigy learned that Mayder was marketing a product very similar to Verigy's products and began an investigation to determine whether Mayder was using Verigy trade secrets. On August 22, 2007, after Verigy's investigation revealed that Mayder had misapropriated and was using Verigy's trade secrets, it filed this action and sought a temporary restraining order. The temporary restraining order was granted by the Hon. Ronald M. Whyte on August 24, 2007 and was extended through his decision on Verigy's motion

for preliminary injunction, on February 28, 2008.  On that date, Judge Whyte granted the preliminary injunction which restrained and enjoined defendants for an additional period of five (5) months "from directly or indirectly marketing, distributing, selling, licensing, leasing, transferring or disposing of…Flash Enhancer, or any product developed with the use of, derived from, or incorporating all, or any part [of] Flash Enhancer."[1]  Judge Whyte found that the Defendant's Flash Enhancer "is substantially based on Verigy's Trade Secrets" (*Id.* at p. 23.)

## II.     DISCOVERY IN DISPUTE

On December 19, 2007, Defendants propounded the Requests, and Verigy timely responded to these Requests on January 24, 2008.  (*See* Pasquinelli Decl., Exs. C, K.)  Requests 16-75, the subject of Defendants' Motion to Compel, relate to each trade secret listed in Verigy's Initial Trade Secret Disclosure, filed August 24, 2007.  (Mot. at 3-4.)  Each request is identical except for the text of the specific trade secret.  For example, Request number 20 asks for

> "Any DOCUMENTS RELATING TO YOUR contention that VERIGY *maintains trade secrets* regarding inventions, designs, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development as identified in VERIGY'S CA CCP §2019.210 disclosure 1(f) relating to VERIGY's …."

(Pasquinelli Decl., Ex. C (emphasis added).)

Verigy's response to each of the disputed Requests included the following objection:

> Verigy also objects to this Request on the grounds that the phrase "DOCUMENTS RELATING TO YOUR contention that VERIGY maintains trade secrets regarding," is vague, ambiguous and unintelligible.  Verigy construes this term to mean "DOCUMENTS demonstrating that, pursuant to Cal. Civ. Code §3426.1(d)(2), VERIGY has made 'efforts that are reasonable under the circumstances to maintain' the secrecy of the."

(*Id.* at Ex. K.)  Verigy construed the Requests in this way in light of Defendants' pleadings, briefing on the Preliminary Injunction Motion, the plain meaning of the requests and the language in the relevant UTSA section discussing trade secrets.  (*See* Stebbins Decl., ¶¶ 3, 4, Ex. A.)  At the time the Requests were served, Verigy had already produced over 4500 pages of documents in

---

[1] Order Granting In Part Plaintiff's Motion For A Preliminary Injunction; Etc. (Declaration of Melinda Morton in Support of Plaintiff's Motion for a Protective Order ("Morton P.O. Decl."), Exhibit N, p. 28.)  The Order sets forth in detail the facts of this case.

response to Defendants' First Set of Requests, and many of these documents were responsive to the Second Set of Requests as well. (*Id.* at ¶ 5.) Verigy produced electronic documents in response to Requests Nos. 88-89 on February 1, 2008. (*Id.*) Verigy produced approximately 210 pages of additional documents demonstrating that Verigy maintained trade secrets in the trade secrets listed in its Initial Trade Secret Disclosure on February 8, 2008 and March 21, 2008. (*Id.*) The documents produced show that Verigy employed confidentiality measures at its corporate headquarters, had confidentiality agreements covering communications with its customers and potential customers, and had policies regarding computer security and information security—all documents showing that Verigy made "efforts that are reasonable under the circumstances to maintain" its trade secrets, as required by Cal. Civ. Code §3426.1(d)(2). (*Id.*)

On March 14, 2008, U.S. District Judge Ronald M. Whyte issued a Civil Minute Order (the "March 14 Order") following a case management conference, in which Judge Whyte ordered that, "The parties are to meet and confer as to the trade secret list. The parties are to do a *limited amount* of discovery . . . Defendant to do request for admissions and interrogatories." (Morton P.O. Decl., ¶ 3 and Ex. A) (emphasis added).) At the CMC, Defendants' counsel requested that Verigy amend its trade secret disclosure to be more specific, and Verigy agreed to amend the trade secret disclosure in light of discovery to date and to make it more specific. (*Id.* at ¶ 3.) Discovery was limited so that Verigy could amend its trade secret disclosure and so the parties could meet and confer regarding the amended disclosure. The Court set a further CMC for May 23, 2008, and no trial schedule or discovery cut-off has been set. (*Id.*) The Amended Trade Secret Disclosure was served on April 18, 2008, and it significantly narrowed the trade secrets at issue in this case as well as providing additional detail as to the remaining trade secrets. (*Id.* at ¶¶ 10, 11 and Exs. F, G.) The Amended Trade Secret Disclosure withdrew all of the trade secrets listed in the Initial Trade Secret Disclosure, replacing them with a list restricted to three specific projects (amended trade secrets 1(a)-1(c),[2] a number of specific documents that Mayder misappropriated

---

[2] One of the listed projects (amended trade secret 1(b)) had four different names at Verigy at various times, but all referred to the same project.

1  (amended trade secrets 1(d)-1(h), six invention disclosures authored by Mayder (amended trade
2  secret 2), and Mayder's provisional patent application based on the three projects as well as
3  patents claiming priority to the provisional patent application (amended trade secret 3).  (*Id.* at ¶
4  10, Ex. F.)

5        Defendants ignored the March 14 Order and its requirement of only "limited discovery"
6  and served several discovery requests in violation of that order.  The details of these improper
7  discovery requests and Verigy's good faith efforts to resolve the dispute concerning discovery
8  relating to the withdrawn trade secrets are set forth in detail in Plaintiff's Motion for a Protective
9  Order, which is incorporated herein by reference.  (Plaintiff's Motion for a Protective Order,
10 Docket No. 201.)

11       The parties exchanged a number of emails concerning the Requests in late March and early
12 April, as detailed in the Pasquinelli and Stebbins Declarations.  The meet and confer efforts did
13 not commence until *after* the March 14, 2008 CMC, during which Defendants requested that
14 Verigy amend its trade secret disclosure and Verigy agreed.  Verigy's counsel suggested several
15 times that Defendants postpone filing this motion to compel the short time until the Amended
16 Trade Secret Disclosure was served, but Defendants repeatedly refused.

17       The parties finally met and conferred by telephone on April 8, 2008.  (Stebbins Decl., ¶ 6.)
18 During this telephone call, Defendants' counsel, Kevin Pasquinelli, all but admitted that it made
19 no sense to maintain a motion to compel on document requests directed toward Verigy's Initial
20 Trade Secret Disclosure once the amended disclosure was served, but he refused to delay filing the
21 motion because he was not authorized to do so by his client.  (*Id.*)  He indicated only that after the
22 Amended Trade Secret Disclosure was served he would try and convince his client to authorize
23 withdrawing the motion.  (*Id.*)  Defendants' motion is dated the very next day and was filed on
24 April 10, 2008.

25       On Monday, April 28, 2008, the parties met and conferred again regarding Defendants'
26 Motion to Compel.  (Morton P.O. Decl. at ¶ 12.)  The parties agreed to postpone the hearing on the
27 motion to compel due to the Amended Trade Secret Disclosure.  (*Id.*)  The parties attempted to
28 negotiate a stipulation regarding the Amended Trade Secret Disclosure and these discovery

4
VERIGY'S OPPOSITION TO MOTION TO COMPEL AMENDED DISCOVERY RESPONSES
C07 04330 RMW (HRL)

disputes. (*Id.*) Unfortunately, the parties were unable to reach agreement, as Defendants demanded that Plaintiff pay their attorneys fees incurred in drafting the motion to compel as well as their fees for drafting the proposed stipulation. (*Id.* at ¶ 13, Ex. H.) Defendants also required that Plaintiff stipulate that Defendants did not misappropriate any of the withdrawn trade secrets. (*Id.*) After exchanging several emails on the subject, Verigy drafted a different stipulation, offering to stipulate that the withdrawn trade secrets were no longer part of the case. (*Id.* at ¶ 16, Ex. K.) Verigy was not willing to pay Defendants' attorneys fees, and did not request any attorneys' fees for preparing the alternate stipulation. Defendants refused to accept Verigy's stipulation and refused to withdraw the motion to compel. (*Id.*)

### III. ARGUMENT

#### A. Defendants' Motion Should Be Denied Because It Seeks to Compel the Production of Documents Which Are Irrelevant to This Action.

Defendants' motion should be denied because it was filed in an effort to force Verigy to gather and produce documents which are irrelevant to this action. In December 2007, Defendants threw together a set of document requests that sought the production of documents "RELATING TO [Verigy's] contention that VERIGY *maintains* trade secrets regarding" (emphasis added) the items listed in Verigy's Initial Trade Secret Disclosure, dated August 24, 2007. (*See* Pasquinelli Decl. at Ex. C; Morton P.O. Decl., Ex.G.) That disclosure was served at the inception of this lawsuit before the nature and extent of Defendants' wrongful activities were well known. Since then, at *Defendants' request*, Verigy has served an Amended Section 2019.210 disclosure, dated April 18, 2008. (*See* Morton P.O. Decl. at ¶ 10, Ex. F.) Defendants' Requests do not relate to these trade secrets, and as a result, Defendants do not now have a right to move to compel because the documents "are not relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).[3]

---

[3] Defendants did not offer any evidence in the Motion that they met the higher "good cause" standard to discovery of information that is merely "relevant to the subject matter" of the action, as required by Rule 26(b)(1), so the proper standard is whether the Requests relate to the parties' claims or defenses.

The breadth of Verigy's trade secret claim is determined by its trade secret disclosure, and as Verigy served an amended trade secret disclosure at Defendants' request, the amended trade secret disclosure governs the scope of discovery relating to Verigy's trade secret claim. *See Advanced Modular Sputtering v. Superior Court,* 132 Cal.App.4th 826, 835 (Plaintiff's required 2019.210 disclosure "limit(s) the permissible scope of discovery."); *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (Rule 2019.210 assists the court in framing the appropriate scope of discovery.) Any argument by Defendants that the withdrawn trade secrets could later be resubmitted by Verigy is equally unavailing, as parties may not "explore [a] matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union,AFL-CIO*-CLC, 103 F.3D 1007, 1012-1013 (internal quotations omitted). As the Requests do not relate to the active trade secret disclosure, they are irrelevant to Verigy's claims and defenses.

The requests are also irrelevant to Defendants' claims and defenses. Although Defendants' Corrected Counterclaims and Affirmative Defenses, served May 16, 2008, mention Plaintiff's "CCP § 2019.210 disclosure," the operative trade secret disclosure in effect at the time the Counterclaims and Affirmative Defenses were served is the April 18, 2008 Amended Trade Secret Disclosure. Therefore, any claim by Defendants that the Requests are relevant to their claims or defenses is without merit as well.

Defendants could have avoided this dispute by withdrawing the motion to compel (or not filing it to begin with) and serving new requests tailored to the trade secrets at issue in the case once the stay on discovery expires on May 23, 2008. Defendants will have to serve new requests regardless of the outcome of the motion to compel, as the Requests deal only with withdrawn trade secrets and do not relate to the trade secrets at issue in the case.

Verigy discussed this relevance problem and its solutions with Defendants before the motion to compel was filed, and Defendants even acknowledged during the meet and confer process that once the Initial Trade Secret Disclosure was amended there would be no utility in maintaining this motion to compel. (Stebbins Decl., ¶ 6.) Defendants filed the motion anyway and

1  have refused to withdraw it.[4]  In an April 3, 2008 e-mail to Defendants' counsel concerning the

2  discovery, Verigy's counsel explained:

> As you will recall, the Court asked the parties to meet and confer about Verigy's trade secret disclosure.  We will be sending you a draft on April 14, after which we will meet and confer about any further refinements – which will undoubtedly clarify the scope of that disclosure and result in a modification of its present form.  In light of that expected refinement, it may very well be that many of the requests in dispute will be rendered irrelevant altogether, as a particular item will no longer be an asserted trade secret. . . .  If, as you imply, you are planning on filing a motion [to compel] tomorrow, then you are quite likely making a motion relating to many requests for voluminous documents about complex technology that, in a month, may no longer be relevant.  We suspect your clients would be far better served by, at the appropriate time, merely propounding new requests which clearly ask for what you *actually* want, rather than engaging in expensive, time-consuming motion practice of dubious merit.

(Stebbins Decl. at ¶ 3, Ex. A, p.5 (Emphasis in original.).)  The very next day, Verigy again reiterated the efficacy of avoiding this motion and simply waiting for the Amended Trade Secret Disclosure to propound new relevant requests:

> Also, your message didn't really acknowledge my discussion of the impending refinement of the trade secret disclosure.  Do you really think the Court will favorably entertain a motion to compel the production of voluminous documents concerning technical items which are, by [the hearing of such a motion], no longer asserted as trade secrets in the case?  Wouldn't it be more efficient, prudent and constructive to simply wait to determine what the new trade secret disclosure will look like and then propound new, clear document requests relating to those trade secrets before rushing off to Court to file a motion that, at least in part, relates to things that are no longer relevant?

(*Id.* at Ex. A, p.3.)  During an April 8, 2008 telephone call between counsel, Defendants' counsel, Kevin Pasquinelli, all but admitted that it made no sense to maintain a motion to compel on document requests directed toward Verigy's Initial Trade Secret Disclosure once the amended disclosure was served, but indicated only that after that occurred he would try and convince his client to authorize withdrawing the motion.  (*Id.* at ¶ 6.)

---

[4] As the parties discussed the relevance issues at length before Defendants filed this motion to compel, Defendants could have included a discussion of the relevance of the requests in their opening brief.  Defendants chose not to do so, and in fact omitted any discussion of the relevance problems from their description of the meet and confer.  As Defendants were on notice of these issues and could have addressed them in the opening brief, they should not be permitted to make new arguments concerning relevance in the reply brief.

Subsequently, counsel did discuss withdrawing the motion on the irrelevant document requests but, as will be discussed below in the context of why Verigy is entitled to attorneys' fees, Defendants' counsel refused to withdraw the motion to compel unless Verigy paid Defendants' attorneys fees for filing the motion to compel and for drafting the stipulation agreeing to withdraw the motion to compel.

### B. The Requests are Overly Broad and Unduly Burdensome

As discussed above, Defendants' Requests do not relate to the trade secrets at issue in the case, and as a result, they are overbroad and unduly burdensome. The Requests as rewritten by Defendants would be unduly burdensome because a search for documents responsive to the rewritten requests would involve hundreds, if not thousands, of hours of review and collection for production.[5] (*Id.* at ¶ 7.) As each of the Requests relate to trade secrets that are not part of this case, the burden of the investigation would greatly outweigh its benefits. Such an investigation would accomplish nothing more than to make Verigy spend money investigating issues that are not germane to any claim or defense in this case to confirm whether Verigy possesses any documents relating to the withdrawn trade secrets. Each of the Requests would require an extensive search of documents and email. (*Id.*) This exercise would be costly and burdensome, given Verigy's size and number of engineering employees who were involved in the projects listed on the initial trade secret disclosure. (*Id.*)

### C. Defendants' Motion Should Be Denied Because Verigy's Interpretation of the Language of the Document Requests Was Reasonable and Appropriate

Verigy's interpretation of the Requests is not "hypertechnical" or "unreasonable." Verigy's interpretation is based on the plain language of the Requests, Defendants' arguments in the preliminary injunction briefing, Defendants' pleadings, and the language of the California trade secret statute.

---

[5] To the extent the Court grants Defendants' Motion to Compel, Verigy respectfully submits that a search for documents responsive to each of the requests would require 30 days rather than the 14 days Defendants have requested.

The plain language of the Requests asks for documents "RELATING TO YOUR contention that VERIGY maintains trade secrets." The Requests do not ask for documents *constituting* the trade secrets or *supporting the assertion* of trade secret status. Despite Defendants' attempts to claim otherwise in their brief, the Requests also fail to ask for documents *relating to* the trade secrets. In fact, interpreting the Requests to simply ask for documents relating to trade secrets, as Defendants allege in their motion, would require both Verigy and the Court to ignore most of the language in the Requests. If Defendants had intended to ask for documents relating to, constituting or supporting the assertion of trade secrets, they should have done so. Instead, they drafted document requests asking for documents "RELATING TO YOUR contention that VERIGY maintains trade secrets." The plain meaning of the Requests supports Verigy's construction.[6]

Verigy was "entitled to rely on the plain meaning" of the document requests. *In re Greenwood Air Crash*, 161 F.R.D. 387, 391 (S.D.Ind.1995); *Biovail Laboratories, Inc. v. Anchen Pharmaceuticals, Inc*., 233 F.R.D. 648, 652 (C.D.Cal.,2006). Further, if a discovery request does not ask for particular information, the Court will not recraft a request on the requesting party's behalf. *Beneficial Franchise Company, Inc. v. Bank One*, 205 F.R.D. 212, 224 (N.D. Ill. 2001)("The Court will not rewrite the interrogatory to seek information that is not requested by its plain terms."); *see also, Fidelity National Title Ins. Co. of New York v. TCF National Bank,* No. 02 C 668, 2003 WL 22455505, at *1 (N.D. Ill. Oct. 28, 2003) (N.D. Ill.)("In other words, TCF's question does not ask Fidelity why it believes that TCF is liable it asks why it believes the transfers were wrongful. Fidelity has done so, and TCF cannot rewrite its interrogatory after the fact.") Here, the Requests sought documents relating to Verigy's efforts to maintain certain trade secrets, and that is exactly what Verigy produced. Defendants cannot be permitted to rewrite their

---

[6] In the Motion, Defendants misstate Verigy's understanding of the Requests, stating that "Verigy expressly admits that it understood the intent of the requests, even before objecting." (Mot. at 10.) As explained in this Opposition, Verigy understood the Requests to pertain to whether the trade secrets met the standard of trade secrets at the time the objections were made, and still, in good faith, believes that this is the plain meaning of the Requests. (Stebbins Decl., ¶¶ 3,4, Ex. A.) Verigy now understands that Defendants believe the Requests to mean something else, but Defendants' interpretation of the Requests bears no relation to the language of the Requests.

requests to mean what the request does not ask for directly. Verigy's construction is also supported by the language of the UTSA. Cal. Civ. Code. § 3426.1(d)(2), the statute defining trade secrets, states that the purported trade secret must be "the subject of efforts that are reasonable under the circumstances to *maintain* its secrecy." Cal. Civ. Code. § 3426.1(d)(2) (emphasis added). The Requests quote the key word in this phrase, and Verigy's construction of the Requests specifically quotes from the statute. Thus, Verigy's construction is supported by the trade secret statute.

Verigy's construction is further supported by Defendants' arguments in the preliminary injunction briefing. Defendants' Opposition to Verigy's Motion for a Preliminary Injunction includes an argument that "Verigy did not use reasonable efforts to maintain secrecy," and both the Opposition and Defendants' sur-reply make much of Defendants' claim that Verigy failed to take such reasonable efforts. (*See* Docket Nos. 49 at 13, 120 at 11.) The Motion for a Preliminary Injunction was pending at the time the Requests were served and when Verigy responded to the Requests.

Further, Defendants' First Counterclaim seeks a "declaration that any and all of the trade secrets identified in Plaintiff's CCP § 2019.210 disclosure do not constitute trade secrets under the UTSA." (Morton P.O. Decl., Ex. L, ¶ 13; *see also* Defendants' corrected Answer and Counterclaims, Docket No. 203, filed May 16, 2008.) Indeed, Defendants continue to assert numerous claims and defenses relating to whether Verigy makes "reasonable efforts" to maintain the secrecy of its trade secrets—at least nine other paragraphs in Defendants' Corrected Answer and Counterclaims refer to Verigy's alleged failure to maintain the secrecy of the trade secrets. (Defendants' corrected Answer and Counterclaims, Docket No. 203, filed May 16, 2008, ¶¶ 13, 14, 16, 17, 21, 22 of Counterclaim and Defenses 8, 9 and 20.) These documents show that Defendants have made the issue of whether Verigy made "efforts that are reasonable under the circumstances to maintain" its trade secrets a key dispute in this case.

The plain meaning of the Requests and the relevant statute, as well as Defendants' statements and actions in making Verigy's "reasonable efforts" to maintain secrecy a key dispute in this case demonstrates that Verigy's construction of the Requests and its search for and

production of responsive documents was reasonable and appropriate. Defendants are attempting to completely rewrite the Requests to obtain something other than what they asked for. If Defendants meant to ask for all documents relating to the trade secrets, or for all documents constituting the trade secrets, they should have done so. They did not. Instead, they asked for documents showing that Verigy maintains trade secrets, and they received response documents demonstrating exactly that. Defendants' motion to compel should therefore be denied.

### D. Verigy Acted With Substantial Justification, but Defendants' Continued Pursuit of the Motion to Compel is Without Substantial Justification

As discussed above, Verigy acted with substantial justification in construing Defendants' Requests, in producing documents, and in requesting that Defendants withdraw this motion in light of the Amended Trade Secret Disclosure. Verigy's construction of the Requests was based on the plain meaning of the Requests and the statute, as well as the arguments and pleadings filed by Defendants. Verigy asked that Defendants postpone this motion to compel until the Amended Trade Secret Disclosure was filed, which would have caused only an eight day delay in filing, but Defendants refused. Defendants violated "the fundamental, overarching principle that parties cannot proceed in the face of known risks and later complain that they have been harmed." *In re Sulfuric Acid Antitrust Litig.,* 231 FRD 331, 340 (N.D. IL 2005). Given Defendants' certain knowledge of the risks involved in filing this motion to compel, as well as Verigy's good faith interpretation of the Requests, sanctions should not be awarded against Verigy.

However, as Defendants refused to withdraw this motion to compel in light of the Amended Trade Secret Disclosure, served at Defendants' request, Defendants' actions in continuing to pursue this motion to compel are without substantial justification.

After the Amended Trade Secret Disclosure was served, Verigy asked Defendants to withdraw the motion to compel, but Defendants refused to do so unless Verigy (1) stipulated to pay Defendants' attorneys' fees in bringing the motion to compel and for drafting the proposed stipulation; and (2) affirmatively stipulated that Defendants had not misappropriated any of the withdrawn trade secrets. (Morton P.O. Decl. at ¶ 13, Ex. H.) Verigy agreed to stipulate that the withdrawn trade secrets were out of the case, but Defendants refused to negotiate. (*Id.* at ¶¶ 14,

16, Exs. I, K.) Defendants' actions in requesting the Amended Trade Secret Disclosure but refusing to withdraw their motion to compel shows that Defendants' continued pursuit of this motion to compel is without substantial justification. Therefore, Verigy respectfully requests that the Court award Verigy its attorneys fees in responding to the motion to compel. Should the Court agree that attorneys' fees are appropriate, Verigy will submit a declaration of the fees and costs incurred in connection with this motion.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Mayder's motion to compel discovery in its entirety and that the Court award Verigy the fees and costs incurred in connection with this motion.

Dated: May 20, 2008                               BERGESON, LLP

By: _____/s/_____
Melinda M. Morton, Esq.
Attorneys for Plaintiff Verigy