**E-FILED on    5/22/08**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC. , <br><br> Plaintiff, <br><br> v. <br><br> ROMI OMAR MAYDER; WESLEY MAYDER; SILICON TEST SYSTEMS, INC.; and SILICON TEST SOLUTIONS, LLC, <br><br> Defendants. | No. C-07-04330 RMW <br><br> ORDER GRANTING PLAINTIFF'S MOTION TO FIND DEFENDANTS IN CONTEMPT OF COURT FOR VIOLATING THE TRO **(Corrected Redacted Version)** <br><br> **[Re Docket No. 132]** <br><br> **[CORRECTED PUBLIC VERSION]** |

On August 22, 2007, plaintiff Verigy US, Inc. ("Verigy") commenced this action against defendants Romi Mayder ("Mayder"), his brother Wesley Mayder, and the companies they founded, Silicon Test Systems Inc. and Silicon Test Solutions LLC ("STS"), seeking a temporary restraining order. The court granted Verigy's request, entering a temporary restraining order on August 24, 2007 ("TRO") which was to be in effect until the hearing on Verigy's motion for a preliminary injunction.

On December 3, 2008, before the preliminary motion had been heard, Verigy asked the court to issue an order to show cause why defendants should not be held in contempt for violating the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  TRO. Defendants asked the court to defer ruling on the contempt motion until after it had ruled on

2  the preliminary injunction motion. On February 29, 2008, as part of its order granting in part

3  Verigy's motion for a preliminary injunction, this court issued the requested order to show cause.

4      Verigy asserts that defendants have violated the TRO by continuing to develop STS's Flash

5  Enhancer product, by marketing and delivering Flash Enhancer chips to Intel, by downloading and

6  using one of the documents defined as Verigy's Trade Secret Property in the TRO, and by issuing a

7  purportedly misleading press release after the court's preliminary injunction order. As a sanction,

8  Verigy asks that the court (1) extend by 6 months the duration of the 5-month preliminary injunction

9  issued on February 29, 2008 and (2) award attorney's fees and costs for pursuing the motion for

10  contempt. As set forth below, the court finds that Verigy has shown by clear and convincing

11  evidence that defendants disobeyed the August 24, 2007 TRO and, accordingly, grants Verigy's

12  motion and finds defendants to be in contempt of the TRO.

## I. BACKGROUND

### A.    Procedural History

15      On August 24, 2007, the court granted Verigy's application for a TRO until the hearing on

16  Verigy's motion for a preliminary injunction, which the court set for September 7, 2007. The parties

17  stipulated to move the hearing to October 19, 2007 and then again stipulated to move the hearing to

18  December 14, 2007, all the while keeping the TRO in effect. *See, e.g.*, Stipulation and Order,

19  Docket No. 86.

20      The TRO enjoined defendants from, among other things, "accessing, . . . disclosing, using,

21  marketing, disseminating, . . . , making any use of, [and/or] attempting to disclose or use" (1) any of

22  the Trade Secret Property enumerated in Exhibit A of the TRO; and (2) any product "developed with

23  the use of, derived from, or incorporating all or any part of Verigy's Trade Secret Property." The

24  Trade Secret Property as defined in Exhibit A to the TRO includes, in relevant part:

25      Inventions, designs, plans, know-how, research, techniques, proprietary or
        confidential information, tools, processes, software, hardware, economics and/or
26      research and development relating to:
        (a)    The projects code-named: ███████████████████████████

27      ███████████████████████████████████████████████████████████;
        (b)    The projects code-named by Mayder as ██████████████████;

28      . . .

(l)    Verigy's non-public RFQs and associated documents;
...

(u)    Exhibits A and B to the Lee Declaration submitted in support of Verigy's Application for a TRO; and

(v)    Exhibits A, B, C, D, E, and F to the Pochowski Declaration submitted in support of Verigy's Application for a TRO.

TRO, Ex. A ¶ 1.  Trade Secret Property also includes:

Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to the ██████████████████████████████ ████████████████████████████████████████ filed September 28, 2006 and any provisional patent applications, patent applications or patents claiming priority to █████████████████████

Id. ¶ 5.

**B.    Alleged Violation of the TRO**

From the beginning, defendants have taken the position that their current product, Flash Enhancer, was not based on nor did it evolve from any of the Trade Secret Property set forth in the TRO.  They acknowledge that "STS continued to do independent work . . . to develop new features that its customers requested" but that "[t]his novel work did not require Verigy's alleged trade secrets or any access to Verigy's alleged trade secrets."  Opp'n at 1.

On December 3, 2007, Verigy received an email from Mayder asking that Verigy sign a non-disclosure agreement with STS so that Verigy could work with Mayder, STS and Spansion to integrate STS's Flash Enhancer product with Verigy's v5400 product.  Decl. Melinda Morton ("Morton Decl.") ¶ 3, Ex. A.  Based thereupon, Verigy filed an application for an order to show cause why defendants should not be held in contempt for violating the court's TRO on December 5, 2007.

The parties appeared as scheduled on December 14, 2007 for a hearing on Verigy's motion for preliminary injunction.  At that hearing, the parties agreed to continue the hearing (as well as the effect of the TRO) until January 15, 2008.  The court indicated that it would resolve Verigy's request for an order to show cause as it was considering the parties' position on the motion for preliminary injunction.  The parties appeared again on January 15, 2008 to present their positions regarding the issuance of a preliminary injunction.  On February 29, 2008, the court issued its order on Verigy's

United States District Court
For the Northern District of California

1   motion for preliminary injunction ("Preliminary Injunction Order"), granting Verigy's motion in part

2   and enjoining defendants for 5 months from directly or indirectly marketing, distributing, selling,

3   licensing, leasing, transferring or disposing of ▮▮▮▮, Flash Enhancer or any product developed

4   with the use of, derived from, or incorporating all or any part of ▮▮▮▮or Flash Enhancer. *Id.* at

5   28.[1]  In the same order, the court set a briefing schedule and hearing date for Verigy's contempt

6   motion.

7       **C.   Preliminary Injunction Order**

8          In its Preliminary Injunction Order, the court assessed Romi Mayder's conduct and the

9   progression of his development efforts on behalf of STS before and after he left Verigy's employ.

10  The court concluded that it was clear that Mayder had based STS's original project, code named

11  ▮▮▮▮on the ▮▮▮▮project he had worked on at Verigy.  Preliminary Injunction Order at 15-

12  16.  Analyzing defendants' argument that Flash Enhancer does not utilize Verigy's trade secrets, the

13  court found that many features that defendants contended were solely related to their development

14  efforts on behalf of Intel and directed toward Intel's unique customer requirements were present in

15  the ▮▮▮▮documentation prior to defendants receiving Intel's customer requirements in November

16  2006.  *Id.* at 19-21.  Although the court acknowledged that Flash Enhancer had some distinct

17  features from ▮▮▮▮, it stated "[t]hese features are unique, but appear to be enhancements built atop

18  the foundation that was based originally on ▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮.  With respect to defendants' argument that Flash Enhancer was

20  directed toward NOR flash memory testing while ▮▮▮▮ and ▮▮▮▮were related to NAND

21  flash memory testing, the court likewise concluded, "even to the extent there are features in the

---

[1] The portion of the Preliminary Injunction Order setting forth the enjoined acts reads as follows:
Defendants ROMI OMAR MAYDER ("Mayder"), WESLEY MAYDER, SILICON
TEST SYSTEMS, INC. and SILICON TEST SOLUTIONS, LLC (the "STS
Entities") as well as their agents, servants, employees, attorneys, and any other
persons in active concert or participation with them who receive actual notice of this
Preliminary Injunction Order, by personal service or otherwise, are hereby restrained
and enjoined for a period of five (5) months from the date of this order from directly
or indirectly marketing, distributing, selling, licensing, leasing, transferring or
disposing of ▮▮▮, Flash Enhancer, or any product developed with the use of,
derived from, or incorporating all or any part of ▮▮▮or Flash Enhancer.

United States District Court
For the Northern District of California

Flash Enhancer that may be attributable to the differences between NOR and NAND, there is no question that the STS Flash Enhancer is an evolution of the ████████, which was itself based on ████████ and developed at least in part by Mayder while he was at Verigy. *Id.* at 23.

Overall, the court concluded its analysis as follows:

Based upon the evidence before it, the court concludes that STS's ████ product was based upon the ████████████████████████. As set forth above, Mayder admits to having used the ████████████. Further, he submitted the ████████████, a vendor with whom he was familiar because of his work at Verigy on ████████. The misappropriation of the ████████████████████, combined with the exploitation of Verigy's ████████ resulted in defendants obtaining a head start in developing their fan-out testing solutions ████ and Flash Enhancer.

On the evidence presented, the court further concludes that Flash Enhancer, even though now directed toward testing NOR memory rather than NAND, is substantially based upon Verigy's trade secrets. It is clear that defendants' current product, Flash Enhancer, is, at the very least, ████████████. It appears, however, that Flash Enhancer has some relatively significant changes from ████████, including ████████ and some features added based on customer requirements that were not originally collected by Verigy. Accordingly, the court cannot say that Flash Enhancer is solely an embodiment of Verigy's trade secrets. However, Flash Enhancer product clearly benefitted from the lead time that Mayder did not have to expend to get to the starting point represented ████████. Further, by having the customer requirements Verigy collected from ████████████ in hand when approaching Intel and Spansion, it appears that defendants may have had an unwarranted competitive advantage. Understanding the requirements of other vendors may have permitted defendants to make a more convincing presentation to STS customers and thus win business they might not have been able to secure had they started without the information obtained from Verigy.

*Id.* at 23-24.

## II. ANALYSIS

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993); *see also Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) ("Civil contempt occurs when a party fails to comply with a court order."). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [nonmoving

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   party] violated a specific and definite order of the court." *FTC v. Affordable Media, LLC*, 179 F.3d

2   1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & County of San Francisco*, 968 F.2d 850, 856 n.9

3   (9th Cir. 1992)). The contempt "need not be willful," and there is no good faith exception to the

4   requirement to obey a court order. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365

5   (9th Cir. 1987). "But a person should not be held in contempt if his action appears to be based on a

6   good faith and reasonable interpretation of the court's order." *Dual-Deck*, 10 F.3d at 695; (party

7   seeking sanctions must show (1) a violation of the order, (2) beyond substantial compliance, (3) not

8   based on a good faith and reasonable interpretation of the order, (4) by clear and convincing

9   evidence). In this case, Verigy must prove by clear and convincing evidence that defendants

10  violated the TRO by continuing to develop new features for the Flash Enhancer after the court

11  issued its TRO.

12  **A.    Specific and Definite Court Order**

13          Defendants contend that the TRO entered by the court was ambiguous. Defendants

14  challenge the TRO as having been entered in violation of Rule 65, which requires that "[e]very order

15  granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state

16  its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or

17  other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d). Specifically,

18  defendants assert that the TRO violated Rule 65(d)(C) by referring to rather than incorporating ███

19  ████████████████████, exhibits A and B to the Lee declaration, and

20  exhibits A, B, C, D, E, and F to the Pochowski declaration submitted in support of Verigy's

21  application for a TRO.

22          The court's reference to these documents does not violate Rule 65(d). "'[O]ne basic principle

23  built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely

24  drawn notice of what the injunction actually prohibits.'" *Fortyune v. Am. Multi-Cinema, Inc.*, 364

25  F.3d 1075, 1086-87 (9th Cir. 2004) (quoting *Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1077 (9th

26  Cir. 2000)). "'The Rule was designed to prevent uncertainty and confusion on the part of those

27  faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree

28  too vague to be understood.'" *Id.* (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). Thus,

United States District Court
For the Northern District of California

1  although the requirements set forth in Rule 65(d) are not merely technical requirements, the Ninth

2  Circuit has stated that it "will not set aside injunctions under Rule 65(d) unless they are so vague

3  that they have no reasonably specific meaning." *Id.* (quoting *United States v. V-1 Oil Co.*, 63 F.3d

4  909, 913 (9th Cir. 1995)) (quotation marks omitted).

5      "Specificity in the terms of consent decrees is a predicate to a finding of contempt." *Gates v.*

6  *Shinn,* 98 F.3d 463, 467-68 (9th Cir. 1996). "If an injunction does not clearly describe prohibited or

7  required conduct, it is not enforceable by contempt." *Id.* Here, the TRO satisfies the specificity

8  requirements of Rule 65. The TRO describes in detail the acts to be restrained. It clearly prevents

9  defendants from "accessing, . . . disclosing, using, marketing, disseminating, . . ., making any use

10 of, [and/or] attempting to disclose or use" any of the Verigy's Trade Secret Property or any product

11 "developed with the use of, derived from, or incorporating all or any part of Verigy's Trade Secret

12 Property." The restricted Trade Secret Property is clearly defined in Exhibit A attached to the TRO

13 and expressly includes the Lee and Pochowski exhibits as well as the provisional patent application.

14 Defendants were given clear notice of which particular documents constituted Verigy's Trade Secret

15 Property for purposes of the TRO and what actions they were prohibited from taking with regard to

16 the Trade Secret Property. And, although those documents are not included in the four corners of

17 the TRO, the prohibited acts are clearly spelled out to defendants in the TRO itself: they are not to

18 access, disclose, use, market or disseminate the unambiguously defined items of Trade Secret

19 Property in Exhibits A and B to the Lee Declaration and Exhibits A-E of the Pochowski Declaration

20 or any product developed with the use of, derived from or incorporating those exhibits. The TRO

21 thus provides "fair and precisely drawn notice of what the injunction actually prohibits." *Granny*

22 *Goose*, 415 U.S. at 444.

23    **B.    Violation of the Order**

24      As discussed above, a party seeking sanctions must show (1) a violation of the order, (2)

25 beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the

26 order, (4) by clear and convincing evidence. *Dual-Deck,* 10 F.3d at 695. Thus, the next question is

27 whether Verigy can show by clear and convincing evidence defendants' actions during the pendency

28 of the TRO constituted a violation of the order.

ORDER GRANTING PLAINTIFF'S MOTION TO FIND DEFENDANTS IN CONTEMPT OF COURT FOR VIOLATING THE TRO
(Corrected Redacted Version)—No. C-07-04330 RMW
MAG                                                    7

1    The TRO, in relevant part, enjoined defendants from "accessing, altering, downloading,

2 copying, forwarding, disclosing, using, marketing, disseminating, selling, licensing, leasing,

3 transferring, making any use of, attempting to disclose or use, or disposing of any product developed

4 with the use of, derived from, or incorporating all or any part of Verigy's Trade Secret Property"

5 where "Trade Secret Property" included Exhibit A to the Lee Declaration, an email submitting an

6 RFQ package to ████████, which included the ████████████████████drafted by

7 Mayder while he was employed by Verigy. "Trade Secret Property" also included Exhibit B to the

8 Pochowski Declaration, which included an email from Mayder to Pochowski attaching "the official

9 RFQ for the ████████" for Pochowski to send to Peregrine Semiconductor "to get things started

10 with them." Pochowski Decl., Ex. B. Attached to this email is the ████████████████that

11 the court found to have been derived from the ████████. *Id.* Also included in the Trade

12 Secret Property was Exhibit D to the Pochowski Declaration, the ████████████████

13 customer requirements that Mayder transmitted to Pochowski on June 26, 2006 while Mayder was

14 still employed by Verigy. *Id.*, Ex. D.

### 1.    Continued Development

16    Defendants assert that they complied with the TRO because they did not sell any product

17 after August 24, 2007, refraining from fulfilling a purchase order for Flash Enhancer chips from

18 Spansion (although they believed that the TRO did not prohibit them from selling Flash Enhancer).

19 Opp'n at 5. They have admitted, however, that they continued to work on Flash Enhancer after the

20 entry of the TRO. Verigy asserts that defendants' continued work after August 24, 2007 constitutes

21 a violation of the TRO. Defendants, on the other hand, contend that they have complied with the

22 order as they understood it. They assert that "[e]ven if STS's Flash Enhancer product contains some

23 Verigy trade secrets, ████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████ Opp'n at 3. Defendants point out

26 that they did not have possession of any relevant Verigy documents as a result of Mayder having

27 reinstalled the operating system on his laptop and wiping out any documents that may have

28 originated at Verigy. *Id.* They further contend that any customer requirements with which they

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    continued their development on Flash Enhancer were customer requirements STS obtained directly

2    from ███████████, not those obtained through Verigy. *Id.* at 4. Accordingly, defendants

3    believe that STS's work during the last six months was not a "use" of Verigy's trade secrets and did

4    not rely on access to Verigy's trade secrets.

5        Defendants acknowledge, as they must, that the court has found that STS's Flash Enhancer

6    product is based on substantial part on Verigy's trade secrets and materials developed by Mayder

7    while he was in Verigy's employ. They nonetheless assert that their interpretation of the TRO

8    permitting them to continue to develop and work with their customers on Flash Enhancer was a

9    reasonable one, particularly absent the court's analysis later set forth in the Preliminary Injunction

10   Order. The court disagrees and finds that defendants' position conveniently ignores that they were

11   not only enjoined from using Verigy's Trade Secret Property as defined in the TRO, but also

12   products developed using such Trade Secret Property.

13       Defendants were enjoined from "using [or] making any use of . . . any product developed

14   with the use of, derived from, or incorporating all or any part of Verigy's Trade Secret Property."

15   The Background section of the TRO set forth that one of the issues in the suit was that "Mayder had

16   started developing a competing product to the one Mayder was working on at Verigy" and that "the

17   products advertised on the Silicon Test Systems website at www.silicontests.com appear to perform

18   the same functions as Verigy's ██████ product designs and the ███████████████████

19   currently in production." TRO at 5. Although defendants have taken the position that Flash

20   Enhancer is not based on ███████████, as set forth above, the court's preliminary

21   injunction order found otherwise, stating "that Flash Enhancer, even though now directed toward

22   testing NOR memory rather than NAND, is substantially based upon Verigy's trade secrets. It is

23   clear that defendants' current product, Flash Enhancer, is, at the very least, ██████████

24   ████████████████████████." Preliminary Injunction Order at 24. Defendants

25   nevertheless assert that their interpretation of the TRO was based upon a good faith belief that they

26   were not using Verigy's Trade Secret Property in the Flash Enhancer and that they would only

27   violate the TRO if they began to incorporate the Trade Secret Property specified into their current

28   products.

United States District Court
For the Northern District of California

1    In support of their argument that they were acting in good faith, defendants submit a

2    declaration by Mayder stating that he interviewed Dr. Richard Blanchard (who was subsequently

3    retained as defendants' expert), who provided him with essentially the same opinion as Blanchard

4    has expressed in his expert reports: that Flash Enhancer did not contain any Verigy trade secrets.[2]

5    This assertion rings hollow, particularly given that Mayder's declaration does not assert that he had a

6    good faith belief that the Flash Enhancer product was not a product developed with the use of or

7    derived from Verigy's Trade Secret Property as defined in the TRO.  Further, Mayder has

8    unequivocally admitted to using the ▮▮▮▮▮documents to create the ▮▮▮▮RFQ.  Defendants'

9    position that they had a good faith belief that Flash Enhancer was not a product developed with the

10   use of or derived from the specified Trade Secret Property is unavailing.  The court finds that Verigy

11   has shown by clear and convincing evidence that defendants violated the order by continuing to

12   develop Flash Enhancer during the effective period of the TRO and that this continued development

13   was not in substantial compliance, nor was their continuation of development efforts undertaken

14   based on a good faith and reasonable interpretation of the order.

15            **2.    Interactions with Intel**

16           In support of its motion and after the court issued its order to show cause, Verigy submitted a

17   declaration setting forth evidence discovered after it filed its original application for an order to

18   show cause on December 3, 2007.  *See* Decl. Michael Stebbins ("Stebbins Decl.") dated March 7,

19   2008.  Verigy presents evidence that Mayder met with Intel on behalf of STS in November 2007,

20   after the TRO issued.  Stebbins Decl., Ex. A.  It also presents deposition testimony of David

21   McMann, the 30(b)(6) designee for Intel Corporation (one of STS's customers), in which McMann

22   testifies that Mayder never told Intel that Verigy had accused defendants of misappropriating trade

23   secrets, that he did not inform Intel that there was a TRO in this action and that Mayder at some

---

[2]  Verigy objects to Mayder's declaration as including impermissible opinion and hearsay with regard to Dr. Blanchard's opinion.  Mayder's declaration states that "After his review of the documents and a substantial discussion of my knowledge of the facts, Dr. Blanchard's objective opinion was that Flash Enhancer contained no trade secrets."  Decl. Romi Mayder ("Mayder Decl.") ¶ 7.  The court agrees that the contents of this paragraph cannot be considered for Dr. Blanchard's opinion, but it will consider the statement to the extent it purports to support Mayder's understanding of the TRO.

1  point delivered Flash Enhancer prototypes to Intel.  Stebbins Decl., Ex. 2, Dep. of David McMann

2  ("McMann Dep.") at 22:1-9, 42:5-13, 35:18-21, 35:22-24.

3       Although Verigy has presented evidence that defendants met with Intel following the

4  issuance of the TRO, and the court could reasonably infer that the interactions described by Mr.

5  McMann occurred during November 2007, Verigy has failed to present *clear and convincing*

6  evidence that this is the case.  McMann's deposition testimony as presented does not establish the

7  time frame pertaining to his testimony and thus does not suffice to demonstrate that defendants were

8  marketing Flash Enhancer to Intel after the TRO was issued or that Intel received prototypes of the

9  Flash Enhancer product after August 24, 2007.

10      **3.      Access to Exhibit A of the Lee Declaration**

11      Verigy alleges that Mayder deliberately accessed and used an electronic copy of Exhibit A to

12  the Lee Declaration after the litigation commenced at the offices of Chris Straube, Honeywell's sales

13  representative. *See* Reply at 6.  Defendants do not refute that Mayder downloaded the document as

14  alleged, but argue that this cannot constitute a violation of the TRO.  According to defendants,

15  Verigy waived the benefit of the TRO with respect to this document when Verigy's counsel

16  "downgraded its confidentiality designation of many documents from 'Highly Confidential' to

17  'Confidential,'" thereby permitting Mayder to access documents.

18      Although defendants present evidence that Verigy did, indeed, redesignate the Exhibit A as

19  "confidential," there is no authority supporting the proposition that such a redesignation would

20  permit Mayder to access a redesignated document for all purposes.  Even assuming that the

21  redesignation would somehow permit Mayder to access the document for litigation purposes,

22  defendants present no evidence that Mayder accessed this document for litigation purposes.

23  However, Verigy presents no evidence for what purpose the document was accessed.  Absent further

24  information, the court does not find by clear and convincing evidence that Mayder's accessing

25  Exhibit A to the Lee was more than a technical violation of the TRO.

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION TO FIND DEFENDANTS IN CONTEMPT OF COURT FOR VIOLATING THE TRO
(Corrected Redacted Version)—No. C-07-04330 RMW
MAG                                11

United States District Court
For the Northern District of California

#### 4.     Post-TRO Behavior

Verigy also submits for the court's consideration a press release issued by STS regarding the disposition of Verigy's request for a preliminary injunction.  The press release entitled "US Court Denies Injunction Sought by Verigy" reads in relevant part:

> Verigy . . . was denied a preliminary injunction prohibiting defendants Romi Omar Mayder, Wesley Mayder, Silicon Test Systems, Inc. and Silicon Test Solutions, LLC from bringing STS products to the ATE market.  Specifially [sic] the US court found that Romi Mayder could have developed STS products without exposure [sic] Verigy trade secrets.

Reply Decl. Michael Stebbins, Ex. 5.  Verigy argues that the press release demonstrates defendants' deliberate misinterpretation of this court's orders and, further, constitutes "direct or indirect marketing" of the Flash Enhancer in violation of the February 29, 2008 Preliminary Injunction Order.

Defendants complain that the press release was only brought up in Verigy's reply and, therefore, they did not havve the opportunity to put it in context.  Nevertheless, the court does not see how this release could be viewed as other than as a deliberately misleading statement as to what the court ordered.  It certainly causes the court to question defendants' intent to comply with the TRO and appears to be indirect marketing of STS's products.  However, the release does not directly advertise nor does it show use of Verigy's confidential information.

#### C.     Sanctions

Defendants argue that this court lacks authority to grant injunctive relief for contempt, arguing that 18 U.S.C. § 401 limits the court to "fine or imprisonment, or both."  They further argue that any injunctive relief would be punitive because the TRO is no longer in effect.

The court's authority to impose a remedy for contempt is part of its inherent powers.  "Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Int'l Union v. Bagwell*, 512 U.S. 821, 831 (1994).  Any award of sanctions to Verigy must be compensatory and limited to its "actual loss" for "'injuries which result from the noncompliance.'" *Crystal Palace*, 817 F.2d at 1366 (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983)); *cf*

United States District Court
For the Northern District of California

*Bagwell*, 512 at 834. Those sanctions are not, however, necessarily limited to fines or imprisonment. *See, e.g., McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-94 (1949) ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts, such as the production of books.").

Here, it would appear that defendants' non-compliance with the TRO resulted in their continued ability to develop and enhance the Flash Enhancer product to comply with STS's customers' requirements. Defendants' violation of the TRO permitted them to alter the *status quo* that the TRO was designed to preserve and resulted in additional marketing and development time for Flash Enhancer – time they would not have had if they had obeyed the TRO. Accordingly, the court finds that an appropriate sanction is extending the duration of the preliminary injunction for an additional four (4) months from the date of the Preliminary Injunction Order. The court thus modifies its February 29, 2008 Preliminary Injunction Order by replacing paragraph 1 of the order as follows:

> Defendants ROMI OMAR MAYDER ("Mayder"), WESLEY MAYDER, SILICON TEST SYSTEMS, INC. and SILICON TEST SOLUTIONS, LLC (the "STS Entities") as well as their agents, servants, employees, attorneys, and any other persons in active concert or participation with them who receive actual notice of this Preliminary Injunction Order, by personal service or otherwise, are hereby restrained and enjoined for a period of nine (9) months from the date of this order from directly or indirectly marketing, distributing, selling, licensing, leasing, transferring or disposing of ███████, Flash Enhancer, or any product developed with the use of, derived from, or incorporating all or any part of ███████ or Flash Enhancer.

The court also finds that the extension of the duration of the preliminary injunction order for four months, together with Verigy's request for attorney's fees in connection with the current contempt proceedings, satisfactorily compensates Verigy for its injuries resulting from defendants' non-compliance with the TRO.

### III. ORDER

For the reasons set forth above, the court finds defendants ROMI OMAR MAYDER, WESLEY MAYDER, SILICON TEST SYSTEMS, INC. and SILICON TEST SOLUTIONS, LLC to be in contempt of its August 24, 2007 temporary restraining order for continuing to develop its Flash Enhancer product, which the court has found to be substantially based upon Verigy's trade secrets because it is an evolution of the ███████████ that was based on Mayder's work on the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    █████ project while he was employed by Verigy. As set forth above, the court extends the

2   duration of the preliminary injunction issued on February 29, 2008 as a sanction for such contempt.

3       Verigy is also entitled to its reasonable attorney's fees expended in conjunction with its

4   motion to find defendants in contempt. Within 20 days of this order, Verigy shall inform the court

5   of the amount it requests in briefing not to exceed 5 pages, along with a declaration and

6   documentation supporting such request. If defendants contest the amount requested, they may

7   submit a response of no more than 3 pages within 5 days of Verigy's submittal of the requested

8   information.

9

10

11   DATED:     5/20/08                             _Ronald M Whyte_

12                                       RONALD M. WHYTE
                                        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
**For the Northern District of California**

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiff:**

3  Melinda Morton           mmorton@be-law.com
   Daniel J. Bergeson       dbergeson@be-law.com
4  John W. Fowler           jfowler@be-law.com

5  **Counsel for Defendants:**

6  Daniel Harlan Fingerman  dfingerman@mount.com
   Daniel S. Mount          dmount@mount.com
7  Kevin Martin Pasquinelli kpasquinelli@mount.com
   Jack Russo               jrusso@computerlaw.com
8

9  Counsel are responsible for distributing copies of this document to co-counsel that have not
   registered for e-filing under the court's CM/ECF program.
10

11

12  **Dated:** ____5/22/08_____        _____/s/ MAG_____
13                                            **Chambers of Judge Whyte**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION TO FIND DEFENDANTS IN CONTEMPT OF COURT FOR VIOLATING THE TRO
(Corrected Redacted Version)—No. C-07-04330 RMW
MAG                                          15