Daniel S. Mount, Esq. (Cal. Bar No. 77517)
Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
Kevin M. Pasquinelli, Esq. (Cal. Bar No. 246985)
Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax:    (408) 998-1473
Email: dmount@mount.com
          kspelman@mount.com
          dfingerman@mount.com
          kpasquinelli@mount.com

Attorneys for Defendants Romi Mayder,
Silicon Test Systems Inc., and Silicon Test Solutions LLC

United States District Court
Northern District of California, San Jose Division

| | |
|---|---|
| VERIGY U.S. INC., a Delaware corporation | Case No. 5:07-cv-04330 (RMW) (HRL) |
| Plaintiff, | **Defendants Reply Brief to Verigy's Opposition to Defendants Motion to Compel Amended Responses and Production of Responsive Documents.** |
| vs. | |
| ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS INC., a California corporation; SILICON TEST SOLUTIONS LLC, a California limited liability corporation, | Date:   June 10, 2008<br>Time:   10:00<br>Judge:  Hon. Howard R. Lloyd<br>Ctrm: 2 |
| Defendants. | |

**REDACTED VERSION**

Case No. 5:07-cv-04330 (RMW) (HRL)                                                                                         Page i
Defendants' Reply Brief Re: Motion to Compel Amended Responses and Production of Responsive Documents to Defendants Second
Set of Requests for Production of Documents on Plaintiff Verigy, Motion for Fees and Sanctions

## STATEMENT OF ISSUE

(ND Cal. Civ. Loc. R 7-4)

Should Verigy be compelled to produce responsive documents to the RFPs, where Verigy construes the RFPs "hypertechnically", and refuses a responsive production even after fully understanding the reasonable interpretation of the RFPs?

## INTRODUCTION

Verigy's *Memorandum of Points and Authorities in Opposition to Motion to Compel Amended Responses and Production of Responsive Documents to Discovery* ("Verigy's Opposition") is filled with unwarranted adhominum attacks and factual inaccuracies in an attempt to obfuscate the single and central issue in this dispute; Verigy's refusal to produce responsive documents to RFPs propounded over five (5) months ago. Even after explicit clarification (and Verigy acknowledgement of such) as to the only reasonable interpretation of *Defendants Second Set of Requests for Production of Documents on Plaintiff Verigy* ("the RFPs") Verigy still refuses to produce responsive documents.

After this five month delay Verigy now argues that it has no duty to respond because it amended its initial 2019.210 trade secret disclosure. ("Initial 2019 Statement," and "Amended 2019 Statement" respectively). Despite these ineffective arguments, Defendants have offered to withdraw the RFPs if Verigy will admit that Defendants have not misappropriated trade secrets (or that Verigy has no evidence of Defendants misappropriating those trade secrets) not included in its Amended 2019.210 Statement. Verigy has denied both offers. Therefore, Defendants pray this Court to order Verigy to produce responsive documents to its alleged trade secrets.

## REVIEW OF FACTS SALIENT TO THIS REPLY BRIEF

**Facts the Parties Appear to Agree Upon:**

Both parties explicitly discuss in their briefs that the following events occurred:

- Verigy filed a CA Code Civ. Proc. Section 2019.210 Trade Secret Disclosure on 8/24/2007 ("Initial 2019 Statement").

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

- On **12/19/2007** Defendants' propounded on Verigy *Defendants Second Set of Requests for Production of Documents on Plaintiff Verigy* ("the RFP's").[1] (requesting production of documents related to Verigy's Initial 2019 Statement).

- On 2/8/08 Verigy produced 200 pages of documents. The documents included, in part, Verigy blank sign in sheets, employee policy documents, privacy policies, and a Standard Verigy Confidential Disclosure Agreement ("CDA"). Verigy did not produce documents to the RFPs that describe its trade secrets disclosed in its Initial 2019.210 trade secret statement [2]

- On 3/14/2008 the Honorable Judge Whyte filed notes of a CMC conducted with the parties.

- On 4/10/2008, after almost four months waiting for production of responsive documents, Defendants filed *Defendants' Notice of Motion and Motion to Compel Amended Responses and Production of Responsive Documents to Defendants Second Set of Requests for Production of Documents on Plaintiff Verigy* ("the Motion to Compel").[3]

- Initially, a hearing on this matter was scheduled for 5/20/2008 with this Court.

- On about 4/25/2008 Verigy offered to negotiate a stipulation admitting that Defendants had not misappropriated trade secrets which had been removed from its Initial 2019.210 Statement.[4]

- In good faith, Defendants stipulated to a one week extension to the briefing schedule.

- This Court reviewed its calendar and instead granted a three week extension, making the responsive brief due 5/20/2008, and setting a hearing date of 6/10/2008.[5]

- As part of the good faith negotiations that ensued, Defendants granted Verigy a three week extension to answer the pending second set of RFA's, making them due coincidentally on 6/10/2008, the same date as the hearing on this Motion to Compel.[6]

- The next CMC before the Honorable Judge Whyte was scheduled for 5/23/2008.

- On 4/18/2008 Verigy served an Amended CCP 2019.210 Trade Secret Disclosure ("Amended 2019 Statement") on Defendants. (four days later than committed to Defendants and the Court).

**Facts Assumed Accurate Since Verigy has Offered No Opposition**

The following facts were asserted by Defendants and were not disputed in Verigy's Opposition regarding the meet and confer efforts leading to this motion:

- On 3/12/2008 Defendants emailed Verigy stating "There has been no production of documents related to the 2019 statement's claims of trade secrets, as was agreed to. Please tell me when Verigy will be producing those documents."[7]

---

[1] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, ¶5.
[2] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, ¶6
[3] Declaration of Kevin Pasquinelli in Support of Defendants' Opposition to Verigy's Motion to Shorten Time, ¶4(f).
[4] Declaration of Kevin Pasquinelli in Support of Defendants' Opposition to Verigy's Motion to Shorten Time, ¶4(g).
[5] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit B.
[6] Declaration of Kevin Pasquinelli in Support of Defendants' Opposition to Verigy's Motion to Shorten Time, ¶6(e).
[7] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit D.

- On 3/13/2008 Plaintiff responded that "any additional documents will be produced next week"[8], implying that it understood the intent of the RFPs and that responsive documents would be sent,

- On about 3/21/2008 Verigy produced only 9 pages of documents,[9] two non-disclosure agreements and a blank sign in log.

- On 3/24/2008 Defendants emailed Plaintiff again, specifically stating that the "production" answered none of the RFP's and noted that "it is hard to see how (1) a blank sign in log, (2) a Micron NDA, and (3) a Spansion NDA respond to any of the trade secret claims asserted by Verigy in its 2019 statement that you said would be produced last week."[10]

- On 3/26/2008 Verigy acknowledged that the purpose of propounding the RFPs was to obtain information regarding the alleged Verigy trade secrets. In an email Verigy states "It appears from your recent correspondence that you ***persist*** in the belief that these document requests somehow asked for the documents *constituting* the trade secrets or *supporting the assertion* of trade secret status."[11] (emphasis added) This email implies that Verigy had always understood the intent of the requests, even without Defendants clarification!

- On 4/2/2008 Defendants sent Verigy a final correspondence in an attempt to convince it to produce responsive documents to the RFPs.[12] This correspondence requested compliance, or Defendants would file this motion with the court.

- On 4/3/2008 Verigy reasserted its interpretation.[13]

- On Friday 4/4/2008, Monday 4/7/2008, and Tuesday 4/8/2008 Verigy counsel and Defendants counsel again exchanged emails and spoke live. The previously mentioned objections and counter arguments were made without the parties reaching resolution.[14]

**Events Occurring After Filing of Verigy's Opposition Brief, but Prior to filing this Reply Brief**

- The CMC before the Honorable Judge Whyte was held, as scheduled, on 5/23/2008.[15]

- A date for jury trial was set for December 8, 2008, or alternatively December 15 for a court trial.[16]

- Given the short time to trial, the Honorable Judge Whyte held that both parties would be limited to 33 Additional Requests for Admission. As such, Verigy has withdrawn its Motion for Protection from answering the pending RFA's and Defendants are considering which RFA's to resubmit, if any.[17]

---

[8] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit E.
[9] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, ¶ 9.
[10] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit F.
[11] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit G.
[12] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit I.
[13] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit I email correspondence
[14] Id.
[15] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶3.
[16] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶4.
[17] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶5.

**Irrelevant and Inaccurate Representations in Verigy's Opposition:**

- Verigy asserts that at the 3/14/2008 CMC, "Defendants requested that Verigy amend its trade secret disclosure and Verigy agreed."[18] More accurately, **the Court** ordered Verigy to narrow and more specifically define its alleged trade secrets.[19]

- Verigy asserts that Defendants counsel "all but admitted that it made no sense to maintain a motion to compel document requests directed toward Verigy's Initial Trade Secret Disclosure once the amended disclosure was served."[20] This is a patent misrepresentation,[21] and, as persuasively argued below, filing its Amended 2019.210 Statement does not diminish the relevance of discovery concerning its Initial 2019.210 Statement, especially when most of the alleged trade secrets are in common.

- Verigy asserts that the amended trade secret disclosure "withdrew all of the trade secrets" replacing them with (1) a list restricted to "three specific projects," (2) a list of documents related to the ▮▮▮▮ project, and (3) a list of invention disclosures.[22] This assertion attempts to portray the Amended 2019 Statement as entirely different from the Initial 2019 Statement. The table below compares the Initial 2019.210 Statement with the Amended 2019.210 Statement, as grouped by Verigy:

| Text | Initial 2019.210 Statement | Amended 2019.210 Statement | RFP No. |
|---|---|---|---|
| **(1) a list restricted to "three specific projects,"** | | | |
| The project code-named ▮▮▮ | 1(a) | 1(b) | 16 |
| The project code named ▮▮▮ | 1(a) | 1(b) | 16 |
| The project code named ▮▮▮ | 1(a) | 1(b) | 16 |
| The project code named ▮▮▮ | 1(a) | 1(b) | 16 |
| The project code named ▮▮▮ | 1(a) | 1(a) | 16 |
| The project code named ▮▮▮ | 1(a) | 1(a) | 16 |
| The project code named ▮▮▮ | 1(a) | 1(b)(ii) | 16 |
| The project code named ▮▮▮ | 1(a) | 1(b)(iii) | 16 |
| **(2) a list of documents related to a specific project** | | | |
| The Project code-name by Mayder as ▮▮▮ and/or ▮▮▮ | 1(b) | 1(c) | n/a |
| Exhibits B and C to the Leventhal Declaration submitted in support of Verigy's Application for a TRO. | 1(s) | 1(d) | n/a |
| Exhibits A, B, C, and D to the Lai Declaration submitted in support Verigy's Application for a TRO | 1(t) | 1(e) | n/a |
| Exhibits A and B to the Lee Declaration submitted in support of Verigy's Application for a TRO | 1(u) | 1(f) | n/a |
| Exhibits A, B, D, D, E, and F to the Pochowski Declaration submitted in support of Verigy's Application for a TRO | 1(v) | 1(g) | n/a |
| **(3) A List of Invention Disclosures** | | | |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 4(a) | 2(a) | 61 |

---

[18] Verigy's Opposition pg 4, ll13-14.
[19] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶6.
[20] Verigy's Opposition pg 4, ll 19-21.
[21] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶7.
[22] Verigy Opposition pg 3 l 23 to pg 4 l 4.

Case No. 5:07-cv-04330 (RMW) (HRL)                                                                                      Page 4
Defendants' Notice of Motion and Motion to Compel Amended Responses and Production of Responsive Documents to Defendants Second Set of Requests for Production of Documents on Plaintiff Verigy, Motion for Fees and Sanctions

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

| Text | Initial 2019.210 Statement | Amended 2019.210 Statement | RFP No. |
|---|---|---|---|
| ■■■ | | | |
| ■■■ | 4(h) | 2(b) | 68 |
| ■■■ | 4(m) | 2(c) | 73 |
| ■■■ | 4(f) | 2(c) | 66 |
| ■■■ | 4(g) | 2(d) | 67 |
| ■■■ | 4(j) | 2(e) | 70 |
| ■■■ | 4(n) | 2(f) | 74 |
| ■■■ | 5 | 3 | 75 |

- As is evident by the table above, in amending its Initial 2019 Statement Verigy
    - (1) Did not narrow the number of projects to three, but rather maintained a list of eight distinct projects.
    - (2) Included the same list of ■■■ project documents.
    - (3) Included the same invention disclosures, minus a few.
- Lastly, Verigy implies that Defendants would not stipulate without recovery of their attorney's fees for drafting this motion and the stipulation. This request is not what prohibited the parties from reaching agreement. Verigy was willing to stipulate only that any trade secret not present in the Amended 2019.210 statement was "no longer part of the case."[23] Of course, such a stipulation has no legal significance because it states nothing that is not already asserted by amending the Initial 2019.210 statement.
- Defendants proposed that for every trade secret removed from Verigy's Initial 2019.210 Statement a corresponding RFP would be removed, if Verigy admitted that the trade secret had not been misappropriated by Defendants, or alternatively that Verigy possessed no evidence implicating Defendants in misappropriating a specific trade secret. Unfortunately, Verigy appears to believe that it can accuse Defendants of misappropriation, and either not produce documents describing those trade secrets or alternatively not admit that no evidence exists upon which to assert those trade secrets.

---

[23] Verigy's Opposition pg 5, l 6.

- Furthermore, Verigy neglects to inform the court that its offer reserved the right to reassert any trade secret claim if evidence was is found "related to one of the trade secrets listed in Plaintiffs' Initial 2019.210 disclosure."[24] Therefore, Verigy's proposed stipulation would have no binding effect. Mere reference to a project code name could have been sufficient to reassert a trade secret. Essentially Verigy proposed to concede nothing, while producing nothing.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. The Requested Documents Are Relevant to Defendants Claim for Declaratory Relief**

The gravaman of Verigy's Opposition is that since it filed an Amended 2019.210 Statement, it should now not be required to produce responsive documents related to its Initial 2019.210 Statement, because any such documents are not relevant. This argument fails because (1) Defendants are properly entitled to Declaratory Relief against allegations made by Verigy in its Initial 2019.210 Statement (regardless of amendments), (2) without resolving the controversy related to those trade secrets further, subsequent, unnecessary litigation may result, and (3) Defendants corrected pleading has no effect upon its Declaratory Relief counter claims.

### **A. Defendants are Entitled to Declaratory Relief**

A proceeding for declaratory relief is within the jurisdiction of the federal court when it presents a "case" or "controversy" within the meaning of the US Const art III § 2, and is a "suit of a civil nature, at law or in equity" within the meaning of the Judicial Code §§ 24, 28.[25] Federal law determines existence of an actual controversy.[26] Verigy asserted its own claim for declaratory relief against defendants.[27] Upon filing its initial complaint in this action, Verigy specifically and explicitly asserted that a case or controversy exists.[28] It cannot now argue that a controversy regarding its initially alleged trade secrets does not exist.

In response, Defendants properly counter claimed for Declaratory Relief regarding all trade secrets in controversy alleged in Verigy's Initial 2019.210 Statement. Trade secret disputes have been

---

[24] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶11, Exhibit B.
[25] (28 USCS §§ 41, 71). Southern Pac. Co. v. McAdoo (1936, CA9 Cal) 82 F 2d 121, 1936 US App LEXIS 2914.
[26] Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-672, 70 S. Ct. 876, 94 L. Ed. 1194 (1950) (immaterial that no declaratory relief available under state law); In re Summers, 325 U.S. 561, 566-569, 65 S. Ct. 1307, 89 L. Ed. 1795 (1945) (federal law determines actual controversy); Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace, 288 U.S. 249, 262-264, 53 S. Ct. 345, 77 L. Ed. 730 (1933) (justiciability is decided under federal law independent of state law).
[27] Verigy Initial Complaint, cause of action #X.
[28] Verigy Initial Complaint, causes of action 1-14.

held as a proper controversy to base declaratory relief.[29] Declaratory relief in counter claims and cross claims are held to the same standards as one asserted in an independent action.[30] Therefore, Defendants counter claim is proper and in no way restricts, or is restricted by, other causes of action. To allow Verigy to now reduce Defendants scope of declaratory relief is to improperly place Verigy in control of the scope of Defendants counter claims.

### B. Without Declaratory Relief Further Litigation May Result

Declaratory relief is appropriate when a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations at issue by terminating and affording relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.[31] However, the existence of another equally effective remedy is no ground for denying declaratory relief.[32] If the trade secrets listed in Verigy's Initial 2019.210 Statement are not heard by the court, the uncertainty and controversy regarding Defendants' alleged misappropriation of those trade secrets will remain undecided and the subject of further litigation.

### C. Defendants *Corrected* Pleading Has No Effect on the Referenced 2019 Statement

Verigy incorrectly asserts that Defendants filing of a *corrected* pleading, merely to comply with L.R. 10-1, somehow substantively changes Defendants' counter claims to refer to Verigy's Amended 2019.210 Statement. Defendants answered and counter claimed on 9/13/2007.[33] As part of the court's preliminary injunction order it requested defendants to amend its defenses. Without changing its answer or counter claims, Defendants filed amended defenses on 3/25/2008.[34] Subsequently, Verigy notified Defendants that the amended defenses might be in technical violation of L.R. 10-1 which requires that any amended pleading be filed in its entirety.[35] Rather than have motion practice on this point Verigy requested Defendants consolidate its pleadings to comply with

---

[29] Earthwise Techs., Inc. v. Suarez Corp. Indus., 2008 U.S. Dist. LEXIS 11839 (W.D. Wash. Jan. 15, 2008)
[30] *See* Fed. R. Civ. P. 13, 15.
[31] *9th Circuit* Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 703 (9th Cir. 1992) (citing **Moore's,** federal courts should consider whether declaratory relief would serve useful purpose, clarify legal relations, and terminate controversy);
[32] Advisory Committee Note to 1937 Adoption to Fed. R. Civ. P. 57
[33] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶13.
[34] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶14.
[35] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶15, Exhibit D.

Case No. 5:07-cv-04330 (RMW) (HRL)                                                                                                  Page 7
Defendants' Notice of Motion and Motion to Compel Amended Responses and Production of Responsive Documents to Defendants Second Set of Requests for Production of Documents on Plaintiff Verigy, Motion for Fees and Sanctions

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

the order.[36] Defendants filed a corrected pleading on May 16, 2008.[37] No substantive changes were made.

Defendants answer and counter claim, as well as their amended defenses always referred to Verigy's Initial 2019.210 Statement. Verigy's assertion that correcting the pleading to comply with L.R. 10-1 somehow makes a substantive change is baseless.

**D. Defendants Discovery is Not Limited by Verigy's Amended 2019.210 Statement**

Verigy further asserts that Verigy's Amended 2019.210 Statement "governs the scope of discovery relating to Verigy's trade secret claim."[38] CA Code of Civil Procedure 2019.210 (§CCP 2019.210) limits "the party alleging the misappropriation" from "commencing discovery" until it identifies the trade secret with reasonable particularity. The statute does not limit the non-alleging party from conducting discovery related to the 2019.210 statement. Verigy cites no case support for this assertion, and therefore this argument likewise fails.

## II. The Requests Cannot be Overbroad as Each is Specifically Tailored to Verigy's 2019.210 Trade Secret Statement

Verigy claims that a search for documents tailored exactly to Verigy's Initial 2019.210 Statement "would be unduly burdensome because a search . . . would involve hundreds, if not thousands, of hours of review and collection for production."[39] There is no dispute that the RFPs directly correspond to trade secrets alleged in its Initial 2019.210 Statement. Since Verigy defined its trade secrets, any effort to support those allegations was implicit in the Statement. Verigy cannot now argue that its own allegations were too broad.

Verigy further argues that trade secrets contained in its Initial 2019.210 Statement are no longer "part of this case."[40] This statement is inaccurate since even if the court were to hold that only the Amended 2019.210 Statement was relevant, most of the alleged trade secrets are virtually identical between the two disclosures. As discussed in the facts section, the two disclosures share

---

[36] Id.
[37] Declaration of Kevin Pasquinelli in Support of Reply Brief, ¶16.
[38] Verigy's Opposition pg 6, ll 2-3.
[39] Verigy's Opposition pg 8, ll 9-11.
[40] Verigy's Opposition pg 8, ll 11-12.

Case No. 5:07-cv-04330 (RMW) (HRL)                                                                                                Page 8
Defendants' Notice of Motion and Motion to Compel Amended Responses and Production of Responsive Documents to Defendants
Second Set of Requests for Production of Documents on Plaintiff Verigy, Motion for Fees and Sanctions

dozens of trade secrets in common, and therefore any production of documents will overlap. To argue otherwise lacks credibility.

Verigy further suggests that "Defendants could have avoided this dispute by withdrawing the motion to compel and serving new requests tailored to the trade secrets at issue in the case."[41] Resubmitting the RFPs would achieve nothing except further delays in the face of an already five (5) month delay in producing responsive documents. Also, Verigy has not offered to produce overlapping portions of the 2019.210 Statements.

### III. Verigy's "Plain Meaning," Requires Three Pages of Justification

Verigy asserts that its interpretation of the RFPs are neither "hyertechnical" nor "unreasonable" because it is based on the "plain meaning" of the requests. Verigy requires three pages to explain how it determines "plain meaning", justifying its position largely on two arguments; (1) Defendants pleadings and (2) California's trade secret statute.

First, Defendants do not dispute that they have asserted as a defense that Verigy has not properly maintained its trade secrets, but no rational person can honestly believe that Defendants were requesting this fifty-nine (59) times in the RFP's (Nos. 16-75). Such would imply that Verigy has a unique trade secret policy for each trade secret. How absurd.

Second, Verigy argues that the RFPs should be interpreted with sole emphasis on the word "maintain", as opposed to taken in context of the entire request. As discussed in Defendants initial motion Verigy isolates the word "maintain" and construes it to mean "efforts that are reasonable under the circumstances to maintain the secrecy of the."[42] Such an interpretation completely ignores the plain language that Defendants are requesting "DOCUMENTS RELATING TO . . . Verigy trade secrets." Verigy introduces no new evidence or law as to why such an assumption is reasonable; it merely argues that such an interpretation is possible.

### IV. Verigy Ignored Subsequent Clarifications of the RFPs

Verigy does not deny that it understood the actual meaning of the RFPs, and then ignores the purpose of "meet and confer." As discussed in Defendants' initial motion, the goal of the meet and

---

[41] Verigy's Opposition pg 6, ll 19-22.
[42] CA Civ. Code §3426.1(d)(2).

Case No. 5:07-cv-04330 (RMW) (HRL)                                                                                    Page 9
Defendants' Notice of Motion and Motion to Compel Amended Responses and Production of Responsive Documents to Defendants
Second Set of Requests for Production of Documents on Plaintiff Verigy, Motion for Fees and Sanctions

confer process is to "resolve legitimate disputes and disagreements regarding the scope of discovery proceedings. Counsel are obligated to engage in this process in good faith and cannot reject reasonable proposals without suffering the consequences."[43] If a clarification eliminates the grounds for the objection, as here, the process compels the responding party to withdraw the objection.[44] If it did not, then the meet and confer process would have little benefit. Where the parties have "met and conferred", and agreed on the intent and meaning of the RFPs there is no reason to re-serve discovery requests. Re-serving the requests would only delay and increase the costs of discovery. When a party continues to object, and adhere to its own interpretation of the discovery request, despite proper clarification by the opposing party, courts have ordered compliance.[45]

Although the RFPs are clear and unambiguous, before bringing this motion, the Parties discussed Verigy's interpretation. Verigy agrees that Defendants believe "that these document requests . . . asked for the documents *constituting* the trade secrets or *supporting the assertion* of trade secret status".[46] With this understanding, Verigy stated; "With respect to your question as to when responsive documents will be produced, Verigy has produced responsive documents."[47] Verigy has produced no additional documents, and asserts that it is under no duty to do so.

Since Verigy expressly admits that it understood the intent of the requests, even before objecting, re-serving the same RFPs now would only delay discovery and waste resources.

## **Conclusion**

For the foregoing reasons, Defendants respectfully requests that the Court issue an order compelling Plaintiff to produce documents in compliance with *Defendants Second Set of Requests for Production of Documents on Plaintiff Verigy* numbers 16 through 75 within 14 court days of that order. Defendants also request that the Court order Plaintiff to pay Defendants' costs and fees associated with bringing this motion.

---

[43] *Manzetti v. Superior Court*, 21 Cal. App. 4th 373, 380 (Cal. Ct. App. 1993).
[44] Id.
[45] *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 U.S. Dist. LEXIS 66030, 11-12 (D. Cal. 2007).
[46] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit I: Email from Mindy Morton to Kevin M. Pasquinelli, Wednesday 4/2/08.
[47] Declaration of Kevin Pasquinelli in Support of Defendants' Motion to Compel, Exhibit I and paragraph 17.

Dated: May 27, 2008    Mount & Stoelker, P.C.
Kevin M. Pasquinelli

_____/s/_____
Attorneys for Defendants Romi Mayder,
Silicon Test Systems Inc., and Silicon Test Solutions LLC

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000