DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
DONALD P. GAGLIARDI, Bar No. 138979
dgagliardi@be-law.com
JOHN W. FOWLER, Bar No. 037463
jfowler@be-law.com
MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
MICHAEL W. STEBBINS, Bar No. 138326
mstebbins@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff
VERIGY US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>Defendants. | Case No. C07 04330 RMW (HRL)<br><br>**VERIGY'S REQUEST FOR ATTORNEYS' FEES & COSTS EXPENDED IN CONJUNCTION WITH ITS CONTEMPT MOTION**<br><br>Judge: Honorable Ronald M. Whyte<br>Crtrm. 6<br><br>Complaint Filed: August 22, 2007<br>Bench Trial Date: December 15, 2008 |

1    Pursuant to the Court's Order Granting Plaintiff's Motion to Find Defendants in Contempt
2 of Court for Violating the TRO, filed May 20, 2008 (Docket No. 210), in which the Court ordered
3 that plaintiff Verigy US, Inc. ("Verigy") is "entitled to its reasonable attorney's fees expended in
4 conjunction with its motion to find defendants in contempt," (*id.*, at p.28), Verigy hereby requests
5 an award of attorney's fees and costs from defendants in the total amount of $40,619.98, as
6 detailed herein below and in the attached declarations of Melinda Morton, Michael Stebbins, and
7 Don Gagliardi, and in the itemized summary of attorneys' fees and costs expended in conjunction
8 with Verigy's contempt motion.

## I. INTRODUCTION AND BACKGROUND

On August 22, 2007, Verigy brought this action against defendants Romi Mayder, Wes Mayder, and the companies they founded, defendants Silicon Test Systems, Inc. and Silicon Test Solutions LLC, for misappropriation of trade secrets and related claims. On August 24, 2007, a temporary restraining order ("TRO") was entered pending hearing on Verigy's motion for preliminary injunction. On December 3, 2007, before the preliminary injunction motion could be heard, Verigy moved for an order to show cause why defendants should not be held in contempt of the TRO. Defendants asked that the contempt motion be deferred until after hearing on the preliminary injunction motion. On February 29, 2008, as part of its preliminary injunction order, the Court issued an order to show cause why defendants should not be held in contempt.

The contempt motion was fully briefed, with Verigy's moving papers filed December 5, 2007, defendants' opposition papers filed March 21, 2008, and Verigy's reply papers filed March 28, 2008. The contempt hearing was held on April 11, 2008. Thereafter, on May 20, 2008, the Court issued an order finding defendants in contempt of the TRO. As a sanction for the contempt, the Court extended the duration of the preliminary injunction an additional four months and pertinently ruled: "***Verigy is also entitled to its reasonable attorney's fees expended in conjunction with its motion to find defendants in contempt. Within 20 days of this order, Verigy shall inform the court of the amount it requests in briefing not to exceed 5 pages, along with a declaration and documentation supporting such request.***" (Order filed May 20, 2008, at pp. 14-15) (Docket No. 210) (emphasis added).

## II. ARGUMENT

As shown above, this Court has already ruled that Verigy is entitled to its reasonable attorney's fees expended in conjunction with its motion to find defendants in contempt. The only issue concerns the reasonableness of the request for fees. A district court "has a great deal of discretion in determining the reasonableness of the fee." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

### A. Verigy's Fees Incurred on the Contempt Motion Are Reasonable.

Here, Verigy is requesting $38,215.508 in attorneys' fees, which as detailed in the declarations and supporting documentation, involves the work of two experienced attorneys, Melinda Morton and Michael Stebbins, in preparing and prosecuting the contempt motion ($35,191.50), as well as costs and "fees on fees" for work of a third experienced attorney, Don Gagliardi, in preparing this fee request ($3,024).

The "starting point for determining a reasonable fee award is the calculation of the 'lodestar.'" *Marbled Murrelet v. Pacific Lumber Co.,* 163 F.R.D. 308, 316 (N.D.Cal. 1995), citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986). "To determine the 'lodestar,' the court must multiply the amount of hours reasonably expended . . . by a reasonable hourly rate." *See Marbled Murrelet*, 163 F.R.D. at 316, citing *Chalmers,* 796 F.2d at 1210. In the Ninth Circuit, "[a] 'strong presumption' exists that the lodestar figure represents a 'reasonable' fee." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987).

"According to the Laffey Matrix for 2006-2007 . . . a reasonable hourly rate for an attorney 11-19 years out of law school is $509. The appropriate hourly rate for an attorney 8-10 years out of law school is $452." *Kempf v. Barrett Business Services, Inc.,* No. C-06-3161 SC, 2007 WL 4167016, at *5 (N.D.Cal. Nov. 20, 2007).[1] On the instant motion, Ms. Morton, a 1997 Yale Law School graduate with 11 years' experience in complex business litigation, billed at an

---

[1] The Laffey Matrix is designed to provide objective guidance in appropriate hourly rates for attorneys in the Washington, D.C. area, and "has also been recognized as a valuable tool in this district, with some modification for economic differences between the San Francisco Bay Area and Washington, D.C." See *Kempf*, 2007 WL 4167016, at * 5.

1  hourly rate of $435 (2007 hours) and $450 (2008 hours). (Morton Decl., ¶¶ 2-3). Mr. Stebbins, a
2  1988 Santa Clara Law School graduate with 20 years' experience in complex business litigation,
3  billed at an hourly rate of $465 (2007 hours) and $470 (2008 hours). (Stebbins Decl., ¶¶ 2-3).
4  These rates, which are "below the Laffey Matrix rates for attorneys of comparable experience,"
5  are necessarily reasonable. *Id, at \*5*.

6       The number of hours spent by Ms. Morton and Mr. Stebbins on the motion was also
7  reasonable. Ms. Morton spent 52.8 hours in extensive legal research concerning whether the TRO
8  was clear and specific, whether an extension of the preliminary injunction was an available
9  remedy, whether marking a document as "confidential" rather than "highly confidential" waives
10 trade secret status and appearing at the hearing on the contempt motion. (Morton Decl., ¶ 3-4 and
11 Ex. A) (chart itemizing attorney time and costs related to contempt motion). Mr. Stebbins spent
12 24.7 hours in communicating with Intel regarding the nature and extent of Defendants' ongoing
13 work to continue development of the Flash Enhancer product with Intel's input following issuance
14 of the TRO, coordination and preparation of the deposition of David McMann, reviewing
15 documents produced by Intel and participating in the drafting of the reply brief and related
16 declarations in support of the Order to Show Cause regarding the contempt motion. (Stebbins
17 Decl., ¶ 3-4 and Ex. A) (same). This was a reasonable and not excessive period of time to spend
18 on the motion considering the complexity of the issues raised by defendants' conduct.

19      Defendants' opposition brief introduced a number of legal arguments that required
20 extensive legal research, and it was time-consuming to research these arguments. In particular, the
21 arguments concerning whether TRO was clear and specific, whether an extension of the
22 preliminary injunction was an available remedy, and whether marking a document as
23 "confidential" rather than "highly confidential" waives trade secret status (an argument for which
24 Defendants supplied no case law) required significant research. The research regarding
25 appropriate remedies for civil contempt in this context or similar contexts was particularly time
26 consuming, due to the lack of helpful treatise materials and the rarity of contempt proceedings in
27 trade secret cases. Further, Defendants' opposition relied extensively on a Second Circuit
28 decision, *Fonar Corp. v. Deccaid Services, Inc.* 983 F.2d 427 (2nd Cir. 1993). As *Fonar* does not

3

accurately state the law in the Ninth Circuit, Ms. Morton was required to research what the Ninth Circuit law actually is regarding incorporation by reference and present that to the Court.

Mr. Stebbins was involved in communicating with Intel regarding the nature and extent of Defendants' ongoing work to continue development of the Flash Enhancer product with Intel's input following issuance of the TRO. Mr. Stebbins communicated with inside and outside counsel for Intel regarding the declarations of an Intel employee (Dick Weber) that were submitted in opposition to Verigy's motion for preliminary injunction and learned that those declarations were provided without Intel's knowledge or authorization and in direct contravention of instructions from Mr. Weber's supervisor, David McMann. Mr. Stebbins also coordinated the deposition of Mr. McMann and prepared the subpoena and FRCP 30(b)(6) deposition notice. He also traveled to Sacramento on January 8, 2008 and on January 9, 2008, Mr. Stebbins took the deposition of Mr. McMann. Documents produced by Intel confirming that Defendants had violated the TRO by, among other things, shipping prototypes of the Flash Enhancer product (which this Court determined was substantially derived from Verigy's trade secrets) to Intel in early November 2007 were reviewed by Mr. Stebbins. Mr. Stebbins participated in the drafting of the reply brief and related declarations in support of the Order to Show Cause regarding contempt.

**B.   Verigy's Costs Incurred on the Contempt Motion Are Reasonable.**

Additionally, Verigy requests its reasonable costs associated with the contempt motion in the amount of $2,404.48. These consisted of courier fees to file and serve the confidential versions of the briefs and declarations to the Court and to Defendants' counsel, Westlaw research fees, and costs for the Intel deposition. (Morton Decl., ¶ 6 and Ex. A) (chart itemizing attorney time and costs related to contempt motion).

**C.   Verigy Is Entitled to Recover Its Reasonable "Fees on Fees."**

Finally, Verigy is also entitled to its attorney's fees and costs incurred in bringing this request. "'[F]ederal courts, including our own, have uniformly held that time spent in establishing the entitlement to and the amount of the fee is compensable.' This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee." *Camacho v. Bridgeport Financial,*

4

*Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (internal citation omitted).  Here, Verigy has incurred over $3,024.00 on this fee petition. Mr. Gagliardi, a 1988 Stanford Law School graduate with significant experience in complex business litigation, spent more than 6.3 hours on this fee petition and billed at an hourly rate of $480 (2008 hours).  (Gagliardi Decl., ¶¶ 2-3 and Ex. A (chart itemizing attorney time and costs related to contempt motion).  The number of hours spent by Mr. Gagliardi on this fee petition and his hourly rate – which is below the applicable Laffey Matrix rate, *see Kempf*, 2007 WL 4167016, at * 5 – are reasonable.  Thus, Verigy's "fees on fees" were also reasonably incurred.

### III. CONCLUSION

Based on the foregoing, and on the declarations of Melinda Morton, Michael Stebbins and Don Gagliardi, and the itemized summary of attorneys' fees and costs expended by Verigy in conjunction with its contempt motion, Verigy respectfully requests the Court issue an order awarding Verigy attorney's fees and costs in the amount of $40,619.98.

Dated: June 9, 2008                         BERGESON, LLP

                                            By:  /s/
                                                Donald P. Gagliardi

                                            Attorneys for Plaintiff
                                            VERIGY US, INC.