# EXHIBIT B
# PART 3 OF 3

# EXHIBIT H

LEXSEE


Caution
As of: Apr 11, 2008

APPLIED EQUIPMENT CORPORATION, Plaintiff and Respondent, v. LITTON
SAUDI ARABIA LIMITED et al., Defendants and Appellants.

No. S030637.

SUPREME COURT OF CALIFORNIA

7 Cal. 4th 503; 869 P.2d 454; 28 Cal. Rptr. 2d 475; 1994 Cal. LEXIS 1216; 94 Cal.
Daily Op. Service 2292; 94 Daily Journal DAR 4265

March 31, 1994, Decided

**PRIOR HISTORY:** Superior Court of Los Angeles County, No. C579970, Madeleine Flier, Judge.

**DISPOSITION:** The judgment of the Court of Appeal is reversed. The case is remanded with instructions to direct further proceedings in the trial court in a manner consistent with this opinion.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a suit for interference with contract, appellant supplier sought review of a judgment of the Court of Appeal, Fourth Appellate District (California), which affirmed breach of contract awards and found appellant supplier liable in tort for conspiring to interfere with its own contract.

**OVERVIEW:** Respondent corporation entered into contracts with appellant contractor to supply parts needed under a military defense contract. Respondent also contracted with appellant supplier to purchase certain items exclusively from supplier. Appellant thereafter entered into a deal to obtain the parts without a price markup. Respondent sued appellant for breach of contract, and tortious interference with contract. The trial court awarded respondent contract and tort damages. The court of appeal affirmed the contract awards, and held appellant liable for conspiring to interfere with its own contract. On appeal, the judgment of the court of appeals was reversed. The court held that appellant did not assume an independent tort obligation not to interfere with the performance of its own contract. Thus the court held appellant liable in contract only. The court remanded for further proceedings.

**OUTCOME:** The court affirmed the judgment of the court of appeal.

**CORE TERMS:** conspiracy, contracting parties, tort liability, conspiracy to interfere, breach of contract, induce, cause of action, immunity, civil conspiracy, own contract, coconspirator, interfere, contract damages, subcontract, liable in tort, motive, purchase order, punitive damages, insurer, italics, contractual relationship, contractual relations, tortfeasor, conspiring, breaching, stranger, owe, tort law, tort damages, omission

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > General Overview*
[HN1]Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

7 Cal. 4th 503, *; 869 P.2d 454, **;
28 Cal. Rptr. 2d 475, ***; 1994 Cal. LEXIS 1216

*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > Elements*
[HN2]The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design.

*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > General Overview*
[HN3]By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.

*Contracts Law > Breach > General Overview*
*Torts > Business Torts > Commercial Interference > Contracts > General Overview*
[HN4]To recover in tort for intentional interference with the performance of a contract, a plaintiff must prove: (1) a valid contract between plaintiff and another party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Torts > Business Torts > Commercial Interference > Contracts > Defenses*
[HN5]Consistent with its underlying policy of protecting the expectations of contracting parties against frustration by outsiders who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with contract does not lie against a party to the contract.

*Torts > Business Torts > Commercial Interference > Contracts > General Overview*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > General Overview*
[HN6]One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms. The tort duty not to interfere with the contract falls only on strangers--interlopers who have no legitimate interest in the scope or course of the contract's performance. The invocation of conspiracy does not alter this fundamental allocation of duty. Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles.

*Contracts Law > Breach > Causes of Action > General Overview*
*Torts > Business Torts > General Overview*
[HN7]Contract and tort are different branches of law. Contract law exists to enforce legally binding agreements between parties; tort law is designed to vindicate social policy. Whereas contract actions are created to protect the interest in having promises performed, tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily on social policy, and not necessarily based upon the will or intention of the parties.

*Contracts Law > Breach > Causes of Action > General Overview*
*Torts > Negligence > Duty > General Overview*
[HN8]Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law. The law imposes the obligation that every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights. This duty is independent of the contract. An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.

*Contracts Law > Breach > General Overview*
*Contracts Law > Remedies > Compensatory Damages > General Overview*
*Torts > Damages > General Overview*
[HN9]The differences between contract and tort give rise to distinctions in assessing damages and in evaluating underlying motives for particular courses of conduct. Contract damages seek to approximate the agreed-upon performance. In the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance. For the breach of an obligation arising from contract, the measure of damages is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. Cal. Civ. Code, § 3300.

7 Cal. 4th 503, *; 869 P.2d 454, **;
28 Cal. Rptr. 2d 475, ***; 1994 Cal. LEXIS 1216

*Contracts Law > Remedies > Foreseeable Damages > General Overview*
[HN10]Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectations of the parties are not recoverable.

*Torts > Damages > Compensatory Damages > General Overview*
[HN11]Tort damages are awarded to compensate the victim for injury suffered.

*Contracts Law > Breach > General Overview*
*Contracts Law > Remedies > Punitive Damages*
*Torts > Damages > General Overview*
[HN12]Damages for mental suffering and emotional distress are generally not compensable in contract actions. Similarly, punitive or exemplary damages, which are designed to punish and deter statutorily defined types of wrongful conduct, are available only in actions for breach of an obligation not arising from contract. Cal. Civ. Code, § 3294, subd. (a). In the absence of an independent tort, punitive damages may not be awarded for breach of contract even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious.

*Contracts Law > Breach > General Overview*
*Contracts Law > Defenses > Fraud & Misrepresentation > General Overview*
*Contracts Law > Types of Contracts > Covenants*
[HN13]In an intentional tort action, motives amounting to malice, oppression, or fraud may justify punitive damages. Cal. Civ. Code, § 3294. But the law generally does not distinguish between good and bad motives for breaching a contract. In traditional contract law, the motive of the breaching party generally has no bearing on the scope of damages that the injured party may recover for the breach of the implied covenant of good faith and fair dealing the remedies are limited to contract damages. Varying personal or economic reasons motivate one to breach his contract, but the general rule is that motives are immaterial and cannot be inquired into on the question of compensatory damages. The imposition of tort remedies for "bad" breaches of commercial contracts is a substantial deviation from the traditional approach which was blind to the motive for the breach.

SUMMARY:

CALIFORNIA OFFICIAL REPORTS SUMMARY

Plaintiff corporation entered into a subcontract with defendant general contractor, which was involved in a general contract to provide military equipment to Saudi Arabia. Plaintiff agreed to procure certain equipment from a manufacturer and, with the general contractor's approval, issued a purchase order for the equipment. The general contractor subsequently decided to obtain some of the equipment directly from the manufacturer, thereby reducing the corporation's commission under the subcontract. The corporation sued the general contractor and the manufacturer for breach of contract (the subcontract and purchase order, respectively) and tortious interference, including conspiracy to interfere, with those contracts. After a jury trial, the trial court entered judgment in favor of plaintiff against both defendants for contract damages for breach of, and tort damages for conspiracy to interfere with, the contracts. Punitive damages were also assessed against the general contractor. (Superior Court of Los Angeles County, No. C579970, Madeleine Flier, Judge.) The Court of Appeal, Second Dist., Div. One, No. B055278, affirmed the contract awards, but it reversed the tort judgments for inconsistency in the jury's verdicts. However, it rejected the manufacturer's argument that the manufacturer could not, as a matter of law, be liable for conspiring to interfere with its own contract. The manufacturer sought review.

The Supreme Court reversed the judgment of the Court of Appeal and remanded the matter with instructions to direct further proceedings in the trial court. The court held that the manufacturer could not be liable for conspiring to interfere with its own contract. The fundamental differences between contract and tort are obscured by the imposition of tort liability on a contracting party for conspiracy to interfere with the contract. Whether or not a stranger to the contract induces its breach, the essential character of a contracting party's conduct remains the same, i.e., an unjustified failure or refusal to perform. In economic terms, the impact is identical: the plaintiff has lost the benefit of the bargain and is entitled to recover compensation in the form of contract damages. In ethical terms, the mere entry of a stranger onto the scene does not render the contracting party's breach more socially or morally reprehensible. Further, imposing tort damages would thwart the legal policy of limiting contract damages to those reasonably foreseeable by the parties. (Opinion by Lucas, C. J., with Kennard, Arabian, Baxter and George, JJ., and Ramirez, J.,* concurring. Separate dissenting opinion by Mosk, J.)

   * Presiding Justice, Court of Appeal, Fourth Appellate District, Division Two, assigned by the Acting Chairperson of the Judicial Council.

HEADNOTES

7 Cal. 4th 503, \*; 869 P.2d 454, \*\*;
28 Cal. Rptr. 2d 475, \*\*\*; 1994 Cal. LEXIS 1216

**CALIFORNIA OFFICIAL REPORTS HEADNOTES**
Classified to California Digest of Official Reports

**(1) Conspiracy § 12—Civil—Basis of Tort Liability—Coequal Tort Liability of Coconspirators.** —Civil conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability coequal with the immediate tortfeasors. Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort. A civil conspiracy, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed, resulting in damage. A bare agreement among two or more persons to harm a third person cannot injure the third person unless and until acts are actually performed pursuant to the agreement. Therefore, it is the acts done and not the conspiracy to do them that should be regarded as the essence of the civil action.

**(2) Conspiracy § 12—Civil—Elements of Action.** --The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to the plaintiff from an act or acts done in furtherance of the common design. In such an action, the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he or she was a direct actor and regardless of the degree of his or her activity. By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty.

**(3) Interference § 2—Interference With Contract Relationship—By Noncontracting Parties.** —California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract. A stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract. To recover in tort for intentional interference with the performance of a contract, a plaintiff must prove (1) a valid contract between plaintiff and another party, (2) defendant's knowledge of the contract, (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage. In this way, the expectation that the parties will honor the terms of the contract is protected against officious intermeddlers. However, consistent with the state's underlying policy of protecting the expectations of contracting parties against frustration by outsiders who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with contract does not lie against a party to the contract.

**(4a) (4b) (4c) Interference § 2—Interference With Contract Relationship—Tort Liability of Party to Contract Based on Conspiracy to Interfere With Its Own Contract: Conspiracy § 2—Civil.** —On appeal of a judgment in favor of plaintiff for contract and tort damages for conspiracy to interfere with a contract that had been entered into between plaintiff and defendant, the Court of Appeal erred in concluding that defendant could be liable for conspiring to interfere with its own contract. The fundamental differences between contract and tort are obscured by the imposition of tort liability on a contracting party for conspiracy to interfere with the contract. Whether or not a stranger to the contract induces its breach, the essential character of a contracting party's conduct remains the same—an unjustified failure or refusal to perform. In economic terms, the impact is identical—the plaintiff has lost the benefit of a bargain and is entitled to recover compensation in the form of contract damages. In ethical terms, the mere entry of a stranger onto the scene does not render the contracting party's breach more socially or morally reprehensible. Further, imposing tort liability would thwart the legal policy of limiting contract damages to those reasonably foreseeable by the parties. (Disapproving to the extent they hold that a party to a contract can be held liable in tort based on a conspiracy to interfere with its own contract: *Shapoff v. Scull* (1990) 222 Cal.App.3d 1457 [272 Cal.Rptr. 480]; *Manor Investment Co. v. F. W. Woolworth Co.* (1984) 159 Cal.App.3d 586 [206 Cal.Rptr. 37]; *Rosenfeld, Meyer & Susman v. Cohen* (1983) 146 Cal.App.3d 200 [194 Cal.Rptr. 180]; *Owens v. Palos Verdes Monaco* (1983) 142 Cal.App.3d 855 [191 Cal.Rptr. 381]; *Owens v. Foundation for Ocean Research* (1980) 107 Cal.App.3d 179 [165 Cal.Rptr. 571]; *Olivet v. Frischling* (1980) 104 Cal.App.3d 831 [164 Cal.Rptr. 87]; *Mayes v. Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69 [154 Cal.Rptr. 43]; *Wetherton v. Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168 [79 Cal.Rptr. 543]; *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50 [35 Cal.Rptr. 652].)

[See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 651.]

**(5) Contracts § 1—Distinguished From Tort—Purpose of Action: Torts § 2—Definitions and Distinctions.** —Contract and tort are different branches of law. Contract

7 Cal. 4th 503, *; 869 P.2d 454, **;
28 Cal. Rptr. 2d 475, ***; 1994 Cal. LEXIS 1216

law exists to enforce legally binding agreements between parties; tort law is designed to vindicate social policy. Whereas contract actions are created to protect the interest in having promises performed, tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law. They are based primarily on social policy, and not necessarily on the will or intention of the parties. Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law. The law imposes the obligation that every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his or her rights. This duty is independent of the contract. An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.

**(6) Contracts § 1--Distinguished From Tort--Damages: Torts § 2--Definitions and Distinctions.** --The differences between contract and tort give rise to distinctions in assessing damages and in evaluating underlying motives for particular courses of conduct. Contract damages seek to approximate the agreed-upon performance. In the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance. Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectations of the parties are not recoverable. This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise. In contrast, tort damages are awarded to compensate the victim for injury suffered. For the breach of an obligation not arising from contract, the measure of damages is the amount that will compensate for all the detriment proximately caused thereby.

**(7) Damages § 15--Measure of Damages--For Breach of Contract--Emotional Distress and Punitive Damages.** --Damages for mental suffering and emotional distress generally are not compensable in contract actions. Similarly, punitive or exemplary damages, which are designed to punish and deter statutorily defined types of wrongful conduct, are available only in actions for breach of an obligation not arising from contract. In the absence of an independent tort, punitive damages may not be awarded for breach of contract even where the defendant's conduct in breaching the contract was willful, fraudulent, or malicious. Within the different spheres of contract and tort, motivations for conduct are also treated differently. In an intentional tort action, motives amounting to malice, oppression, or fraud may justify punitive damages. But the law generally does not distinguish between good and bad motives for breaching a contract. In traditional contract law, the motive of the breaching party generally has no bearing on the scope of damages that the injured party may recover for a breach of the implied covenant of good faith and fair dealing; the remedies are limited to contract damages.

**COUNSEL:** Arthur W. Homan, Bronson, Bronson & McKinnon, Robert J. Stumpf, Jr., and David Eiseman for Defendants and Appellants.

Jennie M. Crowley, Victoria Thomas McGhee, John W. Patton, Jr., Dilworth, Paxson, Kalish & Kauffman, Cutler & Cutler, Felice R. Cutler and Robert A. Philipson as Amici Curiae on behalf of Defendants and Appellants.

Hillel Chodos and Michael A. Chodos for Plaintiff and Respondent.

**JUDGES:** Opinion by Lucas, C. J., with Kennard, Arabian, Baxter and George, JJ., and Ramirez, J.,* concurring. Separate dissenting opinion by Mosk, J.)

> \*    Presiding Justice, Court of Appeal, Fourth Appellate District, Division Two, assigned by the Acting Chairperson of the Judicial Council.

**OPINION BY:** LUCAS, C. J.

**OPINION**

[*507] [**455] [***476] Can a contracting party be held liable in tort for conspiracy to interfere with its own contract? Following a line of appellate cases, the [*508] Court of Appeal answered this question in the affirmative. Our study of applicable precedent and policy yields a contrary answer. We will therefore reverse the judgment of the Court of Appeal.

FACTS AND PROCEEDINGS BELOW

Plaintiff Applied Equipment Corporation (Applied) entered into a subcontract with defendant Litton Saudi Arabia Limited (Litton) calling for Applied to procure and supply to Litton spare parts that Litton needed to perform Litton's general contract to provide a military defense communication and control system to the Kingdom of Saudi Arabia. Applied was to be compensated under the subcontract on a commission basis--it was entitled to receive a 26 percent markup on the price of items purchased for Litton.

As part of its performance of the subcontract, Applied agreed to procure VA-145E electron tubes--custom-made products manufactured only by defendant

Varian Associates Inc. (Varian). With Litton's approval, Applied ordered from Varian 11 VA-145E tubes at a price of $67,500 per unit. Applied issued a purchase order to Varian; Varian accepted and acknowledged the order.

Five months after Litton approved the purchase, two members of its finance department criticized the $190,000 markup earned by Applied on the tube purchase and recommended in an internal memorandum that "this situation be reviewed in order to determine [**456] [***477] how Litton might avoid payment of the $190,000."

Litton subsequently contacted Varian directly and renegotiated the Applied/Varian purchase order, eventually obtaining Varian's agreement to sell 12 tubes (rather than 11) at $62,500 each. Six tubes were sold to Applied (subject to the markup in the subcontract); the remaining six were sold directly to Litton (without the markup). The renegotiated purchase order, which resulted in a reduction in Applied's commission, was presented to Applied by Varian as a fait accompli.

Applied sued Litton and Varian for breach of their respective contracts (i.e., the subcontract and the purchase order), and for tortious interference (including conspiracy to interfere) with those contracts. Applied claimed two items of damage: (1) the difference in lost markup, calculated at $81,250; [*509] and (2) lost profits arising out of Litton's alleged "failure to renew" Applied's subcontract because of what Applied calls "the Varian tube incident," in the purported amount of $2.5 million. [1]

> 1 We intimate no view as to the legal sufficiency of Applied's claim for lost profits.

There was some confusion at trial regarding Applied's conspiracy theory. Applied argued its conspiracy claim was based on a single conspiracy between Varian and Litton to interfere with each company's contractual relations. Varian, however, maintained that there were in effect two separate conspiracy claims: one for conspiracy to interfere with the purchase order and another for conspiracy to interfere with the subcontract. Adopting Applied's view, the court submitted five claims to the jury: (1) breach of the purchase order by Varian; (2) interference with the purchase order by Litton; (3) breach of the subcontract by Litton; (4) interference with the subcontract by Varian; and (5) conspiracy to interfere with undifferentiated "contractual relations."

After a three-week trial and several days of deliberations, the jury returned a complex verdict. The trial court ultimately entered judgment in favor of Applied and against Varian and Litton for contract damages of $112,531.25 ($81,250 plus prejudgment interest) and tort damages of $2.5 million for conspiracy to interfere with contract. Litton was also assessed $12.5 million in punitive damages.

On appeal, the Court of Appeal affirmed the contract awards, but reversed the tort judgments for inconsistency in the jury's verdicts. It rejected Varian's argument that Varian could not, as a matter of law, be held liable for conspiring to interfere with its own contract. [2] Varian sought review in this court, limited to the single issue now before us. [3]

> 2 Contrary to Applied's suggestion of procedural irregularity, Varian is not barred from raising the conspiracy issue in this court. Without objection by Applied, the issue was fully briefed, argued by the parties, and decided on its merits in the Court of Appeal. Accordingly, Applied has waived any purported procedural barriers to its presentation here. (See *Schroeder v. Auto Driveway Co.* (1974) 11 Cal.3d 908, 918, fn. 7 [114 Cal.Rptr. 622, 523 P.2d 662].) Moreover, as Applied itself concedes, Varian's objection to submission of a conspiracy theory was preserved in accordance with section 647 of the Code of Civil Procedure, which provides for automatic exceptions to jury verdicts and instructions.
>
> 3 Litton did not petition for review; the judgment of the Court of Appeal is now final as to Litton. Although we have granted Litton leave to file a brief in this court as amicus curiae, we intimate no view regarding the effect of Litton's failure to petition for review on its status in further proceedings in this case, e.g., in light of the doctrines of res judicata and law of the case.

[*510] DISCUSSION

In *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 71-72 [35 Cal.Rptr. 652] (hereafter Wise), the Court of Appeal addressed the question now before us. Noting the absence of clear case law in California and a split in authority from other jurisdictions, the court held that one contracting party, by use of a conspiracy theory, could impose liability on another for the tort of interference with contract. Without substantial discussion, it concluded that conspiracy liability in this context was both consistent with the "principle that all who are involved in the common scheme are jointly and severally responsible for the ensuing wrong" and also "consonant with good morals." (*Ibid.*)

[**457] [***478] Wise has been uncritically accepted and applied in several subsequent appellate decisions. ( *Shapoff v. Scull* (1990) 222 Cal.App.3d 1457, 1465 [272 Cal.Rptr. 480]; *Manor Investment Co. v. F. W. Woolworth Co.* (1984) 159 Cal.App.3d 586, 594 [206

Cal.Rptr. 37]; *Rosenfeld, Meyer & Susman v. Cohen (1983) 146 Cal.App.3d 200, 226 [194 Cal.Rptr. 180]; Owens v. Palos Verdes Monaco (1983) 142 Cal.App.3d 855, 872 [191 Cal.Rptr. 381]; Owens v. Foundation for Ocean Research (1980) 107 Cal.App.3d 179, 185 [165 Cal.Rptr. 571]; Olivet v. Frischling (1980) 104 Cal.App.3d 831 [164 Cal.Rptr. 87]; Mayes v. Sturdy Northern Sales, Inc. (1979) 91 Cal.App.3d 69, 77-78 [154 Cal.Rptr. 43]; Wetherton v. Growers Farm Labor Assn. (1969) 275 Cal.App.2d 168, 176-177 [79 Cal.Rptr. 543].*) However, as the Court of Appeal observed in its opinion in this case, we have never endorsed the rule of *Wise* in a manner that would constitute binding precedent. (See *Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].*)

Our review leads us to reject the rule of *Wise* because: (1) it illogically expands the doctrine of civil conspiracy by imposing tort liability for an alleged wrong--interference with a contract--that the purported tortfeasor is legally incapable of committing; and (2) it obliterates vital and established distinctions between contract and tort theories of liability by effectively allowing the recovery of tort damages for an ordinary breach of contract. As explained more fully below, our conclusions in this regard are shared by the better-reasoned cases in other jurisdictions and supported by applicable policy considerations.

1. *CONSPIRACY*

(1) [HN1]Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, [*511] share with the immediate tortfeasors a common plan or design in its perpetration. ( *Wyatt v. Union Mortgage Co. (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45].*) By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. (*Ibid.*) In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort. " 'A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage.' " ( *Doctors' Co. v. Superior Court (1989) 49 Cal.3d 39, 44 [260 Cal.Rptr. 183, 775 P.2d 508]* [hereafter *Doctors' Co.*], citing *Unruh v. Truck Insurance Exchange (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063].*) "A bare agreement among two or more persons to harm a third person cannot injure the latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action." (Note, *Civil Conspiracy and Interference With Contractual Relations* (1975) 8 Loyola L.A. L.Rev. 302, 308, fn. 28 [hereafter Note].)

(2) [HN2]We have summarized the elements and significance of a civil conspiracy: " 'The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. . . . In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.' " (*Doctors' Co., supra,* 49 Cal.3d at p. 44, citing *Mox Incorporated v. Woods (1927) 202 Cal. 675, 677-678 [262 P. 302].*)

[HN3]By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty. This follows from two distinct lines of conspiracy cases.

[**458] [***479] In *Gruenberg v. Aetna Ins. Co. (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032]*, the insured sued, as agents of its insurer, an insurance adjusting firm and one of its employees who had processed the insured's claim on the insurer's behalf. We declined to impose liability on the [*512] adjusting firm and its employee for tortious breach of the covenant of good faith and fair dealing. In explaining our decision, we relied on two independent principles: (1) the "non-insurer defendants were not parties to the agreements for insurance; therefore, they [were] not, as such, subject to an implied duty of good faith and fair dealing"; and (2) duly acting agents and employees cannot be held liable for conspiring with their own principals (the "agent's immunity rule"). (*Ibid.*) [4]

> 4   The agent's immunity rule emanates from a further holding in *Wise* that: "Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." (*Wise, supra,* 223 Cal.App.2d at p. 72.) The rule "derives from the principle that ordinarily corporate agents and employees acting for or on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged." ( at pp. 72-73.) We have endorsed and applied the agent's immunity rule as ex-

pressed in *Wise* (e.g., *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 24-25 [276 Cal.Rptr. 303, 801 P.2d 1054]; *Gruenberg, supra,* 9 Cal.3d at p. 576; *Doctors' Co., supra,* 49 Cal.3d at p. 45). Nothing in this decision is intended to abrogate or impair the agent's immunity rule.

In *Doctors' Co., supra,* we followed *Gruenberg* in holding that an attorney and an expert witness could not be held liable as coconspirators with the insurer employing them for an alleged violation of statutory provisions prohibiting unfair insurance claims practices. (Ins. Code, § 790.03.) Although, as in *Gruenberg,* we relied in part on the agent's immunity rule, we also emphasized that the statutory duties in question were owed solely by the insurer and therefore could not give rise to conspiracy liability against noninsurers. In this regard, we stated: "*A cause of action for civil conspiracy may not arise, however, if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing . . .*" (*Doctors' Co., supra,* 49 Cal.3d at p. 44, italics added.)

To illustrate the point, we referred with approval to *Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498 [169 Cal.Rptr. 478]. In *Younan,* plaintiff alleged a conspiracy among his insurer and two of the insurer's agents to deprive plaintiff of disability insurance benefits. According to plaintiff, defendants falsely represented that plaintiff would be examined by a medical doctor who would objectively consider plaintiff's claim for benefits. The truth, in plaintiff's view, was that defendant had arranged for plaintiff to be examined by a psychiatrist who had agreed in advance with defendants to render a false report for the purpose of justifying the insurer's similarly preconceived decision to deny benefits. The agents were held subject to liability for actual fraud because they shared with the insurer the "duty to abstain from injuring the plaintiff through express misrepresentation," but were relieved of liability for constructive fraud because that claim "rested on a fiduciary duty of [*513] disclosure which was owed plaintiff only by the insurer itself." (*Doctors' Co., supra,* 49 Cal.3d at p. 48.)

In a second line of cases, our courts have employed similar reasoning in refusing to impose conspiracy liability on defendants who were legally incapable of committing the actual tort because of a statutorily created immunity from suit. In *Hardy v. Vial* (1957) 48 Cal.2d 577 [311 P.2d 494, 66 A.L.R.2d 739], plaintiff was discharged from his position as a professor at Long Beach State College. After obtaining reinstatement following proceedings before the State Personnel Board, plaintiff sued two groups of defendants for malicious prosecution: (1) the "school defendants," who were agents of the college or the State Department of Education; and (2) the "non-school defendants," who were not affiliated with those government entities.

We initially concluded that the "school defendants" were absolutely immune from liability [**459] [***480] for malicious prosecution because they were performing official investigative duties. ( *Hardy v. Vial, supra,* 48 Cal.2d at pp. 582-583.) In response to plaintiff's argument that the school defendants were also liable as coconspirators with the nonschool defendants, we refused to subject the school defendants to liability for a tort they could not legally commit. As we observed: "The fact that the school defendants sought to attain their objective by acting in concert with other persons cannot properly be treated as destroying the immunity which they would have if each of them had acted individually and independently of any other person to secure the same result. The underlying theory of absolute immunity is equally applicable whether the employee acts by himself or with others who are not immune." ( at pp. 583-584.)

*Hardy* was followed in a recent appellate case upholding the statutory immunity of persons reporting incidents of child abuse notwithstanding allegations of conspiracy with others. ( *McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1406 [261 Cal.Rptr. 437].) As the court explained in *McMartin*: "A conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve. [Citation.] As long as the underlying wrongs are subject to privilege, defendants cannot be held liable for a conspiracy to commit those wrongs. Acting in concert does not destroy the immunity of defendants." (*Ibid.*)

(3) California recognizes a cause of action against *noncontracting parties* who interfere with the performance of a contract. "It has long been held that *a stranger to a contract* may be liable in tort for intentionally interfering with the performance of the contract." ( *Pacific Gas & Electric Co. v. Bear* [*514] *Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587], italics added.) [5]

   5   [HN4]To recover in tort for intentional interference with the performance of a contract, a plaintiff must prove: (1) a valid contract between plaintiff and another party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Ibid.*) In this way, the "expectation that the parties will honor the terms of the contract is protected against officious intermeddlers." ( Id. at p. 1128.)

7 Cal. 4th 503, \*; 869 P.2d 454, \*\*;
28 Cal. Rptr. 2d 475, \*\*\*; 1994 Cal. LEXIS 1216

[HN5]However, consistent with its underlying policy of protecting the expectations of contracting parties against frustration *by outsiders* who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with contract does not lie against a party to the contract. ( *Shoemaker v. Myers, supra,* 52 Cal.3d at pp. 24-25; Kelly v. General Telephone Co. (1982) 136 Cal.App.3d 278, 288 [186 Cal.Rptr. 184]; Dryden v. Tri-Valley Growers (1977) 65 Cal.App.3d 990, 998 [135 Cal.Rptr. 720].)

(4a) Applied's conspiracy theory is fundamentally irreconcilable with the law of conspiracy and the tort of interference with contract as just discussed. [HN6]One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms. The tort duty not to interfere with the contract falls only on strangers--interlopers who have no legitimate interest in the scope or course of the contract's performance.

The invocation of conspiracy does not alter this fundamental allocation of duty. Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles. (*Doctors' Co., supra,* 49 Cal.3d 39; *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566; *Hardy* v. *Vial, supra,* 48 Cal.2d 577.) Because a party to a contract owes no tort duty to refrain from interference with its performance, he or she cannot be bootstrapped into tort liability by the pejorative plea of conspiracy.

2. *CONTRACT AND TORT*

(5) [HN7]Contract and tort are different branches of law. Contract law exists to enforce [\*\*460] [\*\*\*481] legally binding agreements between parties; tort law is designed to vindicate social policy. ( *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 [254 Cal.Rptr. 211, 765 P.2d 373].) We have described the [\*515] essential difference between contract and tort law as follows: "As Professor Prosser has explained: '[Whereas] [c]ontract actions are created to protect the interest in having promises performed,' '[t]ort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily on social policy, and not necessarily based upon the will or intention of the parties . . ..' " ( *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].)

[HN8]Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law. "The law imposes the obligation that 'every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights.' ( Sec. 1708, Civ. Code.) This duty is independent of the contract . . . . '[A]n omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.' " ( *Jones v. Kelly* (1929) 208 Cal. 251, 255 [280 P. 942].)

(6) [HN9]The differences between contract and tort give rise to distinctions in assessing damages and in evaluating underlying motives for particular courses of conduct. Contract damages seek to approximate the agreed-upon performance. "[I]n the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 813, p. 732; see also *Peterson v. Larquier* (1927) 84 Cal.App. 174, 179 [257 P. 873].) "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.)

[HN10]Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectations of the parties are not recoverable. (Civ. Code, § 3300; *Mitchell v. Clarke* (1886) 71 Cal. 163 [11 P. 882]; *Brandon & Tibbs* v. *George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 455-456 [277 Cal.Rptr. 40]; Menodoyoma, Inc. v. County of Mendocino (1970) 8 Cal.App.3d 873, 879 [87 Cal.Rptr. 740] [applying the rule of *Hadley v. Baxendale* (1884 Ex.) 156 Eng.Rep. 145 to contract damages recoverable under Civ. Code, § 3300]; see also Note, supra, 8 Loyola L.A. L.Rev. at pp. 323-328.) This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise. [\*516] [HN11]

In contrast, tort damages are awarded to compensate the victim for injury suffered. (6 Witkin, Summary of Cal. Law, *supra,* Torts, § 1319 at p. 776.) "For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.)

(7) Consistent with the distinctions just discussed, [HN12]damages for mental suffering and emotional distress are generally not compensable in contract actions. (

*Sawyer v. Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623].) Similarly, punitive or exemplary damages, which are designed to punish and deter statutorily defined types of wrongful conduct, are available only in actions "for breach of an obligation *not* arising from contract." (Civ. Code, § 3294, subd. (a), italics added.) In the absence of an independent tort, punitive damages may not be awarded for breach of contract "even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious." ( *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 959 [17 Cal.Rptr.2d 242]; see *Crogan* [**461]    [***482] *v. Metz (1956) 47 Cal.2d 398, 405 [303 P.2d 1029].)*

Within the different spheres of contract and tort, motivations for conduct are also treated differently. [HN13]In an intentional tort action, motives amounting to malice, oppression, or fraud may justify punitive damages. (Civ. Code, § 3294.) But the law generally does not distinguish between good and bad motives for breaching a contract. "[I]n traditional contract law, the *motive* of the breaching party generally has no bearing on the scope of damages that the injured party may recover for the breach of the implied covenant [of good faith and fair dealing]; the remedies are limited to contract damages." ( *Foley v. Interactive Data Corp., supra,* 47 Cal.3d at p. 699, italics in original.) "Varying personal or economic reasons motivate one to breach his contract, but the general rule is that . . . motives . . . are immaterial and cannot be inquired into on the question of compensatory damages." (Note, *supra,* 8 Loyola L.A. L.Rev. at p. 327; see also *Harris v. Atlantic Richfield Co.* (1993) 14 Cal.App.4th 70, 82 [17 Cal.Rptr.2d 649] ["The imposition of tort remedies for 'bad' breaches of commercial contracts is a substantial deviation from the traditional approach which was blind to the motive for the breach."].)

(4b) The fundamental differences between contract and tort are obscured by the imposition of tort liability on a contracting party for conspiracy to interfere with contract. Whether or not a stranger to the contract induces its breach, the essential character of a contracting party's conduct remains the [*517] same--an unjustified failure or refusal to perform. In economic terms, the impact is identical--plaintiff has lost the benefit of a bargain and is entitled to recover compensation in the form of contract damages. In ethical terms, the mere entry of a stranger onto the scene does not render the contracting party's breach more socially or morally reprehensible. A party may breach a contract without any third party inducement because of personal, racial, or ethnic animus, or for other nefarious or unethical reasons. In contrast, a breach may be the product of naive or innocent misunderstanding or misperception created by the aggressive solicita-

tion of an outsider. In any case, motivation is irrelevant. Regardless of the presence or absence of third party involvement, the contracting party has done nothing more socially opprobrious than to fall short in meeting a contractual commitment. Only contract damages are due.

The imposition of tort liability in these circumstances also thwarts legal rules and policies limiting contract damages to those sums reasonably foreseeable to the contracting parties. As a law review commentator observes: "While the imposition of liability in tort upon the non-party interferer may be justified in all cases for his intentional disruption of the contractual relation, the party who merely breaches his contract should in all cases be exposed only to contractual liability as he has not assumed the role of an intentional interferer. To impose tort liability upon the contract breaker because of the involvement of a third person (when liability is limited to contract damages when the contract breaker is acting alone) undermines the policies which have developed limited contractual liability." (Note, *supra,* 8 Loyola L.A. L.Rev. at p. 328.)

In its brief in this court, Applied acknowledges the vital commercial importance of foreseeability limitations on contract damages: "[W]hen two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law."

We agree with Applied's summary of contract law. In its contract with Applied, Varian assumed only the obligation to perform the contract or pay damages for breach. It did not assume the independent tort obligation [**462]    [***483] not to [*518] interfere with the performance of its own contract. Accordingly, Varian is legally responsible only in contract, not in tort.

### 3. *OTHER JURISDICTIONS*

The *Wise* court noted a division in the non-California cases dealing with the issue now before us. (223 Cal.App.2d at pp. 71-72.) The cases cited by the parties, as well as those disclosed by our own research, reveal continuing disagreement without either a clear majority rule or a discernible trend. Over half the state appellate courts have not squarely considered and decided the issue; of the remainder, few have supplied any

7 Cal. 4th 503, \*; 869 P.2d 454, \*\*;
28 Cal. Rptr. 2d 475, \*\*\*; 1994 Cal. LEXIS 1216

legal reasoning or analysis in support of their conclusions.

The New York cases consistently affirm that a party to a contract cannot be sued in tort for conspiracy to interfere with the contract. (See, e.g., *Sharma v. Skaarup Ship Management Corp.* (S.D.N.Y. 1988) 699 F.Supp. 440, 445, affd. (2d Cir. 1990) 916 F.2d 820, cert. den. (1991) 499 U.S. 907 [113 L.Ed.2d 218, 111 S.Ct. 1109] ["[U]nder New York law a party to a contract is not liable to another contracting party for conspiracy to breach the contract."]; *Ariate Compania Nav., S.A. v. Commonwealth of Tankship O.* (S.D.N.Y. 1968) 310 F.Supp. 416, 421 ["one contracting party does not have a cause of action against the other for conspiring to breach the contract or for inducing the breach"]; *North Shore Bottling Co. v. C. Schmidt & Sons, Inc.* (1968) 22 N.Y.2d 171 [292 N.Y.S.2d 86, 239 N.E.2d 189, 193] [" '[O]ne does not have a cause of action against another contracting party for conspiracy to breach the agreement between them'."].)

One federal court explained the reason for New York's no-conspiracy-liability rule as follows: "The rationale is that, since plaintiff's damages can be recovered in an action for breach contract, the contract action constitutes plaintiff's entire grievance . . . , and *plaintiff may not thus seek to add a claim in tort, the effect of which will be to enable recovery of punitive damages in a contract action, a result specifically precluded by New York statute.*" (*Savarin Corporation v. National Bank of Pakistan* (S.D.N.Y. 1968) 290 F.Supp. 285, 291, affd. (2d Cir. 1971) 447 F.2d 727, italics added; see also *Canister Co. v. National Can Corp.* (D.Del. 1951) 96 F.Supp. 273, 274 [offering same rationale for the New York rule].)

Other federal and state courts have also refused to sustain claims for conspiracy to interfere with contractual relations brought against parties to [\*519] the contract. [6] To the contrary, some jurisdictions have adopted the rule of *Wise* or its equivalent, thereby permitting actions in tort against a contracting party for conspiracy to interfere with the contract. [7]

> 6 See, for example, *White v. Land Clearance for Redevelopment Authority* (Mo.Ct.App. 1992) 841 S.W.2d 691, 695 ("A party to the contract cannot be held responsible for inducing himself to commit a breach or for conspiring to breach it. To hold otherwise would be tantamount to permitting recovery of punitive damages in a contract action . . .."); *Schell v. Kaiser-Frazer Sales Corp.* (1971) 28 OhioApp.2d 16 [57 Ohio Op.2d 9, 274 N.E.2d 315, 319]; *Koehler v. Cummings* (M.D.Tenn. 1971) 380 F.Supp. 1294, 1313-1314 ("If a party cannot be liable for inducing the breach of his own contract, it is similarly difficult to understand how he might be liable for participating in a conspiracy to induce the breach of his own contract"; applying Tennessee law); *Mason v. Funderburk* (1969) 247 Ark. 521 [446 S.W.2d 543, 550]; *Harris v. Equitable Life Assurance Society* (S.D.Iowa 1957) 147 F.Supp. 478 (" '. . . Charges that a party colluded or conspired with others in connection with its breach will not serve to convert what is essentially a separable cause of action for a breach of contract into a joint cause of action for tort."); *Barber v. Stephenson* (1953) 260 Ala. 151 [69 So.2d 251, 255] ("[I]t is generally held that an action for conspiring with another to induce the latter to break his contract cannot be maintained, the remedy being to sue on it.").
>
> 7 See, for example, *Fox v. Deese* (1987) 234 Va. 412 [362 S.E.2d 699, 708]; *Boyles v. Thompson* (Tex.Civ.App. 1979) 585 S.W.2d 821, 836; *National Linen v. Clower* (1934) 179 Ga. 136 [175 S.E. 460, 466]; *Beverly v. McCullick* (1973) 211 Kan. 87 [505 P.2d 624]; *Sorenson v. Chevrolet Motor Co.* (1952) 171 Minn. 260 [214 N.W. 754, 764-765, 84 A.L.R. 35].

The out-of-state cases generally contain little reasoning or analysis; those few recognizing the ongoing split of authority appear simply to "take a side." The New York rule, however, appears to be based on a statutory [\*\*463] [\*\*\*484] rule and policy we share in common with that state: Punitive damages are not recoverable except in actions for breach of obligations "*not* arising from contract." (Civ. Code, § 3294, italics added; *Savarin Corporation v. National Bank of Pakistan, supra*, 290 F.Supp. at p. 291.)

As the Court of Appeal explained in *Dryden v. Tri-Valley Growers, supra*, in refusing to hold contracting parties directly liable for interference with contract: "It is obvious that if an action is brought for interference with contractual relationship by one party to a contract against another who is also a party to that same contract, the grievance of the plaintiff is, in essence, breach of contract; and, in such case, plaintiff is entitled to recover all damages flowing from the breach. In *such an instance to allow the plaintiff to sue under the tort theory of wrongful interference with contractual rights would not only be superfluous, but would also enable him to recover tort damages (e.g., punitive damages, damages for mental suffering) to which he is not entitled under California law.*" (65 Cal.App.3d at p. 999, italics added.)

Like the New York courts, we decline to allow a conspiracy theory to accomplish an "end run" around the statutory rule that punitive damages are *per se* not recoverable in ordinary actions for breach of contract.

7 Cal. 4th 503, \*; 869 P.2d 454, \*\*;
28 Cal. Rptr. 2d 475, \*\*\*; 1994 Cal. LEXIS 1216

[\*520] 4. *OTHER CONSIDERATIONS*

Applied advances several additional arguments in defense of *Wise*. It first contends that tort liability in this context is consistent with the general rule of conspiracy that "all who are involved in the common scheme are jointly and severally responsible for the ensuing wrong." (*Wise, supra,* 223 Cal.App.2d at pp. 71-72.) According to Applied's argument, this is a case in which "the third party's interference violates duties owed to the plaintiff entirely unrelated to the contract." As we have observed in part 1, *ante,* however, the doctrine of conspiracy does not impose liability on persons who owe *no duty* to a plaintiff or who are otherwise immune from liability. A party to a contract owes no tort duty to a coparty not to interfere with the contract. Conspiracy cannot create such a duty.

Applied also maintains that the imposition of tort liability on contracting parties promotes essential stability in contractual relationships. We disagree. As a practical matter, it is difficult, if not impossible, for a third party to induce a breach of contract without communicating with the contracting party. Therefore, any and every induced breach creates a potentially triable conspiracy case against the contracting party. In this way, the potential consequences of any breach of contract--efficient or inefficient, socially desirable or undesirable-- become uncertain and unpredictable. Tort liability may or may not follow, depending upon a myriad of imponderable factors. As a result, a business fearful of unfathomable tort exposure might lose the ability to respond flexibly to changing economic conditions or hesitate to enter into contracts at all in fast-moving aspects of commercial enterprise. (Cf. *Foley v. Interactive Data Corp., supra,* 47 Cal.3d at pp. 696-697 & fn. 33.) Another business, reasonably viewing the prospect of significant tort liability as remote, might not react at all. Tort liability in this context would more likely produce uncertainty, not stability, in commercial dealings.

A breaching party already has a legal incentive to perform--the likely prospect of liability for breach of contract. We perceive no additional value, and significant additional uncertainty, from the imposition of tort damages on a contracting party in this instance. '

8  The tort of interference with contract--which cannot be committed by a contracting party--is different in this respect from other kinds of business torts. Liability for deceit, for example, may be imposed on contracting parties as well as others: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." (Civ. Code, § 1709.) We do not suggest that the doctrine of conspiracy cannot impose tort liability on a contracting party for fraud or other torts for which that party could, in the absence of a conspiracy, be held liable to a plaintiff.

Finally, Applied correctly observes that this case involves not one contract but two--the Applied/Litton subcontract and the Applied/Varian [\*\*464] [\*\*\*485] purchase [\*521] order. Nothing we have said suggests that Litton may not be held liable for direct interference with the Applied/Varian purchase order (to which it was not a party) or that Varian may not be held liable for direct interference with the Applied/Litton subcontract (to which it was not a party), provided that each of the elements of the tort of interference with contract is satisfied. ' We offer no opinion as to whether those elements can be satisfied in this case; we hold only that Varian may not be held liable to Applied for conspiracy to interfere with Varian's own contract--the Applied/Varian purchase order. [10] (4c) (See fn. 10.)

9  The elimination or confinement of conspiracy theories in cases like this one may also have the salutary effect of simplifying complex trials. The complicated character of the special verdict forms in this case, resulting in part from the overlapping conspiracy theories, undoubtedly contributed to jury confusion and verdict inconsistency, mandating an expensive and difficult retrial.

10  We disapprove all prior cases to the extent they hold that a party to a contract can be held liable in tort based on a conspiracy to interfere with its own contract, including each of the following: *Shapoff v. Scull, supra, 222 Cal.App.3d 1457; Manor Investment Co. v. F. W. Woolworth Co., supra, 159 Cal.App.3d 586; Rosenfeld, Meyer & Susman v. Cohen, supra, 146 Cal.App.3d 200; Owens v. Palos Verdes Monaco, supra, 142 Cal.App.3d 855; Owens v. Foundation for Ocean Research, supra, 107 Cal.App.3d 179; Olivet v. Frischling, supra, 104 Cal.App.3d 831; Mayes v. Sturdy Northern Sales, Inc., supra, 91 Cal.App.3d 69; Wetherton v. Growers Farm Labor Assn., supra, 275 Cal.App.2d 168; Wise v. Southern Pacific Co., supra, 223 Cal.App.2d 50.*

DISPOSITION

The judgment of the Court of Appeal is reversed. The case is remanded with instructions to direct further proceedings in the trial court in a manner consistent with this opinion.

Kennard, J., Arabian, J., Baxter, J., George, J., and Ramirez, J.,\* concurred.

7 Cal. 4th 503, \*; 869 P.2d 454, \*\*;
28 Cal. Rptr. 2d 475, \*\*\*; 1994 Cal. LEXIS 1216

\* Presiding Justice, Court of Appeal, Fourth Appellate District, Division Two, assigned by the Acting Chairperson of the Judicial Council.

**DISSENT BY:** MOSK, J.

**DISSENT**

I dissent.

Justice Sullivan, later on this court, wrote for the Court of Appeal in *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 74 [35 Cal.Rptr. 652], that a cause of action for civil conspiracy requires three allegations: (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto and (3) the resulting damage. Nowhere in those three requirements is there a limitation on or any grant of immunity from liability for anyone participating in a conspiracy.

A number of early cases have held a party to a contract liable for entering into a conspiracy with others to thwart the purposes of the contract. That one [\*522] of the conspirators had obligations to perform as a contracting party would seem to enhance rather than diminish his culpability.

A leading federal case declared: "If it be an actionable wrong for a third person to interfere in a contract and induce one of the parties thereto to break it to the injury of the other, can it be said it is not equally a wrong for one of the parties to the contract to invite a third party to unite with him and aid him in breaking the contract in such a way as possibly to escape liability in an action for nonperformance and, gaining his consent, to act together in consummating their agreement? There are many refinements in the law, necessarily so, but courts should be as astute in applying well-known principles of justice to remedy wrongs as the wrongdoers are in devising schemes to perpetrate them." ( *Motley, Green & Co. v. Detroit Steel & Spring Co. (S.D.N.Y. 1908) 161 F. 389, 397*.)

To the same effect is *Luke v. Du Pree* (1924) 158 Ga. 590 [124 S.E. 13, 16-17], in which the court anguished over the result: "It is unlawful for others, without lawful excuse, to induce the maker of a contract to break it, or to aid him in its breach; and for the maker and others to combine to break it is a conspiracy, which entitles the other party to the contract to his action against the conspirators for any damage which he may sustain [\*\*\*486] .... [\*\*465] [I]t may seem anomalous that, if a party to a contract breaks it, and is alone responsible for the breach, he can only be sued in an action ex contractu for the breach; but, if he breaks his contract, and another induces him to break it or conspires with him to break it, or aids him in breaking it, both can be sued ex delicto, on the theory that both are liable for a tort perpetrated in pursuance of a conspiracy to break the contract. But the tendency of modern decisions is to hold them liable as conspirators. This is in harmony with sound morals."

California followed the prevailing authorities in the country in *Wise v. Southern Pacific Co., supra, 223 Cal.App.2d at pages 71-72*: "We think that the better reasoned cases hold that an action for conspiracy to induce a breach of contract will lie against a party to the contract who is included among the defendant-conspirators. Such cases, in our view, rest solidly on the principle that all who are involved in the common scheme are jointly and severally responsible for the ensuing wrong. This of course is the broad formative principle in the California cases on conspiracy. . . . To hold the contracting party along with his confederates liable in tort seems to us not only to be within the compass of the above principle but also consonant with good morals. We perceive no fatal anomaly in the circumstance that the plaintiff may . . . seek relief in an independent cause of action on the [\*523] contract. It happens frequently that the wrongful act at the center of the controversy may partake of the nature of both tort and contract and in such event the wronged plaintiff may sue in tort for the wrongful invasion of his rights and also sue for breach of contract."

It would appear that until today the law was well settled in California on the liability of all parties to a conspiracy. No immunities have been recognized. No free conspiracies have been tolerated.

I realize, of course, that a denial of review by this court does not in and of itself constitute a precedent. However, when this court has consistently over a period of years denied review on a subject, certainly the bench and bar may, with reasonable confidence, rely on the law being well settled. [1] The following cases confirm that if we have not heretofore deemed the law clear on the conspiracy liability of a contracting party, then we have persistently misled the bench and bar:

> 1 There are other cases reaching the same conclusion, with no petition being made to this court, e.g., *California Auto Court Assn. v. Cohn* (1950) 98 Cal.App.2d 145, 156 [219 P.2d 511]: ". . . it is apparent that the plaintiff is not confined to an action ex contractu against the party with whom he contracted." Also *James v. Herbert* (1957) 149 Cal.App.2d 741 [309 P.2d 91].

*Shapoff v. Scull* (1990) 222 Cal.App.3d 1457, 1465 [272 Cal.Rptr. 480], ". . . a party to a contract may under some circumstances be held liable in tort for inducing a breach . . . when a party to a contract has conspired with a third party to breach a contract, the contracting party

7 Cal. 4th 503, \*; 869 P.2d 454, \*\*;
28 Cal. Rptr. 2d 475, \*\*\*; 1994 Cal. LEXIS 1216

may be held liable in tort as a coconspirator." Petition for review denied November 15, 1990.

*Manor Investment Co. v. F. W. Woolworth Co.* (1984) 159 Cal.App.3d 586, 594 [206 Cal.Rptr. 37], ". . . a contracting party may be held liable for conspiring with third parties to interfere with his own contractual relation." (Italics in original.) Petition for review denied October 31, 1984.

*Rosenfeld, Meyer & Susman v. Cohen* (1983) 146 Cal.App.3d 200, 225 [194 Cal.Rptr. 180], ". . . while a party to a contract may not be held liable in tort for interfering with his own contract by breaking it, he may be held liable in tort for interference with his own contract if he conspires with a third party to breach it." (Italics in original.) Petition for hearing denied November 9, 1983.

*Owens v. Palos Verdes Monaco* (1983) 142 Cal.App.3d 855, 872 [191 Cal.Rptr. 381] (citing with approval *Olivet v. Frischling* (1980) 104 Cal.App.3d 831, 838 [164 Cal.Rptr. 87]), ". . . it is accepted, at least in [\*524] California, that an action for conspiracy to induce a breach of contract will in fact lie against a party to the agreement. . .." Petition for hearing denied October 10, 1983.

*Owens v. Foundation for Ocean Research* (1980) 107 Cal.App.3d 179, 185 [165 Cal.Rptr. 571], "An action for civil conspiracy to induce breach of contract will lie against a party to [\*\*466] [\*\*\*487] the contract . . .." Petition for hearing denied August 27, 1980.

In none of the foregoing cases was a single justice's vote cast for granting a hearing or review except my lone vote to grant in *Owens v. Palos Verdes Monaco, supra.* I find it difficult to justify permitting Courts of Appeal to prescribe the law on this subject for more than a decade and now to abruptly change the law merely to insulate some conspirators--here a contracting party--from liability.

I would affirm the judgment of the Court of Appeal.