JACK RUSSO (State Bar No. 96068)
TIM C. HALE (State Bar No. 114905)
JOHN KELLEY (State Bar No. 100714)
RUSSO & HALE LLP
401 Florence Street
Palo Alto, CA 94301
Telephone: (650) 327-9800
Facsimile: (650) 327-3737
Email: jrusso@computerlaw.com
      thale@computerlaw.com
      jkelley@computerlaw.com

Attorneys for Defendants and Counterclaimants
ROMI MAYDER, SILICON TEST SYSTEMS, INC.,
SILICON TEST SOLUTIONS, LLC and WESLEY
MAYDER

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC., a Delaware Corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>ROMI MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>      Defendants.<br><br>AND RELATED CROSSCLAIMS. | Case No. 5:07-cv-04330-RMW (HRL)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION AND FOR MODIFICATION OF PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:   Hon. Ronald M. Whyte<br>Date:    August 15, 2008<br>Time:    9:00 a.m.<br>Dept.:   6<br><br>Complaint Filed: August 22, 2007<br>Trial Date: December 8, 2008 (jury trial)<br>(Defendants have elected to reserve their jury trial rights under F.R.C.P., Rule 38) |

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠ᴹ

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**

**Case No. 5:07-cv-04330-RMW (HRL)**

# TABLE OF CONTENTS

NOTICE OF MOTION.................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 2

ARGUMENT ............................................................................................................... 5

I.     DEFENDANTS ARE ENTITLED TO SUMMARY
ADJUDICATION ON PLAINTIFF'S LANHAM ACT CLAIM ........................... 7

     A.    The Standard for Summary Judgment
          Or Adjudication is Well-Settled ................................................................. 7

     B.    Verigy's Lanham Act Claim Requires "Bodily
          Appropriation," a Standard That Verigy
          Cannot Meet as a Matter of Law ................................................................. 7

     C.    The Court Should Summarily Adjudicate That
          Information Contained in Published Patents or
          Patent Applications Cannot Constitute Trade Secrets ................................ 7

II.    DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION
THAT INFORMATION CONTAINED IN PUBLISHED PATENTS OR
PATENT APPLICATIONS CANNOT CONSTITUTE TRADE SECRETS ........ 10

III.   THE PRELIMINARY INJUNCTION SHOULD BE
MODIFIED IN LIGHT OF *EBAY v. MERCEXCHANGE*................................... 11

     A.    *eBay* Changed the Rules for the Granting of Injunctive Relief. ............... 11

     B.    *eBay* Applies Equally in the Preliminary Injunction Context..................... 12

IV.   THE PRELIMINARY INJUNCTION SHOULD BE MODIFIED
BECAUSE IT PROVIDES VERIGY WITH GREATER RELIEF
THAN VERIGY COULD OBTAIN FOLLOWING TRIAL. ............................... 15

V.    TO PROMOT PUBLIC ACCESS TO
IMPORTANT TECHNOLOGYAND
TO BALANCE ALL OF THE EQUITIES,
THE PRELIMINARY INJUNCTION
SHOULD BE MODIFIED.............................................................................. 16

CONCLUSION.............................................................................................................20

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com℠

**Defs.' Mot. Summ. Adj. & Mod.**
**Prelim. Inj. Mem. P. & A. Supp.**

i

**Case No. 5:07-cv-04330-RMW (HRL)**

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Am. Med. Response, Inc. v. City of Stockton*

4
    2005 U.S. Dist. LEXIS 37336 (E.D. Cal. Sept. 16, 2005)....................................................... 15

5

*Bursese v. Paypal, Inc.*,
    2007 U.S. Dist. LEXIS 12785 (N.D. Cal. Feb. 12, 2007) ...................................................... 7

6

7

*Christopher Phelps & Assocs. L.L.C. v. Galloway*
    462 F.3d 532 (4th Cir. 2007) .................................................................................................... 14

8

9

*Cleary v. Newscorp*,
    30 F.3d 1255 (9th Cir. 1994) .................................................................................................... 8

10

11

*Conmar Prods. Corp. v. Universal Slide Fastener Co.*,
    172 F.2d 150 (2d Cir. 1949) ................................................................................................... 10

12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23, 123 S.Ct. 2041 (2003)................................................................................... 8-9

13

14

*eBay, Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388, 126 S.Ct. 1837 (2006).......................................................................... 11, 12

15

16

*Fogarty v. Fantasy, Inc.*
    510 U.S. 517, 114 S. Ct. 1023 (1994)................................................................................. 20

17

18

*Finisar Corp. v. DIRECTV Group, Inc.*,
    2006 U.S. Dist. LEXIS 76380 (E.D. Tex. July 7, 2006).................................................... 14

19

20

*Forcier v. Microsoft Corp.*,
    123 F.Supp.2d 520 (N.D. Cal. 2000) ................................................................................... 10

21

*Foster v. American Machine & Foundry Co.*
    492 F.2d 1317 (2d Cir. 1974) ............................................................................................... 13

22

23

*Hologic, Inc. v. Senorx, Inc.*
    2008 U.S. Dist. LEXIS 36693 (N.D. Cal., Apr. 25, 2008) ............................................... 13

24

25

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*
    4 F.3d 819 (9th Cir. 1993) ...................................................................................................... 18

26

*KSR Int'l. Co. v. Teleflex, Inc.*,
    __ U.S. __, 127 S.Ct. 1727 (2007)...................................................................................... 12

27

28

*MercExchange, L.L.C. v. eBay, Inc.*,
    500 F.Supp.2d 556 (E.D. Va. 2007) .................................................................................... 12

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com <sup>sm</sup>

**Defs.' Mot. Summ. Adj. & Mod.**
**Prelim. Inj. Mem. P. & A. Supp.**

ii

**Case No. 5:07-cv-04330-RMW (HRL)**

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
    518 F.Supp.2d 1197 (C.D. Cal. 2007) ............................................................... 14

*MyGym L.L.C. v. Engle*
    2006 U.S. Dist. LEXIS 88375 (D. Utah Dec. 6, 2006)........................................ 13

*Nissan Fire & Marine Ins. Co. Ltd v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ............................................................................ 7

*On-Line Technologies, Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
    386 F.3d 1133 (Fed. Cir. 2004) ......................................................................... 10

*Paice L.L.C. v. Toyota Motor Corp.*
    2006 U.S. Dist. LEXIS 61598 (E.D. Tex. Aug. 16, 2006) ................................. 13

*Reno Air Racing Ass'n v. McCord*
    452 F.3d 1126 (9th Cir. 2006) ........................................................................... 14

*Shaw v. LindHeim*,
    919 F.2d 1353 (9th Cir. 1990) ............................................................................. 8

*Sonista, Inc. v. David Hsieh*,
    2005 U.S. Dist. LEXIS 31397 (N.D. Cal. Nov. 21, 2005)................................... 7

*Stutz Motor Car of America, Inc. v. Reebok Int'l. Ltd.*,
    909 F.Supp. 1353 (C.D. Cal. 1995) ................................................................... 10

*Tank Tech, Inc. v. Neal*,
    2007 U.S. Dist. LEXIS 53066 (D. Mo. July 23, 2007)....................................... 10

*The Northern Cheyenne Tribe v. Norton*
    503 F.3d 836 (9th Cir. 2007) ............................................................................. 14

*Torpso Hockey Intern., Inc. v. Kor Hockey Ltd.*
    491 F.Supp.2d 871 (D. Minn. 2007)................................................................... 13

*z4 Techs., Inc. v. Microsoft Corp.*,
    434 F.Supp.2d 437 (E.D. Tex. 2006)................................................................. 14

## **Statutes**

Cal. Civ. Code Section 3426.1(d) ............................................................................ 10

Cal. Civ. Code Section 3426.2(b) ............................................................................ 18

Cal. Bus. & Prof. Code Section 16600 ...................................................................... 2

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com℠

**Defs.' Mot. Summ. Adj. & Mod.**
**Prelim. Inj. Mem. P. & A. Supp.**                iii                **Case No. 5:07-cv-04330-RMW (HRL)**

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF VERIGY US, INC. AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT DEFENDANTS HEREIN SHALL AND HEREBY DO move the Court for (a) summary adjudication as to Verigy US, Inc.'s ("Verigy") Ninth Claim for Relief, under the Lanham Act, (b) summary adjudication as to the public disclosure of certain alleged trade secrets, such that they cannot qualify as trade secrets, and (c) modification of the Preliminary Injunction.  This Motion is made on the grounds that (a) under  no reasonably plausible set of facts can Verigy prove the "bodily appropriation" required for its Lanham Act claim, (b) Verigy and third parties have now made public, through publications of numerous patents and patent applications, much of Verigy's claimed trade secret information, (c) under current law, where such information is public yet its owner fails to practice the applicable invention, the public is unfairly deprived of the benefits of that public information by an injunction that prohibits its use, and (d) because the Preliminary Injunction provides Verigy with greater relief than it could obtain following trial, it should also be modified in a reasonable and equitable manner that will allow Defendants to have sufficient funds to cover their defense costs in this case; otherwise Plaintiff will have succeeded in putting Defendants out of business even before Defendants would have had a fair opportunity to present their case at trial in this action.

This Motion is supported by the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Romi Mayder, the accompanying Declaration of Dr. Richard Blanchard, the accompanying Declaration of Jack Russo, such other matters that are on file with the Court, and such matters as will be presented at the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff Verigy's Ninth Claim for Relief is a "reverse passing off" claim under the Lanham Act that cannot be proven as a matter of law.  The test for reverse passing off is a rigorous one, and the Ninth Circuit requires that the plaintiff prove "bodily appropriation" by the defendant. Here, it is undisputed that Defendants did not bodily appropriate a product of Verigy's, remove Verigy's name, and slap their own name on it.  Indeed, the claim itself is based upon so-called

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠ᴹ

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**          1          **Case No. 5:07-cv-04330-RMW (HRL)**

1    taking of the "Verigy Project," defined as internal research and development, not as a product.

2    Verigy has no product equivalent to Defendant STS's Flash Enhancer, and there is no showing of

3    "bodily appropriation" of any such product.

4         Moreover, Verigy and others have recently published substantial information regarding

5    Verigy's alleged trade secrets in the form of patents and patent applications, such that such

6    information can no longer be considered trade secret (assuming it so qualified in the first place).

7    Yet Verigy itself has no products that practice those inventions. Under the reasoning of *eBay v*

8    *MercExchange*, an injunction prohibiting the use of such public information is improper, and the

9    Preliminary Injunction should be modified in light of these publications to allow Defendants to

10   bring a product to market in exchange for a reasonable royalty payment being placed in escrow

11   pending a final determination of liability in this action. Furthermore, based upon the findings that

12   the Court made in the Preliminary Injunction itself and additional evidence, the Preliminary

13   Injunction provides Verigy with greater relief than it could obtain following trial, and it is

14   effectively being used to deny Defendants the opportunity to fully defend themselves in this case.[1]

15   Therefore, the Preliminary Injunction should be modified for this additional reason.

16                         **STATEMENT OF FACTS**

17        Defendant Romi Mayder's experience as an engineer in the semiconductor industry dates

18   back to his adolescence, when he was first employed in his father and uncle's business. With over

19   20 years' experience in the industry, during which time he earned a degree in Electrical

20   Engineering from U.C. Berkeley, Mr. Mayder had the opportunity to work at length in the

21   automated test equipment field, and to appreciate and understand the challenge of increasing the

22   throughput of automated test equipment by increasing testing parallelism. The sole product of Mr.

23   Mayder's current business, defendant Silicon Test Systems, Inc. ("STS"), offers one solution to

24

25   [1]    Of course, it is well-settled in California that no form of non-competition obligation can be
     imposed on any of the Defendants. *See* Cal.Bus.&Prof.Code Section 16600. Yet, that is
     precisely what Plaintiff has aimed to do and has accomplished through litigation that has
26   stopped the commercial release of a product that was never subject to and could not be subject
     to any type of contractual or other non-competition obligation even had that been attempted
27   and paid for by the Plaintiff when Defendant Romi Mayder worked for Verigy. Under
     applicable state (and federal) law, as further discussed below, such a continued injunction is
28   not in the public interest and is contrary to strong policies under both state and federal law.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠®

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**        2        **Case No. 5:07-cv-04330-RMW (HRL)**

1  this throughput challenge.   Declaration of Romi Mayder ("R. Mayder Decl."), submitted herewith,

2  at ¶¶2-4.

3         In its Complaint against Mr. Mayder and STS, Verigy has asserted that Mr. Mayder and

4  STS have misappropriated Verigy's purported trade secrets to develop STS's Flash Enhancer

5  product. [2]  Complaint at ¶¶23-26, 41-49.  This is not so.  In fact, Defendants will show that a recent

6  search of additional publicly available information reveals that most if not all of Verigy's alleged

7  trade secrets are, in fact, (i) publicly available or well known in the semiconductor test industry,

8  (ii) readily ascertainable, or (iii) the type of information that would be specified by the

9  requirements of a particular customer of the semiconductor test industry.  Declaration of Dr.

10 Richard A. Blanchard [Etc.] ("Dr. Blanchard Decl."), submitted herewith, at ¶8.

11        On August 24, 2007, this Court entered a Temporary Restraining Order (the "TRO")

12 against Defendants, and issued an Order to Show Cause for a Preliminary Injunction.  Neither

13 Romi Mayder nor any of the other Defendants was shown a full, unredacted copy of this TRO; in

14 fact, crucial portions of the TRO and other referenced materials, including exhibits to the

15 declarations relied upon by the Court[3] in issuing this TRO and other referenced materials, were

16 designated "Highly Confidential –Attorneys' Eyes Only" by Verigy, and, under the terms of the

17 Protective Order entered on August 29, 2007, Defendants, including Romi Mayder, were not

18 permitted to view these critical documents.  R. Mayder Decl. at ¶¶5-10.  Thus, Romi Mayder and

19 [2]   Plaintiff Verigy has also named as defendants Romi Mayder's cancelled limited liability
20      company, Silicon Test Solutions LLC, which he briefly attempted to form with Robert
        Pochowski and Defendant Wesley Mayder, his older brother.  Verigy has swept in Wesley
21      Mayder, who has no training or experience in the semiconductor industry, and whose sole
        contribution to STS, Inc. has been as a passive, minority shareholder.  Indeed, Verigy's sole
22      claim against Wesley Mayder is that he and his brother are "in business together."  Complaint
        at ¶4.  Wesley Mayder is not mentioned anywhere else in Verigy's Complaint.  Defendants
23      have previously sought several times to convince Verigy of the lack of merit of its claims
        against Wesley Mayder; because of Verigy's intransigence, Defendants have filed a Motion for
24      Summary Judgment and Motion for Rule 11 Sanctions, scheduled to be heard on August, 8,
        2008.

25 [3]   In the TRO, the Court stated that it based its decision to grant plaintiff's *ex parte* application
26      for the TRO on "the Complaint, the declarations of Robert Pochowski, Ira Leventhal, Manuel
        Cuerzoni, Ken Hanh Duc Lai, Andrew N. Lee, and Melinda M. Morton and the memorandum
27      of points and authorities submitted in support of the *ex parte* application."  Temporary
        Restraining Order ("TRO"), August 24, 200, docket no. 22 at 5:1-3.  The TRO also states that
28      "Copies of the complaint and **public-redacted version** of the TRO papers were sent
        electronically to defendants on August 22, 2007."  *Id.* at 4:19-20 [emphasis added].

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.                    3                    Case No. 5:07-cv-04330-RMW (HRL)

1   the other Defendants had injunctive relief entered against them without being able to view fully

2   and understand the scope of that injunction because of Verigy's overreaching confidentiality

3   assertions, creating a distinct lack of due process.[4]

4           The TRO identified certain information as Verigy's "Trade Secret Property." This

5   identification in the TRO, and the terms enjoining Defendants from it use, were however, identified

6   by reference to a series of "attached" or referenced documents that were either (a) redacted or (b)

7   designated as "Confidential," "Highly Confidential" or both. *See, e.g.* TRO at 5:17-26, which details

8   the activities Defendants are restrained and enjoined from undertaking with respect to the "Trade

9   Secret Property," but which itself is identified with reference to "Exhibit A" to the TRO. Exhibit

10  "A" is itself extensively redacted,[5] and refers to many exhibits submitted along with Verigy's *ex*

11  *parte* application, including:

12          (s)     Exhibits B and C to the Leventhal Declaration submitted in support of Verigy's
                    Application for a TRO;
13          (t)     Exhibits A, B, C and D to the Lai Declaration submitted in support of Verigy's
                    Application for a TRO;
14          (u)     Exhibits A and B to the Lee Declaration submitted in support of Verigy's
15                  Application for a TRO; and
            (v)     Exhibits A, B, C, D, E, and F to the Pochowski Declaration submitted in support of
16                  Verigy's Application for a TRO.

17  *Id*. at pp. 10:1-7. Each of these Exhibits was redacted from the versions which were served on

18  Defendants, and Romi Mayder was never served with the full, unredacted version of the TRO with

19  all of the referenced materials, nor was he allowed to view it, until he retained new counsel, Russo

20  & Hale LLP, which negotiated with Verigy's counsel for Mr. Mayder's right to view the full,

21  unredacted TRO. Declaration of Jack Russo ("Russo Decl."), submitted herewith, at ¶¶3 and 4,

22  Exhibits 2 and 3. This did not occur until June 2008, almost ten months after the entry of the

23  TRO, and several weeks after the entry of the Order finding Romi Mayder and STS, Inc. in

24  contempt of the TRO. *Id.* R. Mayder Decl. at ¶10.

25

26  [4]   Verigy subsequently may have shown Romi Mayder exhibits at this deposition, but (a) this
          neither cured the harm in marking portions of the TRO and material referenced in it highly
27        confidential and (b) Verigy has failed to show that even now defendants can see *all* of the
          materials referenced by the TRO.

28  [5]   *Id.* at pp. 9-14.

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**          4          **Case No. 5:07-cv-04330-RMW (HRL)**

1    The TRO was originally set to expire on September 7, 2007 at 5:00 p.m.  TRO at 7:9-12.

2  Then-current counsel for Defendants, however, stipulated to three extensions of the TRO.  Stip. re

3  Change to the Existing Order and Order, September 6, 2008, docket no. 31 at 2:13-17; Stip. & Order

4  re Briefing & Hr'g Schedule for Prelim. Inj., September 12, 2007, docket no. 33 at 1:21-25; Stip. and

5  Order re: Briefing & Hr'g Schedule for Prelim. Inj., October 30, 2007, docket no. 86 at 1:25-2:2.

6    With these extensions, and owing to the scheduling constraints of the Court, the Order to

7  Show Cause was not heard until mid-January, 2008 and it was February 29, 2008 before the Court

8  issued its "limited injunction…to temporarily prohibit the sale, licensing or distribution of STS's

9  Flash Enhancer product and any product based on Flash Enhancer [words omitted as

10  'Confidential']."  Preliminary Injunction Order ("PI Order"), February 29, 2008, docket no. 171, at

11  25:25-26:2.  This limited Preliminary Injunction against Defendants was to have five-month

12  duration.  *Id.* at 27:14-16.  *As of the time of the Preliminary Injunction's entry, however,*

13  *Defendants had already been enjoined from an even greater range of activities for a period of over*

14  *six months – from August24, 2007 until February 29, 2008 – under the TRO.*

15    On December 3, 2007, Verigy filed a Motion for Order to Show Cause re: Contempt

16  against Romi Mayder and STS.  This Order to Show cause was granted as part of the Court's

17  ruling on the Preliminary Injunction, and it specified a particular basis upon which the contempt

18  was alleged:

19        Defendants shall show cause why they should not be held in contempt for violating the
         court's temporary restraining order dated August 24, 2007 by continuing to use and
20        disclose Verigy's Trade Secret information *by continuing to work with Intel regarding*
         *STS's Flash Enhancer solution.*

21  *Id.* at 28:8-11 (emphasis added).

22    Without either Romi Mayder or STS ever having been served with a full, unredacted

23  version of the TRO they were charged with violating, the motion for contempt was heard, and, on

24  May 22, 2008, the Court issued its Order Granting Plaintiff's Motion to find Defendants[6] in

25  _____

26  [6]  Recognizing (at least indirectly) that Defendant Wesley Mayder was never properly part of this
     case,  Plaintiff did not "charge" Defendant Wesley Mayder, but subsequent "confusion" in the
27   briefing and with prior counsel representing Defendants resulted in Wesley Mayder becoming
     part of the contempt proceeding—even though he too never received or read a full unredacted
28   copy of the TRO.  This problem was recently resolved through stipulations signed by all but
     only as to Defendant Wesley Mayder.  In truth, the same problem applies to all Defendants.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**          5          **Case No. 5:07-cv-04330-RMW (HRL)**

1   Contempt of Court for Violating the TRO.  But Verigy failed to carry its burden of proving that

2   Romi Mayder or STS had violated the terms of the TRO with respect to the alleged violation for

3   which they were ordered to show cause:

4          Although Verigy has presented evidence that defendants met with Intel following the
           issuance of the TRO, and the court could reasonably infer that the interactions described by
5          Mr. McMann occurred during November 2007, Verigy has failed to present *clear and
           convincing* evidence that this is the case.  McMann's deposition testimony as presented does
6          not establish the time frame pertaining to his testimony and thus does not suffice to
           demonstrate that defendants were marketing Flash Enhancer to Intel after the TRO was
7          issued or that Intel received prototypes of the Flash Enhancer product after August 24, 2007.

8   Order Grant. Pl.'s Mot. to Find Defs. In Contempt of Court for Violating the TRO, May 22, 2008

9   ("<u>Order re Contempt</u>") at 11:3-9 (emphasis in original).  Instead, the Court found that "defendants

10  violated the order by continuing to develop Flash Enhancer during the effective period of TRO…,"

11  *id.* at 10:11-12, but the Preliminary Injunction did not prohibit further development of Flash

12  Enhancer.  *See* PI Order at 28:1-3 ("are hereby restrained and enjoined for a period of five (5)

13  months from the date of this order from directly or indirectly marketing, distributing, selling,

14  licensing, leasing, transferring or disposing of issued its "limited injunction…to temporarily

15  prohibit the sale, licensing or distribution of [words omitted as 'Confidential'].")  Therefore, even

16  though Verigy failed to carry its burden with regard to Romi Mayder's and STS's "continuing to

17  work with Intel regarding STS's Flash Enhancer solution" for which they were ordered to show

18  cause in the Preliminary Injunction, *id.* at 28:8-11, Romi Mayder and STS were held in contempt

19  for conduct that was not prohibited by the Preliminary Injunction.

20          Nonetheless, the Order re Contempt extended the term of the Preliminary Injunction by an

21  additional four months, from five months to a total of nine months.  Unless relief is granted, by the

22  time this case goes to trial in December, 2008, Romi Mayder and STS will have been enjoined

23  from selling the Flash Enhancer product for over fifteen (15) months – from August 24, 2007 until

24  November 29, 2008 – despite the Court's finding that a five-month prohibition on sales was

25  warranted, and despite the Court's further findings that "the individual items that Verigy claims

26  are trade secrets are not themselves trade secrets" and that Romi "Mayder given his skill and

27  experience could have eventually developed the Flash Enhancer without the benefit of any Verigy

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**          6          **Case No. 5:07-cv-04330-RMW (HRL)**

1  trade secret…." PI Order at 14:7-8 and 24:20-21. More importantly, such an injunction is now

2  financially preventing Defendants from being able to fully defend themselves in this action.

3  <u>**ARGUMENT**</u>

4  **I.    DEFENDANTS ARE ENTITLED TO SUMMARY
        ADJUDICATION ON PLAINTIFF'S LANHAM ACT CLAIM.**

5

6         Verigy's Ninth Claim for Relief is for an alleged Lanham Act violation based on

7  Defendants having allegedly taken the "Verigy Project" and marketed and advertised it as their

8  own. Under the law, Verigy's Ninth Claim for Relief fails.

9         **A.    <u>The Standard for Summary Judgment or Adjudication is Well-Settled.</u>**

10        The standard for when summary judgment or summary adjudication may be granted is

11 well-settled. As the Ninth Circuit has stated:

12         In order to carry its burden of production, the moving party must
           either produce evidence negating an essential element of the nonmoving

13         party's claim or defense or show that the non-moving party  does not
           have enough evidence to carry its ultimate burden of persuasion at

14         trial.  In order to carry its ultimate burden of persuasion on the motion,
           the moving party must persuade the court that there is no genuine issue

15         of material fact.

16 *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

17        Facts are material if they may affect the outcome of the case. *Sonista, Inc. v. David Hsieh*,

18 2005 U.S. Dist. LEXIS 31397, at *3 (N.D. Cal. Nov. 21, 2005). Further, when the motion is well

19 supported, the non-moving party must present specific facts that demonstrate that contradiction is

20 possible. *Bursese v. Paypal, Inc.*, 2007 U.S. Dist. LEXIS 12785, at *9 (N.D. Cal. Feb. 12, 2007).

21 That is, the responding party must set forth specific facts by affidavit or other admissible evidence

22 demonstrating that there is an issue for trial. *Id.* Here, under the facts as admitted by Verigy and

23 the law regarding when a "reverse passing off" claim may lie, Verigy's Lanham Act claim fails as

24 a matter of law.

25        **B.    Verigy's Lanham Act Claim Requires "Bodily Appropriation,"
               <u>A Standard That Verigy Cannot Meet as a Matter of Law.</u>**

26

27        Verigy's Ninth Claim for Relief is predicated on the following assertion: "Upon

28 information and belief, defendants have falsely designated themselves as the source of origin of

the Verigy Project which is incorporated, in whole or in part, within the STS Device." *See* Russo

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠℠

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**        7        **Case No. 5:07-cv-04330-RMW (HRL)**

1   Decl. at Ex. 1, ¶86 (hereinafter, the "Complaint").  According to Verigy, the "Verigy Project"

2   "involved research and development using technology to increase the parallelism of Verigy's

3   testers."  Complaint at ¶14.  That is, Verigy's Ninth Claim for Relief is premised upon the use of

4   some subset of Verigy information being used within products produced by Defendants.  Nowhere

5   has, nor can, Verigy allege that it has created a *product* that Defendants have treated as their own

6   by removing any Verigy designation as the source of origin and replacing it with their own.  Under

7   these facts, no Lanham Act claim can stand.

8          Verigy has based its Lanham Act claim on Section 43(a), dealing with false advertising, 15

9   U.S.C. §1125(a).  Section 43(a) prohibits the use of false designations origin and false

10  representations in the advertising and sale of goods and services.  *Cleary v. News Corp.*, 30 F.3d

11  1255, 1259 (9th Cir. 1994).  Some examples of false designation of origin are known as "reverse

12  passing off" or "reverse palming off."  Reverse passing off or reverse palming off occurs when a

13  *product* is mislabeled to mask the creator's contribution."  *Id*. at 1260.  (Emphasis added).

14         The Ninth Circuit has adopted what it has labeled a "rigorous test" for proving reverse

15  passing off under the Lanham Act:  "It is not enough that the misattributed material is 'substantially

16  similar'; instead, there must be 'bodily appropriation.'"  *Id*. at 1261, *citing Shaw v. Lindheim*, 919

17  F.2d 1353, 1364 (9th Cir. 1990).  **Rather, under *Shaw* and its progeny, a reverse passing off claim**

18  **in the Ninth Circuit can stand under only two circumstances: "[r]everse passing off is**

19  **accomplished 'expressly' when the wrongdoer removes the name or trademark on another**

20  **party's product and sells *that product* under a name chosen by the wrongdoer."  *Id*.  "Implied"**

21  **reverse passing off occurs when the wrongdoer simply removes or otherwise obliterates the**

22  **name of the manufacturer or source and sells *the product* in an unbranded state."  *Id*.**

23  **(emphasis in original).**

24         In a case directly on point, the United States Supreme Court rejected a Section 43(a)

25  Lanham Act claim for protection of ideas instead of tangible goods.  In *Dastar Corp. v. Twentieth*

26  *Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041 (2003) the plaintiff was the authorized

27  distributor of a television series on videotape, the copyright on which had expired, such that the

28  works were in the public domain.  A rival company, the defendant, produced a video set of the

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com℠

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**        8        **Case No. 5:07-cv-04330-RMW (HRL)**

1  same television series by purchasing, copying and editing the original public domain version of the

2  television series.  The plaintiff then sued under Section 43(a), claiming that defendant was

3  engaged in reverse passing off.

4      Writing for the Court, Justice Scalia found that no Lanham Act claim of "reverse passing

5  off" could lie for communicative ideas as opposed to tangible products.  The Court found that had

6  the defendant actually purchased some of the videotapes sold by plaintiff and merely repackaged

7  them as its own, with its own label or trademark, then a "reverse passing off" claim would lie.  *Id.*

8  at 2046-47.  Since the defendant did not do so, however, but allegedly took the same ideas or

9  content that plaintiff was using in its own videotapes, the Court addressed the meaning of the word

10 "origin" within the Section's phrase, "false designation of origin."  Specifically, the Court dealt

11 with whether "origin" meant the producer of the physical items containing the television series, in

12 which case the defendant was the origin, or whether "origin" under Section 43(a) was meant to

13 reach the creator of the underlying work that was taken or copied.  *Id.* at 2047.

14     The Court concluded that "origin" could not refer to the creators of the underlying ideas or

15 expression in a communicative work, but rather "refers to the *producer of the tangible goods* that

16 are offered for sale, and not to the author of any idea, concept, or communication embodied in

17 those goods."  *Id.* at 2050.  The Court held that to find otherwise would be to use the Lanham Act

18 to create a species of perpetual patent and copyright protection, an improper result.  *Id.*

19     Here, Verigy has brought a Section 43(a) false designation of origin claim, for reverse

20 passing off, based on "research and development" work that it alleges "comprise" the "Verigy

21 Project."  It has alleged that the incorporation of that research and development into STS's product

22 constitutes "reverse passing off."  But, under the Ninth Circuit's "bodily appropriation" test, and the

23 United States Supreme Court's ruling in *Dastar*, no claim for a Lanham Act violation can lie on these

24 facts and no plausible set of facts can otherwise change this:  Defendants did not take some tangible

25 product of Verigy's, because Verigy has no such tangible product incorporating the "Verigy Project"

26 ever existed.  Rather, as Verigy has admitted, its false advertising claim is based upon the alleged

27 taking of ideas or concepts not any implementation, not any product and certainly not any

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**          9          **Case No. 5:07-cv-04330-RMW (HRL)**

1  mislabeling of any tangible goods.  As such, summary adjudication for Defendants on the Ninth

2  Claim for Relief should be granted.

3  **II.     DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION**
   **THAT INFORMATION CONTAINED IN PUBLISHED PATENTS OR**
   **PATENT APPLICATIONS CANNOT CONSTITUTE TRADE SECRETS.**

4

5          Both before and since the Court entered the Preliminary Injunction in this action, a great

6  deal of information related to Verigy's alleged trade secret list has been published in the form of

7  patents or patent applications.  The Court should grant summary adjudication that, as a matter of

8  law, material contained in a public patent or patent application cannot constitute trade secrets of

9  Verigy, and that none of the information contained in the patents and patent applications submitted

10 to the Court in connection with this Motion, through the Declaration of Dr. Richard Blanchard and

11 the exhibits thereto, can constitute trade secrets of Verigy.

12         The law is well-settled that "[a]fter a patent has issued, the information contained within it

13 is ordinarily regarded as public and not subject to protection as a trade secret."  *On-Line*

14 *Technologies, Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1141 (Fed. Cir. 2004);

15 *Conmar Prods. Corp. v. Universal Slide Fastener Co.*, 172 F.2d 150, 155-56 (2d Cir. 1949) (L.

16 Hand); *Tank Tech, Inc. v. Neal*, 2007 U.S. Dist. LEXIS 53066, at *25 (D. Mo. July 23, 2007).

17 Once information is published in a patent or a patent applications it becomes "readily

18 ascertainable," it can be generally known to competitors, and, therefore, cannot meet the trade

19 secret definition.  *Id.*; Cal. Civ. Code §3426.1(d).

20             "It is well established that the disclosure of a trade secret in a patent places the
              information comprising the secret into the public domain. [Citation omitted.] Once the

21            information is in the public domain and the element of secrecy is gone, the trade secret is
              extinguished and 'the patentee's only protection is that afforded under the patent law.'

22            [Citation omitted.]"

23

24 *Forcier v. Microsoft Corp.,*123 F.Supp.2d 520, 528 (N.D. Cal. 2000), *citing Stutz Motor Car of*

   *America, Inc. v. Reebok Int'l, Ltd.,* 909 F. Supp. 1353, 1359 (C.D.Cal.1995).

25

26         Accordingly, Defendants[7] are entitled to summary adjudication that any information

27 published by Verigy or others in patents or patent applications cannot be considered trade secrets

28 ――――――――――――――――
   [7]    Though Defendant Wesley Mayder expects to be dismissed from this case pursuant to his co-
          pending Rule 11 and Rule 56 motion, it is clear that he has never had access to any of the

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠ᴹ

**Defs.' Mot. Summ. Adj. & Mod.**
**Prelim. Inj. Mem. P. & A. Supp.**          10          **Case No. 5:07-cv-04330-RMW (HRL)**

1   in this action.  Defendants are further entitled to summary adjudication that (a) each of the patents

2   or patent applications submitted by declaration on this Motion are in the public domain and (b) to

3   the extent they contain any of Verigy's alleged trade secrets, such information cannot qualify as

4   trade secrets in this action.

5   **III.    THE PRELIMINARY INJUNCTION SHOULD BE**
    **MODIFIED IN LIGHT OF *EBAY V. MERCEXCHANGE*.**

6       A.    ***eBay* Changed the Rules for the Granting of Injunctive Relief.**

7          In a far reaching decision, the United States Supreme Court changed the process for

8   evaluating a request for permanent injunctive relief upon a finding of patent infringement.  *eBay,*

9   *Inc. v. MercExchange*, 547 U.S. 388, 126 S.Ct. 1837 (2006).  Prior to the *eBay* decision, courts

10  almost uniformly granted a request for permanent injunctive relief against an infringing device or

11  method upon a finding of patent infringement, as the Federal Circuit did prior to the appeal to the

12  Supreme Court.  *eBay* at 393-94.  But the Supreme Court overturned that approach as being too

13  simplistic, and as not adequately applying the traditional four-part test for granting permanent

14  injunctive relief, namely:

15     (1) the plaintiff has suffered an irreparable injury;

16     (2) the remedies at law are inadequate to compensate for that injury;

17     (3) considering the balance of hardships on the parties if injunctive relief were granted or not;

18     (4) the public interest would not be disserved by a permanent injunction.

19  *Id.* at 391.

20         The Supreme Court rejected an almost automatic grant of permanent injunctive relief, and

21  in doing so rejected a presumption of irreparable harm as automatically flowing from a finding of

22  infringement.  The Supreme Court did not, however, directly address whether a presumption of

23  irreparable harm should also be discarded in the preliminary injunction context.

24         On remand, in applying these four factors, the District Court denied MercExchange's

25

26  ───────────────────────────────

    alleged trade secrets of Verigy and that, as a matter of law, he has never appropriated and
27  could never have misappropriated any of Verigy's alleged trade secrets.  *See* Declaration of
    Welsy Mayder filed on June 10,2008 (Docket # 231-21).  As such, the entire Complaint and
28  each cause of action as allegedly applicable to him should be dismissed as to him as there are
    simply no facts which would support any type of claim against him individually.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠ᴹ

**Defs.' Mot. Summ. Adj. & Mod.**
**Prelim. Inj. Mem. P. & A. Supp.**          11          **Case No. 5:07-cv-04330-RMW (HRL)**

1   request for a permanent injunction:[8]  First, the District Court found that MercExchange had not

2   established irreparable harm, or that money damages would not adequately compensate it.

3   *MercExchange L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556, 569 (E.D. Va. 2007).  The Court noted in

4   particular the lack of commercialization of the patents by MercExchange.  Second, the District

5   Court expressed concern that the patents at issue, or at least one of them, appeared to be a

6   combination invention made up of a number of non-unique parts, and that such patents might well

7   be suspect in light of the Supreme Court's ruling in *KSR Int'l Co. v. Teleflex, Inc.*, ____U.S. ___,

8   127 S.Ct. 1727 (2007).  Third, the District Court found that given MercExchange's pattern of

9   licensing its patents and using them as swords in litigation, rather than productizing them, money

10  damages would afford an adequate remedy.  *eBay*, 500 F.Supp.2d at 582-83.  In particular, the

11  Court noted the lack of MercExchange's presence in the online auction industry.  Fourth, the Court

12  found that the balance of hardships did not weigh in either party's favor, but felt that on the

13  equities, a forced royalty rather than an injunction was more equitable, particularly given

14  MercExchange's history of seeking royalties on its patents. The District Court also found that the

15  public interest tipped slightly in favor of the defendant, finding:

16          Although the public plainly benefits from a strong patent system protection from
17          an infringer may be vital when a patent held by a small patent holder is infringed
            upon by a multi-billion dollar corporation such as eBay, the strongest arguments
18          in equity exist when such small patent holder utilizes its patent to benefit the
            public, that is, either seeks to develop the patent on its own or develop the patent
19          through licensing arrangements.

20  *Id*. at 587.    Lastly, the District Court addressed and rejected cross-claims of unclean hands by

21  both parties as a basis for granting or denying injunctive relief, but emphasized that a court may

22  always consider the equities involved in deciding whether to grant such relief.

23          **B.      *eBay* Applies Equally in the Preliminary Injunction Context.**

24          As this Court recently noted, there has been some difference of opinion among the various

25  circuits as to whether the *eBay* decision should be applied in the preliminary injunction context.

26

27  _____
[8]   Moreover, the jury finding in *eBay* was that eBay willfully infringed the MercExchange's
28        business method patents, yet the District Court determined that such a finding of willfulness
          was not sufficient to automatically grant injunctive relief.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**          12          **Case No. 5:07-cv-04330-RMW (HRL)**

1    *Hologic, Inc. v. Senorx, Inc.*, 2008 U.S. Dist. LEXIS 36693,at *43 (N.D. Cal. Apr. 25, 2008).  This

2    Court concluded based upon its reading and understanding of the *eBay* decision that a presumption

3    of irreparable harm could not be applied in the preliminary injunction context as well, and that

4    preliminary injunctive relief required a showing of irreparable harm and could not be found

5    through an automatic presumption thereof.  *Id.* at *45.

6          Decisions both of this Court and nearly all other federal courts since *eBay* have required

7    much more than a showing of speculative irreparable harm in both the permanent injunction and

8    preliminary injunction contexts.  Indeed, well prior to the *eBay* decision, federal courts have

9    warned against the use of injunctive relief as a "club" with which a plaintiff could gain unfair

10   negotiating leverage, particularly where, as here, the plaintiff was not practicing its patented

11   invention and where a compulsory royalty payment would adequately compensate the plaintiff.

12   *Foster v. American Machine & Foundry Co.*, 492 F.2d 1317, 1324 (2d Cir. 1974).

13         This Court, too, has followed the approach of ordering a compulsory license and royalty

14   payment in lieu of preliminary injunctive relief, particularly where the plaintiff was not practicing

15   the invention and where the public could benefit from allowing the invention to be marketed.

16   *Hologic*, 2008 U.S. Dist. LEXIS 36693, at *51.  Indeed, where there is an absence of evidence of

17   public harm that would be caused by marketing of an invention, the public's interest in making use

18   of the invention should tip in the defendant's favor.  *Id*. at *57-58.

19         Other courts weighing in since the *eBay* ruling by the Supreme Court have followed an

20   approach of not applying a presumption of irreparable harm in the preliminary injunction context,

21   or, where, as here, the plaintiff is not practicing the invention and money damages would

22   adequately compensate the plaintiff.  *See, e.g.*, *Torspo Hockey Intern., Inc. v. Kor Hockey Ltd.*,

23   491 F.Supp2d 871, 881 (D. Minn. 2007) (no presumption of irreparable harm in plaintiff's seeking

24   preliminary injunction relating to a *design* patent, and only speculative assertions regarding harm

25   to reputation); *MyGym L.L.C. v. Engle*, 2006 U.S. Dist. LEXIS 88375, at *11 (no presumption of

26   irreparable injury at preliminary injunction stage for trademark claim); *Paice L.L.C.  v. Toyota

27   Motor Corp.*, 2006 U.S. Dist. LEXIS 61598, at * (E.D. Tex. Aug. 16, 2006) (no presumption of

28   irreparable harm for patent infringement, particularly where plaintiff can be compensated with

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᴹ

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**                    13                    **Case No. 5:07-cv-04330-RMW (HRL)**

1    money); *The Northern Cheyenne Tribe v. Norton*,  503 F.3d 836 (9th Cir. 2007) (applying the

2    reasoning of *eBay* in refusing to presume irreparable harm in the environmental law context); *Reno*

3    *Air Racing Ass'n. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) (applying the *eBay* approach in a

4    Lanham Act case, relating to a request for permanent injunctive relief); *Christopher Phelps &*

5    *Assocs. L.L.C. v. Galloway*, 462 F.3d 532, 543 (4th Cir. 2007) (applying *eBay* in the copyright

6    context and rejecting the view that upon a finding of copyright infringement an injunction should

7    automatically follow); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.* 518 F.Supp.2d 1197,

8    1208-10 (C.D. Cal. 2007) (*eBay* applies in copyright case, no presumption of irreparable harm).

9         In *z4 Techs., Inc. v. Microsoft Corp.*, 434 F.Supp.2d 437 (E.D. Tex. 2006), after a jury verdict

10   of willful infringement by Microsoft in connection with its Windows XP operating system, the

11   District Court denied z4's request for a permanent injunction.  In reaching this decision, the Court

12   noted in particular Justice Kennedy's concurrence in *eBay* in which he suggested that where the

13   patented invention is but a small portion of the infringer's product, then money damages may well be

14   the proper remedy in contrast to an injunction.  *Id.* at 441.  The Court further found that z4 would not

15   suffer lost profits (since it was entitled to a royalty from Microsoft for all infringing uses), brand

16   recognition or market share, and that the public could suffer if Microsoft were enjoined from

17   deploying the Windows XP operating system.  *See also, Finisar Corp. v. DIRECTV Group, Inc.*,

18   2006 U.S. Dist. LEXIS 76380, at *4 (E.D. Tex. July 7, 2006) (District Court refused to grant a

19   permanent injunction where the patentee did not practice the patent, the defendant and its employees

20   would be harmed by an injunction, and the public would be deprived of a valuable service).

21        The reasoning behind *eBay* and its progeny applies with equal force in the preliminary

22   injunction context, and where trade secrets rather than a patent are at issue.   Indeed, since trade

23   secrets, unlike patents and copyrights, do not appear to carry with them a presumption of

24   irreparable harm upon a finding of misappropriation, the application of *eBay* would appear even

25   more appropriate.  **This Court itself has previously noted that (a) "Verigy is not currently**

26   **using the trade secrets [words omitted as 'Confidential']" and (b) "[t]he balance of hardships**

27   **tips less sharply, however, to the extent that the Flash Enhancer is used for NOR testing, as**

28   **Verigy does not currently sell its products for NOR testing." PI Order at 24:11 and 25:15-17.**

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**                    14                    **Case No. 5:07-cv-04330-RMW (HRL)**

1   **Therefore, under _eBay_, and to promote the public interest in having access to innovative**

2   **technology, especially in the NOR market, the Preliminary Injunction should be modified.**

3   **Defendants have submitted a proposed form of Order that makes clear that equitably**

4   **Defendants are prepared to escrow fifteen percent (15%) of all product sales[9] pending the**

5   **outcome of the trial in this action and to continue to do so pending any subsequent appellate**

6   **proceedings so as to assure that remedies which may be available to Plaintiff—if Plaintiff can**

7   **prove any of its claims in this case— are available to Plaintiff.   Defendants would further**

8   **agree that this approach would also allow Plaintiff to withdraw any further preliminary**

9   **injunction bond in this case. This escrow approach is consistent with the Court's suggestion**

10  **in the Preliminary Injunction.  _See_ P.I. Order at p. 25, fn. 8.**

11  IV.     THE PRELIMINARY INJUNCTION SHOULD BE
         MODIFIED BECAUSE IT PROVIDES VERIGY WITH GREATER
12       RELIEF THAN VERIGY COULD OBTAIN FOLLOWING TRIAL.

13          A preliminary injunction should not grant the moving party greater relief than would be

14  available to it following trial.

15          The burden on the City "is a heavy one where, as here, granting the preliminary
16      injunction will give [the City] substantially the relief it would obtain after a trial on the
         merits." _Dakota Indus., Inc. v. Ever Best Ltd_., 944 F.2d 438, 440 (8th Cir. 1991) _Indus.,_
17      _Inc. v. Ever Best Ltd_., 944 F.2d 438, 440 (8th Cir. 1991) (citations omitted); _see also_
         _Tanner Motor Livery, Ltd. v. Avis, Inc_., 316 F.2d 804, 808 (9th Cir. 1963) ("[I]t is not
18      usually proper to grant the moving party the full relief to which he might be entitled if
         successful at the conclusion of a trial.")

19  _Am. Med. Response, Inc. v. City of Stockton_, 2005 U.S. Dist. LEXIS 37336 (E.D. Cal. Sept. 16,

20  2005).  Even assuming, _arguendo_, that Verigy were able to prove that its alleged trade secrets

21  were not fully disclosed in filings with the U.S.P.T.O. and not readily ascertainable, the Court has

22  previously made findings concerning the extent of any head-start advantage that Defendants might

23  have obtained.

24      [I]n light of the fact that there is publicly-available information regarding implementation
25      of fan-out technology and the fact that STS's products are directed toward different
         customer requirements, the court finds a five-month injunction to be appropriate.  Setting
26      the duration of the injunction at five months rather than eight months also accommodates

27  ---
    [9] This number was not chosen arbitrarily as it represents a very robust (and more than reasonable)
28      royalty for a non-patented hardware device that never has ever been productized by Plaintiff.
         _See_ Declaration of Dr. Richard Blanchard at ¶10.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**          15          **Case No. 5:07-cv-04330-RMW (HRL)**

1      for the fact that STS has concentrated on design and development of the Flash Enhancer

2      product….

PI Order at 27:6-11.  Despite these findings, by the time this Motion is heard, Defendants will have

3

been enjoined from selling Flash Enhancer for very nearly a year, and by the time this case is tried,

4

that period will have been extended to over fifteen months, unless the Preliminary Injunction is

5

modified.  Furthermore, Dr. Blanchard has found that even if one were to make assumptions favoring

6

Verigy's claims, a six-month injunction would be more than sufficient to overcome any alleged

7

head-start advantage.  Dr. Blanchard Decl. at ¶9.  It is simply unfair to grant Verigy interim relief that

8

is between two and three times greater than the full relief it might receive *if* it were to prevail at trial.

9

10      **V.  TO PROMOTE PUBLIC ACCESS TO IMPORTANT
             TECHNOLOGY AND TO BALANCE ALL OF THE EQUITIES,
11           THE PRELIMINARY INJUNCTION SHOULD BE MODIFIED.**

12           When Defendants have already been enjoined from selling Flash Enhancer for nearly

13      eleven months despite the Court's finding that a five-month injunction would be adequate, and

14      when Defendants were deprived of the ability to understand the full scope and content of the TRO

15      due to Verigy's designation of crucial exhibits and referenced materials as highly confidential

16      material, such that Defendants could not read and understand the TRO, the Preliminary Injunction

17      should be modified, and Defendants should be permitted to market Flash Enhancer in exchange for

18      escrowing a reasonable compulsory royalty payment for a limited time.

19           First, there is no showing that Verigy is currently selling any product that employs the

20      alleged trade secrets.  Consequently, there is no possibility that Verigy will suffer loss of brand

21      recognition.  Indeed, if the Preliminary Injunction were modified to permit Defendants to sell their

22      Flash Enhancer product for *non-Verigy* devices, then Verigy could not claim loss at all in

23      connection with any brand it presumably has.[10]

24           Second, monetary damages are adequate to compensate Verigy in the event that it

25      ultimately prevails on its claims, and in that regard, Defendants stand ready, willing and able to

26      put into escrow as much as fifteen percent (15%) of any revenues obtained from sales of the Flash

27      _____

[10]    Indeed, as discussed earlier, the notion that Verigy has developed any "brand recognition"
28      related to internal research and development, namely the "Verigy Project," appears speculative
        at best and logically attenuated.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**                    16                    **Case No. 5:07-cv-04330-RMW (HRL)**

1   Enhancer product, such that Verigy would have a fund to turn to if it were to prevail in this action

2   after trial.   R. Mayder Decl. at ¶27.  Such a fifteen percent (15%) royalty provides more than

3   sufficient security for Verigy, because it is higher than the range of royalty rates that Dr.

4   Blanchard has observed to be customary in the semiconductor industry, even for multiple patents.

5   Dr. Blanchard Decl. at 10.

6           In my opinion, even if all of the alleged trade secrets that Verigy claims in
            connection with this case were found to be actual trade secrets and were found to
7           have been infringed by defendants, a fifteen percent (15%) royalty rate would be
            far in excess of any royalty rate that would be adequate to compensate Verigy for
8           the use of all such trade secrets based upon my experience and my knowledge of
            standards for royalty rates in the semiconductor industry.
9

    *Id.* at 10.  Indeed, as the Court itself found, Verigy is not practicing in the NOR memory field, P.I.
10
    Order at 25: 14-17, and certainly is not creating test devices for non-Verigy machines.    No
11
    irreparable harm can possibly attach to such activities by Defendants, since Verigy is making no
12
    use of its alleged trade secrets in the NOR memory field.  At a minimum, a narrower injunction
13
    that excepted out such fields would properly address the equities existent in this case.
14
            Third, the equities in this matter require modification of the Preliminary Injunction.  Although
15
    the Court found that Defendants had willfully violated the TRO, Defendants were denied  the
16
    opportunity to read and understand the TRO, and they were in fact advised by their former counsel
17
    that they could continue to act in the manner that resulted in the contempt finding.  R. Mayder Decl. at
18
    ¶17.  Even Defendants' expert, Dr. Blanchard, whose advice was never sought by Defendants' prior
19
    counsel, views the meaning of some portions of the TRO to be difficult to understand and in need of
20
    further clarification.  Dr. Blanchard Decl. at ¶¶5-6.  Furthermore, Dr. Blanchard views much of what
21
    Verigy is claiming as its trade secrets as information that is (i) publicly available or well known in the
22
    semiconductor test industry, (ii) readily ascertainable, or (iii) the type of information that would be
23
    specified by the requirements of a particular customer of the semiconductor test industry.  Dr.
24
    Blanchard Decl. at ¶8.  In that one of the consequences of the contempt finding was a four-month
25
    extension on the Preliminary Injunction, Defendants have been unfairly enjoined for a period longer
26
    than what the Court itself recognized was the likely head-start period.  Verigy should not be permitted
27
    to obtain through the Preliminary Injunction greater relief than it could obtain at trial.
28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᴸᴸᴾ

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**          17          **Case No. 5:07-cv-04330-RMW (HRL)**

1    Fourth, in balancing the hardships in the case, the Court should take note of Verigy's

2    status as a large public company and the fact that is is of considerably greater size and financial

3    resources in comparison with Defendants.  Because the economic impact of the Preliminary

4    Injunction falls so heavily on Defendants, and because Verigy is much better capitalized, the

5    Preliminary Injunction should be modified.  *See*, *e.g.*, *International Jensen, Inc. v. Metrosound

6    U.S.A., Inc*., 4 F.3d 819, 827 (9th Cir. 1993) ("In evaluating the balance of hardships a court must

7    consider the impact granting or denying a motion for a preliminary injunction will have on the

8    respective enterprises. Thus the relative size and strength of each enterprise may be pertinent to

9    this inquiry. *Sardi's Restaurant*, 755 F.2d at 726.")

10    Fifth, the Court itself noted that the public could benefit from the sale of the Flash Enhancer

11    and that while other vendors might be in the field of parallel testing addressed by that device, no

12    other company is as far along in making the device available.  PI Order at 25:10-14.  Where, as here,

13    Verigy is not offering third parties any product similar to Flash Enhancer, the balance of hardships

14    should tip *sharply* in favor of Defendants, particularly in the NOR market, and especially because

15    Verigy can be fully compensated by monetary damages if it were to prevail at trial.

16    Sixth, in addition to *eBay* and its progeny, California's trade secret statute itself recognizes

17    the appropriateness of substituting a reasonable royalty for a categorical injunction.  The California

18    statute provides that "[i]f the court determines that it would be unreasonable to prohibit future use, an

19    injunction may be condition future use upon payment of a reasonable royalty for no longer than the

20    period of time the use could have been prohibited."  Cal. Civ. Code §3426.2(b).  Given Defendants'

21    willingness to escrow more than a reasonable royalty amount during the pendency of the entire case,

22    even beyond when the Preliminary Injunction is currently set to expire (in November 2008),

23    modifying the Preliminary Injunction will provide adequate protection for Verigy.

24    Particularly in light of (a) the substantial amount of additional information that has now

25    become public regarding the alleged trade secrets at issue, including public filings with the

26    U.S.P.T.O. by Verigy, (b) Verigy's not selling products using its alleged trade secrets, and (c) the

27    harm to the public in not being able to obtain the benefits of information that is readily

28    ascertainable through public disclosures while the Preliminary Injunction is in place, Defendants

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠ℳ

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**

18

**Case No. 5:07-cv-04330-RMW (HRL)**

1    respectfully assert that the Preliminary Injunction should be modified as follows:

2        1.    Defendants may develop, market, advertise, sell, license, and in all other ways

3    otherwise commercially exploit the Flash Enhancer product and any enhancements thereto

4    for all devices and/systems in exchange for escrowing fifteen percent (15%) of the gross

5    revenues obtained from such sales pending the outcome of this case; and,

6        2.    Without limiting the generality of the foregoing, Defendants may develop, market,

7    advertise, sell, license, and in all other ways otherwise commercially exploit the Flash

8    Enhancer product and any enhancements thereto for either (a) non-Verigy systems and (b)

9    any customers producing NOR and/or NAND memory devices and/or systems in exchange

10    for escrowing fifteen percent (15%)of the gross revenues obtained from such sales pending

11    the outcome of this case; and,

12        3.    Without limiting the generality of any of the foregoing, Defendants may develop

13    and further test the Flash Enhancer product and any enhancements thereto with and in

14    cooperation with beta users, provide samples of Flash Enhancer and any enhancements

15    thereto to beta users, and communicate fully with such beta users concerning the operation,

16    performance, testing, modification, and future sales or licensing of Flash Enhancer and any

17    enhancements thereto, and any related matters so long as fifteen percent (15%) of the gross

18    revenues obtained from such sales is escrowed account pending the outcome of the trial (and

19    any subsequent appeals) in this matter.

20        The above approaches—and each of them—will provide the proper equitable balance for

21    assure that the public receives access to important new innovations and that Verigy receives

22    security for what, under *eBay* and under  other applicable federal and state law, can be the

23    reasonable royalty which Verigy can (and does) seek in this case.  Anything narrower than this

24    puts Defendants in the position of not being able to defend themselves in this action and, in effect,

25    provides Verigy with the "victory" it seeks to achieve without first having won the actual trial in

26    this case and without first having convinced this Court that Rule 65 can and should be used to

27    extend injunction relief even beyond what this Court has already found otherwise—and all before

28    Defendants were ever given a full and fair opportunity to read and under the Court's Orders!

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

**Defs.' Mot. Summ. Adj. & Mod.
Prelim. Inj. Mem. P. & A. Supp.**    19    **Case No. 5:07-cv-04330-RMW (HRL)**

1

## CONCLUSION

2          For the reasons set forth above, the Court should grant summary adjudication (a) to

3    Defendants on Verigy's Ninth Claim for Relief, (b) that, as a matter of law, public patents and

4    patent applications do not contain any trade secret information, and (c) that, as a matter of law, all

5    of the public patents, patent applications, and other published materials attached to the

6    accompanying Declaration of Dr. Richard Blanchard do not contain any trade secret information.

7    Further, the Court should modify the pending Preliminary Injunction to allow the public to benefit

8    from the practice of publicly available information while protecting Verigy with the escrow

9    approach outlined above.[11]

10                                        Respectfully submitted,

11

12   Dated:  July 10, 2008                  By:        /s/ Jack Russo

13                                                Jack Russo, SBN 98068
                                                 Tim C. Hale, SBN 114905
14                                               John Kelley, SBN 100714

15                                               RUSSO & HALE LLP
                                                 401 Florence Street
16                                               Palo Alto, CA 94301
                                                 Telephone: (650) 327-9800
17                                               Facsimile: (650) 327-3737
                                                 Email: jrusso@computerlaw.com
18                                                         thale@computerlaw.com
                                                          jkelley@computerlaw.com

19

20                                               ATTORNEYS FOR DEFENDANTS AND
                                                 COUNTERCLAIMANTS ROMI MAYDER,
21                                               WESLEY MAYDER, SILICON TEST
                                                 SYSTEMS, INC., and SILICON TEST
22                                               SOLUTIONS, LLC

23

24

25

26

27   _____
     [11] The escrow approach has been used in many intellectual property cases and where interim relief
28        is granted and it is clear that this Court has authority to do precisely this. *See, Fogarty v.*
          *Fantasy, Inc*. 510 U.S. 517, 114 S. Ct. 1023 (1994).

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔢᔲ

**Defs.' Mot. Summ. Adj. & Mod.**
**Prelim. Inj. Mem. P. & A. Supp.**          20          **Case No. 5:07-cv-04330-RMW (HRL)**