# EXHIBIT 1





**From:** Mindy Morton [mailto:mmorton@be-law.com]
**Sent:** Wednesday, August 22, 2007 8:25 AM
**To:** Mindy Morton; Daniel S. Mount; Kevin M. Pasquinelli; romi.mayder@silicontests.com; wes@wedirect.com; wes@carseek.com
**Cc:** John Fowler; Gail C. Simmons
**Subject:** RE: Verigy v. Mayder, et al.

Gentlemen,
Enclosed please find additional documents related to the Application for TRO and the Complaint.

Regards,
Mindy Morton

Mindy M. Morton, Esq.
Bergeson, LLP
303 Almaden Blvd.
Suite 500
San Jose, CA 95110-2712
Main:  408 291-6200
Direct: 408 291-6203
Fax: 408 297-6000
Email: mmorton@be-law.com
_____

The information transmitted in this e-mail (including any attachments) is a private communication for the sole use of the above individual or entity and may contain privileged and/or confidential information that may be exempt from disclosure under law.  If you are not an intended recipient, do not forward this email.  Interception of this message may be a federal crime.  Any unauthorized dissemination, distribution, or copy of this communication (including any attachments) is strictly prohibited.  If this e-mail has been transmitted to you in error, please notify the person listed above immediately, and delete the original message (including any attachments).
_____

IRS Circular 230 Disclosure: To ensure compliance with requirements posed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Bergeson, LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.  2007 Bergeson, LLP [All Rights Reserved].

**From:** Mindy Morton
**Sent:** Wednesday, August 22, 2007 8:21 AM
**To:** 'Daniel S. Mount'; 'Kevin M. Pasquinelli'; 'romi.mayder@silicontests.com'; 'wes@wedirect.com'; 'wes@carseek.com'
**Cc:** John Fowler; Gail C. Simmons
**Subject:** Verigy v. Mayder, et al.

Gentlemen,
Enclosed please find the complaint and the summons for each of the defendants.  We are emailing Mr. Romi Mayder on behalf of Silicon Test Solutions, LLC and Silicon Test Systems, Inc. as we did not receive confirmation last night that the Mount firm would be representing both corporate entities with respect to this lawsuit.
We will be sending additional emails with the remaining public documents.  We plan to file all documents with the Federal Court this morning and we will inform you of any communications we receive from the court regarding the Application for the TRO.


Regards,
Mindy Morton

Mindy M. Morton, Esq.
Bergeson, LLP
303 Almaden Blvd.
Suite 500
San Jose, CA 95110-2712
Main:  408 291-6200
Direct: 408 291-6203
Fax: 408 297-6000
Email: mmorton@be-law.com

The information transmitted in this e-mail (including any attachments) is a private communication for the sole use of the above individual or entity and may contain privileged and/or confidential information that may be exempt from disclosure under law.  If you are not an intended recipient, do not forward this email.  Interception of this message may be a federal crime.  Any unauthorized dissemination, distribution, or copy of this communication (including any attachments) is strictly prohibited.  If this e-mail has been transmitted to you in error, please notify the person listed above immediately, and delete the original message (including any attachments).

IRS Circular 230 Disclosure: To ensure compliance with requirements posed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Bergeson, LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.  2007 Bergeson, LLP [All Rights Reserved].

1   DANIEL J. BERGESON, Bar No. 105439
    dbergeson@be-law.com
2   JOHN W. FOWLER, Bar No. 037463
    jfowler@be-law.com
3   MELINDA M. MORTON, Bar No. 209373
    mmorton@be-law.com
4   BERGESON, LLP
    303 Almaden Boulevard, Suite 500
5   San Jose, CA 95110-2712
    Telephone:  (408) 291-6200
6   Facsimile:  (408) 297-6000

7   Attorneys for Plaintiff
    VERIGY US, INC.

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12  VERIGY US, INC, a Delaware Corporation        Case No.

13                  Plaintiff,                    **CERTIFICATION OF INTERESTED
                                                  ENTITIES OR PERSONS PURSUANT TO
14          vs.                                   CIV. L.R. 3-16**

15  ROMI OMAR MAYDER, an individual;              Complaint Filed:
    WESLEY MAYDER, an individual; SILICON         Trial Date:        None Set
16  TEST SYSTEMS, INC., a California Corporation;
    and SILICON TEST SOLUTIONS, LLC, a
17  California Limited Liability Corporation,
    inclusive,
18
                    Defendants.
19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2      Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons,

3   associations of persons, firms, partnerships, corporations (including parent corporations) or other

4   entities (i) have a financial interest in the subject matter in controversy or in a party to the

5   proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be

6   substantially affected by the outcome of this proceeding:

7      Robert Pochowski

8      Verigy Ltd., a Singapore Corporation

9      Verigy (Netherlands) B.V.

10     Verigy (Singapore) Pte. Ltd.

11  Dated: August ⟨⟨, 2007                          BERGESON, LLP

12

13                                          By:_____
                                                Melinda M. Morton
14                                              Attorneys for Plaintiff
                                                VERIGY US, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:  (408) 297-6000

7  Attorneys for Plaintiff
   Verigy US, INC.

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12  VERIGY US, INC, a Delaware Corporation      Case No.

13                 Plaintiff,                    **PLAINTIFF'S *EX PARTE* APPLICATION
                                                 FOR TEMPORARY RESTRAINING
14      vs.                                      ORDER, ORDER TO SHOW CAUSE RE
                                                 PRELIMINARY INJUNCTION, AND
15  ROMI OMAR MAYDER, an individual,            AN ORDER AUTHORIZING
    WESLEY MAYDER, an individual, SILICON       EXPEDITED DISCOVERY;
16  TEST SYSTEMS, INC., a California Corporation, MEMORANDUM OF POINTS AND
    and SILICON TEST SOLUTIONS, LLC, a          AUTHORITIES IN SUPPORT OF *EX
17  California Limited Liability Corporation,     PARTE* APPLICATION FOR A
    inclusive,                                   TEMPORARY RESTRAINING
18                                               ORDER, ORDER TO SHOW CAUSE RE
                   Defendants.                   PRELIMINARY INJUNCTION, AND
19                                               AN ORDER AUTHORIZING
                                                 EXPEDITED DISCOVERY**
20

21

22

23

24              **REDACTED VERSION OF**

25          **HIGHLY CONFIDENTIALATTORNEYS EYES ONLY**

26            **DOCUMENT SUBMITTED UNDER SEAL**

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT................................................. 1

II.    STATEMENT OF FACTS.......................................................................................... 4

       A.    Verigy and Mayder's Employment ................................................................ 4

       B.    Verigy's Trade Secrets and Confidential and Proprietary Information ................ 6

       C.    The ▮▮▮▮ Project................................................................................ 7

       D.    Mayder's Theft of Trade Secrets and Establishment of Silicon Test Solutions
             While Still Employed by Verigy ................................................................. 10

       E.    Verigy's Investigation ................................................................................ 13

       F.    STS Entities' Product................................................................................. 14

       G.    Verigy's Notice to Defendants..................................................................... 14

III.   INJUNCTIVE RELIEF IS APPROPRIATE AND NECESSARY IN THIS CASE ........ 14

       A.    Verigy is Likely To Prevail On Its Claim for Misappropriation of Trade
             Secrets. ................................................................................................... 15

             1.    Verigy's Plans, Designs, Specifications and Business Strategies Are
                   Trade Secrets Entitled To Protection. ................................................ 15

             2.    Defendants Have Misappropriated Plaintiff's Trade Secrets. .................. 17

       B.    Verigy Is Likely To Prevail On Its Claim That Defendants' Conduct Violates
             Business & Professions Code Section 17200 *Et Seq*. ...................................... 17

       C.    Verigy Is Likely To Prevail On Its Claim For Breach of Contract ....................... 18

       D.    Verigy Is Likely To Prevail On Its Claims For False Advertising and False
             Designation of Origin................................................................................. 18

       E.    Plaintiff Will Suffer Irreparable Harm If Defendants' Activities Are Not
             Enjoined. ................................................................................................ 20

       F.    Issuance Of The Requested Injunctive Relief Would Protect Verigy's
             Legitimate Interests And Would Not Pose Any Significant Hardship On
             Defendants............................................................................................... 21

IV.    EXPEDITED DISCOVERY IS APPROPRIATE....................................................... 22

V.     CONCLUSION ..................................................................................................... 22

EX PARTE APPLICATION

# TABLE OF AUTHORITIES

## Federal Cases

*Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*
   179 F.3d 725 (9th Cir. 1999)...........................................................................15

*Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers*
   584 F.2d 308 (9th Cir. 1978)..........................................................................15

*Benham Jewelry Corp. v. Aron Basha Corp.*
   No. 97 CIV 3841 RWS, 1997 WL 639037 (S.D.N.Y. Oct. 14, 1997).........................22

*Business Intelligence Servs., Inc. v. Hudson*
   580 F. Supp. 1068 (S.D.N.Y. 1984)..................................................................20

*Campbell Soup Co. v. ConAgra, Inc.*
   977 F.2d 86 (3rd Cir. 1992).............................................................................20

*Cinebase Software, Inc. v. Media Guaranty Trust, Inc.*
   1998 WL 661465 (N.D. Cal. Sept. 22, 1998)......................................................16

*Computer Assocs. Int'l, Inc. v. Bryan*
   784 F. Supp. 982 (E.D.N.Y. 1992)....................................................................21

*Corporate Express Office Products, Inc. v. Martinez*
   No. CV-SA02-87 AHS (ANX), 2002 WL 31961458 (C.D. Cal. March 8, 2002)......20, 21

*Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Export*
   601 F. Supp. 1 (S.D. Fla. 1983)........................................................................22

*Gilder v. PGA Tour, Inc.*
   936 F.2d 417 (9th Cir. 1991)...........................................................................15

*Imi-Tech Corp. v. Gagliani*
   691 F. Supp. 214 (S.D. Cal. 1986) ...................................................................20, 21

*Integral Systems, Inc. v. Peoplesoft, Inc.*
   No. C-90-2598-DLJ, 1991 WL 498874 (N.D. Cal. July 19, 1991).........................20, 21

*Richardson v. Suzuki Motor Co., Ltd.*
   868 F.2d 1226 (Fed. Cir. 1989)........................................................................16, 17

*Semitool, Inc. v. Tokyo Electron America, Inc.*
   208 F.R.D. 273 (N.D. Cal. 2002) ......................................................................22

*Southland Sod Farms v. Stover Seed Co.*
   108 F.3d 1134 (9th Cir. 1997)..........................................................................19

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*
   240 F.3d 832 (9th Cir. 2001)...........................................................................15

**State Cases**

*American Credit Indemnity Co. v. Sacks*
    213 Cal. App. 3d 622 (1989)................................................................................20

*Cal. Serv. Station etc. Ass'n v. Union Oil Co.*
    232 Cal. App. 3d 44 (1991)..................................................................................19

*Courtesy Temporary Services v. Camacho*
    222 Cal. App. 3d 1278 (1990)..............................................................17, 18, 20

*Greenly v. Cooper*
    77 Cal. App.3d 382 (1978)...................................................................................18

*People by Mosk v. Lynam*
    253 Cal. App. 2d 959 (1967)...............................................................................19

*Southern Christian Leadership Conference v. Al Malaikah Auditorium Co.*
    230 Cal. App. 3d 207 (1991)...............................................................................21

*Vacco Industries, Inc. v. Van Den Berg, et al.*
    5 Cal. App. 4th 34...............................................................................................16

*Volpicelli v. Jared Sydney Torrance Memorial Hospital*
    109 Cal. App. 3d 242 (1980)...............................................................................21

*Whyte v. Schlage Lock Co.*
    101 Cal. App. 4th 1443 (2002)............................................................................16

**Federal Statutes**

15 U.S.C. 1125(a).......................................................................................................18, 19

**State Statutes**

California Business & Professions Code § 17200 ......................................................17, 18

California Business & Professions Code § 17203 .............................................................18

California Business & Professions Code § 17500 ......................................................18, 19

California Civil Code Section 3426.1(d)...........................................................................15

California Labor Code § 2860................................................................................... passim

**Federal Rules**

Federal Rule of Civil Procedure 26(d) ........................................................................ 22

Federal Rule of Civil Procedure 65(a) ........................................................................ 14

Local Civil Rule 65-1(b) ........................................................................................... 14

EX PARTE APPLICATION

1    Pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 65 and Civil Local Rules 7-10

2  and 65-1, plaintiff Verigy US, Inc. ("Verigy") hereby moves *ex parte* for a temporary restraining

3  order and order to show cause re preliminary injunction, and an order authorizing expedited

4  discovery.  This Application is based upon the Complaint and the Exhibits thereto, the

5  Memorandum of Points and Authorities contained herein, the supporting declarations of Robert

6  Pochowski, Ira Leventhal, Manuel Guerzoni, Ken Hanh Duc Lai, Andrew N. Lee, Melinda M.

7  Morton, and the proposed order submitted herewith.

8  **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

9    This case involves the misappropriation of Verigy's valuable trade secrets and confidential

10  information by Romi Mayder ("Mayder") a former Verigy employee, the new companies he

11  formed, Silicon Test Systems Inc. and Silicon Test Solutions, LLC (collectively, the "STS

12  Entities") and Mayder's brother Wesley Mayder, an investor and/or partner in the STS Entities.

13    Mayder was a long-term and trusted employee of Verigy and its predecessors-in-interest,

14  Agilent Technologies, Inc. ("Agilent") and Hewlett Packard Company ("HP") who abruptly

15  resigned his employment in September 2006.  One project that Mayder worked on at Verigy, the

16  ████ project, involved research and development using new technology to increase the

17  parallelism of Verigy's semiconductor test equipment.  Prior to Mayder's departure from Verigy,

18  Mayder incorporated a company and began marketing a product he called the "████."[1]

19  The ████ was virtually identical to the ████ project work he was doing at the same time

20  as a Verigy employee.  Further, he approached Verigy customers and others, presented them with

21  documents taken from Verigy and claimed that the ████ was owned by the STS Entities.

22  In fact, these documents presented to third parties without benefit of a confidentiality agreement

23  were Verigy property pursuant to the Agreement Regarding Confidential Information and

24  Proprietary Developments (the "ARCIPD") that Mayder signed with Verigy and the California

25  Labor Code Section 2860.

26  ────────────

27  [1] "████" is the code name for the project, and "████████████████████

28

1          In early July 2007, certain customers and suppliers informed Verigy that Mayder was

2    marketing a product that seemed remarkably similar to Verigy's products. Verigy commenced an

3    investigation and initiated discussions with Mayder and the STS Entities, but the discussions have

4    not been fruitful. In late July, a former Agilent officer, Robert Pochowski ("Pochowski"),

5    informed Verigy of his involvement with Mayder and the STS Entities. Pochowski provided

6    certain documents and emails to Verigy and its counsel on August 11 and 14, 2007 (the

7    "Pochowski Documents"). Verigy's investigation of Mayder's activities has uncovered the

8    following:

9            &bull; Mayder began seeking manufacturers and investors for the ████████ in June

10             2006 or earlier, approximately three months prior to Mayder's resignation from

11             Verigy.

12           &bull; On June 15, 2006, the domain name "silicontests.com" was registered with

13             Networks Solutions, LLC, an on-line registration service for domain names with

14             Mayder listed as the administrator. Mayder was still employed at Verigy.

15           &bull; In June 2006, prior to his departure from Verigy, Mayder sent a number of

16             documents to third parties that constituted or included Verigy confidential and

17             proprietary information, including technical data sheets, a request for quotation

18             ("RFQ"), excel spreadsheets listing customer requirements and block diagrams.

19             The document properties of the word and excel documents show that the

20             documents were created for Agilent, Verigy's predecessor-in-interest. Further, the

21             documents are identical or almost identical to Verigy documents.

22           &bull; Mayder had a product presentation and technical data sheets, containing Verigy

23             confidential and proprietary information, that he presented to potential customers

24             including ████████████████████████████████████

25             ████████████████████████████.

26           &bull; In August, 2006, while still employed by Verigy, Mayder drafted a patent

27             disclosure called ████████████████████████████

28             ████████████████ Mayder sent this disclosure to Pochowski, then later, in

1    a transparent attempt to hide the fact that he worked on the disclosure while still

2    employed at Verigy, ███████████████████████████████████████

3    ████████████████████.

4    • On September 8, 2006, approximately two weeks before Mayder's departure from

5    Verigy, Silicon Test Solutions, LLC. was registered with the Secretary of State of

6    California.

7    • On September 20, 2006, while Mayder was still employed at Verigy, as part of his

8    ongoing negotiations with ██████ to manufacture the ████████, Mayder

9    asked Pochowski to ensure that the non-disclosure agreement ("NDA") they were

10    negotiating with ██████ be doctored to have an effective date of October 1,

11    2006 instead of September 13, 2006, as Mayder was still employed by Verigy on

12    September 13, 2006.

13        Based on this evidence, it is clear that defendants have misappropriated Verigy's valuable

14 trade secrets and confidential and proprietary information, have used and disclosed it to third

15 parties for their own benefit, and should be enjoined from their further use and disclosure of such

16 information. Further, this evidence clearly shows Mayder's bad faith attempts to avoid the

17 requirements of the ARCIPD by changing dates and authors so as to make it appear that he

18 commenced his portion of the development work after he left Verigy.

19        By this application, Verigy also seeks a temporary restraining order preserving evidence in

20 defendants' possession related to this action, as well as restraining defendants from: using or

21 disclosing any of Verigy's trade secrets, confidential and/or proprietary business information, and

22 any product developed with the use of, with reference to, derived from, or incorporating all or any

23 part of Verigy's trade secret and/or confidential and proprietary business information; making

24 false or misleading statements about Verigy's operations, capabilities and products; and making

25 false or misleading statements about STS Entities' operations, contracts and the origins of the STS

26 Entities' product(s).

27

28

1 | II.     **STATEMENT OF FACTS**

2 |         A.     **Verigy and Mayder's Employment**

3 |         Verigy is a corporation duly organized and existing under the laws of the state of Delaware

4 | with its principal place of business in Cupertino, California. (Leventhal Decl., ¶ 3.) Verigy

5 | designs, develops, manufactures and sells advanced test systems and solutions for the

6 | semiconductor industry. (*Id.*) Verigy is a spin-off from Agilent Technologies, Inc. ("Agilent")

7 | and successor-in-interest to certain of Agilent's intellectual property. (*Id.* at ¶ 1.) Agilent is a

8 | spin-off from Hewlett Packard Company ("HP") and successor-in-interest to certain of HP's

9 | intellectual property. (*Id.*)

10 |         Due to the different architectures and functionalities of semiconductors, semiconductor test

11 | equipment and services are generally categorized by the type of semiconductors tested. (*Id.* at ¶

12 | 3.) The two general categories are: 1) equipment used to test memory semiconductors, referred to

13 | as memory testing; and 2) equipment used to test non-memory semiconductors, which includes

14 | testers for testing less complex, discrete semiconductors, and testers designed to test very

15 | complex, highly integrated semiconductors commonly referred to as System-on-a-Chip, or SOC,

16 | or System-in-a-Package, or SIP, testing. (*Id.*) Verigy offers a single platform for each of the two

17 | general categories of devices being tested: 1) Verigy's 93000 Series platform, designed to test

18 | System-on-a-Chip (SOC), System-in-a-Package (SIP) and high-speed memory devices, and 2)

19 | Verigy's Versatest V5000 Series platform, designed to test memory devices, including flash

20 | memory and multi-chip memory packages. (*Id.* at ¶ 4.) As part of Verigy's single scalable

21 | platform strategy, Verigy develops and offers performance and capability enhancements to its

22 | platforms as part of its product development roadmap. (*Id.*) Verigy also provides a range of

23 | services that assist its customers in quickly and cost effectively delivering the innovative, feature-

24 | rich products demanded by the end users. (*Id.*)

25 |         Mayder was employed by Verigy as a Research and Development Engineer in the Memory

26 | Test Division from June 1, 2006 until September 22, 2006 and by HP and Agilent, Verigy's

27 | predecessors-in-interest, from June 15, 1998 until Verigy was founded and spun off from Agilent

28 | on May 31, 2006. (Guerzoni Decl., ¶ 2)

1     As a condition of his employment with Verigy, Mayder signed the ARCIPD. (Guerzoni

2  Decl., ¶ 3, Ex. B.) The ARCIPD contains the following pertinent provisions:

3        1.     This Agreement concerns trade secrets, confidential business and technical information, and know-how not generally known to the public which will become known to or acquired or produced by me in connection with my employment by Verigy (hereinafter "Confidential Information.")  Confidential Information includes, without limitation, information on Verigy organizations and structure; staffing; finance; strategic plans; information on employee performance, compensation, assignments; information on research and development, manufacturing and marketing; as well as information which Verigy receives from third parties under an obligation of confidentiality. Confidential information also includes information of the foregoing types that I received during any period of employment with Agilent Technologies, Inc., whether such information relates to Agilent or is or was received from third parties under an obligation of confidentiality.  I agree: (a) to use such Confidential Information only in the performance of Verigy duties; (b) to hold such Confidential Information in confidence and trust; and (c) to use all reasonable precautions to ensure that such Confidential Information is not disclosed to unauthorized persons or used in an unauthorized manner, both during and after my employment with Verigy. (¶ 2)

        2.     This Agreement also concerns inventions or discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (herein called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by Verigy or that relate to the research and development or the business of Verigy.  Such Proprietary Developments are the sole property of Verigy, and I agree: (a) to disclose them promptly to Verigy; (b) to assign them to Verigy; and (c) to execute all documents and cooperate with Verigy in all necessary activities to obtain patent, copyright, mask works and/or trade secret protection in all countries, at Verigy US, Inc.'s expense. (¶ 3)

        3.     The product of all work performed by me during and within the scope of my Verigy employment including, without limitation, any reports, documents drawings, computer programs, devices and models, including all copies thereof, will be the property of Verigy and Verigy will have the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such a work product. (¶ 5)

        4.     I will not remove any Verigy property from Verigy premises without Verigy US, Inc.'s permission. (¶ 6)

        5.     Upon termination of my employment with Verigy, I will return all Verigy property to Verigy unless Verigy authorizes me in writing to retain such property. (¶ 8)

(*Id.*)

**B.    Verigy's Trade Secrets and Confidential and Proprietary Information**

Verigy has developed the proprietary and trade secret methods, technologies, operations and strategies central to its memory test business and other business operations (Verigy's "Trade Secrets") at substantial effort and expense. (Leventhal Decl., ¶¶ 6,7, 20, 22, 24.) Verigy has acquired and/or developed the Trade Secrets as a result of significant expenditures on research and development, testing, analysis, business planning, market research, customer and supplier relationships, procurement processes and others. (*Id.*) Verigy's Trade Secrets are valuable to Verigy because they are not generally known to Verigy's competitors and are not readily available to the public. (*Id..*) Verigy derives substantial economic value from its Trade Secrets not being generally known to the public or its competitors, who could obtain economic value from their unauthorized disclosure or use. (*Id.*)

While Mayder was employed by Verigy and Verigy's predecessors-in-interest, he was responsible for several research and development projects for the creation of new products to improve and advance Verigy's silicon chip testing systems, including the ███ Project. (*Id.* at ¶¶ 6, 8.) During each of these projects Mayder had access to Verigy's Confidential Information and Trade Secrets relating to his projects as well as other projects being developed by other employees. (*Id.* at ¶ 22.) In addition, Mayder had Confidential Information and Trade Secrets regarding Verigy's business relationship with third parties including Verigy's past, present, and prospective component suppliers and customers. (*Id.* at ¶ 23.) Mayder also had Confidential Information and Trade Secrets compiled from third-party customers that would likely be considered their proprietary and confidential materials and that was only shared with Verigy pursuant to a non-disclosure agreement. (*Id.* at ¶ 23.) Finally, Mayder also had Confidential Information and Trade Secrets relating to Verigy's product strategy; forecasted business demand; actual product consumption; business processes and tools; product technology roadmaps; product features and performance; product architecture; product development schedules; qualification processes and results; contract manufacturer agreements and business relationship; and future manufacturing strategies. (*Id.* at ¶ 22.)

Because its Trade Secrets and Confidential Information are so valuable, Agilent, until the

EX PARTE APPLICATION
CASE NO.

1  sale of its intellectual property to Verigy, and Verigy, since the purchase of the intellectual
2  property, have taken reasonable and appropriate measures to protect such information. (*Id.* at ¶ 7.)
3  For example, all Verigy employees, consultants and contractors are required to sign an the
4  ARCIPD; all customers, vendors and suppliers are required to sign a non-disclosure agreement;
5  access to all of Verigy's offices is restricted and all employees must have a keycard to proceed
6  past the public lobby of Verigy's buildings; all visitors to all of Verigy's offices must sign into and
7  out of a log and be escorted by a Verigy employee while on the premises; technical documents
8  such as project data sheets and customer requirements are protected on the computer system and
9  only authorized users can access them; and confidential documents sent to third parties are
10  customarily marked "confidential." (*Id.*)  In addition, the existence and importance of Verigy's
11  Trade Secrets is addressed and emphasized with new employees in connection with their joining
12  Verigy and at exit interviews. (*Id.*)

13      Verigy shares confidential and proprietary information concerning products and potential
14  products with some customers under non-disclosure agreements. (*Id.* at ¶ 23.)  In return, some of
15  these customers share their confidential and proprietary information regarding their products with
16  Verigy. (*Id.*)  Some of the customers with whom Verigy has shared and received confidential
17  information include ███████████████████████████████████████
18  ██████████████████████████████████████████████████████
19  ███████████████████. (*Id.*)

20  **C.    The ██████ Project**
21      Mayder was working on the ██████ project in 2006. (*Id.* at ¶ 8.)  The purpose of the ████
22  ██████████████████████████████████████████████████████
23  ████████████████████████████████████████████
24  ██████████████████████████████████████████████████████
25  ████████████████████████████████████
26  ██████████████████████. (*Id.*)  During the ██████ project, Mayder learned of Verigy's
27  confidential business plans and strategy regarding possible deployment, potential manufacturers
28  and suppliers, materials and implementation, and customer requirements. (*Id.*)

1      Mayder was the Technical RFQ Lead and the MTS (Memory Test Systems) Hardware

2   Design Engineer for the ███████████ project, which was part of the ██████ project. (*Id.* at ¶

3   9.) The ██████████ project was also Verigy's confidential, proprietary and trade secret

4   information. (*Id.*) As part of his work on this project, Mayder wrote a document entitled "██████

5   ████████████." (*Id.* at ¶ 9, Ex. B) ████████████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████.

10        ████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ███████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████. (*Id.* at ¶ 11.)

21        ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ██████████████████████████████████████████████████████

27   ██████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████

EX PARTE APPLICATION
CASE NO.



EX PARTE APPLICATION
CASE NO.

1    ███████████████████. (*Id.*)

2        The ████████████ projects involved numerous Verigy trade secrets and

3    confidential information. (*Id.* at ¶ 22.) This includes but is not limited to know-how, research,

4    techniques, and information relating to: ████████████████████████

5    ██████████████████████████████████████████

6    ██████████████████████████████████████████

7    ██████████████████████████████████████████

8    ████████████████████; forecasted business demand; actual product consumption; business

9    processes and tools; product technology roadmaps; product features and performance; product

10   architecture; product development schedules; qualification processes and results; contract

11   manufacturer agreements and business relationship; and manufacturing strategy. (*Id.*)

12       **D.    Mayder's Theft of Trade Secrets and Establishment of Silicon Test Solutions**
         **While Still Employed by Verigy**
13

14       On June 15, 2006, while Mayder was still employed by Verigy, the domain name

15   "silicontests.com" was registered with networksolutions.com, an on-line registration service for

16   domain names, on behalf of Mayder. The administrator's name for was given as Romi Mayder.

17   (Morton Decl., ¶ 3, Ex. A.)

18       Mayder was seeking investors for his competing venture in or about early June 2006.

19   (Pochowksi Decl., ¶ 4, 6.) At 1:24 p.m. on Monday, June 12, 2006, Mayder sent an email to

20   Pochowksi, without benefit of a NDA, from Mayder's private email account at

21   romi.mayder@yahoo.com. (*Id.* at ¶ 7, Ex.A.) Mayder sent this email at 1:24 pm, during his work

22   day at Verigy. (*Id.*) The document attached to the email contains Verigy Trade Secrets and

23   indicates in the document properties that it was created at Agilent Technologies. (Leventhal Decl.,

24   ¶¶ 9, 22; Pochowski Decl., Ex. I; Lee Decl., ¶ 6, Ex. A.) The document is virtually identical to a

25   document Mayder created for the ██████ project at Verigy. (Compare Pochowski Decl., Ex. A

26   with Lee Decl., Ex. A; *see also* Morton Decl., ¶ 4, Ex. B (a redline comparison of the two

27   documents).) The documents even have the same typographical and grammatical errors. (Morton

28   Decl., ¶ 4) For example, on page one of both documents, ████████████████████

1   ▮▮▮▮▮▮." (*Id.*) Further, ▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮" (*Id.*)

3       On information and belief, Mayder also communicated with ▮▮▮▮▮▮, a

4   third-party component supplier, prior to June 12, 2006, as a June 12, 2006 email from Mayder to

5   Pochowski indicates that ▮▮▮▮ had already provided pricing to Mayder. (Pochowski Decl., ¶

6   7, Ex. A.) Mayder's contact person at ▮▮▮▮ was ▮▮▮▮▮▮, the same contact person

7   Verigy communicated with regarding the ▮▮▮▮ device. (Pochowski Decl., ¶7 and Lee Decl.

8   ¶ 6)

9       At 11:39 a.m. on Wednesday, June 14, 2006, during his workday at Verigy, Mayder sent

10  an email to Pochowski enclosing a document he claimed was the RFQ for the ▮▮▮▮ and an

11  updated version of the technical data sheet Mayder previously sent to Pochowski. (Pochowski

12  Decl., ¶ 9, Ex. B.) In the email, Mayder asks Pochowski to send the RFQ to ▮▮▮▮

13  ▮▮▮▮. (*Id.*) Mayder does not ask Pochowski to negotiate an NDA with ▮▮▮▮ prior

14  to sending the documents. (*Id.*) The RFQ attached to this email is virtually identical to Trade

15  Secret documents Mayder worked on at Verigy as part of his duties on the ▮▮▮▮ project.

16  (Compare Pochowski Decl., Ex. B with Lee Decl., Ex. A; see also Morton Decl., Ex. C.) The

17  documents are so similar that they share typographical errors. (Compare Pochowksi Decl., Ex. B

18  with Lee Decl., Ex. A; see also Morton Decl., Ex. C (a redline comparison of the two

19  documents).) For example, on page 2 of both documents, the paragraph lettering skips from e to

20  h. (Morton Decl., ¶ 5, Ex. C.) On page 5, ▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮." (*Id.*) A redline of the two documents shows that most of the changes

22  Mayder made to the document were deleting the words "Agilent" and ▮▮▮▮ and replacing

23  them with "Silicon Test System" and ▮▮▮▮ (*Id.*) Further, Mayder's RFQ contains references

24  to Verigy within the document ("▮▮▮▮▮▮▮▮▮ ▮▮▮

25  ▮▮▮▮.") that he neglected to remove before sending the document to

26  Pochowski. (*Id.*) Finally, the document properties of Mayder's RFQ show that the document was

27  actually created by Andy Lee, a Verigy employee, for Agilent. (Pochowksi Decl., Ex. J.)

28      On Tuesday, June 20, 2006, Mayder contacted a representative for ▮▮▮▮

1   ██████████ and sent a RFQ for the ██████████ without benefit of an NDA. (Pochowski

2   Decl., ¶ 10, Ex. C) This document was copied to Pochowski, also without an NDA. (*Id.*) The

3   RFQ was sent as an attachment to an email at 9:43 am, again during Mayder's workday at Verigy.

4   This RFQ is an update of the RFQ sent to Pochowski on June 14, 2006. (Compare *Id.*, Ex. B with

5   Ex. C.) The updated version removes the reference to the ██████████████

6   ██████ and replaces it with the ████████████████ (Compare *Id.*, Ex. B with

7   Ex. C.) The typographical errors remain the same. (*Id.*)

8          On June 26, 2006, Mayder shared an Excel spreadsheet concerning ████████████

9   ████████████████████████████ with Pochowski, again without

10  benefit of an NDA. (Pochowski Decl., ¶ 11, Ex. D.) These documents appear to be identical to

11  Trade Secret documents created at Verigy, and the Excel spreadsheet has the same typographical

12  errors as the original Verigy document. (Compare Pochowski Decl., Exh. D with Lai Decl., Ex

13  A.) For example, the word "██████████████████" in both documents, the word "████

14  ████████████," and the word "████████████████████." (Morton Decl., ¶ 6) The

15  document properties of the spreadsheet shows that the document was created for Agilent by Hanh

16  Lai, a Verigy employee. (Pochowski Decl., ¶ K)

17         On July 9, 2006, Mayder shared a number of documents containing Verigy Trade Secrets

18  with Pochowski, again without benefit of a NDA, including a PowerPoint presentation, and Excel

19  spreadsheet and a technical data sheet describing the ██████████. (Pochowksi Decl., ¶ 12, Ex.

20  E.) Verigy is informed and believes that Mayder later shared this information or similar

21  information with Verigy customers ██████████████████. (*Id.* at ¶ 16)

22         On August 27, 2006, Mayder sent a draft patent application containing Verigy trade secrets

23  to a third party without benefit of a NDA. (*Id.* at ¶ 13, Ex. F.) This d██████████████

24  ║Memory Test Division," the Verigy division that Mayder worked in. This document appears to

25  incorporate the technical specifications and designs and/or very similar technical specifications

26  and designs to those Mayder developed during the ██████ project. (*Id.*)

27         On September 8, 2006, a certificate of incorporation was filed on behalf of Silicon Test

28  Solutions, LLC. with the Secretary of State, California. (Morton Decl., ¶ 7, Ex. D.)

1    On September 20, 2006, as part of his ongoing negotiations with ████████ to

2  manufacture the ██████████ containing Verigy's Trade Secrets, Verigy asked one of his potential

3  investors to ensure that the NDA they were negotiating with ████████ be doctored to have an

4  effective date of October 1, 2006 instead of September 13, 2006, as Mayder was still employed by

5  Verigy on September 13, 2006, the date reflected in the draft NDA ████████. (Pochowksi

6  Decl., ¶ 15, Ex. H.)

7    Mayder resigned from his employment with Verigy effective September 22, 2006.

8  (Guerzoni Decl., ¶ 2) An exit interview was conducted on September 20, 2006. (*Id.* at ¶ 3.) As

9  part of the exit interview, Mayder was reminded of his continuing obligations to Verigy.

10  (Guerzoni Decl., ¶ 6; Leventhal Decl., ¶ 7)

11    On September 24, 2006, only two days after his final day at Verigy, Mayder sent an email

12  to Pochowski regarding a meeting the next day with patent counsel to file a provisional patent for

13  the ████████. (Pochowksi Decl., ¶14, Ex. G.) In the email, Mayder asks Pochowski to tell

14  the patent counsel that Pochowski was the author of the patent disclosure and not Mayder. (*Id.*)

15  In fact, the disclosure Mayder and Pochowski presented to the lawyer on September 25, 2006 was

16  an update of the disclosure Mayder wrote and sent to Pochowski on August 27, 2006. (*Id.*)

17    **E.    Verigy's Investigation**

18    In early July 2007, ████████████████████████████████████

19  ████████████████████████████████████████████. (Leventhal Decl., ¶ 25)

20  Verigy's counsel contacted Mayder on July 6, 2007 and again on July 9, 2007, reminding Mayder

21  of his obligations under the ARCIPD and asking for assurances that he was and would comply

22  with the ARCIPD. (Morton Decl., ¶ 8, Ex. E.) Verigy initiated discussions with Mayder and the

23  STS Entities, but the parties have not been able to resolve this dispute. (*Id.*)

24    In late July, Pochowski informed Verigy of his involvement with Mayder and the STS

25  Entities. (Leventhal Decl., ¶ 26). After Pochowski's involvement with Mayder and the STS

26  Entities ended, Pochowski reviewed some of the correspondence from Mayder and discovered that

27  the document properties for some of the documents indicated that the documents were actually

28  Agilent documents. (Pochowski Decl., ¶ 18) Pochowski provided certain documents and emails

13

1  to Verigy and its counsel on August 11 and 14, 2007 (the "Pochowski Documents").  (Morton

2  Decl., ¶ 9)

3          Verigy's counsel then reviewed the Pochowski documents and compared them to Verigy

4  documents, confirming the similarity between them as discussed above.  (*Id.*)  This investigation

5  revealed that the defendants, while Mayder was employed by Verigy, used Verigy computers and

6  the Verigy computer network to conduct improper activities relating to the business of STS

7  Entities, including the use of Verigy's proprietary information in the development of a product.

8  (*Id.* at ¶ 10.)  The investigation also revealed that defendants formed and promoted a corporation

9  and developed a competing product almost identical to the product Mayder was working on

10  simultaneously at Verigy, all while Mayder was still employed at Verigy.  (*Id.*)

11      **F.      STS Entities' Product**

12          The STS Entities' website at www.silicontests.com (the "STS Website") advertises the

13  Enhancer family of products, all of which have "been uniquely designed to optimize the

14  parallelism of already installed ATE test cells."  (*Id.* at ¶ 11, Ex. F.)  The STS Website claims that

15  "We have invented a new paradigm for substantially increasing parallelism of ATE test cells."

16  The STS Website explains that the use of the Enhancer products "will enable an existing wafer

17  sort test cell to test up to 2x or 4x the existing number of DUTs."  (*Id.*)  As described by the STS

18  Entities Website, the Enhancer family of products appear to perform the same functions as

19  Verigy's ▮▮▮ project designs and the ▮▮▮▮▮▮▮▮▮▮▮ currently in production.

20  (Leventhal Decl., ¶ 21.)

21      **G.      Verigy's Notice to Defendants**

22          Pursuant to Civil Local Rule 65-1(b), Verigy's counsel gave notice of Verigy's motion for

23  a temporary restraining order to defendants by telephone on August 21, 2007.  (Morton Decl. ¶¶

24  12-13.)  Verigy sent copies of the Complaint and public-redacted versions of the TRO papers by

25  email to defendants on August 22, 2007.

26  **III.    INJUNCTIVE RELIEF IS APPROPRIATE AND NECESSARY IN THIS CASE**

27          Federal Rule of Civil Procedure 65(a) authorizes this Court to issue a preliminary

28  injunction.  A party moving for a preliminary injunction meets its burden by demonstrating either:

14

- A combination of *probable* success on the merits and the *possibility* of irreparable injury; *or*

- Serious questions as to these matters and the balance of hardships tips *sharply* in plaintiff's favor.

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839-40 (9th Cir. 2001) (emphasis added). Probable success on the merits requires plaintiff to show a reasonable probability of success, not an overwhelming likelihood. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). "Serious questions" means questions that involve a fair chance of success on the merits that cannot be resolved one way such that the court perceives a need to preserve the status quo. *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 732 (9th Cir. 1999). The two factors of probable success and irreparable injury or balance of hardships are analyzed as part of a continuum so that a strong showing on one factor can support injunctive relief even if the showing on the other factor is less strong. *Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978) (irreparable injury and probability of success are 'extremes of a single continuum').

Verigy makes the required showing under either test.

**A.    Verigy is Likely To Prevail On Its Claim for Misappropriation of Trade Secrets.**

**1.    Verigy's Plans, Designs, Specifications and Business Strategies Are Trade Secrets Entitled To Protection.**

California defines a trade secret broadly, as:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (1)    Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (2)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Civil Code Section 3426.1(d)

Verigy's trade secrets generally include: methods, technologies, operations and strategies central to its memory test business and other business operations; forecasted business demand; actual product consumption; business processes and tools; product technology roadmaps; product

15

1  features and performance; product architecture; product development schedules; qualification

2  processes and results; contract manufacturer agreements and business relationship; and

3  manufacturing strategies.  Specifically, the ███████ technical data sheet, the ███████ RFQ,

4  the excel spreadsheet ███████████████████████ and the seven ███████

5  ████████████████████████████████ are all confidential Verigy documents that

6  have value from not being generally known to the public.  (Lee Decl., ¶ 4, Lai Decl., ¶ 7.)

7          Plans, designs, engineering drawings, strategies and related information such as those

8  claimed by Verigy are the types of technical information that the courts axiomatically consider to

9  be trade secret material.  *See, e.g., Whyte v. Schlage Lock Co.,* 101 Cal. App. 4th 1443, 1452-3

10  (2002) (pricing of new products, market research data, payment terms offered to customers and

11  offered by suppliers, and strategic plans are trade secrets); *Cinebase Software, Inc. v. Media*

12  *Guaranty Trust, Inc.*, 1998 WL 661465, *7 (N.D. Cal. Sept. 22, 1998) (designs, specifications, and

13  the technical knowhow of engineers are trade secrets); *Vacco Industries, Inc. v. Van Den Berg, et*

14  *al.,* 5 Cal. App. 4th 34, 42 and 50 (1992) (manufacturing and engineering technology, engineering

15  notes, initial, preliminary and final drawings, quality controls and testing procedures are trade

16  secrets); *Richardson v. Suzuki Motor Co., Ltd.,* 868 F.2d 1226, 1243 (Fed. Cir. 1989) ( processes,

17  engineering drawings, designs and design modifications are trade secrets).  Verigy has therefore

18  met the first prong of the UTSA.

19          Verigy has also met the second prong of the UTSA in that it can show that it has used

20  reasonable efforts to maintain the secrecy of its information.  All Verigy employees, consultants

21  and contractors are required to sign an the ARCIPD; all customers, vendors and suppliers are

22  required to sign a non-disclosure agreement; access to all of Verigy's offices is restricted and all

23  employees must have a keycard to enter the buildings; all visitors to all of Verigy's offices must

24  sign into and out of a log and be escorted by a Verigy employee while on the premises; technical

25  documents such as project data sheets and customer requirements are protected on the computer

26  system and only authorized users can access them; and confidential documents sent to third parties

27  are customarily marked "confidential." (Leventhal Decl., ¶ 7.)  In addition, the existence and

28  importance of Verigy Trade Secrets is addressed and emphasized with new employees and also at

1    exit interviews. (*Id.*)

2              **2.    Defendants Have Misappropriated Plaintiff's Trade Secrets.**

3         It is also clear that defendants have misappropriated Verigy's trade secrets. The evidence

4    of misappropriation discovered thus far is compelling.

5         First, Mayder began seeking manufacturers and investors for the ▮▮▮▮▮ in or about

6    June 2006, approximately three months prior to his resignation from Verigy in violation of his

7    employment agreement with Verigy. (Pochowski Decl., ¶ 4)  Mayder registered the domain name

8    www.silicontests.com on June 15, 2006. (Morton Decl., ¶ 3, Ex. A.)  Mayder created RFQs and

9    marketing documents based on Verigy documents. (Pochowski Decl., ¶ 18, Morton Decl., ¶ 10)

10   Mayder used Verigy's computer network to copy or send at least 10 confidential and proprietary

11   Verigy documents to third parties in violation of the ARCIPD. (Morton Decl., ¶¶ 5,6; Lai Decl., ¶

12   7; Lee Decl., ¶ 4; Pochowski Decl., ¶¶ 7, 9-12, 18)  Mayder also drafted a patent disclosure for his

13   own companies based on his work on Verigy's ▮▮▮ project. (Leventhal Decl., ¶ 21; Pochowski

14   Decl. ¶ 13)  Finally, Mayder incorporated Silicon Test Solutions, LLC two weeks before his

15   departure from Verigy. (Morton Decl., ¶ 7, Ex. D)  Mayder performed all of these actions while

16   still employed at Verigy, in direct violation of the ARCIPD and California Labor Code Section

17   2860.

18        Verigy is likely to succeed on its claim of trade secret misappropriation, and is entitled to

19   an injunction on that basis.

20    **B.    Verigy Is Likely To Prevail On Its Claim That Defendants' Conduct Violates**
          **Business & Professions Code Section 17200 *Et Seq.***
21

22        Defendants' misappropriation of trade secrets from Verigy and their use of such

23   information to start up a competing business while Mayder was still employed by Verigy also

24   constitute acts of unfair competition under Business and Professions Code Section 17200 *et seq.*

25   "Indeed, the cases are legion holding that a former employee's use of confidential information

26   obtained from his former employer to compete with him and to solicit the business of his former

27   employer's customers, is regarded as unfair competition." *Courtesy Temporary Services v.*

28   *Camacho*, 222 Cal. App. 3d 1278, 1292 (1990); *see also Greenly v. Cooper*, 77 Cal. App.3d 382,

1 │ 391-92 (1978) (former employee's use of confidential information obtained from former employer

2 │ to solicit the business of former employer's customers is unfair competition.) "Any person who

3 │ engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of

4 │ competent jurisdiction." Business & Professions Code § 17203. Thus, defendants' unfair

5 │ practices should be enjoined pursuant to Business and Professions Code Section 17200 *et seq.*

6 │ *Courtesy Temporary Services,* 222 Cal. App. 3d at 1291.

7 │     **C.**      **Verigy Is Likely To Prevail On Its Claim For Breach of Contract**

8 │       All inventions, discoveries, designs, improvements, works of authorship, reports,

9 │ documents, drawings, devices and models created by Mayder during his employment at Verigy

10 │ belong to Verigy and contain Verigy's Confidential Information and Trade Secrets. (Guerzoni

11 │ Decl., Ex. B.) Pursuant to the ARCIPD, Mayder was not entitled to remove these items from

12 │ Verigy's office, to retain possession of any copies, to disclose any Confidential Information, or to

13 │ use Confidential Information other than in performance of his duties at Verigy. (*Id.*) Mayder was

14 │ also required to assign all Proprietary Developments that were "conceived by [him] alone or with

15 │ others while [he] was employed by Verigy." (*Id.*) Further, under the California Labor Code,

16 │ "Everything which an employee acquires by virtue of his employment, except the compensation

17 │ which is due to him from his employer, belongs to the employer." Cal. Labor Code § 2860(a).

18 │ Verigy has provided extensive evidence that Mayder was using Verigy documents to jumpstart his

19 │ independent work for the STS Entities, that Mayder conceived of an invention while still

20 │ employed at Verigy but did not assign it to Verigy, and that Mayder disclosed Verigy's

21 │ Confidential Information and Trade Secrets to his potential customers and component suppliers.

22 │ (Pochowski Decl., ¶10) Verigy is therefore likely to prevail on its breach of contract claim.

23 │     **D.**      **Verigy Is Likely To Prevail On Its Claims For False Advertising and False Designation of Origin**

24 │

25 │       Defendants' false and misleading statements constitute false advertising under both

26 │ California Business and Professions Code § 17500 and 15 U.S.C. 1125(a). Defendants have

27 │ published and advertised on their webpage at www.silicontests.com that "We have invented a new

28 │ paradigm for substantially increasing parallelism of ATE test cells." (Morton Decl., ¶ 12, Ex. F.)

1

2

3

4

5 ‖ (Pochowski Decl., ¶ 5)

6 ‖       To prevail under § 17500, Verigy must show that (1) the statements in the advertising are

7 ‖ untrue or misleading; and (2) the defendants knew, or should have known, that the statements

8 ‖ were untrue or misleading.  Cal. Bus. & Prof. Code § 17500; *see also People by Mosk v. Lynam*,

9 ‖ 253 Cal. App. 2d 959, 965 (1967).  Further, Verigy must show that the objectionable conduct is

10 ‖ likely to reoccur.  *See, e.g., Cal. Serv. Station etc. Ass'n v. Union Oil Co.*, 232 Cal. App. 3d 44, 57

11 ‖ (1991)  Verigy meets all three requirements.  As discussed above, the statements are false and

12 ‖ misleading and defendants knew or should have known that they were false and misleading.

13 ‖ Further, as STS Entities' false website advertising is ongoing, and as STS Entities and Mayder

14 ‖ apparently continue to solicit customers of Verigy and provide promotional materials containing

15 ‖ Verigy's Trade Secrets, the conduct is not only likely to reoccur, it has never stopped occurring.

16 ‖       To obtain an injunction under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), Verigy

17 ‖ must show that "(1) defendants made a false statement of fact in a commercial advertisement

18 ‖ about its own or another's product; (2) the statement actually deceived or has a tendency to

19 ‖ deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to

20 ‖ influence the consumer's purchasing decision; [and] (4) the defendant caused its false statement to

21 ‖ enter interstate commerce."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th

22 ‖ Cir. 1997).  Injury need not be shown to obtain injunctive relief.  *Id.* at 1145.  As discussed above,

23 ‖ STS Entities' website is a literally false statement about the origin of its own product.  Finally, by

24 ‖ placing the advertisement on STS Entities' website at www.silicontests.com , defendants have

25 ‖ caused the false statement to enter interstate commerce.  Verigy therefore is likely to prevail under

26 ‖ § 43(a) of the Lanham Act.

27

28

1

**E.    Plaintiff Will Suffer Irreparable Harm If Defendants' Activities Are Not Enjoined.**

2

3        Verigy can make the requisite showing of the possibility of irreparable injury.  It is

4 obvious that Verigy has been, and will continue to be, irreparably harmed as a result of

5 defendants' acts.    Harm to a plaintiff's competitive position lacks an adequate remedy at law.

6 *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986); *see also Integral Systems,*

7 *Inc. v. Peoplesoft, Inc.*, No. C-90-2598-DLJ, 1991 WL 498874, *17 (N.D. Cal. July 19, 1991)

8 (harm to plaintiff's competitive position established by substantial investments of time and money

9 lacks an adequate remedy at law).

10        Losses that are difficult to quantify, such as "customer losses, [loss] of future sales,

11 damages to long-term relationships with its customers, loss of referrals and loss of goodwill in the

12 marketplace" constitute irreparable harm.  *Corporate Express Office Products, Inc. v. Martinez*,

13 No. CV-SA02-87 AHS (ANX), 2002 WL 31961458, *5-6 (C.D. Cal. March 8, 2002); *Business*

14 *Intelligence Servs., Inc. v. Hudson*, 580 F. Supp. 1068, 1072 (S.D.N.Y. 1984) (enforcing non-

15 compete and confidentiality provisions because irreparable harm existed due to the "ephemeral

16 and essential quality of the knowledge" of plaintiff's computer software and client information,

17 and the difficulty plaintiff would have showing the existence of injury and monetary damages).

18 Further, "an intention to make an imminent or continued use of a trade secret or to disclose it to a

19 competitor will almost certainly show immediate irreparable harm." *Campbell Soup Co. v.*

20 *ConAgra, Inc.*, 977 F.2d 86, 92-3 (3rd Cir. 1992).

21        In addition, defendants' actions in using Verigy's trade secrets and confidential

22 information to establish a competing business "is enjoinable as a patently unfair trade practice

23 under the [Uniform Trade Secrets Act]." *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal.

24 App. 3d at 1290-91; *see also, American Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 622, 637-

25 8 (1989) (plaintiff likely to suffer "continuing interim harm in the absence of an injunction" where

26 defendant, a former employee of plaintiff, solicited plaintiff's clients using its trade secret

27 information).

28

1    **F.    Issuance Of The Requested Injunctive Relief Would Protect Verigy's**
     **Legitimate Interests And Would Not Pose Any Significant Hardship On**
2    **Defendants**

3          A preliminary injunction does not purport to fix the ultimate rights and obligations of the

4    parties to an action. *See Volpicelli v. Jared Sydney Torrance Memorial Hospital,* 109 Cal. App.

5    3d 242 (1980). The purpose of a preliminary injunction is to preserve the status quo until the

6    merits of an action can be determined. *See Southern Christian Leadership Conference v. Al*

7    *Malaikah Auditorium Co.,* 230 Cal. App. 3d 207 (1991).

8          In the instant case, the proposed injunction will not cause any cognizable injury to

9    defendants since it only seeks to enjoin the use of Verigy's proprietary information, the

10   preservation of evidence, and that defendants refrain from making false and misleading statements

11   to Verigy's customers and potential customers about Verigy's operations and products. In

12   contrast, if defendants' ability to use Verigy's trade secrets and to make false and misleading

13   statements to Verigy's customers remains unfettered, Verigy will lose not only potential contracts,

14   but also goodwill and follow-on opportunities to provide services to those customers. An

15   injunction is warranted under these circumstances. *See Imi-Tech Corp. v. Gagliani,* 691 F. Supp.

16   at 231 (harm to a plaintiff's competitive position lacks an adequate remedy at law); *see also*

17   *Integral Systems, Inc. v. Peoplesoft, Inc.,* No. C-90-2598-DLJ, 1991 WL 498874, *17 (N.D. Cal.

18   July 19, 1991) (harm to plaintiff's competitive position established by substantial investments of

19   time and money lacks an adequate remedy at law); *Corporate Express Products, Inc. v. Martinez,*

20   No. CV-SA02-87 AHS (ANX), 2002 WL 31961458, *5-6 (C.D. Cal. March 8, 2002) (losses that

21   are difficult to quantify, such as "customer losses, [loss] of future sales, damages to long-term

22   relationships with its customers, loss of referrals and loss of goodwill in the marketplace"

23   constitute irreparable harm); *Computer Assocs. Int'l, Inc. v. Bryan,* 784 F. Supp. 982, 1009

24   (E.D.N.Y. 1992) (injunction against marketing of competing, copied program granted because the

25   loss of trade secrets is not measurable in money damages and because "continued marketing and

26   sales by [defendant] of [the infringing program] will cause more than monetary injury to

27   [plaintiff], in that it may lose its competitive edge, which cannot be compensated by money

28   damages").

## IV.    EXPEDITED DISCOVERY IS APPROPRIATE

Rule 26(d) of the Federal Rules of Civil Procedure authorize this Court to shorten the time for taking discovery. The "conventional standard" is a showing of "good cause." *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002) (evaluating request for expedited discovery and granting it based on good cause shown). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. It should be noted that courts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition." *Id., citing Benham Jewelry Corp. v. Aron Basha Corp.,* No. 97 CIV 3841 RWS, 1997 WL 639037, * 20 (S.D.N.Y. Oct. 14, 1997) (stating "District Courts have broad power to permit expedited discovery in appropriate cases…and such discovery is routinely granted in actions involving infringement and unfair competition."). Here, discovery is necessary for a preliminary injunction hearing as well as to discover the true extent of defendants' misappropriation of Verigy's trade secret and confidential and proprietary information.

Further, courts often order expedited discovery "when some unusual circumstances exist that would likely prejudice the parties if they were required to wait the normal time." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Export,* 601 F. Supp. 1, 3 (S.D. Fla. 1983) (expedited discovery may be granted *ex parte*). Given the ephemeral nature of computer information, and the ease with which it can be altered and/or erased, expedited discovery is appropriate and, based on the plaintiff's showing here, required.

## V.    CONCLUSION

For the foregoing reasons, Verigy respectfully requests that the Court grant its *ex parte* application.

Dated: August 21, 2007

BERGESON, LLP

By: _____
Melinda M. Morton
Attorneys for Plaintiff
Verigy US, INC.

1    DANIEL J. BERGESON, Bar No. 105439
     dbergeson@be-law.com
2    JOHN W. FOWLER, Bar No. 037463
     jfowler@be-law.com
3    MELINDA M. MORTON, Bar No. 209373
     mmorton@be-law.com
4    BERGESON, LLP
     303 Almaden Boulevard, Suite 500
5    San Jose, CA 95110-2712
     Telephone: (408) 291-6200
6    Facsimile: (408) 297-6000

7    Attorneys for Plaintiff
     VERIGY US, INC.

8

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                     SAN JOSE DIVISION

| | |
|---|---|
| 12   VERIGY US, INC, a Delaware Corporation | Case No. |
| 13           Plaintiff, | |
| 14       vs. | **PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL** |
| 15   ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON | |
| 16   TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a | |
| 17   California Limited Liability Corporation, inclusive, | Complaint Filed: <br> Trial Date:        None Set |
| 18           Defendants. | |
| 19 | |

20

21

22

23

24

25

26

27

28

---

PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL
CASE NO.

1    Pursuant to Civil Local Rules 7-11(a) and 79-5(b), Plaintiff Verigy U.S., Inc. ("Plaintiff"

2   or "Verigy") requests that the following materials be filed under seal, as they contain trade secrets

3   and other confidential research, development, or commercial information, which is developed and

4   maintained in a highly confidential fashion and gives Verigy an advantage over its competitors.

5   Disclosure of this material "could result in improper use of the material for . . . infringement upon

6   trade secrets," and therefore Verigy respectfully requests that it be filed under seal. *Hagestad v.*

7   *Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). The documents submitted under seal include:

8

9       1.   Portions of Verigy's *Ex Parte* Application for Temporary Restraining Order, Order

10          to Show Cause re: Preliminary Injunction, and an Order Authorizing Expedited Discovery

11          and Memorandum of Points and Authorities in Support;

12       2.   Portions of the Declaration of Andrew N. Lee and Exhibits A and B;

13       3.   Portions of the Declaration of Ken Hanh Duc Lai and Exhibits A, B, C, and D;

14       4.   Portions of the Declaration of Ira Leventhal and Exhibits B and C;

15       5.   Portions of the Declaration of Melinda M. Morton and Exhibits B and C; and

16       6.   Portions of the Declaration of Robert Pochowski and Exhibits A, B, C, D, E, F, G,

17       H, I, J, and K.

18   These materials (hereafter "the Materials") each disclose information that has been

19   designated as "Highly Confidential—Attorneys' Eyes Only" (Documents 1-5) or "Confidential"

20   (Document 6) by Verigy because they contain confidential, proprietary and trade secret

21   information relating to Verigy's design specifications, technical procurement processes; research

22   regarding customer device requirements; block diagrams; product development and strategic

23   plans, product strategy; forecasted business demand; actual product consumption; business

24   processes and tools; product technology roadmaps; product features and performance; product

25   architecture; product development schedules; qualification processes and results; contract

26   manufacturer agreements and business relationship; inventions; provisional patent applications;

27   and future manufacturing strategies (collectively, the "Trade Secrets"). These Materials are being

28

1

1    submitted at the same time as the Complaint in this Action, and there is not yet a stipulated

2    protective order in place.  Verigy's confidentiality interest therefore overcomes the right of public

3    access to the record, as a substantial probability exists that Verigy's overriding confidentiality

4    interest will be prejudiced if the record is not sealed.  Further, the proposed sealing is narrowly

5    tailored and no less restrictive means exist to achieve this overriding interest

6

7        Although the information in the Materials is submitted under seal, Verigy relies on this

8    information to show that its *ex parte* Application should be granted.  Pursuant to Local Civil Rule

9    79-5(b)-(c), Defendants therefore lodge the Materials with this Court, and respectfully request

10   leave to file the aforementioned documents under seal to protect Verigy's Trade Secrets.

11       Respectfully submitted.

12

13   Dated:  August 21, 2007                    BERGESON, LLP

14                                              By:_____

15                                                  Melinda M. Morton
                                                    Attorneys for Plaintiff
16                                                  VERIGY US, INC.

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE DOCUMENTS UNDER SEAL
CASE NO.

1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone: (408) 291-6200
6  Facsimile: (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11  VERIGY US, INC, a Delaware Corporation          Case No.

12                    Plaintiff,          **DECLARATION OF MELINDA M.**
                                          **MORTON IN SUPPORT OF PLAINTIFF'S**
13          vs.                           **ADMINISTRATIVE MOTION FOR**
                                          **LEAVE TO FILE DOCUMENTS UNDER**
14  ROMI OMAR MAYDER, an individual;      **SEAL**
    WESLEY MAYDER, an individual; SILICON
15  TEST SYSTEMS, INC., a California Corporation;
    and SILICON TEST SOLUTIONS, LLC, a
16  California Limited Liability Corporation,
    inclusive,
17
                      Defendants.
18

19

20

21

22

23

24

25

26

27

28

1    I, Melinda M. Morton, declare as follows:

2    1.    I am an attorney licensed to practice law before all of the courts of the State of

3    California. I am an associate with the law firm of Bergeson, LLP, counsel of record for Plaintiff

4    Verigy US, Inc. ("Verigy" or "Plaintiff") in the above-captioned action. I have personal

5    knowledge of the facts set forth in this declaration, and, if called to do so, I could and would

6    competently testify thereto.

7    2.    I submit this declaration in support of Verigy's Administrative Motion for Leave to

8    File Document Under Seal.

9    3.    I have reviewed the following materials ("the Materials"):

10    (a)    Portions of Verigy's *Ex Parte* Application for Temporary

11    Restraining Order, Order to Show Cause re: Preliminary Injunction,

12    and an Order Authorizing Expedited Discovery and Memorandum

13    of Points and Authorities in Support;

14    (b)    Portions of the Declaration of Andrew N. Lee and Exhibits A and B;

15    (c)    Portions of the Declaration of Ken Hanh Duc Lai and Exhibits A, B,

16    C, and D;

17    (d)    Portions of the Declaration of Ira Leventhal and Exhibits B and C;

18    (e)    Portions of the Declaration of Melinda M. Morton and Exhibits B

19    and C; and

20    (f)    Portions of the Declaration of Robert Pochowski and Exhibits A, B,

21    C, D, E, F, G, H, I, J, and K.

22    4.    I have determined that these Materials (hereafter "the Materials") each disclose

23    information that has been designated as "Highly Confidential—Attorneys' Eyes Only"

24    (Documents 1-5) or "Confidential" (Document 6) by Verigy because they contain confidential,

25    proprietary and trade secret information relating to Verigy's design specifications, technical

26    procurement processes; research regarding customer device requirements; block diagrams; product

27    development and strategic plans, product strategy; forecasted business demand; actual product

28    consumption; business processes and tools; product technology roadmaps; product features and

1 | performance; product architecture; product development schedules; qualification processes and

2 | results; contract manufacturer agreements and business relationship; inventions; provisional patent

3 | applications; and future manufacturing strategies (collectively, the "Trade Secrets").

4 |     5.    The confidentiality interest of the parties therefore overcomes the right of public

5 | access to the record, as a substantial probability exists that the parties' overriding confidentiality

6 | interest will be prejudiced if the record is not sealed. Further, the proposed sealing is narrowly

7 | tailored and no less restrictive means exist to achieve this overriding interest.

8 |     I declare under penalty of perjury under the laws of the United States of America that the

9 | foregoing is true and correct and that this declaration was executed this 21st day of August, 2007 at

10 | San Jose, California.

Melinda M. Morton

1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone: (408) 291-6200
6  Facsimile: (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.

8

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12  VERIGY US, INC, a Delaware Corporation    Case No.

13                    Plaintiff,
                                              **[PROPOSED] ORDER GRANTING
14       vs.                                  PLAINTIFF'S ADMINISTRATIVE
                                              MOTION FOR LEAVE TO FILE
15  ROMI OMAR MAYDER, an individual;          DOCUMENTS UNDER SEAL**
    WESLEY MAYDER, an individual; SILICON
16  TEST SYSTEMS, INC., a California Corporation;
    and SILICON TEST SOLUTIONS, LLC, a
17  California Limited Liability Corporation,
    inclusive,                                Complaint Filed:
18                                            Trial Date:          None Set
                      Defendants.
19

20

21

22

23

24

25

26

27

28

1    Now before the Court is Verigy's Administrative Motion For Leave To File Document

2 Under Seal. Upon consideration of the Administrative Motion for Leave to File Documents Under

3 Seal and the supporting declaration of Melinda Morton filed therewith, the Court finds there to be

4 good cause for granting Plaintiff's request to file documents under seal.

5   GOOD CAUSE having been show, the Court finds that:

6     (1)  The parties possess overriding confidentiality interest that overcomes the

7          right of public access to the record in the following documents:

8          a. Portions of Verigy's *Ex Parte* Application for Temporary Restraining

9            Order, Order to Show Cause re: Preliminary Injunction, and an Order

10           Authorizing Expedited Discovery and Memorandum of Points and

11           Authorities in Support;

12          b. Portions of the Declaration of Andrew N. Lee and Exhibits A and B;

13          c. Portions of the Declaration of Ken Hanh Duc Lai and Exhibits A, B, C,

14           and D;

15          d. Portions of the Declaration of Ira Leventhal and Exhibits B and C;

16          e. Portions of the Declaration of Melinda M. Morton and Exhibits B and

17           C; and

18          f. Portions of the Declaration of Robert Pochowski and Exhibits A, B, C,

19           D, E, F, G, H, I, J, and K.

20    (2)  The parties' overriding confidentiality interests support sealing the record;

21    (3)  A substantial probability exists that the parties' overriding confidentiality

22       interest will be prejudiced if the record is not sealed;

23    (4)  The proposed sealing is narrowly tailored; and

24    (5)  No less restrictive means exist to achieve this overriding interest.

25

26

27

28

1    IT IS THEREFORE ORDERED that Verigy's Motion for Leave to File Documents Under

2    Seal is GRANTED.

3

**IT IS SO ORDERED.**

4

5    Dated: _____, 2007

6                                                    _____
                                                     Hon.
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE
DOCUMENTS UNDER SEAL
CASE NO.

1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:   (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12  VERIGY US, INC, a Delaware Corporation       Case No.

13                 Plaintiff,                    **[PROPOSED] ORDER GRANTING**
                                                 **PLAINTIFF VERIGY US, INC.'S**
14          vs.                                  **APPLICATION FOR TEMPORARY**
                                                 **RESTRAINING ORDER AND ORDER**
15  ROMI OMAR MAYDER, an individual;             **AUTHORIZING EXPEDITED**
    WESLEY MAYDER, an individual; SILICON        **DISCOVERY; ORDER TO SHOW CAUSE**
16  TEST SYSTEMS, INC., a California Corporation; **RE PRELIMINARY INJUNCTION**
    and SILICON TEST SOLUTIONS, LLC, a
17  California Limited Liability Corporation,
    inclusive,
18
                   Defendants.
19

20

21

22

23

24

25

26

27

28

---

1    This matter having come before the Court on the ex parte application of plaintiff Verigy

2   US, Inc. for a Temporary Restraining Order, Order Authorizing Expedited Discovery, and Order to

3   Show Cause Re Preliminary Injunction;

4    AND, the Court having read the Complaint, the declarations of Robert Pochowski, Ira

5   Leventhal, Manuel Guerzoni, Ken Hanh Duc Lai, Andrew N. Lee, and Melinda M. Morton and the

6   memorandum of points and authorities submitted in support of the ex parte application;

7    AND, the Court finding that, absent an order granted without notice, (1) plaintiff is likely

8   to suffer irreparable harm including harm to its competitive position, loss of future sales,

9   disclosure of confidential business information, and loss of goodwill in the marketplace, and (2)

10   evidence may be lost or destroyed;

11    AND, good cause appearing;

12    **IT IS HEREBY ORDERED THAT:**

13    1.    Defendants ROMI OMAR MAYDER ("Mayder"), WESLEY MAYDER, SILICON

14   TEST SYSTEMS, INC. and SILICON TEST SOLUTIONS, LLC (the "STS Entities") as well as

15   their agents, servants, employees, attorneys, and any other persons in active concert or

16   participation with them who receive actual notice of this Temporary Restraining Order, by

17   personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

18        (a)    accessing, altering, downloading, copying, forwarding, disclosing, using,

19            marketing, disseminating, selling, licensing, leasing, transferring, making any use

20            of, attempting to disclose or use, or disposing, of Verigy's trade secrets and/or

21            confidential or proprietary information, which includes the confidential information

22            of Verigy's predecessor, Agilent Technologies, Inc.) relating to operations, products

23            or research, including but not limited to, knowhow, research, techniques and

24            information relating to Verigy's closed or pending design projects; transactions

25            with its customers; non-public written information concerning past, present and

26            prospective products; improvements to products; forecasted business demand;

27            actual product consumption; business processes and tools; product technology

28            roadmaps; product features and performance; product architecture; product

1    development schedules; qualification processes and results; contract manufacturer

2    agreements and business relationship; future manufacturing strategies and any

3    research or design project worked on by Defendant Romi Omar Mayder during his

4    employment with Verigy (collectively the "Trade Secret Property");

5    (b)    accessing, altering, downloading, copying, forwarding, disclosing, using,

6    marketing, disseminating, selling, licensing, leasing, transferring, making any use

7    of, attempting to disclose or use, or disposing of any product developed with the use

8    of, with reference to, derived from, or incorporating all or any part of Verigy's

9    Trade Secret Property;

10    (c)    deleting, destroying, or altering, in whole or in part, any information (electronic,

11    documentary or otherwise) in any media (paper, hard drive, caches, CD-ROMS,

12    diskettes, USB memory devices, or any other media, digital or otherwise), relating

13    to any of the issues in this action;

14    (d)    deleting, destroying, or altering, in whole or in part, any information or electronic

15    mail to or from romi.mayder@yahoo.com ; romi.mayder@silicontests.com;

16    bob.pochowski@silicontests.com; info@silicontests.com and wes@wedirect.com;

17    in any media (paper, hard drives, caches, CD-ROMS, diskettes, flash drives, back-

18    up drives, internet storage or any other media, digital or otherwise), relating to any

19    of the issues of this action;

20    (e)    soliciting Verigy's existing or potential customers, clients, or suppliers with whom

21    the defendants came into contact or learned the identity of as a result of his

22    employment with Verigy;

23    (f)    soliciting Intel, Micron, Hynix, Spansion, Toshiba and Sandisk;

24    (g)    making false or misleading statements to Verigy's existing or potential clients,

25    customers or suppliers orally, in print, by electronic mail, or on the STS website

26    about Verigy's operations, capabilities, products and product plans; and

27

28

     (i)       making false or misleading statements to Verigy's existing or potential clients, customers or suppliers orally, in print, by electronic mail, or on the STS website about operations, and the origins and capabilities of the STS products;

2.      Defendants, their agents, employees, contractors, partners, representative, assigns and all those acting in concert with Defendants, are required to preserve and immediately return to Verigy all materials (in electronic, written, or other form) in any media (paper, hard drives, cashes, CD-ROMS, diskettes, USB storage devices, or any other media, digital or otherwise), constituting, containing or derived from Verigy's Confidential Information (as defined in the ARCIPD, attached as Exhibit A to the Complaint), and all copies of such materials.

3.      Within 24 hours of service of this Order, Defendants must provide plaintiff's expert with access to all computers used by any defendant for the business of defendant Silicon Test Systems, Inc. and Silicon Test Solutions, LLC, for the purpose of copying the hard drives to preserve evidence.

4.      Verigy may depose Romi Omar Mayder, Wesley Mayder, Silicon Test Systems, Inc, and Silicon Test Solutions, LLP on five (5) days notice, which notice may be served forthwith.

5.      Verigy may forthwith propound Request for Production, Inspection, and Copying of Documents and Things and/or Interrogatories to defendants and defendants shall respond to such requests within three (3) days of service upon them.

6.      This Temporary Restraining Order is entered on _____, 2007, at _____ a.m., and shall expire on _____, 2007, at ____ a.m. unless prior to that date and time, the Order is vacated or extended by this Court for good cause shown, or unless plaintiff and defendants stipulate to such extension or vacation, such stipulation being subject to the Court's approval.

Pursuant to Civil Local Rule 65-1 (c), **DEFENDANTS ARE FURTHER HEREBY ORDERED TO APPEAR AND SHOW CAUSE** why a preliminary injunction should not be entered against them with respect to the matters contained in this Temporary Restraining Order, such Show Cause hearing to take place in this Court on _____, 2007, at _____ a.m., unless otherwise ordered by this Court. In connection with such Show Cause hearing, plaintiffs shall

3

1   serve a copy of this Temporary Restraining Order and all supporting papers on defendants by 5:00

2   p.m. on _____, 2007. Defendants shall file, and serve by hand upon plaintiff's attorneys, any

3   opposition to the issuance of a preliminary injunction with respect to the matters contained in the

4   Temporary Restraining Order no later that 5:00 p.m. on _____, 2007. Plaintiffs shall file and

5   serve by hand upon defendants' counsel, any reply and/or supplemental papers in support of their

6   motion for preliminary injunction by 5:00 p.m. on _____, 2007.

7       Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, this Temporary Restraining

8   Order shall be subject to, and is effective upon, the extension and delivery to the Clerk of this

9   Court by plaintiffs on or before _____, 2007, of security in the form of a surety bond or

10  undertaking or deposit according to law in the amount of $_____.

11      **IT IS SO ORDERED.**

12  Dated: _____, 2007          By: _____

13                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED] ORDER GRANTING PLAINTIFF'S APPLICATION FOR TRO AND EXPEDITED DISCOVERY; ORDER TO SHOW CAUSE
RE PRELIMINARY INJUNCTION                          CASE NO.