# EXHIBIT 3

**REDACTED**

1    DANIEL J. BERGESON, Bar No. 105439
     dbergeson@be-law.com
2    JOHN W. FOWLER, Bar No. 037463
     jfowler@be-law.com
3    MELINDA M. MORTON, Bar No. 209373
     mmorton@be-law.com
4    BERGESON, LLP
     303 Almaden Boulevard, Suite 500
5    San Jose, CA 95110-2712
     Telephone:  (408) 291-6200
6    Facsimile:  (408) 297-6000

7    Attorneys for Plaintiff
     VERIGY US, INC.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12   VERIGY US, INC, a Delaware Corporation      Case No.

13                        Plaintiff,             **DECLARATION OF ROBERT
                                                 POCHOWSKI IN SUPPORT OF**
14         vs.                                   **PLAINTIFF'S EX PARTE APPLICATION
                                                 FOR TEMPORARY RESTRAINING**
15   ROMI OMAR MAYDER, an individual;            **ORDER TO SHOW CAUSE RE
     WESLEY MAYDER, an individual; SILICON       PRELIMINARY INJUNCTION**
16   TEST SYSTEMS, INC., a California Corporation;
     and SILICON TEST SOLUTIONS, LLC, a
17   California Limited Liability Corporation,
     inclusive,
18
                         Defendants.
19

20

21

22

23                **REDACTED PUBLIC VERSION OF**

24

25                      **CONFIDENTIAL**

26            **DOCUMENT SUBMITTED UNDER SEAL**

27

28

I, Robert Pochowski, declare as follows:

1.    I am President of Attest Technologies. Prior to my current position, I worked at Agilent Technologies Inc. ("Agilent") from June 2004 to July 2005 as Vice President / General Manager of the California Semiconductor Test Division. After my departure, Agilent spun-off a successor-in-interest, Verigy US, Inc. ("Verigy"). As Vice President / General Manager of the California Semiconductor Test Division at Agilent, I contributed to a patent for a test system. Except for matters asserted on information and belief, which I am informed and believe to be true, I make this declaration of my personal knowledge and, if called as a witness, I could and would testify competently to the facts set forth herein.

2.    Romi Omar Mayder ("Mayder") was an engineer working in my division at Agilent. I met Mayder while consulting at Agilent prior to being hired as the General Manager.

3.    Agilent designed, developed, manufactured and sold advanced test systems and solutions for the semiconductor industry. It is my understanding and belief that Verigy, as Agilent's successor-in-interest, now designs, develops, manufactures and sells these advanced test systems. These advanced test systems are used in conjunction with wafer probers, probe cards and other semiconductor handling and interface equipment.

4.    Mayder approached me on or about the first week of June, 2006 and asked me if I would be interested in investing in a company he was starting called Silicon Test Systems ("STS"). He told me that he had an idea for a new business venture that had something to do with a probe card. A probe card is used in conjunction with a test system to make contact with the individual chips so that they can be tested while still in wafer form.

5.    I agreed to meet with Mayder, and we set up a meeting in my office on or about June 8, 2006. At this meeting, Mayder explained that he had an idea for a Silicon on Sapphire, or "SOS" chip for a probe card that would allow customers to connect one tester channel to multiple devices in a parallel fashion. This would improve the productivity of the current commercially available test systems because they could test more devices simultaneously. I did not believe at that time that Verigy was working on anything related to probe cards. I asked Mayder at this first

1 | meeting whether Verigy was working on anything in this space and he assured me that Verigy was

2 | not.

3 | 6. Mayder wanted me to invest in STS, and I agreed to explore the idea. At no time

4 | did he ask me to sign a non-disclosure agreement ("NDA"). We never formalized my

5 | involvement, and ultimately, I did not invest in STS. I did share with Mayder a number of

6 | concrete ways to improve the product.

7 | 7. On June 12, 2006, Mayder sent me an email including an attachment that he

8 | described as a first draft of an RFQ, or request for quotation, for ██████████

9 | ████. To the best of my knowledge, ██████████████████████████

10 | ████████████████████████. I believe ████████ had

11 | communicated with STS before I had any contact with ████████ regarding STS, as the June 12,

12 | 2006 email from Mayder indicates that ████████ had already provided pricing. It is my

13 | understanding and belief that the contact person at ████████ was ████████. STS

14 | continued to work with ████████ throughout my involvement with STS. Attached hereto as

15 | Exhibit A is a true and correct copy of Mayder's June 12, 2006 email to me with the attached draft

16 | RFQ.

17 | 8. The draft RFQ attached to Exhibit A stated that the ██████████████

18 | ██████████████████████████████████████████

19 | ██████████████████████████████████████████

20 | ██████████████████████████████████████████

21 | ██████████████████████████████████████████

22 | ████.

23 | 9. On June 14, 2006, Mayder sent me an email with two attachments. The first

24 | attachment was called ██████████████ and the second attachment, a revision of the

25 | document attached to Exhibit A, was called ████████████ Attached hereto as Exhibit B is

26 | a true and correct copy of Mayder's June 14, 2006 email to me with attachments. In his email,

27 | Mayder asked me to send these two files to ████████████ to start the process with

28 | them. I do not believe that ████████ had signed an NDA at this time. The RFQ lists me as "STS

1  Global Commodity Manager," but this is not a position I ever occupied or agreed to.  The RFQ is

2  a nine page document that includes detailed requirements and questions for the potential

3  manufacturer.  The document called ▮▮▮▮▮▮▮ was intended as the appendix to the

4  RFQ.  I never sent these documents to ▮▮▮.

5      10.     Attached hereto as Exhibit C is a true and correct copy of a June 20, 2006 email

6  from Mayder to ▮▮▮▮▮▮▮ and copied to me, with attachments.  It is my

7  understanding and belief, based in part on the ▮▮▮▮▮▮▮ website at

8  ▮▮▮▮▮▮▮▮▮▮ serves as a consultant and/or sales and

9  marketing representative for ▮▮▮.  In the email, Mayder asks ▮▮▮▮ forward the

10  RFQ to the appropriate people at ▮▮▮.  The attached documents are revisions of the two

11  documents attached to Exhibit B.

12      11.     Attached hereto as Exhibit D is a true and correct copy of a June 26, 2006 email

13  from Mayder to me, attaching NAND wafersort requirements for various potential customers.  The

14  attachments include a ▮▮▮▮▮▮▮▮▮▮

15  and ▮▮▮▮▮▮▮▮▮.

16      12.     Attached hereto as Exhibit E is a true and correct copy of a July 9, 2006 email from

17  Mayder to me.  This email includes a powerpoint presentation, the ▮▮▮▮▮▮

18  ▮▮▮ and an updated of the technical data attached to Exhibit A.

19      13.     Attached hereto as Exhibit F is a true and correct copy of an August 27, 2006 email

20  from Mayder to me attaching ▮▮▮▮▮▮▮ for the ▮▮▮ chip.

21      14.     Attached hereto as Exhibit G is a true and correct copy of a September 24, 2006

22  email from Mayder to me regarding our upcoming meeting ▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮.

27      15.     Attached hereto as Exhibit H is a true and correct copy of a September 20, 2006

28  email from Mayder to me asking me to work with ▮▮▮ to change the date on the NDA we

1  were negotiating from September 13, 2006 to October 1, 2006. Mayder's email states that he

2  wants the date changed because "On Spet [sic] 13, 2006, I was still employed at Verigy."

3      16.     I continued to explore investing in STS and I continued to give Mayder my advice

4  concerning ways to improve the product. As part of this exploration, Mayder and I met with a

5  number of potential clients, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mayder shared

6  technical data similar to the documents in Exhibits A and E with these companies.

7      17.     In or about September 2006, Mayder informed me that his brother, Wesley Mayder,

8  would be investing in his company. This was not my original understanding when I was asked to

9  invest in STS in June. In or about December 2006, Mayder informed me that he did not want me

10  to invest in his company.

11     18.    · Shortly after my discussions with Mayder concerning STS ended, I carefully went

12  through my correspondence regarding STS to make sure I had a complete and accurate record of

13  the relationship. I made an alarming discovery during this review. The properties windows for

14  the documents in Exhibits A, B and C all indicated that the documents were in fact Agilent

15  documents.

16     19.     Specifically, Exhibit A's email attachment's properties indicate that it was

17  originally called "RFQ for ▮▮▮▮ ASIC," and the author was Romi Mayder for Agilent

18  Technologies, Inc. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Attached hereto as Exhibit I is a true and correct

21  copy of the properties for this document.

22     20.     The properties of the document called ▮▮▮▮▮▮▮▮ that is part of

23  Exhibit B indicate that the document was originally called ▮▮▮▮ and the author was Andy

24  Lee of Agilent Technologies, Inc. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

26  Attached hereto as Exhibit J is a true and correct copy of the properties for this document.

27     21.     I have also reviewed the properties for the ▮▮▮▮▮▮ that is part of Exhibit

28  D. The properties of this document indicate that the author was Hanh Lai of Agilent

4

DECLARATION OF ROBERT POCHOWKSI

1   Technologies, Inc. and ███████████████████████. Attached hereto as

2   Exhibit K is a true and correct copy of the properties for this document.

3       I declare under penalty of perjury under the laws of the United States that the foregoing is

4   true and correct.

5       Executed this 16th day of August, 2007 in Sunnyvale, California.

6

7                                 Robert Pochowski

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT B

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT C

# EXHIBIT FILED UNDER SEAL

# EXHIBIT D

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT E

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT F

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT G

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT H

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT I

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT J

# EXHIBIT FILED
# UNDER SEAL

# EXHIBIT K

# EXHIBIT FILED
# UNDER SEAL