# EXHIBIT 8

# Non-Disclosure Agreement Regarding Confidential and Proprietary Information

This Mutual Nondisclosure Agreement (the "Agreement") is made and entered into as of the Effective Date and by and between the Parties set forth below.

| Parties: | Silicon Test Systems | Verigy |
|---|---|---|
| Full Legal Names: | Silicon Test Systems, Inc. | Verigy US, Inc. |
| Business Entity Types: | Corporation | Corporation |
| Addresses: | 3031 Tisch Way<br>Suite 309<br>San Jose, CA | 10100 N. Tantau Avenue<br>Cupertino, CA<br>95014 |

| | |
|---|---|
| **Effective Date:** | |
| **Definition of Confidential Information:** | "Confidential Information" means any and all technical and non-technical information of a confidential or proprietary nature provided by Silicon Test Systems ("STS") to Verigy US, Inc ("Verigy"), including but not limited to (a) patent applications, (b) trade secrets, (c) other proprietary information such as ideas, concepts, know-how, designs, prototypes, techniques, devices, material samples, sketches, drawings, works of authorship, mask works, software programs and source documents, processes, equipment, algorithms, research, benchmark results, procurement requirements, investors, employees, contractual relationships, business forecasts, revenue projections, sales and merchandising, business plans, marketing plans, prices, customer information, product requirements, product specifications, product features, and information related to the current, future, and proposed products and services of STS, those products and services including but not limited to STS Flash Enhancer. |
| **Purpose of Agreement:** | Verigy agrees that it will use Confidential Information for no purpose other than pursuing or continuing a business relationship with STS related to the implementation of STS Flash Enhancer technology at Spansion. If STS agrees that Verigy may use the Confidential Information for some other purpose, then such other purpose must be described in a written amendment executed by the authorized representatives of each Party. Under no circumstances is Confidential Information disclosed *solely* under this Agreement to be used in litigation against STS. Notwithstanding anything contained in this Agreement, neither Party is obligated to disclose any Confidential Information to the other Party. |
| **Term and Termination:** | This Agreement will terminate the earlier of (a) ten (10) days after written notice of termination is given by either Party to the other |

|  | Party, or (b) three (3) years from the Effective Date. Unless the Parties' authorized representatives have agreed otherwise in writing, Verigy shall (a) immediately cease all use of Confidential Information, and (b) destroy and provide written certification of such destruction, or return to STS all or any portion of the Confidential Information, regardless of form. |
|---|---|
| **Confidentiality Period:** | Verigy's duty to protect Confidential Information pursuant to this Agreement expires when such information is or becomes subject to one or more of the exclusions set forth in Section 5 hereof. |

1. **Scope of Agreement:** This Agreement governs Confidential Information disclosed during the term of this Agreement. This Agreement shall also apply to any Affiliate of a Party that has a bonafide need to know for the Purpose; however, under no circumstances shall an Affiliate be a competitor of STS (including but not limited to Form Factor Inc.). "Affiliate" shall mean any entity of which more than fifty percent (50%) of the stock or other equity interests entitled to vote for the election of directors or an equivalent governing body owns, is owned by, or is under common control with, a Party hereto, for so long as such ownership exits.
2. **Markings**:
    a. If Confidential Information is embodied in tangible material, it must be labeled as "Confidential" or bear a similar legend.
    b. If Confidential Information is disclosed orally or visually, it should be identified as such at the time of disclosure. If not identified at disclosure then the information can be identified as Confidential Information by STS sending an email or letter within 30 days of the communication of the Confidential Information identifying it as such.
3. **No Warranties**: ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS" WITHOUT WARRANTY OR GUARANTEE OF ANY KIND AS TO ITS ACCURACY, COMPLETENESS, OPERABILITY, FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, NON-INFRINGEMENT OF THIRD PARTY RIGHTS, OR ANY OTHER WARRANTY, EXPRESS, IMPLIED, OR STATUTORY. STS SHALL NOT BE LIABLE TO RECIPIENT FOR ANY DAMAGE, LOSS, EXPENSE, OR CLAIM OF LOSS OF ANY KIND OR CHARACTER (INCLUDING WITHOUT LIMITATION, DIRECT, INDIRECT, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE, SPECIAL, INCIDENTAL, RELIANCE) ARISING FROM VERIGY'S USE OF OR RELIANCE ON STS'S CONFIDENTIAL INFORMATION. STS DOES NOT REPRESENT THAT ITS CONFIDENTIAL INFORMATION IS FREE FROM ANY VIRUSES, BUGS OR OTHER DEFECTS.
4. **Duty of Care**: Verigy shall protect Confidential Information with the highest degree of care to prevent the unauthorized use, dissemination or publication of the Confidential Information.
    a. Unless expressly authorized by STS in writing, Verigy shall not disclose any Confidential Information to any third party and shall limit use of such Confidential Information solely to Jim Herr, employee of Verigy.

- b. When communicating Confidential Information to Verigy, STS will use commercially reasonable efforts to communicate the Confidential Information solely to Jim Herr, employee of Verigy. After receipt of the Confidential Information:
    - i. If in material form (either through original receipt from STS in material form or after printing out an electronic copy)
        1. Mr. Herr will maintain the document locked in a file cabinet, or other lockable storage mechanism, when not in use.
        2. Mr. Herr may remove the document from locked storage solely for the purpose of pursuing or continuing a business relationship with STS related to the implementation of STS Flash Enhancer technology at Spansion (in compliance with the "purpose" section above). When in use, outside of locked storage, Mr. Herr will remain in personal possession of the document at all times and may not display the document to anyone.
        3. Mr. Herr will make no copies of the document.
    - ii. If in electronic form, such as emails, attachments to emails, or electronic files on a storage medium such as a CD or flash memory stick:
        1. Mr Herr will maintain the Confidential Information on his local hard drive.
        2. Mr. Herr may make a copy of the Confidential Information only if he immediately destroys the original. The copy will be maintained with the same degree of care as the original, as per the Agreement.
        3. Mr. Herr will not forward the Confidential Information, in whole or part, to any other Verigy employee, agent, contractor, or Affiliate.
        4. Mr. Herr will not forward the Confidential Information, in whole or part, to any third party.
        5. Mr. Herr will not delete any records of "sent to" or "received from" emails or copies of documents.
- c. Verigy agrees to immediately notify STS upon discovery of any loss or unauthorized disclosure of any Confidential Information.
- d. Verigy shall not reverse engineer, disassemble, or decompile any products, prototypes, software, or other tangible objects that embody the Confidential Information. Under no circumstances will Verigy reverse engineer, or disassemble any design, mask, layout, or any other technical feature embodied in the Flash Enhancer semiconductor chip.
- e. The locked storage unit, and any computer(s) used by Mr. Herr, which are the property of Verigy, will be subject to audits by third party upon demand by STS, given 10 days notice.

5. **Exclusions**: This Agreement imposes no obligation upon Verigy with respect to any information it can conclusively demonstrate (a) was in its rightful possession

on or before receipt from STS; (b) is or becomes a matter of public knowledge through no fault of Verigy; (c) is rightfully received by Verigy from a third party without a duty of confidentiality; or (d) is independently developed by Verigy without use of, access or reference to, any Confidential Information.
6. **Compelled Disclosure**: In the event that Verigy receives a request or demand to disclose all or any part of the Confidential Information under the terms of a subpoena, an order issued by a court of competent jurisdiction or authorized governmental agency, or disclosure of all or any part of the Confidential Information is otherwise required by law or to establish the rights of either Party under this Agreement, Verigy may comply with such request or demand or make such disclosure only if Verigy:
    a. Asserts the privileged and confidential nature of such Confidential Information against the third party seeking disclosure;
    b. Promptly notifies STS in writing of any such requirement or order to disclose prior to the disclosure of such Confidential Information; and
    c. Reasonably cooperates with STS regarding STS's efforts, if any, to protect against any such disclosure and/or obtain a protective order narrowing the scope of such disclosure and/or use of such Confidential Information.
    d. Except as my ultimately be required by such court order or law, Verigy's obligations with regard to such Confidential Information, as set forth above, will remaining full force and effect.
7. **Return or Destruction of Confidential Information**: Within ten (10) days of STS's written request, irrespective of reason, Verigy shall (a) cease all use of Confidential Information, and (b) destroy and provide written certification of such destruction, or return to STS all or any portion of the Confidential Information, regardless of form.
8. **No other rights:** Confidential Information remains at all times the property of STS. Verigy does not acquire any intellectual property rights under this Agreement or any other rights whether express, implied, or by estoppel, except the limited right to use the Confidential Information for the Purpose set forth above.
9. **Independent Development:** Verigy will not make, have made, use, or sell for any purpose any products, concepts, systems, or techniques, or other items using, incorporating or derived from any Confidential Information of STS, unless otherwise agreed to in writing signed by the duly authorized representatives of both Parties. Notwithstanding the above, nothing in this Agreement will be construed to preclude either Party from developing, purchasing, using, marketing, licensing, or selling any independently developed product, concept, system, or technique, related to the Confidential Information.
10. **No Other Obligations:** This Agreement does not create any obligations other than those expressly stated herein, including without limitation, any obligation for the Parties to proceed with any transaction between them, and each Party reserves the rights, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the business opportunity or any contemplated relationship. Accordingly, this Agreement does not constitute a binding agreement to enter into any definitive agreement.

11. **Import and Export Restrictions:** Verigy shall adhere to all applicable U.S. and other governmental agencies' export laws and regulations, and shall not import, export or re-export, or release, directly or indirectly, Confidential Information to any individual or entity, unless properly authorized by such governmental agencies. These import and export requirements shall survive any expiration or termination of this Agreement.
12. **Notices:** All notices required under this Agreement will be in writing and will be delivered by personal delivery or electronic mail, and will be deemed to have been given upon personal delivery, five (5) days after deposit in the mail, or upon acknowledgement of receipt of electronic transmission.
13. **Governing Law:** This Agreement is made under and shall be construed according to the laws of the State of California, excluding conflict of law rules. The Parties specifically exclude from application to this Agreement the United Nations Convention on Contracts for the International Sale of Goods.
14. **Equitable Remedies:** Verigy acknowledges that its breach of this Agreement may cause irreparable damage and herby agrees that STS shall be entitled to seek injunctive relief under this Agreement, as well as such further relief as may be granted by a court of competent jurisdiction.
15. **General Provisions:** Neither party may assign this Agreement without the prior written consent of the other party. Any attempt to transfer all or part of either Party's rights or obligatios without such consent shall be null and void and of no effect. This Agreement may be executed in multiple counterparts, each of which shall constitute a signed original. Any facsimile or electronic image of this Agreement or writing referenced herein shall be valid and acceptable for all purposes as if it were an original. The Parties do not intent that any agency or partnership relationship be created between them by this Agreement. Each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. However, in the event that any provision of this Agreement becomes or is declared illegal by any court of competent jurisdiction, or becomes otherwise unenforceable, such provision shall be deemed deleted from this Agreement and the remainder of this Agreement shall remain in full force and effect. Any obligation or provision hereunder that by its nature should survive will survive any termination or expiration of this Agreement.
16. **Entire Agreement:** This Agreement sets forth the entire agreement and understanding between the Parties as to the protection of the Confidential Information disclosed during the term of this Agreement and supersedes and merges all prior oral and written agreements, discussions and understandings between them. No waiver or modification of any provision of this Agreement shall be binding unless made in writing and signed by an authorized representative of each party.

The Parties hereto by their duly authorized representatives have executed this Agreement.

**Verigy US Inc.**                                       **Silicon Test Systems, Inc.**

| | |
|---|---|
| _____ | _____ |
| Authorized Signature | Authorized Signature |
| _____ | _____ |
| Print Name | Print Name |
| _____ | _____ |
| Title | Title |
| _____ | _____ |
| Date | Date |

**Verigy US Inc.**

_____
Jim Herr Signature

_____
Date