1  JACK RUSSO (State Bar No. 96068)
   TIM C. HALE (State Bar No. 114905)
2  JOHN KELLEY (State Bar No. 100714)
   RUSSO & HALE LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  Telephone: (650) 327-9800
   Facsimile: (650) 327-3737
5  Email: jrusso@computerlaw.com
          thale@computerlaw.com
6         jkelley@computerlaw.com

7  Attorneys for Defendants and Counterclaimants
   ROMI MAYDER, SILICON TEST SYSTEMS, INC.,
8  SILICON TEST SOLUTIONS, LLC and WESLEY
   MAYDER
9
                  IN THE UNITED STATES DISTRICT COURT
10
              IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                              SAN JOSE DIVISION
12

13  VERIGY US, INC., a Delaware Corporation,     Case No. 5:07-cv-04330-RMW (HRL)

14                 Plaintiff,                    **DECLARATION OF DR. RICHARD
                                                 BLANCHARD IN SUPPORT OF MOTION
15         v.                                    FOR SUMMARY ADJUDICATION AND
                                                 MOTION TO MODIFY PRELIMINARY
16  ROMI MAYDER, an individual; WESLEY           INJUNCTION ORDER**
    MAYDER, an individual; SILICON TEST
17  SYSTEMS, INC., a California Corporation;     Judge:  Hon. Ronald M. Whyte
    and SILICON TEST SOLUTIONS, LLC, a           Date:   August 15, 2008
18  California Limited Liability Corporation,    Time:   9:00 a.m.
    inclusive,                                   Dept.:  6
19
                                                 Complaint Filed: August 22, 2007
20                 Defendants.                   Trial Date: December 8, 2008 (jury trial)
                                                 (Defendants have elected to reserve their jury
21                                               trial rights under F.R.C.P., Rule 38)

22

23  AND RELATED CROSSCLAIMS.

24
25
26
27
28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com

Dr. Blanchard Decl. Supp. Mot.
Summ. Adj. & Mod. Prelim. Inj.

Case No. 5:07-cv-04330-RMW (HRL)

I, Dr. Richard A. Blanchard, hereby declare under penalty of perjury:

1. My name is Dr. Richard A. Blanchard. The statements set forth herein are true of my personal knowledge, except for those matters set forth on the basis of information and belief, which matters I believe to be true. I could and would competently and truthfully testify to the following if called upon to do so.

2. I received both a BSEE and MSEE in 1968 and 1970, respectively, from the Massachusetts Institute of Technology in Cambridge, Massachusetts. In 1982, I received a doctorate degree in Electrical Engineering from Stanford University, in Palo Alto, California. I have been working in and around the semiconductor industry for nearly 40 years. I have extensive experience in specification design, layout and evaluation of integrated circuits. A copy of my curriculum vitae is attached as Exhibit A.

3. Previously, I was retained by Mount & Stoelker, P.C., predecessor counsel for defendants, as an expert witness in this matter, and submitted two declarations, dated October 11, 2007 and November 29, 2007, respectively. I signed the Stipulated Protective Order, as Amended by the Court, on September 3, 2007.

4. On July 2, 2008, I received – for the first time – from defendants' successor counsel, Russo & Hale LLP, unredacted and complete copies, with all exhibits, of the Temporary Restraining Order ("TRO") as well as a copy of the Preliminary Injunction Order ("Preliminary Injunction") entered in this action against defendants. On July 7, 2008, I received – also for the first time – from Russo & Hale LLP a copy of Plaintiff's Amended C.C.P. Section 2019.210 Disclosure dated April 18, 2008 ("Amended Section 2019.210 Disclosure").

5. I had not previously read or reviewed these Court Orders or the Amended Section 2019.210 Disclosure, nor had I ever received copies of these Court Orders or the Amended Section 2019.210 Disclosure, because they had not been sent to me by Mount & Stoelker. I had previously received from Mount & Stoelker a redacted copy of plaintiff Verigy US, Inc.'s ("Verigy") original Section 2019.210 trade secret disclosure dated August 24, 2007, and the information in my expert reports was based on this redacted information, the information contained in the Declaration of Ira Leventhal dated August 21, 2007, Mr. Leventhal's deposition transcript, the Declaration of Robert

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Dr. Blanchard Decl. Supp. Mot.
Summ. Adj. &. Mod. Prelim. Inj.        1        Case No. 5:07-cv-04330-RMW (HRL)

1  Pochowski dated August 16, 2007, and the other information identified in my expert reports and my deposition. I was not asked by Mount & Stoelker, or any attorney at Mount & Stoelker, to review the Court Orders described above, nor to give any input on their scope, nor to advise Romi Mayder, Silicon Test Systems, Inc. ("STS"), or any other defendant concerning what they could and could not do technically based on the TRO or based on the Preliminary Injunction. Given that I had never received a copy of the complete TRO prior to July 2, 2008, it is unlikely that even had I been asked to do so that I would have been in a position to give technical advice about the scope of the purported trade secrets that were or were not covered, nor the technical activities that were or were not enjoined. My recollection is that no one from Mount & Stoelker ever even asked me for any such advice or recommendations.

6. Having now received and read the Court Orders described above, I can say affirmatively that had someone given me all of the exhibits and all of the other material, to the extent possible, referenced in or comprising the Court's TRO, my advice to defendants would have been to send their attorneys at that time, Mount & Stoelker, back to the Court for clarification on the meaning of a number of these alleged trade secrets and referenced materials. Even having reviewed a complete and unredacted copy of the TRO, there are serious questions as to information that is claimed as purported trade secrets by Verigy, which questions are raised by the considerable amounts of information that is published or otherwise publicly available concerning Verigy's purported trade secrets.

7. For further verification of the fact that Mount & Stoelker never contacted me after November 2007, I have attached all of my time card records for this matter through the end of June, 2008 as Exhibit X hereto; these records are true and correct business records maintained by my firm in the ordinary course of business, and they reflect the fact that my engagement (through Mount & Stoelker) effectively ended in November, 2007; I was not re-engaged until recently (through Russo & Hale LLP).

8. Since I was contacted by defendants' new counsel, Russo & Hale, I have recently been able to obtain a series of additional published patent applications and other publications (copies of which are attached as Exhibits B through U). Based on my review of Exhibits B

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com

Blanchard Decl. Supp. Mot. Summ. Adj.   2   Case No. 5:07-cv-04330-RMW (HRL)

through U, these documents and other publicly available information demonstrate that:

    a.    the overall concept for probe card circuit multiplexing technology (i.e., technology for multiplexing circuits where such circuitry is mounted on a probe card) is publicly available or well known in the semiconductor test industry and is also readily ascertainable;

    b.    Exhibits A-F that were attached to the Declaration of Robert Pochowski dated August 16, 2007 (and which I understand Verigy claims was wrongfully misappropriated) are all based upon information that is publicly available or well known in the semiconductor test industry and that is also readily ascertainable;

    c.    each of what I understand to be the several key functionalities that the Court indicated Verigy's expert had opined were missing from patent materials ("Verigy's expert, Wei Wei, opines that several features of the [words omitted as 'Confidential'] are missing from the patent materials. Wei Decl. ¶¶ 88-97," Preliminary Injunction at 11:16-17 ), as discussed in a confidential portion of the Preliminary Injunction (Preliminary Injunction at 11:18-12:3) is either (i) publicly available or well known in the semiconductor test industry, (ii) readily ascertainable, or (iii) the type of information that I would expect would be specified by the requirements of a particular customer of the semiconductor test industry; as for the functionalities identified by the Court in the Preliminary Injunction at 11:20-21 and 12:2-3, it is my opinion that both of them are (A) publicly available or well known in the semiconductor test industry and (B) readily ascertainable; as for the functionality identified by the Court in the Preliminary Injunction at 11:21-12:2, it is my opinion that it is the type of information that I would expect would be specified by the requirements of a particular customer of the semiconductor test industry; and

    d.    techniques for using a serial bus with "daisy-chain" support for providing

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com

Blanchard Decl. Supp. Mot. Summ. Adj.　　　3　　　Case No. 5:07-cv-04330-RMW (HRL)

control signals, which could be used for programming, is and has been well known in the field of electrical engineering and more specifically in the semiconductor test industry for a number of years; for example, P. Horowitz and W. Hill, <u>The Art of Electronics</u> (2d ed. 1989) (excerpts of which are attached as Exhibit V), beginning at the first full paragraph in col. 2 on p. 699, describes general "daisy chain" techniques; more particularly, U.S. Patent No. 6,784,677 (a copy of which is attached as Exhibit W), which was based on a prior application published in 2003 and assigned to FormFactor, Inc., which I understand to be a company in the semiconductor test industry, describes the use of a "daisy-chain bus configuration" in the paragraph beginning at col. 2, l. 22, and makes reference to Fig. 1, which illustrates such a daisy-chain configuration.

9. After having been re-engaged by Russo & Hale, I have now had sufficient opportunity, after doing my own literature search and re-reviewing relevant information from the case, to conclude that even if all of what Verigy claims was kept secret by Verigy, and even if all of Verigy's alleged trade secrets as set forth in the Amended Section 2019.210 Disclosure were to qualify as trade secrets, my opinion is that it would have taken Romi Mayder (or anyone with similar education and similar experience and qualifications in the semiconductor test industry) a maximum of six person-months, and possible as few as four person-months, beginning on October 1, 2006, to independently research, develop, determine, and otherwise compile all of the information in what I understand to be the product specification that would be submitted to a chip manufacturer for the Flash Enhancer product from public and readily ascertainable sources and customer requirements (from companies such as the potential customer identified in the Preliminary Injunction, Preliminary Injunction 25:4 and 25:7 (the "<u>Specific STS Potential Customer</u>") without relying upon any of Verigy's claimed trade secret information. Indeed, in this particular case, I believe that it would have taken Romi Mayder less than this amount of time to independently research, develop, determine, and otherwise compile all of the information in what I understand to be the product specification that would be submitted to a chip manufacturer for the

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ™

Blanchard Decl. Supp. Mot. Summ. Adj.      4      Case No. 5:07-cv-04330-RMW (HRL)

Flash Enhancer product from public and readily ascertainable sources and customer requirements (from companies such as the Specific STS Potential Customer) without relying upon any of Verigy's claimed trade secret information, because, based upon my knowledge and experience, the critical factor for speeding up this process is the extent of the cooperation provided by a potential customer. In the four-to-six month range of time that I have specified above, I have assumed average cooperation from a potential customer in the semiconductor test industry. In this case, I have seen evidence that the Specific STS Potential Customer was particularly motivated to cooperate with Romi Mayder and STS and actually provided greater than average cooperation and support for Romi Mayder and STS. Therefore, I feel that, in working with potential customers such as the Specific STS Potential Customer, Romi Mayder would have needed less than this four-to-six month range of time to independently research, develop, determine, and otherwise compile all of the information in what I understand to be the product specification that would be submitted to a chip manufacturer for the Flash Enhancer product from public and readily ascertainable sources and customer requirements (from companies such as the Specific STS Potential Customer) without relying upon any of Verigy's claimed trade secret information.

10. During the course of my career, I have been involved in projects and cases in which royalty rates for patented technology in the semiconductor industry have figured prominently. In my experience, the customary range for royalty rates for a single patent in the semiconductor industry has been approximately three to five percent (3-5%), sometimes with declining rates, and the customary range for royalty rates for multiple patents in the semiconductor industry has been approximately eight to ten percent (8-10%), even when a number of patents are licensed as part of the same transaction. I have never seen a royalty rate for a single patent in the semiconductor industry that was greater than five percent (5%), and I have never seen a royalty rate for a combination of multiple patents in the semiconductor industry that was greater than ten percent (10%). In my opinion, even if all of the alleged trade secrets that Verigy claims in connection with this case were found to be actual trade secrets and were found to have been infringed by defendants, a fifteen percent (15%) royalty rate would be far in excess of any royalty rate that would be adequate to compensate Verigy for the use of all such trade secrets based upon my

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com

Blanchard Decl. Supp. Mot. Summ. Adj.   5   Case No. 5:07-cv-04330-RMW (HRL)

1  experience and my knowledge of standards for royalty rates in the semiconductor industry.

2        11.    The foregoing is based on information currently available to me and the work that I have undertaken in this matter to date. If new information becomes available to me, or I conduct additional work in this matter, I expressly reserve the right to expand or modify my opinions as my investigation and study continue.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July __10__, 2008 in MT. View, California.

_Richard A. Blanchard_
Dr. Richard A. Blanchard

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com

Blanchard Decl. Supp. Mot. Summ. Adj.     6     Case No. 5:07-cv-04330-RMW (HRL)