1  JACK RUSSO (State Bar No. 96068)
   RUSSO & HALE LLP
2  401 Florence Street
   Palo Alto, CA 94301
3  Telephone: (650) 327-9800
   Facsimile: (650) 327-3737
4  Email: jrusso@computerlaw.com

5  Attorneys for Defendant
   WESLEY MAYDER
6
                IN THE UNITED STATES DISTRICT COURT
7
           IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
                         SAN JOSE DIVISION
9

| | |
|---|---|
| 10 VERIGY US, INC., a Delaware Corporation, | Case No. 5:07-cv-04330-RMW (HRL) |
| 11              Plaintiff, | **DECLARATION OF WESLEY MAYDER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (F.R.C.P., RULE 56) AND MOTION FOR RULE 11 SANCTIONS (F.R.C.P., RULE 11)** |
| 12              v. | |
| 13 ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive, | |
| 14 | |
| 15 | **Date: July 18, 2008**<br>**Time: 9:00 a.m.**<br>**Ctrm: 6**<br>**Before the Hon. Ronald Whyte** |
| 16 | |
| 17              Defendants. | |
| 18 | Complaint Filed: August 22, 2007<br>Trial Date: December 8, 2008 (jury trial)<br>(Defendants have elected to reserve their jury trial rights under F.R.C.P., Rule 38) |
| 19 | |
| 20 | |
| 21 AND RELATED CROSSCLAIMS. | |
| 22 | |

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ™

Decl. Wesley Mayder Supp. Mot.
Rule 11 Sanctions/ Mot. Summ. J.          1           Case No. 5:07-cv-04330-RMW (HRL)

I, Wesley Mayder, declare under penalty of perjury as follows:

1. Unless otherwise stated, the matters set forth in this Declaration are true and correct of my personal knowledge, and I could and would competently testify concerning those matters, if I were called as a witness thereto. I submit this Declaration in support of my motion for summary judgment seeking dismissal from this case. As I will explain, I have no direct or indirect control over any of the defendants in this case.

## MY EDUCATION

2. I graduated from Monta Vista High School in Cupertino, California in 1987. I then attended Foothill College in Los Altos Hills, California from 1988 to 1990. I then attended De Anza College located in Cupertino, California from 1990-1991.

3. Subsequently, I attended San Jose State University in San Jose, California from 1991 to 1992.

## MY WORK EXPERIENCE

4. I have no experience in the semiconductor industry. I have worked principally in the mortgage industry for over 15 years since 1992, and in the field of Internet marketing for nearly 10 years.

5. In October 1999, I established WeDirect, Inc. ("WeDirect"), an online marketing company that optimizes Internet traffic. I am currently Chief Executive Officer of WeDirect. WeDirect does not have any clients in the semiconductor industry.

6. I have no expertise or experience in the semiconductor industry, and I have no employees with any expertise or experience in the semiconductor industry. Though WeDirect is an online marketing company, we have no expertise or experience in marketing or promotion for any companies in the semiconductor industry. None of the other defendants is a client or customer of WeDirect and WeDirect has received no compensation from any of them.

7. Romi Mayder, the other individual named in this case, is my younger brother. Romi has had no operating or other business role whatsoever in WeDirect; he has never worked for WeDirect, is not and was never on the Board of WeDirect, was never a shareholder of WeDirect, and had no role whatsoever in WeDirect's growth. Similarly, I have had no operating or other business role whatsoever in Romi's business, I have never worked for Romi, am not and was never

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ™

Decl. Wesley Mayder Supp. Mot.
Rule 11 Sanctions/ Mot. Summ. J.     2     Case No. 5:07-cv-04330-RMW (HRL)

on any board of directors of any of his companies and I am only a passive shareholder with less than a 21% ownership interest in Silicon Test Systems, Inc., a corporation in which Romi has majority ownership and control over.[1] I have no control over Romi or over any other defendant.

### Involvement in Silicon Test Systems LLC

8. In October 2006, Romi presented me with the opportunity to invest in his limited liability company, namely, Silicon Test Solutions LLC ("STS LLC"). Before I had even learned of his ideas, Romi had already filed the Articles of Organization of STS LLC, and the first I had heard of STS LLC was in late September 2006. While Romi did not tell me much about STS LLC's work, I trusted (and still trust) Romi and I wanted to support him because he is my brother, so I agreed to become a passive investor in STS LLC.

9. I never agreed to become and I never did become an active participant in STS LLC. I understood that my proposed investment would require me to sign a written agreement and I did agree verbally to review and sign (but we never finalized and I never signed) any final version of the Operating Agreement of STS LLC, a true and correct draft copy of which is attached hereto as **Exhibit A.** I never signed the Operating Agreement and it never became a binding agreement.

10. The original idea was that Romi was to sign that Operating Agreement and was to own a 51% share in STS LLC, as was Robert Pochowski, who was then Vice-President of STS LLC and who was to own a 29% share in STS LLC and continue to hold his position as an officer of STS LLC with Romi and I was to be a passive investor and own a 20% share in STS LLC. I never became an officer and never had an operating role at all. Indeed, though Romi signed the Operating Agreement, Mr. Pochowski did not because he disagreed with how the ownership was to be distributed. He demanded that I not be a passive investor at all in STS LLC.

11. Because Mr. Pochowski never signed the Operating Agreement, I never signed the Operating Agreement as well. In all events, I never had any type of control over STS LLC or over any of its other two proposed members. Indeed, I have never had any control over my brother, nor over Mr. Pochowski.

---

[1] As a shareholder and as Romi's brother, from time to time I have received updates from Romi on his business activities. However, these have been updates only, and I have not directed Romi or his company in any way.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ™

Decl. Wesley Mayder Supp. Mot.
Rule 11 Sanctions/ Mot. Summ. J.                3                Case No. 5:07-cv-04330-RMW (HRL)

## INVOLVMENT IN SILICON TEST SYSTEMS, INC.

12. Silicon Test Systems, Inc. ("STS Inc.") was formed on December 26, 2006 by Romi. I invested $250,000 in STS Inc. on January 3, 2007, receiving 20,000 shares of common stock which was approximately a 25% ownership interest. A true and correct copy of the check that I wrote to STS Inc. is attached hereto as **Exhibit B**. A true and correct copy of the stock certificate that I received in return from STS Inc. is attached hereto as **Exhibit C**. Again, I never was an officer, never was a director and never had any operating role and the same is true today.

13. My stock investment in STS Inc. is currently an approximately 21% share, and it is clearly a minority position with no ability to control STS Inc. in any manner. I have no contractual right (or other ability) to become a board member or to become an officer or to become an employee and I have no interest in doing any of those things given how busy I am with my own business, WeDirect. As a shareholder, I receive information that other STS Inc. shareholders receive, namely, whatever management of STS Inc. (currently just my brother) provides to all STS Inc. shareholders. I have no other rights in STS Inc. nor do I have any right to direct any of the lawyers who represent other defendants.

## THE CORE DISPUTE APPLICABLE TO ME IN THIS CASE

14. I dispute the contention of plaintiff Verigy US, Inc. ("Verigy") and its counsel that I should be a defendant in this lawsuit simply because I am Romi's brother and/or simply because I am a shareholder in STS Inc. I do not believe this is appropriate. Nor do I believe it is appropriate to have me as a defendant in this case merely because I have done some favors for my brother in referring him to Jon Davidson or in making a gift to him (valued at less than $500) on the design of his company's web site. I see each of these as favors for my brother and none of them constitutes grounds for me to be named in this lawsuit.

15. I know that Verigy is contending (falsely) that I "aided and abetted" my brother in doing something that they believe was and is wrongful with regard to his lab notebook. However, I believe they misunderstand what my brother was interested in doing, and I know they misunderstand my referral to Jon Davidson. In mid-December 2006, Romi sent me an email asking if I knew of someone who could provide some verification of dates applicable to his lab

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ™

Decl. Wesley Mayder Supp. Mot.
Rule 11 Sanctions/ Mot. Summ. J.    4    Case No. 5:07-cv-04330-RMW (HRL)

notebook. I had not seen his lab notebook and I did not even know what was in his lab notebook, but I did know that because of my lack of personal knowledge about these things, I could not provide any verification for him and he accepted that fact. I therefore suggested that he talk to the one other person I knew who was in and around his offices at the time, namely, Jon Davidson. I knew that Jon and Romi often previously discussed Romi's work at STS LLC. As a favor for my brother, and because I would have provided the same courtesy to any other friend or colleague, I had no trouble allowing Jon Davidson some free time away from his job at WeDirect to talk with Romi about this matter. I believe Jon and Romi were trying to remember the dates of their various conversations. I never directed Jon Davidson to do anything false or anything wrongful, nor would I ever imagine that Jon would ever do so.

16. As to the help on the web design, in January 2007, I asked one employee of WeDirect to help my brother with his web design; again, this was as a favor to him. Originally, an employee of WeDirect named John Prince provided some input on the design of the STS Inc. website; my estimate is that it was "work" valued at under $500. In fact, Romi did not like the original design that John Prince submitted and it was only through a number of iterations with Romi (involving his authorship and decision-making) that an acceptable design was created. Again, the total time and value was minimal and I did provide it as a gift: it was not something that I felt I should charge my brother for and I still feel that way. I would do it for any other family member as well. I did not personally do any of this work, nor did I even review this work. To my knowledge, a Network Solutions server previously hosted the STS Inc. website (which website is now shut down); neither I nor WeDirect has ever hosted any website for STS Inc. or for Romi.

17. Finally, I learned in March 2007 that STS Inc. was searching for about 1,500 square feet of office space. At about that time, I heard that an office suite located in the same building in San Jose in which my company, WeDirect, rents space might be available in a different suite and on an entirely different floor of the building. I referred Romi to the office manager of the building and made an introduction for my brother to that office manager of the building to determine if the suite was, in fact, available. It was available and Romi on behalf of STS Inc. pursued the opportunity to lease that suite. It is not shared space with WeDirect or with me and at no time have

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ™

Decl. Wesley Mayder Supp. Mot.
Rule 11 Sanctions/ Mot. Summ. J.    5    Case No. 5:07-cv-04330-RMW (HRL)

1  WeDirect or I shared any space with Romi or with STS Inc. Indeed, though WeDirect and STS
2  Inc. are in the same office building, the two businesses share no space, no phones, no office
3  support, no secretarial and no other resources whatsoever. Neither WeDirect nor I have paid any
4  bills for STS Inc. or for Romi nor have they for me or WeDirect. I am paying for Russo & Hale,
5  my own independent legal counsel in this case.

## LAWSUIT BROUGHT BY VERIGY

7  18. Without really investigating any of the foregoing facts, in August 2007, Verigy filed a complaint against me as a co-defendant in this case. I frankly believe it was and is a mistake or, if not, it is simply designed to pressure me and/or pressure my brother in some wrongful manner. I do not understand why I was named as a defendant in this lawsuit, having no role or tie to STS Inc. or STS LLC other than my family tie with Romi and my passive shareholder interest in STS Inc.

12  19. In October 2007, I was scheduled and ready to give testimony to Verigy, but Verigy cancelled my deposition at that time. A deposition was again scheduled in November 2007, and I was ready to testify again, but Verigy again cancelled that deposition as well. To my knowledge, there has been no new deposition date scheduled.

16  20. In December 2007, STS Inc.'s counsel sent a letter to Bergeson, LLP ("Bergeson"), counsel for Verigy, requesting that I be dismissed from this lawsuit. A true and correct copy of the letter is attached hereto as **Exhibit D**. A couple of days later, Jay Fowler, Esq. of Bergeson replied with an email, declining the request for dismissal but providing no factual or legal basis upon which I should or could remain as a defendant. A true and correct copy of the email is attached hereto as **Exhibit E**. Bergeson has not yet taken my deposition.

## REQUESTED RELIEF

23  21. Based on all of the foregoing, I believe this lawsuit was brought against me without any factual or legal basis and that it was brought without probable cause and for a wrongful purpose; for all of these reasons, I respectfully request that the Court grant my motion for summary judgment and dismiss me as a defendant from this case and that the Court issue an Order for Verigy to show cause why it should not be liable for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

1      22.    To comply with the procedures of making these requests, I have had my independent legal counsel, Russo & Hale LLP, provide a copy of this declaration with all associated exhibits and with a request that Verigy dismiss me from this action voluntarily and that its failure and refusal to do so will result in this motion and in seeking the foregoing relief including attorney's fees and costs which, I have been told, may well exceed $50,000 if Verigy refuses to do the correct thing and refuses to dismiss me from this action. Accordingly, I ask that the Court reimburse me all of my reasonable attorney's fees and costs because of Verigy's failure and refusal to do so.

    I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed on May 11, 2008, in San Jose, California.

                                                /s/
                                      Wesley Mayder

I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Wesley Mayder.

Dated: June 10, 2008        By:     /s/
                                    Jack Russo

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ™

Decl. Wesley Mayder Supp. Mot.
Rule 11 Sanctions/ Mot. Summ. J.    7    Case No. 5:07-cv-04330-RMW (HRL)