DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
DONALD P. GAGLIARDI, Bar No. 138979
dgagliardi@be-law.com
JOHN W. FOWLER, Bar No. 037463
jfowler@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile:  (408) 297-6000

Attorneys for Plaintiff
VERIGY US, INC.

**PUBLIC VERSION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation<br><br>Plaintiff,<br><br>vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS ACTIONS | Case No. C07 04330 RMW (HRL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO WESLEY MAYDER'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: August 8, 2008<br>Time: 9:00 am<br>Ctrm.: 6<br>Judge: Hon. Ronald M. Whyte<br><br>Complaint Filed: August 22, 2007<br>Trial Date: None Set |

**DOCUMENT SUBMITTED UNDER SEAL**

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**

**PURSUANT TO STIPULATED PROTECTIVE ORDER**

**TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND ................................................................................ 1

II. STATEMENT OF ISSUES ............................................................................................. 2

III. ARGUMENT ................................................................................................................. 2

    A. Wes Mayder is Not Entitled to Summary Judgment Because There are Genuinely Disputed Material Issues of Fact Concerning Wes Mayder's Involvement as a Conspirator in the Theft of Verigy's Intellectual Property. ......... 3

        1. Wes Mayder *Agreed* to Become a Member of STS, LLC. ......................... 4

        2. Wes Mayder Is, or Was at Relevant Times, a Director of STS, Inc. ............. 6

        3. Wes Mayder Was Not Merely a Passive Minority Shareholder but Instead an *Active* Co-Conspirator with his Brother Romi Mayder. ............ 8

            a. Wes Mayder Solicited Investors for STS, Inc. ................................ 8

            b. Wes Mayder Used His Driver's License for a Seller's Permit for STS, Inc. ...................................................................................... 8

            c. Wes Mayder Operated the STS, Inc. Website ................................. 9

            d. Wes Mayder Was Involved in the Willful Backdating of Romi Mayder's Inventor's NoteBook. ...................................................... 10

    B. Wes Mayder is Not Entitled Summary Adjudication of Any of the Claims for Relief Against Him. ......................................................................................... 12

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Federal Cases**

*American Tobacco Co. v. United States*
    328 U.S. 781 (1946) ........................................................................................................... 3

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ........................................................................................................... 3

*Hunt v. Cromartie*
    526 U.S. 541 (1999) ........................................................................................................... 3

*Miller v. Glenn Miller Productions, Inc.*
    454 F.3d 975 (9th Cir. 2006) .............................................................................................. 3

*Transgo, Inc. v. Ajac Transmission Parts Corp.*
    768 F.2d 1001 (9th Cir. 1985) ..................................................................................... 3, 13

**State Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*
    7 Cal.4th 503 (1994) .......................................................................................................... 3

*Frances T. v. Village Green Owners Assn.*
    42 Cal.3d 490 (1986) ......................................................................................................... 7

*Klistoff v. Superior Court*
    157 Cal. App. 4th 469 (2007) ................................................................................. 3, 5, 13

*PMC, Inc. v. Kadisha*
    78 Cal. App. 4th 1368 (2000) ............................................................................................ 7

**Federal Statutes**

15 U.S.C. § 1125(a) ................................................................................................................... 12

18 U.S.C. § 1030 ....................................................................................................................... 12

18 U.S.C. § 2701 ....................................................................................................................... 12

Cal. Corps. Code §§ 17001(b) & 17050(a) ................................................................................ 5

California Business & Professions Code § 17200 ................................................................... 12

California Business & Professions Code § 17500 ............................................................. 12, 13

**State Statutes**

California Penal Code § 502 ........................................................................................................ 12

**Federal Rules**

Fed.R.Civ.P. 11 ............................................................................................................................ 2

1    Plaintiff, Verigy US, Inc. ("Verigy") respectfully submits the following brief in opposition
2 to the motion for summary judgment brought by defendant Wes Mayder.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND

This case involves the misappropriation of Verigy's valuable trade secrets and confidential information by Romi Mayder a former Verigy employee, by the new companies he formed, Silicon Test Solutions, LLC ("STS LLC") and Silicon Test Systems Inc. ("STS, Inc.") (collectively, the "STS Entities"), and by Romi Mayder's brother and co-conspirator, defendant Wes Mayder, who invested in both STS Entities, was a Member of STS LLC and a boardmember of STS, Inc.

Romi Mayder was a long-term and trusted employee of Verigy, and its predecessors-in-interest, Agilent Technologies, Inc. ("Agilent") and Hewlett Packard Company ("HP"), who abruptly resigned his employment with Verigy in September 2006 and incorporated STS LLC on September 8, 2006, even prior to his resignation.

In early July 2007, Verigy learned that Romi Mayder was marketing a product very similar to Verigy's products and began an investigation to determine whether Romi Mayder was using Verigy trade secrets. In late July, a former Agilent officer, Robert Pochowski, informed Verigy of his involvement with Romi Mayder, Wes Mayder and the STS entities. Pochowski provided certain documents, including emails, to Verigy in August 2007.

On August 22, 2007, after Verigy's investigation revealed that Romi Mayder had misappropriated and was using Verigy's trade secrets, Verigy filed this action and sought a temporary restraining order ("TRO"). The TRO was granted on August 24, 2007 and remained in force until replaced by a five (5) month preliminary injunction granted by this Court on February 28, 2008. The preliminary injunction was extended for another four (4) months by subsequent order dated May 20, 2008 which found defendants in contempt of the TRO. Defendants have been preliminarily enjoined "from directly or indirectly marketing, distributing, selling, licensing, leasing, transferring or disposing of…Flash Enhancer, or any product developed with the use of,

1  derived from, or incorporating all, or any part [of] Flash Enhancer."[1]

2  Presently, Wes Mayder has moved for summary judgment (and, in a separate concurrent
3  motion, for sanctions pursuant to Fed.R.Civ.P. 11), contending that he has been improperly named
4  in this lawsuit because he is merely a passive minority shareholder of STS, Inc. who has never had
5  any operational role in his brother Romi Mayder's companies. However, the evidence belies this
6  contention. Contemporaneous documentary evidence indicates that Wes Mayder had an
7  operational role in both STS Entities. Wes Mayder was, based on his own signature on the
8  operating agreement, a "member" of STS LLC, and Wes Mayder was, based on Romi Mayder's
9  repeated contemporaneous admissions, a director of STS, Inc. Moreover, regardless of Wes
10 Mayder's *de jure* position in the hierarchy of the STS Entities, the documentary evidence indicates
11 that Wes Mayder was a *de facto* co-conspirator with his brother in expropriating Verigy's
12 intellectual property for the brothers' own private profit. Wes Mayder is and was anything but a
13 "passive minority shareholder" as he proclaims himself to be. At the very least, there are
14 genuinely disputed material issues of fact precluding summary judgment.

15 **II.    STATEMENT OF ISSUES**

16 1.    Is Wes Mayder entitled to summary judgment dismissing him as a defendant in this
17 action? *(Correct answer:  No.)*

18 2.    Is Wes Mayder entitled to summary adjudication of any one or more of the claims
19 for relief against him in this action? *(Correct answer:  No.)*

20 **III.   ARGUMENT**

21 Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 56 provides for summary judgment when
22 "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
23 affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
24 party is entitled to judgment as a matte of law."

25 ───────────

26 [1]  Order Granting In Part Plaintiff's Motion For A Preliminary Injunction; Etc. (Docket No. 171).
27
28

2
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO W. MAYDER'S MOTION FOR SUMMARY JUDGMENT                    C07 04330 RMW (HRL)

"The moving party bears the initial burden of demonstrating the absence of a 'genuine issue of material fact for trial.'" *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006), *quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"(I)n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [(that party's)] favor.'" *Miller*, 454 F.3d at 988, *quoting, Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

### A. Wes Mayder is Not Entitled to Summary Judgment Because There are Genuinely Disputed Material Issues of Fact Concerning Wes Mayder's Involvement as a Conspirator in the Theft of Verigy's Intellectual Property.

"A civil conspiracy occurs when the parties have reached 'a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'" *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985), *quoting American Tobacco Co. v. United States*, 328 U.S. 781, 809-810 (1946). "A conspiracy must be looked at as a whole, and acts which are in themselves legal lose that character when they become constituent elements of an unlawful scheme." *Transgo*, 768 F.2d at 1020-21.

"The existence of a civil conspiracy makes each participant in the wrongful act responsible as a joint tortfeasor for all damages resulting from the wrong, *whether or not a participant was a direct actor and regardless of the degree of his activity*." *Klistoff v. Superior Court*, 157 Cal. App. 4th 469, 479 (2007) (emphasis added). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994).

Here, as shown below, Wes Mayder was an active co-conspirator in his brother's activities, regardless of his formal position in the STS Entities. And, as his brother's co-conspirator, Wes Mayder is equally liable for Romi Mayder's misconduct. *See, Transgo*, 768 F.2d at 1023 (As co-conspirators, the defendants were found to be joint tortfeasors, jointly and severally liable for all compensatory damages awarded . . .); *Klistoff*, 157 Cal. App. 4th at 479. At the very least, there are genuinely disputed material issues of fact whether Wes Mayder conspired with his brother in connection with the misuse of Verigy's intellectual property, thereby precluding summary judgment.

1  **1.  Wes Mayder *Agreed* to Become a Member of STS, LLC.**

Wes Mayder contends in his summary judgment motion that "[h]e is not involved in his brother's business, has no background at all in the semiconductor industry . . . has no ownership interest in defendant STS LLC, nor has he *ever* . . . had an ownership interest therein." (Motion, at pp. 2-3) (emphasis added). These assertions are *not* supported by Wes Mayder's sworn declaration (which is highly misleading and which Wes Mayder, in material respects, disavowed at his deposition.) Further, the assertions are belied by documentary evidence proving that, *in fact*, Wes Mayder *was* involved with his brother in the semiconductor industry and *did* have an ownership interest in his brother's business.

Wes Mayder, along with his brother Romi Mayder, signed the operating agreement in STS LLC, made as of October 11, 2006, which designates Wes Mayder as a "Member" of the LLC, with a 20 percent ownership stake in such limited liability company based on a $250,000 capital contribution. (*See,* Pochowski Decl., ¶ 6 and Ex. A; *see also*, Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr., at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91) (copy of STS LLC Operating Agreement signed by Wes Mayder)). Although the Operating Agreement was never signed by Pochowski, the document is nevertheless admissible evidence that the Mayder brothers, each of whom *did sign* it, were engaged in a joint enterprise involving semiconductor device testing, STS LLC. On its face, the document evinces "*the intent of each Member . . . to actively engage in the management*" of the enterprise's business, "*Semiconductor Device Testing*." (Pochowski Decl., Ex. A, ¶ 4.1; Wes Mayder Depo.Tr., Ex. 91, ¶ 4.1) (emphasis added).

As mentioned, Wes Mayder *affixed his signature* to this document.[2] "The existence of an LLC begins upon the fling of articles of incorporation by the Secretary of State. . . To validly

---

[2] Confronted at his deposition with his signature on the STS LLC Operating Agreement, Wes Mayder testified he did not recall signing it but admitted that the signature looked "similar" to his own, and he could not deny that it was, in fact, his. (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91). Wes Mayder also testified that he was *retracting* parts of sworn declaration in which he denied signing the STS LLC Operating Agreement. (*Id.*, at 52:12 – 54:11).

4
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO W. MAYDER'S MOTION FOR SUMMARY JUDGMENT                    C07 04330 RMW (HRL)

1  complete the formation of an LLC, the members must enter into an operating agreement either
2  before or after filing the articles.  But the *operating agreement need not be in writing*; indeed it
3  may consist of no more than an oral agreement among the initial members to organize the limited
4  liability company!"  1 Friedman, *California Practice Guide: Corporations*, ¶¶ 2:36:30 & 2:36:32
5  (2007), at p.2-17*, citing* Cal. Corps. Code §§ 17001(b) & 17050(a) (emphasis added).  Here, by
6  signing the written operating agreement both Romi Mayder and Wes Mayder evinced their intent
7  to, and did, complete the formation the STS LLC, of which they were *both* members.

8      Moreover, even if *arguendo* the STS LLC entity was never *legally* consummated in the
9  absence of Pochowski's signature on the Operating Agreement, Wes Mayder's signature on the
10 document evidences *factually* the brothers' conspiracy to operate a company engaged in the
11 semiconductor device testing industry – using Verigy's technology.  Wes Mayder's signature on
12 the Operating Agreement is written contemporaneous evidence of his agreement to join his brother
13 Romi Mayder's illicit enterprise.  It is evidence of his participation in an unlawful conspiracy and
14 thereby exposes him to joint and several liability for his brother's actions in furtherance of the
15 conspiracy.  This is true whether or not Wes Mayder was a direct actor and regardless of the
16 degree of his activity (or whether he knew anything about the semiconductor device testing
17 industry).  *Klistoff*, 157 Cal. App. 4th at 479.

18     Wes Mayder's conspiracy is further evidenced by a letter from the brothers' corporate
19 attorney, Daniel E. Hanley, to Pochowski, dated December 13, 2006:

20     Dear Mr. Pochowski:

21     We are attorneys for Silicon Test Solutions, LLC (STS).

22     When *we formed STS on September 8, 2006*, we were advised by Romi Mayder
    that the members would be Romi, *Romi's brother Wesley* and yourself. . . .
23
    On that basis, we prepared the Operating Agreement, which details the ownership
24     interest in STS. . . .

25     Neither Romi *or his brother* care to act as co-owner with you.  On behalf of the
    Mayders their offer to you to be a member of STS is hereby terminated. . . .
26
    Very truly yours,
27
    [signature]
28     Daniel E. Hanley

1  (*See,* Pochowski Decl., ¶ 9 and Ex. D (emphasis added)). This letter makes amply clear that the

2  joint enterprise in which both Romi and Wes Mayder were each involved would proceed even

3  without Pochowski. Likewise, Romi Mayder characterized his brother ▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Gagliardi Decl., ¶ 2

5  and Ex. A (Wes Mayder Depo.Tr. at 40:20 – 41:13; 42:18 – 43:21 and Ex. 90)). Further, Wes

6  Mayder admitted at deposition that he made a $250,000 capital contribution to STS LLC to secure

7  his ownership stake in STS LLC. (*Id.*, at 31:14 – 38:21; 83:20 – 86:7 and Ex. 94)).

8  Any contention that Wes Mayder never held an ownership stake in STS LLC is simply and

9  demonstrably false. At the very least, the evidence raises a genuine dispute of material fact as to

10  Wes Mayder's involvement in the management of STS LLC and whether he agreed to join in a

11  conspiracy with his brother to illegally profit from the use of Verigy's technology.

**2.    Wes Mayder Is, or Was at Relevant Times, a Director of STS, Inc.**

13  Wes Mayder also contends that he has "no board position, no officership, no employee

14  standing, and no operating role whatsoever" in STS, Inc. (Motion, at p.3, *citing,* Wes Mayder

15  Decl., ¶¶ 12-13). However, these contentions are also contradicted by documentary evidence

16  produced by defendants in this action.

17  In an email string on July 3, 2007, which Wes Mayder authenticated at his deposition,

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 124:20

20  – 127:8 and Ex. 100.) Wes Mayder was copied on the email. (*Id.*) Similarly, in an email string

21  on July 9, 2007, Romi Mayder wrote *to Wes Mayder* and Francois, stating: ▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮ (*Id.*, Wes Mayder Depo.Tr. at 142:2 – 143:23 and Ex. 102) (emphasis added).) Wes

24  Mayder received the email string and responded to it. (*Id.*)[3] Accordingly, there are at least

---

[3]  Defendants also deny that Francois was ever a member of STS, Inc.'s board of directors, but Romi Mayder told him otherwise. (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 124:20 – 127:8; 142:2 – 143:23 and Exs. 110 & 102).) Further, it would appear Francois believed him, because, as of July 8, 2008, Francois was touting himself on the internet as a "founding Director of Silicon Test Systems in San Jose, CA." (*Id.*, Ex. 110).

1 genuinely disputed issues of material fact whether Wes Mayder was or is as a member of the
2 board of directors of STS, Inc.

3 As a director of STS, Inc., Wes Mayder is subject to liability based on his investment in
4 and control of the company if he knew or had reason to know of misappropriation of a
5 competitor's trade secrets. "A corporate director or officer's participation in tortious conduct may
6 be shown not solely by direct action but also by knowing consent to or approval of unlawful acts."
7 *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1380 (2000). "To maintain a tort claim against a
8 director in his or her personal capacity, a plaintiff must first show that the director specifically
9 authorized, directed or participated in the allegedly tortious conduct (citation); *or that although*
10 *they specifically knew or reasonably should have known* that some hazardous condition or activity
11 under their control could injure plaintiff, *they negligently failed to take or order appropriate*
12 *action to avoid the harm* (citations)." *Id., quoting, Frances T. v. Village Green Owners Assn.*, 42
13 Cal.3d 490, 508-09 (1986) (emphasis by *Kadisha* court).

14 Here, Wes Mayder, as a director of STS, Inc., either knew or reasonably should have
15 known – before the lawsuit was filed in late August 2007 – that STS, Inc. was born of his
16 brother's duplicity in taking technology from Verigy. In early July 2007, counsel for Verigy sent
17 a pair of letters to Romi Mayder raising effectively the same allegations made in this lawsuit
18 which were immediately forwarded to Wes Mayder (but notably *not* to other minority
19 shareholders, an action in itself suggesting that Wes Mayder was more than merely a passive
20 investor, but instead his brother's co-conspirator). (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder
21 Depo. Tr. at 132:12 – 136:8; 170:2 – 175:6 and Exs. 101 & 104).) Upon receiving these direct
22 allegations of wrongdoing, Wes Mayder failed to take or order appropriate action and admitted at
23 his deposition that he performed no investigation whatsoever into the allegations other than to ask
24 his brother's opinion of them. (*Id.*) Wes Mayder further admitted that he accepted "on faith"
25 everything his brother told him, notwithstanding that his brother frequently told him things which
26 were false. (*Id.,* at 175-1-6.) Such "head-in-the-sand" behavior was negligent, objectively
27 unreasonable and precisely the sort of behavior rendering him liable for the misdeeds of the
28 company under the doctrine enunciated in *Kadisha*. Accordingly, summary judgment absolving

1 | him from any potential liability is inappropriate.

### 3. Wes Mayder Was Not Merely a Passive Minority Shareholder but Instead an *Active* Co-Conspirator with his Brother Romi Mayder.

Wes Mayder argues repeatedly that he was "solely a passive, minority shareholder" in Romi Mayder's company, STS, Inc. (Motion, at p.1; *see also id*., at pp.2, 8, 9, 10 & 11; Wes Mayder Decl., ¶ 7 ("I am only a passive shareholder").). However, this assertion is nonsense, belied by Wes Mayder's own admissions about his active role in the operations of company (and its predecessor STS LLC), whether or not he was formally a member of STS, Inc.'s board of directors.

#### a. Wes Mayder Solicited Investors for STS, Inc.

Wes Mayder, based on his own deposition testimony, was actively involved in the effort to secure investors for STS, Inc. ███████████████████████████ (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 56:11 – 59:10 and Ex. 92).) ███████████ ███████████████████ (*Id*., at 65:11 – 70:12 and Ex. 93) ███████████ ██████████████████████████████████████████████ ████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████ █████████████████████████████████ ██████████████████ (Gagliardi Decl., ¶¶ 2-3 and Ex. A (Wes Mayder Depo.Tr. at 59:11 – 60:2) and Ex. B (Davidson Depo.Tr. at 70:4 – 71:8).) Fund-raising for a start-up company is not the domain of a merely passive investor.

#### b. Wes Mayder Used His Driver's License for a Seller's Permit for STS, Inc.

Wes Mayder, by his own admission at deposition, was also actively involved in ███████ ████████████████████████████████████████████████████████████████. (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 118:11 – 124:18 and Exs. 97-99).) On March 29, 2007, Romi Mayder emailed his brother, ███████████████

1  ████████████████████████████████████████

2  ████████████████████████ (*Id.,* ex. 97).  Later the same day, Romi Mayder emailed back

3  indicating that ████████████████████████████████████████

4  ████████████████████████████████████████

5  ████████████████████████████████████████

6  ████████████████████████ (*Id.,* ex. 98).  Romi Mayder then emailed

7  and ████████████████████████████████████████

8  ████████████████████████████████

9  (*Id.,* ex. 99).  Wes Mayder ████████████████████████

10 ████████████████████████ (Gagliardi Decl., ¶ 2 and Ex. A (Wes

11 Mayder Depo.Tr. at 124:3-18.).  Yet he was unable to explain why information from a merely

12 passive investor would be required for a seller's permit. (*Id.*, at 123:17-19.).[4]

### c.   Wes Mayder Operated the STS, Inc. Website

Wes Mayder, by his own admission, designed the STS, Inc. website.  (Wes Mayder Decl., ¶¶ 14 & 16.).  But he denies that either he or his company, WeDirect, ever *hosted* a website for STS, Inc. or his brother.  (*Id*., ¶ 16).

Once again, the contemporaneous documentary ████████████████████████ ████████████████████████████████████████ ████████████████████████████ (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 155:19 – 159:12 and ex. 103) (emphasis added.)  The letter from Verigy alluded to by Romi Mayder was a letter dated July 9, 2007 (the previous day) from Verigy's counsel to Romi Mayder, which Romi forwarded to Wes Mayder, in which counsel stated:  "Your website at www.silicontest.com shows that you and your STS Entities have been promoting products that appear to incorporate confidential technology you

---

[4] In fact, in California a driver's license is required for a sellers permit of owners or partners, officers or members of a corporate entity pursuant to the online application materials (See, Gagliardi Decl., ¶ 4 and Ex. C.).

1 worked on at Verigy." (*Id.*, at 170:2-23 and ex. 104).  Wes Mayder testified at his deposition that

2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*, at 159:7-12).

3       Not only does Wes Mayder's conduct ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ show that

4 he was operating the website (in direct contradiction of his sworn declaration), and show therefore

5 that he was more than a passive investor (again, in direct contradiction of his sworn declaration), it

6 also *shows consciousness of guilt*.  The email Romi Mayder sent to his brother was short on

7 verbiage but deeply pregnant with meaning that could only have been understood by a co-

8 conspirator.  The email says, in effect, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

9 In other words, "they're on to us."  Wes Mayder willingly complied without asking questions

10 because he knew already that the website contained Verigy trade secret information – and he knew

11 that he, Wes Mayder, had posted it on the website that he designed and hosted.  Wes Mayder was

12 clearly a co-conspirator of his brother Romi Mayder.  At the very least, a factfinder is entitled to

13 make that determination based on the evidence at trial, thereby precluding summary judgment.

14         **d.**    **Wes Mayder Was Involved in the Willful Backdating of Romi Mayder's Inventor's NoteBook.**

15

16       Wes Mayder also actively conspired with his brother Romi Mayder in the backdating of

17 Romi Mayder's inventor's notebook – a false and fraudulent activity in direct furtherance of their

18 conspiracy to steal Verigy's intellectual property.

19       Wes Mayder admitted at his deposition receiving an email from his brother Romi Mayder

20 on January 17, 2007 asking Wes Mayder to supply someone to witness entries in Romi Mayder's

21 inventor's notebook and stated: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

22 ▇▇▇▇▇▇▇ (Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at 89:1 – 91:3; 101:8 – 102:20 and

23 ex. 7) (emphasis added).)  Wes Mayder replied by email the same day, offering up his employee,

24 Jon Davidson, without questioning the legality or ethics of the task assigned.  (*Id.*) ▇▇▇▇▇▇▇

25 ▇▇▇▇▇▇▇▇▇ Mayder never took issue with Romi Mayder's *explicit request for assistance in*

26 *falsifying records*; instead, he dutifully complied.  (*Id.*)

27       And, in fact, Romi Mayder's inventor's notebook *was falsified* by Davidson, whose

28 declaration and deposition testimony are at odds with each other and at odds with the

1  contemporaneous emails regarding the subject.  The January 17, 2007 email string makes clear

2  that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (See, Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at

4  110:6-18 (conceding this truism).)  Yet, Davidson *swears* under penalty of perjury in his

5  declaration that the request for him to do so was made *a month earlier*:

> In *mid-December 2006*, Romi [Mayder] sent an email to Wesley [Mayder] asking about obtaining verification of dates applicable to his lab notebook.  Since I had spoken several times with Romi [Mayder] about his work at STS LLC, Wesley knew that I would be a good person for Romi to be referred to.  I reviewed Romi's notebook, and *based on my recollection of our discussions, I tried to sign with dates corresponding to approximately when we discussed the information*. Wesley never directed me to do anything false or anything wrongful, nor would I do so.

(Davidson Decl., ¶ 7) (emphasis added).  Thus, Davidson *admits to backdating* Romi Mayder's

inventor's notebook but vainly denies that it amounts to anything "false" or "wrongful."

However, in contradiction of Davidson's own declaration, Davidson swears under oath in

his deposition testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (Gagliardi Decl., ¶ 3 and Ex. B (Davidson Depo.Tr. at 34:24 -

35:14; 44:10 – 45:19).)  In other words, Davidson ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮  (*Id*., at 85:1 – 90:17 and ex. 6) (copy of the notebook).)  Davidson's

deposition testimony and declaration simply cannot be harmonized – one or both must be untrue

on the subject of backdating the notebook, and indeed *both* are.  Neither Davidson's declaration

nor his deposition testimony is consistent with the definitive, contemporaneous documentary

evidence that the original request for Davidson to witness and endorse the notebook was not made

1 until January 17, 2007 and therefore Davidson simply could *not* have done so beforehand.[5]  Thus,

2 Davidson (whose only connection to Romi Mayder is that he is Wes Mayder's employee offered

3 up by Wes Mayder for the job of falsifying records) is utterly discredited as a witness.

4 Although it is unknown just when Davidson signed Romi Mayder's notebook, what is

5 known is that *it had to be after* January 17, 2007 (rendering Davidson's declaration and deposition

6 testimony utterly impossible), that it involved falsifying records, and that Wes Mayder was

7 inextricably involved in this scheme ████████████████████████████████████████

8 ████████████████████████████████████████████████████████████████████████

9 ████████

10 The evidence is thus *overwhelming* that Wes Mayder is thoroughly entangled with Romi

11 Mayder's misdeeds involving the theft of Verigy's technology.  Plainly, Wes Mayder was an

12 integral part of the conspiracy with his brother Romi Mayder to tamper with evidence of the real

13 ownership of STS, Inc's purported intellectual property. Wes Mayder's assertion that he would

14 never do anything false or fraudulent is completely incredible in light of this evidence.  Certainly,

15 at the very least, there remain genuine issues of material fact precluding summary judgment.

16 **B.  Wes Mayder is Not Entitled Summary Adjudication of Any of the Claims for Relief Against Him.**

17

18 The Complaint asserts 14 claims for relief.  Of these, 12 are asserted against Wes Mayder:

19 misappropriation of trade secrets, violation of the Computer Fraud and Abuse Act, 18 U.S.C. §

20 1030, violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.*, violation

21 of California Penal Code § 502, unfair competition in violation of California Business &

22 Professions Code § 17200 *et seq.*, common law unfair competition, violation of the Lanham Act,

23 15 U.S.C. § 1125(a), false advertising in violation of California Business & Professions Code §

24 ─────────────────────

25 [5] ████████████████████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████████████

28



12
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO W. MAYDER'S MOTION FOR SUMMARY JUDGMENT                    C07 04330 RMW (HRL)

17500, intentional interference with prospective economic advantage, declaratory relief, imposition of a constructive trust, and unjust enrichment.

Wes Mayder argues that "*any* legal arguments that implicate Wesley [Mayder] for *any* alleged wrongdoing, including but not limited to allegations of trade secret misappropriation against Wesley Mayder, are meritless." (Motion, at p.4) (emphasis added). However, based on the foregoing, exactly the opposite is true. The evidence demonstrates, as opposed to the self-serving declarations concocted in support of this motion, that Wes Mayder conspired with his brother Romi Mayder and is thus *legally liable for everything* Romi Mayder is liable for arising out of the conspiracy. *Transgo, Inc.*, 768 F.2d at 1023; *Klistoff*, 157 Cal. App. 4th at 479.

Accordingly, Wes Mayder is not entitled to summary adjudication of any of the individual claims asserted against him.

**IV.     CONCLUSION**

For the foregoing reasons, Verigy and its counsel respectfully request that the Court deny in its entirety Wes Mayder's motion for summary judgment.

Dated: July 17, 2008                         BERGESON, LLP

                                             By:  _____/s/_____
                                                  Donald P. Gagliardi

                                             Attorneys for Plaintiff
                                             VERIGY US, INC.