| | |
|---|---|
| DANIEL J. BERGESON, Bar No. 105439<br>dbergeson@be-law.com<br>MELINDA M. MORTON, Bar No. 209373<br>mmorton@be-law.com<br>DONALD P. GAGLIARDI, Bar No. 138979<br>dgagliardi@be-law.com<br>JOHN W. FOWLER, Bar No. 037463<br>jfowler@be-law.com<br>BERGESON, LLP<br>303 Almaden Boulevard, Suite 500<br>San Jose, CA 95110-2712<br>Telephone: (408) 291-6200<br>Facsimile: (408) 297-6000<br><br>Attorneys for Plaintiff<br>VERIGY US, INC. | **PUBLIC VERSION** |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>　　　　　　　Defendants.<br><br>AND RELATED CROSS ACTIONS | Case No. C07 04330 RMW (HRL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO WESLEY MAYDER'S MOTION FOR RULE 11 SANCTIONS**<br><br>Date:　　　August 8, 2008<br>Time:　　　9:00 am<br>Ctrm.:　　　6<br>Judge:　　Hon. Ronald M. Whyte<br><br>Complaint Filed:　August 22, 2007<br>Trial Date:　　　None set |

**DOCUMENT SUBMITTED UNDER SEAL**

**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**

**PURSUANT TO STIPULATED PROTECTIVE ORDER**

**TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND ................................................................................ 1

II. STATEMENT OF ISSUES .................................................................................................. 2

III. ARGUMENT ....................................................................................................................... 3

    A. The Complaint is Not Legally or Factually "Baseless" From an Objective Perspective. ........................................................................................................... 4

        1. Wes Mayder Was a Co-Conspirator of Romi Mayder. ............................... 4

            a. Wes Mayder *Agreed* to Become a Member of STS, LLC. ............. 5

            b. Wes Mayder Was at Relevant Times a Director of STS, Inc. .......... 7

            c. Wes Mayder Was an Active Co-Conspirator with Romi Mayder. ........................................................................................... 9

                (i) Wes Mayder Solicited Investors for STS, Inc. ..................... 9

                (ii) Wes Mayder Used His Driver's License for a Seller's Permit for STS, Inc. ............................................................ 9

                (iii) Wes Mayder Operated the STS, Inc. Website. ................... 10

                (iv) Wes Mayder Was Involved in the Willful Backdating of Romi Mayder's Inventor's Notebook. ........................... 11

        2. Counsel for Verigy Conducted a Reasonable and Competent Inquiry Into the Claims Against Wes Mayder Before Filing the Complaint. ......... 13

    B. Wes Mayder's Request for An Award of Attorneys' Fees and Costs is an Inappropriate Sanction Under the Circumstances to Deter Future Conduct. ......... 14

    C. Verigy is Entitled to Reimbursement of Attorneys' Fees and Costs Incurred Responding to This Frivolous Rule 11 Motion. ................................................... 15

IV. CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Federal Cases**

*American Tobacco Co. v. United States*
    328 U.S. 781 (1946) ............................................................................................................ 4

*Buster v. Greisen*
    104 F.3d 1186 (9th Cir. 1997) ..................................................................................... 3, 15

*Christian v. Mattel, Inc.*
    286 F.3d 1118 (9th Cir. 2002) ..................................................................................... 3, 13

*Transgo, Inc. v. Ajac Transmission Parts Corp.*
    768 F.2d 1001 (9th Cir. 1985) ............................................................................................ 4

*Weissman v. Quail Lodge, Inc.*
    179 F.3d 1194 (9th Cir. 1999) ......................................................................................... 15

**State Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*
    7 Cal.4th 503 (1994) .......................................................................................................... 4

*Frances T. v. Village Green Owners Assn.*
    42 Cal.3d 490 (1986) ........................................................................................................ 8

*Klistoff v. Superior Court*
    157 Cal. App. 4th 469 (2007) ........................................................................................ 4, 6

*PMC, Inc. v. Kadisha*
    78 Cal. App. 4th 1368 (2000) ........................................................................................ 8, 9

**Federal Statutes**

Cal. Corps. Code §§ 17001(b) & 17050(a) ................................................................................ 6

**Federal Rules**

Fed.R.Civ.P. 11 .................................................................................................................... 2, 16

Fed.R.Civ.P. 11(b) ....................................................................................................................... 3

Fed.R.Civ.P. 11(c)(2) ................................................................................................................ 15

**Other**

California Practice Guide: Federal Civil Procedure Before Trial ................................................ 15

Plaintiff, Verigy US, Inc. ("Verigy") respectfully submits the following memorandum of points and authorities in opposition to the motion for Rule 11 sanctions brought by defendant Wesley Mayder ("Mayder"). Verigy further requests that the Court issue an order directing Wesley Mayder and/or his counsel-of-record, jointly and severally, to reimburse Verigy for its reasonable attorneys' fees and costs incurred in opposing Wesley Mayder's frivolous and vexatious motion for Rule 11 sanctions.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND

This case involves the misappropriation of Verigy's valuable trade secrets and confidential information by Romi Mayder a former Verigy employee, by the new companies he formed, Silicon Test Solutions, LLC ("STS LLC") and Silicon Test Systems Inc. ("STS, Inc.") (collectively, the "STS Entities") and by Romi Mayder's brother and co-conspirator, defendant Wes Mayder, who invested in both STS Entities, was a Member of STS LLC, and a boardmember of STS, Inc.

Romi Mayder was a long-term and trusted employee of Verigy, and its predecessors-in-interest, Agilent Technologies, Inc. ("Agilent") and Hewlett Packard Company ("HP"), who abruptly resigned his employment with Verigy in September 2006 and incorporated STS LLC on September 8, 2006, even prior to his resignation.

In early July 2007, Verigy learned that Romi Mayder was marketing a product very similar to Verigy's products and began an investigation to determine whether Romi Mayder was using Verigy trade secrets. In late July, a former Agilent officer, Robert Pochowski, informed Verigy of his involvement with Romi Mayder, Wes Mayder and the STS Entities. Pochowski provided certain documents, including emails, to Verigy in August 2007.

On August 22, 2007, after Verigy's investigation revealed that Romi Mayder had misappropriated and was using Verigy's trade secrets, Verigy filed this action and sought a temporary restraining order ("TRO"). The TRO was granted on August 24, 2007 and remained in force until replaced by a five (5) month preliminary injunction granted by this Court on February 28, 2008. The preliminary injunction was extended for another four (4) months by subsequent

order dated May 20, 2008 which found defendants in contempt of the TRO. Defendants have been preliminarily enjoined "from directly or indirectly marketing, distributing, selling, licensing, leasing, transferring or disposing of…Flash Enhancer, or any product developed with the use of, derived from, or incorporating all, or any part [of] Flash Enhancer."[1]

Presently, Wes Mayder has moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and has filed a separate concurrent motion for summary judgment, contending that he was improperly named in this lawsuit because he is merely a passive minority shareholder of STS, Inc. who has never had any operational role in his brother Romi Mayder's companies. However, the evidence belies this contention. As discussed more fully below, the action as against Wes Mayder has been brought in good faith following a reasonable inquiry and the factual contentions against Wes Mayder have ample evidentiary support. The contemporaneous documentary evidence indicates that Wes Mayder had an operational role in both STS Entities. Wes Mayder was, based on his own signature on the operating agreement, a "member" of STS LLC and Wes Mayder was, based on Romi Mayder's repeated contemporaneous admissions, a director of STS, Inc. Moreover, regardless of Wes Mayder's *de jure* position in the hierarchy of the STS Entities, the documentary evidence indicates that Wes Mayder was a *de facto* co-conspirator with his brother in expropriating Verigy's intellectual property for the brothers' own private profit. Wes Mayder is and was anything but a "passive minority shareholder" as he proclaims himself to be. At the very least, there is now and was when the Complaint was filed, a colorable claim against Wes Mayder as his brother's co-conspirator precluding the imposition of sanctions pursuant to Rule 11.

**II.    STATEMENT OF ISSUES**

1. Should Verigy and/or its counsel be sanctioned pursuant to Fed.R.Civ.P. 11 for naming Wes Mayder as a defendant in the above-captioned action?

    *(Correct answer:  No.)*

2. Assuming *arguendo* that Verigy and/or its counsel should be sanctioned pursuant to

---

[1] Order Granting In Part Plaintiff's Motion For A Preliminary Injunction, Etc. (Docket No. 171).

Fed.R.Civ.P. 11, is an award of attorneys' fees and costs to Wes Mayder an appropriate form of sanction?

*(Correct answer:  No.)*

3. Should Wes Mayder and/or his counsel-of-record, jointly and severally, be ordered to reimburse Verigy for its reasonable attorneys' fees and costs incurred in opposing Wes Mayder's frivolous and vexatious motion for Rule 11 sanctions?

*(Correct answer:  yes.)*

## III.   ARGUMENT

Rule 11 requires the signature of an attorney on every complaint, which amounts to a certification that to the best of the attorney's "knowledge, information and belief, formed after an inquiry reasonable under the circumstances," (1) the complaint "is not being presented for an improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation"; (2) "the claims . . . therein are warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; and (3) "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after reasonable opportunity for further investigation or discovery."  Fed.R.Civ.P. 11(b).

"Where . . . the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from the an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it."  *Christian v. Mattel, Inc*., 286 F.3d 1118, 1127 (9th Cir. 2002), *quoting, Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997).

As discussed below, neither of these two prongs is satisfied and, as such, Rule 11 sanctions are inappropriate.  Further, because Wes Mayder's Rule 11 motion is not merely baseless but utterly frivolous, Wes Mayder and/or his counsel-of-record should be ordered, jointly and severally, to reimburse Verigy for its reasonable attorneys' fees and costs incurred in opposing the motion.

**A. The Complaint is Not Legally or Factually "Baseless" From an Objective Perspective.**

**1. Wes Mayder Was a Co-Conspirator of Romi Mayder.**

As discussed in the opposition to Wes Mayder's contemporaneously filed summary judgment motion, Wes Mayder was a co-conspirator in his brother Romi Mayder's activities. At the very least, there are genuinely disputed material issues of fact concerning Wes Mayder's involvement with his brother's theft of Verigy's intellectual property. As such, Verigy's Complaint as against Wes Mayder cannot be considered legally or factually baseless from an objective perspective.

"A civil conspiracy occurs when the parties have reached 'a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'" *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985), *quoting American Tobacco Co. v. United States*, 328 U.S. 781, 809-810 (1946). "A conspiracy must be looked at as a whole, and acts which are in themselves legal lose that character when they become constituent elements of an unlawful scheme." *Transgo*, 768 F.2d at 1020-21.

"The existence of a civil conspiracy makes each participant in the wrongful act responsible as a joint tortfeasor for all damages resulting from the wrong, *whether or not a participant was a direct actor and regardless of the degree of his activity*." *Klistoff v. Superior Court*, 157 Cal. App. 4th 469, 479 (2007) (emphasis added). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994).

Here, as shown below, Wes Mayder was an active co-conspirator in his brother's activities, regardless of his formal position in the STS Entities.

And, as his brother's co-conspirator, Wes Mayder is equally liable for Romi Mayder's misconduct. *See, Transgo*, 768 F.2d at 1023 (As co-conspirators, the defendants were found to be joint tortfeasors, jointly and severally liable for all compensatory damages awarded . . .); *Klistoff*, 157 Cal. App. 4th at 479. At the very least, there are genuinely disputed material issues of fact whether Wes Mayder conspired with his brother's misuse of Verigy's intellectual property.

1                 **a.**       **Wes Mayder *Agreed* to Become a Member of STS, LLC.**

2      Wes Mayder contends in his Rule 11 motion that "[h]e is not involved in his brother's

3 business, has no background at all in the semiconductor industry . . . has no ownership interest in

4 defendant STS LLC, nor has he *ever* . . . had an ownership interest therein." (Motion, at pp. 2-3)

5 (emphasis added). These assertions are *not* supported by Wes Mayder's sworn declaration (which

6 is highly misleading and which Wes Mayder, in material respects, disavowed at his deposition.)

7 Further, the assertions are belied by documentary evidence proving that, *in fact*, Wes Mayder *was*

8 involved with his brother in the semiconductor industry and *did* have an ownership interest in his

9 brother's business.

10      Wes Mayder, along with his brother Romi Mayder, signed the operating agreement in STS

11 LLC, made as of October 11, 2006, which designates Wes Mayder as a "Member" of the LLC,

12 with a 20 percent ownership stake in such limited liability company based on a $250,000 capital

13 contribution. (*See,* Pochowski Decl., ¶ 6 and Ex. A; *see also*, Gagliardi Decl., ¶ 2 and Ex. A (Wes

14 Mayder Depo.Tr., at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91) (copy of

15 STS LLC Operating Agreement signed by Wes Mayder)). Although the Operating Agreement

16 was never signed by Pochowski, the document is nevertheless admissible evidence that the

17 Mayder brothers, each of whom *did sign* it, were engaged in a joint enterprise involving

18 semiconductor device testing, STS LLC. On its face, the document evinces "*the intent of each*

19 *Member . . . to actively engage in the management*" of the enterprise's business, "*Semiconductor*

20 *Device Testing.*" (Pochowski Decl., Ex. A, ¶ 4.1; Wes Mayder Depo.Tr., Ex. 91, ¶ 4.1) (emphasis

21 added).

22      As mentioned, Wes Mayder *affixed his signature* to this document.[2] "The existence

23 of an LLC begins upon the filing of articles of incorporation by the Secretary of State. . . To

24 ─────────────────

25 [2]     Confronted at his deposition with his signature on the STS LLC Operating Agreement, Wes Mayder testified he did not recall signing it but admitted that the signature looked "similar"
26 to his own, and he could not deny that it was, in fact, his. (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91). Wes
27 Mayder also testified that he was *retracting* parts of sworn declaration in which he denied signing the STS LLC Operating Agreement. (*Id.*, at 52:12 – 54:11).

28

1 validly complete the formation of an LLC, the members must enter into an operating agreement
2 either before or after filing the articles. But the *operating agreement need not be in writing*;
3 indeed it may consist of no more than an oral agreement among the initial members to organize
4 the limited liability company!" 1 Friedman, *California Practice Guide: Corporations*, ¶¶ 2:36:30
5 & 2:36:32 (2007), at p.2-17, *citing* Cal. Corps. Code §§ 17001(b) & 17050(a) (emphasis added).
6 Here, by signing the written operating agreement both Romi Mayder and Wes Mayder evinced
7 their intent to, and did, complete the formation the STS LLC, of which they were *both* members.

8     Moreover, even if *arguendo* the STS LLC entity was never *legally* consummated in the
9 absence of Pochowski's signature on the Operating Agreement, nonetheless, Wes Mayder's
10 signature on the document evidences *factually* the brothers' conspiracy to operate a company
11 engaged in the semiconductor device testing industry – using Verigy's technology. Wes Mayder's
12 signature on the Operating Agreement is written contemporaneous evidence of his agreement to
13 join his brother Romi Mayder's illicit enterprise. It is evidence of Wes Mayder's participation in
14 an unlawful conspiracy and thereby exposes him to joint and several liability for Romi Mayder's
15 actions in furtherance of the conspiracy. This is true whether or not Wes Mayder was a direct
16 actor and regardless of the degree of his activity (or whether he knew anything about the
17 semiconductor device testing industry). *Klistoff*, 157 Cal. App. 4th at 479.

18     Wes Mayder's conspiracy is further evidenced by a letter from the brothers' attorney,
19 Daniel E. Hanley, to Pochowski, dated December 13, 2006:

20     Dear Mr. Pochowski:

21     We are attorneys for Silicon Test Solutions, LLC (STS).

22     When *we formed STS on September 8, 2006*, we were advised by Romi Mayder
    that the members would be Romi, *Romi's brother Wesley* and yourself. . . .
23
    On that basis, we prepared the Operating Agreement, which details the ownership
24     interest in STS. . . .

25     Neither Romi *or his brother* care to act as co-owner with you. On behalf of the
26     Mayders their offer to you to be a member of STS is hereby terminated. . . .

27     Very truly yours,

28     [signature]

1 |       Daniel E. Hanley

(*See,* Pochowski Decl., ¶ 9 and Ex. D (emphasis added)).  This letter makes amply clear that the joint enterprise in which both Romi and Wes Mayder were each involved would proceed even without Pochowski.  Likewise, Romi Mayder characterized his brother ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 40:20 – 41:13; 42:18 – 43:21 and Ex. 90)).  Further, Wes Mayder admitted at deposition that he made a $250,000 capital contribution to STS LLC to secure his ownership stake in STS LLC.  (*Id.*, at 31:14 – 38:21; 83:20 – 86:7 and Ex. 94)).

      Any contention that Wes Mayder never held an ownership stake in STS LLC is simply and demonstrably false.  At the very least, the evidence raises a genuine dispute of material fact as to Wes Mayder's involvement in the management of STS LLC and whether he agreed to join in a conspiracy with his brother to illegally profit from the use of Verigy's technology.

              **b.**    **Wes Mayder Was at Relevant Times a Director of STS, Inc.**

      Wes Mayder also contends that he has "no board position, no officership, no employee standing, and no operating role whatsoever" in STS, Inc.  (Motion, at p.3, *citing,* Wes Mayder Decl., ¶¶ 12-13).  However, these contentions are also contradicted by documentary evidence produced by defendants in this action.

      In an email string on July 3, 2007, which Wes Mayder authenticated at his deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 124:20 – 127:8 and Ex. 100.)  Wes Mayder was copied on the email.  (*Id.*)  Similarly, in an email string on July 9, 2007, Romi Mayder wrote *to Wes Mayder* and Francois, stating: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (*Id.*, Wes Mayder Depo.Tr. at 142:2 – 143:23 and Ex. 102) (emphasis added).)

1  Wes Mayder received the email string and responded to it. (*Id.*)[3] Accordingly, there are at least
2  genuinely disputed issues of material fact whether Wes Mayder was or is a member of the board
3  of directors of STS, Inc.

4  As a director of STS, Inc., Wes Mayder is subject to liability based on his investment in
5  and control of the company if he knew or had reason to know of misappropriation of a
6  competitor's trade secrets. "A corporate director or officer's participation in tortious conduct may
7  be shown not solely by direct action but also by knowing consent to or approval of unlawful acts."
8  *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1380 (2000). "To maintain a tort claim against a
9  director in his or her personal capacity, a plaintiff must first show that the director specifically
10 authorized, directed or participated in the allegedly tortious conduct (citation); *or that although*
11 *they specifically knew or reasonably should have known* that some hazardous condition or activity
12 under their control could injure plaintiff, *they negligently failed to take or order appropriate*
13 *action to avoid the harm* (citations)." *Id., quoting, Frances T. v. Village Green Owners Assn.*, 42
14 Cal.3d 490, 508-09 (1986) (emphasis by *Kadisha* court).

15 Here, Wes Mayder, as a director of STS, Inc., either knew or reasonably should have
16 known – before the lawsuit was filed in late August 2007 – that STS, Inc. was born of his
17 brother's duplicity in taking technology from Verigy. In early July 2007, counsel for Verigy sent
18 a pair of letters to Romi Mayder raising effectively the same allegations made in this lawsuit
19 which were immediately forwarded to Wes Mayder (but notably *not* to other minority
20 shareholders, an action in itself suggesting that Wes Mayder was more than merely a passive
21 investor, but instead his brother's co-conspirator). (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder
22 Depo. Tr. at 132:12 – 136:8; 170:2 – 175:6 and Exs. 101 & 104).) Upon receiving these direct
23 allegations of wrongdoing, Wes Mayder failed to take or order appropriate action and admitted at
24 his deposition that he performed no investigation whatsoever into the allegations other than to ask

---

[3] Defendants also deny that Francois was ever a member of STS, Inc.'s board of directors, but Romi Mayder told him otherwise. (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 124:20 – 127:8; 142:2 – 143:23 and Exs. 100 & 102).) Further, it would appear Francois believed him, because, as of July 8, 2008, Francois was touting himself on the internet as a "founding Director of Silicon Test Systems in San Jose, CA." (*Id.*, Ex. 110).

8

1  his brother's opinion of them.  (*Id.*)  Wes Mayder further admitted that he accepted "on faith"

2  everything his brother told him, notwithstanding that his brother frequently told him things which

3  were false.  (*Id.,* at 175:1-6.)  Such "head-in-the-sand" behavior was negligent, objectively

4  unreasonable and precisely the sort of behavior rendering him liable for the misdeeds of the

5  company under the doctrine enunciated in *Kadisha*.  Accordingly, there is an objective basis for

6  the claims against him.

### c. Wes Mayder Was an Active Co-Conspirator with Romi Mayder.

8  Wes Mayder argues repeatedly that he was "solely a passive, minority shareholder" in

9  Romi Mayder's company, STS, Inc.  (Motion, at p.1; *see also id*., at pp.2, 8, 9, 10 & 11; Wes

10 Mayder Decl., ¶ 7 ("I am only a passive shareholder").).  However, this assertion is nonsense,

11 belied by Wes Mayder's own admissions about his active role in the operations of company (and

12 its predecessor STS LLC), whether or not he was formally a member of STS, Inc.'s board of

13 directors.

### (i) Wes Mayder Solicited Investors for STS, Inc.

15 Wes Mayder, based on his own deposition testimony, was actively involved in the effort to

16 secure investors for STS, Inc. ███████████████████████████████████. (Gagliardi

17 Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 56:11 – 59:10 and Ex. 92).) ████████████

18 ████████████████████ (*Id*., at 65:11 – 70:12 and Ex. 93) ████████████████

19 ████████████████████).) ████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████.  (Gagliardi Decl., ¶¶ 2-3 and Ex.

25 A (Wes Mayder Depo.Tr. at 59:11 – 60:2) and Ex. B (Davidson Depo.Tr. at 70:4 – 71:8).)  Fund-

26 raising for a start-up company is not the domain of a merely passive investor.

### (ii) Wes Mayder Used His Driver's License for a Seller's Permit for STS, Inc.

28

1   Wes Mayder, by his own admission at deposition, was also actively involved in ███████

2   ████████████████████████████████████████████████████████████████████████████████████

3   (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 118:11 – 124:18 and Exs. 97-99).) On

4   March 29, 2007, Romi Mayder emailed his brother, ████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ██████████████████████████ (*Id.,* Ex. 97). Later the same day, Romi Mayder emailed back

7   indicating that ████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████ (*Id.,* Ex. 98). Romi Mayder then emailed

11  and ████████████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████████████████

13  (*Id.,* Ex. 99). Wes Mayder ██████████████████████████████████████████████████████

14  ██████████████████████████████████████████ (Gagliardi Decl., ¶ 2 and Ex. A (Wes

15  Mayder Depo.Tr. at 124:3-18.). Yet, he was unable to explain why information from a merely

16  passive investor would be required for a seller's permit. (*Id.*, at 123:17-19.)[4]

17                    **(iii)    Wes Mayder Operated the STS, Inc. Website.**

18  Wes Mayder, by his own admission, designed the STS, Inc. website. (Wes Mayder Decl.,

19  ¶¶ 14 & 16.). But he denies that either he or his company, WeDirect, ever *hosted* a website for

20  STS, Inc. or his brother. (*Id.*, ¶ 16).

21  Once again, the contemporaneous documentary ████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████████████████

24  (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 155:19 – 159:12 and Ex. 103) (emphasis

25  added.) The letter from Verigy alluded to by Romi Mayder was a letter dated July 9, 2007 (the

26  _____

27  [4]    In fact, in California a driver's license is required for a sellers permit of owners or partners, officers or members of a corporate entity pursuant to the online application materials (See,
28  Gagliardi Decl., ¶ 4 and Ex. C.).

1  previous day) from Verigy's counsel to Romi Mayder, which Romi forwarded to Wes Mayder, in

2  which counsel stated: "Your website at www.silicontest.com shows that you and your STS

3  Entities have been promoting products that appear to incorporate confidential technology you

4  worked on at Verigy." (*Id.*, at 170:2-23 and Ex. 104). Wes Mayder testified at his deposition that

5  ████████████████████████████████████████████████████████████████████ (*Id*., at

6  159:7-12).

7       Not only does Wes Mayder's conduct ████████████████████████ show that

8  he was operating the website (in direct contradiction of his sworn declaration), and show therefore

9  that he was more than a passive investor (again, in direct contradiction of his sworn declaration), it

10 also *shows consciousness of guilt*. The email Romi Mayder sent to his brother was short on

11 verbiage but deeply pregnant with meaning that could only have been understood by a co-

12 conspirator. The email says, in effect, ██████████████████████████████████

13 In other words, "they're on to us." Wes Mayder willingly complied without asking questions

14 because he knew already that the website contained Verigy trade secret information – and he knew

15 that he, Wes Mayder, had posted it on the website that he designed and hosted. Wes Mayder was

16 clearly a co-conspirator of his brother Romi Mayder. At the very least, an objective basis exists

17 such that a factfinder is entitled to make that determination based on the evidence at trial.

18              **(iv)   Wes Mayder Was Involved in the Willful Backdating of
                         Romi Mayder's Inventor's Notebook.**
19

20       Wes Mayder also actively conspired with his brother Romi Mayder in the backdating of

21 Romi Mayder's inventor's notebook – a false and fraudulent activity in direct furtherance of their

22 conspiracy to steal Verigy's intellectual property.

23       Wes Mayder admitted at his deposition receiving an email from his brother Romi Mayder

24 on January 17, 2007 asking Wes Mayder to supply someone to witness entries in Romi Mayder's

25 inventor's notebook and stated: ████████████████████████████████████████

26 █████████ (Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at 89:1 – 91:3; 101:8 – 102:20 and

27 Ex. 7) (emphasis added).) Wes Mayder replied by email the same day, offering up his employee,

28 Jon Davidson, without questioning the legality or ethics of the task assigned. (*Id.*) ██████

11

1 ████████ Mayder never took issue with Romi Mayder's *explicit request for assistance in*

2 *falsifying records*; instead, he dutifully complied. (*Id.*)

3 And, in fact, Romi Mayder's inventor's notebook *was falsified* by Davidson, whose

4 declaration and deposition testimony are at odds with each other and at odds with the

5 contemporaneous emails regarding the subject. The January 17, 2007 email string makes clear

6 that █████████████████████████████████████████████████████████████

7 █████████████████████████ (See, Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at

8 110:6-18 (conceding this truism).) Yet, Davidson *swears* under penalty of perjury in his

9 declaration that the request for him to do so was made *a month earlier*:

10 In *mid-December 2006*, Romi [Mayder] sent an email to Wesley [Mayder] asking
about obtaining verification of dates applicable to his lab notebook. Since I had
11 spoken several times with Romi [Mayder] about his work at STS LLC, Wesley
knew that I would be a good person for Romi to be referred to. I reviewed
12 Romi's notebook, and *based on my recollection of our discussions, I tried to sign
with dates corresponding to approximately when we discussed the information*.
13 Wesley never directed me to do anything false or anything wrongful, nor would I
do so.

14

15 (Davidson Decl., ¶ 7) (emphasis added). Thus, Davidson *admits to backdating* Romi Mayder's

16 inventor's notebook but vainly denies that it amounts to anything "false" or "wrongful."

17 However, in contradiction of Davidson's own declaration, Davidson swears under oath in

18 his deposition testimony ██████████████████████████████████████████████

19 █████████████████████████ (Gagliardi Decl., ¶ 3 and Ex. B (Davidson Depo.Tr. at 34:24

20 – 35:14; 44:10 – 45:19).) In other words, Davidson ████████████████████████████

21 ████████████████████████████████████████████████████████████████████

22 █████████████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 █████████████████████████████████████████████████████████████████████

25 ██████████████ (*Id.*, at 85:1 – 90:17 and Ex. 6) (copy of the notebook).) Davidson's

26 deposition testimony and declaration simply cannot be harmonized – one or both must be untrue

27 on the subject of backdating the notebook, and indeed *both* are. Neither Davidson's declaration

28 nor his deposition testimony is consistent with the definitive, contemporaneous documentary

12

1   evidence that the original request for Davidson to witness and endorse the notebook was not made
2   until January 17, 2007 and therefore Davidson simply could *not* have done so beforehand.[5] Thus,
3   Davidson (whose only connection to Romi Mayder is that he is Wes Mayder's employee offered
4   up by Wes Mayder for the job of falsifying records) is utterly discredited as a witness.

5   Although it is unknown just when Davidson signed Romi Mayder's notebook, what is
6   known is that *it had to be after* January 17, 2007 (rendering Davidson's declaration and deposition
7   testimony utterly impossible), that it involved *falsifying records*, and that *Wes Mayder was*
8   *inextricably involved in this scheme* █████████████████████████████
9   ████████████████████████████████████████
10  ████.

11  The evidence is thus *overwhelming* that Wes Mayder is thoroughly entangled with Romi
12  Mayder's misdeeds involving the theft of Verigy's technology.  Plainly, Wes Mayder was an
13  integral part of the conspiracy with his brother Romi Mayder to tamper with evidence of the real
14  ownership of STS, Inc's purported intellectual property. Wes Mayder's assertion that he would
15  never do anything false or fraudulent is completely incredible in light of this evidence.  Certainly,
16  at the very least, there is a colorable claim against Wes Mayder, precluding Rule 11 sanctions.

### 2. Counsel for Verigy Conducted a Reasonable and Competent Inquiry Into the Claims Against Wes Mayder Before Filing the Complaint.

19  As mentioned, to impose sanctions where the complaint is the primary focus of a Rule 11
20  motion, a district court in the Ninth Circuit must find not only that the complaint is objectively
21  baseless, but also that the attorney failed to conduct a reasonable and competent inquiry before
22  signing and filing it.  *Christian*, 286 F.3d at 1127.
23  Wes Mayder has utterly failed to carry his burden in establishing this second prong.  He
24  has not even purported to offer any admissible facts related to the quality of the pre-suit attorney

---

[5] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████

investigation.  Instead, Wes Mayder has simply asserted that "any reasonable investigation by plaintiff's counsel before bringing these claims [against Wes Mayder] would have revealed the truth of the situation . . ." (Motion, at p.8).  In effect, Wes Mayder suggests that, self-evidently, he had nothing to do with his brother's unlawful business built on the theft of intellectual property.  But as shown above, the contemporaneous evidence suggests otherwise:  Wes Mayder was an active co-conspirator with his brother Romi Mayder.  And there was certainly reason to believe this before the Complaint was filed.  (*See,* Fowler Decl., ¶¶ 2-6).

Verigy counsel John W. Fowler, who signed the Complaint, attests that to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the Complaint was *not* presented for any improper purpose, the claims and legal contentions of the Complaint against Wes Mayder were warranted in his mind by existing law and he believed the factual contentions had evidentiary support or were likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  (Fowler Decl., ¶ 2).

Mr. Fowler's pre-filing investigation into whether Wes Mayder is liable included: (a) interviews with Romi Mayder's supervisors at Verigy concerning Romi Mayder's statements to them regarding his stated plans to go into business with his brother, Wes Mayder; (b) review of documents filed with the California Secretary of State regarding the STS Entities; (c) review of information from the internet regarding Wes Mayder's businesses; and (d) an interview of Robert Pochowski and a review of documents provided by Pochowski.  (Fowler Decl., ¶ 3).

Mr. Fowler concluded based on his investigation that there was a basis in fact for the allegations regarding Wes Mayder's liability as alleged in the Complaint.  (Fowler Decl., ¶ 4).  Mr. Fowler further believed at the time he signed the Complaint that actual discovery against the defendants would uncover further evidence of Wes Mayder's liability, as alleged.  (Fowler Decl., ¶ 6).  As demonstrated above, discovery has shown this to be true.

Accordingly, Rule 11 was *not* violated and sanctions against Mr. Fowler are unwarranted and inappropriate.

### B. Wes Mayder's Request for An Award of Attorneys' Fees and Costs is an Inappropriate Sanction Under the Circumstances to Deter Future Conduct.

Wes Mayder has requested as relief for the alleged Rule 11 violation (1) dismissal of the Complaint as against Wes Mayder, with prejudice; and (2) an award of his attorneys' fees and costs. (Motion, at p.9). Assuming *arguendo* the Court finds a violation of Rule 11 by virtue of the Complaint as against Wes Mayder, dismissal of the claims against him is appropriate. On the other hand, however, an award of attorneys' fees and costs to Wes Mayder is *not* appropriate under the circumstances presented here.

Wes Mayder baldly asserts that "[a]ppropriate sanctions in this matter would constitute . . . a reimbursement of Wes Mayder's attorneys' fees and costs in pursuing this Rule 11 motion." (Motion, at p.9). He provides no analysis of the purpose and function of the rule and whether they are served by shifting attorneys' fees and costs under the circumstances. The purpose of Rule 11 is *not* remedial but instead to deter misconduct. Rule 11 is expressly "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). Thus, while shifting fees *may* be an appropriate sanction serving deterrence, a district court may require payment into the court or other form of sanction, including *non-monetary* sanction such as admonishment or formal reprimand, without any compensation to the part allegedly afflicted by frivolous claims. *See, Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999).

Here, even if the Court finds a violation of Rule 11 occurred, which it should not, it does not serve the purpose and function of the rule to impose monetary sanctions. An admonishment or formal reprimand is sufficient to deter repetition of such conduct or comparable conduct by other attorneys.

**C.    Verigy is Entitled to Reimbursement of Attorneys' Fees and Costs Incurred Responding to This Frivolous Rule 11 Motion.**

"Where either party moves for sanctions against the other, the court may award to the prevailing party its attorney fees and expenses incurred in presenting or opposing the motion." Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, ¶ 17:501 (2008), at p.17-69, *citing, Buster*, 104 F.3d at 1190 n.5.

Here, it is quite clear that Wes Mayder's motion for Rule 11 sanctions is utterly unwarranted and that the assertions made in the motion are belied by the ample evidence that Wes Mayder, as his brother's co-conspirator, is a *bona fide* and legitimate defendant. In short, the instant motion is frivolous and absurd. As shown above, the Rule 11 motion is built upon a foundation of deliberately false and deceitful arguments and partly disavowed declarations all premised on the nonsensical notion that Wes Mayder had nothing whatsoever to do with the transactions and occurrences at issue. In fact, as shown by myriad pieces of evidence, including documents he signed and emails he sent or received, Wes Mayder was closely involved with his brother's illicit business scheme from the outset. Moreover, in bringing this motion, Wes Mayder and his counsel have disingenuously sought to mislead this Court concerning the nature of such involvement. Indeed, Wes Mayder's declaration in support of his motions for summary judgment and Rule11 sanctions contains admittedly false testimony on material points. Under the circumstances, it is appropriate that an order issue directing Wes Mayder and/or his counsel-of-record, jointly and severally, to reimburse Verigy for its reasonable attorneys' fees and costs incurred in opposing this frivolous and vexatious motion.

**IV.    CONCLUSION**

For the foregoing reasons, Verigy and its counsel respectfully request that the Court deny in its entirety Wes Mayder's motion for sanctions pursuant to Fed.R.Civ.P. 11. Verigy and its counsel further request that the Court issue an order directing Wes Mayder and/or his counsel-of-record, jointly and severally, to reimburse Verigy for its reasonable attorneys' fees and costs incurred in opposing Wes Mayder's Rule 11 motion.

Dated:  July 17, 2008                           BERGESON, LLP

By:  _____/s/_____
     Donald P. Gagliardi
Attorneys for Plaintiff
VERIGY US, INC.