1  JACK RUSSO (State Bar No. 96068)
   TIM C. HALE (State Bar No. 114905)
2  JOHN KELLEY (State Bar No. 100714)
   RUSSO & HALE LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  Telephone: (650) 327-9800
   Facsimile: (650) 327-3737
5  Email: jrusso@computerlaw.com
          thale@computerlaw.com
6          jkelley@computerlaw.com

7  Attorneys for Defendant
   WESLEY MAYDER
8

                    IN THE UNITED STATES DISTRICT COURT
9
             IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                          SAN JOSE DIVISION
11

12  VERIGY US, INC., a Delaware Corporation,        Case No. 5:07-cv-04330-RMW (HRL)

13                      Plaintiff,                  **DEFENDANT WESLEY MAYDER'S
                                                    REPLY TO PLAINTIFF'S OPPOSITION
14                      v.                          TO DEFENDANT'S MOTION FOR RULE
                                                    11 SANCTIONS**
15  ROMI MAYDER, an individual; WESLEY
    MAYDER, an individual; SILICON TEST
16  SYSTEMS, INC., a California Corporation;        **Before: Judge Ronald Whyte**
    and SILICON TEST SOLUTIONS, LLC, a             **Ctrm: 6**
17  California Limited Liability Corporation,       **Date:  September 5, 2008**
    inclusive,                                      **Time: 9:00 a.m.**
18
19                      Defendants.                 Complaint Filed: August 22, 2007
                                                    Trial Date: December 8, 2008 (jury trial)
20                                                  (Defendants have elected to reserve their jury
                                                    trial rights under F.R.C.P., Rule 38)
21

22  AND RELATED CROSSCLAIMS.

23

24

25

26

27

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions                     Case No. 5:07-cv-04330-RMW (HRL)

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii

Introduction ...................................................................................................................... 1

Argument ......................................................................................................................... 1

I.      Verigy Fails to Meet the Objective Standard for Rule 11
        Certification Of Claims Presented as to Wesley Mayder. ........................................ 1

II.     Verigy Concedes That it Has No Evidence Of Any
        Intentional Wrongdoing by Wesley Mayder. ......................................................... 2

        A.      Verigy's Entire Argument that Wesley Mayder is Liable is
                Based on a Claim for Conspiracy That Was Never Pled. ............................ 3

        B.      Even if Verigy Could Support its Conspiracy Theory Against
                Wes Mayder, it has Failed to Provide Evidence to Demonstrate
                That There is a Material Dispute as to the Claims Against Him. ................. 7

        C.      Verigy's "Investigation" and Legal Reasoning Do Not
                Meet the Standard of Reasonableness and Competency. ............................ 8

III.    Verigy's Sanctionable Conduct Should Be Weighed In Light
        Of its Repeated Refusal to Withdraw Claims Against Wesley
        Mayder and its Continuing To Reargue the Same to the Court. ............................. 12

IV.     Reimbursement of Wesley Mayder's Legal
        Fees And Costs Is Warranted as Sanctions. ......................................................... 14

V.      Verigy's Request for Its Own Fees and Costs is Meritless. ................................... 14

Conclusion ..................................................................................................................... 15

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔚᴹ

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions        i        Case No. 5:07-cv-04330-RMW (HRL)

1

## TABLE OF AUTHORITIES

2

**Cases (Federal)**

3

*Accuimange Diagnostics Corp. v. Terarecon, Inc.,*
    260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................ 4

4

5

*Amnesty America v. Town of West Hartford,*
    288 F.3d 467 (2nd Cir. 2002) ........................................................................... 8

6

*Byrnes v. Lockheed-Martin, Inc.,*
    2005 U.S. Dist. LEXIS 39060 (N.D. Cal. Dec. 28, 2005) .......................................... 13, 14

7

*Doering v. Union County Bd. of Close Freeholders,*
    857 F.2d 191 (3rd Cir. 1988) .......................................................................... 14

8

*Huettig & Schromm, Inc. v. Landscape Contractors Council of Norther Calif.,*
    790 F.2d 1421 (9th Cir. 1986) ......................................................................... 11

9

10

*Jones v. International Riding Helmets, Ltd.,*
    49 F.3d 692 (11th Cir. 1995) .......................................................................... 12

11

*Katherine G. ex rel. Cynthis G. v. Kentfield School Dist,.*
    261 F. Supp. 2d 1159 (N.D. Cal. 2003) ............................................................. 8

12

13

*Smith v. Ricks,*
    31 F.3d 1478 (9th Cir. 1994) .......................................................................... 13

14

*Zaldivar v. City of Los Angeles,*
    780 F.2d 823 (9th Cir. 1986) .......................................................................... 2

15

16

**Cases (State)**

17

*Erkenbrecher v. Grant*
    187 C. 7 (Cal. 1921) .................................................................................. 6, 11

18

*Hollywood Cleaning & Pressing Co. v. Hollywood Laundry Service*
    217 C. 124 (Cal. 1932) ............................................................................... 6, 11

19

20

*PMC, Inc. v. Kadisha,*
    78 Cal. App. 4th 1368 (2000) ........................................................................ 5

21

**Statutes**

22

23

California Civil Code, section 14 ........................................................................ 6, 11

24

California Corporations Code, section 17101 ......................................................... 11

25

California Corporations Code, section 17150 ......................................................... 11

26

27

Fed. R. Civ. Proc., Rule 11 .............................................................................. 2, 12, 14

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions**    ii    **Case No. 5:07-cv-04330-RMW (HRL)**

1  **Other Authorities**

2  *Judicial Council of California, Civil Jury Instructions*, Section 3600 (2008). ........................... 4, 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᴸᴸᴾ

**Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions**    iii    **Case No. 5:07-cv-04330-RMW (HRL)**

1

## INTRODUCTION

2    Is suing a shareholder reasonable?  Is suing a shareholder without doing any prior proper

3    investigation —and without even sending any form of notification or demand letter to the

4    shareholder asking for answers to any questions before filing suit—reasonable and in compliance

5    with the standards for professional conduct under Rule 11 of the Federal Rules of Civil Procedure?

6    The answer to all these questions is a resounding "No:" our federal courts do not exist to permit

7    public companies (or any other plaintiffs) to simply add shareholders as defendants to major federal

8    litigation in a "ready, fire, aim" and overall "shotgun" approach and Rule 11 was designed to prevent

9    precisely this.   What the Court will NOT see in any of the voluminous paperwork filed by the

10    attorneys for Verigy in this case is a single pre-filing memorandum, a single pre-filing legal research

11    summary, or even a single pre-filing email which sets forth the underlying factual or legal basis for

12    suing Wes Mayder.  Why?  Because there was no such memorandum, there was no such legal

13    research, and there was no such pre-filing thought process other than to put pressure on Wesley

14    Mayder for wrongful reasons.

15    Verigy's papers in opposition to Wesley Mayder's motions for summary judgment and rule

16    11 affirm that Verigy frivolously sued Wesley Mayder, without having done a proper investigation,

17    and is continuing to sue him despite knowing that he is not liable in this action.  Accordingly,

18    Verigy's opposition confirms that Verigy and its attorneys, Bergeson, LLP, should be held liable for

19    Rule 11 sanctions for having brought a frivolous and unsupported lawsuit against Wesley Mayder,

20    for having refused, despite multiple warnings by Mr. Mayder's counsel, to dismiss this unsupported

21    suit against Mr. Mayder, and for having renewed these factually and legally frivolous and bad faith

22    claims against Wesley Mayder made before this Court as recently as June 2008.

23

## ARGUMENT

24    **I.    VERIGY FAILS TO MEET THE OBJECTIVE STANDARD FOR RULE 11
       CERTIFICATION OF CLAIMS PRESENTED AS TO WESLEY MAYDER.**

25    By presenting  to the Court, by signing, filing, submitting or advocating a pleading written

26    motion or other paper, an attorney or unrepresented party certifies that to the best of its knowledge,

27    and based upon a reasonable inquiry, that the paper is not presented for improper purpose, that its

28    claims, defenses and legal contentions are warranted by existing law and that the factual

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔆᴹ

**Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions      1      Case No. 5:07-cv-04330-RMW (HRL)**

1  allegations or denials of factual allegations therein have evidentiary support, or are likely to after

2  reasonable opportunity for investigation or discovery.  Fed. R. Civ. Proc., rule 11 (b) (1-4).

3  Sanctions are warranted if the papers presented are based upon "bad law" or "bad facts" or

4  presented for improper purposes, such as harassment, to cause unnecessary delay or to needlessly

5  increase the cost of litigation.  *Id.*

6      Whether this standard is violated is tested **objectively** to determine whether the papers

7  are frivolous, legally unreasonable or without factual foundation.  *Zaldivar v. City of Los*

8  *Angeles*, 780 F.2d 823, 831 (9th Cir. 1986). Here, Verigy's so-called claims against Wesley

9  Mayder, now revealed to be an *unpled* (and completely unsupportable) civil conspiracy claim,

10  fail this objective test as to all three counts, and Verigy's opposition makes this failure to meet

11  the objective standard clear by failing to support its pre-existing allegations against Mr. Mayder

12  and by attempting to put forth yet another unsupported and legally frivolous claim against Mr.

13  Mayder. After having finally undertaken to actually investigate its claims, the so-called

14  evidence brought forth by Verigy demonstrates that it had no objective basis in law or fact to

15  sue him, and certainly has no basis to continue a suit against him.  (Defendant Wes Mayder

16  incorporates by reference and asks the Court to take judicial notice of the concurrently filed

17  Evidentiary Objections and Wes Mayder's submissions in the co-pending Rule 56 motion.)

18  **II.    VERIGY CONCEDES THAT IT HAS NO EVIDENCE OF ANY
        INTENTIONAL WRONGDOING BY WESLEY MAYDER.**

19

20      Verigy's opposition papers reveal that its entire basis for trying to hold Wesley Mayder

21  liable is that he was a civil conspirator of his brother, Romi, and as such, is liable for any and all

22  acts of his brother. Verigy's Memorandum of Points and Authorities in Opposition to Wesley

23  Mayder's Motion for Summary Judgment ("Opp.") at 3.  Moreover, Verigy's opposition reveals

24  that it has no evidence against Wesley Mayder as to his knowingly or intentionally entering into

25  some type of conspiracy against Verigy, but relies instead on his having allegedly been *negligent*

26  in not discovering any alleged wrongdoing by his brother. Opp. at 7.  Making an investment

27  without doing more research or more diligence is far different from knowingly and intentionally

28  entering into a conspiracy against a public company.  There is no Rule 11 rule of professionalism

for the degree of investigation one does in choosing to make an investment in his or her brother's

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᴸᴸᴾ

**Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions**    2    **Case No. 5:07-cv-04330-RMW (HRL)**

1   company; but, there is a Rule 11 rule of professionalism that applies to all federal litigants and to

2   all attorneys representing parties in Federal Court to investigate the facts and the law fully and to

3   meet an objective standard of reasonableness for filing suit and for adding parties to that lawsuit.

4   There was no such objectively adequate investigation in this case and the "after-the-fact" efforts

5   by the Bergeson firm do not even come close to meeting Rule 11 standards and it is a further

6   affront to this Court (and to Wes Mayder) that they still refuse to admit it.

7       **A.    Verigy's Entire Argument That Wesley Mayder is Liable
            Is Based Upon a Claim for Conspiracy That Was Never Pled.**

8

9           Verigy's attempt to hold Wesley Mayder liable for conspiracy fails miserably given that

    Verigy has failed to even plead the facts required to pursue a conspiracy claim; moreover, Wesley
10
    Mayder had no duty to investigate the actions of his brother because he was neither an officer nor
11
    director of either STS LLC or STS, Inc., contrary to Verigy's efforts to muddy the waters in that
12
    regard, and even had he been, he made the proper inquiry within the realm of his understanding to
13
    confirm that no wrongdoing had occurred, or at least to shield himself from vicarious liability.
14
            Verigy spends absolutely no time in its brief defending any of the "causes of action"[1] in the
15
    complaint as against Wesley Mayder, or presenting evidence as to Wesley Mayder's position in
16
    Silicon Test Systems, Inc., but instead, has attempted to now rely instead upon a claim of civil
17
    conspiracy, a claim it has *never properly pled in this action*.[2]   Verigy alleges, "Wes Mayder was
18
    an active co-conspiratory in his brother's activities, regardless of his formal position in the STS
19
    Entities."  Opp. at 4:22-23.
20
            A claim for civil conspiracy requires that the pleader set forth allegations regarding all of
21
    the following elements:
22

23   _____

     [1]    The entire Complaint appears to be a "cut and paste" of some prior state court pleading; this
24   Court has the power to require that Verigy and its lawyers show cause how they arrived at
     adding Wes Mayder as an individual defendant in this case including what prior pleading was
25   used as the "model" for choosing to simply "throw in" Wes Mayder (as an after -thought).  If
     each draft of the original pleading were produced pursuant to the Court's Show Cause Order,
     Defendants have no doubt whatsoever that Wes Mayder was added at the last minute and
26   simply with the view of putting additional pressure on the Defendants in this case because the
     pleading itself barely recites even a single fact specifically as against defendant Wes Mayder.

27   [2]    Indeed, in his opening brief to his concurrently filed Motion for Summary Judgment, Mr.
28   Mayder alerted the Court to the fact that Verigy would attempt to manufacture an alter ego or
     conspiracy claim having never in fact pled such claims.  See Docket No. 230 at 9.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions        3        Case No. 5:07-cv-04330-RMW (HRL)**

1)    someone was responsible for damage to plaintiff;

2)    that someone and one or more other persons formed an agreement to commit a wrongful act, either orally, in writing or by course of conduct;

3)    the other persons were aware that the first conspirator planned or carried out a wrongful act;

4)    the others agreed with the first conspirator and agreed the wrongful act should be committed;

5)    Mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to impose vicarious liability on a so called co-conspirator.

CACI Section 3600.[3]

Verigy has not come close to pleading, or raising a material dispute as to these elements. Where is the evidence that Wes and Romi Mayder made an agreement to commit a wrongful act? Where is the evidence that Wes Mayder intended or wanted his brother to engage in a wrongful act? Verigy has no such evidence, and instead relies upon the so-called "mere knowledge" imparted to Wes Mayder by dint of his having received copies of Verigy's counsels' threatening letters. As CACI Section 3600 confirms, such mere knowledge is insufficient to raise a claim of civil conspiracy. Rather, Verigy continues to try to rely upon immaterial facts, such as Wes Mayder's having initially made an investment in STS LLC, but which investment was returned because the company never got off the ground. Opp. at 5-6.[4] Verigy hopes that passive investment, not active conspiracy, is enough to tag Wes Mayder, but it is not.

Indeed, Verigy has conceded that it has no evidence of intentional wrongdoing by Wes Mayder, or even knowledge by him of his brother Romi having committed any wrongful acts.

---

[3]    While CACI Section 3600 confirms that civil conspiracy is not a separate cause of action, that does not relieve Verigy from pleading and proving the factual elements required thereof. A pleading that fails to include sufficient detail of alleged wrongdoing to support a conspiracy charge cannot be the basis for legal liability, and here, Verigy's Complaint is bereft of any such detail. *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 950 (N.D. Cal. 2003).

[4]    Similarly, Verigy points to Wes Mayder's having attempted to help with fundraising for STS, Inc. Opp. at 9. Nowhere does Verigy recite to any facts or case law, however, that supports its once-again conclusory allegation that "[f]undraising for a start-up company is not the domain of a merely passive investor." *Id.* What case law has held that helping with fundraising creates tort liability for a person who otherwise knows of no wrongdoing and participates in no wrongdoing. Verigy cites to no such case, because there is none.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions    4    Case No. 5:07-cv-04330-RMW (HRL)

1    Instead, Verigy has now resorted to a position that Wes Mayder was *negligent* in not discovering

2    the wrongdoing based upon the case of *PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368 (2000).  Opp.

3    at 8.  But that case, too, fails to support Verigy's position.  Rather, the court in *PMC* held that a

4    *corporate officer or director* could be held liable in tort only if he: a) purchased or invested in the

5    corporation, the principal assets of which were the result of unlawful conduct; b) the officer or

6    director *took control of the corporation and appointed personnel to run the corporation* c) the

7    officer or director did so with knowledge, or with reason to know, that unlawful conduct had

8    occurred.  *Id.* at 1372 (emphasis added).

9          Here, there is no competent evidence put forth by Verigy that Wes Mayder in any respect

10   took control of the corporate entities, either STS LLC or STS, Inc., and the vast majority of evidence

11   in fact informs the opposite.  While he intended to originally invest in STS LLC, the company was

12   never in fact consummated, his investment was returned and he took no action to make that company

13   a going concern.  *See* Declaration of Donald P. Gagliardi in Opposition to Wesley Mayder's Motion

14   for Rule 11 Sanctions ("Gagliardi Decl."), at Ex. A, pp. 31:14-35:3.  Verigy has put forth no

15   evidence in opposition to dispute this testimony.  Second, the evidence supports the conclusion that

16   Wes Mayder was never an officer or director of either STS LLC or STS, Inc., but rather was simply

17   an investor.   He was asked repeatedly in deposition about emails sent by his brother Romi that

18   appeared to mention him as a board member of STS, Inc., and he repeatedly informed Verigy that

19   those were simply mistakes by Romi in mixing up a shareholder relationship with a board member

20   relationship.  *See* Declaration of Jack Russo ("Russo Decl."), submitted herewith, at Ex. A, at pp.

21   126:11-131:6.

22         The other evidence before the Court supports the conclusion that Wes Mayder was never an

23   officer or director of STS LLC or STS, Inc., and a few random, mistaken references by Romi Mayder

24   does not change that.  Rather, as Romi Mayder himself has sworn to under oath in papers filed with

25   the Court on this motion, the papers filed with the California Secretary of State and other corporate

26   documents belie any contention that Wes Mayder was an officer or director of either entity.  *See*

27   Supplemental. Declaration of Romi Mayder in Support of Motion for Summary Judgment and Motion

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com℠

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions          5          Case No. 5:07-cv-04330-RMW (HRL)

1    for Rule 11 Sanctions ("Suppl. Romi Mayder Decl."), at ¶4, Exs. A-D thereto, Docket No. 259.[5]

2         Nonetheless, Verigy attempts to manufacture a finding of control or agreement to conspire

3    by Wes Mayder in pointing to an assortment of random issues or acts that in no way suggest

4    control.  For example, Verigy points to Wes Mayder's having taken down an STS website at his

5    brother's request after his brother received threatening letters from Verigy's counsel. But if a

6    shareholder providing minimal help to a corporation's CEO, sole officer and sole director creates

7    liability then the whole concept of limited liability for shareholders is turned upside down and the

8    entire basis for investing in early stage companies in California will be frustrated in a manner

9    opposite from the law and policy that is well-settled in the California Corporations Code.  See Cal.

10   Civil Code, section 14; *Erkenbrecher v. Grant*, 187 C. 7, 9 (Cal. 1921); *Hollywood Cleaning &*

11   *Pressing Co. v. Hollywood Laundry Service*, 217 C. 124, 129 (Cal. 1932).

12        There has to be a showing of control, and agreement to conspire, and Verigy has provided

13   neither.   As neither an officer or director of the entities charged with wrongdoing, Verigy cannot

14   hold him liable for civil conspiracy.  Nor has Verigy demonstrated any control or even a material

15   dispute involving control of either STS entity by Wes Mayder.   See Declaration of Daniel E.

16   Hanley, submitted herewith, at ¶¶4-8.

17        Moreover, even were Verigy's misreading of the *PMC* case correct, there is no showing of

18   negligence by Wes Mayder in connection with the corporations or Verigy's alleged trade secrets.

19   As Wes Mayder testified, after he was provided copies of Verigy's attorneys' threatening letters to

20   his brother, he *repeatedly* inquired of his brother, Romi, whether there was any proper basis for

21   Verigy to have claimed Romi was misusing Verigy confidential information.  Gagliardi Decl. at

22   Ex. A, at pp. 170:5-174:11.[6]  Wes Mayder did not "stick his head in the sand" as Verigy would

23

24   ───────────────────

[5]   Additionally, Romi Mayder confirmed that while he had attempted to get his brother to sign up
25        as an STS board member, he declined to do so.  Suppl. Romi Mayder Decl. at ¶6-10.

26   [6]   Verigy appears to take the position that a mere demand letter from an attorney provides
          adequate evidence of wrongdoing that required that Wes Mayder, a non officer or director, do
27        something more than inquire repeatedly of wrongdoing.  Wes Mayder has testified under oath
          to the Court on this motion that he lacks understanding of the semiconductor business; he
28        testified in deposition as well that he could not really understand much of what was in the
          Verigy threatening letters.  Gagliardi Decl. at Exh. A, at p. 133:21-134:18.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions    6    Case No. 5:07-cv-04330-RMW (HRL)

1   have it; he made appropriate inquiry within the bounds of his understanding; further, given his

2   mere investment role in the company, he had no duty to inquire further in any event.

3   //

4   **B.    Even if Verigy Could Support its Conspiracy Theory Against**
    **Wes Mayder, it Has Failed to Provide Evidence to Demonstrate**
5   **That There is a Material Dispute as to the Claims Against Him.**

6       Verigy has admitted by its opposition papers that it has no direct evidence of any

7   intentional tort by Wes Mayder, and so is proceeding on the basis that he is liable for the alleged

8   acts of his brother Romi.  But that means that Verigy was required in its opposition to at a

9   minimum demonstrate that there was material dispute of fact as to:

10      1)    whether any trade secret misappropriation occurred; Verigy has provided
              no evidence of that in its opposition;
11
        2)    whether anyone had improper access to its computer or computer systems
12            to support its Third, Fourth and Fifth "Causes of Action"; again, Verigy
              put on no evidence to demonstrate that anyone had such access;
13
        3)    the unfair competition claims, the alleged Sixth and Seventh "Causes of
14            Action", require a showing of other wrongdoing by Wes Mayder or a co-
              conspirator, but no such showing is put on by Verigy;
15
        4)    the Ninth and Tenth "Causes of Action," for federal and state false
16            advertising, require evidence that Wes Mayder or a co-conspirator actively
              marketed and advertised and in doing so made false statements to Verigy's
17            detriment; no evidence has been brought forward on summary judgment to
              support these claims;
18
        5)    the Eleventh "Cause of Action", for alleged intentional interference with
19            prospective economic advantage, requires a showing of knowledge of
              such economic advantage and intentional interference in the relationship;
20            Verigy has provided no evidence that Wes Mayder was so aware, or that
              any other person was so aware, or interfered.
21
        Verigy fails utterly to present any evidence which meets the objective standard for

22  demonstrating a legal or factual basis as to each claim. Rather than do so, Verigy attempted to rely

23  solely on an assertion of civil conspiracy but *without having adduced competent evidence of any*

24  *underlying wrongdoing by another conspirator*.  That was Verigy's burden in order to show an

25  objective basis for suing Wes Mayder but it completely failed to provide such evidence, such that

26  it has failed to show that it had adequate grounds to sue him as a co-conspirator based on some

27

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠ᴹ

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions        7        Case No. 5:07-cv-04330-RMW (HRL)

1   other person's acts.[7]   As set forth in CACI Section 3600, Verigy had to provide *evidence* to

2   support such underlying wrongdoing, but completely failed to do so in its opposition papers.

3       **C.    Verigy's "Investigation" and Legal Reasoning Do Not**
        **Meet the Standard of Reasonableness and Competency.**

4       Verigy's attorneys have submitted a conclusory declaration which supposedly supports

5   Verigy's statements that its claim asserted against Wesley Mayder was based on an "inquiry

6   reasonable under the circumstances," "not presented for any improper purpose," and

7   "warranted…by  existing law and…had evidentiary support or were likely to have evidentiary

8   support after a reasonable opportunity for further investigation or discovery."  *See*, Declaration of

9   John Fowler in Opposition to Wesley Mayder's Motion for Rule 11 Sanctions ("Fowler Decl."),

10  dated July 11, 2008, Docket no. 267-7 at ¶2.  However, Mr. Fowler's investigation can be called

11  cursory at best, and was in no fashion "reasonable" or "competent" based on the evidence

12  submitted in his declaration.   Where is the pre-filing memorandum?  Where is the pre-filing legal

13  research? Where is the pre-filing analysis of law applied to fact? Why is there not even a single

14  pre-filing email setting forth any evidence?  The after-the-fact "rationalization" is obvious.

15      Mr. Fowler confirms this in his testimony; he simply testifies through his conclusory

16  statements which are not based on any truly applicable factual investigation or legal analysis;

17  rather he just generally alludes to "interviews of Romi Mayder's supervisors at Verigy regarding

18  Romi's statements to them regarding his plan to go into *a real estate business* with his older

19  brother, Wesley" [emphasis added.],  *Id*. at ¶3; to a "review of documents obtained from the

20  California Secretary of State and the Internet regarding the two STS businesses as well as Wesley

21  Mayder's businesses, which show the same street address for STS, Inc. and Wesley Mayder's

22  businesses, *Id.*; and to an  "interview of Robert Pochowski and review of documents produced by

23  _____

24  [7]    Verigy states, "Here, as shown below, Wes Mayder was an active co-conspirator in *his*
        *brother's activities*, regardless of his formal position in the STS Entities.  And, as his brother's

25      co-conspirator, Wes Mayder *is equally liable for Romi Mayder's misconduct.*"  Opp. at 4
        (emphasis added.)  The only problem is that Verigy neglected to adduce *any evidence* in its

26      opposition of any Romi Mayder misconduct, and certainly has made no request for judicial
        notice that would legitimize the Court's looking beyond the papers filed on this motion.  It is

27      not enough that some helpful facts may exist somewhere in the Court's record; it is the
        obligation of the opposing party to cite to specific evidence showing triable facts.  *Amnesty*
        *America v. Town of West Hartford*, 288 F.3d 467, 470 (2nd Cir. 2002); *Katherine G. ex rel.*

28      *Cynthis G. v. Kentfield School Dist.*, 261 F.Supp.2d 1159, 1167 (N.D. Cal. 2003).

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions          8          Case No. 5:07-cv-04330-RMW (HRL)

1    him indicating Wesley Mayder's active participation in STS, LLC." *Id.*  Mr. Fowler puts forth

2    these activities as his "investigation" which led him to conclude that "there was a basis in fact for

3    the allegations regarding Wesley Mayder's liability in the complaint." *Id.*  However, they

4    demonstrate nothing more than a cursory review based on incautious, fallacious and paralogical

5    reasoning.   And, why was it that Mr. Fowler and the Bergeson firm—after getting not one but two

6    Rule 11 notifications—failed to come forward with any of this supposed "evidence" within the 21

7    days?

8          The first two prongs of Mr. Fowler's "investigation" reveal precisely nothing as to Wesley

9    Mayder's culpability or likely culpability for claims for trade secret misappropriation, breach of

10   contract, computer abuse, privacy breach or other claims—absolutely nothing.  What does the

11   fact that Wes Mayder is a licensed real estate broker with a (currently inactive) real estate practice

12   have to do with any of this? *The answer is nothing* other than a profoundly spurious leap of logic

13   on Mr. Fowler's part: if Romi Mayer told his supervisors he was thinking of going into a real

14   estate business with his older brother Wesley, it does not follow necessarily, as Mr. Fowler seems

15   to have concluded, that any business that Romi Mayder went into was with his older brother

16   Wesley, nor that any business Romi Mayder went into involved his older brother Wesley on the

17   footing of a founder, director, officer, employee or relationship other than what is true and has

18   been shown to be true, that Wesley was a passive, minority shareholder.

19         Likewise, Mr. Fowler went on the Internet and reviewed corporate documents and

20   observed the same street address for the brothers' separate businesses.  His line of reasoning, that

21   if two businesses have the same street address, ergo, the two businesses have the same ownership,

22   fails necessarily for logical reasons as well as recognizable building tenancy patterns.  According

23   to the Internet, Mr. Fowler's firm, Bergeson, LLP, shares the same street address, 303 Almaden,

24   Blvd., San Jose, California, with Wachovia Securities, Prudential Securities Incorporated,

25   Rockfeller Group Business Centers, and Café Primavera. Is it to be necessarily concluded that Mr.

26   Fowler's firm is owned and operated by and employs the same people as one or more or even

27   every other tenant at this address?   (In fact, Fowler and the Bergeson firm before launching this

28   very expensive litigation against Wes Mayder did not even bother to see that Wes Mayder's

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠ᴸᴹ

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions        9        Case No. 5:07-cv-04330-RMW (HRL)

1    WeDIRECT, INC. business is on the seventh floor of a third-party-owned commercial high-rise

2    office building in San Jose and Romi Mayder's STS is located in separate offices on the third floor

3    of that building.  Just walking into the lobby of that building (at 3031 Tisch Way, San Jose) would

4    have revealed that—less than 30 minutes of "factual research" had he done it even considering the

5    less than 15 minute commute time from his 303 Almaden building in San Jose.

6            Additionally, Mr. Fowler failed to approach his interview with Romi Mayder's disgruntled

7    ex-partner, Mr. Pochowski, with any necessary measure of objectivity, and believed implicitly Mr.

8    Pochowski's statements as to "Wesley Mayer's active participation" in *one* of Romi Mayder's

9    businesses, the limited liability company that was abandoned (and for which there was not a fully

10    executed LLC Operating Agreement as Pochowski himself had refused to sign as had each of the

11    spouses of  the proposed members), and from that inferred (again) incorrectly and unnecessarily a

12    degree of involvement by Wesley Mayder in Romi Mayder's business, Silicon Test Systems, Inc.

13    See, Declaration of Daniel E. Hanley, submitted herewith, at ¶¶4-8.

14            Further, Mr. Pochowski's declaration reveals that he was privy to no conversations and has

15    no evidence that Mr. Wes Mayder had any part in any alleged wrongdoing by either his brother or

16    his businesses.  Mr. Fowler's conclusory statement about his interview with Mr. Pochowski and

17    "examination of documents presented by Mr. Pochowski" is completely unsupported by any

18    documentary evidence: Mr. Fowler had an obligation to present to the Court competent evidence

19    which would allow the Court to make an informed judgment as to the evidence considered and line

20    of reasoning followed by Mr. Fowler, an obligation which he utterly fails to meet.  Indeed, a fair

21    "read" of what Mr. Fowler asserts is that he did less than 15 minutes worth of "research" and

22    decided that a completely (and legally presumed innocent) minority shareholder of a Sub-S

23    corporation could and should be held liable on each and every one of the supposed twelve different

24    "causes of action" in this case.

25            Indeed, the most frivolous statement in Verigy's opposition, "Wesley Mayder's signature

26    on the document [the LLC operating agreement] evidences *factually* the brothers' conspiracy to

27    operate a company engaged in the semiconductor device testing industry—using Verigy's

28    technology" (Opp. at 6:9-11, emphasis in original) is evidence of just how far Verigy is willing to

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔆᴹ

**Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions**    10    **Case No. 5:07-cv-04330-RMW (HRL)**

1    falsely and preposterously press its conclusory assumptions before the Court as so-called "factual

2    evidence" of wrongdoing: Wesley Mayder's having signed an operating agreement in no way

3    evidences any knowledge or improper action on his part.  Wesley Mayder never had, nor does

4    Verigy present any evidence that he ever had, possession of any Verigy trade secrets, or

5    knowledge of wrongdoing in signing the document.  Such conclusory statements as those

6    presented by Verigy's counsel in purported "defense" of naming Wesley Mayder as a party to its

7    Complaint, backed up by this invalid line of reasoning, is exactly the unprofessional conduct that

8    Rule 11 is meant curtail and which Rule 11 authorizes this Court to sanction: completely

9    assumptive leaps in logic with no factual relationships, presented to the Court as though there were

10   indeed such factual relationships between what Mr. Romi Mayder did or where STS, Inc. was

11   located, for example, and wrongdoing or liability on Mr. Wes Mayder's part.  Put bluntly, if

12   Fowler (and Bergeson's) conduct is allowed then every lawsuit against every small private

13   corporation will allow every shareholder to be named as a co-defendant which is precisely the

14   opposite of the settled strong policy under California law that shareholders are not liable for the

15   torts of others.  See Cal. Civil Code, section 14; *Erkenbrecher v. Grant*, 187 C. 7, 9 (Cal. 1921);

16   *Hollywood Cleaning & Pressing Co. v. Hollywood Laundry Service*, 217 C. 124, 129 (Cal. 1932).

17   The same is true for LLC members.  Cal. Corp. Code, sections 17101, 17150.

18          Further, Mr. Fowler also testifies that he based his recommendation to name Wesley Mayder

19   on "my knowledge of existing law as well as my experience litigating questions of conspiracy, joint

20   venture liability, partner liability, vicarious liability and *alter ego* liability for over four decades."

21   Fowler Decl. ¶ 5.  It is significant, however, that none of these allegations for liability found their

22   way into the Complaint, none are supported by any evidence whatsoever and, just as it is significant

23   that Verigy now chooses to argue a civil conspiracy claim against Wesley Mayder which it also

24   failed to properly plead.  Verigy argues "Wes Mayder was an active co-conspirator with his brother

25   Romi Mayder.  And there was certainly reason to believe this before the Complaint was filed."  Opp.

26   14:5-7.  Fowler Decl., ¶¶2-6.  If this were so, then why did Verigy fail to plead the necessary facts

27   supporting a civil conspiracy claim in its Complaint against Wesley Mayder?

28          Federal Courts have held that experienced lawyers will be held to higher standards than

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔆᴹ

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions          11          Case No. 5:07-cv-04330-RMW (HRL)

1    inexperienced ones, and their conduct scrutinized in light of their experience. *Huettig & Schromm,*

2    *Inc. v. Landscape Contractors Council of Northern Calif.*, 790 F.2d 1421, 1426 (9th Cir. 1986).   The

3    Court should consider that if an experienced lawyer such as Mr. Fowler truly thought Verigy had a

4    valid claim for civil conspiracy against Wesley Mayder, which it does not, or that Wesley Mayder

5    was liable under any of joint venture, partner, vicarious or *alter ego* theories, Mr. Fowler would have

6    properly seen that such was alleged in the Complaint at the time it was entered a year ago.  Verigy's

7    attempt to plead this claim (insufficiently) now should be recognized for the equivocation that it is,

8    and sanctions should be issued against Verigy and its counsel.

9    **III.    VERIGY'S SANCTIONABLE CONDUCT SHOULD BE
             WEIGHED IN LIGHT OF ITS REPEATED REFUSAL TO
10           WITHDRAW CLAIMS AGAISNT WESLEY MAYDER AND
             ITS CONTINUING TO REARGUE THE SAME TO THE COURT.**

11            Verigy attempts to evade responsibility for undertaking these frivolous claims against Wesley

12   Mayder by asserting that the claims filed in the Complaint were reasonable based upon the

13   investigation conducted by Verigy's attorneys at the time they were filed. Opp. at 21- 22.  However,

14   while it is true that reasonableness is measured at the time the motion or paper is presented to the

15   Court, if matters contained in the motion or paper are also later presented or advocated to the court,

16   reasonableness will be measured at that later time, notwithstanding that no new paper is filed.  Fed.

17   R. Civ. Proc., Rule 11(b); *Jones v. International Riding Helmets,* 49 F.3d 692, 695 (11th Cir. 1995).

18            Hence, while Verigy argues, wrongly, that its investigation and legal conclusions over a year

19   ago were reasonable under the circumstances, it completely fails to support its claims in light of the

20   fact that (a) it has refused to withdraw its baseless claims for close to a year, despite multiple

21   warnings from Mr. Mayder's counsel; (b) it failed to provide any substantive response during the

22   Rule 11 twenty-one (21) day cooling off period, (c) indeed, failed to provide any such substantive

23   response during the two Rule 11 twenty-one (21) day cooling off periods (over 50 days of prior

24   notice before this motion was filed) and (d) it has since reargued these matters to the Court, not least

25   in a joint letter with defendants dated June 19, 2008 in which, in opposition to defendants' assertion

26   that "Verigy has brought a long list of claims against defendant Wesley Mayder in a twenty-page

27   complaint that is almost completely devoid of any factual allegations against him," Verigy continues

28   to reargue these unfounded claims against Wesley Mayder, alleging, "…[T]here is ample evidence

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions**    12    **Case No. 5:07-cv-04330-RMW (HRL)**

1    that Verigy will submit in opposition the [sic] Wesley Mayder's motions showing his active

2    participation in both defendant companies." *See* Joint Letter to Judge Whyte, June 19, 2008, Docket

3    no. 246 at p. 2.  In support of this argument, Verigy states,

4            …[A]lthough Verigy has not yet filed its opposition, Verigy will submit ample
             evidence showing that Wesley Mayder was anything but a passive investor.
5            Indeed, there is no dispute that Wesley Mayder was involved in STS, LLC
             [defendant Silicon Test Solutions, LLC] from September-December 2006
6            [Citation omitted], that Wesley Mayder directed his employee to create an modify
             STS, Inc.'s website [Citation omitted], that Wesley Mayder obtained a "witness"
7            to backdate Romi Mayder's inventor notebook [Citations omitted], or that Wesley
             Mayder negotiated for office space in his building for STS, inc. [Citation
8            omitted].   Indeed, STS, LLC's own attorney admitted in 2005 that Wesley
             Mayder was one of the founding members and co-owner of STS, LLC [Citation
9            omitted].  This additional evidence leaves no doubt that at the very least, Mr.
             Wesley Mayder was a founder of the defendant companies.

10   *Id*. at p. 3.  Even if Verigy's investigation at the time of filing its Complaint were reasonable, which it

11   was not, it has had over a year in which to conduct a further investigation to substantiate its claims,

12   during which time

13           (a)     Mr. Mayder's counsel sent *three* letters to Verigy explaining Wesley Mayder's non-
                     culpability and requesting that it dismiss Mr. Mayder from the lawsuit, which Verigy
14                   refused to do;

15           (b)     Despite these multiple warnings, Verigy failed to serve documents requests and take
                     Wesley Mayder's deposition until *after* the filing of these motions, and
16

17           (c)     All the while Verigy continued to represent to the Court that Wesley Mayder was to a
                     party to be held liable for its claims.

18   Hence, Verigy's oblique argument that the reasonableness of its conduct should be adjudged based

19   upon its knowledge and belief at the time it filed the Complaint, and Mr. Fowler's supposed

20   conclusions made based on evidence available almost a year ago, is contrary to established law as

21   well as contrary to the facts in this case. "Counsel can no longer avoid the sting of Rule 11 sanctions

22   by operating under the guise of a pure heart and an empty head." *Smith v. Ricks,* 31 F.3d 1478, 1488

23   (9th Cir. 1994).  Verigy had an obligation to investigate the factual and legal basis for its claims

24   against Wesley Mayder, and, finding none, to dismiss them.  "The purpose of Rule 11 is to deter

25   dilatory or abusive pretrial tactics and to streamline litigation by excluding baseless filings.

26   [Citation.] When it becomes apparent that a case lacks evidentiary support, a client and his lawyer

27   have a duty to withdraw their complaint." *Byrnes v. Lockheed-Martin, Inc*., 2005 U.S. Dist. LEXIS

28   39060, at *23 (N.D. Cal. Dec. 28, 2005).  Verigy and its counsel should be held liable for positions

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions        13        Case No. 5:07-cv-04330-RMW (HRL)

1    and arguments it has taken before this Court consistently and recently, and its refusal to withdraw it

2    claims, and its insistence on maintaining Mr. Mayder as a party to this lawsuit for almost a year

3    despite three warning and without conducting any reasonable investigation or discovery should be

4    taken into account.

5    **IV.    REIMBURSEMENT OF WESLEY MAYDER'S LEGAL FEES AND COSTS IS WARRANTED AS SANCTIONS.**

6          If the Rule 11 certification is violated, the Court is to impose an appropriate sanction upon the

7    attorneys or parties who have violated or are responsible for the violation. Fed. R. Civ. Proc., rule 11

8    (c)(1).  The court is authorized to impose a sufficient sanction, to "what suffices to deter repetition of

9    the conduct or comparable conduct by others similarly situated."  *Id*. at (c)(4).  A sanction is

10   appropriate when it is "the *minimum* that will serve to adequately deter the undesirable behavior."

11   *Doering v. Union County Bd. of Close Freeholders,* 857 F.2d 191, 194 (3rd Cir. 1988)[emphasis in

12   original].

13         An award of monetary sanctions is fully in line with this stated purpose of deterrence: the

14   Court in *Byrnes v. Lockheed-Martin*, in issuing rule 11 sanctions against a plaintiff, awarded

15   defendants monetary sanctions to "partially reimburse them for fees incurred," and also in an amount

16   "to deter similar future conduct."  *Byrnes v. Lockheed-Martin, Inc*., 2005 U.S. Dist. LEXIS at *26.

17   Certainly in a case as egregious as this one, where, despite having  and presenting absolutely no

18   factual evidence of any wrongdoing on the part of Wesley Mayder, Verigy insists on maintaining its

19   wrongful claims against him, monetary sanctions reimbursing Mr. Mayder for fees incurred

20   defending himself against this wrongful suit are appropriate.  It is just plain that Verigy and its

21   counsel elected to pursue Wes Mayder not because of any facts, any law, or any evidence; but, rather,

22   they chose to do so (and still seek to do so) as a way to pressure and punish Wes Mayder.

23   **V.    VERIGY'S REQUEST FOR ITS FEES AND COSTS IS MERITLESS.**

24         Can a further Rule 11 violation occur as a result of a preposterous position taken by Rule

25   11 "respondents" who failed to ever provide any substantive responses during not one but two

26   Rule 11 "cooling off" periods?   If so, this would be precisely the case for so finding because,

27   oddly, after almost as much as admitting that there was a Rule 11 violation by Verigy and by its

28   attorneys in naming Wes Mayder without doing any genuine prior research, Verigy (and its law

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions      14      Case No. 5:07-cv-04330-RMW (HRL)

1   firm) then turn around and, as part of its defense against these Motions, Verigy asks for sanctions

2   against Wesley Mayder in the form of reimbursement for its legal fees and costs in defending

3   against his Motion for Sanctions under Rule 11!  What? Is this really honest advocacy?  If so, why

4   none of it weeks and months ago when the first (and then second) Rule 11 notifications were sent?

5          The truth, as has been shown above, not only is Wesley Mayder's motion far from

6   meritless or baseless, but was brought for the proper purpose of achieving the dismissal of a

7   collateral victim of a lawsuit where numerous other attempts had failed.   Not only does Verigy

8   fail to meet the objective standard in defense of its complaint as originally filed, but it utterly fails

9   to present any evidence of wrongdoing on Wesley Mayder's part for its "new" claim of civil

10  conspiracy.  Verigy's request for sanctions is as meritless as its claims against Wesley Mayder—

11  and the Court would be entirely within its rights in noting that it is a further Rule 11 violation and

12  certainly lacking in professionalism to assert now a position that was never before asserted and

13  that obviously is so procedurally wrong as to not merit any further discussion.

14                                   **CONCLUSION**

15         For the foregoing reasons, Wesley Mayder's motion for sanctions pursuant to Federal Rule

16  of Civil Procedure, Rule 11 should be granted, Wes Mayder should be dismissed from this action,

17  fees and costs should be awarded against Verigy and against its counsel, and Verigy's request for

18  attorneys' fees and costs should be denied and plaintiff and its counsel should be further reminded

19  of their Rule 11 obligations as they pertain to further activities in this litigation.

20                                          Respectfully submitted,

21  Dated:  July 25, 2008                By:    ____/s/ Jack Russo_____

22                                          Jack Russo, SBN 98068
                                            Tim C. Hale, SBN 114905
23                                          John Kelley, SBN 100714

24                                          RUSSO & HALE LLP
                                            401 Florence Street
25                                          Palo Alto, CA 94301
                                            Telephone: (650) 327-9800
26                                          Facsimile: (650) 327-3737
                                            Email: jrusso@computerlaw.com
27                                                 thale@computerlaw.com
                                                   jkelley@computerlaw.com

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTORNEYS FOR DEFENDANT
WESLEY MAYDER

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔚᔚ

**Reply Mem. P. & A. Supp. Mot. R. 11 Sanctions**     16     **Case No. 5:07-cv-04330-RMW (HRL)**