1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone: (408) 291-6200
6  Facsimile:  (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.

**REDACTED VERSION**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>　　　　　　Defendants.<br><br>AND RELATED CROSS ACTIONS | Case No. C07 04330 RMW (HRL)<br><br>**VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' SUMMARY ADJUDICATION MOTION AS TO 3RD-5TH CLAIMS FOR RELIEF**<br><br>Date:　　September 5, 2008<br>Time:　　9:00 am<br>Ctrm.:　　6<br>Judge:　　Hon. Ronald M. Whyte<br><br>Complaint Filed:　　August 22, 2007<br>Trial Date:　　None Set |

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

**DOCUMENT SUBMITTED UNDER SEAL**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 2

III. STATEMENT OF ISSUES ................................................................................................. 5

IV. ARGUMENT ...................................................................................................................... 5

    A. Defendants Are Not Entitled To Summary Adjudication Of Verigy's Third Claim For Relief For Violation Of The Computer Fraud And Abuse Act. ........... 6

        1. Mayder's Authorization to Access Verigy's Computers Automatically Terminated When He Breached His Duty Of Loyalty To Verigy .............. 6

        2. Verigy Has Sustained "Loss" Within The Meaning Of The CFAA. ........ 10

    B. Defendants Are Not Entitled To Summary Adjudication Of Verigy's Fourth Claim For Relief For Violation Of The Federal Electronic Communications Privacy Act. ..................................................................................................... 11

    C. Defendants Are Not Entitled To Summary Adjudication Of Verigy's Fifth Claim For Relief For Unauthorized Access In Violation Of California Penal Code Section 502 ............................................................................................... 13

V. CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

Federal Cases

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ............................................................................................... 5

*Charles Schwab & Co., Inc. v. Carter*
    2005 WL 351929 (N.D. Ill. 2005) ............................................................... 7, 8, 11

*Contract Associates Office Interiors, Inc. v. Ruiter*
    2008 WL 3286798 (E.D. Cal. Aug. 6, 2008) ...................................................... 11

*Creative Computing v. Getloaded.com LLC*
    386 F.3d 930 (9th Cir. 2004) ............................................................................... 11

*Hewlett-Packard Co. v. Byd: Sign, Inc.*
    2007 WL 275476, *12-*13 (E.D.Tex. Jan. 25, 2007) .......................................... 9

*Hunt v. Cromartie*
    526 U.S. 541 (1999) ............................................................................................... 6

*International Ass'n of Machinists and Aerospace Workers v. Werner-Matsuda*
    390 F. Supp. 2d 479 (D. Md. 2005) ................................................................... 12

*Int'l Airport Ctrs. LLC v. Citrin*
    440 F.3d 418 (7th Cir. 2006) ............................................................................ 6, 7

*Miller v. Glenn Miller Productions, Inc.*
    454 F.3d 975 (9th Cir. 2006) ............................................................................ 5, 6

*Optistreams, Inc. v. Gahan*
    2006 WL 829113, at * 8 (E.D. Cal. Mar. 28, 2006) .......................................... 14

*Pacific Aerospace & Electronics, Inc. v. Taylor*
    295 F. Supp. 2d 1188 (E.D. Wash. 2003) ............................................................ 8

*P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*
    2007 WL 708978, at *5 (D.N.J. Mar. 5, 2007) .................................................. 11

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*
    119 F. Supp. 2d 1121 (W.D. Wash. 2000) .............................................. 7, 8, 12

*SuccessFactors, Inc. v. Softscape, Inc.*
    --- F.Supp.2d ---, No. 08-1376, 2008 WL 906420, at *5 (N.D.Cal. Apr. 1, 2008) ........... 11

*Theofel v. Farey-Jones*
    359 F.3d 1066 (9th Cir. 2004) ............................................................................ 13

*Therapeutic Research Faculty v. NBTY, Inc.*
    488 F. Supp. 2d 991 (E.D. Cal. 2007) ............................................................... 11

*United States v. Galindo*
    871 F.2d 99 (9th Cir. 1989) .................................................................................. 7

*ViCHIP Corp. v. Lee*
    438 F. Supp. 2d 1087 (N.D. Cal. 2006) ............................................................................. 6, 7

State Cases

*Chrisman v. City of Los Angeles*
    155 Cal. App. 4th 29 (2007) ..................................................................................................... 15

*Mahru v. Superior Court*
    191 Cal. App. 3d 545 (1987) .................................................................................................... 14

*People v. Hawkins*
    98 Cal. App. 4th 1428 (2002) ................................................................................................... 13

Federal Statutes

18 U.S.C. § 2701 ............................................................................................................................ 5, 12

18 U.S.C. §§ 1030(a)(5)(A-B) ............................................................................................................. 6

18 U.S.C. §§ 1030(a)(5)(B)(i) ........................................................................................................... 10

18 U.S.C. §1030 ............................................................................................................................. 5, 6

18 U.S.C. §1030(e)(11) ..................................................................................................................... 10

18 U.S.C. §1030(g) ............................................................................................................................ 10

State Statutes

Cal. Penal Code § 502 ...................................................................................................... 5, 13, 14, 15

Cal. Penal Code § 502(a) .................................................................................................................. 16

Cal. Penal Code § 502(c) ............................................................................................................ 13, 14

Cal. Penal Code § 502(e) .................................................................................................................. 13

Cal. Penal Code § 502(h)(1) ............................................................................................................. 14

- iii –
VERIGY'S MEMORANDUM OF P&A'S IN OPPOSITION TO DEFENDANTS'
SUMMARY ADJUDICATION MOTION AS TO 3RD-5TH CLAIMS FOR RELIEF    C07 04330 RMW (HRL)

Plaintiff Verigy US, Inc. ("Verigy") respectfully submits the following brief in opposition to the motion for summary adjudication as to Verigy's 3rd-5th claims for relief brought by defendants Romi Mayder ("Mayder"), Wesley Mayder, Silicon Test Systems, Inc. ("STS") and Silicon Test Solutions, LLC (collectively "Defendants").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case involves the misappropriation of Verigy's valuable trade secrets and confidential information by Romi Mayder, a former Verigy employee, by the new companies he formed, Silicon Test Solutions, LLC ("STS LLC") and Silicon Test Systems Inc. ("STS, Inc.") (collectively, the "STS Entities"), and by Romi Mayder's brother and co-conspirator, defendant Wes Mayder, who invested in both STS Entities, was a Member of STS LLC and a boardmember of STS, Inc.

Romi Mayder was a long-term and trusted employee of Verigy and its predecessors-in-interest, Agilent Technologies, Inc. ("Agilent") and Hewlett Packard Company, who abruptly resigned his employment with Verigy in September 2006 after registering STS LLC with the Secretary of State on September 8, 2006. Mayder was subject to an Agreement Regarding Confidential Information and Proprietary Developments ("ARCIPD") at Verigy and its predecessors-in-interest.

In or about early June 2006, mere weeks after signing the ARCIPD with Verigy that affirmatively stated that Mayder was not authorized at any time to use or disclose confidential Verigy information or to remove Verigy ████ty from its premises without Verigy's permission, Mayder began emailing confidential Verigy documents to his home computer, ████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████
2 ███████████████████████████████████████████████
3 ██████████████

In early July 2007, Verigy learned that Romi Mayder was marketing a product very similar to Verigy's technologies and began an investigation to determine whether Romi Mayder was using Verigy trade secrets. Pochowski supplied Verigy with the emails he had received from Mayder, and Verigy discovered that Mayder had emailed and used confidential Verigy documents without authorization.

On August 22, 2007, after Verigy's investigation revealed that Romi Mayder had misappropriated and was using Verigy's trade secrets, Verigy filed this action and sought a temporary restraining order ("TRO"). The TRO was granted on August 24, 2007 and remained in force until replaced by a five (5) month preliminary injunction granted by this Court on February 28, 2008. The preliminary injunction was extended for another four (4) months by subsequent order dated May 20, 2008 which found defendants in contempt of the TRO.

Presently, Defendants have moved for summary adjudication of the 3rd-5th Claims for Relief in Verigy's Complaint. At the very least, there are genuinely disputed material issues of fact precluding summary judgment.

## II.  STATEMENT OF FACTS

As a condition of his employment with Verigy, Mayder was required to sign, and did sign, an Agreement Regarding Confidential Information and Proprietary Developments (the "ARCIPD"). (Decl. of Manuel Guerzoni in Supp. of Plaintiff's Ex Parte Application, Docket No. 6, ¶ 3, Ex. B.) The ARCIPD contains the following pertinent provisions:

> 1. This Agreement concerns trade secrets, confidential business and technical information, and know-how not generally known to the public which will become known to or acquired or produced by me in connection with my employment by Verigy (hereinafter "Confidential Information.") Confidential Information includes, without limitation, information on Verigy organizations and structure; staffing; finance; strategic plans; information on employee performance, compensation, assignments; information on research and development, manufacturing and marketing; as well as information which Verigy receives from third parties under an obligation of

confidentiality. Confidential Information also includes information of the foregoing types that I received during any period of employment with Agilent Technologies, Inc., whether such information relates to Agilent or is or was received from third parties under an obligation of confidentiality. I agree: (a) to use such Confidential Information only in the performance of Verigy duties; (b) to hold such Confidential Information in confidence and trust; and (c) to use all reasonable precautions to ensure that such Confidential Information is not disclosed to unauthorized persons or used in an unauthorized manner, both during and after my employment with Verigy.

2. This Agreement also concerns inventions or discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (herein called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by Verigy or that relate to the research and development or the business of Verigy. Such Proprietary Developments are the sole property of Verigy, and I agree: (a) to disclose them promptly to Verigy; (b) to assign them to Verigy; and (c) to execute all documents and cooperate with Verigy in all necessary activities to obtain patent, copyright, mask works and/or trade secret protection in all countries, at Verigy US, Inc.'s expense.

3. The product of all work performed by me during and within the scope of my Verigy employment including, without limitation, any reports, documents drawings, computer programs, devices and models, including all copies thereof, will be the property of Verigy and Verigy will have the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such a work product.

4. I will not remove any Verigy property from Verigy premises without Verigy US, Inc.'s permission

5. Upon termination of my employment with Verigy, I will return all Verigy property to Verigy unless Verigy authorizes me in writing to retain such property.

*Id.*

In or about early June 2006, mere weeks after signing the ARCIPD with Verigy that affirmatively stated that Mayder was not authorized at any time to use or disclose confidential Verigy information, that Verigy had the sole right to disseminate all work performed by Mayder, and that Mayder was not authorized to remove Verigy property from its premises without Verigy's permission, Mayder began emailing confidential Verigy documents to his home computer, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (Declaration of Melinda M. Morton submitted in opposition to Defendant's Motion for Summary Adjudication on Verigy's

3

1  3rd through 5th Claims for Relief ("Morton Decl."), ¶ 5, Ex. 13 (Mayder Deposition at 212-213).)

2  ████████████████████████████████████████████████████

3  ██████████ (*Id.*; Lee Declaration in Supp. of Plaintiff's Ex Parte Appl., Docket No.8, ¶ 6,

4  Ex. A).) ████████████████████████████████████████

5  ████████████████████████████ (*Id.*, ¶ 5, Ex. B (Mayder Deposition at 215:16-217:16;

6  218:14-221:5; Mayder Deposition Ex. 30.) ████████████████████

7  ████████████████████████████████ *Id.*, ¶ 5, Ex. B

8  (Mayder Deposition at 211:6-8); Pochowski Declaration in Supp. of Plaintiff's Ex Parte Appl.,

9  (Docket No. 11) ("Pochowski Declaration, August 22, 2007") ¶ 7, Ex. A.)

10       Mayder accessed Verigy's computers on multiple occasions to obtain and transmit

11  Verigy's proprietary information for his personal use and benefit. Specifically,

12  • ████████████████████████████████████████

13  ████████████████ Pochowski Decl., August 16, 2007, ¶ 7, Ex. A.)

14  • ████████████████████████████████████████

15  ████████████████

16  • ████████████████████████████████████████

17  C.)

18  • ████████████████████████████████ Ex. D.)[1]

19  • ████████████████████████████████

20

21  • ████████████████████████████████████ of

22  Robert Pochowski in support of Plaintiff's Reply and Supplemental Papers re:
    Preliminary Injunction (Docket No. 97) ("Pochowski Decl., November 16,
23  2007")) ¶ 8, Ex. 1.[2]; Morton Decl., ¶ 5, Ex. B. (Mayder Dep. 232:15-234:7)

24  ─────────────

25  [1] ████████████████████████████████████████

26  ████████ (Reply Decl. of Hanh Lai, Docket No.100, ¶ 2-4, Ex. 1; Morton Decl., Ex. B. (Mayder
    Deposition at 185:7-15).)
27  [2] ████████████████████████████████████ Reply

28  Decl. of Hanh Lai at ¶ 5-6, Ex. 4.)

On at least two of these occasions, Mayder emailed additional documents to Pochowski without even bothering to make any changes to hide the fact that they were Verigy documents. (Pochowski Decl., August 16, 2007, ¶ 11, Ex. D; Pochowski Decl., November 15, 2007, ¶ 8, Ex. 1.)

In or about July 1007, Verigy discovered that during the last three months of his employment, Mayder had been emailing Verigy information to himself and others. (Plaintiff's Brief in Support of Ex Parte Application, Docket No. 16, at 13-14 (and citations to Declarations contained therein).) Verigy responded by conducting an investigation that included the retention of counsel and a computer expert, for the purposes of determining the scope of Mayder's theft. (*Id.*; Morton Decl. at ¶¶ 3-4.)  The Court also appointed a neutral, third party expert to examine Mayder's computers to determine which Verigy documents Mayder had transferred there, and the costs to Verigy of that investigation alone exceeded $17,000.  (Morton Decl., ¶ 4, Ex. A.)

### III. STATEMENT OF ISSUES

A. Should Defendants obtain Summary Adjudication of Verigy's Third Claim for Relief under the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq*.?

B. Should Defendants obtain Summary Adjudication of Verigy's Fourth Claim for Relief under the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq*.?

C. Should Defendants obtain Summary Adjudication of Verigy's Fifth Claim for Relief under California Penal Code § 502?

### IV. ARGUMENT

Rule 56 of the Federal Rule of Civil Procedure provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

"The moving party bears the initial burden of demonstrating the absence of a 'genuine issue of material fact for trial.'"  *Miller v. Glenn Miller Productions, Inc*., 454 F.3d 975, 987 (9th Cir. 2006), *quoting, Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).

"'(I)n ruling on a motion for summary judgment, the nonmoving party's evidence "is to

be believed, and all justifiable inferences are to be drawn in (that party's) favor.'" *Miller*, 454 F.3d at 988, *quoting, Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

### A. Defendants Are Not Entitled To Summary Adjudication Of Verigy's Third Claim For Relief For Violation Of The Computer Fraud And Abuse Act.

Defendants seek summary adjudication of Verigy's Third Claim for Relief for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et seq*., arguing (1) that there is no evidence of unauthorized access to Verigy's computers, and (2) that there is no evidence of "loss" by Verigy. (*See* Motion, at pp. 3-5.)

To establish a CFAA claim, a plaintiff must prove that defendant "(1) intentionally accessed (2) a protected computer (3) without authorization, and (4) as a result of such conduct, has (5) intentionally, recklessly or otherwise caused (6) damage." *See*, *ViCHIP Corp. v. Lee,* 438 F. Supp. 2d 1087, 1100 (N.D. Cal. 2006), *citing,* CFAA, 18 U.S.C. §§ 1030(a)(5)(A-B).

Defendants challenge only the "without authorization" and "damage" elements, implicitly conceding the existence of the other elements. Defendants contend that (1) because Mayder was an employee at the times he accessed and misappropriated Verigy documents and information, he was, as a matter of law, "authorized" to access Verigy's computers, even if the purpose of his access was to misappropriate Verigy's trade secrets as alleged in Verigy's Complaint (Motion, at pp. 2 and 4), and (2) the damage alleged by Verigy does not constitute "loss" within the meaning of the CFAA. As set forth below, and as the undisputed facts show, Defendants are wrong on both arguments.

#### 1. Romi Mayder's Authorization to Access Verigy's Computers Automatically Terminated When He Breached His Duty Of Loyalty

An employee who breaches his duty of loyalty to the company automatically loses his "authorization" to access the company's computers. *ViCHIP,* 438 F. Supp. 2d at 1100; *see also*, *Int'l Airport Ctrs. LLC v. Citrin*, 440 F.3d 418, 420-421 (7th Cir. 2006).

In *ViCHIP,* a decision emanating from this District, defendant former employee argued (as do Defendants here) that because he accessed and deleted company computer files while still an officer and director of plaintiff company, he was legally "authorized" to do so. *See, ViCHIP*,

6

438 F. Supp. 2d at 1100. Judge Phyllis Hamilton disagreed, finding that when defendant decided to delete all information from his employer's server and computer knowing that he was going to be asked to step down from his CEO position, he breached his duty of loyalty to the company and automatically terminated his agency relationship to the company. "In doing so, and as the *Citrin* court held, he also terminated his authorization to access the files." *Id.*

Similarly, in *Citrin*, a Seventh Circuit decision authored by Judge Richard Posner and relied on by Judge Hamilton in *ViCHIP*, defendant former employee, after deciding to leave his job but while still employed by plaintiff employer, accessed his work-issued computer and deleted work-related data and other information that revealed his prior improper conduct. The *Citrin* court, citing *United States v. Galindo*, 871 F.2d 99, 101 (9th Cir. 1989) and *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc*., 119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000), held that defendant's authorization to access the laptop terminated when he decided to destroy the files "in violation of the duty of loyalty that agency law imposes on an employee." *See*, *Citrin*, 440 F.3d at 420. Judge Posner opined:

> Citrin's breach of his duty of loyalty terminated his agency relationship (more precisely, terminated any rights he might have claimed as IAC's agent--he could not by unilaterally terminating any duties he owed his principal gain an advantage!) and with it his authority to access the laptop, because the only basis of his authority had been that relationship.

*Id*. at 420-421.

Similarly, in *Charles Schwab & Co., Inc. v. Carter,* 2005 WL 351929 (N.D. Ill. 2005), the court determined that plaintiff employer had stated a claim for violation of the CFAA based on allegations that an employee accessed and copied proprietary information and sent it to a third party. Defendants in *Charles Schwab*, like Defendants herein, argued that the CFAA was primarily designed to be an anti-hacking statute. *Charles Schwab,* 2005 WL 351929 at *3. The court rejected this argument, stating:

> although Defendants argue that the statute should be narrowly construed as an "anti-hacking" statute, they do not explain why [the employee's] unauthorized access to Schwab's confidential information on its computer system and distribution of this information is not "hacking." Indeed, several district courts have recognized that damage caused by unauthorized access or access in excess of authorization to a computer system may be redressed under the CFAA.

7

1  *Id.* Decisions from other district courts around the country are in accord.[3]

2  Here, as in *ViCHIP*, *Citrin*, and *Charles Schwab,* Mayder's employee status during the
3  time he accessed and transferred proprietary and confidential information from Verigy's
4  computers and servers in breach of his duty of loyalty does not of itself constitute
5  "authorization" for his actions. Mayder's authorization terminated when he accessed Verigy's
6  information to further his own new venture.

7  It is undisputed that Mayder left his Verigy employment as of September 21, 2006.
8  (Declaration of Romi Mayder submitted in support of Defendants' Motion for Summary
9  Adjudication on Verigy's 3rd-5th Claims for Relief ("Mayder Decl."), ¶ 7.) Likewise, the
10 evidence confirms that, while still employed by Verigy, Mayder began taking steps to establish
11 Silicon Test Systems, Inc. and Silicon Test Solutions, LLC, including registering the domain
12 name "silicontest.com" with Network Solutions in or around June of 2006 and registering
13 Silicon Test Solutions, LLC with the Secretary of State of California on September 8, 2006.
14 (Declaration of Melinda Morton in Support of Verigy's Ex Parte Application for a Temporary
15 Restraining Order, etc. (Morton Decl., August 22, 2007") (Docket No. 10), Exs. A, D). Months
16 prior to leaving Verigy's employ, on June 8, 2006, Mayder met with Pochowski and told him
17 about his idea for a new company and ASIC. (Pochowski Decl., August 22, 2007, ¶ 5.) ██████
18 ████████████████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████ (Morton Decl., ¶ 7, Ex. D
20 (Ex. 193 to Straube Deposition.)) It is undisputed that Mayder accessed Verigy's computers on
21 several occasions for the express purpose of obtaining Verigy's confidential and proprietary
22 information for his own use in starting his new venture. Specifically:

---

24 [3] *E.g., Pacific Aerospace & Electronics, Inc. v. Taylor,* 295 F. Supp. 2d 1188, 1196 (E.D. Wash. 2003) ("[e]mployers . . . are increasingly taking advantage of the CFAA's civil remedies
25 to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system"); *See*, *Shurgard*
26 *Storage Centers, Inc.,* 119 F.Supp.2d at 1125 (employees' access was no longer authorized when they became agents of the company's competitor and took the information for the benefit
27 of the competitor; employees "lost their authorization and were 'without authorization' when they allegedly obtained and sent the proprietary information to the defendant via e-mail").

28

1  • ███████████████████████████████████████
2     ██████████████ (Pochowski Decl., August 22, 2007, ¶ 7, Ex. A.)
3  • ███████████████████████████████████████
4     ████████████████
5  • ███████████████████████████████████████
       ██████████ C.)
6
7  • ███████████████████████████████ Ex. D.)
8  • ███████████████████████████████████████
9
10 • ██████████████████████████████ Decl.,
    November 16, 2007, ¶ 8, Ex. 1); Morton Decl., ¶ 5, Ex. B (Mayder Deposition at
11  232:15-234:7).)

12      Mayder took these actions to further his budding competing business venture and
13 accordingly breached his duty of loyalty to Verigy. As a matter of law these actions
14 automatically terminated Mayder's authorization to access Verigy's computers. His subsequent
15 access for the purpose of furthering his own business was "without authorization" and actionable
16 under the CFAA. Further, pursuant to the ARCIPD, Mayder was not authorized at any time to
17 use or disclose confidential Verigy information, or to remove Verigy property from its premises
18 without Verigy's permission. (*See,* Complaint, Ex. A (ARCIPD), ¶¶ 1 & 4.) Romi Mayder's
19 accessing of Verigy's computers for improper purposes under the ARCIPD at any time cannot
20 be deemed authorized. *See, Hewlett-Packard Co. v. Byd: Sign, Inc.* No. 6:05-CV-456, 2007 WL
21 275476, *12-*13 (E.D.Tex. Jan. 25, 2007) (CFAA claim stated against employees prohibited by
22 agreement from accessing or sending messages on company computer systems for personal
23 gain).

24      Even Mayder admits his authorization to access Verigy's trade secret information was
25 limited. Mayder declares that, during his employment with Verigy and its predecessors from
26 1998 until September 21, 2006, "I was granted access to, and in fact was required to access, the
27 computer systems and computer information of the companies' [sic] *in order to carry out my job*
28 *responsibilities*." (Mayder Decl., ¶ 7) (emphasis added). Verigy does not dispute that Mayder

9

was authorized to access its computer systems and information *in order to carry out his job responsibilities*. His actions, however, were anathema to those responsibilities. As shown above, beginning on or before June 12, 2006, Mayder repeatedly accessed Verigy's computer systems to email himself and others Verigy documents and information for the purpose of setting up his competing business. These acts were performed for the benefit of Mayder and the other defendants, and not for the purpose of carrying out his Verigy job responsibilities.

Because as a matter of law Mayder's access to Verigy's computers was, at all relevant times, not authorized within the meaning of the CFAA, Defendants' motion for summary adjudication of Verigy's Third Claim for Relief under the CFAA should be denied.

### 2. Verigy Has Sustained "Loss" Within The Meaning Of The CFAA.

Defendants also argue that Verigy's CFAA claim fails because Verigy has not suffered a "loss" in the sense required by the CFAA. Defendants ignore the plain language of the CFAA's definition of "loss," which contains independent clauses, and instead claim that "loss" is limited to damage to computer systems and interruption of service. (Motion, at pp. 5-6). Defendants' argument is misguided.

The CFAA permits a civil action to be brought by "any person who suffers damage or loss by reason of a violation of this section . . . if the conduct involves one of the factors set forth in clause (i), (ii), (iii), (iv), *or* (v) of subsection (a)(5)(B)." 18 U.S.C. §1030(g) (emphasis added). Clause (i) of subsection (a)(5)(B) describes a factor of "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. §1030(a)(5)(B)(i). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. §1030(e)(11).

The statutory definition of "loss," on its face, encompasses "any reasonable cost to any victim," which includes much more than just the cost of restoring data or cost due to interruption of service. "Loss" under the CFAA has been interpreted broadly and includes, for example any loss of business and business goodwill, *Creative Computing v. Getloaded.com LLC*, 386 F.3d

10

930, 935 (9th Cir. 2004); loss of license fees, *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 996-97 (E.D. Cal. 2007); and investigating and taking remedial steps to prevent recurrence, *P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.,* No. 04-4554 (JAG), 2007 WL 708978, at *5 (D.N.J. Mar. 5, 2007). "Loss" does not require damage to the computer itself. *See, Therapeutic Research Faculty*, 488 F. Supp. 2d at 996-97 ; *see also*, *Charles Schwab & Co.,* 2005 WL 351929 *3 (unauthorized copying of material from plaintiff's computer and delivery to a third party states a claim under CFAA).

Here, Verigy has been damaged by Romi Mayder's unauthorized accessing of a protected computer in amounts exceeding $5,000. (*See*, Morton Decl., ¶¶ 3-4. Ex. A.)  When Verigy discovered that, during the last three months of his employment, Mayder had been emailing Verigy information to himself and others, it responded by conducting an investigation that included the retention of counsel and a computer expert, for the purposes of determining the scope of Mayder's theft. The Court also appointed a neutral, third party expert to examine Romi Mayder's computers to determine which Verigy documents he had transferred there, and the costs of that investigation alone exceeded $17,000. (*Id.*, ¶ 4, Ex. A.)

> [I]n cases like this, where the offense involves unauthorized access and the use of protected information, the reasonable "cost of responding to [the] offense" … will be different from such cost in a case where the primary concern is the damage to the plaintiff's computer system itself.' *SuccessFactors, Inc. v. Softscape, Inc.,* --- F.Supp.2d ---, No. 08-1376, 2008 WL 906420, at *5 (N.D.Cal. Apr. 1, 2008). '[W]here the offender has actually accessed protected information, discovering who has that information and what information he or she has is essential to remedying the harm.' *Id*. Thus, the cost of discovering the identity of the offender and the method by which the offender accessed the protected information, as well as the 'many hours of valuable time away from day-to-day responsibilities' required to reasonably respond to the unauthorized access, may all be considered part of the loss for purposes of the CFAA. *Id.* at *4.

*Contract Associates Office Interiors, Inc. v. Ruiter,* No. Civ. S-07-0334 WBS EFB 2008 WL 3286798 (E.D. Cal. Aug. 6, 2008), *3. Because, as shown, Verigy has suffered a "loss" within the meaning of the CFAA, Defendants' motion for summary adjudication of Verigy's Third Claim for Relief should be denied.

**B.     Defendants Are Not Entitled To Summary Adjudication Of Verigy's Fourth Claim For Relief For Violation Of The Federal Electronic ECPA.**

11

Defendants seek summary adjudication of Verigy's Fourth Claim for Relief for violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701 *et seq.,* on one of the same bases that they seek summary adjudication of Verigy's CFAA claim, namely that Defendant Romi Mayder's access to Verigy's confidential information was authorized and, therefore, not actionable under the ECPA regardless of any alleged misuse of such information. The argument fails for the same reasons outlined above.

Defendants rely primarily on a single district court decision from outside the Ninth Circuit to support their position. However, their own authority makes clear that the district courts have reached different conclusions regarding what constitutes unauthorized access under the CFAA and ECPA. Compare *International Ass'n of Machinists and Aerospace Workers v. Werner-Matsuda,* 390 F. Supp. 2d 479 (D. Md. 2005) (holding that plaintiff had failed to state a claim for relief pursuant to the ECPA where defendant was authorized to access the information at issue even though defendant had used the information for improper purposes in violation of her agreement with plaintiff), Contra *Shurgard,* 119 F. Supp. 2d at 1125 (relying on the Restatement (Second) of Agency to find that "the authority of the plaintiff's former employees ended when they allegedly became agents of the defendant," and thus, that the employees "lost their authorization and were 'without authorization' when they allegedly obtained and sent [the plaintiff's] proprietary information to the defendant via e-mail.").

The *Shurgard* analysis is compelling and directly on point for the reasons discussed with respect to the CFAA above. To hold otherwise would essentially reward a party for acting in contravention of the very basis on which the access was originally granted: the employee's duty of loyalty to the employer and the employee's agreement (either express or implied) that he or she would use the access granted solely for the employer's benefit. The Ninth Circuit has held that "[p]ermission to access a stored communication does not constitute valid authorization if it would not defeat a trespass claim in analogous circumstances. Section 2701(c)(1) therefore provides no refuge for a defendant who procures consent by exploiting a known mistake that relates to the essential nature of his access." *See Theofel v. Farey-Jones,* 359 F.3d 1066, 1073

(9th Cir. 2004). Thus, where, as here, unbeknownst to the employer its employee breaches his duty of loyalty, the employee's access to the employer's confidential and proprietary communications is deemed unauthorized under the ECPA.

Accordingly, Defendants' motion for summary adjudication of Verigy's Fourth Claim for Relief should be denied.[4]

### C. Defendants Are Not Entitled To Summary Adjudication Of Verigy's Fifth Claim For Relief For Unauthorized Access In Violation Of California Penal Code Section 502.

Defendants' seek summary adjudication of Plaintiff's Fifth Claim for Relief for unauthorized access to computers, computer systems, and computer data under Section 502 of the California Penal Code. The motion fails because Mayder's access of Verigy's confidential and proprietary information to further his own venture was outside the scope of his employment with Verigy and, thus, actionable under Penal Code § 502(c).[5]

Defendants' mistakenly rely on subsection (h)(1) of Section 502, which excepts from liability alleged wrongful acts that are "committed by a person within the scope of his or her lawful employment." This exception does *not* apply where, as here, an employee's alleged wrongful acts go to the heart of the employment relationship and constitute a breach of the employee's duty of loyalty to the employer. *See People v. Hawkins,* 98 Cal. App. 4th 1428 (2002) (defendant properly convicted of violating Penal Code § 502(c)(2) by taking source code of his former employer); *Optistreams, Inc. v. Gahan,* No. CVF-05-0117REC SMS, 2006 WL 829113, at * 8 (E.D. Cal. Mar. 28, 2006) (finding employer had "a realistic chance of prevailing" on its claims for violation of Penal Code § 502 and the CFAA where evidence

---

[4] At a minimum, the summary adjudication motion as to both the CFAA and ECPA claims must be denied insofar as to defendants Silicon Test Systems, Inc. and Silicon Test Solutions, LLC. Neither had any authorization of any sort at any time to access Verigy's confidential and proprietary computer information and Defendants do not assert otherwise.

[5] Defendants claim in passing that there is no private right of action under Cal. Penal Code § 502. However, § 502(e) clearly establishes such a right: "(1) In addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief."

13
VERIGY'S MEMORANDUM OF P&A'S IN OPPOSITION TO DEFENDANTS'
SUMMARY ADJUDICATION MOTION AS TO 3RD-5TH CLAIMS FOR RELIEF       C07 04330 RMW (HRL)

1  showed employee had entered employer's server without permission, downloaded sensitive data
2  and then erased the server hard drives).

3       Moreover, the plain language of the statute makes clear that Defendants' conduct does
4  not fall within the exception articulated in Penal Code § 502(h)(1).  This subsection states that
5  "[s]ubdivision (c) does not apply to punish any acts which are committed by a person within the
6  scope of his or her lawful employment.  For purposes of this section, a person acts within the
7  scope of his or her employment when he or she performs acts which *are reasonably necessary to*
8  *the performance of his or her work assignment*."  Cal. Penal Code § 502(h)(1).  Obviously,
9  misappropriation of Verigy's confidential and proprietary information for Defendants' own
10  benefit could not constitute "acts which are reasonably necessary to the performance of [a] work
11  assignment."

12       None of the cases Defendants rely upon compel a contrary conclusion.  In *Mahru v.*
13  *Superior Court,* 191 Cal. App. 3d 545, 549 (1987), alleged harm to the employer was not at
14  issue.  Instead, the issue was harm to a third party inflicted by the defendant, who was an
15  employee, director, and shareholder of BHI, a data processing firm.  BHI had been hired by a
16  credit union to provide onsite computerized data processing services.  The computers used were
17  purchased by the credit union and resold to BHI with the credit union retaining a security
18  interest.  The equipment remained at the credit union and BHI employees performed their work
19  onsite.  When the credit union terminated its contract with BHI, Mahru gave instructions to
20  make changes to two file names, the purpose of which was "to make doubly certain that credit
21  union employees, none of whom were computer experts, would be unable to run the credit
22  union's programs without assistance from either BHI personnel or another expert computer
23  software technician."  *See, Mahru,* 191 Cal. App. 3d at 547.  The court determined that Mahru
24  had not violated Penal Code § 502(c) because the computers at issue were owned by BHI and
25  Mahru's actions were intended to harm the credit union, not BHI.  *Id.* at 549 (holding that Penal
26  Code § 502(c) "cannot be properly construed to make it a public offense for an employee, with
27  his employer's approval, to operate the employer's computer in the course of the employer's
28  business *in a way that inconveniences or annoys or inflicts expense on another person*")

(emphasis added). As the harm at issue herein is to Verigy as owner of the computer and Romi Mayder's employer at the time of the unauthorized accession of it, *Mahru* is inapplicable.

Likewise, the decision in *Chrisman v. City of Los Angeles,* 155 Cal. App. 4th 29 (2007), also fails to support Defendants' position. In *Chrisman,* a Los Angeles police officer was alleged to have misused his employer's computers to search for information unrelated to his work assignment, including searching for information about celebrities, his friends, and others. The court determined that defendant's conduct could not be considered outside the scope of his employment merely because the employer may have disapproved of such conduct or it may have violated the employer's policy. *Id.* at 36-37. The court noted that, "[i]f the employer's disapproval were the measure, then virtually any misstep, mistake, or misconduct by an employee involving an employer's computer would . . . be criminal. For example, if an employer prohibited employees from logging onto the internet to check their personal email, respondents' definition of scope of employment would make reading one's email on company time a crime . . ." *Id.* at 37.[6]

Here, the facts evidence conduct far more egregious than a simple violation of company policy or conduct that Verigy merely disapproved of. Instead, Verigy has shown that Romi Mayder stole its valuable trade secrets and confidential and proprietary information and Defendants used such information to unfairly and unlawfully compete with Verigy. This type of harmful conduct is exactly what the legislature sought to protect against when it enacted Penal Code § 502. Subsection (a) of § 502 specifically states:

> It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems. The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers,

---

[6] Notably, the *Chrisman* court found that, even assuming the employee's actions were outside the scope of his employment, his conduct was exempted from liability under Section 502(h)(2) because any misuse of the employer's computers in violation of subsection (c)(3) did not result in injury to the employer. *Id.* Here, however, claim under Penal Code Section 502 is predicated on violations of subsections (c)(1) and (2), not subsection (c)(3). (*See* Complaint, ¶¶ 63-64.) Thus, the exemption from liability under subsection (h)(2) is inapplicable.

> computer systems, and computer data. The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.

Cal. Penal Code § 502(a).

Given the nature and extent of Defendants' wrongful acts at issue in this matter, it cannot be held as a matter of law that these acts were within the scope of employment and, therefore, exempt from liability under Section 502(h)(1). Accordingly, Defendants' motion for summary adjudication as to the Fifth Claim for Relief should be denied.

## V.  CONCLUSION

For the foregoing reasons, Verigy respectfully requests that the Court deny in its entirety Defendants' motion for summary adjudication on Verigy's 3rd-5th Claims for Relief.

Dated: August 15, 2008                    BERGESON, LLP

                                          By:        /s/
                                                Melinda M. Morton

                                          Attorneys for Plaintiff
                                          VERIGY US, INC.

VERIGY'S MEMORANDUM OF P&A'S IN OPPOSITION TO DEFENDANTS'
SUMMARY ADJUDICATION MOTION AS TO 3RD-5TH CLAIMS FOR RELIEF        C07 04330 RMW (HRL)