1  DANIEL J. BERGESON, Bar No. 105439                    **PUBLIC VERSION**
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  MICHAEL W. STEBBINS, Bar No. 138326
   mstebbins@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:   (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12  VERIGY US, INC, a Delaware Corporation      Case No.  C07 04330 RMW (HRL)

13              Plaintiff,                      **MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN OPPOSITION TO
14       vs.                                    DEFENDANTS' MOTION FOR
                                                SUMMARY ADJUDICATION AND FOR
15  ROMI OMAR MAYDER, an individual;            MODIFICATION OF PRELIMINARY
    WESLEY MAYDER, an individual; SILICON       INJUNCTION**
16  TEST SYSTEMS, INC., a California Corporation;
    and SILICON TEST SOLUTIONS, LLC, a
17  California Limited Liability Corporation,    Date:      September 5, 2008
    inclusive,                                  Time:      9:00 am
18                                              Ctrm.:     6
                Defendants.                     Judge:   Hon. Ronald M. Whyte
19

20                                              Complaint Filed:    August 22, 2007
                                                Trial Date:         None Set
21

22  AND RELATED CROSS ACTIONS

23

24

25      **PUBLIC VERSION OF HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

26            **DOCUMENT SUBMITTED UNDER SEAL**

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF ISSUES ............................................................................................. 2

III. RELEVANT FACTUAL BACKGROUND .................................................................... 2

     A.   Defendants' Modification Motion Seeks to Re-litigate Old Issues ....................... 2

     B.   The Evidence in the New Blanchard Declaration is Unavailing ........................... 4

     C.   Defendants' ASIC Is Not Finished, Does Not Work and Cannot Be Sold. ........... 4

     D.   Additional Factual Discrepancies in Defendants' Motion. ................................... 5

IV.  ARGUMENT .................................................................................................................. 6

     A.   Defendants' Motion To Modify Preliminary Injunction Order Must Be
          Denied As Untimely Pursuant To FRCP 59(e).. .................................................. 6

     B.   Defendants Fail To Satisfy The Standard For Modification Of The
          Preliminary Injunction Order Pursuant To FRCP 60(b). ..................................... 7

          1.   *eBay v. MercExchange* Does Not Warrant Modification Of The
               Preliminary Injunction Order Under Rule 60(b). ....................................... 8

               a.   The *eBay* Case Is Not New Law. ................................................... 8

               b.   The *eBay* Case Is Irrelevant and Immaterial . ............................... 8

               c.   Defendants' Application Of The Analysis In The *eBay* Case
                    Fails To Demonstrate That The Injunction Should Be
                    Modified. ......................................................................................... 10

          2.   Defendants Have Failed To Demonstrate That The Injunction Should
               Be Modified To Prevent Inequitable Relief. ............................................. 12

          3.   Defendants Fail To Demonstrate That Public Interest And Equity
               Require Modification Of The Preliminary Injunction Order. .................... 13

          4.   Defendants Are Not Entitled To Relief Under Rule 60(b)(6). .................. 15

          5.   No Relief is Warranted Under Subsections (1), (3), or (4) of Rule
               60(b). ......................................................................................................... 16

     C.   Defendants Are Not Entitled to Summary Adjudication on Verigy's Ninth
          Claim for Relief for Violation of the Lanham Act §43(a). ................................... 18

          1.   Verigy's False Advertising Claim Does Not Require Bodily
               Appropriation .......................................................................................... 18

          2.   Defendants' Relabeling of Verigy's Specification As Their Own
               Constitutes Bodily Appropriation Within The Meaning Of The
               Lanham Act. ............................................................................................. 21

D.    Defendants Are Not Entitled To An Order Summarily Adjudicating That "Information Contained In Published Patents Or Patent Applications Cannot Constitute Trade Secrets." ................................................................................ 23

IV.    CONCLUSION ............................................................................................................ 25

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION                    C07 04330 RMW (HRL)

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

4

*Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*
    909 F.2d 1437 (10th Cir.1990)........................................................................7

5

*Cashner v. Freedom Stores, Inc.*
    98 F.3d 572 (10th Cir. 1995)........................................................................17

6

7

*Christopher Phelps & Assocs. L.L.C. v. Galloway*
    462 F.3d 532, 543 (4th Cir. 2007)................................................................11

8

*City of Stockton v. American Medical Response*
    2005 WL 2269123 at *4 (E.D. Cal. 2005) ..................................................12

9

10

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.*
    173 F.3d 725 (9th Cir. 1999) .......................................................................20

11

*Collins  v. City of Wichita*
    254 F.2d 837 (10th Cir. 1958).......................................................................8

12

13

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*
    911 F.2d 242 (9th Cir. 1990) .......................................................................20

14

*Credit Suisse First Boston Corp. v. Grunwald*
    400 F.3d 1119 (9th Cir. 2005).......................................................................6

15

16

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
    539 U.S. 23 (2003) ................................................................................19, 22

17

*De Filippis v. United States*
    567 F.2d 341 (7th Cir. 1977)...............................................................9, 12, 14

18

19

*Delay v. Gordon*
    475 F.3d 1039 (9th Cir. 2007) .....................................................................15

20

*Dental Servs. v. Tani*
    282 F.3d 1164 (9th Cir.2002)....................................................................15,16

21

22

*eBay, Inc. v. MercExchange*
    547 U.S. 388. 126 S.Ct. 1837 (2006) ..............................................8, 9, 10, 11, 12

23

*Finisar Corp.  v. DIRECTV Group, Inc.*
    2006, U.S. Dist. LEXIS 76380 at *4 (E.D. Tex. July 7, 2006) (patent infringement)......11

24

*Foster v. American Machine & Foundry Co.*
    492 F.2d 1317 (2d Cir. 1974)......................................................................11

25

26

*General Universal Sys., Inc. v. Lee*
    379 F.3d 131 (5th Cir. 2004)........................................................................17

27

*GNI Waterman LLC v. A/M Valve Company LLC*
    2007 WL 2669503, at *5 (E.D. Cal. 2007) .................................................23

28

- iii -

*Grace v. Bank Leumi Trust Co.*
    443 F.3d 180 (2d Cir. 2006) ........................................................................ 18

*Harris v. United States*
    367 F.3d 74 (2d Cir. 2004) .......................................................................... 16

*Hologic, Inc. v. Senorx, Inc.*
    No. C-08-00133RMW, 2008 WL 1860035 ................................................. 11

*Johnson v. Jones*
    149 F.3d 494 (6th Cir. 1998) ....................................................................... 23

*Kustom Signals, Inc. v. Applied Concepts, Inc.*
    247 F.Supp.2d 1233 (D. Kan. 2003) ................................................... 7, 8, 14

*Lamothe v. Atlantic Recording Corp.*
    847 F.2d 1403 (9th Cir. 1988) ............................................................... 19, 20

*Latshaw v. Trainer Wotham & Co.*
    452 F.3d 11097 (9th Cir. 2006) ................................................................... 16

*McCormack v. Citibank, N.A.*
    100 F.3d 532 (8th Cir. 1996) ......................................................................... 9

*MercExchange L.L.C. v. eBay, Inc.*
    500 F.Supp.2d 556 (E.D. Va. 2007) ........................................................... 11

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
    518 F.Supp.2d 1197 (C.D. Cal. 2007) ........................................................ 11

*MyGym L.L.C. v. Engle*
    2006 U.S. Dist. LEXIS 88375, at *11(trademark claim) ............................. 11

*Northern Cheyenne Tribe v. Norton*
    503 F.3d 836 (9th Cir. 2007) ....................................................................... 11

*Orantes-Hernandez v. Gonzales*
    504 F.Supp.2d 825 (C.D. Cal. 2007) ...................................................... 9, 13

*Pro Edge L.P. v. Gue*
    411 F.Supp.2d 1080 (N.D. Iowa 2006) ....................................................... 13

*Reno Air Racing Ass'n v. McCord*
    452 F.3d 1126 (9th Cir. 2006) ..................................................................... 11

*Rodgers v. Wood*
    910 F.2d 444 (7th Cir. 1990) ....................................................................... 15

*Rozier v. Ford Motor Co.*
    573 F.2d 1332 (5th cir. 1978) ...................................................................... 17

*Southland Sod Farms v. Sover Seed Co.*
    108 F.3d 1134, 1139 (9th Cir. 1997) ........................................................... 20

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION        C07 04330 RMW (HRL)

*Texlon Corp. v. Mfrs. Hanover Commercial Corp.*
    596 F.2d 1092 (3d cir.1979) ................................................................................ 18

*Tiseo Architects, Inc. v. SSOE, Inc.*
    431 F.Supp.2d 735 (E.D. Mich. 2006) ................................................................. 23

*Torspo Hockey Intern., Inc. v. Kor. Hickey Ltd.*
    491 F.Supp. 871. 881 (D. Minn. 2007) ................................................................ 11

*United States v. Cirami*
    563 F.2d  26 (2d Cir.1977) .................................................................................. 16

*United States v. Romm*
    455 F.3d 990 (9th Cir. 2006) ............................................................................. 20

*United States v. Swift & Co.*
    189 F.Supp. 885 (N.D. Ill. 1960) ........................................................................... 9

*Valentine Sugars, Inc. v. Sudan*
    34 F.3d 320, 321 (5th Cir. 1994) .................................................................... 13, 15

*Voelkel v. Gen. Motors Corp.*
    846 F.Supp. 1482 (D.Kan.), aff'd, 43 F.3d 1484 WL 708220 (10th Cir.1994) ................. 7

*Western Transp. Co. v. E.I. Du Pont De Nemours*
    682 F.2d 1233 (7th Cir.1982) ............................................................................... 15

*Yapp v. Excel Corp.*
    186 F.3d 1222 (10th Cir.1999) ............................................................................... 7

*z4 Techs., Inc. v. Microsoft Corp.*
    434 F.Supp.2d 437 (E.D. Tex. 2006) ..................................................................... 11


**Federal Statutes**

15 U.S.C. § 1125(a) [Section 43(a) of the Lanham Act] .................................... 1, 2, 19


**Federal Rules**

F.R.C.P. 59(b) ...................................................................................................... passim

F.R.C.P. 59(e)....................................................................................................... passim

F.R.C.P. 60(b) ...................................................................................................... passim


**Other**

11 Wright & Miller, Federal Practice § 2863 (1973) .............................................. 9

Plaintiff, Verigy US, Inc. ("Verigy") respectfully submits the following brief in opposition to the motion for summary adjudication of Verigy's 9th Claim for Relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and for modification of the preliminary injunction brought by defendants Romi Mayder ("Mayder"), Wesley Mayder, Silicon Test Systems, Inc. ("STS") and Silicon Test Solutions, LLC (collectively "Defendants").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendants' instant motion has three distinct parts, each of which is without merit. Defendants seek: (1) summary adjudication on Verigy's Lanham Act cause of action; (2) what amounts to an advisory opinion, styled as a request for summary adjudication, that information in certain public documents cannot constitute Verigy trade secrets; and (3) to vacate the preliminary injunction, apparently based on Fed. R. Civ. Pro. 60(b), which allows the Court to grant relief from an order under certain limited circumstances.

The crux of Defendants' motion is their attempt to "modify" the existing injunction out of existence and, in its stead, install some type of escrow account in which they will put 15% of all of STS revenues – derived from "sales" of a non-functional chip that cannot be sold to anyone for several months. Given this focus, Verigy's opposition will address Defendants' "modification" argument first.

As will be demonstrated in greater detail below, the modification motion is a merely an attempt to re-litigate matters previously submitted to and properly decided by the Court. Defendants' motion never even mentions Rule 60(b), articulates the applicable standards, or addresses those standards with evidence or cogent argument. In short, the motion contains no new facts, law or extraordinary circumstances to justify the drastic relief requested, and nothing whatsoever to justify relief under any of the grounds set forth in Rule 60(b).

Defendants' motion for summary adjudication of Verigy's claim under Section 43(a) of the Lanham Act argues that Verigy is required to have created a product that Defendants sold as their own, which Verigy has not alleged. However, the law cited for this proposition has no application to the false advertising portion of Verigy's Lanham Act claim and Defendants' authority regarding

"bodily appropriation" is distinguishable where, as here, the trade secret design from which Defendants' product was derived essentially *was* the product. Defendants' request for summary adjudication regarding the well-settled principal that public documents cannot constitute trade secrets is superfluous and inappropriate in this context because Defendants' have failed to present any analysis establishing that those "new" references fully disclose any particular Verigy's trade secret. In fact, the references are essentially cumulative of evidence previously submitted, were almost entirely available prior to the preliminary injunction hearing and, with but one exception, are dated after Defendants' principal acts of misappropriation occurred.

Accordingly, each of Defendants' motions should be denied.

## II.    STATEMENT OF ISSUES

1.    Whether Defendants' motion to vacate the preliminary injunction which seeks to re-litigate issues argued previously should be denied as untimely under Fed. R. Civ. Pro. 59(b)?

2.    Whether Defendants' motion to vacate the preliminary injunction which sets forth no new facts, law or circumstances justifying the extraordinary relief requested should be denied under Fed. R. Civ. Pro. 60(b)?

3.    Whether Defendants are entitled to summary adjudication in their favor on Verigy's Ninth Claim for Relief for violation of the Lanham Act §43(a), 15 U.S.C. §1125(a)?

4.    Whether Defendants are entitled to summary adjudication that information contained in the references, consisting of various patents and patent applications, attached to the declaration of Richard Blanchard filed July 10, 2008 (Docket No. 262) cannot constitute Verigy's trade secrets?

## III.    RELEVANT FACTUAL BACKGROUND

### A.    Defendants' Modification Motion Seeks to Re-litigate Old Issues.

As the following table makes clear, Defendants' modification motion recycles the same arguments and evidence previously advanced in opposition to the motions for preliminary injunction and for a finding of contempt.

| "New" Arguments | "New" Arguments in Prior Briefing/Oral Argument |
|---|---|
| Verigy's Trade Secrets are publicly available and/or readily ascertainable and/or public customer specifications (Mot. at 17, New Blanchard Decl. *passim*) | <ul><li>Defendants' Opp. Brief to Plaintiff's Ex Parte Application ("Opp'n to Prelim. Inj."), Docket No. 49, at 1, 9, 10, 11, 15-19</li><li>Mayder Decl. in Supp. of Opp. to Prelim. Inj., Docket No.55, at ¶ 31</li><li>Schneck Decl. in Supp. of Opp. to Prelim. Inj., Docket No.,56, *passim*</li><li>Blanchard Decl. in Supp. of Opp. to Prelim. Inj., Docket No.53, *passim*</li><li>Defendants' Sur-reply in Opp. to Prelim. Inj., Docket No. 120, at 7-11</li><li>January 15, 2008 Transcript of Preliminary Injunction Hearing at 40-48</li><li>Opp. to OSC re: Contempt, Docket No. 138, at 4-5</li></ul> |
| The TRO and the documents named in it were unfairly marked Highly Confidential (Mot. at 4, *passim*) | <ul><li>Mayder's Decl. I/S/O Mot. to Modify, Docket No. 261., ¶ 20 (admits he discussed this with his attorneys in conjunction with contempt proceedings)</li><li>Mayder's Decl. in Supp. Of Opp'n to Preliminary Inj. at ¶¶29-31 (admits he read the Leventhal, Lai and Lee Declaration Exhibits he now claims he never saw)</li></ul> |
| Materials in published patents can't be claimed as trade secrets (Mot. at 6) | <ul><li>Defendants' Sur-reply in Opp. to Prelim. Inj. at 8,15</li></ul> |
| The Contempt Order addressed actions not prohibited by the preliminary injunction (Mot. at 6) | <ul><li>Opp. to OSC re: Contempt at 13-14</li></ul> |
| No injunction because no irreparable harm (Mot. at 14-15) | <ul><li>Defendants' Opp. Brief to Prelim. Inj. at 12, 20</li><li>Defendants' Sur-reply in Opp. to Prelim. Inj. at 2, 15</li><li>Defendants' Opp. to OSC re: Contempt at 13-14</li><li>April 11, 2008 Transcript of Contempt Hearing at 11</li></ul> |
| Additional time of injunction is inappropriate and is greater than "head start" (Mot. at 15-16) | <ul><li>Defendants' Sur-reply in Opp. to Prelim. Inj. at 2, 16-17</li><li>Defendants' Opp. to OSC re: Contempt at 1</li><li>April 11, 2008 Transcript of Contempt Hearing at 13-14, 18-19</li><li>January 15, 2008 Transcript of Preliminary Injunction Hearing at 93</li></ul> |
| Verigy is not currently selling this product (Mot. at 16) | <ul><li>Defendants' Opp. Brief to Prelim. Inj. at 6</li><li>January 15, 2008 Transcript of Preliminary Injunction Hearing at 34-35, 51, 60</li></ul> |
| Money damages are adequate (Mot. at 16) | <ul><li>Defendants' Opp. Brief to Prelim. Inj. at 11-12</li><li>April 11, 2008 Transcript of Contempt Hearing at 27-28</li></ul> |
| The TRO is vague, ambiguous and difficult to understand (Mot. at 17) | <ul><li>Defendants' Opp. to OSC re: Contempt at 1-2, 6-10</li><li>April 11, 2008 Transcript of Contempt Hearing at 4-10</li></ul> |
| Extension of the Injunction harms the public (Mot. at 18) | <ul><li>Defendants' Sur-reply in Opp. to Prelim. Inj. at 16</li><li>January 15, 2008 Transcript of Preliminary Injunction Hearing at 63-65, 90-93</li></ul> |
| Defendants will suffer monetary loss if injunction stays (Mot. at 18.) | <ul><li>January 15, 2008 Transcript of Preliminary Injunction Hearing at 66-67</li></ul> |

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION                    C07 04330 RMW (HRL)

**B.    The Evidence in the New Blanchard Declaration is Unavailing.**

In support of their motion, Defendants have submitted the Declaration of Dr. Richard Blanchard ("New Blanchard Decl.") with a number of "new" references, namely several patents, patent applications and one book excerpt, which purportedly demonstrate that plaintiff's trade secrets are publicly available.

As set forth in greater detail in the declaration of Verigy's own expert, Dr. Blanchard essentially recycles assertions from his previous declarations submitted in opposition to Verigy's motion for preliminary injunction.[1]  (*See* Wei Decl. at ¶¶4-17.)  Moreover, the "new" references disclose merely (a) technologies that were discussed in prior expert declarations, (b) technologies that have little relevance to the ███████ ASIC, or (c) certain general resource sharing mechanisms that may be similar to but do not embody the ███████ ASIC design and do not contain sufficient detail from which its key features and functionalities could be ascertained or said to be obvious.  (*Id.*)  In addition, only five of the 21 "new" references have dates which are more recent than the final hearing date on Verigy's motion for preliminary injunction, meaning they could or should have been identified and submitted before that hearing.  (Wei Decl. at ¶18; *see* New Blanchard Decl. Exs. B, C, D, T, U.)

Finally, with one exception (dating from 2004), these references also post-date Mayder's principal acts of misappropriation in mid-2006.  (*Id*. at ¶¶6, 11, 16.)  This mean that whether or not they are ultimately found to disclose aspects of the ███████ ASIC design is irrelevant to whether that aspect was deserving of trade secret protection at the time it was misappropriated from Verigy.

**C.    Defendants' ASIC Is Not Finished, Does Not Work and Cannot Be Sold.**

Claiming it would provide "an equitable balance," Defendants wish to supplant the existing preliminary injunction with an escrow account into which they will place 15% of the revenues of all sales of their product.  Defendants wish to resume marketing that product

---

[1] Declaration of Wei Wei in Opp. to Defendants' Mot. for Sum. Adj. and for Mod. of Prelim. Inj., dated August 15, 2008 ("Wei Decl.")

1    immediately to everyone, including NOR and NAND customers, despite the fact they claim the

2    product is only designed for NOR applications.  (Mot. at 17:9-14, *Cf.* 19:6-11.)  Unfortunately,

3    Defendants' product just began Phase II of its development to fix several major problems which

4    prevent it from working at all.[2]  A timeline in the Phase II development proposal indicate that the

5    product will be ready for shipment on December 12, 2008.  (Stebbins Decl. at ¶4, Ex. B)  Even

6    assuming that timeline is correct (which appears dubious, given the major problems with the

7    development apparently encountered thus far), there will be no revenue whatsoever to escrow until

8    at least the approximate date of trial of this lawsuit.

9          **D.    Additional Factual Discrepancies in Defendants' Motion**

10         There are more than a few factual discrepancies in Defendants' moving papers.  A couple

11   of the more egregious are discussed below.

12         In support of Defendants' current motion, Romi Mayder claims he was never able to

13   review the exhibits to the various declarations filed in support of Verigy's motion for preliminary

14   injunction because they were marked "Confidential – Attorneys' Eyes Only" ("AEO").[3]

15   However, in the declaration he submitted in opposition to the motion for preliminary injunction,

16   Mayder describes in detail his understanding of the exhibits to the Leventhal (Exs. A,B), Lee (Exs.

17   A, B) and Lai (Exs. A-D) declarations, all of which were marked AEO.  (*See* Mayder Decl. I/S/O

18   Opp. to Mot. for Prelim. Inj., Docket No. 55, at ¶¶29-31.)

19         Dr. Blanchard claims that until recently he never reviewed the prior court orders, including

20   the TRO.  (New Blanchard Decl. at ¶¶4-5.)  However, Mayder's declaration submitted in

21   opposition to the contempt motion claims he had a "substantial discussion" with Blanchard after

22   issuance of the TRO and Blanchard told him that his ongoing marketing and development

23   activities in the Fall of 2007 were proper.[4]  Mayder's new declaration in support of this motion

24   tries to fix this lie, claiming that the contempt declaration was "ambiguous" and that it was his old

25

---

26   [2]   Declaration of Michael W. Stebbins in Opp. to Motion for Sum. Adj. and for Mod. of Prelim.
     Inj., dated August 15, 2008 ("Stebbins Decl."), at ¶¶3-4, Exs. A, B.

27   [3]   Declaration of Romi Mayder I/S/O Mot. for Sum. Adj. and for Mod. of Prelim. Inj., dated July
     10, 2008 at ¶¶5-10.

28

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION                    C07 04330 RMW (HRL)

1  lawyers who him he could continue with his contumacious conduct and that, in any event,

2  Verigy's counsel was to blame for being overly aggressive.  (Mayder Decl. at ¶19.)  Whatever the

3  truth, none of this nonsense supports vacating the preliminary injunction.

4  **IV.    ARGUMENT**

5      **A.    Defendants' Motion To Modify Preliminary Injunction Order Must Be Denied
            As Untimely Pursuant To FRCP 59(e).**

6

7          Defendants' moving papers fail to articulate any statutory or other legal basis for their

8  motion to modify.  Thus, the threshold question should be whether Defendants have brought an

9  untimely motion for reconsideration under Fed. R. Civ. Pro. 59(e) or a timely, but nonetheless

10  factually and legally unsupported motion for relief under Fed. R. Civ. Pro. 60(b).

11          The law is clear that "a motion that merely seeks to relitigate the issues underlying the

12  preliminary injunction order is subject to Rule 59(e)'s ten-day limit, while a motion that in

13  substance is based on new circumstances that have arisen after the district court granted the

14  injunction may be filed at any time before entry of a final judgment."  *Credit Suisse First Boston*

15  *Corp. v. Grunwald,* 400 F.3d 1119, 1124 (9th Cir. 2005).  Here, as set forth below, Defendants'

16  motion is nothing more than an attempt to relitigate issues that have been reviewed and

17  determined in the context of Verigy's motion for preliminary injunction and/or Verigy's motion

18  for contempt of the TRO.  Accordingly, Verigy respectfully submits that the proper standard under

19  which to evaluate Defendants' motion is Rule 59(e).[5]

20          Rule 59(e) requires that any motion to alter or amend a judgment be filed no later than ten

21  (10) days after entry of such judgment.  Here, the Preliminary Injunction Order was entered on

22  February 29, 2008, yet the instant motion was not filed until July 10, 2008, over four months later.

23  Even assuming  Defendants' motion can be characterized as a request for reconsideration of the

24  Contempt Order, which extended the preliminary injunction by four months, the motion is

25  nevertheless untimely as the Contempt Order was entered on May 20, 2008.  Accordingly, the

26

27  [4]    Declaration of Romi Mayder in Opp. to OSC Re: Contempt at ¶¶7-8.

28

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION                    C07 04330 RMW (HRL)

1   Court should deny Defendants' Motion To Modify Preliminary Injunction Order as untimely

2   under Rule 59(e).

3       **B.     Defendants Fail To Satisfy The Standard For Modification Of The
             Preliminary Injunction Order Pursuant To FRCP 60(b).**

4

5       Even assuming that Defendants' motion is proper under Rule 60(b), the motion

6   nevertheless fails. Although Defendants never cite Rule 60(b) as the basis for their motion, the

7   Court's Order re: Verigy's Administrative Motion states that Defendants have moved for relief

8   under subsections (2), (5), and (6) of Rule 60(b). (*See* Order re: Verigy's Administrative Motion

9   at 2:15-26.) These subsections allow for relief from a judgment or order based on "(2) newly

10  discovered evidence that, with reasonable diligence, could not have been discovered in time to

11  move for a new trial under Rule 59(b); . . . (5) [evidence that] applying [the judgment]

12  prospectively is no longer equitable; or . . . (6) any other reason that justifies relief." F.R.C.P.

13  60(b)(2), (5), (6).

14      It is well-established that:

15          Relief under Rule 60(b) is extraordinary and may only be granted in
            exceptional circumstances. *See Yapp v. Excel Corp.,* 186 F.3d 1222,

16          1231 (10th Cir.1999); *Bud Brooks Trucking, Inc. v. Bill Hodges
            Trucking Co., Inc.,* 909 F.2d 1437, 1440 (10th Cir.1990). Like a

17          motion to reconsider, a motion under Rule 60(b) is not a second
            opportunity for the losing party to make its strongest case, to rehash

18          arguments, or to dress up arguments that previously failed. *See*

19          *Voelkel v. Gen. Motors Corp.,* 846 F.Supp. 1482, 1483 (D.Kan.),
            *aff'd,* 43 F.3d 1484, 1994 WL 708220 (10th Cir.1994)." *Kustom*

20          *Signals, Inc. v. Applied Concepts, Inc.,* 247 F.Supp.2d 1233, 1235

21          (D. Kan. 2003).

22      Here, rather than offering truly new evidence that could not have been previously produced

23  or demonstrating a genuine change in conditions warranting equitable relief, Defendants attempt

24  to repackage and reframe arguments they made or that they could have, should have, or would

25  have made if they had different counsel at the time of the original motion. Thus, Defendants fail

26  _____

27  [5]   Plaintiff respectfully disagrees with the Court's finding in its July 23, 2008 Order Re: Verigy's
        Administrative Motion that Defendants' Motion To Modify Preliminary Injunction Order was

28  made under Rule 60(b) of the Federal Rules of Civil Procedure. (Admin. Order at 2:24-26.)

1  to demonstrate the existence of the type of extraordinary and exceptional circumstances that would

2  justify modification of the Preliminary Injunction Order.  Accordingly, Defendants' motion should

3  be denied and the current preliminary injunction should remain unchanged.

**1.  *eBay v. MercExchange* Does Not Warrant Modification Of The Preliminary Injunction Order Under Rule 60(b).**

6  In their moving papers, Defendants appear to contend that the case of *eBay, Inc. v.*

7  *MercExchange ,L.L.C.,* 547 U.S. 388 (2006) somehow requires the Court to reevaluate and modify

8  its Preliminary Injunction Order to provide for a fifteen percent (15%) royalty on all sales of the

9  ████████████ to be escrowed pending trial in lieu of a continued injunction.  The *eBay* case and

10  its holdings, however, do not satisfy any of the grounds for relief set forth under Rule 60(b).

**a.  The *eBay* Case Is Not New Law.**

12  The *eBay* case, which was decided by the United States Supreme Court in 2006, does not

13  warrant modification of the preliminary injunction pursuant to Rule 60(b).  Even assuming this

14  case somehow embodies "new law" which it clearly does not, "[i]t is well established . . . that '[a]

15  change in the law or in the judicial view of an established rule of law is not such an extraordinary

16  circumstance which justifies relief" under Rule 60(b)."  *See Kustom Signals, Inc.,* 247 F.Supp.2d

17  at 1244 (citing *Collins v. City of Wichita,* 254 F.2d 837, 839 (10th Cir.1958)).

**b.  The *eBay* Case Is Irrelevant and Immaterial .**

19  The *eBay* case is irrelevant and immaterial in evaluating whether Defendants have satisfied

20  their burden under Rule 60(b) of demonstrating the existence of newly-discovered evidence or

21  change in circumstances requiring modification of the injunction going forward.  Use of the two

22  year old *eBay* case as a tool for analysis is simply a way for Defendants to attempt to repackage

23  and recharacterize arguments that they either made or that they could have made in opposition to

24  Verigy's motion for preliminary injunction and/or Verigy's contempt motion.  This case cannot be

25  a substitute for a showing that Defendants satisfied the requirements of Rule 60(b).

26  Under subsection (5) of Rule 60(b), relief from an order may be warranted where evidence

27  shows that applying the judgment prospectively is no longer equitable.  Rule 60(b)(5) "does not

28  allow relitigation of issues that have been resolved by the judgment.  Rather, it requires a change

8

1  in the conditions that makes continued enforcement inequitable." *De Filippis v. United States.,*

2  567 F.2d 341, 343-344 (7th Cir. 1977) (citing 11 Wright & Miller, Federal Practice § 2863 (1973)).

3  A court "must look to the evidence that [the judge] had before him, and determine whether the

4  circumstances reflected in the evidence have changed to a sufficient degree that equity no longer

5  favors continuation of the injunction." *Orantes-Hernandez v. Gonzales,* 504 F.Supp.2d 825, 875

6  (C.D. Cal. 2007). In deciding whether to modify an injunction, the court must determine "whether

7  'the purposes of the litigation as incorporated in the decree' have been achieved'); *United States v.*

8  *Swift & Co.,* 189 F.Supp. 885, 905 (N.D. Ill. 1960) ('[I]t is only change that reaches the underlying

9  reasons for the decree that is relevant. Conditions existing at the time of original entry must be

10  compared with conditions at the time of requested modification, and the significance of the

11  difference measured in light of these original reasons'), *aff'd,* 367 U.S. 909, 81 S.Ct. 1918, 6

12  L.Ed.2d 1249 (1961)." *See Orantes,* 504 F.Supp. at 831.

13          Rule 60(b)(2) provides for relief in the case of newly-discovered evidence where the

14  moving party can demonstrate "(1) that the evidence was discovered after trial; (2) that the party

15  exercised due diligence to discover the evidence before the end of trial; (3) that the evidence is

16  material and not merely cumulative or impeaching; and (4) that a new trial considering the

17  evidence would probably produce a different result." *McCormack v. Citibank, N.A.,* 100 F.3d 532,

18  542 (8th Cir. 1996).

19          Here, Defendants meet neither of these standards. Defendants argue, in essence, that the

20  Preliminary Injunction Order is inequitable and should be modified under the reasoning articulated

21  in the *eBay* case because Verigy cannot establish irreparable harm as it is not currently offering a

22  product with the same functionality as Defendants' ███████  and the public allegedly has an

23  interest in making use of Defendants' product. *See* Mot. at 11:5-15:10. Defendants then contend

24  that escrowing a royalty of 15% on all sales of their product pending trial is a more appropriate

25  remedy at this time than maintaining the current injunction until trial.

26          This argument is merely an attempt to relitigate the issues underlying Verigy's motion for

27  preliminary injunction by trying to frame the issues under the analysis set forth in *eBay.* (*See*

28  Section III A, *supra.*) The facts and circumstances Defendants rely upon are unchanged since the

9

1  injunction was originally issued.  In issuing the injunction, the Court was well aware of and

2  considered the fact that Verigy was not offering a product with the same functionality as

3  Defendants' █████████████ and that the public might be interested in such a product.  *See*

4  Preliminary Injunction Order ("PI Order") at 25:10-14 ("The court has some concern that because

5  Verigy is not selling a comparable product, that the injunction will prevent a useful tool from

6  being available, however it appears from Weber's declaration that other vendors are offering a

7  similar solution to STS, even if that solution is not yet at the same stage of development as the

8  ███████████.").  Despite these facts, the Court determined that injunctive relief was appropriate

9  and ordered a five-month injunction.  *See* PI Order at 27:5-15.  Defendants addressed these issues

10  in their previous briefs and arguments.  *See* Section III, A, *Supra*.  Defendants present no newly-

11  discovered evidence or changed circumstances demonstrating that the Court should modify the

12  Preliminary Injunction Order to provide for escrow of a 15% royalty in lieu of maintaining the

13  current injunction.

14  　　　　Further, while Defendants appear to contend that the Preliminary Injunction Order was

15  improperly predicated on a presumption of irreparable harm, the Order itself makes clear that a

16  specific finding of the likelihood of irreparable harm was made.  The Order states:

17  　　　　Verigy suffers an injury to the extent that STS received a head start on developing a
18  　　　　technology that is being sold in a market space that Verigy chose not to enter based on
　　　　concerns that the fan-out tester would adversely impact its main testing business.  Further,
19  　　　　because the court concludes that STS's Picasso and ███████████ are based upon the
　　　　trade secret combination of technical components on a single chip set forth above
20  　　　　customized with the use of the requirements that were collected under confidentiality
　　　　obligations from Verigy customers, Verigy has demonstrated that it is likely to suffer
21  　　　　irreparable harm.

22  PI Order at 24:11-20; *see also* PI Order 25:20-22 ("Verigy has also demonstrated the immediate

23  potential of irreparable harm from the defendants' use of trade secret information and technology

24  discussed above in STS products.").  Rule 60(b) does not allow Defendants to relitigate the issue

25  of irreparable harm.  Accordingly, there is no basis for modifying the current injunction.

26  　　　　　　　　**c.**　　**Defendants' Application Of The Analysis In The *eBay* Case Fails
27  　　　　　　　　　　　To Demonstrate That The Injunction Should Be Modified.**

28

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION                           C07 04330 RMW (HRL)

1    Even if the Court considers Defendants' analysis under the *eBay* case on its merits, this

2    analysis fails to support vacating the preliminary injunction. The crux of Defendants' argument is

3    that the injunction should be modified because irreparable harm cannot be presumed and an

4    injunction is not an appropriate remedy where monetary damages could adequately compensate

5    the plaintiff. *See* Mot. at 11:7-15:10. However, neither *eBay* nor *Hologic* nor any of the other

6    cases cited in Defendants' opposition[6] made any sweeping changes to the legal standard for

7    issuance of a preliminary injunction. *Hologic, Inc. v. Senorx, Inc.,* No. C-08-00133RMW, 2008

8    WL 1860035, at *1 (N.D. Cal. Apr. 25, 2008). As discussed above, the Court utilized this

9    standard in the instant case (PI Order at 6:4-16) and correctly determined that Verigy had

10   demonstrated a likelihood of success on the merits (PI Order at 23:9-24:5), a likelihood of

11   irreparable injury (PI Order at 24:6-24), and that the balance of hardships weighed in Verigy's

12   favor (PI Order at 24:25-25:17). The *eBay* case does not change the Court's analysis.

13   Further, Defendants have failed to demonstrate the existence of any new facts or

14   circumstances demonstrating that a royalty is a more appropriate remedy than a continued

15   injunction. In the *eBay* case, the District Court determined that a royalty was an appropriate

16   remedy based on evidence that the patent holder, MercExchange, "consistently sought royalties

17   from internet companies interested in utilizing its patents, including eBay, and publicly announced

18   its willingness to license its patents to eBay before, during, and after trial, but it failed to establish

19   that an injunction is necessary to protect its brand name, market share, reputation, goodwill, or

---

21   [6]   The remaining cases cited by Defendants for the proposition that irreparable harm cannot be
presumed are also inapplicable as none of them involved trade secrets or facts similar to the instant

22   case. *See Foster v. American Machine & Foundry Co.,* 492 F.2d 1317, 1324 (2d Cir. 1974) (in a
patent infringement case finding on the facts presented that the balancing of the equities warranted

23   imposition of a compulsory royalty and not issuance of an injunction); *Torspo Hockey Intern., Inc.
v. Kor. Hickey Ltd.,* 491 F.Supp. 871. 881 (D. Minn. 2007) (patent infringement case); *MyGym*

24   *L.L.C. v. Engle*. 2006 U.S. Dist. LEXIS 88375, at *11 (trademark claim); *Paice L.L.C. v. Toyota
Motor Corp.,* 2006 U.S. Dist. LEXIS 61598 at * (E.D. Tex. Aug. 16, 2006) (patent infringement

25   case); *The Northern Cheyenne Tribe v. Norton,* 503 F.3d 836 (9th Cir. 2007) (environmental law
case); *Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126 (9th Cir. 2006) (Lanham Act case);

26   *Christopher Phelps & Assocs. L.L.C. v. Galloway,* 462 F.3d 532, 543 (4th Cir. 2007) (copyright
infringement case); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp.2d 1197,

27   1208-1210 (C.D. Cal. 2007) (copyright case); *z4 Techs., Inc. v. Microsoft Corp.,* 434 F.Supp.2d
437 (E.D. Tex. 2006) (patent infringement case); *Finisar Corp. v. DIRECTV Group, Inc.,* 2006

28   U.S. Dist. LEXIS 76380 at *4 (E.D. Tex. July 7, 2006) (patent infringement case).

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION                C07 04330 RMW (HRL)

1   future research and development opportunities." *MercExchange, L.L.C. v. eBay, Inc.,* 500

2   F.Supp.2d 556, 570 (E.D. Va. 2007). Here, on the other hand, there is no evidence that Verigy has

3   in the past or is currently willing to accept royalties for unauthorized use of its trade secrets.

4   Further, the Court in this case concluded that Verigy has demonstrated the necessity of an

5   injunction to protect its market share. *See* PI Order at 24:11-20.

6       As *eBay* is factually distinct from the present case in several critical areas and did not

7   change the standard for issuance of preliminary injunctive relief, application of its analysis does

8   not warrant modification of the preliminary injunction at issue herein.

9           **2.      Defendants Have Failed To Demonstrate That The Injunction Should
                      Be Modified To Prevent Inequitable Relief.**

10

11      Defendants argue that because the Court found that a five-month preliminary injunction

12  was appropriate to address any "head start" Defendants may have obtained in developing the ███

13  ███, it would be unfair to allow the injunction to remain in place until trial, or approximately

14  fifteen months from the date the TRO was issued. Defendants further contend that this continued

15  injunctive relief is inappropriate because it is greater than any relief Verigy could obtain following

16  trial. Again, Defendants fail to set forth the type of newly-discovered evidence or "change in the

17  conditions that makes continued enforcement inequitable" required for relief under Rule 60(b).

18  *See* F.R.C.P. 60(b)(2), (5); *See De Filippis,* 567 F.2d at 343-344.

19      Defendants offer no support for their assertion that a fifteen-month injunction is greater

20  than any relief Verigy could obtain following trial. Their cited authority is factually distinct

21  because it involved a motion for preliminary injunction seeking to prevent a party from submitting

22  a bid for a public project which, if granted, would have precluded the party from being able to bid

23  on this project even if the party ultimately succeeded at trial. *American Medical Response v. City*

24  *of Stockton,* No. CIV5051316DFLPAN, 2005 WL 2269123, at *4 (E.D. Cal. Sept. 16, 2005).

25  Thus, if the injunction were granted, the moving party would obtain its desired end result

26  (preventing a potential competitor from bidding) even if it ultimately lost at trial. Here, however,

27  the Court's grant of a five-month preliminary injunction is not a finding that this is the sum total

28  of the relief Verigy could hope to obtain at trial. In light of the Court's findings that "the ███

12

1  ████ . . . is substantially based upon Verigy's trade secrets" (PI Order at 23:19-21), that

2  "Mayder was most likely obligated to assign his work on Picasso up to the date of his departure to

3  Verigy" under the ARCIPD (PI Order at 18:11-16), and that "features found in Picasso data sheets

4  or other documentation up to September 2006 are likely to belong to Verigy under the ARCIPD"

5  (PI Order at 18: 17-18), Verigy could very well obtain permanent injunctive relief and/or an order

6  that it owns all or a substantial portion of ████████ at trial.  Thus, this is not the type of

7  changed circumstance demonstrating that maintaining the injunction prospectively would be

8  inequitable.

9       Moreover, Defendants' argument ignores the fact that the primary reason the preliminary

10  injunction will have been in place for over fifteen months as of the time of trial is the result of

11  Defendants' own actions in this case.  A TRO was issued on August 24, 2007 and extended three

12  times by stipulation of Defendants' counsel.  *See* Mot. at 5:1-5.  The injunction issued on February

13  29, 2008 was to be in place until July 29, 2008 and would have already expired but for

14  Defendants' actions in contempt of the TRO which resulted in a four-month extension through

15  November 29, 2008. [7]  Because Defendants played an integral role in the circumstances that led to

16  the increased duration of the injunction, the fact of the extension does not justify modifying, let

17  alone vacating, that injunction.  *See Valentine Sugars, Inc. v. Sudan,* 34 F.3d 320, 321 (5th Cir.

18  1994) (denying petition for declaratory judgment seeking relief from prior judgment where "the

19  change occurred entirely through the actions of [the parties who were] seeking relief from the

20  judgment.  This is not the kind of unforeseen change in circumstances that merits relief from a

21  judgment."); *see also Pro Edge L.P. v. Gue,* 411 F.Supp.2d 1080, 1092 (N.D. Iowa 2006) (facts

22  justified extending preliminary injunction past expiration of 1-year covenant not to compete to

23  protect employer from loss of more customers and stating  "[e]quity demands that employees not

24  be rewarded for breaching the terms of a covenant not to compete").

25  _____

26  [7]  Notably, the Court's contempt finding evidences the need for a continued injunction in this

27  case. *See Orantes,* 504 F.Supp.2d at 875 (holding that "substantial evidence of non-compliance persuades the court that . . . conditions are not so changed as to warrant dissolution of [specified portions] of the . . . injunction.").

28

1

**3.    Defendants Fail To Demonstrate That Public Interest And Equity
Require Modification Of The Preliminary Injunction Order.**

2

3    Defendants' final arguments again center on balancing of the hardships, ignoring the fact

4    that the Preliminary Injunction Order addressed the balance of hardships and that the Court

5    specifically considered Defendants' current contention that the equities tip in their favor because

6    Verigy is not currently selling a product with the same functionality as the ███████████ and

7    that there might be some public interest in such a product.  *See* PI Order at 25:3-17; *see also* Mot.

8    at 16:19-23, 17:10-14, 18:10-15.  As these arguments were already considered by the Court and

9    Defendants fail to demonstrate any new or different facts or circumstances surrounding these

10    issues, there is no basis for relief under Rule 60(b).

11    Defendants' arguments regarding Verigy's size and resources vis-á-vis Defendants' and

12    the availability of monetary damages or a reasonably royalty to compensate Verigy are, again,

13    arguments that Defendants could or should have made at the time of the hearing on the motion for

14    preliminary injunction.  Defendants again fail to demonstrate newly-discovered evidence or the

15    type of changed conditions or "exceptional circumstances" warranting modification of the

16    preliminary injunction.  *See* F.R.C.P. 60(b)(2), (5); *see also De Filippis,* 567 F.2d at 343-344;

17    *Kustom Signals, Inc.,* 247 F.Supp.2d at 1235.  Moreover, given the state of Defendants' product,

18    there are, as yet, no revenues from which to pay Verigy any royalties and the prospect of any in

19    the foreseeable future appears bleak.  (*See* Stebbins Decl. Ex. A, B.)

20    Defendants' argument that they were denied the opportunity to read and understand the

21    TRO also fails to warrant relief under Rule 60(b).  *See* Mot. at 17:15-28.  Defendants contend they

22    "were deprived of the ability to understand the full scope and content of the TRO due to Verigy's

23    designation of crucial exhibits and referenced material as highly confidential material."  Mot. at

24    16:14-16.  Defendants state that they were first allowed to view the full, unredacted TRO in June

25    2008, after entry of the Preliminary Injunction and the Contempt Order.  *See* MP at 4:17-24.  This

26    is utter nonsense.  The TRO was only ever designated "Confidential" meaning that Defendants

27    and their counsel could *always* review it.  (See TRO, Docket No. 22, at Ex. A.)  And Mayder

28    himself gave a detailed analysis (in an earlier declaration opposing the OSC re: Contempt where it

14

1  was then expedient to make that claim) of the Exhibits cited in the TRO.  (*See* Mayder Decl. I/S/O

2  Opp. To Motion for Preliminary Injunction, ¶¶29-31.)

3       Even if Defendants' assertions regarding their ability to read and understand the TRO were

4  not lies, this does not constitute "the existence of newly discovered evidence that, with reasonable

5  diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"

6  warranting relief under Rule 60(b)(2), nor does it constitute the type of changed conditions that

7  warrant relief under Rule 60(b)(5).  In fact, there is nothing new about this information and any

8  change in condition as a result of these circumstances was entirely within Defendants' control.

9  *See Valentine Sugars, Inc.,* 34 F.3d at 321 (denying relief from prior judgment where "the change

10  occurred entirely through the actions of [the parties who were] seeking relief from the judgment.")

11       If it were true that Defendants had not read the full TRO because certain portions were

12  designated as highly confidential, this was true at the time the Preliminary Injunction Order and

13  the Contempt Order were entered.  If this presented a barrier to Defendants' ability to oppose the

14  preliminary injunction or contempt motion, that issue should have been raised and remedied by

15  their counsel at the time.  Indeed, it did not seem to present a barrier, as Defendants principally

16  argued that there were no barriers to their activities and that no injunction or contempt order

17  should issue because the information they took from Verigy and continued using after issuance of

18  the TRO was not deserving of trade secret protection.

19       Defendants' motion also contains assertions about the failures of their former counsel.

20  However, any such failures do not justify relief under Rule 60(b).  *See Rodgers v. Wood,* 910 F.2d

21  444, 449 (7th Cir. 1990) ("An attorney's negligent mistake, evincing a lack of due care, is not a

22  proper ground for relief under Rule 60(b).  *Western Transp. Co. v. E.I. Du Pont De Nemours,* 682

23  F.2d 1233, 1236 (7th Cir.1982).").  Because Defendants' equity arguments fail to establish a basis

24  for relief pursuant to Rule 60(b), Defendants' motion should be denied.

25       **4.    Defendants Are Not Entitled To Relief Under Rule 60(b)(6).**

26       Rule 60(b)(6) applies "only when the reason for granting relief is not covered by any of the

27  other reasons set forth in Rule 60."  *Delay v. Gordon,* 475 F.3d 1039, 1044 (9th Cir. 2007) (citing

28  *Cmty. Dental Servs. v. Tani,* 282 F.3d 1164, 1168 n. 8 (9th Cir.2002)).  Here, while their moving

15

1   papers fail to state that they are seeking relief under Rule 60(b) or any particular subsection

2   thereof, the thrust of Defendants' argument is that maintaining the current injunction is no longer

3   equitable in light of allegedly newly-discovered evidence and/or changed circumstances.  As

4   Defendants' arguments really fall under subsections (2) and (5) of Rule 60(b)(6), Defendants are

5   not entitled to relief pursuant to subsection (6).

6          Moreover, "[i]t is well established ... that a 'proper case' for Rule 60(b)(6) relief is only

7   one of 'extraordinary circumstances,' or 'extreme hardship.' "  *Harris v. United States,* 367 F.3d

8   74, 81 (2d Cir. 2004) (quoting *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir.1977) (citations

9   omitted)); *see also Cmty. Dental Servs. v. Tani,* 282 F.3d 1164, 1168 (9th Cir.2002) (party seeking

10  relief under Rule 60(b)(6)"must demonstrate both injury and circumstances beyond his control

11  that prevented him from proceeding with the prosecution or defense of the action in a proper

12  fashion.").  As discussed above, Defendants' motion for modification is almost entirely a

13  rehashing of settled issues or issues that could have been raised in connection with the motion for

14  preliminary injunction had Defendants been represented by different counsel.  There is nothing in

15  the law, facts, or circumstances presented in Defendants' motion evidencing extraordinary

16  circumstances beyond Defendants' control that would justify gutting the current injunction with a

17  never-to-be-funded escrow account.  Accordingly, Defendants' motion should be denied.

18          **5.     No Relief is Warranted Under Subsections (1), (3), or (4) of Rule 60(b).**

19          Defendants are not entitled to relief pursuant to any of the remaining subsections of Rule

20  60(b).  Pursuant to subsection (1) of Rule 60(b), a party may obtain relief from a judgment or

21  order on the basis of "mistake, inadvertence, surprise, or excusable neglect."  Here, the only facts

22  alleged by Defendants that could fit into this category relate to Defendants' alleged

23  misunderstanding of the TRO based on their own actions or inactions, the actions or inactions of

24  their prior counsel, and advice of counsel which Defendants contend led to their violation of the

25  TRO  *See* Mot. at 3:3-4:3, 4:17-24, 17:15-21 (claiming "they were in fact advised by their former

26  counsel that they could continue to act in the manner that resulted in the contempt finding").

27          Even assuming Defendants' current factual assertions were true, which they are not, this

28  does not constitute a basis for relief under Rule 60(b)(1).  *See Latshaw v. Trainer Wotham & Co.,*

16

452 F.3d 1097, 1101 (9th Cir. 2006) ("We agree that Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel.  For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel.  This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct. Such mistakes are more appropriately addressed through malpractice claims."); *see also Cashner v. Freedom Stores, Inc.,* 98 F.3d 572, 576 (10th Cir. 1995) ("the "mistake" provision in Rule 60(b)(1) provides for the reconsideration of judgments only where: (1) a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order.")  As stated in *Latshaw,* therefore, Defendants' remedy may lie in a malpractice claim against their prior counsel, not modification of the current injunction.

Subsection (3) of Rule 60(b) provides for relief from a judgment or order in the case of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  "To merit relief, the complaining party must 'establish by clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case.'  Misconduct may be shown by evidence that the opposing party withheld information called for by discovery or willfully committed perjury." *General Universal Sys., Inc. v. Lee,* 379 F.3d 131, 156-157 (5th Cir. 2004) (quoting *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978)).

Here, although the Mayder Declaration complains about a great many things, none of Defendants' contentions amount to fraud or misconduct by Verigy or its counsel under Rule 60(b)(3).  *See* Declaration of Romi Mayder at 2:7-3:23, 4:11-16 (¶¶5-10, 13).  At all relevant times Defendants were represented by counsel who had the full unredacted TRO.  The fact that Defendants and/or their former counsel may not have taken appropriate steps to ensure that they understood or complied with the TRO cannot somehow constitute fraud or misconduct by Verigy or its counsel.  If anything, the facts alleged by Defendants may suggest misconduct by their own prior counsel, the remedy for which is not a motion for modification under Rule 60(b)(3).

1    Finally, a party may seek relief from a judgment or order where "the judgment is void"

2  pursuant to Subsection (4) of Rule 60(b).  A judgment is void under Rule 60(b)(4) "only if the

3  court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a

4  manner inconsistent with due process of law." *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d

5  180, 193 (2d Cir. 2006) (quoting  *In re Texlon Corp.,* 596 F.2d 1092, 1099 (2d Cir.1979))

6  (judgment void under Rule 60(b)(4) where court allowed a corporation, acting through one of its

7  shareholder and officers who was not an attorney, to execute a stipulation of settlement for an

8  excessive judgment while appearing *pro se*).  Here, Defendants argue a lack of due process based

9  on the assertion they were not served with the full unredacted TRO and, therefore, they did not

10  understand it.  Again, there is no legitimate basis for these assertions, nor is this a proper basis

11  under Rule 60(b)(4).

12    As Defendants have failed to demonstrate their entitlement to relief pursuant to any

13  subsection of Rule 60(b), their motion should be denied and the preliminary injunction should

14  remain in place.

15    **C.    Defendants Are Not Entitled to Summary Adjudication on Verigy's Ninth**
16    **Claim for Relief for Violation of the Lanham Act §43(a).**

17    Defendants contend, as a matter of law, that Verigy's Ninth Claim for Relief does not give

18  rise to a viable Lanham Act claim because Verigy must, but cannot, show "that it has created a

19  product that Defendants have treated as their own by removing any Verigy designation as the

20  source of origin and replacing it with their own."  Mot. at p.8 (emphasis in original).  This

21  contention is incorrect for the two reasons discussed below.

22    **1.    Verigy's False Advertising Claim Does Not Require Bodily**
        **Appropriation**

23

24    Verigy's Ninth Claim for Relief alleges that Defendants violated Section 43(a) of the

25  Lanham Act in two distinct ways.  First, Verigy alleges Defendants falsely designated themselves

26  as the sole source of origin of the Verigy Project, which is incorporated in Defendants' product.

27  (Complaint, ¶ 86.)   In effect, Verigy claims that defendants were guilty of "reverse palming off."

28  Second, Verigy also alleges that defendants have engaged in *false advertising* by falsely

18

1    representing on the STS website at www.silicontests.com, and in correspondence and

2    presentations to certain potential customers that they "have invented a new paradigm for

3    substantially increasing parallelism of ATE test cells."  (Complaint, ¶ 87).

4            Section 43(a) of the Lanham Act provides:

5        (1)    Any person who, on or in connection with any goods or services, or any
         container for goods, uses in commerce any word, term, name, symbol, or device,
6        or any combination thereof, or any false designation of origin, false or misleading
         description of fact, or false or misleading representation of fact, which –
7
         (A)    is likely to cause confusion, or to cause mistake, or to deceive as to
8        the affiliation, connection, or association of such person with another person, or
         as to the origin, sponsorship, or approval of his or her goods, services, or
9        commercial activities by another person, or

10       (B)    in commercial advertising or promotion, misrepresents the nature,
         characteristics, qualities, or geographic origin of his or her or another person's
11       goods, services, or commercial activities,

12       shall be liable in civil action by any person who believes that he or she is or is
         likely to be damaged by such act.
13

14   15 U.S.C. § 1125(a).  "The Lanham Act was intended to make 'actionable the deceptive and

15   misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair

16   competition.'"  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003).  "15

17   U.S.C. § 1125(a) [Section 43(a) of the Lanham Act] is one of the few provisions that goes beyond

18   trademark protection."  *Id.*

19           "The Lanham Act applies to two different types of unfair competition in interstate

20   commerce.  The first is 'palming off' or 'passing off,'[8] which involves selling a good or service of

21   one person's creation under the name or mark of another. [citation]  Section 43(a) also reaches

22   false advertising about the goods or services of the advertiser."  *Lamothe v. Atlantic Recording*

23   ───────────────────────

24   [8]    "'Section 43(a) also encompasses merchandising 'practices or conduct 'economically
     equivalent to palming off.'"  *See Lamothe*, 847 F.2d  at 1406.  "'Among these practices is
25   'reverse passing off, which may be either 'express' or 'implied.'  Express reverse passing off is
     'accomplished . . . when the wrongdoer removes the name or trademark on another party's product
26   and sells the product under a name chosen by the wrongdoer.' [citation]  Implied reverse passing
     off is accomplished simply by removing or obliterating the name of the source and selling the
27   product in an unbranded state.'"  *Id.*

28

1  *Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988).[9]  "These two 'prongs' of section 43(a) developed

2  somewhat separately and have achieved their own sub-set of substantive rules."  McCarthy,

3  "Lanham Act § 43(a):  The Sleeping Giant is Now Wide Awake," 59 *SPG Law & Contemp.*

4  *Probs*. 45, 52 (1996).

5          In this case, Verigy has asserted *both* types of unfair competition.  Defendants' motion for

6  summary adjudication addresses only Verigy's reverse palming off claim and *not* its false

7  advertising claim, which is based on different essential elements.  As such, the motion necessarily

8  fails in satisfying Defendants' initial burden of showing the absence of genuine issues of material

9  fact to be tried, and summary adjudication of this claim should therefore be denied. [10]

10          The elements of a false advertising claim under Section 43(a) are as follows:

11          1) in its ... advertisements, defendant made false statements of fact about its own
            [or another's] product;

12

13          2) those advertisements actually deceived or have the tendency to deceive a
            substantial segment of their audience;

14          3) such deception is material, in that it is likely to influence the purchasing
            decision;

15

16          4) defendant caused its falsely advertised goods to enter interstate commerce; and

17          5) plaintiff has been or is likely to be injured as the result of the foregoing either by
            direct diversion of sales from itself to defendant, or by lessening of the good will
            which its products enjoy with the buying public.

18

19  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc*., 911 F.2d 242, 244

20  (9th Cir. 1990); *see also, Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir.

21  1997).  The first element is satisfied by showing a "'false or misleading representation of fact.'"

22  *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 730 (9th Cir. 1999).

23  Here, as contained in the evidence set forth in support of Verigy's motion for preliminary

24  _____

25  [9]    In *Lamothe*, the Ninth Circuit "conclude[d] that [plaintiffs], for purposes of surviving a
    motion for summary judgment, ha[d] produced evidence satisfying the elements of a 'reverse
26  passing off' claim, [so the court] need[ed] not decide whether the defendants' actions also
    constitute[d] false advertising."  *See Lamothe*, 847 F.2d at 1406.

27  [10]    As Defendants did not address the false advertising claim in their opening brief, any
    arguments Defendants might have raised "are deemed waived," and cannot be raised in their reply.
28  *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006).

1   injunction, Defendants falsely represented on the STS website that they had invented a new

2   paradigm for increased parallelism of ATE test cells.  (*See,* Morton Decl. I/S/O Prelim. Inj., ¶11 &

3   Ex. F) (Docket No. 10).  In fact, as described in Defendants' website, the STS products appear to

4   perform the same function as Verigy's trade secret project designs, thereby misappropriating

5   Verigy's technology.  (Leventhal Decl. I/S/O Prelim. Inj, ¶21) (Docket No. 9).  Because

6   Defendants' product is derived from Verigy's trade secrets, Defendants' "invention" was not

7   theirs to claim and Defendants' advertising on the STS website was false and misleading.  As a

8   matter of law, there is no requirement that Verigy establish it reduced its technology to product

9   form as an essential element of its false advertising claim.  Accordingly, summary adjudication of

10  Verigy's Ninth Claim for Relief is inappropriate and should be denied.

11              **2.    Defendants' Relabeling of Verigy's Specification As Their Own**
12                      **Constitutes Bodily Appropriation Within The Meaning Of The**
                        **Lanham Act.**

13          The undisputed evidence in this case demonstrates that Defendants misappropriated

14  Verigy's specification and, with only nominal alteration, put their name on it and passed it off as

15  their own to approach Honeywell and also solicit interest from potential customers.  (*See* Morton

16  Decl. in Opp. To Motion for Summary Adjudication on claims 3-5, Ex. B, "Morton Decl., Aug.

17  15, 2008.")  This is a classic case of reverse palming off under the Lanham Act, similar to cases

18  involving architectural drawings, designs, and patterns.

19          In their motion for summary adjudication of Verigy's Ninth Claim for Relief, Defendants

20  argue that Verigy cannot establish bodily appropriation under the Lanham Act because Verigy

21  cannot show that "it has created a *product* that Defendants have treated as their own by removing

22  any Verigy designation as the source of origin and replacing it with their own."  Mot. at 8:3-7

23  (emphasis in original).  Defendants' motion does not discuss the evidence in this case, but, instead,

24  relies on the allegations in Verigy's Complaint that "defendants have falsely designated

25  themselves as the source of origin of the Verigy Project which is incorporated, in whole or in part,

26  within the STS device."  Mot. at 7:26-28.  Defendants claim that what Verigy alleges, in essence,

27  is that Defendants took its research and development and incorporated it into a final product of

28  their own which is not actionable under the Lanham Act.  The undisputed material facts

21

1  demonstrate, however, that Defendants took Verigy's specification, effectively relabeled it as their

2  own and used it to solicit interest from potential customers.  (See, e.g., Morton Decl., Aug. 15,

3  2008, Ex. B.)  At the time of that misappropriation in June 2006, Defendants' current ASIC did

4  not yet exist, and, thus, the only tangible good Defendants had to market to customers was the

5  specification embodied in the ████████ RFQ that Mayder copied with nominal alteration.

6        Defendants base their "bodily appropriation" argument on *Dastar, Supra* 539 U.S. 23.

7  *Dastar* involved a party who took a creative work, specifically, a television series which was in

8  the public domain, modified it, and produced their own series of videotapes.  The plaintiff, who

9  had originally produced the television series, contended that defendant had violated the Lanham

10  Act by passing off the television series as its own.  The Supreme Court determined that a claim for

11  violation of the Lanham Act did not lie because the plaintiff was not the "origin" of the work,

12  stating that "origin" in the context of the Lanham Act "refers to the producer of the tangible goods

13  that are offered for sale, and not to the author of any idea, concept or communication embodied in

14  those goods."  *Id.* at 37.

15        *Dastar* is distinguishable from the case at hand because the defendant in *Dastar* was the

16  actual producer of the videotapes being offered for sale in the marketplace; it did not simply put a

17  new label on plaintiff's videotapes and attempt to market them as its own.  Here, on the other

18  hand, Defendants engaged in a classic Lanham Act violation by doing little more than putting their

19  name on Verigy's specification and using it to attempt to solicit interest and orders from potential

20  customers.

21        This situation is analogous to Lanham Act cases involving architectural designs and

22  patterns.  For example, in a case in which an architect was found to have taken another architect's

23  draft plans and simply relabeled them as his own, the Sixth Circuit found the Lanham Act

24  violation to be obvious and fundamental, stating:

25        [I] is obvious beyond dispute that by taking [plaintiff's] name and seal off of the
       plans and replacing them with his own, [defendant] intended for people to assume
26        that the plans were his, and not [plaintiff's]. Indeed, this Court is hard-pressed to
       imagine what effect these actions could possibly have other than to convince
27        anyone who looked at the plans that they were [defendant's] work. Few are the
       cases demonstrating a more obvious and imminent likelihood of confusion.

28

1

2   *Johnson v. Jones,* 149 F.3d 494, 503 (6ᵗʰ Cir. 1998); s*ee also Tiseo Architects, Inc. v. SSOE, Inc.,*

3   431 F.Supp.2d 735 (E.D. Mich. 2006) (holding that defendants made a false designation of origin

4   under the Lanham Act where they represented designs of a grocery store to be their own work and

5   failed to attribute the work to plaintiff).

6        In a recent decision of the United States District Court for the Eastern District of

7   California, the court found that plaintiff had sufficiently alleged a claim under the Lanham Act

8   where plaintiff alleged that defendant "misappropriated GNI Waterman's patterns, used those

9   proprietary patterns to manufacture identical products, and stamped AM Valve's logo to attempt to

10  pass them off as AM Valve's own products."  *GNI Waterman LLC v. A/M Valve Company LLC,*

11  No. CV F 07-0863 LJO TAG, 2007 WL 2669503, at *5 (E.D. Cal. Sept. 7, 2007).  Here, as in *GNI*

12  *Waterman,* it is undisputed that Defendants misappropriated Verigy's design specification,

13  effectively relabeled it as their own, and used it to solicit sales from potential customers as if the

14  specifications were their own.

15       As the undisputed evidence in this case actually does establish bodily appropriation of

16  Verigy's specification, there is at least a material issue of fact such that Defendants' motion for

17  summary adjudication of Verigy's Lanham Act claim should be denied.

18       **D.    Defendants Are Not Entitled To An Order Summarily Adjudicating That**
             **"Information Contained In Published Patents Or Patent Applications Cannot**
19           **Constitute Trade Secrets."**

20       With little evidence, analysis or explanation, Defendants ask the court to issue a blanket

21  order summarily adjudicating that "as a matter of law, material contained in a public patent or

22  patent application cannot constitute trade secrets of Verigy, and that none of the information

23  contained in the patents and patent applications submitted to the Court in connection with this

24  motion, through the Declaration of Dr. Richard Blanchard and the exhibits thereto, can constitute

25  trade secrets of Verigy."  (Mot. at p.10).  Defendants' obtuse and overbroad request should be

26  rejected because *at the time of* Defendants' misappropriation of Verigy's trade secrets, the various

27  references had not yet been published.  As such, even if these references disclosed Verigy's trade

28

1    secrets at issue in this lawsuit, which they do not, those trade secrets were still secret when they

2    were misappropriated.  (Wei Decl. at ¶17.)

3         Of the 21 patents and patent applications attached to the New Blanchard Declaration, all –

4    except one, Exhibit W – were published *after* June 2006, and thus well *after* Mayder's

5    misappropriation.  Axiomatically, liability for misappropriation is not absolved by potential

6    publication of trade secrets *after* the date of the misappropriation.  Preliminary Injunction Order

7    (Docket No. 171 at p.13).[11]  Thus, at the time Mayder misappropriated Verigy's trade secrets in

8    the middle of 2006, the references had not been published.

9         There is no legal support for Defendants' position because the cases cited in their motion

10    are inapt and apply only in situations where the owner of a trade secret, having had a patent issued

11    and published, itself prospectively asserts trade secret protection over the information in a

12    previously published patent.  The law says that in such situations, the owner of the patent only has

13    protection under the patent law, but not under the UTSA. That is simply not the situation that

14    exists in this case.

15         Further, Defendant's motion is devoid of any analysis whatsoever regarding the Verigy

16    trade secrets that are allegedly published in the references attached to the New Blanchard

17    Declaration.  There is no attempt to identify, explain or analyze those trade secrets in light of any

18    of the references (or vice versa) or to point out which portion of the reference purportedly applies

19    to or discloses which trade secret.  (See Wei Decl. at ¶4.)  All that exists is the blanket,

20    unsupported inference that there is some disclosure or publication and the naked request that, "as a

21    matter of law, material contained in a public patent or patent application cannot constitute trade

22    secrets."  As presented, Defendants' request is tantamount to asking for an advisory opinion in a

23    legal and factual vacuum.  In light of Defendants' showing, there is no way the Court can or

24    _____

25    [11]    With respect to the one patent published *before* June 2006, namely the '677 Patent (Exhibit
         W to the Blanchard Decl.), this patent does not embody an alleged Verigy trade secret.  (*See,*
26    Declaration of Wei Wei in Opposition to Defendants' Motion for Summary Adjudication and
         Motion to Modify Preliminary Injunction Order, ("Wei Decl.") ¶¶ 11 & 14-15.)

27

28

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION                    C07 04330 RMW (HRL)

1  should issue such a ruling and Defendants' motion for summary adjudication of this issue should

2  be denied. [12]

3  **IV.    CONCLUSION**

4        For the foregoing reasons, Verigy respectfully requests that the Court deny Defendants' (a)

5  motion for modification of the preliminary injunction, (b) motion for summary adjudication of

6  Verigy's Ninth Claim for Relief under Section 43(a) of the Lanham Act, and (c) motion for

7  summary adjudication of Verigy's misappropriation of trade secrets claim for relief insofar as the

8  trade secrets were published in patent applications and/or patents after the misappropriation took

9  place.

10

11

12  Dated: August 15, 2008                    BERGESON, LLP

13

14                                           By: _____/s/_____
                                                    Michael W. Stebbins

15                                           Attorneys for Plaintiff
16                                           VERIGY US, INC.

17

18  _____

19  [12]    Further, despite Defendants' claims that Verigy's claimed trade secret is obvious and in the
    public domain, as discussed in the Wei Decl., Mayder obtained a patent on this very technology
20  that was issued in March 2008, thus demonstrating that the USPTO considers this technology
    patentable and non-obvious.  (*See* Wei Decl., at ¶¶27-30.)
21

22

23

24

25

26

27

28

MEMORANDUM OF P&A'S IN OPPOSITION TO M/S/A AND
FOR MODIFICATION OF PRELIMINARY INJUNCTION                    C07 04330 RMW (HRL)