JACK RUSSO (State Bar No. 96068)
TIM C. HALE (State Bar No. 114905)
JOHN KELLEY (State Bar No. 100714)
RUSSO & HALE LLP
401 Florence Street
Palo Alto, CA 94301
Telephone: (650) 327-9800
Facsimile: (650) 327-3737
Email: jrusso@computerlaw.com
       thale@computerlaw.com
       jkelley@computerlaw.com

Attorneys for Defendants
ROMI MAYDER, SILICON TEST SYSTEMS, INC.,
SILICON TEST SOLUTIONS LLC, and WESLEY
MAYDER

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROMI MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 5:07-cv-04330-RMW (HRL)<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION ON THIRD THROUGH FIFTH CLAIMS FOR RELIEF**<br><br>**Before: Judge Ronald Whyte**<br>**Ctrm:  6**<br>**Date:   September 5, 2008**<br>**Time:  9:00 a.m.**<br><br>Complaint Filed: August 22, 2007<br>Trial Date: December 8, 2008 (jury trial)<br>(Defendants have elected to reserve their jury trial rights under F.R.C.P., Rule 38) |

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief**    **Case No. 5:07-cv-04330-RMW (HRL)**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

    I.    VERIGY FAILED TO SUBMIT COMPETENT EVIDENCE ................................. 1

    II.   SUMMARY ADJUDICATION ON ALL THREE CLAIMS IS WARRANTED .... 3

        A.    Summary Adjudication is Proper as to the Third Claim. ............................... 3

        B.    Summary Adjudication on the Fourth Claim Should be Granted ............ …..6

        C.    The California Penal Code Claim Fails ......................................................... 7

CONCLUSION………………………………………………………………………………………..8

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief**   i   **Case No. 5:07-cv-04330-RMW (HRL)**

# TABLE OF AUTHORITIES

**Cases (Federal)**

*Am. Bankers Ins. Group v. United States*
    408 F.3d 1328 (11th Cir. 2005) ................................................................................ 7

*Am. Computer Trust Leasing v. Jack Farrell Implement Co.*
    763 F.Supp.1473 (D. Minn. 1991) ........................................................................... 4

*Brett Senior & Assocs., P.C. v. Fitzgerald*
    2007 U.S. Dist. LEXIS 50833 (E.D. Pa. July 13, 2007) ......................................... 4

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ................................................................................................. 2

*Charles Schwab & Co., Inc. v. Carter*
    2005 U.S. Dist. LEXIS 5611 (N.D. Ill. Feb. 11, 2005) ........................................... 4

*Diamond Power Int'l, Inc. v. Davidson*
    540 F.Supp.2d 1322 (N.D. Ga. 2007) ................................................................. 4, 5

*Int'l Airport Ctrs. LLC v. Cirtin*
    440 F.3d 418 (7th Cir. 2006) ............................................................................ 4, 5, 6

*International Ass'n of Machinists and Aerospace Workers v. Werner-Matsuda*
    390 F.Supp.3d 479 (D. Md. 2005) .......................................................................... 4

*Lockheed Martin Corp. v. Speed*
    81 U.S.P.Q. 2d 1669 (M.D. Fla. 2006) ............................................................ 4, 6, 7

*Optistreams, Inc. v. Gahan*
    2006 U.S. Dist. LEXIS 21680 (E.D. Cal. Mar. 28, 2006) ...................................... 8

*Secureinfo Corp. v. Teloscorp*
    387 F.Supp.2d 593 (E.D. Va. 2005) ....................................................................... 4

*Shotz v. City of Plantation, Florida*
    344 F.3d 1161 (11th Cir. 2003) ........................................................................... 6, 7

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*
    119 F.Supp.2d 1121 (W.D. Wash. 2000) .......................................................... 5, 6, 7

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief**    ii    Case No. 5:07-cv-04330-RMW (HRL)

1  *Theofel v. Farey-Jones*
2      359 F.3d 1066 (9th Cir. 2004) ................................................................................. 6
3  *ViCHIP Corp. v. Lee*
4      438 F.Supp. 3d 1097 (N.D. Cal. 2006) ................................................................. 3, 5

5  **Cases (State)**

6  *Bancroft-Whitney Co. v. Glen*
7      64 Cal.2d 327 (1966) ............................................................................................. 3
8  *Chrisman v. City of Los Angeles*
9      155 Cal. App.4th 29 (2007) .................................................................................... 8
10 *Mahru v. Superior Court*
11     191 Cal.App.3d 545 (1987) .................................................................................... 7
12 *People v. Hawkins*
13     98 Cal. App. 4th 1428 (2002) ................................................................................. 8

14 **Statutes**

15 Fed. R. Civ. P. Rule 56 ................................................................................................ 2
16 18 U.S.C. §1030 et seq................................................................................... 3, 4, 5, 7
17 18 U.S.C. §2701 et seq...................................................................................... 6
18 California Penal Code §502 ................................................................................. 7, 8

19 **Other Sources:**

20 *The American Heritage Dictionary* (1976) ............................................................... 7

21
22
23
24
25
26
27
28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

**Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief**  iii    **Case No. 5:07-cv-04330-RMW (HRL)**

**INTRODUCTION**

Plaintiff Verigy's opposition (the "Opp.") to Defendants' motion for summary adjudication as to the Third through Fifth Claims for Relief reveals a fatal error in Verigy's effort to avoid summary judgment being entered against it on these claims: as the party opposing summary judgment and bearing the ultimate burden of proof at trial on said claims, it was incumbent upon Verigy that it respond to the motion *with competent evidence to support its claims*. Only, Verigy failed to do so; its entire opposition is based on the premise that Mr. Mayder's authority to access Verigy computers automatically terminated when he allegedly breached a duty of loyalty, and/or misappropriated trade secrets, *but Verigy submitted no evidence whatsoever establishing the proprietary or trade secret nature of the information that Mr. Mayder in fact accessed*! A party resisting summary judgment cannot stand on its unverified pleading, but that is exactly what Verigy has done. For this reason, and because the cases cited by Verigy do not support its position, summary adjudication on each of the three claims should be granted.

**ARGUMENT**

**I.    VERIGY FAILED TO SUBMIT COMPETENT EVIDENCE.**

Verigy admits, as it must, that Romi Mayder was authorized to access the computers that he accessed while working there and at Verigy's predecessor, Agilent. Opp. at 9-10. Instead of asserting improper access, Verigy relies upon a hodgepodge of cases that suggest that authority to access such computers automatically terminated due to actions that Verigy claims constituted a breach of Mr. Mayder's duty of loyalty, and/or trade secret misappropriation.

Verigy, however, has utterly failed to submit evidence to support its claims, has not asked the Court to take judicial notice, and as the party opposing summary judgment, has not raised a dispute of material fact. That is, Verigy's opposition assumes, and in fact falsely states, that it has proven that the information accessed by Mr. Mayder while employed there a) was confidential, b) was proprietary, c) was of a trade secret nature and d) was of such value that Mr. Mayder's access and use thereof was in fact wrongful. At page 8 of its opposition brief, Verigy asserts: "It is undisputed that Mayder accessed Verigy's computers on several occasions for the express purpose of obtaining Verigy's *confidential and proprietary information for his own use in starting his new*

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief    1    Case No. 5:07-cv-04330-RMW (HRL)

*venture.*" (Emphasis added). At page 9 of its brief, Verigy asserts, without evidence, that Mr. Mayder's new business was going to be a "competing" company.

Far from being undisputed, these conclusions by Verigy are very hotly disputed, and at the core of this action. But Verigy had the obligation in opposing summary judgment to submit *facts* to support its position. "Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rather than submitting facts, Verigy substituted attorney argument and reliance upon its unverified complaint, reliance that is anathema to summary judgment practice. "When a motion for summary judgment is properly made and supported an opposing party may not rely merely on allegations or denials in its own pleading, rather the response must—by affidavit or otherwise as provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. Rule 56(e)(2).

Here, Verigy's entire opposition is based on the assertion that Romi Mayder's authority to access Verigy computers terminated due to alleged tortious actions he took in accessing and using what Verigy wants to believe constitutes trade secret information. Yet Verigy put in no evidence whatsoever to in fact establish the proprietary or trade secret information that Mr. Mayder accessed, while Mr. Mayder in his declaration submitted with the moving papers testified that he understood the information he was accessing to be public information, not something in which Verigy could claim trade secrecy. Yet such evidence is central to Verigy's avoidance of summary judgment; if Mr. Mayder had accessed recipes for chilli that various Verigy employees had posted using the Verigy computer system, Verigy would have no claim for breach of duty of loyalty, or trade secret misappropriation sufficient to deny summary judgment on its computer access claims. But Verigy in no way supported its opposition with any evidence that the information accessed or used by Mr. Mayder constituted anything more valuable than chilli recipes and in that regard, failed to submit evidence sufficient to raise a material dispute as to whether access was authorized,

//

//

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief**   2       **Case No. 5:07-cv-04330-RMW (HRL)**

or terminated due to tortious actions by him. This failure by Verigy is fatal and permeates its entire opposition.[1]

## II. SUMMARY ADJUDICATION ON ALL THREE CLAIMS IS WARRANTED.

### A. Summary Adjudication is Proper as to the Third Claim.

The Third Claim for Relief is for alleged violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. Section 1030 *et seq.* A CFAA claim requires that the defendant has accessed the plaintiff's computers "without authorization" or in excess of permitted authorization. In arguing that Romi Mayder exceeded his authority to access its computers, and that his authority to do so automatically terminated, Verigy relies upon the conclusions that he breached his duty of loyalty and/or misappropriated Verigy trade secrets, yet, as addressed above, Verigy put in no evidence whatsoever to establish the alleged trade secret nature of any information accessed or used by him. Yet a CFAA claim, and statute, requires that the plaintiff show that in accessing a computer without authorization or in excess of such authorization, the defendant has obtained something "of value." Verigy has made no such showing in its opposition. As such, Verigy has failed to submit the foundational facts needed to raise a material dispute.

Nor do the cases cited by Verigy either correct its evidentiary failing or serve to bolster Verigy's opposition. In *ViCHIP Corp. v. Lee*, 438 F.Supp.3d 1097 (N.D. Cal. 2006), a decision by Judge Hamilton, the Court noted the "paucity" of Ninth Circuit authority regarding how the "without authorization" prong of the various computer access statutes should be construed. *Id*. at 1100. Judge Hamilton relied upon a case from the Seventh Circuit, also cited by Verigy, *International Airport Centers LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006). Opp. at 7. In both *ViCHIP* and *Citrin*, however, there was no issue of the plaintiff having failed to support its claim with evidence; in *ViCHIP*, Judge Hamilton cited extensively to declarations submitted by the plaintiff in support of its summary judgment motion on its CFAA claim; in *Citrin*, the matter was

---

[1] Additionally, the evidence that Verigy does rely upon to attempt to prove improper actions by Mr. Mayder (not, as noted, the proprietary or trade secret status of any of its information) proves nothing in the way of wrongdoing. That is, Verigy complains that Mr. Mayder obtained a domain name and took steps to form his new company while employed by Verigy. Opp. at 8-9. But as a matter of law California protects the rights of its workers to take steps to form a new business or take on new employment obligations, even while still employed. *Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 346 (1966).

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief    3    Case No. 5:07-cv-04330-RMW (HRL)

decided on a motion to dismiss, where all facts in the pleading were assumed to be true as a matter of law.

Similarly, the citation to the case of *Charles Schwab & Co., Inc. v. Carter*, 2005 U.S. Dist. LEXIS 5611 (N.D. Ill. Feb. 11, 2005) is equally unavailing. Opp. at 7. Again the case was procedurally decided on a motion to dismiss where all facts were assumed to be true in plaintiff's favor. Further, among those facts was the allegation that the defendant had accessed some 15,000 computer files, many of which he had no "need to know." *Charles Schwab* at *3. In contrast, there is no allegation in this case that Mr. Mayder accessed any information that he was not entitled to access. He was permitted to and did access and use such information while working at Verigy, or Agilent.

Moreover, the approach followed in the cases cited by Verigy are not in keeping with the large majority of courts which have viewed the CFAA, and the related Electronic Communications Privacy Act ("ECPA") (the basis of Verigy's Fourth Claim for Relief), have limited the application of the statutes to unauthorized *access*, not unauthorized *use. See*, *e.g.,Brett Senior & Assocs., P.C. v. Fitzgerald*, 2007 U.S. Dist. LEXIS 50833 (E.D.Pa. July 13, 2007); *Diamond Power Int'l, Inc. v. Davidson*, 540 F.Supp.2d 1322 (N.D. Ga. 2007); *Lockheed Martin Corp. v. Speed*, 81 U.S.P.Q.2d 1669 (M.D. Fla. 2006); *Secureinfo Corp. v. Teloscorp*, 387 F.Supp.2d 593 (E.D. Va. 2005); *Int'l Assoc. of Machinists and Aerospace Workers v. Werner-Matsuda,* 390 F. Supp.2d 479, 499 D. Md. 2005); *Am. Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F.Supp. 1473, 1475 (D. Minn. 1991). The court in *Brett* addressed the "without authorization" language of the CFAA statute and rejected the position espoused by Verigy:

> The CFAA defines "exceeds authorized access" as accessing "a computer with authorization" and using "such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Id.* § 1030(e)(6). By its plain terms, this definition does not apply to Fitzgerald's conduct. He did not obtain any information that he was not entitled to obtain or alter any information that he was not entitled to alter. As Senior testified at his deposition, Fitzgerald was allowed full access to information contained in the BSA computer system until his departure.

*Id.* at *9. Rather, the access, in order to be unlawful under the CFAA, has to be tantamount to trespass, as confirmed by the statute's legislative history. *Id.* at *10. To read the statute otherwise

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief**  4    Case No. 5:07-cv-04330-RMW (HRL)

would be to construe it as prohibiting unauthorized *use*, not unauthorized access, and as a criminal statute, it must be read narrowly so as not to criminalize garden-variety torts. *Id.* at *12. Moreover, Verigy's interpretation would run afoul of other legislative history relating to the CFAA statute:

> First, in looking to the use to which an employee is permitted to put information, the cases often make the existence of a confidentiality or non-compete agreement dispositive of liability under the CFAA. It is unlikely that Congress, given its concern "about the appropriate scope of Federal jurisdiction" in the area of computer crime, intended essentially to criminalize state-law breaches of contract. S. Rep. 99-432, at 3 (1986).

*Id.* at *13.

The court in *Diamond Power* even more strongly rejected the reasoning of *Citrin* and *Shurgard* (see below). While first noting the split of authority about "without authorization," the court found that the reasoning of these cases (and by definition, *ViCHIP*) ignores both the plain meaning and statutory interpretation rules:

> In the Court's view, the latter line of cases provides the more correct interpretation of the phrase "without authorization" in the CFAA. Defining "authorization" based upon the use of computer information, rather than upon the presence or absence of initial permission to access the computer, is in tension with both a plain reading of the Act and the manner in which the term "authorization" is used in other parts of the Act. Most prominently, it is inconsistent with the Act's use of the term "authorization" in its definition of "exceeds authorized access."
> See 18 U.S.C.§1030(e)(6).
>
> Section 1030(e)(6) defines "exceeds authorized access" as "to access a computer *with authorization* and to *use such access* to obtain or alter information in the computer *that the accesser is not entitled so to obtain or alter.*") (emphasis added). Thus, Section 1030(e)(6) contemplates that an "exceeds authorized access" violation occurs where the defendant first has initial "authorization" to access the computer. But, once the computer is permissibly accessed, the use of that access is improper because the defendant accesses information to which he is not entitled. Under *Citrin* and *Shurgard*, however, that distinction is overlooked. Under their reasoning, an employee who accesses a computer with initial authorization but later acquires (with an improper purpose) files to which he is not entitled--and in so doing, breaches his duty of loyalty--is "without authorization," despite the Act's contemplation that such a situation constitutes accessing "with authorization" but by "exceed[ing] authorized access." 18 U.S.C. § 1030(e)(6). The construction of *Citrin* and *Shurgan* [sic] thus conflates the meaning of those two distinct phrases and overlooks their application in § 1030(e)(6).

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief    5    Case No. 5:07-cv-04330-RMW (HRL)

*Id.* at 1341-42. As admitted by Verigy, Mr. Mayder was fully authorized to access the material on the Verigy computers and could in no event be found to have trespassed upon that computer system. The Third Claim for Relief fails, and summary adjudication is warranted.

### B. Summary Adjudication on the Fourth Claim Should be Granted.

Verigy's Fourth Claim for Relief is brought under another criminal statute, the ECPA, 18 U.S.C. Section 2701 *et seq.* The authority cited by Verigy itself, however, demonstrates that it has not raised a material dispute as to this claim either. While acknowledging that other jurisdictions have rejected ECPA claims where the employee was authorized to access his employer's computers, Verigy attempts to rely upon two cases, *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121 (W.D. Wash. 2000) and *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004). Opp. at 12-13. This reliance fails, however.

In *Theofel*, the Ninth Circuit affirmed that a violation of ECPA required the equivalent of a trespass for the defendant to be viewed as having accessed a computer system without authorization. *Id.* at 1074. While acknowledging that some consent to access could be vitiated by deceitful actions of the defendant, the court found that knowing reliance upon a subpoena that the defendant knew to be falsely drafted would overcome any claim of consent. Here, Verigy cannot point to any consent that it gave to Mr. Mayder to access its computers that was vitiated by his conduct. He was required to continue to access Verigy computers while employed there and would have been in derogation of his duties had he not continued to access those computers. Consent was given and never retracted, and no trespass could possibly lie.

Similarly, *Shurgard* offers no relief to Verigy. The case has been roundly criticized by Diamond Power and other courts. In addressing the "without authorization" language from a CFAA perspective, the *Lockheed Martin* court rejected *Shurgard*'s reasoning:

> The Court is not persuaded by the analysis in either *Citrin* or *Shurgard*. Both cases rely heavily on extrinsic materials, particularly the Second Restatement of Agency (*Citrin* and *Shurgard*) and legislative history (*Shurgard*), to derive the meaning of "without authorization." Because the plain language of the statute is sufficient to interpret the disputed terms, this Court need not resort to extrinsic materials. In the Eleventh Circuit, there is a presumption that, in drafting a statute, "Congress said what it meant and meant what it said." *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1167 (11th Cir. 2003). "The first rule in statutory

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief**   6   **Case No. 5:07-cv-04330-RMW (HRL)**

construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." *Id.* (internal quotation omitted). Words carry their ordinary meaning, unless otherwise defined. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005). If Congress has used clear statutory language, a court need not consider extrinsic materials, such as legislative history, and certainly should not derive from such materials a meaning that is inconsistent with the statute's plain meaning. *Shotz*, 344 F.3d at 1167. Even where Congress has used statutory language that is not entirely transparent, courts are to resort to canons of construction to determine "the meaning of a particular statutory provision by focusing on the broader, statutory context." *Id.* at 1167 (internal quotations omitted). There is one instance where extrinsic materials are permitted to define a term: when the statutory language either produces a clearly absurd result or presents a substantial ambiguity. *Id.* at 1167.

The term, "without authorization," is not defined by the CFAA. Nonetheless, "authorization" is commonly understood as "[t]he act of conferring authority; permission." *The American Heritage Dictionary*, 89 (1976). On the other hand, the CFAA defines "exceeds authorized access" as follows: "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter[.]" 18 U.S.C. § 1030(e)(6). The CFAA targets access "without authorization" in six separate offenses (§§ 1030(a)(1), (a)(2), (a)(3), (a)(4), (a)(5)(A)(ii), (a)(5)(A)(iii)), only three of which also reach persons "exceeding authorized access" (§§ 1030(a)(1), (a)(2), (a)(4)). Thus, it is plain from the outset that Congress singled out two groups of accessers, those "without authorization" (or those *below* authorization, meaning those having no permission to access whatsoever - typically outsiders, as well as insiders that are not permitted *any* computer access) and those exceeding authorization (or those *above* authorization, meaning those that go beyond the permitted access granted to them - typically insiders exceeding whatever access is permitted to them). *Lockheed Martin,* 81 U.S.P.Q.2d at *12-*15.

The reasoning of *Shurgard,* far from being "compelling" as Verigy urges, has been severely criticized as not conforming to the plain meaning of the CFAA, and this Court should not adopt that belabored reasoning as its own.

### C. The California Penal Code Claim Fails.

Lastly, Defendants have moved for summary adjudication as to Verigy's California Penal Code Section 502 claim. Verigy both misrepresents the holdings of cases cited by Defendants in their moving papers, and cites to other cases that do not support its position.

Verigy attempts to distinguish the case of *Mahru v. Superior Court,* 191 Cal.App.3d 545 (1987) by arguing that the case turned on whether the harm was to a defendant's employer versus to a third party. Opp. at 14. As even a brief reading of that case would demonstrate, however, the court there in no way based its determination on *who* was harmed. Rather, the court found:

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief**   7   Case No. 5:07-cv-04330-RMW (HRL)

> The Legislature could not have meant, by enacting section 502, to bring the Penal Code into the computer age by making annoying or spiteful acts criminal offenses whenever a computer is used to accomplish them. Individuals and organizations use computers for typing and other routine tasks in the conduct of their affairs, and sometimes in the course of these affairs they do vexing, annoying and injurious things. Such acts cannot all be criminal.

*Id.* at 549.

Similarly, Verigy's attempt to distinguish the case of *Chrisman v. City of Los Angeles*, 155 Cal.App.4th 29 (2007) offers no assistance to Verigy's position. Rather, the *Chrisman* court held that the phrase "scope of employment," which forms the basis for exceptions for liability in subsection (h) of Section 502, had to broadly construed, even to include injurious behavior. And contrary to Verigy's assertion, it has *not* "shown that Romi Mayder stole its valuable trade secrets and confidential and proprietary information and…used such information to unfairly and unlawfully compete with Verigy." Opp. at 15. Verigy no doubt will wish that it had made such a showing in its opposition papers, but as addressed extensively above, it simply failed, if not opted, to do so, and rely instead on improper attorney argument and its unverified pleading.[2]

## **CONCLUSION**

Romi Mayder was fully authorized to access Verigy's computers and related information system while working for Verigy and its predecessor, Agilent. Verigy has admitted his authorized access, but has attempted to rely, improperly, upon attorney argument and its unverified pleading to support its assertion that Romi Mayder took valuable, proprietary trade secret information and misused it. Verigy never adduced the evidence required to demonstrate the alleged breach of duty of loyalty or trade secret misappropriation. Further, the better reasoned case law rejects the criminalization of actions that are already sufficiently addressed under state tort law, and Verigy's attempt to charge Defendants with criminal conduct is heavy-handed, and should not be part of this

---

[2] Nor does Verigy's so-called authority for its position withstand scrutiny. In the case of *People v. Hawkins*, 98 Cal.App.4th 1428 (2002), the employee who took source code accessed and took such code after his employment had terminated; as such, he was equivalent to an outside hacker. In *Optistreams, Inc. v. Gahan,* 2006 U.S. Dist. LEXIS 21680 (E.D. Cal. Mar. 28, 2006), the defendant accessed his employer's server in areas as to which he was not permitted to have access. By contrast, there is no allegation, and certainly no proof, that Mr. Mayder ever accessed any information at Verigy or Agilent that he was not entitled to access. Verigy's authority does not provide an opposition.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief    8    Case No. 5:07-cv-04330-RMW (HRL)

action. As such this motion for summary adjudication should be granted and the related claims for relief should be dismissed with prejudice.

                                      Respectfully submitted,

Dated: August 22, 2008               By:    /s/ Tim C. Hale

                                      Jack Russo
                                      Tim C. Hale
                                      John Kelley

                                      ATTORNEYS FOR DEFENDANTS & COUNTERCLAIMANTS ROMI MAYDER, WESLEY MAYDER, STS, LLC AND STS, INC.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Reply Mem. Re MSJ on 3-5 Claims for Relief   9        Case No. 5:07-cv-04330-RMW (HRL)