

1  JACK RUSSO (State Bar No. 96068)
   TIM C. HALE (State Bar No. 114905)
2  JOHN KELLEY (State Bar No. 100714)
   RUSSO & HALE LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  Telephone: (650) 327-9800
   Facsimile: (650) 327-3737
5  Email: jrusso@computerlaw.com
          thale@computerlaw.com
6          jkelley@computerlaw.com

7  Attorneys for Defendants and Counterclaimants
   ROMI MAYDER, SILICON TEST SYSTEMS, INC.,
8  SILICON TEST SOLUTIONS, LLC and WESLEY
   MAYDER
9
                IN THE UNITED STATES DISTRICT COURT
10
           IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13  VERIGY US, INC., a Delaware Corporation,          Case No. 5:07-cv-04330-RMW (HRL)

14                 Plaintiff,                          **DEFENDANTS' REPLY TO OPPOSITION
                                                       TO MOTION FOR SUMMARY
15            v.                                       ADJUDICATION AND FOR
                                                       MODIFICATION OF PRELIMINARY
16  ROMI MAYDER, an individual; WESLEY                 INJUNCTION**
    MAYDER, an individual; SILICON TEST
17  SYSTEMS, INC., a California Corporation;           Judge:   Hon. Ronald M. Whyte
    and SILICON TEST SOLUTIONS, LLC, a                 Date:    September 5, 2008
18  California Limited Liability Corporation,          Time:    9:00 a.m.
    inclusive,                                         Dept.:   6
19
                                                       Complaint Filed: August 22, 2007
20                 Defendants.                         Trial Date: December 8, 2008 (jury trial)
                                                       (Defendants have elected to reserve their jury
21                                                     trial rights under F.R.C.P., Rule 38)

22  AND RELATED COUNTERCLAIMS.
23

24

25            **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

26                **DOCUMENT SUBMITTED UNDER SEAL**

27

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.                        Case No. 5:07-cv-04330-RMW (HRL)

1

## <u>TABLE OF CONTENTS</u>

2

INTRODUCTION .......................................................................................................... 1

3

ARGUMENT ................................................................................................................. 1

4

    I.      THE COURT'S JULY 23, 2008 ORDER REJECTED

5

          VERIGY'S RULE 59(E) ARGUMENT, AND IT

          SHOULD BE REJECTED AGAIN .......................................................... 1

6

    II.     PURSUANT TO RULE 60(B)(2) & (5),

7

          THE PI ORDER SHOULD BE MODIFIED ............................................ 1

8

          A.     Under *Rufo* and *Bellevue Manor,* All Circumstances Should Be

9

                 Considered in Determining Defendants' Motion to Modify the PI Order..... 1

10

          B.     Pursuant to Rule 60(b)(5), the PI Order Should Be Modified

11

                 In Light of Changes in Both Legal and Factual Circumstances ................... 2

12

                 1.     Significant Changes in Both Legal and Factual

13

                       Circumstances Warrant Revision of the Preliminary Injunction ....... 2

14

                     a.    *eBay* Changed the Rules for

                          The Granting of Injunctive Relief........................................... 2

15

                     b.    The Dr. Blanchard Decl. and its Exhibits, Including

16

                           The'140 Application, As Well as Other Evidence,

                           Created Significant Changes in the Factual

17

                           Circumstances Concerning the PI Order .............................. 3

18

                   2.     The Proposed Modification to the PI Order is Suitably

19

                       Tailored to the Changed Legal and Factual Circumstances ............. 5

20

                     a.    The Modification in the PI Order Are Appropriate

21

                            In Light of Changes in Likelihood of Success...................... 5

22

                     b.    The Modifications in the PI Order are Suitable

                           In Light of Changes in Irreparable Harm.............................. 7

23

                         i.     The Question of Irreparable

24

                            Harm Must be Re-Assessed ...................................... 7

25

                         ii.    The Extent of Any Head-Start

26

                            Must be Re-Assessed ............................................... 8

27

                     c.    The Modifications in the PI Order are Suitable

28

                            In Light of Changes in the Balance of Hardships................. 9

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

Reply Mem. P. & A.  Defs.' Mot. Summ. Adj. &
Mod. Prelim. Inj.

i

Case No. 5:07-cv-04330-RMW (HRL)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

          d.     The Modifications in the PI Order Are Suitable
               In Light of Changes in the Public Interest ........................... 10

      3.     The PI Order Should Be Modified Pursuant to Rule 60(b)(5)......... 11

   C.     The PI Order Should Also be Modified Pursuant to Rule 60(b)(2)............. 11

III.    *DASTAR* PRECLUDES VERIGY'S LANHAM ACT CLAIM ............................ 12

IV.    DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION
     THAT INFORMATION CONTAINED IN PUBLISHED PATENTS OR
     PATENT APPLICATIONS CANNOT CONSTITUTE TRADE SECRETS ........ 15

CONCLUSION..................................................................................................................15

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Reply Mem. P. & A.  Defs.' Mot.**
**Summ. Adj. & Mod. Prelim. Inj.**

ii

**Case No. 5:07-cv-04330-RMW (HRL)**

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Bellevue Manor Assocs. v. United States*
    165 F.3d 1249 (9th Cir. 1999) ................................................................................................2

4

*Coastal Abstract Services, Inc. v. First Am. Title Ins. Co.*

5
    173 F.3d 725, 731 (9th Cir. 1999).........................................................................................12

6

*Dastar v. Twentieth Century Fox*
    539 U.S. 23, 123 S. Ct. 2041 (June 2, 2003) .............................................................13, 14, 15

7

*eBay, Inc. v. MercExchange*

8
    547 U.S. 388 (2006) .......................................................................................................2, 3, 8

9

*GNI Waterman LLC v. A/M Valve Company LLC*
    No. CV F 07-0863 LJO TAG, 2007 U.S. Dist. LEXIS 68715 (E.D. Cal. Sept. 7, 2007).....13

10

*Francois v. Jack Ruch Quality Homes*

11
    2006 U.S. Dist. LEXIS 57062 (C.D. Ill. Aug. 14, 2006)......................................................13

12

*Hologic, Inc. v. Senorx, Inc.*
    2008 U.S. Dist. LEXIS 36693 (N.D. Cal. Apr. 25, 2008) ......................................2, 5, 8, 10

13

*In re Baker Hughes Inc.*

14
    215 F.3d 1297 (Fed. Cir. 2000) .............................................................................................5

15

*MercExchange, L.L.C. v. eBay, Inc.*
    500 F. Supp. 2d 556 (E.D. Va. 2007) ............................................................................3, 8, 10

16

*Orantes-Hernandex v. Gonzales*

17
    504 F. Supp. 2d 825 (C.D. Cal. 2007) ...................................................................................3

18

*Pinnacle Sys., Inc. v. XOS Techs., Inc.*
    2003 U.S. Dist. LEXIS 27729 (N.D. Cal. May 19, 2003) ....................................................12

19

*Praxair, Inc. v. ATMI, Inc.*

20
    479 F. Supp. 2d 440 (D. Del. 2007).....................................................................................3, 8

21

*Johnson v. Jones*
    149 F. 3d 494 (1998).............................................................................................................13

22

*Newcal Industries, Inc. v. Ikon Office Solution*

23
    513 F.3d 1038, 1053 (9th Cir. 2008) ...................................................................................12

24

*Radolf v. Univ. of Conn.*
    364 F. Supp. 2d 204 (D. Conn. 2005) ..................................................................................12

25

*Rufo v. Inmates of Suffolk County Jail*

26
    502 U.S. 367 (1992)...............................................................................................................1

27

*TraFix Devices, Inc. v. Marketing Displays, Inc.*
    532 U.S. 23 (2001)................................................................................................................14

28

*United States v. Swift & Co.*

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

**Reply Mem. P. & A.  Defs.' Mot.**
**Summ. Adj. & Mod. Prelim. Inj.**
    iii
**Case No. 5:07-cv-04330-RMW (HRL)**

1

286 U.S. 106 (1932)..................................................................................................2

2

## Statutes & Rules

3

Fed. R. Civ. P. Rule 59 ........................................................................................1, 2

Fed. R. Civ. P. Rule 60 .............................................................................1, 2, 3, 11, 12

Cal. Civ. Code §3426.2........................................................................................11

Code of Federal Regulations, Section 1.56...................................................................5

35 U.S.C. §112...................................................................................................5

35 U.S.C. §1125................................................................................................12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔅᵐ

**Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.**

iv

**Case No. 5:07-cv-04330-RMW (HRL)**

## INTRODUCTION

Plaintiff Verigy US, Inc.'s ("Verigy") opposition ("Opp.") to the motion by Defendants for modification of the current preliminary injunction order and for summary adjudication fails to raise a cognizable argument.  The Court has already rejected Verigy's Rule 59(e) argument that Defendants' motion is an untimely motion for reconsideration, yet Verigy simply repeats the rejected arguments, signalling the lack of merit to its opposition.  Under Rule 60(b)(2) & (5) the PI Order[1] should be modified because of significant changes in both legal and factual circumstances since February, 2008.  Defendants are entitled to summary adjudication (a) dismissing Verigy's Lanham Act claim and (b) establishing that once a document is published, any alleged trade secrets contained in that document lose any alleged trade secret status as of the date of such publication.

## ARGUMENT

### I.  THE COURT'S JULY 23, 2008 ORDER REJECTED VERIGY'S RULE 59(E) ARGUMENT, AND IT SHOULD BE REJECTED AGAIN.

Verigy argues that Defendants' motion to modify the PI Order is barred by Rule 59(e). Opp. at 6.  As Verigy admits, however, the Court has already decided this issue:  "[T]he disputed portion of defendants' motion appears to be one made under Rule 60(b) rather than one made under Rule 59…."[2]  Opp. at 7, fn.2.  The Court rejected the very arguments that Verigy advances yet again to assert that Defendants' motion is one for reconsideration.  Using Verigy's own reasoning, this basis for opposition is itself improper, since it was raised before by Verigy, ruled upon by the Court, and Verigy failed to bring a timely motion for reconsideration of said ruling.

### II.  PURSUANT TO RULE 60(B)(2) & (5), THE PI ORDER SHOULD BE MODIFIED.

#### A.  Under *Rufo* and *Bellevue Manor*, All Circumstances Should Be Considered in Determining Defendants' Motion to Modify the PI Order.

Verigy argues that only "extraordinary and exceptional circumstances…justify modification" of the PI Order but this argument ignores the modern, flexible approach under Rule 60(b)(2).  *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 380 (1992), made clear that the

---

[1]    Order Granting in Part Plaintiff's Motion for a Preliminary Injunction [Etc.]" ("PI Order").

[2]    "Order re: Verigy's Administrative Motion" filed July 23, 2008 ("July 23rd Order"), p. 2.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.                1                Case No. 5:07-cv-04330-RMW (HRL)

1   "grievous wrong" language in *United States v. Swift & Co.*, 286 U.S. 106 (1932) "was not

2   intended to take on a talismanic quality":

> a party seeking modification of a consent decree bears the burden of establishing that a
> significant change in circumstances warrants revision of the decree. If the moving party
> meets this standard, the court should consider whether the proposed modification is
> suitably tailored to the changed circumstance.

5   *Rufo*, 502 U.S. at 383 (footnote omitted). "A party seeking modification of a consent decree may

6   meet its initial burden by showing a significant change either in factual conditions or in law."

7   *Rufo*, 502 U.S. at 384. The Ninth Circuit applies *Rufo* broadly: "[T]he *Rufo* standard applies to all

8   Rule 60(b)(5) petitions brought on equitable grounds." *Bellevue Manor Assocs. v. United States*,

9   165 F.3d 1249, 1257 (9th Cir. 1999). Thus, the Court's power to grant Defendants' motion to

10  modify the PI Order is not limited to "extraordinary and exceptional circumstances."

### B. Pursuant to Rule 60(b)(5), the PI Order Should Be Modified in Light of Changes in Both Legal and Factual Circumstances.

#### 1. Significant Changes in Both Legal and Factual Circumstances Warrant Revision of the Preliminary Injunction.

##### a. *eBay* Changed the Rules for the Granting of Injunctive Relief.

15  Verigy argues that *eBay, Inc. v. MercExchange*, 547 U.S. 388 (2006) is not new law and is

16  irrelevant. Opp. at 8-9. Neither of these arguments can withstand scrutiny.

17  On February 29, 2008, the application of *eBay* to a motion for a preliminary injunction was

18  not clear, and the implications of *eBay* were not brought to the Court's attention. Verigy makes only

19  passing reference to *Hologic, Inc. v. Senorx, Inc.*, 2008 U.S. Dist. LEXIS 36693 (N.D. Cal. Apr. 25,

20  2008), which was not handed down until nearly two months after the PI Order. *Hologic* pointed out

21  the state of uncertainty at the time: "courts have split as to whether the presumption of irreparable

22  harm applies in motions for preliminary injunctions." *Id.* at *43; s*ee also id.* at *44, fn. 9. Not until

23  *Hologic* was it clear that the Northern District would follow *eBay* in determining preliminary

24  injunction motions. *See id.* at *45. Furthermore, unlike Rule 60(b)(2), Rule 60(b)(5) does not

25  require a showing that new law (or facts) "could not have been discovered in time to move for a new

26  trial under Rule 59(b)." Instead, the modern, flexible approach focuses on whether there has been a

27  significant change in legal or factual circumstances from those that were presented to the Court

28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.          2          Case No. 5:07-cv-04330-RMW (HRL)

1    previously.[3]

2         Verigy claims that *eBay* is irrelevant, because "the Court was well aware of and considered

3    the fact that Verigy was not offering a product with the same functionality…." Opp. at 10. This is

4    not the point. *eBay* and its progeny teach a very different standard for determining whether or not

5    injunctive relief should follow a finding of liability.[4] All of these teachings, particularly when

6    taken together, demonstrate that *eBay* changed the rules for granting of injunctive relief.

7            **b.**    **The Dr. Blanchard Decl. and its Exhibits, Including the '140 Application, As Well As Other Evidence, Created Significant**

8                    **<u>Changes in the Factual Circumstances Concerning the PI Order.</u>**

9         Verigy asserts that Defendants' Motion[5] fails to present any "truly new evidence." Opp at

10    7. But, as discussed above, Rule 60(b)(5) focuses on whether there have been significant factual

11    changes from the evidence previously presented to the Court. While Verigy's table (Opp. at 3)

12    tries to suggest that Defendants have failed to present any new arguments, Verigy's table misses

13    the mark. Arguments are not evidence. The volumes of evidence presented in the Dr. Blanchard

14    Decl. and the R. Mayder Decl. submitted with Defendants' moving papers, were not presented to

---

15    [3]  A court "must look to the evidence that [it previously] had before [it], and determine whether the

16    circumstances reflected in that evidence have changed to a sufficient degree that equity no longer favors continuance of the injunction." *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d

17    825, 837 (C.D. Cal. 2007).

18    [4]  Such changes include the following, and the additional changes discussed below:
(1)     courts assess injunctive relief under the traditional, four-factor test, *eBay*, 547 U.S. at 391;

19    (2)     "the creation of a right is distinct from the provision of remedies for violations of that
        right," *eBay*, 547 U.S. at 392;

20    (3)     "this Court has consistently rejected invitations to replace traditional equitable
        considerations with a rule that an injunction automatically follows a determination that a
        [right] has been infringed," *id*. at 392-3;

21    (4)     merely "recit[ing] the traditional four-factor test," *id*. at 393, is insufficient for a court to
        exercise properly its equitable discretion in deciding whether to grant or deny an

22            injunction;
(5)     District Courts must be careful not to invoke "broad classifications" or "categorical rule[s]"

23            to ensure that their analyses can "be squared with the principles of equity," *id*.;
(6)     under *eBay*, "although the 'quantum of evidence required [to prove irreparable harm] is

24            relatively unclear,' the plaintiff had not met its burden by merely asserting that it directly
        competes with the infringer and will 'likely lose additional market share, profits, and

25            goodwill,'" *MercExchange, L.L.C. v. eBay, Inc*., 500 F. Supp. 2d 556, 570 (E.D. Va. 2007),
        citing *Praxair, Inc. v. ATMI, Inc*., 479 F. Supp. 2d 440, 443-44 (D. Del. 2007);

26    (7)     a "'lack of commercial activity in practicing the [relevant] patents' and instead …a
        'willingness to license its patents'" counsel against a finding of irreparable harm,

27            *MercExchange,* 500 F. Supp. 2d at 570 (citation omitted).
[5]  "Defendants Notice of Motion and Motion for Summary Adjudication and for Modification of

28    Preliminary Injunction [Etc.] ("<u>Defs.' Mot</u>").

---

**Reply Mem. P. & A. Defs.' Mot.**
**Summ. Adj. & Mod. Prelim. Inj.**      3      **Case No. 5:07-cv-04330-RMW (HRL)**

1    the Court before the PI Order issued.  All of this new evidence may be marshaled to support both

2    new and earlier arguments.[6]

3        Most tellingly in this regard, *Verigy's own expert admits that the now-public '140*

4    *Application[7] was part and parcel of the* ▨ *project*:

5    

6    

7    ▨.

8    The '140 Application presents at least five significantly different sets of factual circumstances:

9        First, the '140 Application shows that Agilent, and later Verigy, consciously chose to

10   protect the ▨ project under the Patent Act, thereby risking its trade secret claims.

11       Second, despite the fact that Verigy knew that a patent application concerning the ▨

12   project had been published before the PI hearing, Verigy did not inform the Court of this fact, but

13   instead misled the Court into believing the material was still being kept in confidence.

14       Third, by submitting the '140 Application to the USPTO, Verigy represented that the '140

15   Application contained all of the information that would enable one of ordinary skill in the art to

16   practice the best mode of the inventions claimed in it.  Therefore, as a matter of law, based upon

17   [6]    Verigy relies upon the declaration of its expert to argue that "Dr. Blanchard essentially
18        recycles assertions from his previous declarations…." Opp. at 4.  The key lacuna in Verigy's
          argument is found in ¶¶ 5 and 10 of the "Declaration of Wei Wei in Opposition to Defendants'
19        Motion [Etc.]" ("Wei Decl.").  The Wei Decl. essentially dismisses the '140 Application as
          simply something "discussed in … my previous…deposition." *Id.* at ¶ 5.  No serious attempt
20        to come to terms with the implications of the *public disclosure* of the ▨ project are made.
          Similarly, the claim that it would have taken Mr. Mayder 13 to 14 months to develop a
21        specification for the STS product (Wei Decl. at ¶¶ 21, 23) is contradicted by both (a) the
          Court's previous finding of a five-month period based upon a review of similar evidence
22        offered by Verigy's expert (*see* PI Order at p. 27:8-9 and (b) Verigy's utter failure to present
          evidence that the only thing that Mr. Mayder was working on between November 2005 and the
23        December 21, 2006 datasheet analyzed by Verigy's expert was that particular datasheet; this
          opinion fails to acknowledge both the effect of the '140 Application and everything else that
24        Mr. Mayder was doing during that period of time.

25   [7]    U.S. Pat. App. No. US 2007/0247140 A1 (the "'140 Application"), Dr. Blanchard Decl., Ex. G.
          It became public on October 25, 2007.  It was filed on April 24, 2006, well after November
26        2005, when the Court determined that "Mayder worked on the ▨ project," and not long
          before the time when the '▨." PI Order at 3:11 and 4:6.

27   [8]    *See* the "Declaration of Wei Wei in Opposition to Defendants' Motion [Etc.]" ("Wei Decl."),
          Ex. B, at depo. p. 92:20-24; *see also* Wei Decl. at p. 4, ¶ 10, which makes clear that the '140
28        Application is the exhibit about which this testimony is being given.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔆᴹ

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.                4                Case No. 5:07-cv-04330-RMW (HRL)

1    both (a) the enablement and best more requirements of 35 U.S.C. § 112 and the duty of candor

2    existing under 37 C.F.R. § 1.56, *inter alia*, and (b) the principles estoppel, quasi-estoppel, and

3    waiver,[9] Verigy cannot now claim that there were any additional trade secrets known to Verigy as

4    of April 24, 2006 not set forth in the '140 Application that were necessary for one of ordinary skill

5    in the art to practice the best mode of all of the inventions claimed in the '140 Application.

6    Furthermore, no such trade secrets, if any, remained secret after October 25, 2007.

7         Fourth, Verigy is estopped from claiming that that the references identified in the '140

8    Application were not publicly known as of April 24, 2006.  For example, Verigy cannot claim that

9    there was any trade secret in the idea of multiplexing circuits to increase the throughput for testing

10   NAND flash memory as of April 24, 2006.

11        And fifth, another fact not revealed to the Court, Verigy has already received several

12   rejections from the USPTO that the invention claimed therein is *obvious*![10]  It cannot be that an

13   invention both contains trade secrets and is obvious, since the latter implies that there is no real

14   commercial value to the invention, and/or that it was readily ascertainable.  In addition to the '140

15   Application, other significant changes in the factual circumstances concerning the PI Order

16   presented by Defendants' Motion include: (a) all of the additional opinions expressed by Dr.

17   Blanchard;[11] (b) all of the exhibits to the Dr. Blanchard Decl.; and all of the evidence presented in

18   the R. Mayder Decl. and the exhibits thereto.

19
20
         **2.    The Proposed Modification to the PI Order is Suitably
                  Tailored to the Changed Legal and Factual Circumstances.**

21        The Court should modify the PI Order based upon the criteria discussed in this Court's

     *Hologic* decision.[12]

22
23
              **a.    The Modifications in the PI Order Are Appropriate
                       In Light of Changes in Likelihood of Success.**

24   [9]   *See, e.g., In re Baker Hughes Inc.*, 215 F.3d 1297, 1301-1302 (Fed. Cir. 2000).

25   [10]  Defendants were not in possession of the file wrapper for the `140 Application at the time of
26         filing their moving papers, and make this showing as an offer of proof.  Defendants will bring
           the file wrapper to the hearing such that the Court can examine it if interested.

27   [11]  This includes the fact that Dr. Blanchard expressed some of those opinions in light of (i) orders
           of the Court that he had not been shown previously or (ii) Verigy's new trade secret list.

28   [12]  *Hologic*, 2008 U.S. Dist. LEXIS 36693, at 4-5.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Reply Mem. P. & A. Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.**                5                **Case No. 5:07-cv-04330-RMW (HRL)**

1    The '140 Application and Dr. Blanchard's additional opinions eviscerate Verigy's likelihood

2    of success.  The now-public '140 Application supports a finding that Verigy's alleged trade secrets

3    are readily ascertainable, a defense to a claim for trade secret misappropriation.  The Court

4    previously found that "█████████████████████████████████████████████" PI Order, at

5    p. 3:14.  Therefore, anything regarding ████████████ that concerned the enablement or best mode of

6    the inventions described in the '140 Application became publicly available as of October 25, 2007.

7    The Court previously found, however, that '████████████████████████████████████

8    ████████████████████████████████████████████████████████████████

9    ████████████████████████████." PI Order, at p. 3:14-16.  But this basic design is shown

10   the '140 Application, *see e.g.*, the abstract, Figs. 2, 6, and 8, and ¶ 0004:

11   [0004] In an embodiment, there is provided apparatus for processing signals between a
     tester and a plurality of devices under test, the apparatus comprising at least one multichip

12   module, each of the at least one multichip module comprising a plurality of micro-
     electromechanical switches between a first set of connectors to the tester and a second set

13   of connectors to the plurality of devices under test; and at least one driver to selectively
     operate each of the plurality of micro-electromechanical switches.

14
     '140 Application at p. 6.  The grouping together of individual switches, in multiple configurations,

15   into "separate MEMs dice" is specifically discussed in ¶ 0004.  *Id.* at p. 7.  These "separate MEMs

16   dice" are essentially ████████████ writ large, a collection of individual switches grouped together

17   into one MEMs die, rather than a single integrated circuit.  But the '140 Application teaches how

18   these "separate MEMs dice" are to be configured and interconnected with the remaining portions

19   of the multichip module, and the '140 Application also teaches on-board control logic; *see, e.g.* ¶¶

20   0016 and 0024.  *Id.* at pp. 6-7.  Therefore, the '140 Application teaches how to combine all of

21   these elements into one device.[13]

22   The '140 Application is also important for what it fails to disclose.  If there were customer

23

24   ─────────────────────

25   [13]   Furthermore, the '140 Application also teaches (a)  using the invention to test NAND flash
     memory in close proximity to the devices under test, especially to increase the maximum data

26   rate for testing NAND flash memory and to facilitate one-touchdown testing (*see, e.g.*, ¶¶
     0032 and 0037), (b) using the invention in connection with then-Agilent and now-Verigy

27   testers (*see, e.g.*, ¶ 0040), (c) implementing the invention with different types and numbers of
     switches (*see, e.g.*, ¶¶ 0033 and 0034), (d) reducing the size of the multichip module so that it

28   can work with a probe card (*see, e.g.*, ¶¶ 0023 and 0030), and (d) operating at higher data
     rates (*compare, e.g.*, ¶ 0001 with ¶ 0017) and higher temperatures (*compare, e.g.*, ¶ 0002 with
     ¶ 0018) than what was known in the prior art.  '140 Application at pp. 6-8.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A. Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.          6          Case No. 5:07-cv-04330-RMW (HRL)

1   requirements that one of reasonable skill in the art would have required to specify the types of

2   MEMs or "separate MEMs dice" as of April 24, 2006 (if not later), then they must have been

3   disclosed in the '140 Application, and Verigy is estopped from asserting otherwise.[14]

4        Accordingly, the disclosures in the '140 Application and the additional publicly available

5   information referenced in Exs. B-U to the Dr. Blanchard Decl. illuminate his opinions in ¶¶ 8(a)-

6   (d), including that (a) "probe card circuit multiplexing technology" is not secret, (b) Exs. A-F of

7   the August 16, 2007 Pochowski Decl. are based on non-secret information, (c) "techniques for

8   using a serial bus with 'daisy-chain' support for providing control signals…" are not secret, and

9   (d)    the functionalities identified by the Court in the Preliminary Injunction at 11:20-21 and
        12:2-3…are (A) publicly available or well known in the semiconductor test industry and
10       (B) readily ascertainable; [and] the functionality identified by the Court in the Preliminary
        Injunction at 11:21-12:2, …is the type of information that I would expect would be
11       specified by the requirements of a particular customer of the semiconductor test industry;

12  Dr. Blanchard Decl. ¶ 8.

13        Reading the '140 Application with other publicly available information discussed in the PI

14  Order provides further support for Dr. Blanchard's conclusions.  The Court found that:

15

16

17

18  PI Order, at p. 13.  In contrast, the '140 Application teaches on-board control logic.  S*ee, e.g.*, ¶¶

19  0016 and 0024, '140 Application at pp. 6-7.  Therefore, the '140 Application, Dr. Blanchard's

20  additional opinions, and the additional exhibits to his declaration, undermine both the first and the

21  second "pillars" of Verigy's trade secret allegations.

22              **b.    The Modifications in the PI Order Are Suitable
                    In Light of Changes in Irreparable Harm.**

23              **i.    The Question of Irreparable Harm Must Be Re-Assessed.**

24        The PI Order analyzed irreparable harm in these terms:

25          While it is true that Verigy is not currently using the trade secrets

26  _____

27  [14]  Thus while the Court found that there appeared to be "a framework for integrating the
        requirements of STS customers [that] was created using the Verigy customer requirements," PI
28       Order at p. 15, the '140 Application provides at least a functionally equivalent, if not a
        functionally superior framework, for integrating such customer requirements.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔆᴹ

**Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.**        7        **Case No. 5:07-cv-04330-RMW (HRL)**

1    ██████████████████, Verigy also chose not to enter the market with a product based

2    ████████████████████████████████. Verigy suffers an injury to the extent that STS received a
     head start on developing a technology that is being sold

3    █████████████████████████████████████████████████████████████████████████

4    █████████ Further, because the court concludes that ████████████████████ are
     based upon the ████████████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████████████████████████

6    ████████████████████. Nevertheless, it appears that Mayder given his skill and experience could
     have eventually developed the Flash Enhancer without the benefit of any Verigy trade secret

7    by referring to publicly-available references regarding fan-out technology and collecting and
     integrating STS customer requirements without the benefit of exposure to the Verigy
     customer requirements.

8    PI Order at p. 24:11-24. Verigy relies upon the PI Order to claim that it continues to suffer

9    irreparable harm (Opp. at 10), offering no independent evidence of irreparable harm.

10        After *Hologic,* this analysis must be re-assessed.[15]  Neither Verigy's choosing not to enter a

11   particular market nor its possibly suffering damages constitutes irreparable harm.[16]  Verigy's

12   submitting the '140 Application to the USPTO makes manifest its choice to allow detailed

13   information concerning the ████████████ to become public, undermining any finding of

14   irreparable harm in the wake of *eBay* and *Hologic*:

15        Praxair has not met its burden under *eBay* to put forward sufficient proof vis-a-vis the

16        broad scope of the relief requested. Praxair generally argues that VAC(R)'s presence in the
          market will cause Praxair to "likely lose additional market share, profits, and goodwill,"

17        without further detail. Praxair has not provided or described any specific sales or market
          data to assist the court, nor has it identified precisely what market share, revenues, and

18        customers Praxair has lost to ATMI. ….. Praxair's desire to become a monopoly supplier
          in its product's market is hardly unique, and is not conclusive evidence of any factor.

19   *Praxair*, 479 F. Supp. 2d at 444 (footnote omitted).  Further, any claim by Verigy that it will suffer

20   irreparable harm is rebutted by the short time remaining until trial.

21                      ii.    **The Extent of any Head-Start Must Be Re-Assessed.**

22        Any alleged head-start advantage must be re-assessed in light of the '140 Application in

23

24   [15]  *See*, *e.g.*, *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d at 570 (E.D. Va. 2007), citing
         *Praxair, Inc. v. ATMI, Inc*., 479 F. Supp. 2d 440, 443-44 (D. Del. 2007).

25   [16]  A "'lack of commercial activity in practicing the [relevant] patents' and instead …a
         willingness

26       to license its patents'" counsel against a finding of irreparable harm, *MercExchange,*  500 F.
         Supp. 2d at 570 (citation omitted).  A conclusion that monetary damages would provide

27       adequate compensation for any injury may be supported by facts that "MercExchange failed to
         develop its patent or develop its patent through a licensing program. *Id*. at 582.  If a plaintiff

28       has "virtually no presence" in a particular industry, that tends to indicate that  money damages
         would be adequate to compensate a plaintiff, *id.* at 583.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔆᴹ

Reply Mem. P. & A. Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.                8                Case No. 5:07-cv-04330-RMW (HRL)

1   two different ways.  First, as the Court determined previously, and as set forth in the Dr. Blanchard

2   Decl., one can look at the amount of time it would have taken Mr. Mayder to independently

3   research, develop, etc. the specification for the STS product.[17]  Whether based on the Court's

4   finding in the PI Order or Dr. Blanchard's new opinions, the maximum amount of any such head-

5   start advantage is six months and likely less than that, particularly for Mr. Mayder.

6           Second, in light of the October 25, 2007 publication of the '140 Application, one can also

7   calculate any head-start advantage from that time forward.  If there were any new trade secrets not

8   fully disclosed in the '140 Application as it would have been read by one of ordinary skill in the

9   art that came into existence after April 24, 2006 (which Defendants dispute), they must have been

10  created during a period of no more than five weeks, between April 25, 2006 and June 1, 2006.

11  Thus, any alleged head-start must have ended no later than five weeks after October 25, 2007:

12  approximately November 29, 2007.  Even if Verigy could show that it was irreparably harmed,

13  any alleged head-start advantage had disappeared by January 24, 2008.  Even if one were to add

14  four months based upon the Order Grant. Pl.'s Mot. to Find Defs. In Contempt of Court for

15  Violating the TRO, May 22, 2008 ("Order re Contempt"), those periods ended on May 24, 2008

16  and March 29, 2008, respectively.  Unless modified, the PI Order, which has already provided

17  Verigy with at least three months of unjustified relief, will extend to more than six months of such

18  unjustified relief before trial.

19                        c.       **The Modifications in the PI Order Are Suitable
                                   In Light of Changes in the Balance of Hardships.**

20          Another three months of a prohibitory injunction is a long time in the life of a young

21  company.  Having chosen a patent strategy by prosecuting the '140 Application, and knowing that it

22  became public on October 25, 2007, Verigy nonetheless continued to seek a preliminary injunction

23

24  [17]   The Court previously found, "in light of the fact that there is publicly-available information
        regarding implementation of fan-out technology and the fact that STS's products are directed
        toward different customer requirements…a five-month injunction to be appropriate."  PI

25      Order, at p. 27:6-9.  But that finding was made before the Court had received evidence that the
        '140 Application had been made public.  Based upon assumptions consistent with the PI Order,

26      *viz.*, that all of Verigy's alleged trade secrets met the statutory requirements for trade secrets,
        Dr. Blanchard has expressed the new opinions that one could independently develop a product

27      specification for Flash Enhancer in "a maximum of six person-months, and possibl[y] as few
        as four person-months, beginning on October 1, 2006," and that it would have taken Mr.

28      Mayder less than that amount of time to do so.  Dr. Blanchard Decl., ¶ 9.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ˢᵐ

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.                    9                    Case No. 5:07-cv-04330-RMW (HRL)

1   *without informing the Court about that publication.*  The balance of hardships must be reassessed in

2   light of that publication and other new circumstances.  While Defendants dispute that they have

3   harmed Verigy, through the combination of the TRO and the PI Order Verigy has already had far

4   more than the full measure of any injunctive relief, if any, that would be appropriate following trial.

5   Verigy argues that (a) Defendants "offer no support for their assertion" and (b) "Verigy could very

6   well obtain permanent injunctive relief…"  Opp. at 12-13.  But the Court's own finding that a five-

7   month injunction was appropriate and the opinions in the Dr. Blanchard Decl. rebuts Verigy's

8   arguments.[18]  The balance of hardships now tips sharply in favor of Defendants.

9   

    **d.    The Modifications in the PI Order Are Suitable
    In Light of Changes in the Public Interest.**

10  

11         Verigy has not presented evidence that it now sells a product comparable to the STS

12  product, that '140 Application has yielded an actual patent, or that the public would be harmed by

13  sales of the STS product.[19]  This is not a case in which a small company that discovered and

14  properly protected an actual trade secret is trying to prevent a larger competitor from exploiting

15  that trade secret; instead, Verigy, with a market capitalization exceeding $1 billion, seeks to

16  prevent a company, orders of magnitude smaller, from utilizing information that, at least

17  individually, the Court has found not to be secret.[20]  PI Order at p. 14:7-8.  By allowing the '140

---

18  [18]   Verigy also argues that relief should be denied because (a) Mr. Mayder previously stated that he had had a discussion with Dr. Blanchard regarding the TRO, (b) the TRO was designated "Confidential," Opp. at 5-6, and (c) Defendants' prior counsel failed to challenge highly confidential designations in the TRO.  Mr. Mayder explained the first issue in the moving papers (R. Mayder Decl., ¶19).  Verigy's second argument misses the point, because Defendants' Motion made clear that "Romi Mayder was never served with the full, unredacted version of the TRO <u>with all of the referenced materials</u>..." (Defs.' Mot. at 4), and Verigy presents no evidence that all of those referenced materials were either un-designated or merely designated "confidential" under the Protective Order.  Verigy's third argument also fails, because under the flexible approach of Rule 60(b)(5), the Court may take account of what Defendants' prior counsel did or did not do.  Among other things, as Dr. Blanchard explained, (a) had he seen the TRO earlier, he would have advised Defendants to ask their former attorneys to seek clarification from the Court, and (b) even though the PI Order was entered in February, 2008 and the motion regarding contempt heard later, he was never contacted by Defendants' former counsel after November 2007.  Dr. Blanchard Decl., ¶¶ 6-7.

26  [19]   In the absence of evidence that a product "is causing public harm, there is a public interest in expanding the treatment possibilities for breast and other cancers," in which case that "the public interest factor [may] tip[] in [a defendant's] favor," *Hologic* at *58.

28  [20]   "The strongest arguments in equity exist when such small patent holder utilizes its patent to benefit the public; that is, either seeks to develop the patent on its own or develop the patent through licensing agreements."  *MercExchange,* 500 F. Supp. 2d at 587.

---

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.                    10                    Case No. 5:07-cv-04330-RMW (HRL)

1  Application to become public, Verigy voluntarily accepted the risk that others might practice what

2  that application taught.  Based upon '140 Application's publication nearly 10 months ago, the

3  public should no longer be denied the right to use what it teaches to one skilled in the art.

4      Verigy argues that the PI Order should not be modified, because (a) "Defendants wish to

5  resume marketing that product immediately to everyone, including NOR and NAND customers," and

6  (b) the STS "product just began Phase II of its development to fix several major problems which

7  prevent it from working at all."  Opp. at 4-5.  Apart from the contradiction between these two

8  arguments, Verigy's first argument ignores the fact that the PI Order prohibits, among other things,

9  sales of '█████████████████████████████████████████████████████████

10 ██████████████████████████████████████" for NOR or NAND memory.

11     Verigy's second argument disregards the development process and the market.  The Court

12 has already recognized the importance of customer input to the development process.[21]

13 Defendants should not be prohibited from communicating with customers to meet the needs of the

14 market.  Furthermore, Verigy cannot know whether the STS product can currently be sold or not.

15 In addition, if it cannot be sold, *then there is no need for an injunction to prohibit its sale*; if it can

16 be sold, then the royalty mechanism provides Verigy with adequate security.

17          **3.    The PI Order Should Be Modified Pursuant to Rule 60(b)(5).**

18     Defendants have demonstrated that the "proposed modification is suitably tailored to the changed

19 circumstance."  *Rufo*, 502 U.S. at 383 (fn omitted).  Verigy fails to acknowledge that modification of the

20 PI Order is particularly appropriate under California's trade secret statute, which specifically empowers

21 the Court to "condition future use upon payment of a reasonable royalty for no longer than the period of

22 time the use could have been prohibited."  Cal. Civ. Code §3426.2(b).  Defendants have expressed their

23 willingness to escrow more than a reasonable royalty for longer than a reasonable period of time, and

24 modification of the PI Order is especially warranted.  Therefore, pursuant to Rule 60(b)(5), the PI Order

25 should be modified as requested in Defendants' Motion at 18-19.

26          **C.    The PI Order Should Also be Modified Pursuant to Rule 60(b)(2).**

27

28 [21]  "Weber asserts that it could take ████████████████ to work with another vendor to
     design, develop, fabricate and test a custom ASIC…"  PI Order, at p. 25:9-10.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔆᴹ

**Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.**          11          **Case No. 5:07-cv-04330-RMW (HRL)**

1    Subpart (2) of Rule 60(b) provides additional grounds upon which the PI Order should be

2 modified.  Many of the opinions expressed in the Dr. Blanchard Decl., especially those in ¶ 8(c)

3 regarding "the functionalities identified by the Court in the Preliminary Injunction" and in ¶ 9

4 based upon the assumption that "the Amended Section 2019.210 Disclosure were to qualify as

5 trade secrets," could not have been formed prior to the PI Order, because (a) they are based on the

6 PI Order itself and (b) Verigy did not amend its trade secret list until April 18, 2008.  Dr.

7 Blanchard Decl., ¶¶ 8(c), 9, and 4.  Therefore, the Court may consider this new evidence pursuant

8 to Rule 60(b)(2), and the PI Order should be modified pursuant to that rule as well.

9    **III.    _DASTAR_ PRECLUDES VERIGY'S LANHAM ACT CLAIM.**

10    Verigy brings its Ninth Claim for Relief under section 43(a) of Lanham Act, 15

11 U.S.C.1125(a).  The authority cited by Verigy itself, however, demonstrates that it has not raised a

12 material dispute as to this claim.  Failing to assert a valid Lanham Act claim in the Complaint,[22]

13 plaintiff seeks to rescue its Ninth Claim by (1) recasting it as a "false advertisement" claim[23] and (2)

14 reconstruing §43(a) of the Lanham Act to extend to what is variously termed "Verigy's trade secret

15 project designs," "Verigy technology" and "a specification" derived from a proprietary RFQ (the

16 "Verigy RFQ"), which plaintiff alleges was misappropriated by Defendants and used to "solicit sales

17 from potential customers."  Pl.'s Opp. at 21:3-5; 22:4-5, 23:11-14.  However, no such construal is

18 possible, and defendants should be granted summary adjudication as to the Ninth Claim.

---

19    [22] Verigy's Opposition fails to refute defendants' argument that plaintiff cannot meet the standard

20    for "reverse passing off" under the Lanham Act of proving "bodily appropriation" of the
      Verigy Project as pled in the Complaint, the "Verigy Project" not being a product capable of

21    "bodily appropriation."   It is undisputed that Lanham Act protection does not extend to
      research and data such as that comprising the "Verigy Project" that was pled in the Complaint.

22    See, e.g., _Radolf v. Univ. of Conn._, 364 F. Supp. 2d 204, 222 (D. Conn. 2005).

23    [23] Verigy attempts to resist summary adjudication on the basis that Verigy's reputed claim for
      "false advertising" under §43(a)(1)(B) of the Lanham Act was not addressed in Defendants'

24    moving papers.  This argument is hogwash.  The very basis of its so-called false advertising
      claim is admitted to be a single statement, namely the allegation that Defendants advertised

25    that they "have invented a new paradigm for substantially increasing parallelism of ATE test
      cells."  Opp. at 19.  Yet this is the exact same argument repackaged, an argument that it was

26    false for Defendants to claim to be the _origin_ of such "new paradigm."   Second, this statement
      is at best a statement of opinion, not one of fact, and as "mere puffery" cannot not qualify as

27    "false advertising." _Pinnacle Sys., Inc. v. XOS Techs., Inc._, 2003 U.S. Dist. LEXIS 27729, at
      *15-*16 (N.D. Cal. May 19, 2003); _Newcal Industries, Inc. v. Ikon Office Solution_, 513 F.3d

28    1038, 1053 (9th Cir. 2008); _Coastal Abstract Services, Inc. v. First Am. Title Ins. Co._, 173 F.3d
      725, 731 (9th Cir. 1999).

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.          12          Case No. 5:07-cv-04330-RMW (HRL)

1    Simply put, Verigy submits no evidence of bodily appropriation by Defendants of an actual

2    Verigy product, as was its burden.  Instead, Verigy argues that Defendants misappropriated and

3    marketed a "specification" embodied in the Verigy RFQ, incorrectly analogized to an architect's

4    plans passed off by another as his own, and to that of a manufacturer stealing industrial patterns

5    and using them to manufacture identical products sold as his own, and citing to case authority

6    which Verigy claims uphold "reverse passing off" claims in such instances.  However, plaintiff's

7    analogies are inapt and incorrectly applied, its cited authority, moreover, is superceded in any

8    event by the higher authority of the Supreme Court's ruling in *Dastar v. Twentieth Century Fox*,

9    539 U.S. 23, 123 S. Ct. 2041 (June 2, 2003), which expressly precludes "reverse passing off"

10    claim under the Lanham Act such as that described by Verigy.

11    Factually, Verigy errs in analogizing the Verigy RFQ to an architectural plan or a

12    manufacturing pattern.  An RFQ, or "request for quotation," is not in any sense of the words a "plan"

13    or "pattern" for a product, much less is it a "product" in and of itself.  Rather, an RFQ is a compilation

14    of desirable attributes, a "specification" which a company, such as STS, submits to a manufacturer

15    requesting a price quotation for the design of a product (in this case, an application-specific integrated

16    circuit, or ASIC) with those specified attributes.  Far from presenting material facts of a product which

17    was copied by defendants, the only product in question, which plaintiff admits, is the ASIC designed

18    by Honeywell for STS.  Thus, there being no Verigy product based upon the Verigy RFQ, this case

19    relied upon by plaintiff actually supports both the ruling in *Dastar* and Defendants' position.[24]

20    Likewise, in *GNI Waterman LLC v. A/M Valve Company LLC*, No. CV F 07-0863 LJO TAG,

21    2007 U.S. Dist. LEXIS 68715 (E.D. Cal. Sept. 7, 2007),[25] the Court found that a Lanham Act claim for

22    "reverse passing off" was properly alleged where a manufacturer "misappropriated [its competitor's]

23    *product* patterns and designs to create *products* interchangeable with [its competitor's] products."  *GNI*

24

25    [24]  To the extent that plaintiff's other cited authority, *Johnson v. Jone*s, 149 F.3d 494, 503 conflicts
       with the Supreme Court's ruling in *Dastar*, the Supreme Court case controls as a higher and
       later authority.  Indeed, at least one Court has found the *Johnson v. Jones* ruling to be obsolete
26     in the wake of *Dastar*.  See, e.g. *Francois v. Jack Ruch Quality Homes*, 2006 U.S. Dist. LEXIS
       57062, 38-39 (C.D. Ill. Aug. 14, 2006) at *38-39.
27

28    [25]  A case which was procedurally decided on a motion to dismiss where all facts were assumed to
       be true in plaintiff's favor.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.                13                Case No. 5:07-cv-04330-RMW (HRL)

1    *Waterman*, 2007 U.S. Dist. LEXIS at *13 (emphasis added).  In *GNI Waterman*, the two products, the

2    original and the counterfeit manufactured using misappropriated patterns, were "identical products." *Id*.

3    at *12.  Here, as Defendants have pointed out, and Verigy has not and cannot refute, there is simply no

4    Verigy product of which STS's ASIC can be a copy, counterfeit or otherwise, because Verigy had not,

5    and has not, even requested that a product be designed based on the Verigy RFQ.

6         It is indisputable that, were the Verigy RFQ not "technology" which Verigy allegedly

7    protected as a "trade secret," such an innovation as the specification would fall squarely under the

8    purview of patent law and is thus explicitly rejected as a valid claim under the Lanham Act.[26]  As

9    *Dastar* explains, the "origin of work" provision of the Lanham Act protects only "the producer of the

10   tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication

11   embodied in those goods," because copyright and patent laws sufficiently cover inventions,

12   discoveries, ideas and concepts. *Id***.** at 37**.**  *Dastar* explicitly rejects such a reading of the Lanham Act:

13           In sum, reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's
             common-law foundations (which were *not* designed to protect originality or creativity), and in light of
14           the copyright and patent laws (which *were*), *we conclude that the phrase refers to the producer of the
             tangible goods that are offered for sale, and not to the author of any idea, concept or communication*
15           *embodied in those goods… To hold otherwise would be akin to finding the § 43(a) created a species
             of perpetual patent and copyright, which Congress may not do.* (Citation omitted).
16           …
             In construing the Lanham Act, we have been careful to caution against misuse or over-extension of
17           trademark and related protections into areas traditionally occupied by patent or copyright. The
             Lanham Act . . . does not exist to reward manufacturers for their innovation in creating a particular
18           device; that is the purpose of the patent law and its period of exclusivity. *Federal trademark law
             has no necessary relation to invention or discovery*, but rather, by preventing competitors from
19           copying a source-identifying mark, reduces the customer's costs of shopping and making
             purchasing decisions, and helps assure a producer that it (and not an imitating competitor) will reap
20           the financial, reputation-related rewards associated with a desirable product.

21   *Dastar*, 539 U.S. at 32-34  [Emphasis added.].  See also, *TrafFix Devices, Inc.* v. *Marketing*

22   *Displays, Inc.*, 532 U.S. 23, 34 (2001).[27]

---

23   [26]  Nor does the Lanham Act provide a claim for the intentional passing off of the Verigy RFQ
         merely because it is allegedly a trade secret and not protected by patent or copyright.
24       "[R]eading § 43(a) of the Lanham Act as creating a cause of action for, in effect, plagiarism--
         the use of otherwise unprotected works and inventions without attribution--would be hard to
25       reconcile with our previous decisions." *Dastar* at 36.

26   [27] The concern, the Supreme Court noted, was "allowing a cause of action under section 43(a) for
         that representation [that *Dastar* originated the creative work conveyed in the videos] would create a
27       species of mutant copyright law that limits the public's 'federal right to copy and to use' expired
         copyrights (citation omitted)." *Id.*  at 33.  Such would also be the consequence of plaintiff's
28       reading, in creating a species of "mutant" patent law, which the Supreme Court expressly rejected.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ᔚᔚ

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.          14          Case No. 5:07-cv-04330-RMW (HRL)

1    Here, even if plaintiff's analogy of the Verigy RFQ as a "tangible good" were correct,

2   which it is not, plaintiff's reading of the Lanham Act would result in a "mutant patent law" which

3   *Dastar* expressly precludes.  Verigy is neither the "producer of [a] tangible product" at issue, nor

4   the "trademark owner who commissioned or assumed responsibility for…production of [a]

5   physical product."  *Id.*  Verigy can only make a case, arguably for being the "person or entity that

6   originated the ideas…that the 'goods' embody or contain," which are clearly ruled out of Lanham

7   protections as being more clearly subject to patent or copyright law.  *Dastar*, 539 U.S. at 31-32.

8   Thus it is clear that the *Dastar* ruling applies to Verigy's supposed Lanham Act claim, and

9   Defendants' motion for summary adjudication on such claim is proper.

10  **IV.   DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION
          THAT INFORMATION CONTAINED IN PUBLISHED PATENTS OR
11        PATENT APPLICATIONS CANNOT CONSTITUTE TRADE SECRETS.**

12    Defendants seek summary adjudication that (a) any information published by Verigy or

13  others in patents or patent applications cannot be considered trade secrets, (b) each of the patents

14  or patent applications submitted by declaration on Defendants' Motion are in the public domain,

15  and (c) to the extent they contain any of Verigy's alleged trade secrets, such information cannot

16  qualify as trade secrets.  Defs.' Mot. at 10-11. Verigy contends that (a) many of the documents in

17  question were published after June 2006 and (b) Defendants seek "an advisory opinion in a legal

18  and factual vacuum."  Opp. at 23-24.  Summary adjudication is an appropriate tool for reducing

19  the scope of the issues in dispute, and, as discussed above, these issues are vital to the prompt and

20  efficient resolution of this case.  The Court should adjudicate that each document in question (a)

21  became public as of its publication date, and (b) any alleged trade secrets contained in such

22  documents lost any alleged trade secret status as of the date of such publication.

23                                  **CONCLUSION**

24    For the reasons set forth above, Defendants' Motion should be granted in its entirety.

25                                          Respectfully submitted,
                                           RUSSO & HALE LLP
26
    Dated:  August 22, 2008          By:        /s/ Tim C. Hale
27                                              Tim C. Hale, SBN 114905
                                                Attorneys for Defendants
28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Reply Mem. P. & A.  Defs.' Mot.
Summ. Adj. & Mod. Prelim. Inj.          15          Case No. 5:07-cv-04330-RMW (HRL)