1  JACK RUSSO (State Bar No. 96068)
   TIM C. HALE (State Bar No. 114905)
2  JOHN KELLEY (State Bar No. 100714)
   RUSSO & HALE LLP
3  401 Florence Street
   Palo Alto, CA 94301
4  Telephone: (650) 327-9800
   Facsimile: (650) 327-3737
5  Email: jrusso@computerlaw.com
          thale@computerlaw.com
6         jkelley@computerlaw.com

7  Attorneys for Defendants and Counterclaimants
   ROMI MAYDER, SILICON TEST SYSTEMS, INC.,
8  SILICON TEST SOLUTIONS LLC, and WESLEY
   MAYDER
9
                    IN THE UNITED STATES DISTRICT COURT
10
                 IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                              SAN JOSE DIVISION
12

13 | VERIGY US, INC., a Delaware Corporation, | Case No. 5:07-cv-04330-RMW (HRL)

14 | Plaintiff, | **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC; MEMORANDUM OF POINTS AND AUTHORITIES**

15 | v. |

16 | ROMI MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive, | **Date: October 7, 2008**
   | | **Time: 10:00 a.m.**
   | | **Ctrm: 2**
   | | **Before the Hon. Howard R. Lloyd**
   | |
   | | Complaint Filed: August 22, 2007
   | | Trial Date: December 8, 2008 (jury trial)
   | | (Defendants have elected to reserve their jury trial rights under F.R.C.P., Rule 38)

20 | Defendants. |

22 | AND RELATED COUNTERCLAIMS. |

TO PLAINTIFF VERIGY US, INC. AND ITS ATTORNEYS OF RECORD:

Notice is hereby given that Silicon Test Systems, Inc., Romi Mayder, Silicon Test Solutions LLC, and Wesley Mayder ("Defendants"), Defendants in the above named case, pursuant to FedRCivP 45(c) hereby move to quash a subpoena (the "Subpoena") served upon their former litigation counsel, Mount & Stoelker, PC by Plaintiff Verigy US, Inc. ("Verigy") on or about August 5, 2008. Said Subpoena violates the attorney-client and work product privileges under FedRCivP 26(b)(3) by seeking any and all communications between said former counsel and Defendants, almost entirely without qualification or limitation. For these reasons and those set forth below, the Subpoena issued by Verigy should be quashed. This motion is based upon the accompanying Memorandum of Points and Authorities and the Declaration of Tim C. Hale ("Hale Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Verigy's subpoena duces tecum to Mount & Stoelker PC (the "Subpoena"), former litigation counsel to the Defendants in this litigation, explicitly and repeatedly requests production of documents relating to communications between Mount & Stoelker, PC and Defendants, communications that are protected under FedRCivP 26(b)(3) by the attorney-client privilege and the work product doctrine. Verigy seeks to invade the attorney-client relationship between Defendants and their former counsel based upon limited statements contained in one or more declarations filed by Defendants in this action, statements that in no way constitute waiver of such protections, and certainly not to the extent allowing for production of the documents sought by Verigy. The Subpoena should be quashed.

### ARGUMENT

**I.    THE DOCUMENTS SOUGHT BY THE SUBPOENA ARE NOT DISCOVERABLE**

    **A.    The Subpoena Seeks Documents Protected by the Attorney-Client Privilege.**

Nearly every document request in the Subpoena purports to require production of documents containing communications between the attorneys at Mount & Stoelker and their former clients, the Defendants. The Subpoena seeks to invade the attorney-client privilege, a

1  sacrosanct doctrine lying at the heart of this country's judicial system, a doctrine "necessary to
2  achieve…full and frank disclosure by the client to his or her attorney." *Clarke v. American*
3  *Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). The privilege is "no mere peripheral
4  evidentiary rule, but is held vital to the effective administration of justice." *Roberts v. City of*
5  *Palmdale*, 5 Cal.4th 363, 380 (1993). The attorney-client privilege applies where (a) legal advice is
6  sought (b) from a legal advisor acting as such (c) to communications relating to such advice (d)
7  that are made in confidence (e) by the client. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071
8  n.2 (9th Cir. 1992).

9      The communications sought by Verigy's Subpoena to Mount & Stoelker fall squarely
10 within this privilege. As an example, document request number 10 in the Subpoena reads "All
11 COMMUNICATIONS between YOU [Mount and Stoelker] and DEFENDANTS relating to the
12 Preliminary Injunction motion and briefing, as referenced in the MAYDER DECLARATION."
13 Hale Decl., Exh. 1 thereto. There is no dispute whatsoever that this request seeks communications
14 between the clients, the "DEFENDANTS," and their legal advisors at the time, "YOU." Further,
15 there is no dispute that the communications sought relate to confidential legal advice in this matter,
16 since they include any and all communications relating to Verigy's preliminary injunction motion,
17 as well as to Defendants' own briefing on such motion.[1]

18     Verigy's Subpoena seeks unparticularized production of nearly all attorney-client
19 communications in this action based upon so-called waiver of the attorney-client privilege in
20 Defendants' motion for modification of the preliminary injunction ruling by the Court in this
21 action. Hale Decl., Exh. 1 (attached memorandum and R. Mayder Declaration). Such waiver
22 argument, however, must be denied for several reasons. First, the only relevance of such
23 communications is to the motion itself—whether the Court should enter a revised order that allows
24 Defendants to market their Flash Enhancer product to customers who are highly desirous of taking
25 advantage of such invention. Yet Defendants' Subpoena to Mount & Stoelker was not served in
26

---

27 [1]  Indeed, Verigy has defined "RELATING TO," as used in this and every other request for
28     documents in the Subpoena, so broadly as to include any communication even remotely
    associated with the Preliminary Injunction.

1  such a manner that would allow Verigy to use any production resulting therefrom in connection

2  with said motion; that is, Verigy did not seek production on shortened time so as to include any

3  materials in its opposition to the motion.  Moreover, perhaps the most cogent evidence of the lack

4  of "vitalness" of the privileged communications that Verigy now seeks to discover is Verigy's

5  failure to even question Mr. Mayder regarding any of the statements in his Declaration when given

6  the opportunity to do so before the hearing on Defendants' motion.  That is, Mr. Mayder was

7  deposed (for a *fourth* time!) by Verigy on August 21, 2008, for over six hours, and yet Verigy did

8  not ask a single question regarding the Declaration he submitted in support of Defendants' motion

9  to modify the preliminary injunction.  Hale Decl. at ¶2.

10      More importantly, the Subpoena is in no way particularized to documents or

11  communications that are "vital" to Verigy's position.  *United States v. Amiani*, 169 F.3d 1189,

12  1195 (9th Cir. 1999).  Courts addressing questions of waiver go to great lengths to ensure that any

13  ruling of waiver is "no broader than needed to ensure the fairness of the proceedings before

14  it….Courts, including ours, that have imposed waivers under the fairness principle have therefore

15  closely tailored the scope of the waiver to the needs of the opposing party in litigating the claims in

16  question."  *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003).  Verigy's Subpoena, however,

17  goes far beyond seeking otherwise privileged communications relating to specific statements or

18  positions in this action, and instead attempts to discover all communications as to a subject matter

19  based on a closely limited statement.  For example, in the R. Mayder declaration that Verigy relies

20  upon to support its Subpoena, Mr. Mayder made the following statement:

> There is an ambiguity in my declaration that I submitted for the contempt motion.  The declaration states that Dr. Blanchard told me that my activities under the TRO were proper.  However, it was actually Dan Mount of Mount & Stoelker who told me my activities under the TRO were proper based on what Dr. Blanchard had said.

25  R. Mayder Decl., attached to the Subpoena, at ¶19.  Instead of seeking documents related only to

26  this limited statement, however, the Subpoena seeks "[a]ll COMMUNICATIONS between YOU

27  [Mount & Stoelker] and DEFENDANTS relating to Dr. Blanchard…."  Hale Decl., Exh. 1 at

28  request no. 7.  This form of overbreadth permeates the Subpoena and violates the requirement of

narrowly tailoring any finding of waiver of the privilege. Because the Subpoena and the document requests therein, are so broadly stated, the Subpoena should be quashed.[2]

### B. The Subpoena Seeks Documents Protected by the Work Product Doctrine.

Each and every document request in the Subpoena purports to require production of all documents relating to or supporting legal advice and strategy, including documents protected by the work product doctrine. The courts have held that documents prepared by counsel to one of the parties in connection with litigation are not discoverable, unless opposing counsel can show unusual hardship and need. *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 91 L. Ed. 451 (1947). *See also*, *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir. 1973); Rule 26(b)(3), F.R.Civ.P. "The work product privilege rests on the belief that…promotion of adversary preparation ultimately furthers the truth-finding process." *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980). Even where the attorney client privilege may be deemed inapplicable, the work product doctrine will serve to protect an attorney's efforts at representing his client. *See, e.g. In re McKesson HBOC, Inc. Securities Litigation*, 2005 U.S. Dist. LEXIS 7098, at *28-*29 (N.D. Cal. Mar. 31, 2005). That is, the Court must analyze the two forms of protection separately, since they are governed by separate standards, including standards as to waiver. *Id.* at *29.

Here, the Subpoena seeks a myriad of work product documents relating to alleged advice given by the Mount & Stoelker firm to Defendants. For example, rather than seeking only communications between counsel and their clients regarding a press release that was issued in connection with this action, the Subpoena seeks "[a]ll DOCUMENTS RELATING TO the press release issued by DEFENDANTS referenced in paragraph 14 and Ex. 7 to the MAYDER DECLARATION, including *but not limited to*, COMMUNICATIONS between YOU and DEFENDANTS." Hale Decl., Exh. 1 (emphasis added).

---

[2] Despite being notified that Defendants intended to move to quash the Subpoena, at no time did Verigy offer to limit the scope thereof. Hale Decl. at ¶3. In that the communications sought are relevant at most to the motion to be heard by the Court on September 5, 2008, and given Verigy's lack of diligence in seeking to discover the same, the Court should quash the Subpoena in its entirety rather than permitting Verigy to attempt to limit it after the fact.

But Verigy has not made, and cannot make, any showing of waiver of the work product of Defendants' former counsel related to the issues addressed in the Subpoena. Said counsel properly objected to the Subpoena prior to the return date. Hale Decl., Exh. 2. The courts have also held that even in those few instances in which work product is discoverable, the court must protect against disclosure of the attorney's private "mental impressions, conclusions, opinions or legal theories." Fed.R.Civ.P. 26(b)(3). The Subpoena, however, seeks "all DOCUMENTS" relating to a host of topics at issue in this litigation, which would include internal memoranda, strategy documents, and every other form of protected communication or work product. Such documents, to the extent they exist, would have been created by Mount & Stoelker in their capacity as attorneys for Defendants, in the course of rendering legal services and advice to Defendants, and would naturally contain such mental impressions, conclusions, opinions, or legal theories of the Mount & Stoelker attorneys. Because the Subpoena is so overly broad, it seeks to sweep in all work product of Defendants' former counsel, and for this additional reason it should be quashed in its entirety.

### CONCLUSION

For the reasons stated above, the Subpoena served by Verigy on Mount & Stoelker, PC on August 5, 2008 should be quashed.

Respectfully Submitted,

RUSSO & HALE, LLP

Dated: August 28, 2008            By:    /s/ Tim C. Hale
                                         Tim C. Hale

Attorneys for Defendants and Counterclaimants ROMI MAYDER, SILICON TEST SYSTEMS, INC., SILICON TEST SOLUTIONS LLC, and WESLEY MAYDER

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠
**Motion to Quash Subpoena**                5                **Case No. 5:07-cv-04330-RMW (HRL)**