1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  MICHAEL W. STEBBINS, Bar No. 138326
   mstebbins@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
6  Facsimile:   (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.
8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12

| | |
|---|---|
| 13  VERIGY US, INC, a Delaware Corporation, | Case No. C07 04330 RMW (HRL) |
| 14                   Plaintiff, | **VERIGY'S NOTICE OF MOTION AND MOTION FOR PERMISSION TO** |
| 15       vs. | **DISCLOSE 'HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY** |
| 16  ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON | **DOCUMENTS TO VERIGY'S EXPERTS UNDER STIPULATED PROTECTIVE** |
| 17  TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a | **ORDER [Stipulated Protective Order ¶7.4(c)]** |
| 18  California Limited Liability Corporation, inclusive, | |
| 19 | Date:   October 7, 2008<br>Time:   10 a.m. |
| 20                   Defendants. | Ctrm.:   2 -- 5th Floor<br>Judge:   Hon. Howard R. Lloyd |
| 21 | |
| 22 | Complaint Filed:   August 22, 2007<br>Trial Date:             None Set |
| 23  AND RELATED CROSS-ACTIONS | |

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on Tuesday, October 7, 2008, at 10 a.m., or as soon thereafter as the matter may be heard, before the Hon. Howard R. Lloyd, United States District Judge, Courtroom 2, Fifth Floor, of the United States District Court for the Northern District of California, San Jose Division, 280 South First Street, San Jose, California, plaintiff Verigy U.S., Inc. ("Verigy"), shall and hereby does move the Court for permission for Verigy's experts, Garry Gillette ("Gillette") and Burnell G. West ("West"), to access documents designated "Highly Confidential-Attorney's Eyes Only" pursuant to the Stipulated Protective Order (Docket No. 28) in the above-captioned action.

The motion is made pursuant to Paragraph 7.4(c) of the Stipulated Protective Order, which specifically authorizes such a motion.

The motion is based upon this notice of motion and motion, the supporting memorandum of points and authorities, the declaration of Melinda M. Morton, the complete files and records in this action, and such additional evidence and argument as may hereinafter be presented.

**STATEMENT OF ISSUES**

(N.D. Cal. Civil L.R. 7.4(a)(3))

1. Should Garry Gillette have permission to access documents designated "Highly Confidential-Attorney's Eyes Only" pursuant to the Stipulated Protective Order (Docket No. 28).

2. Should Burnell West have permission to access documents designated "Highly Confidential-Attorney's Eyes Only" pursuant to the Stipulated Protective Order.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND BACKGROUND**

This is a trade secret misappropriation matter brought by Verigy against its former employee Romi Mayder and the competing companies he formed, STS LLC and STS, Inc., as well as his brother and business associate, Wesley Mayder (collectively, "Defendants"). The trade secrets Defendants misappropriated from Verigy pertain to, among other things, its Automated Test Equipment ("ATE") which it sells to businesses within the semiconductor industry. Verigy has

- 1 -
VERIGY'S NOTICE OF MOTION AND MOTION FOR PERMISSION TO DISCLOSE 'HIGHLY
CONFIDENTIAL – ATTORNEY'S EYES ONLY' DOCUMENTS TO VERIGY'S EXPERTS UNDER
STIPULATED PROTECTIVE ORDER                                    Case No. C07 04330 RMW (HRL)

retained Gillette and West ("Verigy's Proposed Experts") to consult and possibly testify on its behalf regarding the technical subject matter of the trade secrets at issue in this case.[1] Both West and Gillette are retired, but each previously worked at Credence Systems Corporation ("Credence"). Defendants have objected to showing these experts Defendants Highly-Confidential documents on the grounds that the experts worked for Credence, a so-called competitor of Verigy. Defendants' objections should be overruled because the only harm, if any, in showing such documents to past employees of Verigy's competitor is to Verigy, not Defendants.

## II. FACTUAL BACKGROUND

Verigy designs, develops, manufactures and sells advanced ATE systems and solutions for the semiconductor industry. Such ATE systems test manufactured semiconductors to confirm production consistent with design and specifications. Defendants have stated that "Verigy is in the business of selling testers." (*Defendants' Brief in Response to OSC re Preliminary Injunction* ("Defendants' P.I. Opp'n.") Docket No. 49, 6:7-9).

Credence sells ATE solutions to the semiconductor industry—in other words, Credence is also "in the business of selling testers." (*Id.*; *see also* Morton Decl., Ex. C at http://phx.corporate-ir.net/phoenix.zhtml?c=68634&p=irol-newsArticle&ID=861167&highlight= visited August 28, 2008.) However, Credence stopped selling ATE solutions for memory chips in 2006, instead choosing to focus on the digital and mixed-signal business. ("Morton Decl., Ex. C, (Credence Press Release dated May 25, 2006).)

According to Defendants, Silicon Test Solutions' ("STS") products relate to resource sharing for probe cards, specifically for testing NOR and NAND flash memory. (Defendants' P.I. Opp'n at 1:18-21; 6-8). Defendants claim that "The makers of resource-sharing probe cards (or resource-sharing chips to be installed on probe cards) do not directly compete with Verigy" and that "resource-sharing solutions are complementary and "adjacent" to [the] memory chip tester business -

---

[1] Verigy has disclosed both experts, but only one will testify. ((Decl. of Melinda Morton ("Morton Decl.") ¶ 10).

//

//

- 2 -
VERIGY'S NOTICE OF MOTION AND MOTION FOR PERMISSION TO DISCLOSE 'HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY' DOCUMENTS TO VERIGY'S EXPERTS UNDER STIPULATED PROTECTIVE ORDER                                    Case No. C07 04330 RMW (HRL)

not competitive with it." (*Id.* at 6:15-16; 8:19-20; *see also* Mayder Decl. in Supp. of Defendants' Resp. to O.S.C. re: Prelim. Inj., Docket No.55, ¶ 26). Therefore, according to Defendants, Credence does not compete with STS.

Neither West nor Gillette has ever worked for Verigy or Defendants. Both retired from Credence in 2006 and do not have a continuing affiliation with Credence. (Morton Decl. ¶¶ 2 & 3; Exhs. A & B) West, currently "retired and enjoying life," worked at Credence from 2004 to 2006 as Vice President and Chief Architect. (Morton Decl. ¶ 2; Exh. A.) Gillette is currently self-employed, and he worked at Credence from 1993 until 2006, most recently as Vice President of Engineering. (Morton Decl. ¶ 3; Exh. B.) Both have extensive experience in the ATE industry and familiarity with flash memory testing. (Morton Decl. ¶¶ 2 & 3; Exhs. A & B)

### A. The Protective Order

On August 29, 2007, this Court entered a Stipulated Protective Order ("SPO") (Docket No. 28; Morton Decl. ¶ 6, Exh. E). The SPO is the standard form SPO found on the Court's website. Verigy proposed a number of changes to the SPO to streamline it, but Defendants' counsel refused to make such changes, so the SPO was submitted to the Court virtually unchanged from the standard form.[2] (Morton Decl., ¶6.)

The Stipulated Protective Order defines two types of documentation receiving special protection from public disclosure: (1) "Confidential" information; and (2) "Highly-Confidential – Attorney's Eyes Only" information. (SPO, ¶¶ 2.3 & 2.4).

Paragraph 7.3(b) of the Stipulated Protective Order allows experts access to "Highly Confidential – Attorney's Eyes Only" information, unless otherwise ordered by the Court, "to whom disclosure is reasonably necessary for this litigation and who have signed the 'Agreement to Be Bound by Protective Order,'" as well as the additional condition, "to whom the procedures set forth in paragraph 7.4, below, have been followed." West and Gillette have each signed an Agreement to Be Bound by Protective Order. (Morton Decl. ¶¶ 2 & 3, Exhs. A & B).

---

[2] The parties were able to agree that for purposes of the TRO, the time period for objecting to expert disclosures would be shortened. (*See* § 7.4(b) of the SPO.)

- 3 -
VERIGY'S NOTICE OF MOTION AND MOTION FOR PERMISSION TO DISCLOSE 'HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY' DOCUMENTS TO VERIGY'S EXPERTS UNDER STIPULATED PROTECTIVE ORDER                               Case No. C07 04330 RMW (HRL)

1  Paragraph 7.4(a) provides that the party seeking to disclose to an expert information designated "Highly Confidential – Attorney's Eyes Only," must make a request in writing to the Designating Party for permission after setting forth certain facts about the expert. (SPO, ¶ 7.4(a).) Defendant concede that Verigy complied with these requirements. (Morton Decl. ¶ 5, Exh. D). Pursuant to Paragraph 7.4(b), disclosure to the expert may occur unless within seven court days an objection is lodged "set[ting] forth in detail the grounds on which it is based." Defendants have only one objection: both West and Gillette used to work for Verigy's competitor, Credence. (Morton Decl. ¶ 7, Exh. F.) Section 2.12 of the SPO states that an expert is a "person with specialized knowledge or experience…who is not a past or current employee of a Party or of a competitor of a Party."

Pursuant to Paragraph 7.4(c), the parties need to meet and confer regarding any objections, and if the matter cannot be resolved, the Designating Party may file a motion. Defendants "bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert." (SPO, ¶ 7.4(c).)

### B. The Parties' Meet and Confer Efforts

On Friday, August 15, 2008, Verigy disclosed West and Gillette to Defendants. (Morton Decl., ¶¶ 2-3 and Exhs. A-B). The parties met and conferred in person regarding Defendants' objections to these experts on August 27 and 28, 2008. In an effort to resolve the dispute, Verigy agreed to waive any objection to any expert Defendants may propose on the grounds that the proposed expert previously worked for a competitor of Verigy. (Morton Decl. at ¶ 5.) Defendants considered this offer, but ultimately rejected it. (*Id.*) As a result, following the meet and confer sessions, the parties agreed that:

> Defendants' only objection to Plaintiff's disclosure to Verigy's Proposed Experts is that such disclosure violates section 2.1. of the Stipulated Protective Order because Verigy's Proposed Experts are past employees of Credence Systems Corporation, a competitor of Plaintiff Verigy, Us, Inc. Defendants have no other objections to such disclosure.

(Morton Decl., ¶ 5, Ex. D.) As the parties were unable to resolve this issue, Verigy brings the instant motion.

## III. ARGUMENT

One of the central issues of this Action is the alleged distinction between testing NAND memory chips and NOR memory chips. Defendants claim that much greater complexity is needed to test NOR memory chips and Verigy has disputed this claim. (Blanchard Decl. ISO Resp. to PI Motion; Docket No. 53; ¶ 18; Wei Decl. ISO Plaintiff's Reply & Supp. Brief on Motion for PI, Docket No. 96; ¶ 16; ¶ 22-25). Defendants expert, Dr. Richard Blanchard, testified as to industry standards and to the distinction of testing relating to NOR and NAND semiconductors as part of the preliminary injunction briefing. (Blanchard Decl. ISO Response to PI Motion, ¶¶ 23-26 and 47-50). The Court based its preliminary injunction order in part on this alleged distinction. (Order re: Motion for Protective Order, Docket No. 171, pp. 21:20-22; 23:21-23). Verigy previously proffered the testimony of Robert Pochowski to oppose Defendants' assertions, but the Court discounted his claims because he was involved with the factual issues in the case. (*Id*., p.21, fn. 7). Verigy conducted an extensive search for an independent industry expert who could oppose Defendants' assertions. (Morton Decl., ¶7.) Verigy was unable to find anyone with the requisite knowledge who had not worked in the ATE field. (*Id.*) There is no risk of harm to Defendants, as Defendants have admitted that if there is any competitive threat, it is to Verigy, not Defendants. Defendants therefore cannot show that the risk of harm to STS outweighs Verigy's need for disclosure, and Verigy's motion should be granted.

### A. Disclosure to Gillette and West is Reasonably Necessary.

Defendants have marked all of the technical specifications and information concerning Flash Enhancer, except the most recent (known) data sheet, "Highly Confidential." (Morton Decl., ¶9.) To refute Defendants' claims on the NAND/NOR distinction, Verigy's Proposed Experts would need to examine the various versions of Defendants' technical specifications and data sheets to determine the differences between the data sheets before and after Defendants allegedly redesigned their product to work for NOR memory testing. Verigy's Proposed Experts would also need to examine communications with Intel and Spansion, Defendants' potential customers, regarding such alleged changes. Without this information, Verigy's Proposed Experts could only testify as to NOR and NAND in general and without specific reference to Defendants' Flash Enhancer product, which

would impair Verigy's ability to refute Defendants' assertions. Verigy was unable to find an expert with the requisite qualifications to so testify who was *not* a current or past employee of a competitor of Verigy, as sufficient work experience with testing NOR and NAND is difficult to acquire without field experience. (Morton Decl. ¶ 9). Past or current employees of chip manufacturers, for example, would be able to address issues specific to their specific product, but would not be familiar with the details of how chips are tested across the industry and what the key issues are from the ATE perspective. Thus, the disclosure of these Highly Confidential documents is 'reasonably necessary.'

### B.  By Their Own Admission, There is No Risk of Harm to Defendants

It is Defendants' burden to show that the risk of harm in disclosure outweighs the need for disclosure. Defendants have not articulated *any* basis for harm resulting from disclosure, much less one to sustain this burden. Defendants' sole remaining objection – that West and Gillette *were* employees of *Verigy's* competitor (and a competitor who has been out of the flash memory testing business since May 2006) - is an objection for the sake of objection. Defendants previously claimed that Defendants do not compete with tester companies such as Verigy. (Defendants' P.I. Opp'n at 6:15-16; 8:19-20; *see also* Mayder Decl. in Supp. of Defendants' Resp. to O.S.C. re: Prelim. Inj., Docket No.55, ¶ 26). Indeed, even in the agreement reached *today* as part of the meet and confer, Defendants agreed that their objection was because Credence was "a competitor of Verigy." (Morton Decl., ¶ 5, Exh. D.) Given these admissions, there can be no possible harm to Defendants if Verigy employs a past employee of one of its own competitors—any harm would be to Verigy. Therefore, given this undisputed fact, Verigy's need to disclose Highly Confidential documents to Verigy's Proposed Experts outweighs the risk of harm to Defendants.

### C.  Verigy Has Suggested Means of Reducing the Risk

As Defendants never identified exactly what risk of harm there would be to Defendants' competitive interests, Verigy is unsure what additional means could be employed to reduce any such risk. As part of the meet and confer, Verigy agreed that it would waive any objection to any expert proposed by Defendants on the grounds that the expert previously worked for a competitor of Verigy, and Verigy would certainly be willing to waive the objection with respect to previous employees of competitors of STS as well.

- 6 -

Further, if Defendants are particularly concerned about any specific documents, Verigy would be willing to work with them to resolve such issues, provided that Verigy's Proposed Experts are allowed to see all previous (and future) pleadings, declarations, depositions, orders, technical documents, communications, presentations and disclosures related to the development and/or manufacture of Flash Enhancer (including documents related to the initial versions of Flash Enhancer called "Picasso").  Finally, Verigy would be willing to agree to disclose Highly Confidential material to only one of Verigy's Proposed Experts.

Therefore, Verigy maintains that the harm to Verigy if the disclosures are not allowed would greatly outweigh any risk to Defendants.

### D. Defendants' Delay Tactics Warrant an Extension to Serve Expert Reports

In the absence of any risk of harm to Defendants, only delay and interfering tactics can explain Defendants' reluctance to allow Verigy's Proposed Experts to review Defendants technical documents.  In light of these unwarranted objections, Verigy also requests a one-week extension from September 15 to September 22, 2008 for submission of the expert report of either Gillette or West.

## IV. CONCLUSION

For the foregoing reasons, Verigy respectfully requests that the Court grant its motion for permission for Garry Gillette and Burnie West, and each of them, to access documents designated "Highly Confidential-Attorney's Eyes Only" pursuant to the Stipulated Protective Order.

Dated: August 28, 2008                              BERGESON, LLP

By: _____/s/_____
　　　Melinda M. Morton

Attorneys for Plaintiff
VERIGY US, INC.

- 7 -
VERIGY'S NOTICE OF MOTION AND MOTION FOR PERMISSION TO DISCLOSE 'HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY' DOCUMENTS TO VERIGY'S EXPERTS UNDER STIPULATED PROTECTIVE ORDER                              Case No. C07 04330 RMW (HRL)