1    DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
2    MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
3    DONALD P. GAGLIARDI, Bar No. 138979
dgagliardi@be-law.com
4    MICHAEL W. STEBBINS, Bar No. 138326
mstebbins@be-law.com
5    BERGESON, LLP
303 Almaden Boulevard, Suite 500
6    San Jose, CA 95110-2712
Telephone:  (408) 291-6200
7    Facsimile:  (408) 297-6000

8    Attorneys for Plaintiff
VERIGY US, INC.

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14    VERIGY US, INC, a Delaware Corporation,          Case No. C07 04330 RMW (HRL)

15                          Plaintiff,                  ***CORRECTED* DECLARATION OF
                                                       MELINDA M. MORTON IN SUPPORT
16            vs.                                       OF MOTION FOR PERMISSION TO
                                                       DISCLOSE "HIGHLY CONFIDENTIAL
17    ROMI OMAR MAYDER, an individual;                 – ATTORNEY'S EYES ONLY"
      WESLEY MAYDER, an individual; SILICON            DOCUMENTS TO VERIGY'S EXPERTS
18    TEST SYSTEMS, INC., a California Corporation;
      and SILICON TEST SOLUTIONS, LLC, a              Date:    October 7, 2008
19    California Limited Liability Corporation,        Time:    10 a.m.
      inclusive,                                       Ctrm.:   2 -- 5th Floor
20                                                     Judge:   Hon. Howard R. Lloyd
                            Defendants.
21
                                                       Complaint Filed:    August 22, 2007
22                                                     Trial Date:         None Set

23

24

25

26

27

28

1    I, Melinda M. Morton, declare as follows:

2    1.    I am an attorney licensed to practice law before all of the courts of the State of

3    California. I am a partner in the law firm of Bergeson, LLP, counsel of record for plaintiff Verigy

4    US, Inc. ("Verigy") in the above-captioned action. I have personal knowledge of the facts set forth

5    in this declaration, and, if called to do so, I could and would competently testify thereto. I submit

6    this declaration in support of Verigy's motion for permission to disclose "HIGHLY

7    CONFIDENTIAL – ATTORNEY'S EYES ONLY" documents to Verigy's experts under the

8    Stipulated Protective Order.

9    2.    Attached hereto and incorporated herein by reference as **Exhibit A** is a true and

10    correct copy expert Garry Gillette's resume, sent to Defendants on August 15, 2008.

11    3.    Attached hereto and incorporated herein by reference as **Exhibit B** is a true and

12    correct copy of expert Burnell West's resume, sent to Defendants on August 15, 2008.

13    4.    Attached hereto and incorporated herein by reference as **Exhibit C** is a true and

14    correct copy of a news release entitled "Credence Reports Results for Second Quarter Fiscal Year

15    2006" downloaded from Credence's website at http://phx.corporate-

16    ir.net/phoenix.zhtml?c=68634&p=irol-newsArticle&ID=861167&highlight= visited August 28,

17    2008.

18    5.    Attached hereto and incorporated herein by reference as **Exhibit D** is a true and

19    correct copy of a memorandum Mr. Hale and I signed reflecting the status of meet and confer efforts

20    as of August 28, 2008, the date of the preparation of this motion. Per those meet and confer

21    discussions, which I directly participated in, the only remaining objection Defendants have to

22    disclosure of the Highly Confidential documents is that Messrs. Gillette and West used to work for

23    Credence, a competitor of Verigy. As part of these discussions, Verigy agreed to waive any

24    objection to any expert Defendants may propose on the grounds that the proposed expert previously

25    worked for a competitor of Verigy.

26    6.    Attached hereto and incorporated herein by reference as **Exhibit E** is a true and

27    correct copy of the Stipulated Protective Order, Docket Number 28 in this action. The Stipulated

28    Protective Order in this case is the standard form found on the Court's website. Verigy proposed a

1    number of changes to the Stipulated Protective Order to streamline it, but Defendants' counsel

2    refused to make such changes, so the Stipulated Protective Order was submitted to the Court

3    virtually unchanged from the standard form.

4         7.    It is necessary for Verigy to have an independent expert to testify on industry

5    standards to dispute Defendants' argument relating to the alleged distinction in testing relating to

6    NOR/NAND semiconductors.  I personally participated in the search for such an expert and was

7    unable to find any such qualified expert who had not worked for a competitor of Verigy.

8         8.    Verigy only intends to have one of the two proposed experts testify.

9         9.    Defendants have marked all of the technical specifications and information

10   concerning Flash Enhancer, except the most recent (known) data sheet, "Highly Confidential."

11        I declare under penalty of perjury under the laws of the United States of America that the

12   foregoing is true and correct and that this declaration was executed this 28th day of August, 2008 at

13   San Jose, California.

14                                              _____/s/_____
                                                Melinda M. Morton

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

# EXHIBIT A

**Garry C. Gillette**
1642 Tiber Court
San Jose, CA  95138
Home: 408-223-2243
Cell: 408-209-8402
gcgillette@ix.netcom.com

**-Experienced system level analog instrumentation circuit designer, system architect, and departmental manager for development of fifteen major IC test systems**

**-Understands analog circuit function, design, and application to achieve high performance, low power, and high precision from DC to 10GHz.**

**-Circuit and System designer experienced in the application of analog IC's and circuits**

**-Technologist experienced in the design of analog IC's, ASIC's, and process technologies**

**-Experienced system designer and architect that understands how analog circuits and interfaces are designed and applied in products**


## Professional Experience

1/07 - 4/08    **System Architect Consultant**
Low cost high pincount single board IC test system.
Invented high performance timing calibration technique requiring no relays

7/06 - 1/07    **SolFocus - Vice-President of Engineering**
In a startup mode-Recruited staff of 15 scientists and experienced engineers.  Developed design and schedule for a reliable and reproducible concentrated photo voltaic renewable energy system.  First round financing was $30M, which led to 2nd round of $100M.

1/93 - 7/06    **Credence Systems Memory SBU - Vice-President of Engineering**
-Architected and managed development of three generations of Kalos single board IC Test Systems (K1,K2,K3), more than $100M sales
-Managed Engineering Department. Retained design responsibility for design of custom analog SOC ASIC's, digital architecture, high performance cable interfaces to handling equipment.  .
-10 patented inventions
-Third generation Kalos (K3) designed with 24,576 I/O pins for full wafer test and highly parallel package test using high performance interface

4/74 - 1/93   **Teradyne STD - Division Hardware Engineering Manager**
-Manager of department and system architect for seven J9XX series Logic and Memory Test products (J941, J983, J967, J953, J937, J991, J994)
-Intrapreneurial start-up in Logic Test-Architected J941 (Teradyne's first clock rate Logic Test system), brought to market with greater than $200M sales. Invented method of using DRAM to increase pattern memory 20X. (*Teradyne-The First Forty Years*, Fred Van Veen, 2001, pp 187, 207-210)
-Intrapreneurial start-up for Memory Test-Responsible for architecture and hardware design of five J38X Series DRAM Memory Test Systems (J384, J385, J386, J386A, J387A)
-Architect and developer of ECL micro-programmable memory pattern generator, analog timing and pin electronics-used in all J38X memory test systems.

## Education

Stanford University - BSEE (Mathematics-Physics option, transferred from MIT)
University of California Irvine - MS Engineering (optics and modern control theory)
University of California Irvine – additional coursework in solid state for MS Physics
Short courses in finance, management, supervision, IC technology, IC reliability, Total Quality Management, and Hoshin planning methodolog

## Publications

Garry C. Gillette, Keynote Speech, First Annual TTTC Gigabit Test workshop, IEEE ITC, 2004.
Garry C. Gillette, "A Single Board Test System: Changing the Test Paradigm, IEEE ITC, 1995.
Garry C. Gillette, "Analog Extensions of Digital Time and Frequency Generation" and "The Process of Analog Design", *Analog Circuit Design-Art, Science, and Personalities*, Jim Williams, editor, 1991.
Garry C. Gillette, Comments on "A Simple Technique for Analog Tuning of Frequency Synthesizers", IEEE Transactions on Instrumentation and Measurement, June, 1990.

## Patents

Garry C. Gillette, U.S. Patent 3,582,810, "Digiphase Frequency Synthesizer System"
Garry C. Gillette, U.S. Patent 4,451,918, "Test Signal Reloader"
Garry C. Gillette, U.S. Patent 4,659,155, "Backplane Daughter Board Connector"
Garry C. Gillette, U.S. Patent 5,905,403, "Multiple output programmable reference voltage source"
Garry C. Gillette, U.S. Patent 5,952,821, "Load Circuit for integrated circuit tester"
Garry C. Gillette, U.S. Patent 5,955,890, "Backmatch resistor structure for an integrated circuit tester"

Garry C. Gillette, U.S. Patent 6,005,408, "System for Compensating for Temperature Induced Delay Variation in an Integrated Circuit"
Garry C. Gillette, U.S. Patent 6,008,683, "Switchable load for testing a semiconductor integrated circuit device"
Garry C. Gillette, U.S. Patent 6,011,403, "Circuit arrangement for measuring a leakage current utilizing circuit devices"
Garry C. Gillette, U.S. Patent 6,028,438, "Current Sense Circuit
Garry C. Gillette, et al, U.S. Patent 6,028,439, "Modular circuit tester with distributed synchronization and control
Garry C. Gillette, et al, U.S. Patent 6,073,263, "Parallel processing pattern generation system for an integrated circuit tester

**Litigation Experience**

Teradyne vs Megatest Corp.
Infringement of my U.S. Patent 4,451,918, "Test Signal Reloader"
Worked with litigation team led by David Feigenbaum of Fish & Richardson in Boston
Taught the invention, supplied answers to interrogatories, served as technical expert and deposed witness when examined by Megatest counsel
Teradyne prevailed and Megatest paid costs and license fee for all shipments
Teradyne later acquired Megatest.

Deposed witness for Credence Corp. in litigation brought against an employee in my department who violated an employment agreement. I later was a witness in a bankruptcy court case by the same employee when he attempted to avoid paying the judgment in the first case. He refused to negotiate a settlement and lost all stock options and personal assets.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _GARRY GILLETTE_, of _SAN JOSE, CALIFORNIA_,

declare under penalty of perjury that I have read in its entirety and understand the Stipulated

Protective Order that was issued by the United States District Court for the Northern District of

California on August 29, 2007 in the case of *Verigy US, Inc. v. Romi Omar Mayder, Wesley*

*Mayder, Silicon Test Systems, Inc., Silicon Test Solutions, LLC*, USDC, N. District of Calif., San

Jose Div., Case Number C07 04330 RMW (HRL). I agree to comply with and to be bound by all

the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so

comply could expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject to this

Stipulated Protective Order to any person or entity except in strict compliance with the provisions

of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Northern District of California for the purpose of enforcing the terms of this Stipulated Protective

Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ of

_BERGESON, LLP_ _____ as my California agent for service

of process in connection with this action or any proceedings related to enforcement of this

Stipulated Protective Order.

Date: _5 AUGUST, 2008_

City and State where sworn and signed: _SAN JOSE, CALIFORNIA_

Printed name: _GARRY C. GILLETTE_

Signature: _Garry C. Gillette_ [signature]

13

# EXHIBIT B

West CV.txt

Professional Resume - Dr. Burnell G. West

Current status: retired and enjoying life, with consulting on the side.

Employment History:

Current Consulting Activities:
        January 2007 - present: Consultant for Test Technology Collaboration
Consortium (T2C2)
                Responsible to maintain proprietary data submitted by multiple
companies
                for benchmarking purposes, with consolidated sanitized reports
distributed to
                all participants.
        October 2007 - present: Member, A.I.S.I. Technical Advisory Board
                Responsible for reviewing and advising on technology developments at
A.I.S.I.

June 2004 - August 2006: Vice President, Chief Architect, Credence Systems
Corporation
        Key activities: organized annual Technical Forum for top 100 Credence
technical staff,
        including managing the technical program for the Forum, finalizing the
invitation list,
        and inviting appropriate guest speakers.
        Key Presentations: Tutorial and Invited Lecture at IPFA 2006 Symposium
(Singapore)
                Tutorial: Fundamentals of Integrated Circuit Test for Physical Failure
Analysis
                Invited Lecture: Advanced Test Methodology / Roadmap and Strategies for
Semiconductor
        Principal technical contribution: Digital RF test module architecture
        14 patent applications filed, of which 9 remain pending.

2003 - May, 2004: Technical Advisor, NPTest LLC.
        Until NPTest LLC was merged into Credence Systems Corporation
        Principal contribution: High-resolution Time-to-digital Converter (three
patent applications filed)
        Key publication: Highly Reconfigurable ATE for Rapidly Evolving Test
Requirements (ETS 2004)

2001 - 2003: Technical Advisor, Schlumberger Semiconductor Solutions
        Until the creation and separation of NPTest LLC from Schlumberger
        Principal contribution: developed the key architecture of the SAPPHIRE open
test platform
        Key publication: Toward an Open Architecture ATE (European Test Workshop,
2002)

1997 - 2001: Engineering Advisor, Schlumberger Technologies, ATE Division
        Principal contribution: Successive generations of the Sequencer per Pin test
system.
        Key publication: Toward One-picosecond Edge Placement Accuracy (ITC 2000)
        Received IEEE Computer Society Golden Key award.

1989 - 1997: Senior Staff Engineer, Schlumberger Technologies, ATE Division
        Principal contribution: Development of the Sequencer per Pin architecture
for ATE, incorporating the
                Recirculating Remainder (or "flying adder") digital timing
methodology.
        Key publication: Sequencer Per Pin Test System Architecture (ITC 1990)
        Program Chair, ITC 1996; Member of ITC Program Committee and ITC Steering
Committee

West CV.txt

1985 - 1988: Senior Staff Engineer, Sentry Test Systems
        Until it was renamed Schlumberger Technologies, ATE Division
        Principal contribution: Development of the Recirculating Remainder test
architecture concept, using video
                DAC's for time-set-switching on the fly. This involved development
of the ITS9000FX Timing Generator IC.
                The TGIC was a high-speed bipolar ASIC that was said to be the most
complex developed in that
                technology up to that time.

1982 - 1985: Fairchild Test Systems
        Until it was renamed Sentry Test Systems
        Principal contribution: sub-picosecond resolution timing calibration module
for Sentry S50 test system.
                The key circuit is in use today for calibration and timing
measurement in ATE; it was used in every
                test system delivered by Fairchild and its successors (listed above)
after the S50 test system.
        Key publication: Attainable Accuracy of Autocalibrating Automatic Test
Systems (ITC 1983)

1979 - 1982: Autek Systems
        Principal contribution: Small, low-cost memory test system architecture and
design.

1978 - 1979: DataTest, Inc.
        Principal contribution: Digital test system for Westinghouse delivered into
the NATO SHOP-3 depot field
                maintenance facilities.

1972 - 1978: E-H Research, Inc.
        Principal contribution: ATE Platform called IMS (Integrated Measurement
System) for Hughes Aircraft Tow
                Missile program. This included a high-precision time-to-digital
converter based on work done at
                Oak Ridge during the Manhattan project (early 1940's).

1971 - 1972: President and Founder, Digimetrics, Inc.
        Principal contribution: key concepts developed for the nascent logic
analyzer market
                (which helped launch Biomation into that business)
        Digimetrics was acquired by E-H Research, Inc. in October, 1972

1965 - 1971: Senior Scientist, EG&G, Inc.

34 Patents Issued:

| | |
|---|---|
| 7,336,066 | Reduced pin count test method and apparatus |
| 7,222,280 | Diagnostic process for automated test equipment |
| 7,212,941 | Non-deterministic protocol packet testing |
| 7,171,598 | Tester system having a multipurpose memory |
| 7,143,326 | Test system algorithmic program generators |
| 7,113,886 | Circuit and method for distributing events in an event stream |
| 7,093,177 | Low-jitter clock for test system |
| 7,035,755 | Circuit testing with ring-connected test instrument modules |
| 7,017,091 | Test system formatters reconfigurable for multiple data rates |
| 6,940,271 | Pin electronics interface circuit |
| 6,937,006 | Pin electronics interface circuit |
| 6,928,387 | Circuit and method for distributing events in an event stream |
| 6,748,564 | Scan stream sequencing for testing integrated circuits |
| 6,622,107 | Edge placement and jitter measurement for electronic elements |
| 6,501,706 | Time-to-digital converter |
| 6,285,963 | Measuring signals in a tester system |

Page 2

West CV.txt

| | |
|---|---|
| 6,128,754 | Tester having event generation circuit for acquiring waveform by supplying strobe events for waveform acquisition rather than using strobe events specified by the test program |
| 6,081,484 | Measuring signals in a tester system |
| 6,025,736 | Fast reprogrammable logic with active links between cells |
| 6,014,764 | Providing test vectors with pattern chaining definition |
| 6,002,268 | FPGA with conductors segmented by active repeaters |
| 5,668,495 | BiCMOS reprogrammable logic |
| 5,570,059 | BiCMOS multiplexers and crossbar switches |
| 5,477,139 | Event sequencer for automatic test equipment |
| 5,475,624 | Test generation by environment emulation |
| 5,430,400 | Driver circuits for IC tester |
| 5,406,133 | BICMOS reprogrammable logic |
| 5,397,943 | Clock distribution method and apparatus for high speed circuits with low skew using counterpropagating true and complement re-generated clock signals with predetermined ramp shapes |
| 5,355,035 | High speed BICMOS switches and multiplexers |
| 5,212,443 | Event sequencer for automatic test equipment |
| 4,849,702 | Test period generator for automatic test equipment |
| 4,550,405 | Deskew circuit for automatic test equipment |
| 4,497,998 | Temperature stabilized stop-restart oscillator |

Several papers published

Other Professional Activities
        Member of Program Committee of ITC, 1988 to present time
        Member of Steering Committee of ITC, 1994 to 2001
        Member of Program Committee of VTS, 2000 to present time
        Member of Operating Committee of VTS, 2003 and 2004
        Member of Program Committee of several TTTC workshops, including BAST, SDD,
FATE, TRP

        Guest Lecturer, University of New Mexico graduate class EECE595 in 1998,
2000, 2002, and 2004

        IEEE Electron Devices Society Distinghished Lecturer, 2006 - present

Education:

SB  (Physics) MIT 1960
        Thesis: Bremsstrahlung

PhD (Physics) University of Colorado 1965
        Thesis: Absorption Spectrum of Oxygen Molecule in 55-65 GHz Region

Page 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, *Burnell G. West* [print or type full name], of *212 Valdoe Ave, Half Moon Bay, CA 94019*

[print or type full address], declare under penalty of perjury that I have read in its entirety and

understand the Stipulated Protective Order that was issued by the United States District Court for

the Northern District of California on ~~[date]~~ *August 29, 2007* in the case of ~~[insert formal name of the~~ *Verigy US, Inc. v. Mayder, et al.,* ~~case and the number and initials assigned to it by the court]~~ *C07-04330 RMW (HRL)*. I agree to comply with and to be

bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that

failure to so comply could expose me to sanctions and punishment in the nature of contempt. I

solemnly promise that I will not disclose in any manner any information or item that is subject to

this Stipulated Protective Order to any person or entity except in strict compliance with the

provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Northern District of California for the purpose of enforcing the terms of this Stipulated Protective

Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint *Bergeson LLP* [print or type full name] of

_____ [print or type full address and telephone number]

as my California agent for service of process in connection with this action or any proceedings

related to enforcement of this Stipulated Protective Order.

Date: *August 16, 2008*

City and State where sworn and signed: *San Jose, CA*

Printed name: *Burnell G. West* [printed name]

Signature: *[signature]* [signature]

13

# EXHIBIT C

**credence** SOLUTIONS    PRODUCTS    SERVICE & SUPPORT    SALES    NEWS & EVENTS    COMPANY

**Investors**

Home > Company > Investor Relations > Investor Resources > News Release

🖨 Print Page    ✉ Send to Friend

| Overview |
|---|
| Leadership |
| Company Milestones |
| Investor Relations |
| Overview |
| Financial Information |
| Stock Information |
| Fundamental Data |
| Annual Reports |
| SEC Filings |
| Quarterly Results |
| Investor Resources |
| Events & Presentations |
| News |
| Contact Information |
| E-mail Alerts |
| Information Request |
| FAQ |
| Analyst Coverage |
| Ownership Summary |
| Corporate Governance |
| Governance Highlights |
| Executive Management |
| Board of Directors |
| Code of Conduct |
| Credence Partners |
| Industry Alliances |
| Careers |
| Contact |

## News Release

🔖 View printer-friendly version

<< Back

### Credence Reports Results for Second Quarter Fiscal Year 2006

MILPITAS, Calif., May 25 /PRNewswire-FirstCall/ -- Credence Systems Corporation (Nasdaq: CMOS), a leading provider of test solutions from design-to-production for the worldwide semiconductor industry, today reported financial results for the second quarter of fiscal 2006 ended April 30, 2006.

Net sales for the second quarter were $124.8 million, up 5.6 percent from prior quarter net sales of $118.2 million and up 22.4 percent from the second quarter of fiscal year 2005 revenue of $101.9 million. Net orders for the second quarter of fiscal 2006 were approximately $109.8 million, corresponding to a book to bill ratio of 0.88. Net loss for the quarter was $14.2 million or $0.14 per share, versus a net loss of $4.0 million or $0.04 per share in the prior quarter. Net loss from a year-ago second quarter was $19.5 million or $0.21 net loss per share. The net loss this quarter included charges of $19.4 million consisting of an inventory write down of approximately $11.8 million, amortization of intangibles, restructuring charges and stock compensation under FAS 123(R). These financial results are presented on a GAAP basis.

"Increased demand for our consumer mixed-signal and wireless products allowed us to meet the revenue guidance that we provided last quarter," said Dave Ranhoff, president and chief executive officer of Credence Systems Corporation. "Continuing weakness in our memory business, however, required us to revalue our Kalos 2 inventory which adversely impacted our financial results. Additionally, the recent decision by a major IDM to significantly decrease capital spending caused us to reassess the viability of our next- generation memory product. As a result, although we will be supporting our Kalos customer base, we have stopped the development of our next-generation memory product."

"We are redirecting our resources on opportunities identified in our higher return consumer market segment," said John Batty, chief financial officer of Credence Systems Corporation. "We believe these actions will allow us to concentrate on those market segments that will improve the Company's financial performance and stability long-term. By placing more resources on our digital and mixed-signal business the Company can accelerate development programs more effectively to compete in the emerging consumer-mobile market."

Third Quarter Fiscal 2006 Outlook

Net sales in the third quarter of fiscal 2006 are expected to be approximately $125 million to $129 million, with a loss per share on a GAAP basis in the range of $0.09 to $0.11. This guidance reflects an estimated charge in the range of approximately $12 to $14 million associated with the shift of resources away from our next generation memory development product including severance, write-off of capital assets and contract terminations. This guidance includes no taxation on domestic earnings due to the effect of tax loss carry forwards from prior years.

Conference Call/Webcast

Credence will hold a conference call to discuss these results today, Thursday, May 25, 2005, at 5:00 pm ET. The call will be simulcast via the Credence web site at www.credence.com under the "Investor Relations -- Financial Information -- Webcasts" section. A replay of the call will be available via phone and web site through June 8, 2006. The replay number in the U.S. and Canada is (888) 286-8010. The replay number outside the U.S. and Canada is (617) 801-6888. The passcode is 68879701. A replay will also be available on the Credence web site www.credence.com under the Investor Relations section.

About Credence

Credence Systems Corporation is a leading provider of debug, characterization and ATE solutions for the global semiconductor industry. With a commitment to applying innovative technology to lower the cost-of-test, Credence delivers competitive cost and performance advantages to integrated device manufacturers (IDMs), wafer foundries, outsource assembly and test (OSAT) suppliers and fabless chip companies worldwide. A global, ISO 9001- certified company with a presence in 20 countries, Credence is headquartered in Milpitas, California. More information is available at http://www.credence.com.

Forward-Looking Statements

This release contains statements that are forward-looking within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, including statements regarding focusing on higher return consumer product opportunities which will better position Credence to improve its financial performance, placing resources on our digital and mixed signal business to more effectively compete in the emerging consumer-mobile market and expected sales, expected net loss and expected charges associated with shifting of resources away from the next generation memory development product for the third quarter of fiscal 2006. These forward-looking statements involve important factors that could cause our actual results to differ materially from those in the forward-looking statements. Such important factors involve risks and uncertainties including, but not limited to, the introduction of new product features including new instruments, the completion, delivery and acceptance by customers of such new product features, the need to focus on different aspects of our business to improve stockholder value, unanticipated challenges in assessing business conditions and the overall market, unanticipated difficulties in implementing improvements to our business model, cyclicality and downturns in the semiconductor industry, rapid technological change in the automatic test equipment market, the timing of new technology, product introductions, customer requirements relating to the customization of products, the risk of a loss or reduction of orders from one or more customers among which our business is concentrated, fluctuation in customer demand, timing and volume of orders and shipments, competition and pricing pressures, reliability and quality issues, our ability to complete the development and commercialization of our new products, product mix, overhead absorption, continued dependence on "turns" orders to achieve revenue objectives, intellectual property issues, the risk of early obsolescence, our ability to control and reduce expenses (including the ability to successfully institute additional cost- saving measures) and our need to achieve and maintain effective internal controls over financial reporting. Reference is made to the discussion of risk factors detailed in our filings with the Securities and Exchange Commission, including our reports on Form 10-K and 10-Q. All projections in this release are based on limited information currently available to us, which is subject to change. Although any such projections and the factors influencing them will likely change, we will not necessarily update the information, since we are only to provide guidance at certain points during the year. Actual events or results could differ materially and no reader of this release should assume later in the quarter that the information provided today is

NOTE: Credence is a registered trademark, and Credence Systems is a trademark, of Credence Systems Corporation. Other trademarks that may be mentioned in this release are the intellectual property of their respective owners.

Company Contact:
Judy A.E. Dale
Vice President, Marketing Communications and Investor Relations
Credence Systems Corporation
Phone: 408-635-4309
FAX: 408-635-4986
E-mail: judy_dale@credence.com

CREDENCE SYSTEMS CORPORATION
CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS
(in thousands, except per share amounts)
(Unaudited)

| | Three Months Ended April 30, | | Prior Quarter Ended January 31, | Six Months Ended April 30, | |
| --- | --- | --- | --- | --- | --- |
| | 2006 | 2005 | 2006 | 2006 | 2005 |
| Net sales | $124,767 | $ 101,944 | $ 118,168 | $242,935 | $195,827 |
| Cost of goods sold - on net sales(1) | 68,928 | 58,190 | 63,799 | 132,727 | 117,478 |
| Cost of goods sold - inventory write-offs(2) | 11,829 | 609 | -- | 11,829 | 6,090 |
| Gross margin | 44,010 | 43,145 | 54,369 | 98,379 | 72,259 |
| Operating expenses: | | | | | |
| Research and development(3) | 24,123 | 22,728 | 24,148 | 48,271 | 45,056 |
| Selling, general & administrative(4) | 27,520 | 31,846 | 27,914 | 55,434 | 63,201 |
| Amortization of purchased intangible assets and deferred compensation | 4,117 | 6,338 | 4,254 | 8,371 | 13,035 |
| Restructuring charges | 1,060 | 440 | 314 | 1,374 | 1,791 |
| Total operating expenses | 56,820 | 61,352 | 56,630 | 113,450 | 123,083 |
| Operating loss | (12,810) | (18,207) | (2,261) | (15,071) | (50,824) |
| Interest and other income, net(5) | (318) | 1,909 | (154) | (472) | 1,676 |
| Loss before income taxes | (13,128) | (16,298) | (2,415) | (15,543) | (49,148) |
| Income taxes | 1,103 | 3,175 | 1,631 | 2,734 | 6,627 |
| Net loss | ($14,231) | ($ 19,473) | ($ 4,046) | ($18,277) | ($ 55,775) |
| Net loss per share | | | | | |
| Basic | ($0.14) | ($ 0.21) | ($ 0.04) | ($0.18) | ($ 0.62) |
| Diluted | ($0.14) | ($ 0.21) | ($ 0.04) | ($0.18) | ($ 0.62) |
| Number of shares used in computing per share amounts | | | | | |
| Basic | 99,886 | 91,392 | 99,492 | 99,686 | 89,658 |
| Diluted | 99,886 | 91,392 | 99,492 | 99,686 | 89,658 |

(1) Includes stock-based compensation under FAS 123R of $0.1 million, $0.1 million and $0.2 million for the three months ended April 30, 2006 and January 31, 2006 and six months ended April 30, 2006, respectively. Also, includes amortization expenses resulted from the write-up to fair value of the inventory, spares and fixed assets acquired as part of our acquisition of NPTest of $0.7 million, $1.9 million and $0.6 million for the three months ended April 30, 2006 and 2005 and January 31, 2006, respectively, and $1.3 million and $3.4 million for the six months ended April 30, 2006 and 2005, respectively. In the three and six months ended April 30, 2005, cost of goods sold -- net of sales includes $0.7 and $1.1 million of  service materials charges, relocation, travel, merger related retention bonuses and accelerated depreciation of assets.

(2) Represents inventory charges and liabilities related to under-performing product lines and decisions to stop significant future investments in these areas.

(3) Includes stock-based compensation under FAS 123R of $0.6 million, $0.3 million and $0.9 million for the three months ended April 30, 2006 and January 31, 2006 and six months ended April 30, 2006, respectively.

(4) Includes stock-based compensation under FAS 123R of $1.0 million, $0.6 million and $1.6 million for the three months ended April 30, 2006 and January 31, 2006 and six months ended April 30, 2006, respectively. In addition, it includes amortization of the fixed assets write-up to fair value, resulting from NPTest acquisition of approximately $0.1 million, $0.6 million and $0.1 million for the three months ended April 30, 2006 and 2005 and January 31, 2006, respectively; and approximately $0.2 million and $1.2 million for the six months ended April 30, 2006 and 2005, respectively.  In addition, the three and six months ended April 30, 2005 includes $3.9 million and $8.2 million, respectively of integration expenses related to NPTest.

(5) Includes fair value adjustment to an acquired liability of $3.0 million and $1.3 million for the three and six months ended April 30, 2005, respectively.

CREDENCE SYSTEMS CORPORATION
CONDENSED CONSOLIDATED BALANCE SHEETS
(in thousands)

|  | April 30, 2006 (unaudited) | Prior Quarter January 31, 2006 (unaudited) | October 31, 2005 (1) |
|---|---|---|---|
| **ASSETS** | | | |
| Current assets: | | | |
| Cash and cash equivalents | $109,384 | $106,627 | $142,180 |
| Short-term investments | 19,160 | 11,395 | 7,816 |
| Accounts receivable, net | 119,868 | 129,500 | 114,042 |
| Inventories | 73,629 | 86,456 | 79,054 |
| Other current assets | 23,199 | 26,521 | 27,979 |
| Total current assets | 345,240 | 360,499 | 371,071 |
| Property and equipment, net | 90,068 | 94,120 | 96,691 |
| Other assets | 569,274 | 577,453 | 578,543 |
| Total assets | $1,004,582 | $ 1,032,072 | $ 1,046,305 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | |
| Current liabilities: | | | |
| Accounts payable | $35,337 | $ 42,154 | $ 45,846 |
| Accrued liabilities | 94,351 | 99,534 | 108,027 |
| Bank Loan | -- | -- | 5,000 |
| Deferred profits | 3,986 | 9,387 | 5,112 |
| Total current liabilities | 133,674 | 151,075 | 163,985 |
| Other liabilities | 189,834 | 190,819 | 190,818 |
| Long-term deferred income taxes | 9,473 | 9,473 | 9,473 |
| Stockholders' equity | 671,601 | 680,705 | 682,029 |
| Total liabilities and stockholder's equity | $1,004,582 | $ 1,032,072 | $ 1,046,305 |

(1) Derived from the audited financial statements for the year ended October 31, 2005.

SOURCE Credence Systems Corporation

CONTACT: Judy A.E. Dale, Vice President, Marketing Communications and Investor Relations of Credence Systems Corporation, +1-408-635-4309, or fax, +1-408-635-4986, or judy_dale@credence.com

Credence site - http://www.credence.com

Contact Us  |  Site Credits  |  Site Map  |  Legal Notices  |  Privacy Policy  |  Training  |  Careers

© 2008 Credence Systems Corporation

# EXHIBIT D

August 28, 2008

     This will confirm today's final in person meet and confer regarding the issue of permission to disclose 'Highly-Confidential – Attorneys Eyes Only' documents to Burnie West and Gary Gillette ("Verigy's Proposed Experts") under the Stipulated Protective Order of August 29, 2007.  The parties agree that Defendants' only objection to Plaintiff's disclosure to Verigy's Proposed Experts is that such disclosure violates section 2.12 of the Stipulated Protective Order because Verigy's Proposed Experts are past employees of Credence Systems Corporation, a competitor of Plaintiff Verigy US, Inc.  Defendants have no other objections to such disclosure.

# EXHIBIT E

1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  JOHN W. FOWLER, Bar No. 037463
   jfowler@be-law.com
3  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712               *ORDER E-FILED: 8.29.2007*
   Telephone: (408) 291-6200
6  Facsimile: (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12  VERIGY US, INC, a Delaware Corporation    Case No.  C07-04330 RMW (HRL)

13                    Plaintiff,

14         vs.                                STIPULATED PROTECTIVE ORDER
                                              (MODIFIED BY THE COURT)
15  ROMI OMAR MAYDER, an individual;
    WESLEY MAYDER, an individual; SILICON
16  TEST SYSTEMS, INC., a California Corporation;  Complaint Filed:
    and SILICON TEST SOLUTIONS, LLC, a         Trial Date:        None Set
17  California Limited Liability Corporation,
    inclusive,
18
                      Defendants.
19

20

21

22

23

24

25

26

27

28

1      **1.    PURPOSES AND LIMITATIONS**

2           Disclosure and discovery activity in this action are likely to involve production of

3      confidential, proprietary, or private information for which special protection from public

4      disclosure and from use for any purpose other than prosecuting this litigation would be warranted.

5      Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated

6      Protective Order. The parties acknowledge that this Order does not confer blanket protections on

7      all disclosures or responses to discovery and that the protection it affords extends only to the

8      limited information or items that are entitled under the applicable legal principles to treatment as

9      confidential. The parties further acknowledge, as set forth in Section 10, below, that this

10     Stipulated Protective Order creates no entitlement to file confidential information under seal; Civil

11     Local Rule 79-5 sets forth the procedures that must be followed and reflects the standards that will

12     be applied when a party seeks permission from the court to file material under seal.

13     **2.    DEFINITIONS**

14          2.1    Party: any party to this action, including all of its officers, directors,

15     employees, consultants, retained experts, and outside counsel (and their support staff).

16          2.2    Disclosure or Discovery Material: all items or information, regardless of the

17     medium or manner generated, stored, or maintained (including, among other things, testimony,

18     transcripts, or tangible things) that are produced or generated in disclosures or responses to

19     discovery in this matter.

20          2.3    "Confidential" Information or Items: information (regardless of how

21     generated, stored or maintained) or tangible things that qualify for protection under standards

22     developed under F.R.Civ.P. 26(c).

23          2.4    "Highly Confidential – Attorneys' Eyes Only" Information or Items:

24     extremely sensitive "Confidential Information or Items" whose disclosure to another Party or

25     nonparty would create a substantial risk of serious injury that could not be avoided by less

26     restrictive means.

27          2.5    Receiving Party: a Party that receives Disclosure or Discovery Material

28     from a Producing Party.

1         2.6     Producing Party: a Party or non-party that produces Disclosure or

2 Discovery Material in this action.

3         2.7.     Designating Party: a Party or non-party that designates information or items

4 that it produces in disclosures or in responses to discovery as "Confidential" or "Highly

5 Confidential — Attorneys' Eyes Only."

6         2.8     Protected Material: any Disclosure or Discovery Material that is designated

7 as "Confidential" or as "Highly Confidential – Attorneys' Eyes Only."

8         2.9.     Outside Counsel: attorneys who are not employees of a Party but who are

9 retained to represent or advise a Party in this action.

10         2.10     House Counsel: attorneys who are employees of a Party.

11         2.11     Counsel (without qualifier): Outside Counsel and House Counsel (as well as

12 their support staffs).

13         2.12     Expert: a person with specialized knowledge or experience in a matter

14 pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert

15 witness or as a consultant in this action and who is not a past or a current employee of a Party or

16 of a competitor of a Party's and who, at the time of retention, is not anticipated to become an

17 employee of a Party or a competitor of a Party's. This definition includes a professional jury or

18 trial consultant retained in connection with this litigation.

19         2.13     Professional Vendors: persons or entities that provide litigation support

20 services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations;

21 organizing, storing, retrieving data in any form or medium; etc.) and their employees and

22 subcontractors.

23     **3.**     **SCOPE**

24         The protections conferred by this Stipulation and Order cover not only Protected Material

25 (as defined above), but also any information copied or extracted therefrom, as well as all copies,

26 excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by

27 parties or counsel to or in court or in other settings that might reveal Protected Material.

28

STIPULATED PROTECTIVE ORDER

1    **4.    DURATION**

2    Even after the termination of this litigation, the confidentiality obligations imposed by this

3    Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order

4    otherwise directs.   **For a period of six months after the final termination of this action, this**
     **court shall retain jurisdiction to enforce the terms of this protective order.**

5    **5.    DESIGNATING PROTECTED MATERIAL**

6    5.1    Exercise of Restraint and Care in Designating Material for Protection. Each

7    Party or non-party that designates information or items for protection under this Order must take

8    care to limit any such designation to specific material that qualifies under the appropriate

9    standards. A Designating Party must take care to designate for protection only those parts of

10   material, documents, items, or oral or written communications that qualify – so that other portions

11   of the material, documents, items, or communications for which protection is not warranted are

12   not swept unjustifiably within the ambit of this Order.  Mass, indiscriminate, or routinized

13   designations are prohibited. Designations that are shown to be clearly unjustified, or that have

14   been made for an improper purpose (e.g., to unnecessarily encumber or retard the case

15   development process, or to impose unnecessary expenses and burdens on other parties), expose the

16   Designating Party to sanctions. If it comes to a Party's or a non-party's attention that information

17   or items that it designated for protection do not qualify for protection at all, or do not qualify for

18   the level of protection initially asserted, that Party or non-party must promptly notify all other

19   parties that it is withdrawing the mistaken designation.

20   5.2    Manner and Timing of Designations. Except as otherwise provided in this

21   Order (see, e.g., second paragraph of section 5.2(a), below), or as otherwise stipulated or ordered,

22   material that qualifies for protection under this Order must be clearly so designated before the

23   material is disclosed or produced. Designation in conformity with this Order requires:

24   (a)    for information in documentary form: (apart from transcripts of

25   depositions or other pretrial or trial proceedings), that the Producing Party affix the legend

26   "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" at the top

27   of each page that contains protected material. If only a portion or portions of the material on a

28   page qualifies for protection, the Producing Party also must clearly identify the protected

1    portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each

2    portion, the level of protection being asserted (either "CONFIDENTIAL" or "HIGHLY

3    CONFIDENTIAL – ATTORNEY EYES ONLY").

4              A Party or non-party that makes original documents or materials available

5    for inspection need not designate them for protection until after the inspecting Party has indicated

6    which material it would like copied and produced. During the inspection and before the

7    designation, all of the material made available for inspection shall be deemed "HIGHLY

8    CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the

9    documents it wants copied and produced, the Producing Party must determine which documents,

10    or portions thereof, qualify for protection under this Order, then, before producing the specified

11    documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or

12    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY") at the top of each page that

13    contains Protected Material. If only a portion or portions of the material on a page qualifies for

14    protection, the Producing Party also must clearly identify the protected portion(s) (e.g. by making

15    appropriate markings in the margins) and must specify, for each portion, the level of protection

16    being asserted (either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS'

17    EYES ONLY").

18              (b)    for testimony given in deposition or in other pretrial or trial

19    proceedings, that the Party or non-party offering or sponsoring the testimony identify on the

20    record, before the close of the deposition, hearing, or other proceeding, all protected testimony,

21    and further specify any portions of the testimony that qualify as "HIGHLY CONFIDENTIAL –

22    ATTORNEYS' EYES ONLY." When it is impractical to identify separately each portion of

23    testimony that is entitled to protection, and when it appears that substantial portions of the

24    testimony may qualify for protection, the Party or non-party that sponsors, offers, or gives the

25    testimony may invoke on the record (before the deposition or proceeding is concluded) a right to

26    have up to 20 days to identify the specific portions of the testimony as to which protection is

27    sought and to specify the level of protection being asserted ("CONFIDENTIAL" or "HIGHLY

28    CONFIDENTIAL – ATTORNEYS' EYES ONLY"). Only those portions of the testimony that are

1  appropriately designated for protection within the 20 days shall be covered by the provisions of

2  this Stipulated Protective Order. Transcript pages containing Protected Material must be separately

3  bound by the court reporter, who must affix to the top of each such page the legend

4  "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," as

5  instructed by the Party or nonparty offering or sponsoring the witness or presenting the testimony.

6              (c)      for information produced in some form other than documentary, and

7  for any other tangible items, that the Producing Party affix in a prominent place on the exterior of

8  the container or containers in which the information or item is stored the legend

9  "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." If only

10  portions of the information or item warrant protection, the Producing Party, to the extent

11  practicable, shall identify the protected portions, specifying whether they qualify as "Confidential"

12  or as "Highly Confidential – Attorneys' Eyes Only."

13              5.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure

14  to designate qualified information or items as "Confidential" or "Highly Confidential – Attorneys'

15  Eyes Only" does not, standing alone, waive the Designating Party's right to secure protection

16  under this Order for such material. If material is appropriately designated as "Confidential" or

17  "Highly Confidential – Attorneys' Eyes Only" after the material was initially produced, the

18  Receiving Party, on timely notification of the designation, must make reasonable efforts to assure

19  that the material is treated in accordance with the provisions of this Order.

20      **6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS**

21              6.1     Timing of Challenges. Unless a prompt challenge to a Designating Party's

22  confidentiality designation is necessary to avoid foreseeable substantial unfairness, unnecessary

23  economic burdens, or a later significant disruption or delay of the litigation, a Party does not

24  waive its right to challenge a confidentiality designation by electing not to mount a challenge

25  promptly after the original designation is disclosed.

26              6.2     Meet and Confer. A Party that elects to initiate a challenge to a Designating

27  Party's confidentiality designation must do so in good faith and must begin the process by

28  conferring directly (in voice to voice dialogue; other forms of communication are not sufficient)

1   with counsel for the Designating Party. In conferring, the challenging Party must explain the basis

2   for its belief that the confidentiality designation was not proper and must give the Designating

3   Party an opportunity to review the designated material, to reconsider the circumstances, and, if no

4   change in designation is offered, to explain the basis for the chosen designation. A challenging

5   Party may proceed to the next stage of the challenge process only if it has engaged in this meet

6   and confer process first.

7        6.3    Judicial Intervention. A Party that elects to press a challenge to a

8   confidentiality designation after considering the justification offered by the Designating Party may

9   file and serve a motion under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if

10   applicable) that identifies the challenged material and sets forth in detail the basis for the

11   challenge. Each such motion must be accompanied by a competent declaration that affirms that the

12   movant has complied with the meet and confer requirements imposed in the preceding paragraph

13   and that sets forth with specificity the justification for the confidentiality designation that was

14   given by the Designating Party in the meet and confer dialogue. The burden of persuasion in any

15   such challenge proceeding shall be on the Designating Party. Until the court rules on the

16   challenge, all parties shall continue to afford the material in question the level of protection to

17   which it is entitled under the Producing Party's designation.

18   7.   **ACCESS TO AND USE OF PROTECTED MATERIAL**

19        7.1    Basic Principles. A Receiving Party may use Protected Material that is

20   disclosed or produced by another Party or by a non-party in connection with this case only for

21   prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be

22   disclosed only to the categories of persons and under the conditions described in this Order. When

23   the litigation has been terminated, a Receiving Party must comply with the provisions of section

24   11, below (FINAL DISPOSITION). Protected Material must be stored and maintained by a

25   Receiving Party at a location and in a secure manner that ensures that access is limited to the

26   persons authorized under this Order.

27

28

1    7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise

2    ordered by the court or permitted in writing by the Designating Party, a Receiving Party may

3    disclose any information or item designated CONFIDENTIAL only to:

4        (a)    the Receiving Party's Outside Counsel of record in this action, as

5    well as employees of said Counsel to whom it is reasonably necessary to disclose the information

6    for this litigation and who have signed the "Agreement to Be Bound by Protective Order" that is

7    attached hereto as Exhibit A;

8        (b)    the officers, directors, and employees (including House Counsel) of

9    the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have

10   signed the "Agreement to Be Bound by Protective Order" (Exhibit A);

11       (c)    experts (as defined in this Order) of the Receiving Party to whom

12   disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be

13   Bound by Protective Order" (Exhibit A);

14       (d)    the Court and its personnel;

15       (e)    court reporters, their staffs, and professional vendors to whom

16   disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be

17   Bound by Protective Order" (Exhibit A);

18       (f)    during their depositions, witnesses in the action to whom disclosure

19   is reasonably necessary and who have signed the "Agreement to Be Bound by Protective Order"

20   (Exhibit A). Pages of transcribed deposition testimony or exhibits to depositions that reveal

21   Protected Material must be separately bound by the court reporter and may not be disclosed to

22   anyone except as permitted under this Stipulated Protective Order.

23       (g)    the author of the document or the original source of the information.

24   7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

25   ONLY" Information or Items. Unless otherwise ordered by the court or permitted in writing by the

26   Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY

27   CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

28

1            (a)       the Receiving Party's Outside Counsel of record in this action, as

2   well as employees of said Counsel to whom it is reasonably necessary to disclose the information

3   for this litigation and who have signed the "Agreement to Be Bound by Protective Order" that is

4   attached hereto as Exhibit A;

5            (b)       Experts (as defined in this Order) (1) to whom disclosure is

6   reasonably necessary for this litigation, (2) who have signed the "Agreement to Be Bound by

7   Protective Order" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4,

8   below, have been followed;

9            (c)       the Court and its personnel;

10           (d)       court reporters, their staffs, and professional vendors to whom

11   disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be

12   Bound by Protective Order" (Exhibit A); and

13           (e)       the author of the document or the original source of the information.

14        7.4      Procedures for Approving Disclosure of "HIGHLY CONFIDENTIAL –

15   ATTORNEYS' EYES ONLY" Information or Items to "Experts"

16           (a)       Unless otherwise ordered by the court or agreed in writing by the

17   Designating Party, a Party that seeks to disclose to an "Expert" (as defined in this Order) any

18   information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS'

19   EYES ONLY" first must make a written request to the Designating Party that (1) identifies the

20   specific HIGHLY CONFIDENTIAL information that the Receiving Party seeks permission to

21   disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her

22   primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's

23   current employer(s), (5) identifies each person or entity from whom the Expert has received

24   compensation for work in his or her areas of expertise or to whom the expert has provided

25   professional services at any time during the preceding five years, and (6) identifies (by name and

26   number of the case, filing date, and location of court) any litigation in connection with which the

27   Expert has provided any professional services during the preceding five years.

28

STIPULATED PROTECTIVE ORDER

1           (b)     For the first 30 days after filing of the complaint, a Party that makes

2   a request and provides the information specified in the preceding paragraph may disclose the

3   subject Protected Material to the identified Expert unless, within three court days of delivering the

4   request, the Party receives a written objection from the Designating Party. Thirty one (31) days

5   after filing of the complaint a Party that makes a request and provides the information specified in

6   the preceding paragraph may disclose the subject Protected Material to the identified Expert

7   unless, within seven (7) court days of delivering the request, the Party receives a written objection

8   from the Designating Party. Any such objections must set forth in detail the grounds on which it is

9   based.

10           (c)     A Party that receives a timely written objection must meet and

11   confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the

12   matter by agreement. If no agreement is reached, the Party seeking to make the disclosure to the

13   Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local

14   Rule 79-5, if applicable) seeking permission from the court to do so. Any such motion must

15   describe the circumstances with specificity, set forth in detail the reasons for which the disclosure

16   to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail and

17   suggest any additional means that might be used to reduce that risk. In addition, any such motion

18   must be accompanied by a competent declaration in which the movant describes the parties'

19   efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer

20   discussions) and sets forth the reasons advanced by the Designating Party for its refusal to approve

21   the disclosure. In any such proceeding the Party opposing disclosure to the Expert shall bear the

22   burden of proving that the risk of harm that the disclosure would entail (under the safeguards

23   proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

24   **8.**     **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN**

25         **OTHER LITIGATION**

26      If a Receiving Party is served with a subpoena or an order issued in other litigation that

27   would compel disclosure of any information or items designated in this action as

28   "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," the

1    Receiving Party must so notify the Designating Party, in writing (by fax, if possible) immediately

2    and in no event more than three court days after receiving the subpoena or order. Such notification

3    must include a copy of the subpoena or court order. The Receiving Party also must immediately

4    inform in writing the Party who caused the subpoena or order to issue in the other litigation that

5    some or all the material covered by the subpoena or order is the subject of this Protective Order. In

6    addition, the Receiving Party must deliver a copy of this Stipulated Protective Order promptly to

7    the Party in the other action that caused the subpoena or order to issue. The purpose of imposing

8    these duties is to alert the interested parties to the existence of this Protective Order and to afford

9    the Designating Party in this case an opportunity to try to protect its confidentiality interests in the

10   court from which the subpoena or order issued. The Designating Party shall bear the burdens and

11   the expenses of seeking protection in that court of its confidential material – and nothing in these

12   provisions should be construed as authorizing or encouraging a Receiving Party in this action to

13   disobey a lawful directive from another court.

14       **9.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

15       If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

16   Material to any person or in any circumstance not authorized under this Stipulated Protective

17   Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the

18   unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c)

19   inform the person or persons to whom unauthorized disclosures were made of all the terms of this

20   Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to

21   Be Bound" that is attached hereto as Exhibit A.

22       **10.    FILING PROTECTED MATERIAL**

23       Without written permission from the Designating Party or a court order secured after

24   appropriate notice to all interested persons, a Party may not file in the public record in this action

25   any Protected Material. A Party that seeks to file under seal any Protected Material must comply

26   with Civil Local Rule 79-5.

27       **11.    FINAL DISPOSITION**

28

1      Unless otherwise ordered or agreed in writing by the Producing Party, within sixty days

2  after the final termination of this action, each Receiving Party must return all Protected Material to

3  the Producing Party. As used in this subdivision, "all Protected Material" includes all copies,

4  abstracts, compilations, summaries or any other form of reproducing or capturing any of the

5  Protected Material. With permission in writing from the Designating Party, the Receiving Party

6  may destroy some or all of the Protected Material instead of returning it. Whether the Protected

7  Material is returned or destroyed, the Receiving Party must submit a written certification to the

8  Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty day

9  deadline that identifies (by category, where appropriate) all the Protected Material that was

10  returned or destroyed and that affirms that the Receiving Party has not retained any copies,

11  abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected

12  Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all

13  pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product,

14  even if such materials contain Protected Material. Any such archival copies that contain or

15  constitute Protected Material remain subject to this Protective Order as set forth in Section 4

16  (DURATION), above.

17      **12.**   **MISCELLANEOUS**

18        12.1   Right to Further Relief. Nothing in this Order abridges the right of any

19  person to seek its modification by the Court in the future.

20        12.2   Right to Assert Other Objections. By stipulating to the entry of this

21  Protective Order no Party waives any right it otherwise would have to object to disclosing or

22  producing any information or item on any ground not addressed in this Stipulated Protective

23  Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of

24  the material covered by this Protective Order.

25      **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

26     Dated: August 24, 2007          BERGESON, LLP

27

28                       By: _____

STIPULATED PROTECTIVE ORDER

John W. Fowler
Attorneys for Plaintiff
VERIGY US, INC.

Dated: August 24, 2007

Mount & Stoelker P.C.

By: _____
Daniel S. Mount, Esq
Kevin M. Pasquinelli Esq.
Attorneys for Defendants
ROMI OMAR MAYDER, SILICON TEST
SYSTEMS, INC., and WESLEY MAYDER

*VIA FACSIMILE*

(AS MODIFIED BY THE COURT),

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____ August 29, 2007 _____

[name of judge]    Howard R. Lloyd

United States District/Magistrate Judge

12

STIPULATED PROTECTIVE ORDER

1  **EXHIBIT A**

2  **ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

3  I, _____ [print or type full name], of _____

4  [print or type full address], declare under penalty of perjury that I have read in its entirety and

5  understand the Stipulated Protective Order that was issued by the United States District Court for

6  the Northern District of California on ~~[date]~~ August 29, 2007 in the case of _____ *Verigy US, Inc. v. Mayder, et al.,* ~~[insert formal name of the~~

7  C07-04330 RMW (HRL) ~~case and the number and initials assigned to it by the court]~~. I agree to comply with and to be

8  bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that

9  failure to so comply could expose me to sanctions and punishment in the nature of contempt. I

10 solemnly promise that I will not disclose in any manner any information or item that is subject to

11 this Stipulated Protective Order to any person or entity except in strict compliance with the

12 provisions of this Order.

13     I further agree to submit to the jurisdiction of the United States District Court for the

14 Northern District of California for the purpose of enforcing the terms of this Stipulated Protective

15 Order, even if such enforcement proceedings occur after termination of this action.

16     I hereby appoint _____ [print or type full name] of

17 _____ [print or type full address and telephone number]

18 as my California agent for service of process in connection with this action or any proceedings

19 related to enforcement of this Stipulated Protective Order.

20     Date: _____

21     City and State where sworn and signed: _____

22     Printed name: _____ [printed name]

23     Signature: _____ [signature]

24

25

26

27

28