1   DANIEL J. BERGESON, Bar No. 105439                    **PUBLIC VERSION**
    dbergeson@be-law.com
2   MELINDA M. MORTON, Bar No. 209373
    mmorton@be-law.com
3   DONALD P. GAGLIARDI, Bar No. 138979
    dgagliardi@be-law.com
4   MICHAEL W. STEBBINS, Bar No. 138326
    mstebbins@be-law.com
5   BERGESON, LLP
    303 Almaden Boulevard, Suite 500
6   San Jose, CA 95110-2712
    Telephone: (408) 291-6200
7   Facsimile: (408) 297-6000

8   Attorneys for Plaintiff
    VERIGY US, INC.
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13   VERIGY US, INC, a Delaware Corporation,       Case No. C07 04330 RMW (HRL)

14                 Plaintiff,                       **VERIGY'S NOTICE OF MOTION AND
                                                    MOTION FOR SUMMARY
15        vs.                                       ADJUDICATION OF ITS THIRD AND
                                                    EIGHTH CLAIMS FOR RELIEF;
16   ROMI OMAR MAYDER, an individual;               SUPPORTING MEMORANDUM OF
     WESLEY MAYDER, an individual; SILICON          POINTS AND AUTHORITIES**
17   TEST SYSTEMS, INC., a California Corporation;
     and SILICON TEST SOLUTIONS, LLC, a             Date:    October 3, 2008
18   California Limited Liability Corporation,      Time:    9:00 am
     inclusive,                                     Ctrm.:   6
19                                                  Judge:   Hon. Ronald M. Whyte
                   Defendants.
20
                                                    Complaint Filed:  August 22, 2007
21                                                  Trial Date:       None Set

22

23   AND RELATED CROSS-ACTIONS

24

25           **DOCUMENT SUBMITTED UNDER SEAL**

26        **HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**

27        **PURSUANT TO STIPULATED PROTECTIVE ORDER**

28

# TABLE OF CONTENTS

I.     INTRODUCTION AND BACKGROUND ........................................................................ 1

II.    STATEMENT OF FACTS NOT GENUINELY DISPUTED ........................................... 3

    A.    Mayder's Employment with Verigy.......................................................................... 3

    B.    While Employed By Verigy, Mayder Founded STS.................................................. 5

    C.    While Employed By Verigy, Mayder Used Verigy's Information For the
        Benefit of STS. ........................................................................................................ 6

    D.    Mayder Attempts to Conceal His Actions............................................................... 8

    E.    Verigy Discovers Mayder's Actions ........................................................................ 9

III.   ARGUMENT ................................................................................................................... 9

    A.    Verigy Is Entitled to Summary Adjudication of Its Eighth Claim For Relief
        Against Mayder For Breach of the Duty of Loyalty. ............................................. 10

        1.    As A Verigy Employee, Mayder Owed Verigy A Duty Of Loyalty......... 10

        2.    Mayder Breached His Duty Of Loyalty To Verigy.................................. 11

        3.    Verigy Suffered Damages As A Result Of Mayder's Breach.................. 15

    B.    Verigy Is Entitled To Summary Adjudication Of Its Third Claim For Relief
        For Violation Of The Computer Fraud And Abuse Act......................................... 16

        1.    Romi Mayder Intentionally Accessed a Protected Computer .................. 16

        2.    Romi Mayder's Access Was Without Authorization .............................. 17

        3.    Verigy Has Sustained "Loss" Within The Meaning Of The CFAA As
            a Matter of Law and Undisputed Fact. .................................................... 20

IV.    CONCLUSION .............................................................................................................. 22

1

**TABLE OF AUTHORITIES**

2

Federal Cases

3

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 247-48 (1986)....................................................................................... 9, 10

4

*Celotex Corp. v. Catrett*
5
    477 U.S. 317, 323 (1986) ................................................................................................ 10

6

*Charles Schwab & Co., Inc. v. Carter*
    2005 WL 351929 (N.D. Ill. Feb. 11, 2005)....................................................... 18, 19, 21

7

*Contract Associates Office Interiors, Inc. v. Ruite*,
8
    2008 WL 3286798 (E.D. Cal. Aug. 6, 2008) ................................................................. 22

9

*Creative Computing v. Getloaded.com LLC*
    386 F.3d 930, 935 (9th Cir. 2004).................................................................................. 21

10

*Hewlett-Packard Co. v. Byd: Sign, Inc.*
11
    2007 WL 275476, at *12-*13 (E.D.Tex. Jan. 25, 2007) ................................................ 19

12

*Iconix, Inc. v. Tokuda*
    457 F.Supp.2d 969 (N.D. Cal. 2006) ............................................................................. 14

13

*Int'l Airport Ctrs., L.L.C. v. Citrin*
14
    440 F.3d 418, 420-421 (7th Cir. 2006) .............................................................. 17, 18, 19

15

*Otsuka v. Polo Ralph Lauren Corp.*
    2007 WL 3342721, at * 3 (N.D. Cal. Nov. 9, 2007)....................................................... 10

16

*Pacific Aerospace & Electronics, Inc. v. Taylor*
17
    295 F. Supp. 2d 1188, 1196 (E.D. Wash. 2003) ........................................................... 18

18

*P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*
    2007 WL 708978, at *5 (D.N.J. Mar. 5, 2007) ............................................................. 21

19

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*
20
    119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000)................................................. 18, 19

21

*State of Cal., on Behalf of California Dept. of Toxic Substances Control v. Campbell*
    138 F.3d 772, 780 (9th Cir. 1998)................................................................................. 10

22

*SuccessFactors, Inc. v. Softscape, Inc.*
23
    --- F.Supp.2d ---, No. 08-1376, 2008 WL 906420, at *5 (N.D.Cal. Apr. 1, 2008)........... 21

24

*Therapeutic Research Faculty v. NBTY, Inc.*
    488 F. Supp. 2d 991, 996-97 (E.D. Cal. 2007)............................................................. 21

25

*United States v. Trotter*
26
    478 F.3d 918, 921 (8th Cir. 2007) ................................................................................. 17

27

*United States v. Galindo*
    871 F.2d 99, 101 (9th Cir. 1989)................................................................................... 18

28

*ViChip Corp. v. Lee*
    438 F. Supp. 2d 1087, 1100 (N.D. Cal. 2006) .............................................. 16, 17, 18, 19

State Cases

*Fowler v. Varian Associates, Inc.*
    196 Cal.App.3d 34 (1987) ....................................................................................... 14, 15

*Huong Que, Inc. v. Luu*
    150 Cal. App. 4th 400, 410 (2007) ........................................................................... 10, 14

*Pierce v. Lyman*
    1 Cal. App. 4th 1093, 1101 (1991) ................................................................................ 10

*Service Employees Intern. Union, Local 250 v. Colcord*
    160 Cal. App. 4th 362 (2008) ..................................................................................... 15, 16

*Stokes v. Dole Nut Co.*
    41 Cal. App. 4th 285, 295 (1995) ........................................................................ 11, 12, 13, 14

Federal Statutes

18 U.S.C. §§ 1030(a)(5)(A-B) ........................................................................................... 16

18 U.S.C. §§ 1030(a)(5)(B)(i) ........................................................................................... 20

18 U.S.C. §1030 .................................................................................................... passim

18 U.S.C. §1030(e)(11) .................................................................................................... 21

18 U.S.C. §1030(e)(2)(B) ................................................................................................. 16

18 U.S.C. §1030(g) ........................................................................................................... 20

State Statutes

Cal. Labor Code § 2860 .................................................................................................... 11

Federal Rules

Fed. R. Civ. Pro. Rule 56(d)(2) ........................................................................................ 10

State Regulations

N.D. Cal. Civil L.R. 7-4 ...................................................................................................... 1

1

## NOTICE OF MOTION AND MOTION

2  TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that, on Friday, October 3, 2008, at 9:00 a.m., or as soon thereafter

4  as the matter may be heard before the Hon. Ronald M. Whyte, United States District Judge,

5  Courtroom 6 of the United States District Court for the Northern District of California, San Jose

6  Division, 280 South First Street, San Jose, California, plaintiff Verigy U.S., Inc. ("Verigy"), shall

7  and hereby does move the Court for summary adjudication of its third and eighth claims for relief

8  within its Complaint in the above-captioned action.

9          The motion is made on the grounds that, as to each of the third and eighth claims for relief

10  within Verigy's Complaint, the material facts are not genuinely disputed and Verigy is entitled to

11  judgment as a matter of law.

12          This motion is based upon this notice of motion and motion, the supporting memorandum of

13  points and authorities, the accompanying declarations of Melinda M. Morton and Amy Price, the

14  complete files and records in this action, and such additional evidence and argument as may

15  hereinafter be presented.

16

## STATEMENT OF ISSUES

17

(N.D. Cal. Civil L.R. 7-4)

18          1.          Should Verigy obtain Summary Adjudication of its Eighth Claim for Relief against

19  Romi Mayder for breach of the duty of loyalty?

20          2.          Should Verigy obtain Summary Adjudication of its Third Claim for Relief against

21  Romi Mayder under the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq.*?

22

## MEMORANDUM OF POINTS AND AUTHORITIES

23  **I.          INTRODUCTION AND BACKGROUND**

24          This case involves the misappropriation of Verigy's valuable trade secrets and confidential

25  information by Romi Mayder, a former Verigy employee, by the new companies he formed, Silicon

26  Test Solutions, LLC ("STS LLC") and Silicon Test Systems Inc. ("STS, Inc.") (collectively, the

27  "STS Entities"), and by Romi Mayder's brother and co-conspirator, defendant Wes Mayder, who

28  invested in both STS Entities, was a member of STS LLC and a board member of STS, Inc.

1

1    Romi Mayder was a long-term and trusted employee of Verigy and its predecessors-in-

2    interest, Agilent Technologies, Inc. ("Agilent") and Hewlett Packard Company, who abruptly

3    resigned his employment with Verigy in September 2006 after forming the STS Entities.  Mayder's

4    work for Verigy and its predecessors was to develop an application specific integrated circuit

5    ("ASIC") called the ███████████    Mayder was subject to an Agreement Regarding

6    Confidential Information and Proprietary Developments ("ARCIPD") at Verigy and its

7    predecessors-in-interest.

8        In or about early June 2006, mere weeks after signing the ARCIPD with Verigy that

9    affirmatively stated that Mayder was not authorized at any time to use or disclose confidential

10   Verigy information or to remove Verigy property from its premises without Verigy's permission,

11   Mayder began (1) taking steps to form the STS Entities, (2) using Verigy's confidential information

12   to benefit the STS Entities, and (3) emailing Verigy documents to his home computer, using his

13   Yahoo email account to cover up his activities.  Mayder emailed the ████████████

14   ████████████ to himself, and by June 12, 2006, he had slightly revised it, done a global

15   search and replace to substitute "Verigy" with "Silicon Test Solutions," and sent it off to Robert

16   Pochowski, a potential investor who was not a Verigy employee.  At least two other times that

17   summer Mayder emailed additional documents to Pochowski without even bothering to make any

18   changes to hide the fact that they were Verigy documents.  Mayder also emailed a ████████

19   ████████████████████ in June 2006 to ████████████████████, two

20   potential suppliers for his independent competing business, all while still employed at Verigy.

21       In early July 2007, Verigy learned that Romi Mayder was marketing a product very similar to

22   Verigy's technologies and began an investigation to determine whether Romi Mayder was using

23   Verigy trade secrets.  Pochowski supplied Verigy with the emails he had received from Romi

24   Mayder, and Verigy discovered that Mayder had emailed and used Verigy documents without

25   authorization, and to advance his own interests.

26       On August 22, 2007, after Verigy's investigation revealed that Romi Mayder had

27   misappropriated and was using Verigy's trade secrets, Verigy filed this action and sought a

28   temporary restraining order ("TRO").  The TRO was granted on August 24, 2007 and remained in

2

1    force until replaced by a five (5) month preliminary injunction granted by this Court on February 29,

2    2008.  (Docket No. 171.)  The preliminary injunction was extended for another four (4) months by

3    subsequent order dated May 20, 2008 which found defendants in contempt of the TRO.  (Docket No.

4    212.)

5           Presently, Verigy moves for summary adjudication of the third and eighth claims for relief in

6    Verigy's Complaint.

7    **II.    STATEMENT OF FACTS NOT GENUINELY DISPUTED**

8           **A.    Mayder's Employment with Verigy.**

9           Romi Mayder was continuously employed from June 15, 1998 to September 22, 2006 by

10   Verigy and its predecessor, Agilent, and became a Verigy employee on June 1, 2006.  (Declaration

11   of Manuel Guerzoni (Docket No. 6) ("Guerzoni Decl."), ¶¶2, 3, Ex. A.)  On June 1, 2006, the day

12   Verigy started operations, an email was sent to all Verigy employees reminding them not to share

13   confidential company information.  (Declaration of Amy Price, ¶ 2, Ex. A.)  The email states, *inter*

14   *alia*:

15

16

17

18   (*Id.*)  The email goes on to define "confidential information" and prohibit its disclosure:

19

20

21

22

23

24

25

26

27   (*Id.*)  Finally, the email states:

28

VERIGY'S NOTICE OF MOTION AND MOTION FOR SUMMARY
ADJUDICATION OF ITS THIRD AND EIGHTH CLAIMS FOR RELIEF        Case No. C07 04330 RMW (HRL)

1  ████████" (*Id.*)

2      Verigy's Standards of Business Conduct state, in pertinent part, that:

3      All nonpublic information, including financial data and projections, proprietary and
       technical information, . . . must only be used for company business purposes.  You
4      have an obligation to use all reasonable efforts to safeguard Verigy's nonpublic
       information.  You may not disclose nonpublic information to anyone outside of the
5      company, except when disclosure is required by law or when disclosure is required
       for business purposes and appropriate steps have been taken to prevent misuse of that
6      information.

7  (*Id.*, ¶ 3, Ex. B (Standards of Business Conduct).)

8      As a condition of his employment with Verigy, Romi Mayder was required to sign, and did

9  sign, an Agreement Regarding Confidential Information and Proprietary Developments (the

10 "ARCIPD").  (Guerzoni Decl., ¶3, Ex. B.)  The ARCIPD contains the following pertinent

11 provisions:

12     1.    This Agreement concerns trade secrets, confidential business and technical
       information, and know-how not generally known to the public which will become
13     known to or acquired or produced by me in connection with my employment by
       Verigy (hereinafter "Confidential Information.")    Confidential Information
14     includes, without limitation, information on Verigy organizations and structure;
       staffing; finance; strategic plans; information on employee performance,
15     compensation, assignments; information on research and development,
       manufacturing and marketing; as well as information which Verigy receives from
16     third parties under an obligation of confidentiality.  Confidential Information also
       includes information of the foregoing types that I received during any period of
17     employment with Agilent Technologies, Inc., whether such information relates to
       Agilent or is or was received from third parties under an obligation of
18     confidentiality.  I agree: (a) to use such Confidential Information only in the
       performance of Verigy duties; (b) to hold such Confidential Information in
19     confidence and trust; and (c) to use all reasonable precautions to ensure that such
       Confidential Information is not disclosed to unauthorized persons or used in an
20     unauthorized manner, both during and after my employment with Verigy.

21     2.    This Agreement also concerns inventions or discoveries (whether or not
       patentable), designs, works of authorship, mask works, improvements, data,
22     processes, computer programs and software (herein called "Proprietary
       Developments") that are conceived or made by me alone or with others while I am
23     employed by Verigy or that relate to the research and development or the business
       of Verigy.  Such Proprietary Developments are the sole property of Verigy, and I
24     agree: (a) to disclose them promptly to Verigy; (b) to assign them to Verigy; and (c)
       to execute all documents and cooperate with Verigy in all necessary activities to
25     obtain patent, copyright, mask works and/or trade secret protection in all countries,
       at Verigy US, Inc.'s expense.

26
       3.    The product of all work performed by me during and within the scope of my
27     Verigy employment including, without limitation, any reports, documents drawings,
       computer programs, devices and models, including all copies thereof, will be the

28
                                    4

1  property of Verigy and Verigy will have the sole right to use, sell, license, publish
   or otherwise disseminate or transfer rights in such a work product.

2
3  4.      I will not remove any Verigy property from Verigy premises without Verigy
           US, Inc.'s permission

4  5.      Upon termination of my employment with Verigy, I will return all Verigy
           property to Verigy unless Verigy authorizes me in writing to retain such property.

5
6  (*Id.*)

7  Mayder was employed by Verigy as a hardware design engineer in the Memory Test

8  Division.  (Declaration of Ira Leventhal in support of Verigy's Ex Parte Application for Temporary

9  Restraining Order, etc. (Docket No. 9) ("Leventhal Decl., August 22, 2007"), ¶ 9.)  Mayder's work

10 for Verigy was to develop specifications for an ASIC called the ███████████.  (Declaration of

11 Romi Mayder in response to Order to Show Cause (Docket No. 55) ("Mayder Decl., October 11,

12 2007") ¶19; Leventhal Decl., August 22, 2007, ¶ 9.)  His responsibilities included developing a

13 request for quote ("RFQ") to be sent to vendors to solicit quotes for designing and manufacturing the

14 ██████████.  (*Id.*)

15 **B.      While Employed By Verigy, Mayder Founded STS.**

16 In early June 2006, Mayder contacted Robert Pochowski, a former Agilent executive who

17 was not a Verigy employee, about the possibility of forming a business together.  (Mayder Decl.,

18 October 11, 2007, ¶¶23, 28; Declaration of Robert Pochowski in Support of Verigy's Ex Parte

19 Application for a Temporary Restraining Order, etc. (Docket No. 11) ("Pochowski Decl., August 22,

20 2007") ¶ 4.)

21 On June 8, 2006, Mayder met with Pochowski and asked him to invest in a company he was

22 starting called Silicon Test Systems.  (Pochowski Decl., August 22, 2007, ¶¶4-6.)  On June 15, 2006,

23 Mayder registered the domain name "silicontest.com" with Network Solutions for his new company.

24 (Mayder Decl., October 11, 2007, ¶32; Declaration of Melinda Morton in Support of Verigy's Ex

25 Parte Application for a Temporary Restraining Order, etc. ("Morton Decl., August 22, 2007")

26 (Docket No. 10), ¶3, Ex. A.).)  Mayder was the administrator for the website.  (Morton Decl., August

27 22, 2007, ¶3, Ex. A.)

28 On September 8, 2006, Silicon Test Solutions, LLC was registered with the California

5

VERIGY'S NOTICE OF MOTION AND MOTION FOR SUMMARY
ADJUDICATION OF ITS THIRD AND EIGHTH CLAIMS FOR RELIEF      Case No. C07 04330 RMW (HRL)

1    Secretary of State.  (*Id.*, ¶7, Ex. D.)

2        **C.    While Employed By Verigy, Mayder Used Verigy's Information For the Benefit**
         **of STS.**

3

4        In early June 2006, mere weeks after signing the ARCIPD with Verigy that affirmatively

5    stated he was not authorized at any time to use or disclose confidential Verigy information, that

6    Verigy had the sole right to disseminate all work performed by him, and that Romi Mayder was not

7    authorized to remove Verigy property from its premises without Verigy's permission, Romi Mayder

8    began emailing confidential Verigy documents to his home computer, using his Yahoo email

9    account to cover up his activities.  (Declaration of Melinda Morton submitted herewith ("Morton

10   Decl." )¶¶ 2-3, Ex. A (Romi Mayder Depo.Tr.,  211-213) and Ex. B (Romi Mayder Depo. Ex. 29).)

11   Among the documents Mayder emailed to himself were ████████████████████████████

12   ████████████.  (*Id*. and at Ex. A (Romi Mayder Depo Tr., 211-213; 215-221);  Declaration of

13   Andrew Lee in support of Verigy's Ex Parte Application for Temporary Restraining Order, etc.

14   (Docket No. 8) ("Lee Decl."), ¶ 6, Ex. A; Morton Decl., August 22, 2007, ¶4, Ex. B and C;

15   Pochowski Decl., August 22, 2007, ¶¶19-20, Ex. I and J.)  Mayder revised it slightly, performing a

16   global search and replace to replace "Verigy" with "Silicon Test Solutions."  (Morton Decl., ¶ 2, Ex.

17   A (Romi Mayder Depo.Tr., at 215:16-217:16; 218:14-221:5) and Ex. C (Romi Mayder Depo Ex.

18   30.)

19       On June 12, 2006, during his work day for Verigy, Romi Mayder emailed the altered

20   specification to Pochowski, without benefit of a nondisclosure agreement, from his private email

21   account ████████████████.  (Mayder Decl., October 11, 2007, ¶28; Morton Decl., ¶2, Ex.

22   A (Romi Mayder Depo.Tr., at 211:6-12) and Ex. B (Romi Mayder Depo. Ex. 29); Pochowski Decl.,

23   August 22, 2007, ¶ 7, Ex. A.) Mayder described the document as a first draft ████████████

24   ████████████, a potential supplier to STS.  (*Id*.)  The properties window for the RFQ

25   Mayder sent to Pochowski shows it was an Agilent document.  (Pochowski Decl., August 22, 2007,

26   ¶18, 19, Ex. I.)  The document is virtually identical to a document Mayder created for Verigy.  (*Cf.*

27   Pochowski Decl., August 22, 2007, Ex. A *with* Lee Decl., August 22, 2007, Ex. A; *see also* Morton

28   Decl., August 22, 2007, ¶4, Ex. B (a redline comparison of the two documents).)  The documents

6

1    even have the same typographical and grammatical errors.  (Morton Decl., August 22, 2007, ¶4.)

2          On June 14, 2006, during his work day for Verigy, Mayder sent Pochowski an email

3    attaching two documents he described as the ████████████ and an updated version of

4    the technical data sheet Mayder previously sent Pochowski, and asked him to send them to

5    Peregrine.  (Pochowski Decl., Aug. 22, 2007, ¶9, Ex. B.)  The first attachment was ████████

6    ████████" (*Id.*) The second attachment, entitled "████████," was a revision of the

7    document Mayder sent two days earlier, and was intended as an appendix ████████.  *Id.*  The

8    properties windows for both documents show they were Agilent documents.  (Pochowski Decl.,

9    August 22, 2007, ¶¶9, 18-20, Ex. I,  J.)  A comparison of the "████████" with

10   Verigy's "████████" (which Mayder worked on at Verigy) shows the two

11   documents with identical layouts, section headings, information structure, and typographical errors.

12   (*Cf.* Lee Decl., ¶6, Ex. A *with* Pochowski Decl., Aug. 22, 2007, ¶9, Ex. B; see also, Morton Decl.,

13   Aug. 22, 2007, ¶5, Ex. C (a redline comparison of the two documents).)  Mayder has admitted using

14   the ████████ documents as a basis for the Picasso documents, explaining that "████████

15   ████  (Declaration of Melinda M. Morton In Support of Plaintiff's Reply and Supplemental Brief

16   re OSC, etc. ("Morton Decl., Nov. 16, 2007") (Docket No. 98), ¶4, Ex. 2 (Romi Mayder Depo. Tr.

17   185:7-15).)

18          On June 20, 2006, during his work day at Verigy, Romi Mayder emailed the ████████

19   ████████████████████████████ sales representative.

20   (Pochowski Decl., Aug. 22, 2007, ¶ 10, Ex. C.)

21          On June 22, 2006, Romi Mayder informed ████████████████████

22   that he planned to leave Verigy ████████████████████.  (Morton Decl., Aug.

23   15, 2008, ¶ 7, Ex. D (Ex. 193 to Straube Depo.Tr.))

24          On June 26, 2006, Romi Mayder emailed to Pochowski Verigy documents including a

25   spreadsheet containing detailed confidential customer requirements and block diagrams of customer

26   device requirements. (Pochowski Decl., August 22, 2007, ¶ 11, Ex. D)  Romi Mayder has admitted

27   the spreadsheet is a Verigy document.  (Morton Decl., ¶2, Ex. A (Mayder Depo Tr. 223:14-224:15).)

28   His admission is confirmed by the document's properties window, which show the author of the

7

1   document to be Hanh Lai of Agilent.  (Pochowski Decl., August 22, 2007, ¶21, Ex. K.).  Further, the

2   spreadsheet has the same typographical errors as the original Verigy document, and the diagrams

3   appear to be identical to confidential documents created at Verigy.  (*Cf*. Pochowski Decl., August

4   22, 2007, Ex. D *with* Declaration of Ken Hanh Duc Lai In Support of Plaintiff's Ex Parte

5   Application for TRO, etc. (Docket No. 7) ("Lai Decl., Aug. 22, 2007") Ex. A; *see also*, Lai Decl.,

6   Aug. 22, 2007, ¶¶3-7, Ex. B-D; Declaration of Ken Hanh Duc Lai In Support of Plaintiff's Reply

7   and Supplemental Brief Re OSC Re Preliminary Injunction (Docket No. 100) ("Lai Decl., Nov. 16,

8   2007") ¶¶2-4.)

9        On June 30, 2006, Mayder emailed his official ███████████████ (Morton

10  Decl., Aug. 15, 2008, ¶ 6, Ex. C. (Exhibits 149, 150 to Straube Depo. Tr.)  Mayder admits speaking

11  with Honeywell before leaving Verigy "████████████████████████

12  ███████████████████."  (Mayder Decl., October 11, 2007, ¶38.)

13       On August 6, 2006, Romi Mayder emailed confidential ██████████████

14  ██████████████ to Pochowski.  (Pochowski Decl. in support of Plaintiff's

15  Reply and Supplemental Papers re: Preliminary Injunction (Docket No. 97) ("Pochowski Decl.,

16  November 16, 2007") ¶ 8, Ex. 1); Lai Decl., November 16, 2007, ¶¶5-6, Ex. 3 and 4;  Morton Decl.,

17  ¶¶ 2, 5, Ex. A (Romi Mayder Depo.Tr. at 232:15-234:7) and Ex. D (Romi Mayder Depo. Exhibit 33)

18       On at least two of these occasions (June 26 and August 6, 2006), Romi Mayder emailed

19  documents to Pochowski without even bothering to make any changes to hide the fact that they were

20  Verigy documents.  (Pochowski Decl., August 22, 2007, ¶ 11, Ex. D; Pochowski Decl., November

21  16, 2007, ¶ 8, Ex. 1.)

22       **D.    Mayder Attempts to Conceal His Actions**

23       **Patent Application**.  On August 27, 2006, Mayder emailed Pochowski a draft patent

24  application, stating, ████████████████████████████

25  █████████████████████████████████████████

26  █████████████████████████████████████████

27  ████████████ (Pochowski Decl., Aug. 22, 2007, ¶13, Ex. F.)  The attached

28  draft is entitled "████████████████████" (*Id*.)

8

On September 24, 2006, Mayder emailed Pochowski about their upcoming meeting ███

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████" (*Id.*)  In fact, the disclosure Mayder and Pochowski presented to patent counsel on September 25, 2006 was an update of the disclosure Mayder wrote and sent to Pochowski on August 27, 2006.  (*Id.*)

**NDA with Honeywell**.  On September 18, 2006, as part of ongoing negotiations with STS, a Honeywell representative sent a form of nondisclosure agreement to Pochowski.  (Pochowski Decl., Aug. 22, 2007, ¶15, Ex. H, p. 2.)  Revised drafts were exchanged between Pochowski and Honeywell.  (*Id.*)  On September 20, 2006, while he was still a Verigy employee, Mayder emailed Pochowski about the nondisclosure agreement, stating, "████████████████████████

████████████████████████████████."  (*Id.*)

**E.    Verigy Discovers Mayder's Actions**

In or about July 2007, Verigy discovered that during the last three months of his employment, Romi Mayder had been emailing Verigy information to himself and others. (Verigy's Brief in Support of Ex Parte Application (Docket No. 16), at  pp. 13-14 and citations to declarations contained therein.)  Verigy responded by conducting an investigation that included the retention of counsel and a computer expert, for the purposes of determining the scope of Mayder's theft.  (*Id.*; Morton Decl., Aug. 15, 2008, ¶¶ 3-4.)  The Court also appointed a neutral, third party expert to examine Romi Mayder's computers to determine which Verigy documents he had transferred there, and the costs to Verigy of that investigation alone exceeded $17,000.  (Morton Decl., Aug. 15, 2008, ¶ 4, Ex. A.).

**III.    ARGUMENT**

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A dispute as to

9

1  a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for

2  the nonmoving party. *Id.*

3      As the moving party, Verigy bears the initial burden of identifying evidence showing the

4  absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

5  Once it has done so, the burden shifts to Defendants to set forth specific facts showing a genuine

6  issue. *Anderson,* 477 U.S. at 250.

7      The same standards and criteria apply to motions for summary adjudication. *State of Cal.,*

8  *on Behalf of California Dept. of Toxic Substances Control v. Campbell,* 138 F.3d 772, 780 (9th Cir.

9  1998). Summary adjudication may be rendered on the issue of liability, even if a genuine issue

10 exists as to the amount of damages. *Fed. R. Civ. Pro. Rule 56(d)(2).*

11     Verigy moves for summary adjudication of its third and eighth claims on the issue of

12 liability. The Eighth claim against Mayder for breach his duty of of loyalty is discussed first,

13 because the argument is also relevant to the third claim for breach of the Computer Fraud and Abuse

14 Act.

15 **A.    Verigy Is Entitled to Summary Adjudication of Its Eighth Claim For Relief**
   **Against Mayder For Breach of the Duty of Loyalty.**

16

   **1.    As A Verigy Employee, Mayder Owed Verigy A Duty Of Loyalty.**

17

18     "The elements of a cause of action for breach of a duty of loyalty, by analogy to a claim for

19 breach of fiduciary duty, are as follows: (1) the existence of a relationship giving rise to a duty of

20 loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach."

21 *Huong Que, Inc. v. Luu,* 150 Cal. App. 4th 400, (2007), *citing Pierce v. Lyman,* 1 Cal. App. 4th

22 1093, 1101 (1991).

23     A duty of loyalty is owed by all employees, regardless of their stature within the company.

24 *See Huong Que, Inc., 150 Cal. App. 4th at 414; Otsuka v. Polo Ralph Lauren Corp,* No. C07-02780

25 SI, 2007 WL 3342721, at * 3 (N.D. Cal. Nov. 9, 2007).

26     Here, it is *undisputed* that Romi Mayder was an employee of Verigy from June 1, 2006,

27 through September 21, 2006. (Guerzoni Decl., ¶¶2, 3; Declaration of Romi Mayder submitted in

28 support of Defendants' Motion for Summary Adjudication on Verigy's 3rd-5th Claims for Relief

10

1   (Docket No. 279), ("Mayder Decl., July 28, 2008") ¶ 7.)  Accordingly, as a matter of law, Romi

2   Mayder owed Verigy a duty of loyalty during his tenure as a Verigy employee.

3                        **2.        Mayder Breached His Duty Of Loyalty To Verigy.**

4            "The duty of loyalty is breached, and may give rise to a cause of action in the employer,

5   when the employee takes action which is inimical to the best interests of the employer." *Stokes v.*

6   *Dole Nut Co.,* 41 Cal. App. 4th 285, 295 (1995); *see also* Cal. Labor Code § 2860 ("Everything

7   which an employee acquires by virtue of his employment, except the compensation which is due to

8   him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during

9   or after the expiration of the term of his employment"); *id.*, § 2863 ("An employee who has any

10  business to transact on his own account, similar to that entrusted to him by his employer, shall

11  always give the preference to the business of the employer.").

12           Romi Mayder's undisputed actions, consisting of establishing the STS entities to continue

13  developing the very product he was developing on behalf of Verigy and developing this product

14  using Verigy documents and information all while still continuing to work at Verigy, constitute a

15  breach of his duty of loyalty to Verigy.  It cannot be disputed that these actions were "inimical to the

16  best interests of" Verigy, particularly where Verigy had chosen not to continue its development of

17  the ▓▓▓▓▓▓▓ due to concerns that this ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

18  ▓▓▓. *Stokes, supra*, 41 Cal. App. 4th at 295.

19           The following facts regarding Mayder's conduct are not genuinely disputed:

20    • As a condition of his employment with Verigy, Romi Mayder was required to
        sign, and did sign, the ARCIPD, which provided Mayder was not authorized at

21      any time to use or disclose confidential Verigy information, that Verigy had
        the sole right to disseminate all work performed by him, and that Romi Mayder

22      was not authorized to remove Verigy property from its premises without
        Verigy's permission (Guerzoni Decl., ¶3, Ex. B.)

23
      • In early June 2006, Mayder contacted Pochowski about the possibility of

24      forming a business together.  (Mayder Decl., October 11, 2007, ¶¶23, 28;
        Pochowski Decl., Aug. 22, 2007, ¶ 4.)

25
      • On June 8, 2006, Mayder met with Pochowski and asked him to invest in STS.

26      (Pochowski Declaration, August 22, 2007, ¶¶4-6.)
      • On June 15, 2006, Mayder registered the domain name "silicontest.com" with

27      Network Solutions for his new company.  Mayder was the administrator for the
        website.  (Morton Decl., Aug. 22, 2007, ¶3, Ex. A.); Mayder Decl., October

28      11, 2007, ¶32.)

                                              11

1

2    • On September 8, 2006, Silicon Test Solutions, LLC was registered with the
        California Secretary of State. (Morton Decl., Aug. 22, 2007, ¶7, Ex. D.)

3

4    • In early June 2006, Romi Ma ████████████████████████████████████████
        home computer, including █████████████████████████████████████████
5        ████████████████████ using his Yahoo email account to cover up his activities.
        (Morton Decl., ¶2-3, Ex. A (Romi Mayder Depo.Tr., 211-213; 215-221) and
6        Ex. B (Romi Mayder Depo. Ex. 29); Lee Decl., ¶ 6, Ex. A); Morton Decl.,
        August 22, 2007, ¶4, Ex. B and C; Pochowski Decl., August 22, 2007, ¶¶19-
        20, Ex. I and J.

7

8    • Mayder slightly revised the Verigy ████████████████ and specification,
        performing a global search and replace t █████████████" with "Silicon Test
        Solutions. (Morton Decl., ¶ 2, Ex. A (Romi Mayder Depo.Tr., at 215:16-
9        217:16; 218:14-221:5) and Ex. C (Romi Mayder Depo Ex. 30.)

10   • On June 12, 2006, during his work day for Verigy, Romi Mayder emailed the
        altered specification to Pochowski, without benefit of a nondisclosure
11       agreement, from his private email account at ████████████████████.
        (Mayder Decl., October 11, 2007, ¶28; Morton Decl., ¶2, Ex. A (Romi Mayder
12       Depo.Tr., at 211:6-12) and Ex. B (Romi Mayder Depo. Ex. 29); Pochowski
        Decl., August 22, 2007, ¶ 7, Ex. A.) Mayder described the document as a first
13       draft of an ████████████████████, a potential supplier to STS.
        (Id.) The properties window for the RFQ Mayder sent to Pochowski shows it
14       was an Agilent document. (Pochowski Decl., August 22, 2007, ¶18, 19, Ex. I.)
        The document is virtually identical to a document Mayder created for Verigy.
15       (Cf. Pochowski Decl., August 22, 2007, Ex. A with Lee Decl., August 22,
        2007, Ex. A; see also Morton Decl., August 22, 2007, ¶4, Ex. B (a redline
16       comparison of the two documents).) The documents even have the same
        typographical and grammatical errors. (Morton Decl., August 22, 2007, ¶4.)

17

18   • On June 14, 2006, during his work day for Verigy, Mayder sent
        email attaching two documents he described as the RFQ for the ████████
19       and an updated version of the technical data sheet Mayder previously sent
        Pochowski, and asked him to send them ████████ (Pochowski Decl., Aug.
20       22, 2007, ¶9, Ex. B.) The first attachment was entitled "████████████
        ████████ (Id.) The second attachment, entitled "████████████████, was a
21       revision of the document Mayder sent two days earlier, and was intended as an
        appendix to the RFQ. Id. The properties windows for both documents show
22       they were Agilent documents. (Pochowski Decl., August 22, 2007, ¶¶9, 18-20,
        Ex. I, J.) A comparison of the "████████████████████" with Verigy's
23       "████████████████" (which Mayder worked on at Verigy) shows
        the two documents with identical layouts, section headings, information
24       structure, and typographical errors. (Cf. Lee Decl., ¶6, Ex. A with Pochowski
        Decl., Aug. 22, 2007, ¶9, Ex. B; see also, Morton Decl., Aug. 22, 2007, ¶5, Ex.
25       C (a redline comparison of the two documents).) Mayder has admitted using
        the ████████████████ as a basis for the ████████████, explaining
26       that ████████████████ Morton Decl., Nov. 16, 2007, ¶4, Ex. 2 (Romi
        Mayder Depo. Tr. 185:7-15).)

27   • On June 20, 2006, during his work day at ████████████████████
        and updated technical specification for the ████████████████████
28       sales representative. (Pochowski Decl., Aug. 22, 2007, ¶ 10, Ex. C.)

12

- [REDACTED] 2006, Mayder informed [REDACTED] that Mayder planned to l[REDACTED]. (Morton Decl., Aug. 15, 2008, ¶ 7, Ex. D (Ex. 193 to Straube Depo.Tr.))

- On June 26, 2006, Mayder emailed to Pochowski Verigy documents including a spreadsheet containing detailed confidential customer requirements and block diagrams of customer device requirements. (Pochowski Decl., August 22, 2007, ¶ 11, Ex. D) These documents appear to be identical to confidential documents created at Verigy; the spreadsheet has the same typographical errors as the original Verigy document. (*Cf.* Pochowski Decl., August 22, 2007, Ex. D *with* Lai Decl., Aug. 22, 2007, Ex. A; *see also*, Lai Decl., Aug. 22, 2007, ¶¶3-7, Ex. B-D; Lai Decl., Nov. 14, 2007, ¶¶2-4.)

- On June 30, 2006, Mayder emailed his official [REDACTED] (Morton Decl., Aug. 15, 2008, ¶ 6, Ex. C. (Stra[REDACTED] Mayder admits speaking with Honeywell before leaving Verigy "[REDACTED] [REDACTED] (Mayder Decl., October 11, 2007, ¶38.)

- [REDACTED]tial Verigy [REDACTED] to Pochow[REDACTED] Decl., November 16, 2007 ) ¶ 8, Ex. 1); Lai Decl., November 16, 2007, ¶¶5-6, Ex. 3 and 4; Morton Decl., ¶¶ 2, 5, Ex. A (Romi Mayder Depo.Tr. at 232:15-234:7) and Ex. D (Romi Mayder Depo. Exhibit 33).)

- On Aug[REDACTED] stating, [REDACTED] [REDACTED] (Pochowski Decl., Aug. 22, 2007, ¶13, Ex. F.) The attached draft is entitled "Patent Application-Romi Mayder, Bob Pochowski" (*Id.*)

- On September 24, 2006, Mayder emailed Pochowski about their upcoming meeting with patent counsel. (*Id.*, ¶14, Ex. G.) In this email, Mayder reminds Pochowski that they should "[REDACTED] [REDACTED] (*Id.*)

- On September 18, 2006, as part of ongoing negotiations with STS, a Honeywell representative sent a form of nondisclosure agreement to Pochowski. (Pochowski Decl., Aug. 22, 2007, ¶15, Ex. H, p.2.) Revised drafts were exchanged between Pochowski and Honeywell. (*Id.*) On September 20, 2006, while he was still a Verigy employee, Mayder emailed Pochowski about the nondisclosure agreement, stating, "[REDACTED]

In similar cases involving an employee taking steps to establish a competing business

13

1   venture while still employed, courts have found that the duty of loyalty, or a fiduciary duty, was

2   breached.  *See Huong Que, Inc.,* 150 Cal. App. 4th 400 (former employer likely to prevail on breach

3   of duty of loyalty claim and therefore entitled to a preliminary injunction based on evidence that

4   defendants had misappropriated corporation's customer list and used it to solicit business for a

5   competing business); *Iconix, Inc. v. Tokuda,* 457 F.Supp.2d 969 (N.D. Cal. 2006) (former employer

6   likely to prevail on breach of fiduciary duty claim and therefore entitled to a preliminary injunction

7   based on evidence that employees secretly formed their own competing company, registered a

8   domain name for that company, and worked on developing the product for that company, all while

9   still working for the former employer); *see Stokes,* 41 Cal. App. 4th 285 (granting summary

10  judgment in favor of employer on employees' claims of wrongful discharge where employees were

11  fired for establishing a competing business, including pursuing financing for the new business and

12  creating and submitting detailed business proposals for the new company while still working for the

13  employer); *Fowler v. Varian Associates, Inc.,* 196 Cal.App.3d 34 (1987) (holding employee had

14  violated his duty of loyalty to employer as a matter of law where employee participated in the

15  formation of competing business by attending some meetings, providing ideas or suggestions,

16  assisting in efforts to obtain financing, and considering becoming a partner in the new business

17  while still employed).

18          Mayder may contend that he was *not* establishing a competing business venture or taking

19  actions inimical to the best interest of Verigy because Verigy chose to shelve the ███████

20  ████      However, it is undisputed that Verigy made this decision based in part on concerns that the

21  product ████████████████████████████████████ (Declaration of Kevin

22  Pasquinelli in Response to Order to Show Cause (Docket No. 54) ("Pasquinelli Decl.") ¶12, Ex. K

23  (Leventhal Depo.Tr., 27:24-29:9) and H.)  Thus, Mayder cannot genuinely dispute that the

24  anticipated STS device would be competitive with Verigy's products in the broad sense and,

25  therefore, that his actions in establishing the STS entities to continue development of this product

26  while still working at Verigy, using Verigy's information and data, were against Verigy's best

27  interest. *See Fowler,* 196 Cal.App.3d at 42 (employee breached duty of loyalty as a matter of law

28  where employee was involved in a new business to create a product which would be "a reasonable

14

1    or viable alternative" to plaintiff's products and competitive with plaintiff's products "in the

2    broadest sense").

3         Romi Mayder's substantial activities on the part of the STS entities, including, but not

4    limited to, registering a domain name, soliciting investors, taking Verigy's document, seeking

5    suppliers, developing the STS device, working on a patent disclosure which was filed only six (6)

6    days after Romi Mayder's last day of work at Verigy, and even incorporating Silicon Test Solutions

7    LLC, all while still working at Verigy, went beyond mere preparations to compete.  Far less has been

8    found to constitute a breach of the duty of loyalty. *See id.* (breach of duty of loyalty where employee

9    participated in the formation of competing business by attending some meetings, providing ideas or

10   suggestions, assisting in efforts to obtain financing, and considering becoming a partner in the new

11   business while still employed).  Romi Mayder's actions herein demonstrate unequivocally that his

12   loyalty was with the STS entities, not with Verigy, and that he was working to promote his personal

13   interests while still employed by Verigy.

14        Because the undisputed facts establish that Romi Mayder breached his duty of loyalty to

15   Verigy, Verigy is entitled to summary adjudication on its Eighth claim for relief.

16                    **3.      Verigy Suffered Damages As A Result Of Mayder's Breach.**

17        Mayder's breach of his duty of loyalty caused damage to Verigy, including, but not limited

18   to, the salary and benefits paid to Mayder while he was working on his competing venture and, at

19   the same time, ostensibly remaining an employee of Verigy.  Verigy is entitled to recover the

20   amounts paid to Mayder while he was competing with Verigy.  *See, e.g., Service Employees Intern.*

21   *Union, Local 250 v. Colcord,* 160 Cal. App. 4th 362 (2008) (in action for breach of fiduciary duty,

22   fraud, and unfair competition, employer was entitled to damages award consisting of salary and

23   benefits paid to former employee during time in which employee was secretly competing with the

24   employer).

25        The law is clear that disgorgement of salary and benefits is an appropriate remedy where an

26   employee violates the duty of loyalty owed to the employer.

27        [The employee] supported himself with compensation received from [the
          employer] while he plotted against its interests. Had he resigned as soon as he
28        embarked on competition with [his employer], or had he honored his fiduciary

duty to [his employer] by disclosing defendants' activities, the [employer] would not have continued to pay him. Thus, as the trial court observed, defendants' "salaries and benefits are damages directly flowing from the breach of defendants' fiduciary duties." Although [the employer] might have had to incur the cost of paying similar salary and benefits to a replacement employee . . ., it would have had that replacement's undivided loyalty in return. [The employee's] conduct deprived the [employer] of that vital benefit.

*Service Employees Intern. Union,* 160 Cal.App.4[th] at 371.

It is undisputed that Mayder began establishing the STS entities and working on their behalf in early June 2006. Accordingly, a minimum, Verigy is entitled to recover the salary and benefits paid to Mayder from June 2006 through the date of his resignation..

Because Verigy has established each element of its claim for breach of duty of loyalty, the Court should enter summary adjudication in Verigy's favor with respect to its Eighth claim for relief.

**B.    Verigy Is Entitled To Summary Adjudication Of Its Third Claim For Relief For Violation Of The Computer Fraud And Abuse Act.**

To establish a CFAA claim, a plaintiff must prove defendant "(1) intentionally accessed (2) a protected computer (3) without authorization, and (4) as a result of such conduct, has (5) intentionally, recklessly or otherwise caused (6) damage." *ViChip Corp. v. Lee,* 438 F. Supp. 2d 1087, 1100 (N.D. Cal. 2006), *citing,* CFAA, 18 U.S.C. §§ 1030(a)(5)(A-B).

**1.    Romi Mayder Intentionally Accessed a Protected Computer**

In their pending motion for summary adjudication of Verigy's Third Claim for Relief for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et seq*., Defendants implicitly concede the existence of four of the six elements, challenging only the "without authorization" and "damage" elements. Even if Defendants were to dispute the other elements, the dispute would not be genuine. There can be no genuine dispute that Mayder intentionally accessed a "protected computer." Verigy's file server and Mayder's Verigy-issued computer are "protected" because they are "used in interstate or foreign commerce or communication." 18 U.S.C. §1030(e)(2)(B); *see also, United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (because the

VERIGY'S NOTICE OF MOTION AND MOTION FOR SUMMARY
ADJUDICATION OF ITS THIRD AND EIGHTH CLAIMS FOR RELIEF        Case No. C07 04330 RMW (HRL)

1  internet is an instrumentality of interstate commerce, computers connected to the internet are

2  "protected computers").

3        Mayder has admitted he accessed Verigy documents that were on his work computer and

4  emailed them to his home computer.  (Morton Decl., ¶2, Ex. A (Mayder Depo Tr. 212:1-213:24).)  It

5  cannot be genuinely disputed that he did so to advance his personal interests and not those of

6  Verigy.  Specifically:

7        •  Romi Mayder admits he emailed Verigy documents to his home computer,
          using his Yahoo email account .  (Morton Decl., ¶¶ 2-3, Ex. A (Romi
8          Mayder Depo.Tr.,  211-213) and Ex. B (Romi Mayder Depo. Ex. 29).)

9        •                                          imself were the ████████
          ████████████████████████████████████.  (*Id.* and at Ex.
10         Mayder Depo Tr., 211-213; 215-221);  Lee Decl., ¶ 6, Ex. A; Morton
          Decl., August 22, 2007, ¶4, Ex. B and C; Pochowski Decl., August 22,
11         2007, ¶¶19-20, Ex. I and J.)

12        Mayder also admits that he then emailed Verigy documents to Pochowski  (Morton Decl.,

13  Ex. A (Mayder Depo Tr. 223:14-224:15; 232:15-233:5), D, E).)  In at least two cases, Mayder made

14  no changes to the documents before sending them to Pochowski:

15       •  On June 26, 2006, Mayder emailed Verigy documents containing detailed
          confidential customer requirements and pinouts to Pochowski. (Pochowski
16         Decl, August 22, 2007, ¶ 11, Ex. D.)

17       •  ████████████████████████  Verigy ████████████████
          ███████████████████████  to Poch
18         November 16, 2007 ¶ 8, Ex. 1); Lai Decl., November 16, 2007, ¶¶5-6, Ex.
          3 and 4; Morton Decl., ¶¶ 2, 5, Ex. A (Romi Mayder Depo.Tr. at 232:15-
19         234:7) and Ex. D (Romi Mayder Depo. Exhibit 33).)

20  It cannot be genuinely disputed that Mayder accessed Verigy computers to obtain these documents.[1]

21               **2.     Romi Mayder's Access Was Without Authorization.**

22        An employee who breaches his duty of loyalty to the company automatically loses his

23  "authorization" to access the company's computers.  *See ViChip*, 438 F. Supp. 2d at 1100; *see also*,

24  *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420-421 (7th Cir. 2006).

---

26  [1]      Although the information that Mayder accessed does not need to be confidential for liability to
27  attach, all of the documents Mayder improperly accessed meet the definition of "Confidential information" in
    the ARCIPD ("information on research and development" and were either explicitly marked confidential or
    rough drafts of documents that were inserted into documents marked confidential.  See Verigy's Opposition
28  to Defendants' Motion for Summary Adjudication on Third through Fifth Claims, p. 4, fn. 1&2.

17

1    In *ViChip,* a decision emanating from this District, defendant former employee argued (as do

2    Defendants here) that because he accessed and deleted company computer files while still an officer

3    and director of plaintiff company, he was legally "authorized" to do so.  *See, ViChip*, 438 F. Supp.

4    2d at 1100.  Judge Phyllis Hamilton disagreed, finding that when defendant decided to delete all

5    information from his employer's server and computer, knowing that he was going to be asked to

6    step down from his CEO position, he breached his duty of loyalty to the company and automatically

7    terminated his agency relationship to the company.  "In doing so, and as the *Citrin* court held, he

8    also terminated his authorization to access the files."  *Id.*

9    Similarly, in *Citrin,* a Seventh Circuit decision authored by Judge Richard Posner and relied

10    on by Judge Hamilton in *ViChip*, defendant former employee, after deciding to leave his job but

11    while still employed by plaintiff employer, accessed his work-issued computer and deleted work-

12    related data and other information that revealed his prior improper conduct.  The *Citrin* court, citing

13    *United States v. Galindo*, 871 F.2d 99, 101 (9th Cir. 1989) and *Shurgard Storage Centers, Inc. v.*

14    *Safeguard Self Storage, Inc*., 119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000), held that

15    defendant's authorization to access the laptop terminated when he decided to destroy the files "in

16    violation of the duty of loyalty that agency law imposes on an employee."  *See, Citrin*, 440 F.3d at

17    420.  Judge Posner opined:

18    
19    
20    

> Citrin's breach of his duty of loyalty terminated his agency relationship (more precisely, terminated any rights he might have claimed as IAC's agent--he could not by unilaterally terminating any duties he owed his principal gain an advantage!) and with it his authority to access the laptop, because the only basis of his authority had been that relationship.

21    *Id.* at 420-421.

22    Similarly, in *Charles Schwab & Co., Inc. v. Carter,* No. 04 C 7071, 2005 WL 351929 (N.D.

23    Ill. Feb. 11, 2005), the court determined that plaintiff employer had stated a claim for violation of

24    the CFAA based on allegations that an employee accessed and copied proprietary information

25    during his employment with plaintiff and sent it to a third party.  Defendants in *Charles Schwab*,

26    like Defendants herein, argued that the CFAA was primarily designed to be an anti-hacking statute.

27    *Id.* at *3.  The court rejected this argument, stating:

28    
> although Defendants argue that the statute should be narrowly construed as an

18

1       "anti-hacking" statute, they do not explain why [the employee's] unauthorized

2       access to Schwab's confidential information on its computer system and

3       distribution of this information is not "hacking." Indeed, several district courts
     have recognized that damage caused by unauthorized access or access in excess of
     authorization to a computer system may be redressed under the CFAA.

4  //

5  *Id.* Decisions from other district courts around the country are in accord.[2]

6         Here, as in *ViChip*, *Citrin*, and *Charles Schwab,* Mayder's employee status during the time

7  he accessed and transferred information from Verigy's computers and servers in breach of his duty

8  of loyalty does not constitute "authorization" for his actions. Mayder's authorization terminated

9  when he first breached his duty of loyalty to Verigy, as discussed above in Section IV(A). The

10  breach of loyalty automatically terminated Romi Mayder's authorization to access Verigy's

11  computers. His subsequent access for the purpose of furthering his own business was "without

12  authorization" and actionable under the CFAA. Further, pursuant to the ARCIPD, Romi Mayder

13  was not authorized at any time to use or disclose confidential Verigy information, or to remove

14  Verigy property from its premises without Verigy's permission. (*See,* Guerzoni Decl., ¶3, Ex. B

15  (ARCIPD), ¶¶ 1 & 4.) Romi Mayder's accessing of Verigy's computers for improper purposes

16  under the ARCIPD at any time cannot be deemed authorized. *See, Hewlett-Packard Co. v. Byd:*

17  *Sign, Inc.,* No. 6:05 CV 456, 2007 WL 275476, at \*12-\*13 (E.D.Tex. Jan. 25, 2007) (CFAA claim

18  stated against employees prohibited by agreement from accessing or sending messages on company

19  computer systems for personal gain). Further, Mayder was never authorized to access Verigy's

20  computers for any purpose other than furthering Verigy's business. *See*, Price Decl., ¶2, Ex. A

21  (access granted solely to facilitate work for Verigy.)

22  _____

23    [2]  *E.g., Pacific Aerospace & Electronics, Inc. v. Taylor,* 295 F. Supp. 2d 1188, 1196 (E.D. Wash.

24  2003)* ("[e]mployers . . . are increasingly taking advantage of the CFAA's civil remedies to sue
former employees and their new companies who seek a competitive edge through wrongful use of
information from the former employer's computer system"); *See, Shurgard Storage Centers, Inc.,*

25  119 F.Supp.2d at 1125 (employees' access was no longer authorized when they became agents of
the company's competitor and took the information for the benefit of the competitor; employees

26  "lost their authorization and were 'without authorization' when they allegedly obtained and sent the
proprietary information to the defendant via e-mail").

27  //

28

VERIGY'S NOTICE OF MOTION AND MOTION FOR SUMMARY
ADJUDICATION OF ITS THIRD AND EIGHTH CLAIMS FOR RELIEF    Case No. C07 04330 RMW (HRL)

1       Even Romi Mayder admits his authorization to access Verigy's information was limited.

2  Mayder declares that, during his employment with Verigy and its predecessors from 1998 until

3  September 21, 2006, "I was granted access to, and in fact was required to access, the computer

4  systems and computer information of the companies' [sic] *in order to carry out my job*

5  *responsibilities*."  (Romi Mayder Decl., July 28, 2008, ¶ 7) (emphasis added).  Verigy does not

6  dispute that Mayder was authorized to access its computer systems and information *in order to*

7  *carry out his job responsibilities*.  His actions, however, were anathema to those responsibilities.  As

8  shown above, beginning in early June, 2006, Romi Mayder repeatedly accessed Verigy's computer

9  systems to email himself and others Verigy documents and information for the purpose of setting up

10  his own business.  These acts were performed for the benefit of Romi Mayder and the other

11  defendants, and not for the purpose of carrying out Mayder's Verigy job responsibilities.

12       Because as a matter of law Romi Mayder's access to Verigy's computers was, at all relevant

13  times, *not* authorized within the meaning of the CFAA, Verigy's motion for summary adjudication

14  of its Third Claim for Relief under the CFAA should be granted.

15          **3.**     **Verigy Has Sustained "Loss" Within The Meaning Of The CFAA As a**
                    **Matter of Law and Undisputed Fact.**

16

17       The CFAA permits a civil action to be brought by "any person who suffers damage or loss

18  by reason of a violation of this section . . .  if the conduct involves one of the factors set forth in

19  clause (i), (ii), (iii), (iv), *or* (v) of subsection (a)(5)(B)."  18 U.S.C. §1030(g) (emphasis added).

20  Clause (i) of subsection (a)(5)(B) describes a factor of "loss to 1 or more persons during any 1-year

21  period . . . aggregating at least $5,000 in value."  18 U.S.C. §1030(a)(5)(B)(i).  The CFAA defines

22  "loss" as "any reasonable cost to any victim, including the cost of responding to an offense,

23  conducting a damage assessment, and restoring the data, program, system, or information to its

24  condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages

25  incurred because of interruption of service."  18 U.S.C. §1030(e)(11).

26       The statutory definition of "loss," on its face, encompasses "any reasonable cost to any

27  victim," which includes much more than just the cost of restoring data or cost due to interruption of

28  service.  "Loss" under the CFAA has been interpreted broadly and includes, for example any loss of

20

VERIGY'S NOTICE OF MOTION AND MOTION FOR SUMMARY
ADJUDICATION OF ITS THIRD AND EIGHTH CLAIMS FOR RELIEF    Case No. C07 04330 RMW (HRL)

1   business and business goodwill, *Creative Computing v. Getloaded.com LLC,* 386 F.3d 930, 935 (9th

2   Cir. 2004); loss of license fees, *Therapeutic Research Faculty v. NBTY, Inc.,* 488 F. Supp. 2d 991,

3   996-97 (E.D. Cal. 2007); and investigating and taking remedial steps to prevent recurrence, *P.C. of*

4   *Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.,* No. CIV. A. 04-4554

5   JAG, 2007 WL 708978, at *5 (D.N.J. Mar. 5, 2007).  "Loss" does not require damage to the

6   computer itself.  *See, Therapeutic Research Faculty,* 488 F. Supp. 2d at 996-97; *see also, Charles*

7   *Schwab & Co,* 2005 WL 351929, at *3 (unauthorized copying of material from plaintiff's computer

8   and delivery to a third party states a claim under CFAA).

9         Here, Verigy has been damaged by Romi Mayder's unauthorized accessing of a protected

10  computer in amounts exceeding $5,000.  (*See*, Morton Decl., Aug. 15, 2008, ¶¶ 3-4, Ex. A.)  When

11  Verigy discovered that, during the last three months of his employment, Mayder had been emailing

12  Verigy information to himself and others, it responded by conducting an investigation that included

13  the retention of counsel and a computer expert, for the purposes of determining the scope of

14  Mayder's theft.  The Court also appointed a neutral, third party expert to examine Romi Mayder's

15  computers to determine which Verigy documents he had transferred there, and the costs of that

16  investigation alone exceeded $17,000.  (*Id.*, ¶ 4, Ex. A.)

17          [I]n cases like this, where the offense involves unauthorized access and the use of
    protected information, the reasonable "cost of responding to [the] offense" … will
18  be different from such cost in a case where the primary concern is the damage to
    the plaintiff's computer system itself.'  *SuccessFactors, Inc. v. Softscape, Inc.,* ---
19  F.Supp.2d ---, No. 08-1376, 2008 WL 906420, at *5 (N.D.Cal. Apr. 1, 2008).
    '[W]here the offender has actually accessed protected information, discovering
20  who has that information and what information he or she has is essential to
    remedying the harm.'  *Id.*  Thus, the cost of discovering the identity of the
21  offender and the method by which the offender accessed the protected
    information, as well as the 'many hours of valuable time away from day-to-day
22  responsibilities' required to reasonably respond to the unauthorized access, may
    all be considered part of the loss for purposes of the CFAA.

23

24  *Contract Associates Office Interiors, Inc. v. Ruiter,* No. CIV S07-0334 WBS EFB, 2008 WL

25  3286798 (E.D. Cal. Aug. 6, 2008), at *4.  Clearly, Verigy has suffered a "loss" within the meaning

26  of the CFAA.

27        Because, as shown, all of the elements of a CFAA claim against Romi Mayder are satisfied,

28  Verigy is entitled to summary adjudication of its third claim for relief.

1  **IV.    CONCLUSION**

2          For the foregoing reasons, Verigy's motion for summary adjudication of its third and eighth

3  claims for relief should be granted.

4  Dated:  August 29, 2008                        BERGESON, LLP

5

6                                                 By:_____/s/_____
                                                       Melinda M. Morton

7                                                 Attorneys for Plaintiff
                                                  VERIGY US, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIGY'S NOTICE OF MOTION AND MOTION FOR SUMMARY
ADJUDICATION OF ITS THIRD AND EIGHTH CLAIMS FOR RELIEF        Case No. C07 04330 RMW (HRL)