JACK RUSSO (State Bar No. 96068)
TIM C. HALE (State Bar No. 114905)
JOHN KELLEY (State Bar No. 100714)
RUSSO & HALE LLP
401 Florence Street
Palo Alto, CA 94301
Telephone: (650) 327-9800
Facsimile: (650) 327-3737
Email: jrusso@computerlaw.com
       thale@computerlaw.com
       jkelley@computerlaw.com

Attorneys for defendants and counterclaimants
WESLEY MAYDER, ROMI MAYDER, SILICON
TEST SOLUTIONS LLC and SILICON TEST
SYSTEMS INC

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROMI MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 5:07-cv-04330-RMW (HRL)<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR PERMISSION TO DISCLOSE `HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' DOCUMENTS TO VERIGY'S EXPERTS UNDER STIPULATED PROTECTIVE ORDER**<br><br>**Date: September 9, 2008**<br>**Time: 10:00 a.m.**<br>**Before the Hon. Howard R. Lloyd**<br><br>Complaint Filed: August 22, 2007<br>Trial Date: December 8, 2008 (jury trial)<br>(Defendants have elected to reserve their jury trial rights under F.R.C.P., Rule 38) |

## INTRODUCTION

Plaintiff Verigy, Inc.'s ("Verigy") motion (the "Motion") seeking permission to make disclosures to two additional industry experts is must notable for what it does *not* say. While engaging in hand waiving about how the Court's *standard protective order* should not be followed, Verigy provides no evidence that it made any effort to alter or modify the designation of who could be an expert that would be permitted to see attorneys' eyes only materials; that is, Verigy agreed and acquiesced in a definition that excludes employees of former competitors from seeing such materials.

Further, Verigy completely downplays the risk to Defendants if their highly confidential trade secrets are disclosed to these industry experts. While claiming that they pose no threat because Credence, their former employer, does not work in the memory test field anymore, Verigy ignores its own position in this action, namely that probe card manufacturers such as Defendant STS do in fact constitute its competitors. Moreover while trying to claim that Credence is no longer in the memory test business, as recently as 2005 it, *and Verigy's proposed expert Bernard West*, filed for and obtained a patent for placing an integrated circuit on a probe card to increase resource sharing and testing using such probe card. Credence, and Mr. West, very much have an interest in the probe card business, and are direct competitors of STS.

Finally, the ATE (automatic test equipment) industry is a particularly incestuous one, with personnel moving freely between an increasingly small number of competitors, such that the risk of disclosure of trade secrets from one competitor to another is heightened. Contrary to Verigy's claim that it needs additional experts to assist it on the issue of NOR versus NAND memory testing, Verigy has already named *four* other technical experts that purport to have expertise in that area, and presumably who have already had disclosed to them Defendants' trade secret information. Verigy provides no explanation for why having already named four technical experts, at least one of which who has opined at length about differences between NOR and NAND memory testing, it must name two additional technical experts. Given the Court's standard approach to who can be an expert, Verigy's having already named four prior technical experts, and

the particular risk of exposure of STS information to a direct competitor, Credence, Defendants respectfully request that Verigy's motion be denied.

## ARGUMENT

### I. THE COURT'S STANDARD PROTECTIVE ORDER RECOGNIZES THE RISK POSED BY PRIOR EMPLOYEES OF COMPETITORS.

As Verigy admits, this is a trade secret action; it involves claims of trade secrets by not only Verigy, but by Defendants as well. In particular, the trade secrets relate to the automated test equipment ("ATE") industry, and in STS's case, more particularly to trade secrets related to placing an integrated circuit on what is known as a probe card, for purposes of increasing the resource sharing or parallel testing that can be carried out on devices under test.

As is common in a trade secret suit, the parties here entered into a stipulated protective order to govern the handling of information and documentation exchanged during the course of the litigation. *See Corrected* Declaration of Melinda M. Morton in Support of Motion to Disclose "Highly Confidential-Attorneys' Eyes Only" Documents to Verigy's Experts (the "Morton Decl."), at Exh. E thereto. As Verigy admits, this protective order is this Court's standard protective order, the one that it provides to parties as a default form of protective order. In Section 2.12 of that standard order, the persons who can serve as experts are expressly defined:

> 2.12. Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and *who is not a past or a current employee of a Party or a competitor of a Party's* and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party's….

*Id*. (emphasis added).

That is, the Court itself, in adopting this form of protective order, reflects the understanding that past employees of competitors bear risk in being exposed to a competitor's trade secrets, even if such past employees intend to act honorably in connection with such exposure. As is further addressed below, such risk is particularly heightened in the ATE industry.

//

Verigy agreed to this definition of who could be an expert. While Verigy states in its papers that it proposed a number of changes to the standard protective order, *it conveniently fails to state that it ever proposed a change to the definition of "expert" in Section 2.12*. No doubt this is because Verigy did *not* request such a change, and should not now, more than a year after the protective order was agreed to by the parties and entered by the Court, be permitted to modify the provisions therein.

## II. THERE IS ONGOING RISK OF PERMITTING PAST EMPLOYEES OF A DIRECT COMPETITOR TO SEE DEFENDANTS' TRADE SECRETS AND VERIGY HAS MADE NO SHOWING AS TO WHY THREE OTHER TECHNICAL EXPERTS ARE NOT SUFFICIENT.

Verigy's Motion is premised largely on the notion that it requires the two additional technical experts, West and Gillette, because of their industry experience and the need to rely upon that experience in order to address Defendants' claim that there is a distinction "between testing NAND memory chips and NOR memory chips." Motion at 5, lns. 2-3. Further, Verigy claims that there is no risk in allowing disclosure of Defendants' trade secrets to West or Gillette because there is allegedly no competitive threat. These arguments fail for a variety of reasons.

First, Verigy fails to apprise the Court that it has already named *four* other technical experts to whom Defendants have not objected, namely Messrs. Wei, Brahmbhatt, Pathak and Wakerly. *See* Declaration of Tim C. Hale ("Hale Decl."), submitted herewith, at ¶2. Indeed, Verigy relied upon Mr. Wei's voluminous declarations in connection with obtaining a temporary restraining order/preliminary injunction in this matter, and Mr. Wei specifically addressed the opinions of Dr. Blanchard, Defendants' expert, regarding the differences in testing NOR versus NAND memory devices. Hale Decl. at ¶2, Exh. 1 thereto. Verigy admits in its Motion that it tendered Mr. Wei's declaration to refute the very claim that it now states it needs additional experts to refute—the differences between testing NOR versus NAND memory chips. Motion at 5, lns. 1-5. Thus, Verigy's professed need to name *five technical experts* is not about necessity, it's about a large, publicly-traded company attempting to buy a result in litigation, at Defendants' expense.

Second, the very basis for the claimed need of additional experts advanced by Verigy makes no sense. According to Verigy, the claim that it needs to refute is Defendants' assertion

that "much greater complexity is needed to test NOR memory chips…" compared to NAND memory chips. Motion at 5, lns. 3-4. This is a general statement and position about the issues involved in NOR versus NAND memory testing, not a statement or position about *STS's particular design* as reflected in its trade secret documentation. Further, according to Verigy, both West and Gillette "have extensive experience in the ATE industry and familiarity with flash memory testing." Motion at 3, lns. 9-10. As such, there should be no need whatsoever for said experts to review STS's trade secret information; they can testify to their opinions in general as to whether "much greater complexity is needed to test NOR memory chips" compared to NAND memory chips. The issue does not require access to Defendants' trade secrets.[1]

      Third, Verigy's effort to discount Credence as a competitor is misleading. While citing to Defendants' position that their technology is complementary to that of ATE manufacturers like Verigy, Verigy fails to apprise the Court of its own repeated position in this litigation, that STS is a direct competitor to Verigy. Hale Decl. at ¶3, Exhs. 2 and 3 thereto. If Verigy is a competitor to STS, as Verigy itself claims and cannot not now disavow, then so is Credence as an ATE manufacturer.[2]

      Moreover, Verigy's contention that Credence is no longer in the memory test business is not supported by either its proffered evidence, or the facts. The press release cited to by Verigy states simply that Credence was foregoing a particular instance of future product development, but that it was remaining in the memory test business to support its installed base. Indeed, in *2005 Credence, and Mr. West, one of the experts Verigy proposes to now show STS's trade secret information to*, obtained a patent on a probe card with integrated circuitry for use in resource sharing or parallel testing, technology at the very center of STS's business. Hale Decl. at ¶4, Exh.

---

[1] Indeed, it is incredible that Verigy claims no danger to trade secret information in the hands of its competitors, while denying Defendants the opportunity to review the actual trade secret list themselves! This position by Verigy will be the subject of a further motion by Defendants to permit the review of said list, on due process and other grounds.

[2] Contrary to Verigy's effort to argue that Defendants objected to Credence only because it was a competitor of *Verigy's* is not supported by the document to which it cites. *See* Motion at 6, lns 16-18, Morton Decl. at Exh. D. The parties agreed as part of their meet and confer that Defendants were objecting to the disclosures because of the experts' work for Credence, but at no point stated that Credence was not also a competitor of STS's, as Verigy would like the Court to believe.

4 thereto. Neither Mr. West, Mr. Gillette nor Verigy has offered any evidence to suggest that Credence retains no further interest or right in this or any other patents it holds in the probe card resource sharing industry, or that Credence is no longer serving memory customers. Such patents demonstrate express and direct competition to STS, and permitting one of Credence's named inventors to access STS's crown jewels could have profound effect upon its future prospects.[3]

Fourth, the ATE industry is itself a very "incestuous" industry, with engineers and executives moving repeatedly amongst an increasingly consolidated group of companies. Hale Decl. at ¶5, Exhs. 5 and 6 thereto. Credence itself just merged with another ATE manufacturer, LTX. Hale Decl. at ¶7, Exh. 7 thereto. As such, the danger that STS's trade secrets could be disseminated even further is heightened in such a close-knit industry. While Verigy offers to allow only one of the newly-named experts to see STS's trade secret materials (Motion at 7, lns. 6-7), it fails to explain why, having already named four other technical experts, yet a fifth or even sixth expert is needed, and if fails to identify as to which of the two new experts it would propose to bar access to such trade secret material. Given the technical experts already named, the meritless basis advanced by Verigy for why it needs two more experts and the danger of a particularly incestuous industry, the ATE industry, Defendants respectfully request that the Motion be denied. If the Court were inclined to grant the Motion, however, Defendants would request that only one of the two new experts be permitted to see the STS trade secret material.

### III. VERIGY'S REQUEST FOR AN EXTENSION IS WITHOUT MERIT.

Verigy's Motion closes with a request for a week's extension on its expert disclosures for West and Gillette. Motion at 7, lns. 10-15. According to Verigy, Defendants engaged in delay tactics, and such tactics warrant the extension. *Id.* This argument is without merit. First, it was Verigy that decided to wait until the eleventh hour to name new experts, despite knowing since the Court's Case Management Conference on May 23, 2008 of the cut-off for naming such experts. Second, Defendants did nothing more than follow the proper procedures under the stipulated

---

[3] The risk to STS is substantial in that it currently remains under severe restrictions in marketing its probe card resource sharing solution pursuant to the Court's preliminary injunction. As such, a competitor's access to its trade secrets would give such competitor a substantial advantage over STS and could result in STS's technology losing nearly all of its value to STS.

protective order in raising objections to competitive experts. Verigy's Motion makes no showing whatsoever that Defendants' objections were meritless, and they clearly have merit given the facts presented. Any time-pressure under which Verigy or its experts have to operate is a direct result of Verigy's last-minute naming of such experts, not of any actions taken by Defendants. Further, at no time during the meet and confer process did Verigy raise this request for an extension of time, and as such, Verigy did not follow the proper procedure of seeking such relief, and the request for an extension should be denied. Hale Decl. at ¶6.

## CONCLUSION

For the reasons stated above, the Court should deny Verigy's Motion to allow two additional technical experts, on top of the four already named, to view Defendants' highly confidential—attorneys' eyes only materials in this litigation.

Respectfully submitted,

Dated: September 3, 2008         RUSSO & HALE LLP

By:    __/s/ Tim C. Hale_____
Tim C. Hale

Jack Russo, SBN 98068
Tim C. Hale, SBN 114905
John Kelley, SBN 100714

RUSSO & HALE LLP
401 Florence Street
Palo Alto, CA 94301
Telephone: (650) 327-9800
Facsimile: (650) 327-3737
Email: jrusso@computerlaw.com
       thale@computerlaw.com
       jkelley@computerlaw.com

Attorneys for Defendants SILICON TEST SYSTEMS, INC., ROMI MAYDER, SILICON TEST SOLUTIONS, LLC and WESLEY MAYDER