1  DANIEL J. BERGESON, Bar No. 105439                    **PUBLIC VERSION**
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  DONALD P. GAGLIARDI, Bar No. 138979
   dgagliardi@be-law.com
4  MICHAEL W. STEBBINS, Bar No. 138326
   mstebbins@be-law.com
5  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
6  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
7  Facsimile:   (408) 297-6000

8  Attorneys for Plaintiff
   VERIGY US, INC.
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13

14  VERIGY US, INC, a Delaware Corporation    | Case No. C07 04330 RMW (HRL)

15                          Plaintiff,          **VERIGY'S RESPONSES TO WES
                                                 MAYDER'S OBJECTIONS TO EVIDENCE
16          vs.                                  IN SUPPORT OF MOTIONS FOR
                                                 SUMMARY JUDGMENT & RULE 11
17  ROMI OMAR MAYDER, an individual;            SANCTIONS**
    WESLEY MAYDER, an individual; SILICON
18  TEST SYSTEMS, INC., a California Corporation;
    and SILICON TEST SOLUTIONS, LLC, a         Date:     September 5, 2008
19  California Limited Liability Corporation,    Time:     9:00 am
    inclusive,                                   Ctrm.:    6
20                                               Judge:   Hon. Ronald M. Whyte
                            Defendants.
21
                                                 Complaint Filed:    August 22, 2007
22                                               Trial Date:         None Set

23  ───────────────────────────────────
    AND RELATED CROSS ACTIONS
24

25          **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

26               **DOCUMENT SUBMITTED UNDER SEAL**

27

28

1    Plaintiff Verigy US, Inc. ("Verigy") hereby responds to defendant Wesley Mayder's

2  ("W.Mayder") Evidentiary Objections to Portions of Papers Filed by Plaintiff in Opposition to

3  Wesley Mayder's Motion for Summary Judgment and For Rule 11 Sanctions set for hearing on

4  September 5, 2008 before this Court.

5         **A.    DECLARATION OF JOHN W. FOWLER IN OPPOSITION TO
               W.MAYDER'S MOTION FOR RULE 11 SANCTIONS**

6

7  **W.MAYDER'S OBJECTION NO. 1:**

8         Declaration of John Fowler ("Fowler Decl."), at paragraph 2, re statements made on

9  information and belief.

10        *2.    "I signed the Complaint (Docket No. 1) in the above-captioned action.  To the best
     of my knowledge, information and belief, formed after an inquiry reasonable under the*

11  *circumstances, (a) the Complaint against Wesley Mayder was not presented for any improper
     purpose, (b) the claims and legal contentions of the Complaint against him were warranted in my*

12  *mind by existing law and I believed that the factual contentions had evidentiary support or were
     likely to have evidentiary support after a reasonable opportunity for further investigation or*

13  *discovery."*

14  **Grounds for Objection:**

15        Violative of Local Rule 7-5(b), which provides that any affidavit or declaration which

16  includes statement made on information and belief must provide the basis for such information

17  and belief statement.  Mr. Fowler simply offers a conclusory statement in that regard.

18  **VERIGY'S RESPONSE TO THE OBJECTION:**

19        The objection should be overruled.  Insofar as Mr. Fowler declares as to his own personal

20  mental state concerning what he believed was "warranted in my mind" and what he "believed"

21  and as such whether he had an "improper purpose" in signing and filing the action against Wes

22  Mayder, the basis is self-evidently Mr. Fowler's own understanding of his own mindset.  Insofar

23  as Mr. Fowler declares that the claims and legal contentions had evidentiary support or were likely

24  to, the foundation for this was the "inquiry reasonable under the circumstances" which he attests

25  he performed.  The reasonableness of the inquiry is elaborated upon in paragraphs 3-5 of Mr.

26  Fowler's declaration.  Thus, there is a basis for Mr. Fowler's statement made on information and

27  belief.

28  //

1    **W. MAYDER'S OBJECTION NO. 2:**

2        Fowler Decl. at paragraph 3 re statement about the Mayder brothers going into business

3    together.

4        3.    *"My investigation into whether Wesley Mayder was liable for the acts alleged in*
     *the complaint included the following:*

5            *a.    My interviews of Romi Mayder's supervisors at Verigy regarding Romi's*
     *statements to them regarding his plan to go into a real estate business with his older brother,*

6    *Wesley.*

7            *b.    My review of documents obtained from the California Secretary of State*
     *and the Internet regarding the two STS businesses as well as Wesley Mayder's businesses, which*
     *show the same street address for STS, Inc. and Wesley Mayder's businesses.*

8            *c.    Interview of Robert Pochowski and review of documents produced by him*
     *indicating Wesley Mayder's active participation in STS, LLC."*

9

10    **Grounds for Objection:**

11        Irrelevant and immaterial; no showing that anything about them going into a real estate

12    business together has anything to do with the issues in dispute in this case, and certainly does not

13    support any claim of wrongdoing by Wes Mayder; lack of foundation.

14    <u>**VERIGY'S RESPONSE TO THE OBJECTION**</u>:

15        The objection should be overruled.   The objection is an argument regarding the weight of

16    the information, not its admissibility.  The fact that Romi Mayder told his supervisors he was

17    intending to go into business with his brother Wes Mayder is certainly relevant and material,

18    regardless of the nature of the business he described.  Also, the fact that official and online

19    documentation showed that the STS Entities were at the same address as Wes Mayder's business

20    is also relevant and material, especially in combination with the information that the two brothers

21    were intending to go into business together.  Finally, the interview with Mr. Pochowski is highly

22    relevant and material since he was privy to the discussions surrounding the formation of STS,

23    LLC and was aware of Wes Mayder's participation in that entity, as stated by Mr. Fowler.

24    **W.MAYDER'S OBJECTION NO. 3:**

25        Fowler Decl. at paragraph 3 re statement about Wesley Mayder's business having same

26    street address as STS.

27        3.    *"My investigation into whether Wesley Mayder was liable for the acts alleged in*
     *the complaint included the following:*

28

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1

       *b.     "My review of documents obtained from the California Secretary of State and the Internet regarding the two STS businesses as well as Wesley Mayder's businesses, which show the same street address for STS, Inc. and Wesley Mayder's businesses."*

2

3

**Grounds for Objection:**

4

       Irrelevant and immaterial; two entities having the same street address provides no basis for

5

concluding wrongdoing by Wes Mayder; lack of foundation.

6

**<u>VERIGY'S RESPONSE TO THE OBJECTION</u>:**

7

       The objection should be overruled.  See Response to Objection #2 above.

8

**W.MAYDER'S OBJECTION NO. 4:**

9

       Fowler Decl. at paragraph 3 re statement about Fowler interviewing Pochowski and Wes

10

Mayder's "active participation in STS, LLC."

11

       *3.     "My investigation into whether Wesley Mayder was liable for the acts alleged in the complaint included the following:*

12

              *c.     Interview of Robert Pochowski and review of documents produced by him indicating Wesley Mayder's active participation in STS, LLC."*

13

14

**Grounds for Objection:**

15

       Hearsay.  Conclusory, lacking evidentiary detail re what "documents" were reviewed, what

16

the so-called "active participation" was.  "Active participation" does not amount to control, does

17

not amount to establishing that Wes Mayder was ever a director or officer of STS LLC.  Wes

18

Mayder could be actively participating, though he was not, without having any knowledge of or

19

hand in any wrongdoing.  Lack of foundation.

20

**<u>VERIGY'S RESPONSE TO THE OBJECTION</u>:**

21

       The objection should be overruled.  See Response to Objection #2 above.

22

**W.MAYDER'S OBJECTION NO. 5:**

23

       Fowler Decl. at paragraph 5 re Fowler's alleged knowledge of the law.

24

       *"I also based my recommendation to name Wesley Mayder on my knowledge of existing law as well as my experience litigating questions of conspiracy, joint venture liability, partner liability, vicarious liability and alter ego liability for over four decades while representing parties alleging and defending against similar allegations.  In addition, I reviewed legal publications regarding the factors to be considered for alter ego liability."*

25

26

27

**Grounds for Objection:**

28

       Irrelevant; Verigy has not pled a proper conspiracy or alter ego claim, and certainly not

- 3 -

1    partnership liability; an LLC is a corporation, not a partnership.

2    **VERIGY'S RESPONSE TO THE OBJECTION:**

3          The objection should be overruled.  The objection is an argument regarding the weight of

4    the information, not its admissibility.  Conspiracy is not a cause of action or independent claim for

5    relief but a doctrine of derivative liability.  *Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*,

6    7 Cal. 4th 503, 510 (1994).  Mr. Fowler attests that he had experience litigating claims of

7    derivative liability of various sorts.  Such information is relevant, material and admissible

8    concerning the reasonableness of his pre-complaint investigation.

9    **W.MAYDER'S OBJECTION NO. 6:**

10         Fowler Decl. at paragraph 6 re ongoing discovery.

11       *"I also believed at the time I signed the Complaint that actual discovery against the
defendants and our investigation would continue to uncover further evidence of Wesley Mayder's*

12   *liability.  Some of this evidence has already turned up in documents and testimony produced by
the Mayder brothers themselves, and authenticated by them in deposition testimony."*

13

14   **Grounds for Objection:**

15         Conclusory.  Fowler claims that discovery has validated Verigy's suing Wes Mayder, but

16   the exact opposite is true.  Fowler fails to point to any single fact or document to substantiate his

17   conclusory statements.

18   **VERIGY'S RESPONSE TO THE OBJECTION:**

19         The objection should be overruled.  The objection is an argument regarding the weight of

20   the information, not its admissibility. Mr. Fowler's testimony as to his mental state at the time of

21   filing the complaint is relevant to the question whether he violated Rule 11 of the Federal Rules of

22   Civil Procedure and thus admissible.   In testifying as to his subjective belief at a particular time, a

23   witness is not required to, nor in most cases could he, point to evidence other than what he recalls

24   that mental state was.

25        **B.**      **DECLARATION OF ROBERT POCHOWSKI IN OPPOSITION TO
           W.MAYDER'S MOTION FOR RULE 11 SANCTIONS**

26

27   **W.MAYDER'S OBJECTION NO. 7:**

28         ("Pochowski Decl.") at paragraph 4, re "we never formalized any involvement."

1       *"Mayder wanted me to invest in STS, and I agreed to explore the idea. At no time did he ask me to sign a non-disclosure agreement ("NDA"). We never formalized my involvement, and*
2 *ultimately, I did not invest in STS. I did share with Romi Mayder a number of concrete ways to improve the product, including, but not limited to, using a toggle mode."*
3

4 **Grounds for Objection:**

5       Judicial estoppel; impeaching testimony to Verigy's position that Wes Mayder

6 "formalized" his involvement with STS LLC while having its witness, Pochowski, testify that his

7 involvement was never formalized.

8 **<u>VERIGY'S RESPONSE TO THE OBJECTION:</u>**

9       The objection should be overruled. The objection illogically mis-construes Mr.

10 Pochowski's testimony. Mr. Pochowski's testimony that "[w]e never formalized ***my*** involvement"

11 in STS, LLC (emphasis added), is *not* inconsistent with Verigy's position that STS, LLC was

12 formalized with *Wes Mayder* as a member.

13 **W.MAYDER'S OBJECTION NO. 8:**

14       Pochowski Decl. at paragraph 5 re statement about Wes Mayder being a "partner" in STS.

15       *"In early September 2006, Romi Mayder informed me that his brother, Wes Mayder, would be a partner in the company. This was not my original understanding when Romi asked me*
16 *to invest in STS in June 2006, and I informed him of my original understanding that we would be equal partners. Romi Mayder then informed me in mid September, 2006 that he already had*
17 *received a large check from his brother and therefore he and his brother would not allow me to be an equal partner."*
18

19 **Grounds for Objection:**

20       Irrelevant and immaterial; lack of foundation. An LLC is not a partnership and there is no

21 evidence whatsoever that a partnership was ever formed, nor any claim by Verigy based on

22 partnership liability.

23 **<u>VERIGY'S RESPONSE TO THE OBJECTION:</u>**

24       The objection should be overruled. The objection goes to the weight of the evidence, not

25 its admissibility. The testimony is background information. Further, neither Romi Mayder nor

26 Mr. Pochowski are attorneys and their use of the term "partner" was colloquial. See, also,

27 Response to Objection #7 above.

28 //

1  **W.MAYDER'S OBJECTION NO. 9:**

2  Pochowski Decl. at paragraph 5 re statement about Pochowski being "equal partners" with

3  Romi Mayder.

4  *"In early September 2006, Romi Mayder informed me that his brother, Wes Mayder,*
*would be a partner in the company.  This was not my original understanding when Romi asked me*
5  *to invest in STS in June 2006, and I informed him of my original understanding that we would be*
*equal partners.  Romi Mayder then informed me in mid September, 2006 that he already had*
6  *received a large check from his brother and therefore he and his brother would not allow me to be*
*an equal partner."*

7

8  **Grounds for Objection:**

9  Irrelevant and immaterial; lack of foundation.  An LLC is not a partnership and there is no

10  evidence whatsoever that a partnership was ever formed, nor any claim by Verigy based on

11  partnership liability.

12  **VERIGY'S RESPONSE TO THE OBJECTION:**

13  The objection should be overruled.  See Response to Objection #8 above.

14  **W.MAYDER'S OBJECTION NO. 10:**

15  Pochowski Decl. at paragraph 6 re statement about Romi Mayder's having sent Pochowski

16  a "draft partnership agreement for STS," a copy of which is attached as Exh. A to the declaration,

17  and re his never having signed a "partnership agreement"

18  *"On or about September 29, 2006, Romi Mayder sent me a draft partnership agreement*
*for STS.  A true and correct copy of what he sent me is attached hereto as Exhibit A.  Shortly*
19  *thereafter, Romi Mayder gave me a hardcopy version of the agreement signed by both Romi*
*Mayder and Wesley Mayder.  Attached hereto as Exhibit B is a true and correct copy of the*
20  *partnership agreement signed by Wes and Romi Mayder.  I never signed the partnership*
*agreement."*

21

22  **Grounds for Objection:**

23  Irrelevant and immaterial; lack of foundation.  An LLC is not a partnership and there is no

24  evidence whatsoever that a partnership was ever formed, nor any claim by Verigy based on

25  partnership liability; Exh. A shows on its face that it is a draft operating agreement for an LLC,

26  not a partnership.

27  **VERIGY'S RESPONSE TO THE OBJECTION:**

28  The objection should be overruled.  See Response to Objection #8 above.

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS    Case No. 07-CV-04330 RMW (HRL)

**W.MAYDER'S OBJECTION NO. 11:**

Pochowski Decl. at paragraph 6 re statement about Romi Mayder and Wes Mayder having allegedly signed a "partnership agreement for STS," a copy of which is attached as Exh. B to the declaration

*"On or about September 29, 2006, Romi Mayder sent me a draft partnership agreement for STS. A true and correct copy of what he sent me is attached hereto as Exhibit A. Shortly thereafter, Romi Mayder gave me a hardcopy version of the agreement signed by both Romi Mayder and Wesley Mayder. Attached hereto as Exhibit B is a true and correct copy of the partnership agreement signed by Wes and Romi Mayder. I never signed the partnership agreement."*

**Grounds for Objection:**

Irrelevant and immaterial; lack of foundation. An LLC is not a partnership and there is no evidence whatsoever that a partnership was ever formed, nor any claim by Verigy based on partnership liability; Exh. B shows on its face that it is a draft operating agreement for an LLC, not a partnership.

**VERIGY'S RESPONSE TO THE OBJECTION:**

The objection should be overruled. See Response to Objection #8 above.

**W.MAYDER'S OBJECTION NO. 12:**

Pochowski Decl. at paragraph 7 re statement about Romi Mayder and Pochowski having allegedly discussed the "partnership agreement" many times

*"Romi Mayder and I discussed the partnership agreement numerous times throughout October and November. I continued to ask that Wes Mayder be removed from the partnership, but Romi Mayder kept refusing. Finally, on or about November 22, 2006, I agreed to Wes Mayder's inclusion and to reduce my percentage of ownership, but asked that the partnership agreement be changed to have two levels of membership, and that Wes Mayder would be in the second class of membership as a silent investor only, with no management participation allowed. Romi Mayder initially agreed to my request."*

**Grounds for Objection:**

Irrelevant and immaterial; lack of foundation. An LLC is not a partnership and there is no evidence whatsoever that a partnership was ever formed, nor any claim by Verigy based on partnership liability; Exhs. A and B shows on their faces that they are draft operating agreements for an LLC, not a partnership.

//

1    **VERIGY'S RESPONSE TO THE OBJECTION:**

2         The objection should be overruled. See Response to Objection #8 above.

3    **W.MAYDER'S OBJECTION NO. 13:**

4         Pochowski Decl. at paragraph 7 re statement about his allegedly asking that Wes Mayder

5    be removed from "the partnership"

6         *"Romi Mayder and I discussed the partnership agreement numerous times throughout
     October and November.  I continued to ask that Wes Mayder be removed from the partnership, but*

7    *Romi Mayder kept refusing.  Finally, on or about November 22, 2006, I agreed to Wes Mayder's
     inclusion and to reduce my percentage of ownership, but asked that the partnership agreement be*

8    *changed to have two levels of membership, and that Wes Mayder would be in the second class of
     membership as a silent investor only, with no management participation allowed.  Romi Mayder*

9    *initially agreed to my request."*

10   **Grounds for Objection:**

11        Irrelevant and immaterial; lack of foundation.  An LLC is not a partnership and there is no

12   evidence whatsoever that a partnership was ever formed, nor any claim by Verigy based on

13   partnership liability; Exhs. A and B shows on their faces that they are draft operating agreements

14   for an LLC, not a partnership.

15   **VERIGY'S RESPONSE TO THE OBJECTION:**

16        The objection should be overruled.  See Response to Objection #8 above.

17   **W.MAYDER'S OBJECTION NO. 14:**

18        Pochowski Decl. at paragraph 7 re statements about partnership agreement being changed

19   to have two levels of "membership"

20        *"Romi Mayder and I discussed the partnership agreement numerous times throughout
     October and November.  I continued to ask that Wes Mayder be removed from the partnership, but*

21   *Romi Mayder kept refusing.  Finally, on or about November 22, 2006, I agreed to Wes Mayder's
     inclusion and to reduce my percentage of ownership, but asked that the partnership agreement be*

22   *changed to have two levels of membership, and that Wes Mayder would be in the second class of
     membership as a silent investor only, with no management participation allowed.  Romi Mayder*

23   *initially agreed to my request."*

24   **Grounds for Objection:**

25        Irrelevant and immaterial; lack of foundation.  An LLC is not a partnership and there is no

26   evidence whatsoever that a partnership was ever formed, nor any claim by Verigy based on

27   partnership liability; Exhs. A and B shows on their faces that they are draft operating agreements

28   for an LLC, not a partnership.

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS      Case No. 07-CV-04330 RMW (HRL)

1    <u>**VERIGY'S RESPONSE TO THE OBJECTION:**</u>

2        The objection should be overruled.  See Response to Objection #8 above.

3    **W.MAYDER'S OBJECTION NO. 15:**

4        Pochowski Decl. at paragraph 8 re statement about the "one level of participating

5    partnership"

6        *"I continued to discuss these issues with Romi Mayder, and we planned to meet together*
      *with his corporate attorney to finalize the agreement in early December 2006.  On December 11,*
7    *2006, I sent Romi Mayder an email to confirm my proposed final changes.  Without any warning, I*
      *received an email from Romi Mayder that same day, stating that he had reviewed my "*

8    *[redacted]*

9    *He then informed me*

10   *[redacted] which had one level of participating partnership with the three of*
      *us as partners.  Attached hereto as Exhibit C is a true and correct copy of the December 2006*
      *email string between Romi Mayder and me."*

11

12   **Grounds for Objection:**

13       Irrelevant and immaterial; lack of foundation.  An LLC is not a partnership and there is no

14   evidence whatsoever that a partnership was ever formed, nor any claim by Verigy based on

15   partnership liability; Exhs. A and B shows on their faces that they are draft operating agreements

16   for an LLC, not a partnership.

17   <u>**VERIGY'S RESPONSE TO THE OBJECTION:**</u>

18       The objection should be overruled.  See Response to Objection #8 above.

19   **C.    VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
         **TO WESLEY MAYDER'S MOTION FOR SUMMARY JUDGMENT**
20

21   **W.MAYDER'S OBJECTION NO. 16:**

22       ("Opp. to WM SJ") at p. 1, lns. 8-10 re Wes Mayder's involvement with STS

23   *"(collectively, the "STS Entities"), and by Romi Mayder's brother and co-conspirator, defendant*
      *Wes Mayder, who invested in both STS Entities, was a Member of  STS LLC and a boardmember*
24   *of STS, Inc."*

25   **Grounds for Objection:**

26       Irrelevant and immaterial to the extent Wes Mayder "invested" in the STS entities, as such

27   investment does not create liability, are re his being a "member" of STS LLC, as mere

28   membership creates no tort liability as has been alleged by Verigy, and re his being a co-

1    conspirator, in that Verigy has failed to plead or adduce any of the evidence needed to demonstrate

2    conspiracy; incompetent evidence regarding Wes Mayder being a "boardmember" of STS, Inc.

3    **VERIGY'S RESPONSE TO THE OBJECTION:**

4        The objection should be overruled.  This is an objection to argument and to advocacy, not

5    an objection to evidence.  Further, the argument being objected to is supported by evidence

6    elsewhere in the record.  And, the evidence of Wes Mayder's actual role in the STS Entities is

7    highly relevant, not in least part because it impeaches the credibility of Wes Mayder, who has

8    submitted false and misleading, and perhaps perjurious, sworn statements to this Court denying

9    the nature of his participation in the STS Entities.

10   **W.MAYDER'S OBJECTION NO. 17:**

11       Opp. to WM SJ at p. 1, lns. 15-16 re Romi Mayder allegedly marketing a product "very

12   similar to Verigy's products"

13       *"In early July 2007, Verigy learned that Romi Mayder was marketing a product very
     similar to Verigy's products and began an investigation to determine whether Romi Mayder was*
14   *using"*

15   **Grounds for Objection:**

16       Lack of foundation; attorney speculation and argument; the Court has already found that

17   Verigy is *not* marketing a product of the nature of FlashEnhancer; lack of competent testimony to

18   establish the same.

19   **VERIGY'S RESPONSE TO THE OBJECTION:**

20       The objection should be overruled.  This is an objection to argument and to advocacy, not

21   an objection to evidence.  Further, the argument being objected to is supported by evidence

22   elsewhere in the record.

23   **W.MAYDER'S OBJECTION NO. 18:**

24       Opp. to WM SJ at p. 1, lns. 20-21 re Verigy's investigation having "revealed that Romi

25   Mayder had misappropriated and was using Verigy's trade secrets"

26       *"On August 22, 2007, after Verigy's investigation revealed that Romi Mayder had
     misappropriated and was using Verigy's trade secrets, Verigy filed this action and sought a"*
27

28   **Grounds for Objection:**

- 10 -

1  Lack of foundation; attorney speculation and argument; conclusory with no competent

2  evidence to support it.

3  **VERIGY'S RESPONSE TO THE OBJECTION:**

4  The objection should be overruled.  This is an objection to argument and to advocacy, not

5  an objection to evidence.  Further, the argument being objected to is supported by evidence

6  elsewhere in the record.

7  **W.MAYDER'S OBJECTION NO. 19:**

8  Opp. to WM SJ at p. 2, lns. 6-7 re Wes Mayder's alleged "operational role" in STS LLC

9  and STS, Inc.

10  *"contention.  Contemporaneous documentary evidence indicates that Wes Mayder had an*
    *operational role in both STS Entities.  Wes Mayder was, based on his own signature on the"*

11

12  **Grounds for Objection:**

13  Irrelevant and immaterial; "operational role," even were it true, which it was not, does not

14  create a basis for tort or vicarious liability.

15  **VERIGY'S RESPONSE TO THE OBJECTION:**

16  The objection should be overruled.  See Response to Objection #16 above.

17  **W.MAYDER'S OBJECTION NO. 20:**

18  Opp. to WM SJ at p. 2, lns. ___ [line numbers omitted] Re Wes Mayder's having become a

19  member of STS LLC

20  *"Wes Mayder was, based on his own signature on the operating agreement, a "member" of STS*
    *LLC, and Wes Mayder was, based on Romi Mayder's repeated contemporaneous admissions, a*
21  *director of STS, Inc."*

22  **Grounds for Objection:**

23  Irrelevant and immaterial; mere membership in an LLC, which in fact was never

24  consummated, does not create a basis for tort or vicarious liability.

25  **VERIGY'S RESPONSE TO THE OBJECTION:**

26  The objection should be overruled.   See Response to Objection #16 above.

27  **W.MAYDER'S OBJECTION NO. 21:**

28  Opp. to WM SJ at pp. 3-13 re civil conspiracy

1    ""The moving party bears the initial burden of demonstrating the absence of a 'genuine issue of material fact for trial.'"  *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th

2    *Cir. 2006) quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"(I)n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be

3    believed, and all justifiable inferences are to be drawn in [(that party's)] favor.'"  *Miller*, 454 F.3d at 988, quoting, *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

4         **A.    Wes Mayder is Not Entitled to Summary Judgment Because There are Genuinely Disputed Material Issues of Fact Concerning Wes Mayder's Involvement as a**

5              **Conspirator in the Theft of Verigy's Intellectual Property.**

"A civil conspiracy occurs when the parties have reached 'a unity of purpose or a common

6    design and understanding, or a meeting of the minds in an unlawful arrangement.'"  *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985), quoting *American*

7    *Tobacco Co. v. United States*, 328 U.S. 781, 809-810 (1946).  "A conspiracy must be looked at as a whole, and acts which are in themselves legal lose that character when they become constituent

8    elements of an unlawful scheme."  *Transgo*, 768 F.2d at 1020-21.

"The existence of a civil conspiracy makes each participant in the wrongful act

9    responsible as a joint tortfeasor for all damages resulting from the wrong, whether or not a participant was a direct actor and regardless of the degree of his activity."  *Klistoff v. Superior*

10   *Court*, 157 Cal. App. 4th 469, 479 (2007) (emphasis added).  "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators

11   within the ambit of the conspiracy."  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994).

12        Here, as shown below, Wes Mayder was an active co-conspirator in his brother's activities, regardless of his formal position in the STS Entities.  And, as his brother's co-

13   conspirator, Wes Mayder is equally liable for Romi Mayder's misconduct.  See, *Transgo*, 768 F.2d at 1023 (As co-conspirators, the defendants were found to be joint tortfeasors, jointly and

14   severally liable for all compensatory damages awarded . . .); *Klistoff*, 157 Cal. App. 4th at 479.  At the very least, there are genuinely disputed material issues of fact whether Wes Mayder conspired

15   with his brother in connection with the misuse of Verigy's intellectual property, thereby precluding summary judgment.

16        **1.    Wes Mayder Agreed to Become a Member of STS, LLC.**

Wes Mayder contends in his summary judgment motion that "[h]e is not involved in his

17   brother's business, has no background at all in the semiconductor industry . . . has no ownership interest in defendant STS LLC, nor has he ever . . . had an ownership interest therein."  (Motion,

18   at pp. 2-3) (emphasis added).  These assertions are not supported by Wes Mayder's sworn declaration (which is highly misleading and which Wes Mayder, in material respects, disavowed

19   at his deposition.)  Further, the assertions are belied by documentary evidence proving that, in fact, Wes Mayder was involved with his brother in the semiconductor industry and did have an

20   ownership interest in his brother's business.

Wes Mayder, along with his brother Romi Mayder, signed the operating agreement in STS

21   LLC, made as of October 11, 2006, which designates Wes Mayder as a "Member" of the LLC, with a 20 percent ownership stake in such limited liability company based on a $250,000 capital

22   contribution.  (See, Pochowski Decl., ¶ 6 and Ex. A; see also, Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr., at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91) (copy of

23   STS LLC Operating Agreement signed by Wes Mayder)).  Although the Operating Agreement was never signed by Pochowski, the document is nevertheless admissible evidence that the Mayder

24   brothers, each of whom did sign it, were engaged in a joint enterprise involving semiconductor device testing, STS LLC.  On its face, the document evinces "the intent of each Member . . . to

25   actively engage in the management" of the enterprise's business, "Semiconductor Device Testing."  (Pochowski Decl., Ex. A, ¶ 4.1; Wes Mayder Depo.Tr., Ex. 91, ¶ 4.1) (emphasis added).

26

27

28

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

As mentioned, Wes Mayder affixed his signature to this document.[1] "The existence of an LLC begins upon the fling of articles of incorporation by the Secretary of State. . . To validly complete the formation of an LLC, the members must enter into an operating agreement either before or after filing the articles. But the operating agreement need not be in writing; indeed it may consist of no more than an oral agreement among the initial members to organize the limited liability company!" 1 Friedman, California Practice Guide: Corporations, ¶¶ 2:36:30 & 2:36:32 (2007), at p.2-17, citing Cal. Corps. Code §§ 17001(b) & 17050(a) (emphasis added). Here, by signing the written operating agreement both Romi Mayder and Wes Mayder evinced their intent to, and did, complete the formation the STS LLC, of which they were both members.

Moreover, even if arguendo the STS LLC entity was never legally consummated in the absence of Pochowski's signature on the Operating Agreement, Wes Mayder's signature on the document evidences factually the brothers' conspiracy to operate a company engaged in the semiconductor device testing industry – using Verigy's technology. Wes Mayder's signature on the Operating Agreement is written contemporaneous evidence of his agreement to join his brother Romi Mayder's illicit enterprise. It is evidence of his participation in an unlawful conspiracy and thereby exposes him to joint and several liability for his brother's actions in furtherance of the conspiracy. This is true whether or not Wes Mayder was a direct actor and regardless of the degree of his activity (or whether he knew anything about the semiconductor device testing industry). Klistoff, 157 Cal. App. 4th at 479.

Wes Mayder's conspiracy is further evidenced by a letter from the brothers' corporate attorney, Daniel E. Hanley, to Pochowski, dated December 13, 2006:

Dear Mr. Pochowski:

We are attorneys for Silicon Test Solutions, LLC (STS).

When we formed STS on September 8, 2006, we were advised by Romi Mayder that the members would be Romi, Romi's brother Wesley and yourself. . . .

On that basis, we prepared the Operating Agreement, which details the ownership interest in STS. . . .

Neither Romi or his brother care to act as co-owner with you. On behalf of the Mayders their offer to you to be a member of STS is hereby terminated. . . .

Very truly yours,

[signature]
Daniel E. Hanley

(See, Pochowski Decl., ¶ 9 and Ex. D (emphasis added)). This letter makes amply clear that the joint enterprise in which both Romi and Wes Mayder were each involved would proceed even without Pochowski. Likewise, Romi Mayder characterized his brother ███████████████████████████████████████████ (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 40:20 – 41:13; 42:18 – 43:21 and Ex. 90)). Further, Wes Mayder admitted at deposition that he made a $250,000 capital contribution to STS LLC to secure his ownership stake in STS LLC. (Id., at 31:14 – 38:21; 83:20 – 86:7 and Ex. 94)).

Any contention that Wes Mayder never held an ownership stake in STS LLC is simply and demonstrably false. At the very least, the evidence raises a genuine dispute of material fact as to

---

[1]    Confronted at his deposition with his signature on the STS LLC Operating Agreement, Wes Mayder testified he did not recall signing it but admitted that the signature looked "similar" to his own, and he could not deny that it was, in fact, his. (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91). Wes Mayder also testified that he was retracting parts of sworn declaration in which he denied signing the STS LLC Operating Agreement. (Id., at 52:12 – 54:11).

1  Wes Mayder's involvement in the management of STS LLC and whether he agreed to join in a
conspiracy with his brother to illegally profit from the use of Verigy's technology.

2          **2.    Wes Mayder Is, or Was at Relevant Times, a Director of STS, Inc.**
          Wes Mayder also contends that he has "no board position, no officership, no employee

3  standing, and no operating role whatsoever" in STS, Inc. (Motion, at p.3, citing, Wes Mayder
Decl., ¶¶ 12-13). However, these contentions are also contradicted by documentary evidence

4  produced by defendants in this action.
          In an email string on July 3, 2007, which Wes Mayder authenticated at his deposition,

5  ████████████████████████████████████████████████████████
████████████████████████████ (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 124:20

6  – 127:8 and Ex. 100.) Wes Mayder was copied on the email. (Id.) Similarly, in an email string
on July 9, 2007, Romi Mayder wrote to Wes Mayder and Francois, stating: ████████████

7  ████████████ (Id., Wes Mayder Depo.Tr. at 142:2 – 143:23 and Ex. 102) (emphasis added).)

8  Mayder received the email string and responded to it. (Id.)[2] Accordingly, there are at least
genuinely disputed issues of material fact whether Wes Mayder was or is as a member of the

9  board of directors of STS, Inc.
          As a director of STS, Inc., Wes Mayder is subject to liability based on his investment in and

10 control of the company if he knew or had reason to know of misappropriation of a competitor's
trade secrets. "A corporate director or officer's participation in tortious conduct may be shown

11 not solely by direct action but also by knowing consent to or approval of unlawful acts." PMC,
Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1380 (2000). "To maintain a tort claim against a director

12 in his or her personal capacity, a plaintiff must first show that the director specifically authorized,
directed or participated in the allegedly tortious conduct (citation); or that although they

13 specifically knew or reasonably should have known that some hazardous condition or activity
under their control could injure plaintiff, they negligently failed to take or order appropriate

14 action to avoid the harm (citations)." Id., quoting, Frances T. v. Village Green Owners Assn., 42
Cal.3d 490, 508-09 (1986) (emphasis by Kadisha court).

15         Here, Wes Mayder, as a director of STS, Inc., either knew or reasonably should have
known – before the lawsuit was filed in late August 2007 – that STS, Inc. was born of his brother's

16 duplicity in taking technology from Verigy. In early July 2007, counsel for Verigy sent a pair of
letters to Romi Mayder raising effectively the same allegations made in this lawsuit which were

17 immediately forwarded to Wes Mayder (but notably not to other minority shareholders, an action
in itself suggesting that Wes Mayder was more than merely a passive investor, but instead his

18 brother's co-conspirator). (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo. Tr. at 132:12 –
136:8; 170:2 – 175:6 and Exs. 101 & 104).) Upon receiving these direct allegations of

19 wrongdoing, Wes Mayder failed to take or order appropriate action and admitted at his deposition
that he performed no investigation whatsoever into the allegations other than to ask his brother's

20 opinion of them. (Id.) Wes Mayder further admitted that he accepted "on faith" everything his
brother told him, notwithstanding that his brother frequently told him things which were false.

21 (Id., at 175-1-6.) Such "head-in-the-sand" behavior was negligent, objectively unreasonable and
precisely the sort of behavior rendering him liable for the misdeeds of the company under the

22 doctrine enunciated in Kadisha. Accordingly, summary judgment absolving him from any
potential liability is inappropriate.

23         **3.    Wes Mayder Was Not Merely a Passive Minority Shareholder but Instead
                   an Active Co-Conspirator with his Brother Romi Mayder.**

24         Wes Mayder argues repeatedly that he was "solely a passive, minority shareholder" in
Romi Mayder's company, STS, Inc. (Motion, at p.1; see also id., at pp.2, 8, 9, 10 & 11; Wes

25 ────────────────

26 [2]     Defendants also deny that Francois was ever a member of STS, Inc.'s board of directors,
but Romi Mayder told him otherwise. (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at

27 124:20 – 127:8; 142:2 – 143:23 and Exs. 110 & 102).) Further, it would appear Francois believed
him, because, as of July 8, 2008, Francois was touting himself on the internet as a "founding

28 Director of Silicon Test Systems in San Jose, CA." (Id., Ex. 110).

1  *Mayder Decl., ¶ 7 ("I am only a passive shareholder").).  However, this assertion is nonsense, belied by Wes Mayder's own admissions about his active role in the operations of company (and*
2  *its predecessor STS LLC), whether or not he was formally a member of STS, Inc.'s board of directors.*

3         **a.      Wes Mayder Solicited Investors for STS, Inc.**

4         *Wes Mayder, based on his own deposition testimony, was actively involved in the effort to secure investors for STS, Inc.* ████████████████████████████ *(Gagliardi*
5  *Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 56:11 – 59:10 and Ex. 92).)* ████
       *(Id., at 65:11 – 70:12 and Ex. 93)*
6  ████████████████████████████████████
7  ████████████████████████████████████
8  ████████████████████████████████ *(Gagliardi Decl., ¶¶ 2-3 and*
   *Ex. A (Wes Mayder Depo.Tr. at 59:11 – 60:2) and Ex. B (Davidson Depo.Tr. at 70:4 – 71:8).)*
9  *Fund-raising for a start-up company is not the domain of a merely passive investor.*

         **b.      Wes Mayder Used His Driver's License for a Seller's Permit for**
10               **STS, Inc.**

11        *Wes Mayder, by his own admission at deposition, was also actively involved in* ████
   ████████████████████████████████████
   *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 118:11 – 124:18 and Exs. 97-99).)  On*
12 *March 29, 2007, Romi Mayder emailed his brother.* ██████████████
13 ███████████ *(Id., ex. 97).  Later the same day, Romi Mayder emailed back*
   *indicating that* ██████████████████████████
14 ████████████████████████████████████
15 ████████████████████████ *(Id., ex. 98).  Romi Mayder then*
   *emailed and* ████████████████████████████████
16 ████████████ *(Id., ex. 99).  Wes Mayder* ████████████
17 ████████████████████ *(Gagliardi Decl., ¶ 2 and*
   *Ex. A (Wes Mayder Depo.Tr. at 124:3-18.).  Yet he was unable to explain why information from a*
18 *merely passive investor would be required for a seller's permit.  (Id., at 123:17-19.).[3]*

         **c.      Wes Mayder Operated the STS, Inc. Website**
19        *Wes Mayder, by his own admission, designed the STS, Inc. website.  (Wes Mayder Decl.,*
   *¶¶ 14 & 16.).  But he denies that either he or his company, WeDirect, ever hosted a website for*
20 *STS, Inc. or his brother.  (Id., ¶ 16).*
         *Once again, the contemporaneous documentary* ████████████████
21 ████████████████████████████████████
22 *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 155:19 – 159:12 and ex. 103) (emphasis*
   *added.)  The letter from Verigy alluded to by Romi Mayder was a letter dated July 9, 2007 (the*
23 *previous day) from Verigy's counsel to Romi Mayder, which Romi forwarded to Wes Mayder, in*
   *which counsel stated:  "Your website at www.silicontest.com shows that you and your STS Entities*
24 *have been promoting products that appear to incorporate confidential technology you worked on*
   *at Verigy."  (Id., at 170:2-23 and ex. 104).  Wes Mayder testified at his deposition that*
25 ████████████████████████████████ *(Id., at 159:7-12).*

26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [3]       In fact, in California a driver's license is required for a sellers permit of owners or partners,
27 officers or members of a corporate entity pursuant to the online application materials (See,
   Gagliardi Decl., ¶ 4 and Ex. C.).
28
                                              - 15 -

1         *Not only does Wes Mayder's conduct* ███████████████████████ *show that*
*he was operating the website (in direct contradiction of his sworn declaration), and show*

2   *therefore that he was more than a passive investor (again, in direct contradiction of his sworn*
*declaration), it also shows consciousness of guilt. The email Romi Mayder sent to his brother was*

3   *short on verbiage but deeply pregnant with meaning that could only have been understood by a*
*co-conspirator. The email says, in effect,* █████████████████████████████████████

4   ███████████ *In other words, "they're on to us." Wes Mayder willingly complied without asking*
*questions because he knew already that the website contained Verigy trade secret information –*

5   *and he knew that he, Wes Mayder, had posted it on the website that he designed and hosted. Wes*
*Mayder was clearly a co-conspirator of his brother Romi Mayder. At the very least, a factfinder*

6   *is entitled to make that determination based on the evidence at trial, thereby precluding summary*
*judgment.*

7                 **d.   Wes Mayder Was Involved in the Willful Backdating of Romi**
                     **Mayder's Inventor's NoteBook.**

8         *Wes Mayder also actively conspired with his brother Romi Mayder in the backdating of*
*Romi Mayder's inventor's notebook – a false and fraudulent activity in direct furtherance of their*

9   *conspiracy to steal Verigy's intellectual property.*

10         *Wes Mayder admitted at his deposition receiving an email from his brother Romi Mayder*
*on January 17, 2007 asking Wes Mayder to supply someone to witness entries in Romi Mayder's*
*inventor's notebook and stated:*

11   ███████████ *(Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at 89:1 – 91:3; 101:8 – 102:20*
*and ex. 7) (emphasis added).) Wes Mayder replied by email the same day, offering up his*

12   *employee, Jon Davidson, without questioning the legality or ethics of the task assigned. (Id.)*
██████████████████████████████ *Mayder never took issue with Romi Mayder's explicit request for*

13   *assistance in falsifying records; instead, he dutifully complied. (Id.)*

14         *And, in fact, Romi Mayder's inventor's notebook was falsified by Davidson, whose*
*declaration and deposition testimony are at odds with each other and at odds with the*

15   *contemporaneous emails regarding the subject. The January 17, 2007 email string makes clear*
*that* ████████████████████████████████████████. *(See, Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at*

16   *110:6-18 (conceding this truism).) Yet, Davidson swears under penalty of perjury in his*
*declaration that the request for him to do so was made a month earlier:*

17             *In mid-December 2006, Romi [Mayder] sent an email to Wesley [Mayder] asking*
          *about obtaining verification of dates applicable to his lab notebook. Since I had*

18             *spoken several times with Romi [Mayder] about his work at STS LLC, Wesley*
          *knew that I would be a good person for Romi to be referred to. I reviewed Romi's*

19             *notebook, and based on my recollection of our discussions, I tried to sign with*
          *dates corresponding to approximately when we discussed the information.*

20             *Wesley never directed me to do anything false or anything wrongful, nor would I*
          *do so.*

21   *(Davidson Decl., ¶ 7) (emphasis added). Thus, Davidson admits to backdating Romi Mayder's*
*inventor's notebook but vainly denies that it amounts to anything "false" or "wrongful."*

22         *However, in contradiction of Davidson's own declaration, Davidson swears under oath in*
*his deposition testimony* ███████████████████████████████████████████████████████

23   █████████████████████████████████ *(Gagliardi Decl., ¶ 3 and Ex. B (Davidson Depo.Tr. at 34:24*
*– 35:14; 44:10 – 45:19).) In other words, Davidson* ████████████████████████████████

24   ████████████████████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████████████████

26   ███████████████████████████ *(Id., at 85:1 – 90:17 and ex. 6) (copy of the notebook).) Davidson's*
*deposition testimony and declaration simply cannot be harmonized – one or both must be untrue*

27   *on the subject of backdating the notebook, and indeed both are. Neither Davidson's declaration*
*nor his deposition testimony is consistent with the definitive, contemporaneous documentary*

28   *evidence that the original request for Davidson to witness and endorse the notebook was not made*

1   *until January 17, 2007 and therefore Davidson simply could not have done so beforehand.[4]  Thus,
    Davidson (whose only connection to Romi Mayder is that he is Wes Mayder's employee offered up*
2   *by Wes Mayder for the job of falsifying records) is utterly discredited as a witness.*
           *Although it is unknown just when Davidson signed Romi Mayder's notebook, what is*
3   *known is that it had to be after January 17, 2007 (rendering Davidson's declaration and
    deposition testimony utterly impossible), that it involved falsifying records, and that Wes Mayder*
4   *was inextricably involved in this scheme* ██████████████████████████████████████████
    ████████████████████████████████████████████████████████████████████████████████
5   ██████████████████████████████
           *The evidence is thus overwhelming that Wes Mayder is thoroughly entangled with Romi*
6   *Mayder's misdeeds involving the theft of Verigy's technology.  Plainly, Wes Mayder was an
    integral part of the conspiracy with his brother Romi Mayder to tamper with evidence of the real*
7   *ownership of STS, Inc's purported intellectual property. Wes Mayder's assertion that he would
    never do anything false or fraudulent is completely incredible in light of this evidence.  Certainly,*
8   *at the very least, there remain genuine issues of material fact precluding summary judgment.*
                **B.      Wes Mayder is Not Entitled Summary Adjudication of Any of the Claims for
9                         Relief Against Him.**
           *The Complaint asserts 14 claims for relief.  Of these, 12 are asserted against Wes Mayder:*
10  *misappropriation of trade secrets, violation of the Computer Fraud and Abuse Act, 18 U.S.C. §
    1030, violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2701 et seq., violation*
11  *of California Penal Code § 502, unfair competition in violation of California Business &
    Professions Code § 17200 et seq., common law unfair competition, violation of the Lanham Act,*
12  *15 U.S.C. § 1125(a), false advertising in violation of California Business & Professions Code §
    17500, intentional interference with prospective economic advantage, declaratory relief,*
13  *imposition of a constructive trust, and unjust enrichment."*
           *Wes Mayder argues that "any legal arguments that implicate Wesley [Mayder] for any*
14  *alleged wrongdoing, including but not limited to allegations of trade secret misappropriation
    against Wesley Mayder, are meritless."  (Motion, at p.4) (emphasis added).  However, based on*
15  *the foregoing, exactly the opposite is true.  The evidence demonstrates, as opposed to the self-
    serving declarations concocted in support of this motion, that Wes Mayder conspired with his*
16  *brother Romi Mayder and is thus legally liable for everything Romi Mayder is liable for arising
    out of the conspiracy. Transgo, Inc., 768 F.2d at 1023; Klistoff, 157 Cal. App. 4th at 479.*
17         *Accordingly, Wes Mayder is not entitled to summary adjudication of any of the individual
    claims asserted against him.*
18  **IV.     CONCLUSION**
           *For the foregoing reasons, Verigy and its counsel respectfully request that the Court deny*
19  *in its entirety Wes Mayder's motion for summary judgment."*

20
    **Grounds for Objection:**
21
           Lack of foundation; irrelevant and immaterial.  Verigy has failed to plead any facts in its
22
    Complaint that would be required for it to be able to proceed on a civil conspiracy basis as set
23
    forth in CACI 3600.
24
    _____
25  [4] ████████████████████████████████████████████████████████████████████████
    ████████████████████████████████████████████████████████████████████████████████
26  ████████████████████████████████████████████████████████████████████████████████
    ████████████████████████████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████████████████████
28  ██████████████████████████████████

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1   //

2   **VERIGY'S RESPONSE TO THE OBJECTION:**

3          The objection should be overruled.  The objection is an argument regarding the weight of

4   the information, not its admissibility.  Conspiracy is not a cause of action or independent claim for

5   relief but a doctrine of derivative liability.  *Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*,

6   7 Cal. 4th 503, 510 (1994).  Mr. Fowler attests that he had experience litigating claims of

7   derivative liability of various sorts.  Such information is relevant, material and admissible

8   concerning the reasonableness of his pre-complaint investigation.

9   **W.MAYDER'S OBJECTION NO. 22:**

10         Opp. to WM SJ at P. 3, lns. 21-23 re Wes Mayder being a co-conspirator and liable for the

11  acts of his brother Romi

12         *"Here, as shown below, Wes Mayder was an active co-conspirator in his brother's
    activities, regardless of his formal position in the STS Entities.  And, as his brother's co-
13  conspirator, Wes Mayder is equally liable for Romi Mayder's misconduct.  See, Transgo, 768 F.2d
    at 1023 (As co-"*

14

15  **Grounds for Objection:**

16         Lack of foundation; irrelevant and immaterial.  Verigy has failed to plead any facts in its

17  Complaint that would be required for it to be able to proceed on a civil conspiracy basis as set

18  forth in CACI 3600.

19  **VERIGY'S RESPONSE TO THE OBJECTION:**

20         The objection should be overruled.  See Response to Objection #5 above.

21  **W.MAYDER'S OBJECTION NO. 23:**

22         Opp. to WM SJ at p. 4, ln. 23-p. 5, ln. 7 re LLC required to have an operating agreement,

23  reference to oral operating agreement being sufficient

24  *"of an LLC begins upon the fling of articles of incorporation by the Secretary of State. . . To
    validly complete the formation of an LLC, the members must enter into an operating agreement
25  either before or after filing the articles.  But the operating agreement need not be in writing;
    indeed it may consist of no more than an oral agreement among the initial members to organize
26  the limited liability company!"  1 Friedman, California Practice Guide: Corporations, ¶¶ 2:36:30
    & 2:36:32 (2007), at p.2-17, citing Cal. Corps. Code §§ 17001(b) & 17050(a) (emphasis added).
27  Here, by signing the written operating agreement both Romi Mayder and Wes Mayder evinced
    their intent to, and did, complete the formation both the STS LLC, of which they were both members."*

28

- 18 -

1    **Grounds for Objection:**

2    Irrelevant and immaterial; lack of foundation.  Verigy has made an admission against

3    interest that to be valid the LLC had to have a completed operating agreement; the LLC operating

4    agreement that Verigy is relying upon required the signature of *three members, including Mr.*

5    *Pochowski who admits he never signed it.*  There is no evidence of any "oral" operating agreement

6    between Romi and Wes Mayder, and by Verigy's own assertion, no valid LLC was ever formed.

7    **<u>VERIGY'S RESPONSE TO THE OBJECTION:</u>**

8    The objection should be overruled.  See Response to Objection #7 above.

9    **W.MAYDER'S OBJECTION NO. 24:**

10   Opp. to WM SJ at p. 5, lns. 8-17 re the signatures of the Mayder brothers on the draft

11   operating agreement constituting evidence of a conspiracy to operate a company using Verigy's

12   technology

13   *"Moreover, even if arguendo the STS LLC entity was never legally consummated in the*
     *absence of Pochowski's signature on the Operating Agreement, Wes Mayder's signature on the*

14   *document evidences factually the brothers' conspiracy to operate a company engaged in the*
     *semiconductor device testing industry – using Verigy's technology.  Wes Mayder's signature on*

15   *the Operating Agreement is written contemporaneous evidence of his agreement to join his*
     *brother Romi Mayder's illicit enterprise.  It is evidence of his participation in an unlawful*

16   *conspiracy and thereby exposes him to joint and several liability for his brother's actions in*
     *furtherance of the conspiracy.  This is true whether or not Wes Mayder was a direct actor and*

17   *regardless of the degree of his activity (or whether he knew anything about the semiconductor*
     *device testing industry).  Klistoff, 157 Cal. App. 4th at 479."*

18

19   **Grounds for Objection:**

20   Lack of foundation; incompetent evidence; irrelevant and immaterial.  Mere signatures on

21   an operating agreement constitute no evidence of a conspiracy, and there is no evidence of

22   knowledge by Wes Mayder to use any Verigy technology.  Being willing to join an LLC does not

23   evidence anything about a conspiracy or any tortuous conduct.

24   **<u>VERIGY'S RESPONSE TO THE OBJECTION:</u>**

25   The objection should be overruled.  See Response to Objection #5 above.  "A civil

26   conspiracy occurs when the parties have reached 'a unity of purpose or a common design and

27   understanding, or a meeting of the minds in an unlawful arrangement.'"  *Transgo, Inc. v. Ajac*

28   *Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985) (citations omitted).  Wes Mayder's

1  signature on the STS, LLC evinced, and is evidence of, his meeting of minds with his brother in an

2  unlawful arrangement to compete with Verigy using its stolen technology.

3  **W.MAYDER'S OBJECTION NO. 25:**

4      Opp. to WM SJ at p. 5, ln. 18-p. 6, ln. 3 re letter from attorney for Romi Mayder

5  constituting evidence of conspiracy

6      *"Wes Mayder's conspiracy is further evidenced by a letter from the brothers' corporate*
   *attorney, Daniel E. Hanley, to Pochowski, dated December 13, 2006:*

7      *Dear Mr. Pochowski:*

8      *We are attorneys for Silicon Test Solutions, LLC (STS).*

9      *When we formed STS on September 8, 2006, we were advised by Romi Mayder*
       *that the members would be Romi, Romi's brother Wesley and yourself. . . .*

10

11      *On that basis, we prepared the Operating Agreement, which details the ownership*
       *interest in STS. . . .*

12      *Neither Romi or his brother care to act as co-owner with you.  On behalf of the*
       *Mayders their offer to you to be a member of STS is hereby terminated. . . .*

13

14      *Very truly yours,*

       *[signature]*
15      *Daniel E. Hanley*

16  *(See, Pochowski Decl., ¶ 9 and Ex. D (emphasis added)).  This letter makes amply clear that the*
   *joint enterprise in which both Romi and Wes Mayder were each involved would proceed even*

17  *without Pochowski.  Likewise, Romi Mayder characterized his brother* ███████████████ *"*

18

19  **Grounds for Objection:**

20      Lack of foundation; incompetent evidence; irrelevant and immaterial; letter informing

21  Pochowski that he was not to be included is not evidence of wrongdoing whatsoever.

22  **VERIGY'S RESPONSE TO THE OBJECTION:**

23      The objection should be overruled.  See Response to Objection #24 above.  "A conspiracy

24  must be looked at as a whole, and acts which are in themselves legal lose that character when they

25  become constituent elements of an unlawful scheme."  *Transgo*, 768 F.2d at 1020-21.  The letter

26  in question evidences the fact that an agreement to form an STS enterprise, of whatever legal

27  standing or no legal standing, was made between Romi Mayder and his brother Wes Mayder.

28  Their agreement was their conspiracy and renders Wes Mayder legally responsible for the

1   wrongful acts of his brother Romi Mayder.  *See, Klistoff v. Superior Court*, 157 Cal. App. 4th 468,.

2   479 (2007).

3   **W.MAYDER'S OBJECTION NO. 26:**

4       Opp. to WM SJ at p. 7, lns. 3-5 re Wes Mayder's being a director of STS, Inc.

5       *"As a director of STS, Inc., Wes Mayder is subject to liability based on his investment in*
    *and control of the company if he knew or had reason to know of misappropriation of a*
6   *competitor's trade secrets.  "A corporate director or officer's participation in tortious conduct*
    *may"*
7

8   **Grounds for Objection:**

9       Lack of foundation; no competent evidence that Wes Mayder was a director of STS, Inc.

10  and all competent evidence refutes this assertion.

11  **VERIGY'S RESPONSE TO THE OBJECTION:**

12      The objection should be overruled.   There exists competent evidence that Wes Mayder

13  was a director of STS, Inc.  *See,* Verigy's Memorandum of Points & Authorities in Opposition to

14  Wes Mayder's Motion for Summary Judgment, at 6:17 – 7:2 (citing evidence.)   As shown, Romi

15  Mayder repeatedly told Wes Mayder and fellow investor Ben Francois in emails that both were on

16  the STS, Inc. board of directors.  Wes Mayder never corrected his brother.

17  **W.MAYDER'S OBJECTION NO. 27:**

18      Opp. to WM SJ at p. 7, lns. 14-28 re Wes Mayder's being informed of threats by Verigy

19  and being a director of STS, Inc. and allegedly failing to investigate

20      *"Here, Wes Mayder, as a director of STS, Inc., either knew or reasonably should have*
    *known – before the lawsuit was filed in late August 2007 – that STS, Inc. was born of his brother's*
21  *duplicity in taking technology from Verigy.  In early July 2007, counsel for Verigy sent a pair of*
    *letters to Romi Mayder raising effectively the same allegations made in this lawsuit which were*
22  *immediately forwarded to Wes Mayder (but notably not to other minority shareholders, an action*
    *in itself suggesting that Wes Mayder was more than merely a passive investor, but instead his*
23  *brother's co-conspirator).  (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo. Tr. at 132:12 –*
    *136:8; 170:2 – 175:6 and Exs. 101 & 104).)  Upon receiving these direct allegations of*
24  *wrongdoing, Wes Mayder failed to take or order appropriate action and admitted at his deposition*
    *that he performed no investigation whatsoever into the allegations other than to ask his brother's*
25  *opinion of them.  (Id.)  Wes Mayder further admitted that he accepted "on faith" everything his*
    *brother told him, notwithstanding that his brother frequently told him things which were false.*
26  *(Id., at 175-1-6.)  Such "head-in-the-sand" behavior was negligent, objectively unreasonable and*
    *precisely the sort of behavior rendering him liable for the misdeeds of the company under the*
27  *doctrine enunciated in Kadisha.  Accordingly, summary judgment absolving"*

28  *//*

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1    **Grounds for Objection:**

2        Lack of foundation; no competent evidence that Wes Mayder was a director of STS, Inc.

3    and all competent evidence refutes this assertion; irrelevant and immaterial; as a non-director or

4    officer, Wes Mayder had no obligation, he did investigate to the best of his ability.

5    **VERIGY'S RESPONSE TO THE OBJECTION:**

6        The objection should be overruled.   See Response to Objection #26 above.

7    **W.MAYDER'S OBJECTION NO. 28:**

8        Opp. to WM SJ at p. 8, lns. 11-22 re Wes Mayder allegedly helping to solicit investments

9    in STS, Inc.

10       *"Wes Mayder, based on his own deposition testimony, was actively involved in the effort to
    secure investors for STS, Inc.* ████████████████████████████████ *(Gagliardi*

11   *Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 56:11 – 59:10 and Ex. 92).)*
                                    *(Id., at 65:11 – 70:12 and Ex. 93)*

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████ *(Gagliardi Decl., ¶¶ 2-3 and*

15   *Ex. A (Wes Mayder Depo.Tr. at 59:11 – 60:2) and Ex. B (Davidson Depo.Tr. at 70:4 – 71:8).)*
    *Fund-raising for a start-up company is not the domain of a merely passive investor."*

16

17   **Grounds for Objection:**

18       Irrelevant and immaterial; helping to raise money proves nothing regarding the elements of

19   any of Verigy's claims in this action, or of civil conspiracy, a claim not properly pled by Verigy in

20   this action.

21   **VERIGY'S RESPONSE TO THE OBJECTION:**

22       The objection should be overruled.  See Response to Objection # 25 above.  Wes Mayder's

23   solicitation of investors for an illegal scheme is an act in furtherance of the conspiracy.

24   **W.MAYDER'S OBJECTION NO. 29:**

25       Opp. to WM SJ at p. 8, ln. 25-p. 9, ln. 12 re Wes Mayder using his driver's license to

26   obtain a seller's permit for STS, Inc.

27       *"Wes Mayder, by his own admission at deposition, was also actively involved in* ███████████

28   ████████████████████████████████████████.
    *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 118:11 – 124:18 and Exs. 97-99).)  On*

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1  *March 29, 2007, Romi Mayder emailed his brother,* ████████████████████████
2  ██████████████████████████ *(Id., ex. 97). Later the same day, Romi Mayder emailed back*
3  *indicating that* ████████████████████████████████████████████████████████████
4  ████████████████████████████████████ *(Id., ex. 98). Romi Mayder then*
5  *emailed and* ████████████████████████████████████████████████████████████
6  ██████ *(Id., ex. 99). Wes Mayder* ████████████████████████████ *(Gagliardi Decl., ¶ 2 and*
   *Ex. A (Wes Mayder Depo.Tr. at 124:3-18.). Yet he was unable to explain why information from a*
7  *merely passive investor would be required for a seller's permit. (Id., at 123:17-19.).*[5] "

8  **Grounds for Objection:**

9        Irrelevant and immaterial; helping to obtain a seller's permit proves nothing regarding the

10  elements of any of Verigy's claims in this action, or of civil conspiracy, a claim not properly pled

11  by Verigy in this action.

12  **VERIGY'S RESPONSE TO THE OBJECTION:**

13        The objection should be overruled.  See Response to Objection #25 above.  Wes Mayder's

14  lending of his driver's license to secure a seller's permit for an illicit enterprise is an act in

15  furtherance of the conspiracy.  Further, the request for the driver's license by Romi Mayder is

16  evidence suggesting that Wes Mayder's involvement in the enterprise was more than merely as a

17  passive investor.

18  **W.MAYDER'S OBJECTION NO. 30:**

19        Opp. to WM SJ at p. 9, ln. 14-p. 10, ln. 12 re Wes Mayder dealing with STS, Inc.'s website

20        *"Wes Mayder, by his own admission, designed the STS, Inc. website.  (Wes Mayder Decl.,*
    *¶¶ 14 & 16.).  But he denies that either he or his company, WeDirect, ever hosted a website for*
21  *STS, Inc. or his brother.  (Id., ¶ 16).*
          *Once again, the contemporaneous documentary* ████████████████████████
22  ████████████████████████████████████████████████████████████████████

23  *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 155:19 – 159:12 and ex. 103) (emphasis*
    *added.)  The letter from Verigy alluded to by Romi Mayder was a letter dated July 9, 2007 (the*
24  *previous day) from Verigy's counsel to Romi Mayder, which Romi forwarded to Wes Mayder, in*
    *which counsel stated:  "Your website at* www.silicontest.com *shows that you and your STS Entities*
25  *have been promoting products that appear to incorporate confidential technology you worked on*

26  _____

27  [5]      In fact, in California a driver's license is required for a sellers permit of owners or partners,
    officers or members of a corporate entity pursuant to the online application materials (See,
    Gagliardi Decl., ¶ 4 and Ex. C.).

28

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS      Case No. 07-CV-04330 RMW (HRL)

1  *at Verigy." (Id., at 170:2-23 and ex. 104). Wes Mayder testified at his deposition that* ███
*(Id., at 159:7-12).*

2  *Not only does Wes Mayder's conduct* █████████████████ *show that he was
operating the website (in direct contradiction of his sworn declaration), and show therefore that*

3  *he was more than a passive investor (again, in direct contradiction of his sworn declaration), it
also shows consciousness of guilt. The email Romi Mayder sent to his brother was short on*

4  *verbiage but deeply pregnant with meaning that could only have been understood by a co-
conspirator. The email says, in effect,* ██████████████

5  *In other words, "they're on to us." Wes Mayder willingly complied without asking questions
because he knew already that the website contained Verigy trade secret information – and he*

6  *knew that he, Wes Mayder, had posted it on the website that he designed and hosted. Wes Mayder
was clearly a co-conspirator of his brother Romi Mayder. At the very least, a factfinder is entitled*

7  *to"*

8

9  **Grounds for Objection:**

10      Irrelevant and immaterial; helping his brother with the STS, Inc. website proves nothing

11  regarding the elements of any of Verigy's claims in this action, or of civil conspiracy, a claim not

12  properly pled by Verigy in this action.

13  **VERIGY'S RESPONSE TO THE OBJECTION:**

14      The objection should be overruled. See Response to Objection #25 above. Wes Mayder's

15  assistance with the STS, Inc. website is an act in furtherance of the conspiracy. Also, it undercuts

16  Wes Mayder's credibility insofar as he denied active assistance with the website.

17  **W.MAYDER'S OBJECTION NO. 31:**

18      Opp. to WM SJ at p. 10, ln. 14-p. 12, ln. 9 re Romi Mayder's inventor's notebook and Wes

19  Mayder's alleged involvement with such notebook

20          **d.  "Wes Mayder Was Involved in the Willful Backdating of Romi
            Mayder's Inventor's NoteBook.**

21  *Wes Mayder also actively conspired with his brother Romi Mayder in the backdating of
Romi Mayder's inventor's notebook – a false and fraudulent activity in direct furtherance of their*

22  *conspiracy to steal Verigy's intellectual property.*
*Wes Mayder admitted at his deposition receiving an email from his brother Romi Mayder*

23  *on January 17, 2007 asking Wes Mayder to supply someone to witness entries in Romi Mayder's
inventor's notebook and stated:* ██████████████

24  ██ *(Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at 89:1 – 91:3; 101:8 – 102:20
and ex. 7) (emphasis added).) Wes Mayder replied by email the same day, offering up his*

25  *employee, Jon Davidson, without questioning the legality or ethics of the task assigned. (Id.)*
██████████ *Mayder never took issue with Romi Mayder's explicit request for*

26  *assistance in falsifying records; instead, he dutifully complied. (Id.)*
*And, in fact, Romi Mayder's inventor's notebook was falsified by Davidson, whose*

27  *declaration and deposition testimony are at odds with each other and at odds with the
contemporaneous emails regarding the subject. The January 17, 2007 email string makes clear*

28  *that* ████████████████

- 24 -

1 ████████████████████████████. *(See, Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at*
*110:6-18 (conceding this truism).)* Yet, Davidson swears under penalty of perjury in his
2 declaration that the request for him to do so was made a month earlier:

> In mid-December 2006, Romi [Mayder] sent an email to Wesley [Mayder] asking
> about obtaining verification of dates applicable to his lab notebook. Since I had
> spoken several times with Romi [Mayder] about his work at STS LLC, Wesley
> knew that I would be a good person for Romi to be referred to. I reviewed Romi's
> notebook, and based on my recollection of our discussions, I tried to sign with
> dates corresponding to approximately when we discussed the information.
> Wesley never directed me to do anything false or anything wrongful, nor would I
> do so."

**Grounds for Objection:**

Irrelevant and immaterial; Wes Mayder's allowing on of his employees, Jon Davidson, to

assist Romi Mayder proves nothing regarding any of Verigy's claims in this action, or of civil

conspiracy, a claim not properly pled by Verigy in this action.

**VERIGY'S RESPONSE TO THE OBJECTION:**

The objection should be overruled. See Response to Objection #25 above. Wes Mayder's

lending of his employee to falsely backdate entries in an inventor's notebook is an act – and a

fraudulent one – in furtherance of the conspiracy.

**D.    VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO WESLEY MAYDER'S MOTION FOR RULE 11 SANCTIONS**

**W.MAYDER'S OBJECTION NO. 32:**

("Opp. Rule 11") at p. 1, lns. 9-14 re Wes Mayder's involvement with STS

*"This case involves the misappropriation of Verigy's valuable trade secrets and confidential
information by Romi Mayder a former Verigy employee, by the new companies he formed, Silicon
Test Solutions, LLC ("STS LLC") and Silicon Test Systems Inc. ("STS, Inc.") (collectively, the
"STS Entities") and by Romi Mayder's brother and co-conspirator, defendant Wes Mayder, who
invested in both STS Entities, was a Member of STS LLC, and a boardmember of STS, Inc."*

**Grounds for Objection:**

Irrelevant to the extent Wes Mayder "invested" in the STS entities, as such investment

does not create liability, and re his being a "member" of STS LLC, as mere membership creates no

tort liability as has been alleged by Verigy, and re his being a co-conspirator, in that Verigy has

failed to plead or adduce any of the evidence needed to demonstrate conspiracy; incompetent

evidence regarding Wes Mayder being a "boardmember" of STS, Inc.

1    <u>**VERIGY'S RESPONSE TO THE OBJECTION:**</u>

2         The objection should be overruled.  See Response to Objection #16 above.

3    **W.MAYDER'S OBJECTION NO. 33:**

4         Opp. Rule 11 at p. 1, lns. 19-21 re Romi Mayder allegedly marketing a product "very

5    similar to Verigy's products"

6         *"In early July 2007, Verigy learned that Romi Mayder was marketing a product very*
     *similar to Verigy's products and began an investigation to determine whether Romi Mayder was*
7    *using Verigy trade secrets.  In late July, a former Agilent officer, Robert Pochowski, informed*
     *Verigy of"*

8

9    **Grounds for Objection:**

10        Lack of foundation; attorney speculation and argument; the Court has already found that

11   Verigy is *not* marketing a product of the nature of FlashEnhancer; lack of competent testimony to

12   establish the same.

13   <u>**VERIGY'S RESPONSE TO THE OBJECTION:**</u>

14        The objection should be overruled.  See Response to Objection #17 above.

15   **W.MAYDER'S OBJECTION NO. 34:**

16        Opp. Rule 11 at p. 1, lns. 24-25 re Verigy's investigation having "revealed that Romi

17   Mayder had misappropriated and was using Verigy's trade secrets"

18        *"On August 22, 2007, after Verigy's investigation revealed that Romi Mayder had*
     *misappropriated and was using Verigy's trade secrets, Verigy filed this action and sought a"*
19

20   **Grounds for Objection:**

21        Lack of foundation; attorney speculation and argument; conslusory with no competent

22   evidence to support it.

23   <u>**VERIGY'S RESPONSE TO THE OBJECTION:**</u>

24        The objection should be overruled.  See Response to Objection #18 above.

25   **W.MAYDER'S OBJECTION NO. 35:**

26        Opp. Rule 11 at p. 2, lns. 11-5 re Wes Mayder's allegedly being a member of STS LLC

27   and a director of STS, Inc.

28

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS      Case No. 07-CV-04330 RMW (HRL)

1    "inquiry and the factual contentions against Wes Mayder have ample evidentiary support.
The contemporaneous documentary evidence indicates that Wes Mayder had an operational role
2    in both STS Entities.  Wes Mayder was, based on his own signature on the operating agreement, a
"member" of STS LLC and Wes Mayder was, based on Romi Mayder's repeated
3    contemporaneous admissions, a director of STS, Inc.  Moreover, regardless of Wes Mayder's de
jure position in the hierarchy of the STS Entities, the documentary evidence indicates that Wes
4    Mayder was a de facto co-conspirator with his brother in expropriating Verigy's intellectual
property for the brothers' own private profit.  Wes Mayder is and was anything but a "passive
5    minority shareholder" as he proclaims himself to be.  At the very least, there is now and was when
the Complaint was filed, a colorable claim against Wes Mayder as his brother's co-conspirator
6    precluding the imposition of sanctions pursuant to Rule 11.

**II.    STATEMENT OF ISSUES**

7

8    1.    *Should Verigy and/or its counsel be sanctioned pursuant to Fed.R.Civ.P. 11 for
naming Wes Mayder as a defendant in the above-captioned action?
(Correct answer:  No.)*

9    2.    *Assuming arguendo that Verigy and/or its counsel should be sanctioned pursuant
to Fed.R.Civ.P. 11, is an award of attorneys' fees and costs to Wes Mayder an
10    appropriate form of sanction?
(Correct answer:  No.)*

11    3.    *Should Wes Mayder and/or his counsel-of-record, jointly and severally, be ordered
to reimburse Verigy for its reasonable attorneys' fees and costs incurred in"*

12

13    **Grounds for Objection:**

14    Lack of foundation; irrelevant and immaterial; being a member of an LLC does not create

15    tort liability even if it were true, which it is not, since, as Verigy has admitted, no operating

16    agreement was ever finalized; no competent evidence of Wes Mayder's ever being a director of

17    STS, Inc. and the competent evidence directly refutes this assertion.

18    <u>**VERIGY'S RESPONSE TO THE OBJECTION:**</u>

19    The objection should be overruled.  See Response to Objections #s 16 and 26 above.

20    **W.MAYDER'S OBJECTION NO. 36:**

21    Opp. Rule 11 at pp. 4-13 re Wes Mayder's being in a civil conspiracy with Romi Mayder

22    ***A.    The Complaint is Not Legally or Factually "Baseless" From an Objective
Perspective.***
23    ***1.    Wes Mayder Was a Co-Conspirator of Romi Mayder.***
As discussed in the opposition to Wes Mayder's contemporaneously filed summary
24    judgment motion, Wes Mayder was a co-conspirator in his brother Romi Mayder's activities.  At
the very least, there are genuinely disputed material issues of fact concerning Wes Mayder's
25    involvement with his brother's theft of Verigy's intellectual property.  As such, Verigy's Complaint
as against Wes Mayder cannot be considered legally or factually baseless from an objective
26    perspective.
"A civil conspiracy occurs when the parties have reached 'a unity of purpose or a common
27    design and understanding, or a meeting of the minds in an unlawful arrangement.'"  Transgo, Inc.
v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1020 (9th Cir. 1985), quoting American
28    Tobacco Co. v. United States, 328 U.S. 781, 809-810 (1946).  "A conspiracy must be looked at as

1  *a whole, and acts which are in themselves legal lose that character when they become constituent*
*elements of an unlawful scheme." Transgo, 768 F.2d at 1020-21.*

2      *"The existence of a civil conspiracy makes each participant in the wrongful act*
*responsible as a joint tortfeasor for all damages resulting from the wrong, whether or not a*

3  *participant was a direct actor and regardless of the degree of his activity." Klistoff v. Superior*
*Court, 157 Cal. App. 4ᵗʰ 469, 479 (2007) (emphasis added). "By participation in a civil*

4  *conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators*
*within the ambit of the conspiracy." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7*

5  *Cal.4ᵗʰ 503, 510-11 (1994).*

6      *Here, as shown below, Wes Mayder was an active co-conspirator in his brother's*
*activities, regardless of his formal position in the STS Entities.*

7      *And, as his brother's co-conspirator, Wes Mayder is equally liable for Romi Mayder's*
*misconduct. See, Transgo, 768 F.2d at 1023 (As co-conspirators, the defendants were found to be*

8  *joint tortfeasors, jointly and severally liable for all compensatory damages awarded . . .); Klistoff,*
*157 Cal. App. 4ᵗʰ at 479. At the very least, there are genuinely disputed material issues of fact*
*whether Wes Mayder conspired with his brother's misuse of Verigy's intellectual property.*

9          **a.        Wes Mayder Agreed to Become a Member of STS, LLC.**

10      *Wes Mayder contends in his Rule 11 motion that "[h]e is not involved in his brother's*
*business, has no background at all in the semiconductor industry . . . has no ownership interest in*

11  *defendant STS LLC, nor has he ever . . . had an ownership interest therein." (Motion, at pp. 2-3)*
*(emphasis added). These assertions are not supported by Wes Mayder's sworn declaration (which*

12  *is highly misleading and which Wes Mayder, in material respects, disavowed at his deposition.)*
*Further, the assertions are belied by documentary evidence proving that, in fact, Wes Mayder was*

13  *involved with his brother in the semiconductor industry and did have an ownership interest in his*
*brother's business.*

14      *Wes Mayder, along with his brother Romi Mayder, signed the operating agreement in STS*
*LLC, made as of October 11, 2006, which designates Wes Mayder as a "Member" of the LLC,*

15  *with a 20 percent ownership stake in such limited liability company based on a $250,000 capital*
*contribution. (See, Pochowski Decl., ¶ 6 and Ex. A; see also, Gagliardi Decl., ¶ 2 and Ex. A (Wes*
*Mayder Depo.Tr., at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91) (copy of*

16  *STS LLC Operating Agreement signed by Wes Mayder)). Although the Operating Agreement was*
*never signed by Pochowski, the document is nevertheless admissible evidence that the Mayder*

17  *brothers, each of whom did sign it, were engaged in a joint enterprise involving semiconductor*
*device testing, STS LLC. On its face, the document evinces "the intent of each Member . . . to*

18  *actively engage in the management" of the enterprise's business, "Semiconductor Device*
*Testing." (Pochowski Decl., Ex. A, ¶ 4.1; Wes Mayder Depo.Tr., Ex. 91, ¶ 4.1) (emphasis added).*

19      *As mentioned, Wes Mayder affixed his signature to this document.⁶ "The existence*
*of an LLC begins upon the filing of articles of incorporation by the Secretary of State. . . To*

20  *validly complete the formation of an LLC, the members must enter into an operating agreement*
*either before or after filing the articles. But the operating agreement need not be in writing;*

21  *indeed it may consist of no more than an oral agreement among the initial members to organize*
*the limited liability company!" 1 Friedman, California Practice Guide: Corporations, ¶¶ 2:36:30*

22  *& 2:36:32 (2007), at p.2-17, citing Cal. Corps. Code §§ 17001(b) & 17050(a) (emphasis added).*
*Here, by signing the written operating agreement both Romi Mayder and Wes Mayder evinced*

23  *their intent to, and did, complete the formation the STS LLC, of which they were both members.*

24      *Moreover, even if arguendo the STS LLC entity was never legally consummated in the*
*absence of Pochowski's signature on the Operating Agreement, nonetheless, Wes Mayder's*

25  ⁶      Confronted at his deposition with his signature on the STS LLC Operating Agreement,

26  Wes Mayder testified he did not recall signing it but admitted that the signature looked "similar"
to his own, and he could not deny that it was, in fact, his. (Gagliardi Decl., ¶ 2 and Ex. A (Wes

27  Mayder Depo.Tr. at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91). Wes
Mayder also testified that he was *retracting* parts of sworn declaration in which he denied signing

28  the STS LLC Operating Agreement. (*Id.*, at 52:12 – 54:11).

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS      Case No. 07-CV-04330 RMW (HRL)

1   *signature on the document evidences factually the brothers' conspiracy to operate a company
    engaged in the semiconductor device testing industry – using Verigy's technology. Wes Mayder's*
2   *signature on the Operating Agreement is written contemporaneous evidence of his agreement to
    join his brother Romi Mayder's illicit enterprise. It is evidence of Wes Mayder's participation in*
3   *an unlawful conspiracy and thereby exposes him to joint and several liability for Romi Mayder's
    actions in furtherance of the conspiracy. This is true whether or not Wes Mayder was a direct*
4   *actor and regardless of the degree of his activity (or whether he knew anything about the
    semiconductor device testing industry). Klistoff, 157 Cal. App. 4th at 479.*

5         *Wes Mayder's conspiracy is further evidenced by a letter from the brothers' attorney,
    Daniel E. Hanley, to Pochowski, dated December 13, 2006:*

6         *Dear Mr. Pochowski:*

7         *We are attorneys for Silicon Test Solutions, LLC (STS).*

8         *When we formed STS on September 8, 2006, we were advised by Romi Mayder
          that the members would be Romi, Romi's brother Wesley and yourself. . . .*

9
          *On that basis, we prepared the Operating Agreement, which details the ownership*
10        *interest in STS. . . .*

11        *Neither Romi or his brother care to act as co-owner with you. On behalf of the*

12        *Mayders their offer to you to be a member of STS is hereby terminated. . . .*

13        *Very truly yours,*

14        *[signature]*

15        *Daniel E. Hanley*

16  *(See, Pochowski Decl., ¶ 9 and Ex. D (emphasis added)). This letter makes amply clear that the
    joint enterprise in which both Romi and Wes Mayder were each involved would proceed even*
17  ~~without Pochowski. Likewise, Romi Mayder characterized his brother~~ ████████████████████
    ████████████████████████████████████████████████ *(Gagliardi Decl., ¶ 2*
18  *and Ex. A (Wes Mayder Depo.Tr. at 40:20 – 41:13; 42:18 – 43:21 and Ex. 90)). Further, Wes
    Mayder admitted at deposition that he made a $250,000 capital contribution to STS LLC to secure*
19  *his ownership stake in STS LLC. (Id., at 31:14 – 38:21; 83:20 – 86:7 and Ex. 94)).*

20        *Any contention that Wes Mayder never held an ownership stake in STS LLC is simply and
    demonstrably false. At the very least, the evidence raises a genuine dispute of material fact as to*
21  *Wes Mayder's involvement in the management of STS LLC and whether he agreed to join in a
    conspiracy with his brother to illegally profit from the use of Verigy's technology.*

22        **b.    Wes Mayder Was at Relevant Times a Director of STS, Inc.**
          *Wes Mayder also contends that he has "no board position, no officership, no employee
    standing, and no operating role whatsoever" in STS, Inc. (Motion, at p.3, citing, Wes Mayder*
23  *Decl., ¶¶ 12-13). However, these contentions are also contradicted by documentary evidence
    produced by defendants in this action.*

24        *In an email string on July 3, 2007, which Wes Mayder authenticated at his deposition,*
    ████████████████████████████████████████████████████████████████████████
25  ████████████████████████. *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 124:20
    – 127:8 and Ex. 100.) Wes Mayder was copied on the email. (Id.) Similarly, in an email string*
26  ~~on July 9, 2007, Romi Mayder wrote to Wes Mayder and Francois, stating:~~ ████████████████
    ████████████████████████████████████████████████████████████████████████
27  ████████████ *(Id., Wes Mayder Depo.Tr. at 142:2 – 143:23 and Ex. 102) (emphasis added).)*

28

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1  *Wes Mayder received the email string and responded to it. (Id.)[7] Accordingly, there are at least*
2  *genuinely disputed issues of material fact whether Wes Mayder was or is a member of the board of directors of STS, Inc.*

3  *As a director of STS, Inc., Wes Mayder is subject to liability based on his investment in and control of the company if he knew or had reason to know of misappropriation of a competitor's trade secrets. "A corporate director or officer's participation in tortious conduct may be shown*
4  *not solely by direct action but also by knowing consent to or approval of unlawful acts." PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1380 (2000). "To maintain a tort claim against a director*
5  *in his or her personal capacity, a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly tortious conduct (citation); or that although they*
6  *specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate*
7  *action to avoid the harm (citations)." Id., quoting, Frances T. v. Village Green Owners Assn., 42 Cal.3d 490, 508-09 (1986) (emphasis by Kadisha court).*

8  *Here, Wes Mayder, as a director of STS, Inc., either knew or reasonably should have known – before the lawsuit was filed in late August 2007 – that STS, Inc. was born of his brother's*
9  *duplicity in taking technology from Verigy. In early July 2007, counsel for Verigy sent a pair of letters to Romi Mayder raising effectively the same allegations made in this lawsuit which were*
10 *immediately forwarded to Wes Mayder (but notably not to other minority shareholders, an action in itself suggesting that Wes Mayder was more than merely a passive investor, but instead his*
11 *brother's co-conspirator). (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo. Tr. at 132:12 – 136:8; 170:2 – 175:6 and Exs. 101 & 104).) Upon receiving these direct allegations of*
12 *wrongdoing, Wes Mayder failed to take or order appropriate action and admitted at his deposition that he performed no investigation whatsoever into the allegations other than to ask his brother's*
13 *opinion of them. (Id.) Wes Mayder further admitted that he accepted "on faith" everything his brother told him, notwithstanding that his brother frequently told him things which were false.*
14 *(Id., at 175:1-6.) Such "head-in-the-sand" behavior was negligent, objectively unreasonable and precisely the sort of behavior rendering him liable for the misdeeds of the company under the*
15 *doctrine enunciated in Kadisha. Accordingly, there is an objective basis for the claims against him.*

16          ***c.    Wes Mayder Was an Active Co-Conspirator with Romi Mayder.***
   *Wes Mayder argues repeatedly that he was "solely a passive, minority shareholder" in*
17 *Romi Mayder's company, STS, Inc. (Motion, at p.1; see also id., at pp.2, 8, 9, 10 & 11; Wes Mayder Decl., ¶ 7 ("I am only a passive shareholder").). However, this assertion is nonsense,*
18 *belied by Wes Mayder's own admissions about his active role in the operations of company (and its predecessor STS LLC), whether or not he was formally a member of STS, Inc.'s board of*
19 *directors.*

20          ***(i)    Wes Mayder Solicited Investors for STS, Inc.***
   *Wes Mayder, based on his own deposition testimony, was actively involved in the effort to secure investors for STS, Inc.* ████████████ *(Gagliardi*
21 *Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 56:11 – 59:10 and Ex. 92).)* ████
   ████████ *(Id., at 65:11 – 70:12 and Ex. 93)*
22 ███████████████████*).)*████

23 ███████████████████████████████

24 ████████████████*(Gagliardi Decl., ¶¶ 2-3 and*
25

──────────

26 [7]    Defendants also deny that Francois was ever a member of STS, Inc.'s board of directors, but Romi Mayder told him otherwise. (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at
27 124:20 – 127:8; 142:2 – 143:23 and Exs. 100 & 102).) Further, it would appear Francois believed him, because, as of July 8, 2008, Francois was touting himself on the internet as a "founding
28 Director of Silicon Test Systems in San Jose, CA." (Id., Ex. 110).

1    *Ex. A (Wes Mayder Depo.Tr. at 59:11 – 60:2) and Ex. B (Davidson Depo.Tr. at 70:4 – 71:8).)
2    Fund-raising for a start-up company is not the domain of a merely passive investor.*

             **(ii)    Wes Mayder Used His Driver's License for a Seller's Permit for STS, Inc.**

3           *Wes Mayder, by his own admission at deposition, was also actively involved in* ███████████████

4    ███████████████████████████ *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 118:11 – 124:18 and Exs. 97-99).)  On*
5    *March 29, 2007, Romi Mayder emailed his brother* █████████████████████████████

6    ████████████████████████████████ *(Id., Ex. 97).  Later the same day, Romi Mayder emailed back indicating that* ███████████████████████████████████████████

7    ███████████████████████████████████████ *(Id., Ex. 98).  Romi Mayder then*
8    *emailed and* ████████████████████████████████████████████████

9    ███████ *(Id., Ex. 99).  Wes Mayder* ████████████████████ *(Gagliardi Decl., ¶ 2 and*
10    *Ex. A (Wes Mayder Depo.Tr. at 124:3-18.).  Yet, he was unable to explain why information from a merely passive investor would be required for a seller's permit.  (Id., at 123:17-19.)[8]*

11                 **(iii)    Wes Mayder Operated the STS, Inc. Website.**

12           *Wes Mayder, by his own admission, designed the STS, Inc. website.  (Wes Mayder Decl., ¶¶ 14 & 16.).  But he denies that either he or his company, WeDirect, ever hosted a website for STS, Inc. or his brother.  (Id., ¶ 16).*

13           *Once again, the contemporaneous documentary* ████████████████████████

14    ████████████████████████████████████████ *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 155:19 – 159:12 and Ex. 103)*
15    *(emphasis added.)  The letter from Verigy alluded to by Romi Mayder was a letter dated July 9, 2007 (the previous day) from Verigy's counsel to Romi Mayder, which Romi forwarded to Wes*
16    *Mayder, in which counsel stated:  "Your website at* <u>www.silicontest.com</u> *shows that you and your STS Entities have been promoting products that appear to incorporate confidential technology you*
17    *worked on at Verigy."  (Id., at 170:2-23 and Ex. 104).  Wes Mayder testified at his deposition that* ██████████████████████████ *(Id., at*
18    *159:7-12).*

19           *Not only does Wes Mayder's conduct* ███████████████████ *show that he was operating the website (in direct contradiction of his sworn declaration), and show*
20    *therefore that he was more than a passive investor (again, in direct contradiction of his sworn declaration), it also shows consciousness of guilt.  The email Romi Mayder sent to his brother was*
21    *short on verbiage but deeply pregnant with meaning that could only have been understood by a co-conspirator.  The email says, in effect,* ████████
22    ████████████████ *In other words, "they're on to us."  Wes Mayder willingly complied without asking questions because he knew already that the website contained Verigy trade secret information –*
23    *and he knew that he, Wes Mayder, had posted it on the website that he designed and hosted.  Wes Mayder was clearly a co-conspirator of his brother Romi Mayder.  At the very least, an objective*
24    *basis exists such that a factfinder is entitled to make that determination based on the evidence at trial.*

25    _____

26    [8]    In fact, in California a driver's license is required for a sellers permit of owners or partners, officers or members of a corporate entity pursuant to the online application materials (See,
27    Gagliardi Decl., ¶ 4 and Ex. C.).

28

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1

### (iv)   Wes Mayder Was Involved in the Willful Backdating of Romi Mayder's Inventor's Notebook.

2      Wes Mayder also actively conspired with his brother Romi Mayder in the backdating of
Romi Mayder's inventor's notebook – a false and fraudulent activity in direct furtherance of their

3   conspiracy to steal Verigy's intellectual property.

4      Wes Mayder admitted at his deposition receiving an email from his brother Romi Mayder
on January 17, 2007 asking Wes Mayder to supply someone to witness entries in Romi Mayder's
inventor's notebook and stated:

5   ███████████     (Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at 89:1 – 91:3; 101:8 – 102:20

6   and Ex. 7) (emphasis added).)  Wes Mayder replied by email the same day, offering up his
employee, Jon Davidson, without questioning the legality or ethics of the task assigned.  (Id.)
███████████████████████  Mayder never took issue with Romi Mayder's explicit request for

7   assistance in falsifying records; instead, he dutifully complied.  (Id.)

8      And, in fact, Romi Mayder's inventor's notebook was falsified by Davidson, whose
declaration and deposition testimony are at odds with each other and at odds with the
contemporaneous emails regarding the subject.  The January 17, 2007 email string makes clear

9   that ████████████████████████████████████████  (See, Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at

10  110:6-18 (conceding this truism).)   Yet, Davidson swears under penalty of perjury in his
declaration that the request for him to do so was made a month earlier:

11         In mid-December 2006, Romi [Mayder] sent an email to Wesley [Mayder] asking
           about obtaining verification of dates applicable to his lab notebook.  Since I had

12         spoken several times with Romi [Mayder] about his work at STS LLC, Wesley
           knew that I would be a good person for Romi to be referred to.  I reviewed Romi's

13         notebook, and based on my recollection of our discussions, I tried to sign with
           dates corresponding to approximately when we discussed the information.

14         Wesley never directed me to do anything false or anything wrongful, nor would I
           do so.

15  (Davidson Decl., ¶ 7) (emphasis added).  Thus, Davidson admits to backdating Romi Mayder's
inventor's notebook but vainly denies that it amounts to anything "false" or "wrongful."

16         However, in contradiction of Davidson's own declaration, Davidson swears under oath in
his deposition testimony ████████████████████████████████████████████████████████████

17  ████████████████████████████████  (Gagliardi Decl., ¶ 3 and Ex. B (Davidson Depo.Tr. at 34:24
– 35:14; 44:10 – 45:19).)  In other words, Davidson ████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████████████████

20  ████████████████████████  (Id., at 85:1 – 90:17 and Ex. 6) (copy of the notebook).)  Davidson's
deposition testimony and declaration simply cannot be harmonized – one or both must be untrue

21  on the subject of backdating the notebook, and indeed both are.  Neither Davidson's declaration
nor his deposition testimony is consistent with the definitive, contemporaneous documentary

22  evidence that the original request for Davidson to witness and endorse the notebook was not made
until January 17, 2007 and therefore Davidson simply could not have done so beforehand.[9]  Thus,

23  Davidson (whose only connection to Romi Mayder is that he is Wes Mayder's employee offered up
by Wes Mayder for the job of falsifying records) is utterly discredited as a witness.

24         Although it is unknown just when Davidson signed Romi Mayder's notebook, what is
known is that it had to be after January 17, 2007 (rendering Davidson's declaration and

25  _____

26  [9]  ████████████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████████████████████

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1    *deposition testimony utterly impossible), that it involved falsifying records, and that Wes Mayder*

2    *was inextricably involved in this scheme* ████████████████████████████████████████████
     ████████████████████████████████████

3           *The evidence is thus overwhelming that Wes Mayder is thoroughly entangled with Romi*
     *Mayder's misdeeds involving the theft of Verigy's technology. Plainly, Wes Mayder was an*

4    *integral part of the conspiracy with his brother Romi Mayder to tamper with evidence of the real*
     *ownership of STS, Inc's purported intellectual property. Wes Mayder's assertion that he would*

5    *never do anything false or fraudulent is completely incredible in light of this evidence. Certainly,*
     *at the very least, there is a colorable claim against Wes Mayder, precluding Rule 11 sanctions.*

6                   **2.    Counsel for Verigy Conducted a Reasonable and Competent Inquiry Into**
                          **the Claims Against Wes Mayder Before Filing the Complaint.**

7           *As mentioned, to impose sanctions where the complaint is the primary focus of a Rule 11*
     *motion, a district court in the Ninth Circuit must find not only that the complaint is objectively*

8    *baseless, but also that the attorney failed to conduct a reasonable and competent inquiry before*
     *signing and filing it. Christian, 286 F.3d at 1127.*

9    *Wes Mayder has utterly failed to carry his burden in establishing this second prong. He has not*
     *even purported to offer any admissible facts related to the quality of the pre-suit attorney"*

10

11   **Grounds for Objection:**

12          Lack of foundation, irrelevant. Verigy has failed to plead any facts in its Complaint that

13   would be required for it to be able to proceed on a civil conspiracy basis, as set forth in CACI

14   3600.

15   **VERIGY'S RESPONSE TO THE OBJECTION:**

16          The objection should be overruled. See Response to Objection # 21 above.

17   **W.MAYDER'S OBJECTION NO. 37:**

18          Opp. Rule 11 at p. 5, LNS. 2-P. 6, LN. 17 RE Wes Mayder's signing the draft operating

19   agreement for STS LLC

20          *"Wes Mayder contends in his Rule 11 motion that "[h]e is not involved in his brother's*
     *business, has no background at all in the semiconductor industry . . . has no ownership interest in*

21   *defendant STS LLC, nor has he ever . . . had an ownership interest therein." (Motion, at pp. 2-3)*
     *(emphasis added). These assertions are not supported by Wes Mayder's sworn declaration (which*

22   *is highly misleading and which Wes Mayder, in material respects, disavowed at his deposition.)*
     *Further, the assertions are belied by documentary evidence proving that, in fact, Wes Mayder was*

23   *involved with his brother in the semiconductor industry and did have an ownership interest in his*
     *brother's business.*

24          *Wes Mayder, along with his brother Romi Mayder, signed the operating agreement in STS*
     *LLC, made as of October 11, 2006, which designates Wes Mayder as a "Member" of the LLC,*

25   *with a 20 percent ownership stake in such limited liability company based on a $250,000 capital*
     *contribution. (See, Pochowski Decl., ¶ 6 and Ex. A; see also, Gagliardi Decl., ¶ 2 and Ex. A (Wes*

26   *Mayder Depo.Tr., at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91) (copy of*
     *STS LLC Operating Agreement signed by Wes Mayder)). Although the Operating Agreement was*

27   *never signed by Pochowski, the document is nevertheless admissible evidence that the Mayder*
     *brothers, each of whom did sign it, were engaged in a joint enterprise involving semiconductor*

28   *device testing, STS LLC. On its face, the document evinces "the intent of each Member . . . to*

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1   *actively engage in the management" of the enterprise's business, "Semiconductor Device*
    *Testing." (Pochowski Decl., Ex. A, ¶ 4.1; Wes Mayder Depo.Tr., Ex. 91, ¶ 4.1) (emphasis added).*
2           *As mentioned, Wes Mayder affixed his signature to this document.[10] "The existence*
    *of an LLC begins upon the filing of articles of incorporation by the Secretary of State. . . To*
3   *validly complete the formation of an LLC, the members must enter into an operating*
    *agreement either before or after filing the articles. But the operating agreement need not be in writing;*
4   *indeed it may consist of no more than an oral agreement among the initial members to organize*
    *the limited liability company!" 1 Friedman, California Practice Guide: Corporations, ¶¶ 2:36:30*
5   *& 2:36:32 (2007), at p.2-17, citing Cal. Corps. Code §§ 17001(b) & 17050(a) (emphasis added).*
    *Here, by signing the written operating agreement both Romi Mayder and Wes Mayder evinced*
6   *their intent to, and did, complete the formation the STS LLC, of which they were both members.*
            *Moreover, even if arguendo the STS LLC entity was never legally consummated in the*
7   *absence of Pochowski's signature on the Operating Agreement, nonetheless, Wes Mayder's*
    *signature on the document evidences factually the brothers' conspiracy to operate a company*
8   *engaged in the semiconductor device testing industry – using Verigy's technology. Wes Mayder's*
    *signature on the Operating Agreement is written contemporaneous evidence of his agreement to*
9   *join his brother Romi Mayder's illicit enterprise. It is evidence of Wes Mayder's participation in*
    *an unlawful conspiracy and thereby exposes him to joint and several liability for Romi Mayder's*
10  *actions in furtherance of the conspiracy. This is true whether or not Wes Mayder was a direct*
    *actor and regardless of the degree of his activity (or whether he knew anything about the*
11  *semiconductor device testing industry). Klistoff, 157 Cal. App. 4th at 479."*

12

13  **Grounds for Objection:**

14          Lack of foundation, incompetent evidence; irrelevant and immaterial. Mere signatures on

15  an operating agreement constitute no evidence of a conspiracy, and there is no evidence of

16  knowledge by Wes Mayder to use any Verigy technology. Being willing to join an LLC does not

17  evidence anything about a conspiracy or any tortuous conduct.

    **VERIGY'S RESPONSE TO THE OBJECTION:**
18
            The objection should be overruled. See Response to Objections #s 16 and 26 above.
19
    **W.MAYDER'S OBJECTION NO. 38:**
20
            Opp. Rule 11 at p. 6, ln. 18- p. 7, ln. 9 re letter from attorney for Romi Mayder constituting
21
    evidence of civil conspiracy
22
            *"Wes Mayder's conspiracy is further evidenced by a letter from the brothers' attorney,*
23  *Daniel E. Hanley, to Pochowski, dated December 13, 2006:*
            *Dear Mr. Pochowski:*
24

25  ───────────────────────
    [10]     Confronted at his deposition with his signature on the STS LLC Operating Agreement,
26  Wes Mayder testified he did not recall signing it but admitted that the signature looked "similar"
    to his own, and he could not deny that it was, in fact, his. (Gagliardi Decl., ¶ 2 and Ex. A (Wes
27  Mayder Depo.Tr. at 46:12 – 47:23; 50:1-10; 51:18 – 52:2; 211:11 – 214:3 and Ex. 91). Wes
    Mayder also testified that he was *retracting* parts of sworn declaration in which he denied signing
28  the STS LLC Operating Agreement. (*Id.*, at 52:12 – 54:11).

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS      Case No. 07-CV-04330 RMW (HRL)

1   *We are attorneys for Silicon Test Solutions, LLC (STS).*

2   *When we formed STS on September 8, 2006, we were advised by Romi Mayder that the members would be Romi, Romi's brother Wesley and yourself. . . .*

3

4   *On that basis, we prepared the Operating Agreement, which details the ownership interest in STS.  . . .*

5   *Neither Romi or his brother care to act as co-owner with you.  On behalf of the*

6   *Mayders their offer to you to be a member of STS is hereby terminated.  . . .*

7   *Very truly yours,*

8   *[signature]*

9   *Daniel E. Hanley*

10  (See, Pochowski Decl., ¶ 9 and Ex. D (emphasis added)).  This letter makes amply clear that the joint enterprise in which both Romi and Wes Mayder were each involved would proceed even

11  without Pochowski.  Likewise, Romi Mayder characterized his brother ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Gagliardi Decl., ¶ 2

12  and Ex. A (Wes Mayder Depo.Tr. at 40:20 – 41:13; 42:18 – 43:21 and Ex. 90)).  Further, Wes Mayder admitted at deposition that he made a $250,000 capital contribution to STS LLC to secure

13  his ownership stake in STS LLC.  (Id., at 31:14 – 38:21; 83:20 – 86:7 and Ex. 94))."

14  **Grounds for Objection:**

15  Lack of foundation; incompetent evidence; irrelevant and immaterial; letter informing

16  Pochowski that he was not to be included is not evidence of any wrongdoing whatsoever.

17  **VERIGY'S RESPONSE TO THE OBJECTION:**

18  The objection should be overruled.  See Response to Objection # 25 above.

19  **W.MAYDER'S OBJECTION NO. 39:**

20  Opp. Rule 11 at p. 7, ln. 14-p.9, ln. 6 re Wes Mayder's allegedly being a director of STS,

21  Inc., being informed of threats by Verigy and being a director of STS, Inc. and allegedly failing to

22  investigate

23  *"b.     Wes Mayder Was at Relevant Times a Director of STS, Inc.*
    Wes Mayder also contends that he has "no board position, no officership, no employee

24  standing, and no operating role whatsoever" in STS, Inc.  (Motion, at p.3, citing, Wes Mayder Decl., ¶¶ 12-13).  However, these contentions are also contradicted by documentary evidence

25  produced by defendants in this action.
    In an email string on July 3, 2007, which Wes Mayder authenticated at his deposition,

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮ (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 124:20 – 127:8 and Ex. 100.)  Wes Mayder was copied on the email.  (Id.)  Similarly, in an email string on July 9, 2007, Romi Mayder wrote to Wes Mayder and Francois, stating:

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   ▮▮▮▮▮▮▮ (Id., Wes Mayder Depo.Tr. at 142:2 – 143:23 and Ex. 102) (emphasis added).)
    Wes Mayder received the email string and responded to it. (Id.)[11]  Accordingly, there are at least
2   genuinely disputed issues of material fact whether Wes Mayder was or is a member of the board of
    directors of STS, Inc.

3           As a director of STS, Inc., Wes Mayder is subject to liability based on his investment in and
    control of the company if he knew or had reason to know of misappropriation of a competitor's
4   trade secrets.  "A corporate director or officer's participation in tortious conduct may be shown
    not solely by direct action but also by knowing consent to or approval of unlawful acts."  PMC,
5   Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1380 (2000).  "To maintain a tort claim against a director
    in his or her personal capacity, a plaintiff must first show that the director specifically authorized,
6   directed or participated in the allegedly tortious conduct (citation); or that although they
    specifically knew or reasonably should have known that some hazardous condition or activity
7   under their control could injure plaintiff, they negligently failed to take or order appropriate
    action to avoid the harm (citations)."  Id., quoting, Frances T. v. Village Green Owners Assn., 42
8   Cal.3d 490, 508-09 (1986) (emphasis by Kadisha court).

9           Here, Wes Mayder, as a director of STS, Inc., either knew or reasonably should have
    known – before the lawsuit was filed in late August 2007 – that STS, Inc. was born of his brother's
10  duplicity in taking technology from Verigy.  In early July 2007, counsel for Verigy sent a pair of
    letters to Romi Mayder raising effectively the same allegations made in this lawsuit which were
11  immediately forwarded to Wes Mayder (but notably not to other minority shareholders, an action
    in itself suggesting that Wes Mayder was more than merely a passive investor, but instead his
12  brother's co-conspirator).  (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo. Tr. at 132:12 –
    136:8; 170:2 – 175:6 and Exs. 101 & 104).)  Upon receiving these direct allegations of
13  wrongdoing, Wes Mayder failed to take or order appropriate action and admitted at his deposition
    that he performed no investigation whatsoever into the allegations other than to ask his brother's
14  opinion of them.  (Id.)  Wes Mayder further admitted that he accepted "on faith" everything his
    brother told him, notwithstanding that his brother frequently told him things which were false.
15  (Id., at 175:1-6.)  Such "head-in-the-sand" behavior was negligent, objectively unreasonable and
    precisely the sort of behavior rendering him liable for the misdeeds of the company under the
16  doctrine enunciated in Kadisha.  Accordingly, there is an objective basis for the claims against
    him."

17

18  **Grounds for Objection:**

19          Lack of foundation; no competent evidence that Wes Mayder was a director of STS, Inc.

20  and all competent evidence refutes this assertion; irrelevant and immaterial; as a non-director or

21  officer, Wes Mayder had no obligation to investigate, and despite that lack of obligation, he did

22  investigate to the best of his ability.

23  **<u>VERIGY'S RESPONSE TO THE OBJECTION</u>:**

24          The objection should be overruled.  See Response to Objection #26 above.

25  _____

26  [11]    Defendants also deny that Francois was ever a member of STS, Inc.'s board of directors,
    but Romi Mayder told him otherwise.  (Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at
27  124:20 – 127:8; 142:2 – 143:23 and Exs. 100 & 102).)  Further, it would appear Francois believed
    him, because, as of July 8, 2008, Francois was touting himself on the internet as a "founding
28  Director of Silicon Test Systems in San Jose, CA."  (Id., Ex. 110).

**W.MAYDER'S OBJECTION NO. 40:**

Opp. Rule 11 at p. 9, lns. 14-26 re Wes Mayder allegedly helping to solicit investments in STS, Inc.

***(i) "Wes Mayder Solicited Investors for STS, Inc.***

*Wes Mayder, based on his own deposition testimony, was actively involved in the effort to secure investors for STS, Inc.* [redacted] *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 56:11 – 59:10 and Ex. 92).)* [redacted] *(Id., at 65:11 – 70:12 and Ex. 93)* [redacted] *).)* [redacted] *(Gagliardi Decl., ¶¶ 2-3 and Ex. A (Wes Mayder Depo.Tr. at 59:11 – 60:2) and Ex. B (Davidson Depo.Tr. at 70:4 – 71:8).) Fund-raising for a start-up company is not the domain of a merely passive investor."*

**Grounds for Objection:**

Irrelevant and immaterial; helping to raise money proves nothing regarding the elements of any of Verigy's claims in this action, or of civil conspiracy, a claim not properly pled by Verigy in this action.

**<u>VERIGY'S RESPONSE TO THE OBJECTION</u>:**

The objection should be overruled. See Response to Objection #28 above.

**W.MAYDER'S OBJECTION NO. 41:**

Opp. Rule 11 at p. 9, ln. 27-p. 10, ln. 16 re Wes Mayder using his driver's license to obtain a seller's permit for STS, Inc.

***(ii) "Wes Mayder Used His Driver's License for a Seller's Permit for STS, Inc.***

*Wes Mayder, by his own admission at deposition, was also actively involved in* [redacted] *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 118:11 – 124:18 and Exs. 97-99).) On March 29, 2007, Romi Mayder emailed his brother,* [redacted] *(Id., Ex. 97). Later the same day, Romi Mayder emailed back indicating that* [redacted] *(Id., Ex. 98). Romi Mayder then emailed and* [redacted] *(Id., Ex. 99). Wes Mayder* [redacted] *(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 124:3-18.). Yet, he was unable to explain why information from a*

1    *merely passive investor would be required for a seller's permit.  (Id., at 123:17-19.)[12]"*

**Grounds for Objection:**

Irrelevant and immaterial; helping to obtain a seller's permit proves nothing regarding the elements of any of Verigy's claims in this action, or of civil conspiracy, a claim not properly pled by Verigy in this action.

**VERIGY'S RESPONSE TO THE OBJECTION:**

The objection should be overruled.  See Response to Objection #29 above.

**W.MAYDER'S OBJECTION NO. 42:**

Opp. Rule 11 at p. 10, ln. 17-p. 11, ln. 17 re Wes Mayder dealing with STS, Inc.'s website

*(iii)    "Wes Mayder Operated the STS, Inc. Website.*
*Wes Mayder, by his own admission, designed the STS, Inc. website.  (Wes Mayder Decl., ¶¶ 14 & 16.).  But he denies that either he or his company, WeDirect, ever hosted a website for STS, Inc. or his brother.  (Id., ¶ 16).*
*Once again, the contemporaneous documentary* ███████████████████████
████████████████████████████████████████████████████████████████████
*(Gagliardi Decl., ¶ 2 and Ex. A (Wes Mayder Depo.Tr. at 155:19 – 159:12 and Ex. 103) (emphasis added.)  The letter from Verigy alluded to by Romi Mayder was a letter dated July 9, 2007 (the previous day) from Verigy's counsel to Romi Mayder, which Romi forwarded to Wes Mayder, in which counsel stated:  "Your website at www.silicontest.com shows that you and your STS Entities have been promoting products that appear to incorporate confidential technology you worked on at Verigy."  (Id., at 170:2-23 and Ex. 104).  Wes Mayder testified at his deposition that* █████████████████████████████████████████████████████████████ *(Id., at 159:7-12).*
*Not only does Wes Mayder's conduct* ████████████████████ *show that he was operating the website (in direct contradiction of his sworn declaration), and show therefore that he was more than a passive investor (again, in direct contradiction of his sworn declaration), it also shows consciousness of guilt.  The email Romi Mayder sent to his brother was short on verbiage but deeply pregnant with meaning that could only have been understood by a co-conspirator.  The email says, in effect,* █████████████ *In other words, "they're on to us."  Wes Mayder willingly complied without asking questions because he knew already that the website contained Verigy trade secret information – and he knew that he, Wes Mayder, had posted it on the website that he designed and hosted.  Wes Mayder was clearly a co-conspirator of his brother Romi Mayder.  At the very least, an objective basis exists such that a factfinder is entitled to make that determination based on the evidence at trial."*

**Grounds for Objection:**

---

12      In fact, in California a driver's license is required for a sellers permit of owners or partners, officers or members of a corporate entity pursuant to the online application materials (See, Gagliardi Decl., ¶ 4 and Ex. C.).

1    Irrelevant and immaterial; helping his brother with the STS, Inc. website proves nothing

2 regarding the elements of any of Verigy's claims in this action, or of civil conspiracy, a claim not

3 properly pled by Verigy in this action.

4 **VERIGY'S RESPONSE TO THE OBJECTION:**

5    The objection should be overruled.  See Response to Objection # 30 above.

6 **W.MAYDER'S OBJECTION NO. 43:**

7    Opp. Rule 11 at p. 11, ln. 18-p. 13, ln. 16 re Romi Mayder's inventor's notebook and Wes

8 Mayder's alleged involvement with such notebook.

9                    ***(iv)    "Wes Mayder Was Involved in the Willful Backdating of***
                              ***Romi Mayder's Inventor's Notebook.***

10    *Wes Mayder also actively conspired with his brother Romi Mayder in the backdating of*
    *Romi Mayder's inventor's notebook – a false and fraudulent activity in direct furtherance of their*
11 *conspiracy to steal Verigy's intellectual property.*

12    *Wes Mayder admitted at his deposition receiving an email from his brother Romi Mayder*
    *on January 17, 2007 asking Wes Mayder to supply someone to witness entries in Romi Mayder's*
    *inventor's notebook and stated:* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮   *(Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at 89:1 – 91:3; 101:8 – 102:20*
    *and Ex. 7) (emphasis added).)  Wes Mayder replied by email the same day, offering up his*
14 *employee, Jon Davidson, without questioning the legality or ethics of the task assigned.  (Id.)*
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *Mayder never took issue with Romi Mayder's explicit request for*
15 *assistance in falsifying records; instead, he dutifully complied.  (Id.)*
    *And, in fact, Romi Mayder's inventor's notebook was falsified by Davidson, whose*
16 *declaration and deposition testimony are at odds with each other and at odds with the*
    *contemporaneous emails regarding the subject.  The January 17, 2007 email string makes clear*
17 *that* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *(See, Gagliardi Decl., ¶ 2 and A (Wes Mayder Depo.Tr. at*
18 *110:6-18 (conceding this truism).)  Yet, Davidson swears under penalty of perjury in his*
    *declaration that the request for him to do so was made a month earlier:*
19    *In mid-December 2006, Romi [Mayder] sent an email to Wesley [Mayder] asking*
       *about obtaining verification of dates applicable to his lab notebook.  Since I had*
20       *spoken several times with Romi [Mayder] about his work at STS LLC, Wesley*
       *knew that I would be a good person for Romi to be referred to.  I reviewed Romi's*
21       *notebook, and based on my recollection of our discussions, I tried to sign with*
       *dates   corresponding   to   approximately   when   we   discussed   the   information.*
22       *Wesley never directed me to do anything false or anything wrongful, nor would I*
       *do so.*
23 *(Davidson Decl., ¶ 7) (emphasis added).  Thus, Davidson admits to backdating Romi Mayder's*
    *inventor's notebook but vainly denies that it amounts to anything "false" or "wrongful."*
24    *However, in contradiction of Davidson's own declaration, Davidson swears under oath in*
    *his deposition testimony* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *(Gagliardi Decl., ¶ 3 and Ex. B (Davidson Depo.Tr. at 34:24*
    *– 35:14; 44:10 – 45:19).)  In other words, Davidson* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *(Id., at 85:1 – 90:17 and Ex. 6) (copy of the notebook).)  Davidson's*

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS    Case No. 07-CV-04330 RMW (HRL)

1   *deposition testimony and declaration simply cannot be harmonized – one or both must be untrue*
    *on the subject of backdating the notebook, and indeed both are.  Neither Davidson's declaration*
2   *nor his deposition testimony is consistent with the definitive, contemporaneous documentary*
    *evidence that the original request for Davidson to witness and endorse the notebook was not made*
3   *until January 17, 2007 and therefore Davidson simply could not have done so beforehand.[13]*
    *Thus, Davidson (whose only connection to Romi Mayder is that he is Wes Mayder's employee*
4   *offered up by Wes Mayder for the job of falsifying records) is utterly discredited as a witness.*

5   *    Although it is unknown just when Davidson signed Romi Mayder's notebook, what is*
    *known is that it had to be after January 17, 2007 (rendering Davidson's declaration and*
6   *deposition testimony utterly impossible), that it involved falsifying records, and that Wes Mayder*
    *was inextricably involved in this scheme* ████████████████

7   ████████████████████████████████████████████████

8       *The evidence is thus overwhelming that Wes Mayder is thoroughly entangled with Romi*
    *Mayder's misdeeds involving the theft of Verigy's technology.  Plainly, Wes Mayder was an*
9   *integral part of the conspiracy with his brother Romi Mayder to tamper with evidence of the real*
    *ownership of STS, Inc's purported intellectual property. Wes Mayder's assertion that he would*
10  *never do anything false or fraudulent is completely incredible in light of this evidence.  Certainly,*
    *at the very least, there is a colorable claim against Wes Mayder, precluding Rule 11 sanctions.*

11  **Grounds for Objection:**

12      Irrelevant and immaterial; Wes Mayder's allowing on of his employees, Jon Davidson, to

13  assist Romi Mayder proves nothing regarding any of Verigy's claims in this action, or of civil

14  conspiracy, a claim not properly pled by Verigy in this action.

15  **<u>VERIGY'S RESPONSE TO THE OBJECTION</u>:**

16      The objection should be overruled.  See Response to Objection # 31 above.

17  **W.MAYDER'S OBJECTION NO. 44:**

18      Opp. Rule 11 at p. 13, lns. 11-14 re evidence of Wes Mayder's having been an "integral

19  part" in a conspiracy with Romi Mayder to tamper with evidence

20  "*The evidence is thus overwhelming that Wes Mayder is thoroughly entangled with Romi*
    *Mayder's misdeeds involving the theft of Verigy's technology.  Plainly, Wes Mayder was an*
21  *integral part of the conspiracy with his brother Romi Mayder to tamper with evidence of the real*
    *ownership of STS, Inc's purported intellectual property. Wes Mayder's assertion that he would*"
22

23  **Grounds for Objection:**

24  _____

25  [13] ████████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS        Case No. 07-CV-04330 RMW (HRL)

1   Lack of competent evidence; judicial estoppel in connection with Verigy's own opposition

2   to motion for summary judgment by Wes Mayder in which Verigy takes the position Mr. Mayder

3   was *negligent*, not that he intentionally was involved in tortiously damaging Verigy.

4   **VERIGY'S RESPONSE TO THE OBJECTION:**

5   The objection should be overruled.  See Response to Objections # 25-31 above.  Wes

6   Mayder misconstrues Verigy's position.

7   **W.MAYDER'S OBJECTION NO. 45:**

8   Opp. Rule 11 at p. 14, lns. 8-24 re Fowler's alleged "reasonable investigation"

9   "Verigy counsel John W. Fowler, who signed the Complaint, attests that to the best of his
knowledge, information and belief, formed after an inquiry reasonable under the circumstances,
10  the Complaint was *not* presented for any improper purpose, the claims and legal contentions of the
Complaint against Wes Mayder were warranted in his mind by existing law and he believed the
11  factual contentions had evidentiary support or were likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery.  (Fowler Decl., ¶ 2).
12  Mr. Fowler's pre-filing investigation into whether Wes Mayder is liable included: (a)
interviews with Romi Mayder's supervisors at Verigy concerning Romi Mayder's statements to
13  them regarding his stated plans to go into business with his brother, Wes Mayder; (b) review of
documents filed with the California Secretary of State regarding the STS Entities; (c) review of
14  information from the internet regarding Wes Mayder's businesses; and (d) an interview of Robert
Pochowski and a review of documents provided by Pochowski.  (Fowler Decl., ¶ 3).
15  Mr. Fowler concluded based on his investigation that there was a basis in fact for the
allegations regarding Wes Mayder's liability as alleged in the Complaint.  (Fowler Decl., ¶ 4).
16  Mr. Fowler further believed at the time he signed the Complaint that actual discovery against the
defendants would uncover further evidence of Wes Mayder's liability, as alleged.  (Fowler Decl.,
17  ¶ 6).  As demonstrated above, discovery has shown this to be true."

18

19  **Grounds for Objection:**

20  *See* objections to conclusory statements by Fowler above.

21  **VERIGY'S RESPONSE TO THE OBJECTION:**

22  The objection should be overruled.  See Response to Objections #s 1-6 above.

23

24  Dated:  September 4, 2008                    BERGESON, LLP

25

26                                              By: _____/s/_____
                                                     Donald P. Gagliardi

27                                              Attorneys for Plaintiff
                                                VERIGY US, INC

28

VERIGY'S RESPONSES TO WES MAYDER'S OBJECTIONS TO EVIDENCE IN SUPPORT OF
MOTIONS FOR SUMMARY JUDGMENT & RULE 11 SANCTIONS     Case No. 07-CV-04330 RMW (HRL)