1   DANIEL J. BERGESON, Bar No. 105439                    **PUBLIC VERSION**
    dbergeson@be-law.com
2   MELINDA M. MORTON, Bar No. 209373
    mmorton@be-law.com
3   COLIN G. MCCARTHY, Bar No. 191410
    cmcarthy@be-law.com
4   BERGESON, LLP
    303 Almaden Boulevard, Suite 500
5   San Jose, CA 95110-2712
    Telephone:  (408) 291-6200
6   Facsimile:   (408) 297-6000

7   Attorneys for Plaintiff
    VERIGY US, INC.
8

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                       SAN JOSE DIVISION

13

14  VERIGY US, INC, a Delaware Corporation,        Case No. C07 04330 RMW (HRL)

15                      Plaintiff,                 **VERIGY'S NOTICE OF MOTION AND
                                                   MOTION TO COMPEL PRODUCTION
16          vs.                                    OF DOCUMENTS FROM SILICON TEST
                                                   SYSTEMS INC. IN RESPONSE TO 4TH SET
17  ROMI OMAR MAYDER, an individual;               OF REQUESTS FOR PRODUCTION**
    WESLEY MAYDER, an individual; SILICON
18  TEST SYSTEMS, INC., a California Corporation;  Date:    October 21, 2008
    and SILICON TEST SOLUTIONS, LLC, a             Time:    10 a.m.
19  California Limited Liability Corporation,       Ctrm.:  2, 5th Floor
    inclusive,                                     Judge:   Hon. Howard R. Lloyd
20
                        Defendants.
21                                                 Complaint Filed:    August 22, 2007
                                                   Trial Date:         None Set
22

23
    AND RELATED CROSS-ACTIONS
24

25

26                       **PUBLIC VERSION OF**

27           **HIGHLY CONFIDENTIAL – ATTORNEYS ONLY**

28             **DOCUMENT SUBMITTED UNDER SEAL**

1

## TABLE OF CONTENTS

2  I.  INTRODUCTION AND BACKGROUND .......................................................................... 1

3  II.  FACTUAL BACKGROUND ......................................................................................... 2

4  III.  THE DISCOVERY IN DISPUTE ................................................................................. 3

5      A.  DOCUMENTS RELATING TO DISCLOSURES IN THE MAYDER
           DECLARATION .............................................................................................. 3
6
       B.  DOCUMENTS RELATING TO DISCLOSURES IN THE SCHNECK
7          DECLARATION .............................................................................................. 9

8      C.  DOCUMENTS RELATING TO DISCLOSURES TO RICHARD FOSTER ...... 12

9      D.  OTHER DOCUMENTS RESPONSIVE TO REQUEST NOS. 81 AND 82 ....... 14

10  IV.  LEGAL ARGUMENT ................................................................................................ 15

11      A.  Defendants Have Waived The Attorney-Client Privilege And Any Work
           Product Protection With Respect To The Subject Matter Of Communications
12         Between Defendants And Their Former Counsel Disclosed In The
           Declaration Of Romi Mayder ......................................................................... 15
13
       B.  Defendants Have Waived The Attorney-Client Privilege And Any Work
14         Product Protection With Respect To Subjects Discussed In The Declaration
           Of Thomas Schneck. ...................................................................................... 20
15
       C.  Defendants Have Waived The Attorney-Client Privilege And Any Work
16         Product Protection With Respect To Communications Between Romi Mayder
           And Schneck & Schneck Disclosed To Richard Foster. ................................. 22
17
       D.  DEFENDANTS MUST PRODUCE RESPONSIVE DOCUMENTS NOT
18         PREVIOUSLY PRODUCED WHICH ARE "IN THEIR CONTROL" .............. 23

19          1.  Production of the STS LLC Bank Records Should be Compelled. .......... 25

20          2.  The Documents Identified by the Special Master Should be Produced.... 25

21  V.  CONCLUSION ......................................................................................................... 25

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3    <u>Federal Cases</u>

4

5    *A. Farber and Partners, Inc., v. Garber*
        234 F.R.D. 186 ...................................................................................................... 24

6    *Aclara Biosciences, Inc. v. Caliper Technologies Corp.*
        No. C99-1968 CRB (JCS) 2001 WL 777083, at *8 (N.D. Cal. June 16, 2000) ............... 22

7

8    *Bittaker v. Woodford*
        331 F.3d 715 (9th Cir. 2003) ............................................................................ 17, 20

9    *Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.*
        237 F.R.D. 618 (N.D. Cal. 2006) ...................................................................... 16, 17

10

11   *Carter v. Gibbs*
        909 F.2d 1450 (Fed.Cir.1990) (en banc), *cert. denied,* 498 U.S. 811 S.Ct. 46 L.Ed2d
        22 (1990)) .......................................................................................................... 16

12

13   *Chinnici v. Central Dupage Hospital Association*
        136 F.R.D. 464 (N.D. Ill. 1991) ............................................................................ 18

14   *Electro Scientific Industries, Inc v. General Scanning, Inc.*
        175 F.R.D. 539 (N.D. Cal. 1997) .............................................................. 17, 19, 20

15

16   *Fort James Corp. v. Solo Cup Co.*
        412 F.3d 1340 (Fed.Cir.2005) ......................................................................... 17, 18

17   *Foster v. Hill (In re Foster)*
        188 F.3d 1259 (10th Cir.1999) ............................................................................ 23

18

19   *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*
        136 F.3d 695 (10th Cir.1998) .............................................................................. 21

20   *Grace United Methodist Church v. City of Cheyenne*
        451 F.3d 643 (10th Cir. 2006) ............................................................................. 21

21

22   *Handgards, Inc. v. Johnson & Johnson*
        413 F.Supp. 926 (N.D. Cal. 1976) ....................................................................... 21

23   *In re Echostar Communications Corp.*
        448 F.3d 1294 (Fed. Cir. 2006) ........................................................................... 18

24

25   *In re Legato Systems, Inc. Securities Litigation*
        204 F.R.D. 167 (N.D. Cal. 2001) ........................................................................ 24

26   *In Re Martin Marietta Corp.*
        856 F.2d 619, (4th Cir. 1988) ............................................................................. 18

27

28   *In re Qwest Communications International, Inc.*
        450 F.3d 1179 (10th Cir. 2006) .......................................................................... 23

*In re Sealed Case*
    676 F.2d 793 (D.C.Cir.1982) .................................................................................. 18

*In re Woolworth Corp. Securities Class Action Litigation*
    166 F.R.D. 311 (S.D.N.Y. 1996) ............................................................................. 24

*Informatica Corp. v. Business Objects Data Integration, Inc.*
    454 F.Supp.2d 957 (N.D. Cal. 2006) ...................................................................... 18

*Maday v. Public Libraries of Saginaw*
    480 F.3d 815 (6th Cir. 2007) .................................................................................. 22

*McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*
    765 F.Supp. 611 (N.D. Cal. 1991) ............................................................. 16, 19, 23

*Simmons, Inc. v. Bombardier, Inc.*
    221 F.R.D. 4, 8 (D.D.C.2004) ................................................................................ 21

*Thomas v. Hickman*
    No. 106-CV-0215-AWI-SMS, 2007 WL 4302974, at *14 (E.D.Cal. Dec. 6, 2007) ........ 24

*Trudeau v. New York State Consumer Protection Board*
    237 F.R.D. 325 (N.D.N.Y. 2006) ............................................................................ 21

*U.S. v. International Union of Petroleum and Indus. Workers, AFL-CIO*
    870 F.2d 1450 (9th Cir. 1989) .......................................................................... 23, 24

*U.S. v. Nobles*
    422 U.S. 225, (1975) .............................................................................................. 18

*U.S. v. Stewart*
    287 F.Supp.2d 461 (S.D.N.Y. 2003) ...................................................................... 22

*U.S. v. Stewart*
    287 F.Supp.2d 461 (S.D.N.Y. 2003) ...................................................................... 22

*Weil v. Investment/Indicators, Research and Management, Inc.*
    647 F.2d 18 (9th Cir. 1981) ........................................................................ 16, 17, 20


Federal Regulations

17 C.F.R. §203.6 .................................................................................................... 24


Fed R Civ. P. 34(a) ............................................................................................... 23

- iii -

VERIGY'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM STS,
INC. IN RESPONSE TO 4TH REQUESTS FOR PRODUCTION                    C07-04330 RMW (HRL)

**NOTICE OF MOTION AND MOTION**

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on Tuesday, October 21, 2008, at 10 a.m., or as soon thereafter as the matter may be heard, before the Hon. Howard R. Lloyd, United States Magistrate Judge, Courtroom 2, Fifth Floor, of the United States District Court for the Northern District of California, San Jose Division, 280 South First Street, San Jose, California, plaintiff Verigy U.S., Inc. ("Verigy"), shall and hereby does move the Court for an order compelling defendants Silicon Test Systems, Inc. ("STS") and Romi Mayder ("Mayder") to produce documents responsive to Requests Nos. 54 through 69, 71, 81 and 82 of the 4th Set of Requests for Production propounded by Verigy.

The motion is based upon this notice of motion and motion, the supporting memorandum of points and authorities, the declaration of Colin G. McCarthy, the complete files and records in this action, and such additional evidence and argument as may hereinafter be presented.

**STATEMENT OF ISSUES**

1.    Should STS and/or Mayder be compelled to produce documents responsive to Requests Nos. 54 through 69, 71, 81 and 82 of Verigy's 4th Set of Requests for Production?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND BACKGROUND**

Verigy moves to compel production of documents responsive to Requests Nos. 54 through 69, 71, 81 and 82 of its Fourth Request For Production of Documents served on defendants STS and Romi Mayder (collectively "Defendants").  The documents requested fall into four categories:

(1)    documents which support or relate to certain statements made, advice given or actions taken by Defendants' former counsel at Mount & Stoelker, which were revealed by Mayder in his declaration filed in support of Defendants' Motion for Summary Adjudication and Motion to Modify Preliminary Injunction Order (hereinafter, "Modification Motion") and asserted as a justification for his conduct (Requests Nos. 54 through 63);

(2)    documents which support or relate to certain statements made by Thomas Schneck of Schneck & Schneck, Defendants' patent counsel, regarding his communications, advice and opinions expressed to Defendants in connection with certain work he performed which were revealed in his declaration in Opposition to Verigy's Ex Parte Application re: Preliminary Injunction (Requests Nos. 64 through 67);

(3)    communications between Mayder and Schneck & Schneck relating to certain topics Mayder discussed with said counsel and subsequently disclosed to an unrelated third party, his friend, Richard Foster (Requests Nos. 68-69 and 71); and

(4)    "other" documents responsive to Request Nos. 81 (bank statements, etc. relating to purchases from bookfactory.com) and 82 (native file format versions of DOCUMENTS from the special master's report).

Defendants have objected to the bulk of the requests and refused to produce responsive documents on the basis that they do not have any non-privileged documents.  As to Request Nos. 81 and 82, they claim to have produced everything already.  Defendants' objections and assertions are without merit.

By voluntarily disclosing otherwise attorney-client privileged communications and attorney work product in the filed declarations of Romi Mayder and Thomas Schneck, Defendants have waived any privilege or work-product protection that may have attached to the documents requested pursuant to Requests Nos. 54 though 67.

Defendants also cannot avoid production of documents responsive to Request Nos. 68, 69 and 71 on the grounds of attorney-client privilege and/or work product doctrine.  Mayder voluntarily disclosed his communications with Schneck & Schneck and certain opinions and conclusions of that firm to an unrelated third party, Richard Foster.  This voluntary disclosure is inconsistent with maintaining the privileged or confidential nature of the communication and, as a result, Mayder has waived any privilege or work product protection that may have existed as to the subject matter of the communications and opinions disclosed.

As to Request Nos. 81 and 82, the requested documents are under defendants' control and there is no substantial burden for their production.

Accordingly, this Court should order Defendants to produce all documents in their possession, custody, or control responsive to Requests Nos. 54 through 69, 71, 81 and 82.

## II.    FACTUAL BACKGROUND

On July 24, 2008, Verigy served Defendants with a Fourth Request For Production of Documents seeking, among other things, documents relating to Mayder's assertions about Mount & Stolker's advice set forth in his declaration, filed on July 10, 2008, in support of the Modification Motion, assertions about the advice of Thomas Schneck of Schneck & Schneck in his declaration in

- 2 -

connection with Defendants' Opposition to Verigy's Ex Parte Application re: Preliminary

Injunction, and discussions Mayder had with Schneck & Schneck that he disclosed (via e-mail Bates

Nos. SITES001585-0015865, SITES001728-001733, and SITES001744-001748) to third party

Richard Foster.  (*See,* McCarthy Decl., ¶ 4, Ex. C)

As is evident by an examination of the requests at issue, the requests are specifically tailored

to seek only those documents that contain information relating to subjects as to which the attorney-

client privilege and/or work product protection has been expressly waived by voluntary disclosure.

On August 25, 2008, Defendants served their objections and responses to Verigy's Fourth

Request For Production.  Defendants objected to Requests Nos. 54 through 69 and 71 on, among

other things, the grounds that such Requests sought information protected by the attorney-client

privilege and/or the work product doctrine.  (McCarthy Decl., ¶ 3, Ex. B).  Defendants refused to

produce any responsive documents, claiming they had no non-privileged documents.

Counsel met and conferred by telephone regarding the matters in dispute and were unable to

resolve them.  (McCarthy Decl., ¶ 8). Accordingly, Verigy hereby moves to compel production

related to the aforementioned document requests.

## III.    THE DISCOVERY IN DISPUTE

Pursuant to Civ. L.R. Rules 37-2 and 7-2, Verigy hereby sets "forth each request in full,

followed by the objections and/or responses thereto" as well as for each request the detailed basis on

why Verigy is entitled to the discovery and how the requirements of FRCivP 26(b)(2) are satisfied

for each request.  Civ. L.R. 37-2.

### A.    DOCUMENTS RELATING TO DISCLOSURES IN THE MAYDER DECLARATION

- **REQUEST NO. 54:**  All DOCUMENTS RELATING TO or supporting the statement by DEFENDANTS' FORMER COUNSEL[1] to ROMI MAYDER that DEFENDANTS "could continue to act in the manner that resulted in the contempt filing," as described on page 17 of DEFENDANTS' Memorandum of Points and Authorities in Support of Motion for Summary Adjudication and for Modification of

---

[1]     "DEFENDANTS' FORMER COUNSEL" is defined as "Mount & Stoelker, P.C., and, where applicable, its officers, directors, managers, employees, agents or attorneys."

VERIGY'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM STS, INC. IN RESPONSE TO 4TH SETS OF REQUESTS FOR PRODUCTION          C07 04330 RMW (HRL)

Preliminary Injunction, Docket No. 261, including, but not limited to, COMMUNICATIONS between DEFENDANTS' FORMER COUNSEL and DEFENDANTS.[2]

This request is specifically tailored to seek documents related to the advice Defendants received from their former counsel regarding the proper scope of their activities under the TRO, as disclosed by Defendants on Page 17 of the Modification Motion brief, which states that Defendants "were in fact advised by their former counsel that they could continue to act in the manner that resulted in the contempt finding," and Paragraph 17 of Mayder's Declaration, which discloses the substance of an otherwise privileged discussion with Defendants' former counsel as well as such counsel's opinion and conclusion regarding the proper scope of activities Defendants could engage in while under the TRO, stating:

> **Dan Mount informed me**, based on Dr. Blanchard's expert opinion, **that the TRO was designed to maintain the 'status quo.'** At the time the TRO was entered, I was already engaged in design/development activity with Honeywell as well as sales activities with Spansion and Intel. **Dan Mount informed me that continuing work with Honeywell, Spansion and Intel under the TRO was proper because that was the status quo that the TRO was supposed to maintain.** (Emphasis added.)

This information is relevant for a number of reasons. If docs are received prior to a ruling on the Modification Motion, Verigy could inform Court as to veracity of Defendants' assertions. Likewise, the documents would be relevant to any appeal or motion for reconsideration of the

---

[2]    **STS's [Identical Responses to Request Nos. 54-63 except for Responses 56 & 57 which add language at the end "documents that have not been previously produced."]:** STS incorporates the General Objections set forth above. STS objects to this Request to the extent that it seeks disclosure of privileged communications between attorney and client or documents protected by the work product doctrine, and STS shall not produce any such privileged documents. STS objects to this Request to the extent that it seeks production of documents in violation of the confidentiality provisions of any contract(s), Defendants' right of privacy under the California Constitution, or any other applicable doctrine, law, or statute of privilege. STS objects to the definition of "DEFENDANTS' FORMER COUNSEL" to the extent that it includes "its officers, directors, managers, employees, agents or attorneys" and therefore requires that (a) STS provide documents and things outside its possession, custody, or control and (b) calls for production of documents protected by the attorney-client privilege; work product doctrine or other applicable law, statute or doctrine of privilege. STS objects to the definition of "DEFENDANTS to the extent that it that it includes its "attorneys" and therefore requires that (a) STS provide documents and things outside its possession, custody, or control and (b) calls for production of documents protected by the attorney-client privilege, work product doctrine or other applicable law, statute or doctrine of privilege. Subject to the objections set forth above, Defendants respond that they have no such non-privileged documents.

1   Court's ultimate decision on the Modification Motion.  The documents would also be relevant to the

2   issue of willfulness in connection with Defendants' misappropriation of trade secrets, and might also

3   shed light on additional activities undertaken by Defendants "on the advice of counsel" which could

4   be relevant to an additional motion for contempt of the TRO and/or preliminary injunction, as well

5   as for the simple purpose of challenging Mayder's credibility at trial.

- **REQUEST NO. 55:** All DOCUMENTS RELATING TO or supporting the
statement by DEFENDANTS' FORMER COUNSEL to ROMI MAYDER that
DEFENDANTS' FORMER COUNSEL "could really not tell me what was in the
various documents that comprise the Court's TRO," as described in the Declaration
of Romi Mayder, filed July 10, 2008, Docket No. 261 ("MAYDER
DECLARATION"), including, but not limited to, COMMUNICATIONS between
DEFENDANTS' FORMER COUNSEL and DEFENDANTS.

10   This Request quotes from and is again, specifically tailored to, a statement made by

11   Defendant Romi Mayder in his declaration in support of the Modification Motion regarding

12   communications with his former counsel regarding the TRO.  In pertinent part, Paragraph 10 of

13   Mayder's declaration states:

> I have NEVER been served the FULL, unredacted TRO with all of the referenced materials.
> . . . Thus, I do not know if my past activities under the TRO would have changed if I were
> allowed to read the FULL Court Order with all of the referenced materials, but I do know
> that I would have consulted in detail with regard to whether there was any potential for being
> held in contempt and that consultation never happened because ***my former lawyers told me
> that they could really not tell me what was in the various documents that comprise the
> Court's TRO.*** . . .  (Emphasis added.)

18   Responsive documents are relevant to the action for the same reasons set forth with respect to the

19   prior request.

- **REQUEST NO. 56:**  All DOCUMENTS RELATING TO the press release issued
by DEFENDANTS referenced in paragraph 14 and Ex. 7 to the MAYDER
DECLARATION, including, but not limited to, COMMUNICATIONS between
DEFENDANTS' FORMER COUNSEL and DEFENDANTS.

23   Request No. 56 is tailored to Mayder's disclosure of communications with his former

24   counsel regarding the press release attached as Exhibit 7 and his former counsel's opinion regarding

25   the propriety of the press release.  In pertinent part, Paragraph 14 of Mayder's declaration states:

> Verigy knows full well that the press release did not come from the defendants but rather
> from the lawyers at Mount & Stoelker.  Attached as exhibit 7 is a true and correct copy of an
> email from Mr. Kevin Pasquinelli of Mount & Stoelker to Ms. Morton containing the press
> release that ***Mr. Pasquinelli and his firm said was proper*** and that would be issued. . . .  In
> effect, I have been blamed for something that ***my former lawyers told me was acceptable*** . . .
> (Emphasis added.)

- 5 -

1    Responsive documents would be relevant for the same reasons as set forth with respect to Request

2    No. 54.  In addition, documents relating to the press release could also evidence counsel's opinions

3    and conclusions about the proper scope of activities Defendants could engage in under the

4    Preliminary Injunction, which may have been communicated to and acted upon by Defendants.

5    Documents relating to the press release could also evidence advice Mayder sought or was given

6    regarding what he could say to potential customers (namely, Intel and Spansion), both of whom

7    have a relationship with Verigy, which could be relevant to Verigy's interference claim.

8
    - **REQUEST NO. 57:**  All DOCUMENTS RELATING TO the proposed NDA with
9      VERIGY referenced in paragraph 15 and Exs. 8 and 9 to the MAYDER
       DECLARATION, including, but not limited to, COMMUNICATIONS between
10      DEFENDANTS' FORMER COUNSEL and DEFENDANTS.

11    Request No. 57 is tailored to Mayder's statement in Paragraph 15 of his declaration that

12    "Verigy claimed that I brazenly sent an email asking Verigy to sign an NDA with STS and this was

13    a violation of the TRO.  However, the properties window of that document clearly shows that ***Kevin***

14    ***Pasquinelli, my former counsel, was the author of the NDA***."  (Emphasis added.)  Responsive

15    documents would again be relevant for the reasons set forth with respect to Request No. 54***.***

16
    - **REQUEST NO. 58:**  All DOCUMENTS RELATING TO or supporting the
17      statement by DEFENDANTS' FORMER COUNSEL to ROMI MAYDER that
       DEFENDANTS could "continue to develop Flash Enhancer," referenced in
18      paragraph 17 of the MAYDER DECLARATION, including, but not limited to,
       COMMUNICATIONS between DEFENDANTS' FORMER COUNSEL and
19      DEFENDANTS.

20    Request No. 58 tracks Mayder's disclosure of his communication with his former counsel

21    regarding the proper scope of Defendants' activities under the TRO and his former counsel's

22    opinion as to what activities Defendants could continue to engage in, as set forth in Paragraph 17 of

23    Mayder's declaration which states: "***Dan Mount informed me that*** continuing [design/development]

24    work with Honeywell, Spansion and Intel under the TRO was proper because that was the status quo

25    that the TRO was supposed to maintain."  (Emphasis added.)  Responsive documents would again

26    be relevant for the reasons set forth with respect to Request No. 54***.***

27
    - **REQUEST NO. 59:**  All DOCUMENTS RELATING TO or supporting the
28      statement by DEFENDANTS' FORMER COUNSEL to ROMI MAYDER that that
       "continuing work with Honeywell, Spansion, and Intel under the TRO was proper

- 6 -

because that was the status quo that the TRO was supposed to maintain," referenced in paragraph 17 of the MAYDER DECLARATION, including, but not limited to, COMMUNICATIONS between DEFENDANTS' FORMER COUNSEL and DEFENDANTS.

Request No. 59 quotes from Paragraph 17 of Mayder's declaration which, as stated above, discloses his communication with his former counsel regarding the proper scope of Defendants' activities under the TRO and his former counsel's opinion as to what activities Defendants could continue to engage in.  Responsive documents would again be relevant for the reasons set forth with respect to Request No. 54**.**

- **REQUEST NO. 60:**  All COMMUNICATIONS between DEFENDANTS' FORMER COUNSEL and DEFENDANTS relating to Dr. Blanchard, referenced in paragraph 19 of the MAYDER DECLARATION.

Paragraph 19 of Mayder's declaration, which serves as the basis for Request No. 60, reveals a communication between Mayder and his former counsel relating to the opinion of Dr. Blanchard, stating: "There is an ambiguity in my declaration that I submitted for the contempt motion.  The declaration states that Dr. Blanchard told me that my activities under the TRO were proper.  However, ***it was actually Dan Mount of Mount & Stoelker who told me my activities under the TRO were proper based on what Dr. Blanchard had said***. . . ."  (Emphasis added.)  Responsive documents would again be relevant for the reasons set forth with respect to Request No. 54**.**  In addition, responsive documents may call into question what other opinions Dr. Blanchard may have expressed regarding the proper scope of Defendants' activities under the TRO, and, if such opinions were relayed to Defendants by their counsel, what actions they may have taken or not taken based on these opinions.

- **REQUEST NO. 61:**  All COMMUNICATIONS between DEFENDANTS' FORMER COUNSEL and DEFENDANTS relating to the Contempt Motion, referenced in paragraphs 19-24 of the MAYDER DECLARATION.

- **REQUEST NO. 62:** All COMMUNICATIONS between DEFENDANTS' FORMER COUNSEL and DEFENDANTS relating to the TRO, referenced in the MAYDER DECLARATION.

- **REQUEST NO. 63:**  All COMMUNICATIONS between DEFENDANTS' FORMER COUNSEL and DEFENDANTS relating to the Preliminary Injunction motion and briefing, referenced in the MAYDER DECLARATION.

1    Requests Nos. 61, 62, and 63 seek communications between Defendants and their former

2    counsel relating to the Contempt Motion, the TRO, and the Preliminary Injunction.  As noted above,

3    Paragraphs 10, 14, 15, 17, and 19 of Mayder's declaration disclose in great detail his

4    communications with Defendants' former counsel relating to the Contempt Motion, the TRO, and

5    the Preliminary Injunction, as well as the strategic decisions of and opinions of counsel in

6    connection such subjects.

7    Paragraphs 20 through 24 then make further disclosures on these subjects.  Paragraph 20

8    discloses Mayder's communications with his former counsel regarding the brief filed by Defendants

9    in connection with the Contempt Motion, stating:

10   > *I was informed by my previous counsel, Kevin Pasquinelli, that the defendants' reply brief*
   > *would explain to the Court that defendants were not given the opportunity to read the*
11   > *FULL, unredacted TRO.*  However, I have recently reviewed the Court's version of the
   > defendants' reply brief submitted by defendants.  The brief does not even attempt to explain
12   > to the Court that many critical documents referenced by the TRO were marked "FILED
   > UNDER SEAL.  (Emphasis added.)
13

14   Paragraph 21 further discloses the substance of Mayder's communications with his former

15   counsel regarding Defendants' opposition to the Contempt Motion, stating in pertinent part:

16   > I believed then (and now) that I was in compliance with the Court's TRO but I did not state
   > in my declaration in opposition to the contempt motion that I was in compliance with the
17   > TRO because of three reasons: . . . (b) *My previous counsel told me that I was not qualified*
   > *to draw such a legal conclusion and thus could not make a statement as such; and (c) My*
18   > *previous counsel told me that such a statement would not be a statement of fact.  It would*
   > *be my opinion and opinions are not allowed in declarations*.  (Emphasis added.)
19

20   In Paragraph 22 of his declaration, Mayder expresses his understanding, apparently based on

21   discussions with his prior counsel, that before retaining Russo & Hale, LLP as counsel, only

22   Defendants' previous attorneys,. Kevin Pasquinelli and Dan Mount of Mount & Stoelker, had

23   reviewed the full, unredacted TRO.

24   Paragraph 23 reveals several omissions made by Mayder's previous counsel in their

25   communications with him regarding the TRO, stating:

26   > *I was never informed by my previous counsel* that I had the right to an evidentiary hearing
   > where I could have explained all these things to the Court.  *I was never informed* that I had
27   > the right to a jury trial for the contempt of court motion.  *I was never informed that my*
   > *previous counsel* stipulated to several extensions of the TRO.  (Emphasis added.)
28

1    Then, in Paragraph 24 of his declaration, Mayder states that, as a result of the advice,

2  opinions, and actions and omissions of his prior counsel disclosed in the preceding paragraphs, he

3  "ha[s] never understood (until now and only through new counsel at Russo & Hale LLP) what [his]

4  rights are, what should have occurred in this case, and what did not occur which [he] believe[s] has

5  caused a miscarriage of justice with regard to the extension of the Preliminary Injunction."

6    This broad, quite intentional disclosure of otherwise attorney-client privileged

7  communications and attorney work product mandates that the subject matter scope of the waiver

8  reach all communications between Defendants and their former counsel regarding the Contempt

9  Motion, the TRO, and the Preliminary Injunction.  In connection with their Modification Motion,

10  Defendants have advanced the specific advice of counsel as a justification for taking certain actions,

11  which advice has broad implications.  Verigy should be able to examine the true nature of that

12  advice which should be revealed in responsive documents and to explore the scope of that advice

13  and the extent of Defendants' conduct in reliance.  This evidence is relevant to the issue of

14  willfulness of Defendants' conduct both before and after issuance of the TRO and would be

15  germane to any appeal or motion for reconsideration of the Court's decision on the Modification

16  Motion.

17    **B.    DOCUMENTS RELATING TO DISCLOSURES IN THE SCHNECK**
        **DECLARATION**

18

19    • **REQUEST NO. 64:**  All COMMUNICATIONS between Schneck & Schneck and
         DEFENDANTS relating to the Patent Disclosure attached as Exhibit B to the

20         Declaration of Thomas Schneck, dated October 9, 2007 ("SCHNECK
         DECLARATION").[3]

21  _____

   [3]  **STS's [Identical Responses to Request Nos. 64-66 except Response 65 which adds a**
22  **sentence prior to the last "Defendants object to the term "COMMUNICATIONS" as vague**
   **and ambiguous in not identifying the parties to any such communications."]:** STS incorporates
23  the General Objections set forth above.  STS objects to this Request to the extent that it seeks
   disclosure of privileged communications between attorney and client or documents protected by the
24  work product doctrine, and STS shall not produce any such privileged documents.  STS objects to this
   Request to the extent that it seeks production of documents in violation of the confidentiality
25  provisions of any contract(s), Defendants' right of privacy under the California Constitution, or any
   other applicable doctrine, law, or statute of privilege.  STS incorporates the General Objections set
26  forth above.  STS objects to the definition of "DEFENDANTS to the extent that it that it includes its
   "attorneys" and therefore requires that (a) STS provide documents and things outside its possession,
27  custody, or control and (b) calls for production of documents protected by the attorney-client
   privilege, work product doctrine or other applicable law, statute or doctrine of privilege.  Subject to

28

Thomas Schneck of Schneck & Schneck, Defendants' patent counsel, submitted a declaration, dated October 9, 2007 in Opposition to Plaintiff's Ex Parte Application for TRO. In this declaration, Mr. Schneck discusses the "Patent Disclosure" he received from Robert Pochowski, who was then the Vice President of STS, and attaches a copy of this document as Exhibit B. In Paragraphs 10 through 21 of his Declaration, Mr. Schneck goes on to discuss in detail what appear to be otherwise privileged communications between Mayder, Mr. Pochowski, and himself, as well as his own mental impressions, conclusions, and opinions, related to:

(a) the filing of a provisional patent application based on the "Patent Disclosure" including certain communications with Mayder and Pochowski about the application (see Paragraphs 10-12);

(b) the subject matter of the provisional patent application (Paragraph 13);

(c) the fact that his office did not follow its usual practice of conducting a pre-filing novelty search with respect to the provisional patent application (Paragraph 14);

(d) ██████████████████████████████████████████████████████ (Paragraph 16); and,

(e) his conclusion that "the subject matter of the provisional application of Ex. B/D contains only public domain information and thus cannot constitute a trade secret . . ." (Paragraph 19).

Based on this extensive disclosure of both privileged communications and work product relating to the Patent Disclosure, Defendants have waived the attorney-client privilege as to all communications on the subject matter of the patent disclosure and related application. Communications between Schneck & Schneck and Defendants relating to the patent disclosure are directly relevant to a number of fundamental issues in this lawsuit, including, but not limited to, when and how Mayder invented any portion of the Flash Enhancer, whether any portion of that ASIC was developed on Verigy's time, using Verigy's resources, and/or using Verigy's intellectual property, and whether any portion of the Flash Enhancer incorporates Verigy's trade secrets.

- **REQUEST NO. 65:** All DOCUMENTS relating to any novelty search done by Schneck & Schneck related to the documents attached as Exhibits B, D, or E to the SCHNECK DECLARATION, referenced in the SCHNECK DECLARATION.

the objections set forth above, Defendants respond that they have no such non-privileged documents.

Exhibits B, D, and E to the Schneck Declaration consist of the patent disclosure written by Robert Pochowski for STS (Exhibit B), a Filing Receipt for Provisional Patent Application (Exhibit D) and a utility patent application entitled "A Universal Application Specific Integrated Circuit (ASIC) for Burn-in, Wafer Sort and Package Test of DRAM, NAND, NOR, and Other Electronic Devices," filed February 13, 2007 (Exhibit E). These documents are discussed and referenced in Paragraphs 9 and 11-19 of the Schneck Declaration. In Paragraph 14, for example, Schneck states:

> [t]he practice of our patent law firm is to conduct a novelty search before filing a nonprovisional utility patent application in the USPTO. However, in the case of provisional patent applications, the patent application generally must be filed rapidly (e.g., to prevent a statutory bar, to have a filing date before the technology is disclosed to a customer or business partner, or other reasons.) In the case of the provisional patent application of Exhibit D, no pre-filing novelty search was conducted.

Schneck's declaration does not disclose, however, whether a novelty search was performed with respect to Exhibits D or E. Any novelty search conducted by Schneck & Schneck related to Exhibits B, D, and/or E is directly relevant to a number of issues in this lawsuit, including, but not limited to, just what prior art was considered in connection with the Patent Application, and whether the Flash Enhancer ASIC contains Verigy intellectual property or only publicly available information.

- **REQUEST NO. 66:** All COMMUNICATIONS between Schneck & Scheck and DEFENDANTS relating to the documents attached as Exhibits B, D, or E to the SCHNECK DECLARATION.

As noted above, Schneck's declaration discusses Exhibits B, D, and E in some detail, including revealing certain otherwise privileged communications between himself, Mayder and/or Pochowski relating to these documents as well as Schneck's own conclusions and opinions about the documents. In fact, in Paragraph 19 of his declaration, Schneck expresses an opinion central to the issues in this case that "the subject matter of the provisional application of Ex. B/D contains only public domain information and thus cannot constitute a trade secret . . ." Therefore, any communications between Schneck & Schneck and Defendants regarding these documents are potentially relevant for the reasons set forth with respect to Request No. 64.

1    • **REQUEST NO. 67:**  All DOCUMENTS relating to Mr. Pochowski's alleged
2      "disavowal of inventorship" as described in paragraph 16 of the SCHNECK
       DECLARATION.[4]

3    In Paragraph 16 of his declaration, Schneck discloses otherwise privileged communications

4    regarding inventorship and Schneck's own conclusions and opinions on this issues, stating:



10   The issue of inventorship of the Flash Enhancer is an important issue in this case because

11   virtually each and every claim for relief alleged in Verigy's Complaint requires a determination of

12   when and how Mayder invented any portion of the Flash Enhancer, whether any portion of his

13   product was developed on Verigy's time, using Verigy's resources and its intellectual property, and

14   whether any portion of the product incorporates Verigy's trade secrets.

15   C.    **DOCUMENTS RELATING TO DISCLOSURES TO RICHARD FOSTER**

16   • **REQUEST NO. 68:**  All COMMUNICATIONS with Schneck & Schneck relating
17     to potential litigation between ROMI MAYDER and Mr. Robert Pochowski, as
       referenced in the documents bates-labeled SITES001744-001748.[5]

18   _____

19   [4]  **STS's Response to Request No. 67:**  STS incorporates the General Objections set forth above.
     STS objects to this Request to the extent that it seeks disclosure of privileged communications
20   between attorney and client or documents protected by the work product doctrine, and STS shall not
     produce any such privileged documents.  STS objects to this request to the extent that it seeks
21   production of documents in violation of the confidentiality provisions of any contract(s),
     Defendants' right of privacy under the California Constitution, or any other applicable doctrine, law
22   or statute of privilege.  Subject to the objections set forth above, Defendants respond that all such
     non-privileged documents have previously been produced.

23   [5]  **STS's [Identical] Responses to Request Nos. 68, 69 and 71:**  STS incorporates the General
24   Objections set forth above.  STS objects to this Request to the extent that it seeks disclosure of
     privileged communications between attorney and client or privileged attorney work product, and
25   STS shall not produce any such privileged documents.  STS objects to this request to the extent that
     it seeks production of documents in violation of the confidentiality provisions of any contract(s),
26   Defendants' right of privacy under the California Constitution, or any other applicable doctrine, law,
     or statute of privilege.  Subject to the objections set forth above, Defendants respond that they have
27   no such non-privileged documents.

28
VERIGY'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM STS,
INC. IN RESPONSE TO 4TH SETS OF REQUESTS FOR PRODUCTION          C07 04330 RMW (HRL)

1    The documents Bates-labeled SITES001744-001748 consist of e-mail communications

2  between Mayder and Richard Foster, who is merely a personal friend of Mayder who has apparently

3  invested in STS.  In these e-mail communications, ███████████████████████████████

4  ████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████

6  Specifically, Mayder's February 23, 2007 e-mail message to Foster at SITES001744 states: ████

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10  ███  Documents responsive to Request No. 68 are relevant for the reasons set forth with respect to

11  Request No. 64, as well as to Mayder's assertions of ownership of certain intellectual property

12  which belongs either to Verigy or Pochowski and may unearth other potentially relevant

13  information.

14         • **REQUEST NO. 69:**  All COMMUNICATIONS with Schneck & Schneck relating
              to inventorship, as referenced in the documents bates-labeled SITES001585-001586.
15

16    The document Bates-labeled SITES001585-1586 again consists of e-mail communications

17  between Mayder and Foster in which ████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ███████████████████████████████████.  Among other things, in a February 21,

20  2007 e-mail to Mr. Foster, Mayder states:

21         ███████████████████████████████████████████

22         ███████████████████████████████████████████

23         ███████████████████████████████████████████

24         ███████████████████████████████████████████

25         ██████████████████████████████  (SITES001585).

26

27    As discussed above, the issue of inventorship of the Flash Enhancer, or the technology set

28  forth in the patent disclosure, is a fundamental issue in this case (See Discussion regarding Request

VERIGY'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM STS,
INC. IN RESPONSE TO 4TH SETS OF REQUESTS FOR PRODUCTION          C07 04330 RMW (HRL)

1    No. 64, *Supra*.)

2        • **REQUEST NO. 71:** All COMMUNICATIONS between ROMI MAYDER and
         Schneck & Schneck relating to Mr. Pochowski, as referenced in the documents bates-
3        labeled SITES001744-001748, SITES001585-001586, and SITES001728-001733.

4        In each of the referenced documents, Mayder discloses ███████████████████████

5    ███████████████████████████████████████, including discussions ███████████████████

6    ██████████████████████████████ (SITES001744-001748), ███████████████████████

7    ███████████████████ (SITES001744-001748), ███████████████████████████████

8    ██████████████ (SITES001585-001586), and ███████████████████████████████████

9    ██████████████ (SITES001728-001733).  As noted above, these communications go to

10   several issues central to this case, including the issue of Mayder's inventorship of any aspect of the

11   Flash Enhancer ASIC.  (See Discussion regarding Request No. 64, *Supra*.)

12       **D.      OTHER DOCUMENTS RESPONSIVE TO REQUEST NOS. 81 AND 82**

13       • **REQUEST NO. 81:**  Any receipt, bank statement, cancelled check, invoice, website,
         print-out or packing slip showing any purchase made at bookfactory.com between
14       May 2006 and January 2007.[6]

15   This request seeks evidence of any purchases made during the time period prescribed from

16   bookfactory.com, the place Mayder bought the inventor's notebook that has been marked as

17   Deposition Exhibit 6 in this action.  The dates that notebook was created and later "verified" are

18   unclear and clearly important to a fundamental issue in this case, i.e., whether Mayder's work during

19   and immediately after his departure from Verigy belongs to Verigy.  Defendants have previously

20   produced bank records from a Wells Fargo account used by defendant STS, Inc. dating from January

21   2007 to the present (which, purportedly, do not show the relevant purchase), but have admitted to

22   not producing bank records from a Wells Fargo account used prior to that time by STS LLC, the

23   _____

24   [6]      **STS's Response to Request No. 81:**  STS incorporates the General Objections set forth
     above.  STS objects to this Request as vague and ambiguous as to subject matter, and in that regard
25   as overbroad and unduly burdensome.  STS objects to this Request as seeking documents that are
     not relevant to the issues in dispute in this action or that are not reasonably calculated to lead to the
26   discovery of relevant documents or information in this action.  STS objects to this as vague and
     ambiguous.  Subject to and without waiving the foregoing objections, STS responds that it has no
27   such documents not previously produced.

28
                                                - 14 -

1    predecessor entity to STS, Inc. that came into being on September 8, 2006.  (See McCarthy Decl. at

2    ¶5 [Mayder Depo. at pp. 35:2-10; 36:5-11].)

3

4           •   **REQUEST NO. 82:**  Native file format versions of all DOCUMENTS
        indicated by a star on the special master's report attached hereto as Exhibit A.

5           **STS's Response to Request No. 82:**  STS incorporates the General Objections set forth
     above.  STS objects to this Request to the extent that it requires the production of privileged
6    documents under the attorney-client, work product, or other applicable doctrine, or any right of
     privacy, and STS shall not provide any such privileged information.  STS understands this Request
7    not to encompass privileged documents created after the filing of the action by Verigy (*e.g.*, emails
     between STS and any of its legal counsel in this action, past or current) and STS shall neither
8    produce nor include such documents in a privilege log.  STS objects to this Request as vague and
     ambiguous as to time and subject matter, and in that regard as overbroad and unduly burdensome.
9    STS objects to this Request as seeking documents that are not relevant to the issues in dispute in this
     action, or that are not reasonably calculated to lead to the discovery of relevant documents or
10   information in this action.  STS further objects to this Request as unduly burdensome, expensive and
     oppressive in light of Verigy's having previously asked for, and received, such documents in a
11   different format, namely "searchable pdf," such that production in a third format is unreasonable.
     STS objects to this Request as lacking foundation to the extent it assumes that every document
12   previously produced would have "metadata" associated with it.  Subject to and without waiving the
     foregoing objections, STS responds that pursuant to agreement reached by counsel at the meet-and-
13   confer on August 5, 2008, STS has already produced in native format all those non-privileged,
     documents which are available on the active operating system identified by a "*" on the Special
14   Master's list of documents as appended to plaintiff's Fourth Request for Production of Documents
     [a number of these documents were recovered by the special master using EnCase or other forensic
15   recovery software and are not accessible without this software, and which STS identifies as not
     reasonably accessible pursuant to Fed. R. Civ. P. 26 (b)(2)(B)].  Further, STS has provided a
16   privilege log as to those documents withheld on the basis of privilege.

17   This request seeks documents that the special master appointed by the court to examine Mayder's

18   "overwritten" hard drive back in the Fall of 2007 has already identified.  They consist of documents

19   purportedly "erased" due to Mayder's convenient "upgrade" to his operating system a few days after

20   leaving Verigy in September 2006 and are obviously relevant to the misappropriation issues.  They

21   all have creation dates prior to September 22, 2006 (the day after Mayder left Verigy) and, as a

22   result, belong to Verigy.  They are documents that Mayder has under his control in that he can

23   simply ask the special master for them.  (*See* McCarthy Decl. at Ex. A.)

24   **IV.    LEGAL ARGUMENT**

25           **A.    Defendants Have Waived The Attorney-Client Privilege And Any Work
                 Product Protection With Respect To The Subject Matter Of Communications
26               Between Defendants And Their Former Counsel Disclosed In The Declaration
                 Of Romi Mayder.**

27

28           Requests Nos. 54 through 63 seek documents relating to certain statements made in the

                                        - 15 -

1   Mayder Declaration filed in support of the Modification Motion.  This declaration discloses in detail

2   advice he received from Mount & Stoelker, his former counsel in this action, regarding the proper

3   scope of activities he could engage in under the TRO entered in this case.  Mayder voluntarily

4   disclosed these otherwise protected attorney-client privileged communications and attorney work

5   product for the specific purpose of attempting to gain an advantage in this litigation.  Specifically,

6   Mayder was seeking to have the Preliminary Injunction modified to allow STS to market and sell its

7   Flash Enhancer product.  (See Docket No. 261-2.)

8       The law is clear that Mayder cannot voluntarily disclose communications with his former

9   counsel and their work product and then attempt to hide behind the cloak of the attorney-client

10   privilege or work product doctrine to prevent production of other documents embodying the same

11   subject matter.  "[I]t has been widely held that voluntary disclosure of the content of a privileged

12   attorney communication constitutes waiver of the privilege as to all other such communications on

13   the same subject."  *Weil v. Investment/Indicators, Research and Management, Inc.,* 647 F.2d 18, 24

14   (9th Cir. 1981) (attorney-client privilege was waived when otherwise privileged information was

15   disclosed during discovery); *Board of Trustees of Leland Stanford Junior University v. Roche*

16   *Molecular Systems, Inc.,* 237 F.R.D. 618, 622  (N.D. Cal. 2006) ("Generally disclosure of

17   confidential communications or attorney work product to a third party, such as an adversary in

18   litigation, constitutes a waiver of privilege as to those items.") (citing *Carter v. Gibbs,* 909 F.2d

19   1450, 1451 (Fed.Cir.1990) (en banc), *cert. denied,*498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22

20   (1990)).  "The rationale for this rule is that it would be unfair for a party to insist on the protection

21   of the attorney-client privilege for damaging communications while disclosing other selected

22   communications because they are self-serving."  *McCormick-Morgan, Inc. v. Teledyne Industries,*

23   *Inc.,* 765 F.Supp. 611, 614 (N.D. Cal. 1991).

24       The fact that Mayder's disclosures were voluntary and deliberate makes the waiver analysis

25   extremely straightforward.  In the case of an "express" waiver, such as this, "a party discloses

26   privileged information to a third party who is not bound by the privilege, or otherwise shows

27   disregard for the privilege by making the information public. [Citations.] Disclosures that effect an

28   express waiver are typically within the full control of the party holding the privilege; [therefore,]

- 16 -

1    courts have no role in encouraging or forcing the disclosure-they merely recognize the waiver after

2    it has occurred . . . [O]nce documents have been turned over to another party voluntarily, the

3    privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information

4    and related communications by his adversaries." *Bittaker v. Woodford,* 331 F.3d 715, 719-720 (9th

5    Cir. 2003).  There can be no clearer a case of express waiver than a situation in which a party

6    discloses attorney-client communications and attorney work product in a declaration filed with the

7    Court in an attempt to gain an advantage in litigation.

8         As the Ninth Circuit has stated, "[i]ndeed, when, as here, the privileged communication is

9    voluntarily disclosed without objection by the asserting party's counsel and in the absence of

10   surprise or deception by opposing counsel, it may be unnecessary to look beyond the objective fact

11   of disclosure in ruling on the question of waiver." *Weil,* 647 F.2d at 25, n. 13; *see also Electro*

12   *Scientific Industries, Inc v. General Scanning, Inc.,* 175 F.R.D. 539, 543 (N.D. Cal. 1997) ("A

13   sophisticated, well-counseled party who intentionally discloses an important part of an otherwise

14   privileged communication acts in a manner that is thoroughly inconsistent with preserving the

15   confidentiality of that communication. Stated somewhat differently, a sophisticated party who

16   intentionally discloses the most significant part of an otherwise privileged communication, in an act

17   calculated to advance that party's commercial interests, cannot establish, as the law would require,

18   that the party reasonably believed that it would be able to preserve the confidentiality of the other

19   parts of that communication.").

20        The appropriate scope of the waiver in this case is a broad, subject matter waiver.  For

21   example, in a case in which a party voluntarily divulged attorney-client privileged communications,

22   including details of legal advice received, in declarations filed with the U.S.P.T.O., the party waived

23   the attorney-client privilege with regard to the subject matter of the patent application.  *See Board of*

24   *Trustees of Stanford University,* 237 F.R.D. 618.  In construing the waiver broadly, the court

25   emphasized that the University's disclosures were voluntary and deliberate in order to obtain a legal

26   advantage, specifically, an enforceable patent.  Therefore, the University could not now "attempt to

27   shield all other communications on the same subject matter, as this would unfairly prejudice [the

28   opposing party]."  *Id.* at 625 (citing *Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349

- 17 -

1  (Fed.Cir.2005) (holding that a party cannot selectively choose to disclose information that supports

2  its position, while withholding information that might damage its case)).

3        Accordingly, Defendants have expressly waived the attorney-client privilege as to the

4  subject matter of the communications disclosed in Mayder's declaration and cannot now avoid

5  further disclosure.  *See, e.g., Chinnici v. Central Dupage Hospital Association,* 136 F.R.D. 464, 465

6  (N.D. Ill. 1991) (a party's voluntary disclosure of advice of their attorney concerning particular

7  subject waived the privilege as to all other communications on that subject because "[a] party cannot

8  selectively divulge privileged information without impairing its attorney-client privilege as to the

9  rest of that information concerning the same subject. The privilege exists in the first instance to

10  encourage communications from a client to his attorney, and for that reason the confidence of such

11  communications must be protected. . . .  Once a party abandons this confidence by submitting

12  privileged material in a discovery proceeding, the rationale of the privilege is dissipated, insofar as

13  the subject matter of the privilege is concerned.").

14        This waiver extends to attorney work product as well.  Courts have routinely found work

15  product waiver "to prevent a party from using the advice he received as both a sword, by waiving

16  privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice."  *In re*

17  *Echostar Communications Corp.,* 448 F.3d 1294 (Fed. Cir. 2006) (citing *Fort James Corp.,* 412

18  F.3d at 1349;  *In Re Martin Marietta Corp.,* 856 F.2d 619, (4th Cir. 1988) at 626;  *In re Sealed*

19  *Case,* 676 F.2d 793, 818 (D.C.Cir.1982) ("[W]hen a party seeks greater advantage from its control

20  over work product than the law must provide to maintain a healthy adversary system[,] then the

21  balance of interests recognized in Hickman ... shifts."); *see also U.S. v. Nobles,* 422 U.S. 225, 239-

22  240, (1975) (where a party decided to call an investigator as a witness, that party waived any work

23  product privilege with respect to such testimony); *Informatica Corp. v. Business Objects Data*

24  *Integration, Inc.,* 454 F.Supp.2d 957 (N.D. Cal. 2006) (following *Echostar* and determining that

25  waiver of attorney-client privilege and attorney work-product, through assertion of advice of counsel

26  defense, applied to documents which referenced any attorney-client communications on the subject

27  of the advice of counsel defense).  Thus, Mayder cannot disclose only those opinions of his former

28  counsel that are favorable to his cause and omit any other, potentially unfavorable, opinions.

1    In cases such as this, work product waiver has been extended broadly, to cover not only

2  "factual" work product, but also "opinion" work product.  For example, in *Electro Scientific*

3  *Industries,* 175 F.R.D. at 545-546, the Northern District extended the work product waiver to

4  "opinion" work product because, the fact that defendant asserted that it relied on advice contained in

5  an opinion letter from counsel did not preclude the possibility that the defendant had received other,

6  possibly contradictory advice, from counsel as well.  The court acknowledged that "it would not be

7  rational to assume that everything in counsel's files reached the client, or that counsel communicated

8  to the client all of what he or she really thought, but it would be comparably irrational to assume that

9  there could be no relationship between what counsel really thought (as reflected in her private

10 papers) and what she in fact communicated to her client. In this important sense, evidence about

11 what really was in the lawyer's mind could be quite relevant to the issue of what really was in the

12 client's mind." *Id.* at 545.  As it was impossible to know what these documents might show and how

13 they might impact the case, it would be unfair to deny the plaintiff access to such documents.  *Id.* at

14 546; see also *McCormick-Morgan,* 765 F.Supp. at 614 (by asserting an advice of counsel defense in

15 an action for willful infringement of a patent, party "explicitly waived its privilege even with respect

16 to documents that otherwise might be protected by the work product doctrine, and even if the

17 contents of those documents were not 'communicated' to the client or do not record or directly

18 allude to communications that were actually made to the client").

19    This reasoning applies equally herein.  Mayder cannot disclose only those conclusions and

20 opinions of his former counsel relating to the Contempt Motion, the TRO, and the Preliminary

21 Injunction that he feels will advance his case and block from production work product evidencing

22 other opinions, or further expanding on opinions expressed, relating to these same subjects.  Verigy

23 is entitled to discovery of such documents to counter Defendants' contentions as to the effect this

24 advice had on their actions.

25    Accordingly, Defendants should be ordered to produce all documents in their possession,

26 custody, or control responsive to Requests Nos. 54 through 63, including any documents that would

27 otherwise be protected from disclosure by the attorney-client privilege and/or the attorney work

28 product doctrine.

**B.    Defendants Have Waived The Attorney-Client Privilege And Any Work Product Protection With Respect To Subjects Discussed In The Declaration Of Thomas Schneck.**

Requests Nos. 64 through 67 seek the production of documents relating to statements made by Thomas Schneck, Defendants' patent counsel, in a declaration filed in opposition to Verigy's motion for preliminary injunction. In his declaration, Schneck discusses the patent disclosure prepared for STS, the provisional patent application filed on behalf of STS, and the utility patent application filed on February 13, 2007, as well as issues relating to inventorship of the invention underlying the provisional patent application. As noted above, Schneck's declaration discloses certain otherwise privileged communication between himself, Mayder, and/or Robert Pochowski, who was then a Vice President of STS, relating to these applications and also discloses his own conclusions and opinions related to such applications, including his conclusion that ' ███████████ ████████████████████████████████████████████████████████ (Paragraph 16) and that the subject matter of the provisional patent application "contains only public domain information and thus cannot constitute a trade secret" (Paragraph 19).

These otherwise privileged communications and attorney work product were, again, disclosed in an attempt to gain an advantage in this litigation in that it was advanced to support Defendants' argument that Verigy's claimed trade secrets were not actually deserving of trade secret protection. Schneck's conclusion that the provisional patent application does not contain any trade secret information goes to a fundamental issue in this case: whether Defendants misappropriated trade secrets of Verigy and incorporated such trade secrets into their Flash Enhancer which is the subject of the provisional patent application. Thus, it would be unfair to Verigy to allow Defendants to introduce certain opinions of and communications with Schneck, but then hide behind the guise of attorney-client privilege and attorney work product to avoid producing other documents evidencing communications and/or work product on these same subjects.

This is, again, a case of express waiver. *See Bittaker,* 331 F.3d at 719-720; *Weil,* 647 F.2d at 25, n. 13; *Electro Scientific,* 175 F.R.D. at 543. Defendants voluntarily filed the Schneck Declaration in connection with their opposition to Verigy's TRO and OSC re: preliminary injunction. Thus, Defendants have waived the attorney-client privilege as to their communications

1    with Mr. Schneck on the subjects discussed in his declaration.  *See, e.g., Handgards, Inc. v. Johnson*

2    *& Johnson,* 413 F.Supp. 926, 930-931 (N.D. Cal. 1976) (where defendants intended to call as

3    witnesses on their behalf three lawyers who were responsible for prosecuting previous patent

4    infringement suits to testify as to legal advice they rendered to the defendants in connection with the

5    prosecution of the prior actions, defendants waived the attorney-client privilege as to

6    communications relating to the issue of the good-faith prosecution of the prior patent suits as well as

7    any non-mental impression work product related to said subject).

8    　　　　Further, because Schneck has voluntarily disclosed his own attorney work product, including

9    the fact that his firm did not conduct a pre-filing novelty search related to the provisional patent

10   application and its reasons for this decision (Paragraphs 12 and 14), his conclusion ███████████

11   ███████████████████████████████████████████████ (Paragraph 16), and his

12   conclusion that that the provisional patent application cannot constitute a trade secret (Paragraph

13   19), work product protection was waived as to the subject matters disclosed.  The law is clear that

14   "[a] voluntary disclosure of work product, for some or any inexplicable benefit, to a third party,

15   especially if the party is an adversary, may waive the immunity [of attorney work product].  Once a

16   party allows an adversary to share in an otherwise privileged document, the need for the privilege

17   disappears, and may disappear forever, even as to different and subsequent litigators."  *Trudeau v.*

18   *New York State Consumer Protection Board,* 237 F.R.D. 325, 339 (N.D.N.Y. 2006) (internal

19   citations omitted); *see also Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 668

20   (10th Cir. 2006) (holding that any work product objection was waived via production) (citing

21   *Simmons, Inc. v. Bombardier, Inc.,* 221 F.R.D. 4, 8 (D.D.C.2004) ("The work-product privilege may

22   be waived by the voluntary release of materials otherwise protected by it."); *Frontier Refining, Inc.*

23   *v. Gorman-Rupp Co., Inc.,* 136 F.3d 695, 704 (10th Cir.1998) ( "[A] litigant cannot use the work

24   product doctrine as both a sword and shield by selectively using the privileged documents to prove a

25   point but then invoking the privilege to prevent an opponent from challenging the assertion.")).

26   　　　　This waiver must extend to both "factual" and "opinion" work product because the only way

27   for Verigy to challenge Schneck's opinions is to have access to information about what Schneck

28   knew and thought about the issues of inventorship and the novelty of the technology embodied in

1    the provisional patent application or the utility patent application. *See Aclara Biosciences, Inc. v.*

2    *Caliper Technologies Corp.,* No. C99-1968 CRB (JCS) 2001 WL 777083, at *8 (N.D. Cal. June 16,

3    2000) (where Aclara chose to defend itself by disclosing the communications between itself and its

4    lawyer, including the thoughts and impressions of its attorney, Aclara should expect that the

5    opposing party will want to challenge its version of events.  "Without discovery of work product,

6    [the opposing party] may well find it impossible to challenge Aclara's assertion that the

7    communications with [its attorney] prove the absence of any improper conduct . . .").  This

8    "compelling need" justifies production of opinion work product as well as factual work product.  As

9    it was Defendants' decision to disclose Mr. Schneck's work product, including his opinions and

10   conclusions, it would be unfair to not allow Verigy access to the information necessary to challenge

11   these opinions.

12        Accordingly, Defendants should be ordered to produce all documents in their possession,

13   custody, or control responsive to Requests Nos. 64 through 67, including any documents that would

14   otherwise be protected from disclosure by the attorney-client privilege and/or the attorney work

15   product doctrine.

16        **C.    Defendants Have Waived The Attorney-Client Privilege And Any Work
              Product Protection With Respect To Communications Between Romi Mayder**
17        **And Schneck & Schneck Disclosed To Richard Foster.**

18        Requests Nos. 68 through 69 and 71 seek communications between Mayder and counsel at

19   Schneck & Schneck relating to certain topics Mayder discussed with said counsel and subsequently

20   disclosed to an unrelated third party, his friend, Richard Foster.  Mayder's voluntary disclosure of

21   these communications to Foster constitutes an express waiver of the attorney-client privilege as to

22   the subject matter of these communications. *See, e.g., U.S. v. Stewart,* 287 F.Supp.2d 461 (S.D.N.Y.

23   2003) (where defendant composed an e-mail message containing her account of the facts relating to

24   her sale of ImClone stock, sent it to her attorney, and subsequently sent it to her daughter, she

25   waived any attorney-client privilege related to this communication); *see also Maday v. Public*

26   *Libraries of Saginaw,* 480 F.3d 815, 821 (6th Cir. 2007) (where plaintiff relayed the substance of her

27   conversations with her former counsel to her social worker, "[t]his is a clear example of voluntary

28   disclosure of privileged information to a third party and, as such, any attorney-client privilege

- 22 -

1    [plaintiff] may have enjoyed as to this conversation was waived.").  Moreover, Foster himself, who

2    is not an attorney, asserts that "I have been copied on documents where Mr. Mayder has also copied

3    his attorneys.  Therefore, I do not intend to produce documents that I feel would be attorney-client

4    privileged," despite the fact that the privilege has been waived.  (*See* McCarthy Decl. at ¶4, Ex. C

5    [Response to Subpoena served on Richard Foster, dated August 27, 2008].)

6              As Mayder has waived any attorney-client privilege related to the subject matter of his

7    communications with Schneck & Schneck disclosed in his e-mail messages to Foster, Defendants

8    must produce all attorney-client privileged documents in their possession, custody, or control

9    responsive to Requests Nos. 68 through 69 and 71.  *See McCormick-Morgan,* 765 F.Supp. at 613-

10   614 ("voluntary disclosure of a privileged attorney/client communication constitutes a waiver of the

11   attorney-client privilege as to all communications on the same subject matter.").

12             In his e-mail communications to Foster, Mayder also voluntarily disclosed work product of

13   Schneck & Schneck including strategy and opinions related to possible settlement of the dispute

14   with Pochowski (SITES001744-001748) and opinions and conclusions related to the issue of

15   inventorship (SITES001585-001586).  As Defendants have waived any work product protection

16   with respect to these subjects, Defendants also must produce any work product documents in their

17   possession, custody, or control responsive to Requests Nos. 68 through 69 and 71.  *See In re Qwest*

18   *Communications International, Inc.,* 450 F.3d 1179, 1186 (10th Cir. 2006) ("This court has indicated

19   that production of work-product material during discovery waives a work-product objection"); *see*

20   *also Foster v. Hill (In re Foster),* 188 F.3d 1259, 1272 (10th Cir.1999) (indicating that the work-

21   product doctrine is affected when a disclosure is to an adversary).").

22        **D.    DEFENDANTS MUST PRODUCE RESPONSIVE DOCUMENTS NOT**
              **PREVIOUSLY PRODUCED WHICH ARE "IN THEIR CONTROL"**
23

24             Defendants have not provided their bank records (Request No. 81).  Defendants claim they

25   have no such documents in their possession, so they have no obligation to produce them.  However,

26   Verigy is entitled to documents reasonably calculated to lead to the discovery of admissible

27   evidence in Defendants "possession, custody, or control."  Fed. R. Civ. P. 34 (a).  "Control is

28   defined as the legal right to obtain documents upon demand."  *U.S. v. International Union of*

- 23 -

1   *Petroleum and Indus. Workers, AFL-CIO*,  870 F.2d 1450, 1452 (9th Cir. 1989).  The question of

2   whether a party has this "legal right" is determined on a case by case basis. *Thomas v. Hickman*, No.

3   106-CV-0215-AWI-SMS, 2007 WL 4302974, at *14 (E.D.Cal. Dec. 6, 2007).  "Decisions from

4   within this circuit have noted the importance of a legal right to access documents created by statute,

5   affiliation or employment." *In re Legato Systems, Inc. Securities Litigation*, 204 F.R.D. 167, 170

6   (N.D. Cal. 2001).  Similarly, where a contractual relationship exists, the responding party must

7   make inquiry to a contractual party which has possession of documents subject to the contract.  *A.*

8   *Farber and Partners, Inc., v. Garber,* 234 F.R.D. 186, 190.

9       In *A. Farber*, the Court determined that a defendant was, in response to a Rule 34 request,

10  obligated to make inquiry and produce records "from the several telecommunications companies,

11  financial institutions, and governmental agencies with which he, his various business enterprises,

12  and his counsel have dealings." *Id*. at 189.  It was not enough to object and claim such documents

13  were not in his possession, as Rule 34 requires a reasonable inquiry into the factual basis of a

14  response. *Id*. at 190.  Hence, Defendants were ordered to make further inquiry, declare the nature of

15  that inquiry, and verify responses to requests for production under Rule 26(g).

16      In *In re Legato Systems* Magistrate Judge Richard Seeborg determined that a defendant had

17  to produce a deposition transcript which he could request from the S.E.C. *See* 204 F.R.D at 170.

18  The responding party in *In re Legato Systems* had control of the transcript through his ability to

19  request a copy through 17 C.F.R. §203.6, and thus had to produce it. *Id*.  Judge Seeborg rejected the

20  "restrictive interpretation" of control offered by the responding party as not supported by precedent,

21  noting that control in other cases encompassed "the legal right to *endeavor* to obtain" the

22  documents.[7]  *Id*., at 169; quoting *In re Woolworth Corp. Securities Class Action Litigation*, 166

23  F.R.D. 311, 313 (S.D.N.Y. 1996).

24  _____

25  [7]  Judge Seeborg did note in discussion other cases from this circuit that control was not as likely
    where the party "seeking materials could request them directly from the entity possessing the
26  documents." *See In re Legato*, supra, at 170.  But that issue is not settled.  See *A. Farber*, supra, 234
    F.R.D. 186.

27

28

VERIGY'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM STS,
INC. IN RESPONSE TO 4TH SETS OF REQUESTS FOR PRODUCTION          C07 04330 RMW (HRL)

1    **1.    Production of the STS LLC Bank Records Should be Compelled.**

2    Here, Request No. 81 seeks any "receipt, bank statement, cancelled check" showing any

3    purchase "made at bookfactory.com between May 2006 and January 2007." Verigy is entitled to

4    these records because they will reveal when Mayder bought the fabricated inventor's notebook that

5    purportedly contains his work from the days immediately after he left Verigy in September 2006.

6    At a recent deposition, Mayder confirmed he had not asked his bank for the records relating to STS

7    LLC, the predecessor to STS, Inc. (McCarthy Decl. at Ex. D [Mayder Depo. at 35:2-10; 36:5-11].)

8    Defendants here should be compelled to ask Wells Fargo (and any other financial institution Mayder

9    used for any STS business) to provide them with the records and immediately hand them over to

10   Verigy.

11   **2.    The Documents Identified by the Special Master Should be Produced.**

12   Request No. 82 seeks documents which the special master appointed by the court to examine

13   Mayder's "overwritten" hard drive back in the Fall of 2007 has already identified. They are in the

14   special master's possession and Defendants' counsel could easily request that he produce them to

15   Defendants who should then immediately turn them over to Verigy. Again, all these documents

16   have creation dates prior to September 22, 2006 (the day after Mayder left Verigy) and are relevant

17   to the misappropriation issues. (*See* McCarthy Decl. at Ex. A to Document Request [Special

18   Master's report].)

19   **V.    CONCLUSION**

20   Defendants have waived any attorney-client privilege or work product protection with

21   respect to the documents described in Requests Nos. 54 through 69 and 71, they should be required

22   to produce all responsive documents in their possession, custody, or control, including any

23   documents that would otherwise be protected from disclosure by the attorney-client privilege and/or

24   the work product doctrine. Defendants should also be compelled to produce documents responsive

25   to Request Nos. 81 and 82 in their possession, custody or control.

26   Dated: September 10, 2008                    BERGESON, LLP

27                                               By:_____/s/_____
                                                     Melinda M. Morton

28                                               Attorneys for Plaintiff, VERIGY US, INC.

- 25 -