| | |
|---|---|
| 1  JACK RUSSO (State Bar No. 96068)<br>    TIM C. HALE (State Bar No. 114905)<br>2  JOHN KELLEY (State Bar No. 100714)<br>    RUSSO & HALE LLP<br>3  401 Florence Street<br>    Palo Alto, CA 94301<br>4  Telephone: (650) 327-9800<br>    Facsimile: (650) 327-3737<br>5  Email: jrusso@computerlaw.com<br>              thale@computerlaw.com<br>6             jkelley@computerlaw.com<br>7  Attorneys for Defendants and Counterclaimants<br>    ROMI MAYDER, SILICON TEST SYSTEMS, INC.,<br>8  SILICON TEST SOLUTIONS LLC, and WESLEY<br>    MAYDER | **PUBLIC VERSION** |

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC., a Delaware Corporation,<br><br>                   Plaintiff,<br><br>             v.<br><br>ROMI MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>                   Defendants. | Case No. 5:07-cv-04330-RMW (HRL)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO VERIGY US, INC.'S MOTION FOR SUMMARY ADJUDICATION ON ITS THIRD AND EIGHTH CLAIMS FOR RELIEF**<br><br>**Before: Judge Ronald Whyte**<br>Ctrm:   6<br>Date:    October 3, 2008<br>Time:   9:00 a.m.<br><br>Complaint Filed: August 22, 2007<br>Trial Date: December 8, 2008 (jury trial)<br>(Defendants have elected to reserve their jury trial rights under F.R.C.P., Rule 38) |
| AND RELATED COUNTERCLAIMS. | |

Contains Material Designated

**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**

Under Stipulated Protective Order

Document Filed Under Seal

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**     **Case No. 5:07-cv-04330-RMW (HRL)**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

    I.    MATERIAL DISPUTES OF FACT PREVENT SUMMARY AJUDICATION ON VERIGY'S BREACH OF LOYALTY CLAIM............................................................................................ 1

        A.    Much of What Verigy Complains of Are Permissible Actions ....................................... 3

        B.    Verigy's Case Law is Distinguishable............................................................................. 4

    II.    VERIGY IS NOT ENTITLED TO SUMMARY ADJUDICATION ON ITS CFAA CLAIM ................................................................ 6

        A.    Verigy's Motion Fails to Identify the Prong of the CFAA It Claims Was Violated ................................................................................................................... 7

        B.    Even if the Court and Parties Could Identify the Appropriate Subsection of the CFAA, Verigy Has Failed to Provide Proof As to the Elements of Any of the Appropriate Subsections .................................................................................. 7

            1.    Verigy Cannot Show a Violation 18 U.S.C. §1030(a)(5)................................................ 7

            2.    Verigy Has Not Proven a Violation of Subsection U.S.C. §1030(a)(4) ........................... 8

            3.    The "Without Authorization" Element of a CFAA Claim Should be Construed in Accordance With the Express Language of the Statute. At a Minimum, There Exists a Material Dispute as to Whether Defendants Acted "Without Authorization" That Precludes Summary Adjudication............................................ 9

                a. The Better-Reasoned Case Law Rejects Verigy's Interpretation of "Without Authorization" ............................................................................ 9

                b. There is at Least a Material Dispute Regarding Whether Mr. Mayder Ever Acted "Without Authorization" ............................................................. 12

CONCLUSION ................................................................................................................................. 14

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**    i    Case No. 5:07-cv-04330-RMW (HRL)

# TABLE OF AUTHORITIES

**Cases (Federal)**

*Am. Computer Trust Leasing v. Jack Farrell Implement Co.*
   763 F.Supp.1473,1475 (D. Minn. 1991) .................................................................................. 10

*Brett Senior & Assocs., P.C. v. Fitzgerald*
   2007 U.S. Dist. LEXIS 50833 (E.D. Pa. July 13, 2007) ....................................................... 9-10

*Diamond Power Int'l, Inc. v. Davidson*
   540 F.Supp.2d 1322 (N.D. Ga. 2007) ................................................................................. 10-11

*Iconix, Inc. v. Tokuda*
   457 F.Supp.2d 969 (N.D. Cal. 2006) ......................................................................................... 5

*Int'l Airport Ctrs., L.L.C. v. Citrin*
   440 F.3d 418, 420-421 (7th Cir. 2006) ..................................................................................... 11

*Int'l Ass'n of Machinists and Aerospace Workers v. Werner-Matsuda*
   390 F.Supp.3d 479,499 (D. Md. 2005) ............................................................................... 10, 11

*Lockheed Martin Corp. v. Speed*
   81 U.S.P.Q. 2d 1669 (M.D. Fla. 2006) .................................................................................... 10

*MPC Containment Systems, Ltd. v. Moreland*
   2008 U.S. Dist. LEXIS 60546 (N.D. Ill. Jul. 23, 2008) ........................................................... 12

*Otsuko v.Polo Ralph Lauren Corp.*
   2007 U.S. Dist. LEXIS 86523 (N.D. Cal. Nov. 9, 2007) ........................................................... 5

*Secureinfo Corp. v. Teloscorp*
   387 F.Supp.2d 593 (E.D. Va. 2005) ......................................................................................... 10

*Shamrock Foods Co. v. Gast*
   535 F.Supp.2d 962,963-64 ....................................................................................... 6, 9, 11, 12

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*
   119 F. Supp.2d 1121, 124-25 (W.D. Wash.2000) .................................................................... 11

*U.S. v. Czubinski*
   106 F.3d 1069, 1078 (1st Cir. 1997) ........................................................................................... 9

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**          ii          **Case No. 5:07-cv-04330-RMW (HRL)**

Case 5:07-cv-04330-RMW    Document 325    Filed 09/12/2008    Page 4 of 18

1 | *ViCHIP Corp. v. Lee*
2 |     438 F.Supp.2d 1987 (N.D. Cal. 2006) ................................................................... 7-8, 10, 11

**Cases (State)**

*Bancroft-Whitney Co. v. Glen*
    64 Cal.2d 327, 346 (1966) ........................................................................................... 3, 6

*Fowler v. Varian Associates, Inc.*
    196 Cal.App.3d 34 (1987) ................................................................................................ 6

*Huong Que, Inc. v. Luu,*
    150 Cal.4th 400 (2007) ..................................................................................................... 5

*Stokes v .Dole Nut Co.*
    41 Cal.App.4th 285 (1995), ........................................................................................... 5-6

**Statutes**

18 U.S.C. §1030 et seq.................................................................................................... 1, 6-14

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**     iii     **Case No. 5:07-cv-04330-RMW (HRL)**

# INTRODUCTION

Plaintiff Verigy US, Inc.'s ("Verigy") motion for summary adjudication is as to its Third (Computer Fraud and Abuse Act) and Eighth (Breach of Duty of Loyalty) claims for relief. In both cases, however, Verigy has failed to provide the proper evidentiary support to prevail on its motion, and material disputes of fact exist as to key elements in each of the two claims. For these reasons, summary adjudication as to both claims must be denied.

# ARGUMENT

## I. MATERIAL DISPUTES OF FACT PREVENT SUMMARY ADJUDICATION ON VERIGY'S BREACH OF LOYALTY CLAIM.

Contrary to Verigy's argument, material disputes of fact exist that preclude the granting of summary adjudication as to Verigy's breach of duty of loyalty claim against Romi Mayder. While there is no dispute that Mr. Mayder worked for Verigy, and in his status as an employee thereof owed Verigy a duty of loyalty, there is a substantial dispute that he ever breached that duty of loyalty, and that issue should be for the jury to decide. In that regard, all of the following facts are true:

1. Romi Mayder was told in May of 2006 that Verigy was stopping the ▮▮▮▮ project, including the ▮▮▮▮ aspect of that project, and that Verigy had decided not to enter the market for resource sharing probe cards. *See* Declaration of Romi Mayder in Opposition to Motion for Summary Adjudication of Breach of Duty of Loyalty and CFAA Claims ("R. Mayder Declaration") at ¶16.

2. At no time was Romi Mayder told by anyone at Verigy that the reason Verigy was not pursuing resource sharing probe cards was because it was concerned that doing so would undermine the market for its large-scale semiconductor chip testers. Romi Mayder simply understood that Verigy was no longer interested in the market and the technology as of the time he started to take actions to set up STS. *Id.*

3. Prior to Verigy's decision to shelve the ▮▮▮▮ project, and while the ideas were being pursued at Agilent before the spin-off of Verigy, most of the ▮▮▮▮ documents, including the ▮▮▮▮ data sheet, were provided to Straube and Associates by Agilent employee Andy Lee without any confidentiality designation. R. Mayder Decl. at ¶¶15-16, Exhibt L thereto.

4. The contents of the ▮▮▮▮ data sheet were provided by Thomas Ramanko of Honeywell, not by Verigy. Mr. Mayder understood the data sheet to include publicly available information, not confidential information of Verigy. R. Mayder Decl. at ¶9.

5. Mr. Mayder did not understand the documents he is accused of misappropriating as constituting trade secrets or the confidential information of Verigy. Mr. Mayder checked the

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Opp. to Verigy MSA re 3rd, 8th Claims   1   Case No. 5:07-cv-04330-RMW (HRL)

1  documents on his computer to see if they were marked confidential, and they were not. Mr.
2  Straube's testimony supports Mr. Mayder's understanding as well. R. Mayder Decl. at ¶¶20-21.

3        6.     Mr. Mayder did not email himself any of the applicable documents for nefarious
reasons. He often worked at home, with his employer's blessing, and so would send documents he
4  was working on to his Yahoo! email account so that he could access them from home. R. Mayder
Decl. at ¶¶12, 19, 22.
5

6        7.     At no time after starting at Verigy, which was effectively in business as of June 1,
2006, did Mr. Mayder access the Verigy "e-room" where Verigy's confidential information was
7  kept. R. Mayder Decl. at ¶17-18.

8        8.     Mr. Mayder had maintained a real estate broker's business for six years while
working at Agilent, with Agilent's knowledge and consent. R. Mayder Decl. at ¶27.
9

10        9.     Mr. Mayder at no time believed he was taking actions inimical to the best interests
of Verigy in starting STS. He understood Verigy to not be interested in pursuing the resource
11  sharing probe card market and had no understanding that his doing so would harm Verigy. R.
Mayder Decl. at ¶16.
12

13        10.   During Mr. Mayder's exit interview, he informed his boss, Mr. Singh, that he
intended to start his own company. During that same exit interview, Mr. Mayder's boss asked that
14  they identify a list of those projects that Verigy would consider sensitive and confidential. That
list did not include the ▮▮▮▮ project, or anything to do with ▮▮▮▮▮▮▮. R. Mayder Decl. at ¶26,
15  Ex. P thereto.

16        11.   Mr. Mayder did not consider the information related to ▮▮▮▮▮▮ to be
confidential. He understood it to include publicly available information and information provided
17  by Honeywell, not information proprietary to Verigy or from Verigy's customers. R. Mayder
Decl. at ¶¶9, 21. At the time he was working on ▮▮▮▮ and ▮▮▮▮▮▮, Mr. Mayder was aware of
18  and familiar with resource sharing probe card technology from FormFactor, called TRE. R.
Mayder Decl. at ¶16.
19

20        12.   Within days after leaving Verigy, Mr. Mayder installed a new hard drive on his
computer at home so that he would no longer have possession of any of the Agilent or Verigy
21  documents that he had previously worked on. R. Mayder Decl. at ¶¶17, 30.

22
23        13.   Mr. Mayder never understood or believed that he was forming a "competing"
company to Verigy. He believed that the technology, if anything, was complementary, but not
24  competitive to Verigy's interests. R. Mayder Decl. at ¶16.

25        14.   A substantial dispute exists as to whether there is any confidential information of
Verigy's reflected in the ▮▮▮▮ and ▮▮▮▮▮▮▮ documents that Mr. Mayder used at the beginning
26  of his activities in forming STS. *See* Declaration of Richard Blanchard in Support of Motion for
Summary Adjudication as to Verigy's Trade Secret Misappropriation Claim and in Opposition to
27  Verigy's Motion for Summary Adjudication as to its Loyalty and CFAA Claims ("Blanchard
Decl.").
28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**    2    **Case No. 5:07-cv-04330-RMW (HRL)**

Verigy cites to a number of cases where an employee was sued for breach of duty of loyalty, or where such breach was used as a defence by the employer to employee claims, to support its summary adjudication motion on the Eighth Claim for Relief. Motion at 14-15. Each of these cases is distinguishable from the case at bar, as addressed below. Further, much of what Verigy asserts as factual support for its Motion are either actions that are permissible under the law, or actions where there is at least a material dispute as to the import, frame of mind, or meaning of the action sufficient to preclude the granting of Verigy's Motion.

### A.    Much of What Verigy Complains of Are Permissible Actions

Verigy's Motion as to its Eighth Claim for Relief is premised on the notion that any actions by an employee to start his own business while still employed are illegal. Verigy cites to Mr. Mayder's having set up a website, and having pursued a relationship with Mr. Pochowski and with Honeywell while employed by Verigy as examples of Mr. Mayder's so-called illegal activities. Motion at 11. Such activities, however, are not illegal under California law.[1] "The mere fact that an officer makes preparations to compete before he resigns his office is not sufficient to constitute a breach of duty. It is the nature of the preparations which is significant." *Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 346 (1966). Nor does the law require full disclosure by an employee of any competing plans. *Id.* at 347.

As a first matter, there is a substantial dispute in this action as to whether Mr. Mayder's actions were in any way involved in setting up a "competing" business. But as *Bancroft-Whitney* states, even preparations for competing businesses do not signify a breach of duty of loyalty as Verigy would have it. Mr. Mayder undertook actions that were normal, were made public, not hidden, for setting up his new business. His business was aimed at technology that he had just been told Verigy had absolutely no interest in pursuing. While he understood that Verigy made the decision that it would not be economically feasible to continue work in the probe card resource sharing market, he viewed that as related to resource allocation and fear the market was too

---

[1] As discussed herein, Verigy also attempts to characterize Mr. Mayder's emailing himself documents to his Yahoo email account as somehow reflective of illegal conduct. Motion at 12-13. As Mr. Mayder has explained, all such emailing was for purposes of carrying out his duties for Agilent, not for purposes of furthering his personal interests.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**     3     **Case No. 5:07-cv-04330-RMW (HRL)**

1  crowded already; ████████████████████████████████████
2  ████████████████████████████████████████████████████
3  ████████████████████████████████, Exh. Q thereto. ███████████████
4  ████████████████████████████████████████████████
5  ████████████████████████████

6      Further, not all actions by employees are "inimical" to their employer's best interests, even
7  if they are not taken to further those interests.  Agilent and Verigy permitted Mr. Mayder to
8  maintain his Century 21 real estate business while employed there.  R. Mayder Decl. at ¶27.
9  Similarly, where an employee makes preparations for starting a business that is not in fact
10 competitive with the business of his employer, where is the failure to serve the employer's best
11 interests?  While Verigy has engaged in hand-waiving regarding Mr. Mayder's having sent a
12 smattering of emails, allegedly during his work day (Motion at 11), that issue, too, is immaterial
13 dispute, in that Mr. Mayder often would do so during his lunch hour.  R. Mayder Decl. at ¶¶12, 19
14 22.

15     Where, as here, there is a substantial, material dispute of fact as to the reasons why Verigy
16 exited the probe card market, as to Mr. Mayder's understanding of those reasons, as to whether
17 Verigy ever had confidential information that was misused, or treated such information as
18 confidential, and as to whether Mr. Mayder engaged in any competitive activity truly inimical to
19 Verigy's best interests, summary adjudication would be improper.  The jury should have the right
20 to decide whether a large public company like Verigy should be able to abandon a technology and
21 then turn around and sue an employee who sees a need for that technology in the marketplace.
22 This is not a proper matter for summary adjudication.

23     **B.    <u>Verigy's Case Law is Distinguishable.</u>**

24     The few cases cited by Verigy are readily distinguishable.  In each of those cases, there
25 was no material dispute that the employee was entering a competing business, and certainly no
26 instance where the employer had evidenced its disinterest in the so-called competing business, as
27 here.
28

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**      4        **Case No. 5:07-cv-04330-RMW (HRL)**

In *Huong Que, Inc. v. Luu*, 150 Cal.4th 400 (2007), a husband and wife sold their small calendar distribution business to plaintiff, and as part of the purchase and sale agreement, agreed to continue to function as managing agents for the business for a period of four years. *Id.* at 404-05. After entering into the agreement, however, the defendants began collecting the customer list information from their prior business so as to compete directly with the new owner of said prior business. No contention was raised that the defendants were not in fact establishing a competing business. Here, as described above, there is ample dispute as to whether Mr. Mayder's actions were ever connected with setting up a competing business, unlike in *Huong*.

Similarly, in *Iconix, Inc. v. Tokuda*, 457 F.Supp.2d 969 (N.D. Cal. 2006) the defendants were ex-employees who while employed by plaintiff corporation began developing a customizable slide show feature that could be used in plaintiff's website business. *Id.* at 974. At the time of such development, and after the defendants' tendered their resignations, the plaintiff "continued to evaluate the feature and began to test it as a marketing strategy…." *Id.* That is, unlike here, where Verigy determined to abandon its efforts to go into the probe card resource sharing market, the plaintiff in *Iconix* continued to actively pursue the technology at issue. Thus, unlike here, there was no issue as to whether the defendants were acting or not acting in the best interests of their prior employer.

The case of *Otsuko v. Polo Ralph Lauren Corp.*, 2007 U.S. Dist. LEXIS 86523, at *4 (N.D. Cal. Nov. 9, 2007) is completely factually distinguishable. There, an employee created fictitious customer names so as to allow non-employees to use his employee discount to obtain Ralph Lauren Polo clothing for less than retail price. These facts were not disputed, but instead the defendant argued that legally as a lower-level employee he could not be sued for breach of fiduciary duty. *Id.* Here, in contrast, whether there was any breach of the duty of loyalty by Mr. Mayder is hotly disputed.

In *Stokes v. Dole Nut Co.*, 41 Cal.App.4th 285 (1995), the court specifically distinguished its ruling from that in *Bancroft-Whitney*, finding that the minimum standard for determining what conduct crosses the line for purposes of holding an employee liable in tort is not the same as determining when an employee's conduct serves as a basis for discharge by the employer. *Id.* at

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**      5      **Case No. 5:07-cv-04330-RMW (HRL)**

293-94. Further, there was no dispute in *Stokes* that the new business being formed by a group of employees was directly competitive with their employer's business. The employer, Dole, processed nuts; the employees took steps to start an almond-processing plant directly competitive to Dole. *Id.* at 293. As noted, the court there held that the issues before it were not within the coverage of the *Bancroft-Whitney* doctrine; similarly, the case at bar is not one where the ex-employee has brought a claim for wrongful discharge and the employer has used pre-termination activities as a basis for the discharge. The case is inapposite.

Similarly, in *Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34 (1987), the employee brought a claim for wrongful discharge. The employer terminated him because of his involvement with a *direct competitor* of his employer's that wanted to invest in a new, competitive business. The employee, a manager, was discharged for failing to answer direct questions about his dealings with the competing business. *Id*. at 43. In contrast, there is no issue in the instant case of a refusal by Mr. Mayder to disclose, and the issue of whether his activities in any way were inimical to the best interests of Verigy is a disputed fact, at best.

None of the case law cited by Verigy in its Motion presents the issues in dispute in this action. None of the defendants in these cases raised a dispute as to whether their actions truly were competitive with those of their employer, or truly inimical to the best interests of the employer. In the case at bar, there are substantial factual disputes over issues of competition, best interests and the state of mind of Mr. Mayder in taking the actions he did, precluding summary adjudication.

## II. VERIGY IS NOT ENTITLED TO SUMMARY ADJUDICATION ON ITS CFAA CLAIM.

Verigy's Third Claim for Relief is for alleged violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. Section 1030 *et seq.* The CFAA is a complex statute, with multiple bases upon which a claim may be brought, but with each basis requiring different elements of proof. *Shamrock Foods Co. v. Gast*, 535 F.Supp.2d 962, 963-64 (D. Az. 2008) (the CFAA identifies seven different sets of activities that can constitute a violation). As addressed in detail

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**          6          **Case No. 5:07-cv-04330-RMW (HRL)**

below, Verigy has either failed to adduce any evidence of required factual elements, or a material dispute as to one or more elements exists precluding the granting of summary adjudication.

### A. Verigy's Motion Fails to Identify the Prong of the CFAA It Claims Was Violated.

Although the CFAA is a complex statute with multiple prongs upon which a claim may be based, Verigy's motion for summary adjudication completely fails to identify the prong or basis upon which it is bringing its motion. A review of Verigy's Third Claim for Relief in its complaint in this action reveals a similar failure on Verigy's part to identify the basis for its claim. This failure to even identify the particular subsection upon which it is moving demands the denial of its motion, since there is no way to adequately test the elements of the claim against the evidence adduced by Verigy.

### B. Even if the Court and Parties Could Identify the Appropriate Subsection of the CFAA, Verigy Has Failed to Provide Proof As to the Elements of Any of the Appropriate Subsections.

Even if the Court were to attempt to determine which prong of the CFAA Verigy is attempting to rely upon, Verigy cannot provide the necessary proof, as a matter of law. When the potential applicable prongs/subsections are reviewed, Verigy has shown that it cannot meet its burden as to any such basis.

#### 1. Verigy Cannot Show a Violation of 18 U.S.C. §1030(a)(5).[2]

Arguably Verigy is attempting to obtain summary judgment on a claim brought under 18 U.S.C. §1030(a)(5), in that Verigy cites to that subsection of the CFAA, and relies upon the case of *ViCHIP Corp. v. Lee*, 438 F.Supp.2d 1987 (N.D. Cal. 2006) in setting forth the elements of the

---

[2] The CFAA contains a number of subsections that address violations that certainly are not at issue in this case. Subsection (a)(1) deals with accessing a computer and obtaining government information related to national defense; that is not at issue here. Subsection (a)(2) deals with accessing a computer and obtaining information about a financial institution, about the United States government, or in connection with a communication that was through interstate or foreign means; none of these requirements or elements are at issue or have been alleged by Verigy. Subsection (a)(3) again deals with accessing a government computer, not at issue here. Subsection (a)(6) deals with trafficking in the sale of passwords, not an issue in this action. And lastly, Subsection (a)(7) addresses threats to damage a protected computer, again a fact not at issue in this litigation. As such, a CFAA claim under any of these subsections is not remotely viable.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Opp. to Verigy MSA re 3rd, 8th Claims    7    Case No. 5:07-cv-04330-RMW (HRL)

claim, a case brought under this particular subsection. Motion at 16. Unlike in *ViCHIP*, however, Verigy cannot make the evidentiary showing for such a claim.

Subsection (a)(5)(i) makes it a violation for a person to "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes *damage* to a protected computer." (Emphasis added). In *ViCHIP*, the defendant deliberately destroyed information in the plaintiff's computer system and installed software to permanently delete any traces of defendant's actions. *ViChip*, 438 F.Supp.2d. at 1100. Under the facts of that case, a subsection (a)(5)(i) claim was made out, because the plaintiff could show "damage." Verigy cannot.

While Verigy has raised an issue of what constitutes "loss" under the CFAA, it has failed to address the definition of "damage." Under subsection (e)(8) of the CFAA, the term "damage" means "any impairment to the integrity or availability of data, a program, a system, or information." That is, unlike with the term "loss," which the courts have interpreted broadly, a finding of "damage" requires actual destruction or deletion of information, files or computer systems, by the statute's express terms. But Verigy does not present any evidence, because it has none, of any such "damage" being caused by any of the Defendants. Thus, a subsection (a)(5) claim fails as a matter of law.

**2.    Verigy Has Not Proven A Violation of Subsection 18 U.S.C. §1030(a)(4).**

Other than subsection (a)(5), addressed above, the only other possible subsection under which Verigy could be moving for summary adjudication is subsection (a)(4).[3] Verigy, however, has failed to present evidence as to a number of the elements of such a claim, and in that regard is not entitled to summary adjudication thereon.

Subsection (a)(4) makes it a CFAA violation when someone "knowingly *and with intent to defraud* accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and *obtains anything of value*…." (Emphasis added). Verigy has failed to advance evidence in its summary adjudication motion to address

---

[3] Paragraph 52 of Verigy's complaint suggests that Verigy was attempting to plead such a claim, although it did so in a completely conclusory manner and without proper factual averments, even under a notice-pleading approach.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**    8    Case No. 5:07-cv-04330-RMW (HRL)

either of the italicized elements of this claim.  First, despite its complaint speaking to Defendants' acting "knowingly and with intent to defraud," Verigy has not even addressed the issue of intent to defraud in its Motion and certainly has presented no evidence of intent to defraud on the part of any of the Defendants.

Second, despite Verigy's asserting that the information being accessed need not be "confidential," a violation of subsection (a)(4) requires a showing that the Defendants obtained something "of value."  *United States v. Czubinski*, 106 F.3d 1069, 1078 (1st Cir. 1997).  Verigy's Motion, however, never attempts to offer any proof of this element of the claim.  Thus, Verigy's Motion ignores two of the required elements of a subsection (a)(4) violation, and its Motion must be denied as to the CFAA claim.

    **3.**    **The "Without Authorization" Element of a CFAA Claim Should be Construed in Accordance With the Express Language of the Statute.  At a Minimum, There Exists a Material Dispute as to Whether Defendants Acted "Without Authorization" That Precludes Summary Adjudication.**

Verigy's argument for Defendants having acted "without authorization" in accessing any Verigy computers or information, a required element of any subsection (a) claim, is based solely upon the assertion that Defendant Romi Mayder allegedly breached his duty of loyalty to Verigy, such that his otherwise undisputed authority to access the Verigy computer system automatically terminated.  Motion at 17-20.  This argument fails for both legal and factual issues, and there is at a minimum a material dispute as to whether Mr. Mayder accessed any Verigy computer "without authorization" even under the law that Verigy relies upon.

    **a.**    **The Better-Reasoned Case Law Rejects Verigy's Interpretation of "Without Authorization."**

First, Verigy cites to a handful of cases, including one from this District, for the legal proposition that a breach of duty of loyalty acts to terminate any authorization that an employee had to access his employer's computer system.  Motion at 17-19.  This line of cases, however, has been criticized in other jurisdictions, and certainly has not been accepted by the Ninth Circuit. That is, *ViCHIP* and each of the other cases cited by Verigy interpret "without authorization" to relate to unauthorized access, not unauthorized use, but this approach has been flatly rejected elsewhere.  *See*, *e.g., Shamrock Foods*, 535 F.Supp.2d at 963-967; *Brett Senior & Assocs., P.C. v.*

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Opp. to Verigy MSA re 3rd, 8th Claims    9    Case No. 5:07-cv-04330-RMW (HRL)

*Fitzgerald*, 2007 U.S. Dist. LEXIS 50833 (E.D.Pa. July 13, 2007); *Diamond Power Int'l, Inc. v. Davidson*, 540 F.Supp.2d 1322 (N.D. Ga. 2007); *Lockheed Martin Corp. v. Speed*, 81 U.S.P.Q.2d 1669 (M.D. Fla. 2006); *Secureinfo Corp. v. Teloscorp*, 387 F.Supp.2d 593 (E.D. Va. 2005); *Int'l Assoc. of Machinists and Aerospace Workers v. Werner-Matsuda,* 390 F. Supp.2d 479, 499 (D. Md. 2005); *Am. Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F.Supp. 1473, 1475 (D. Minn. 1991).

The court in *Brett* addressed the "without authorization" language of the CFAA statute and rejected the position espoused by Verigy:

> The CFAA defines "exceeds authorized access" as accessing "a computer with authorization" and using "such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Id.* § 1030(e)(6). By its plain terms, this definition does not apply to Fitzgerald's conduct. He did not obtain any information that he was not entitled to obtain or alter any information that he was not entitled to alter. As Senior testified at his deposition, Fitzgerald was allowed full access to information contained in the BSA computer system until his departure.

*Brett*, 2007 U.S. Dist. LEXIS 50833 at *9. Rather, the access, in order to be unlawful under the CFAA, has to be tantamount to trespass, as confirmed by the statute's legislative history. *Id.* at *10; *see also Werner-Matsuda*, 390 F.Supp.2d at 495-96 (CFAA was enacted to create liability by computer hackers, citing to S. Rep. No. 99-432). To read the statute otherwise would be to construe it as prohibiting unauthorized *use*, not unauthorized access, and as a criminal statute, it must be read narrowly so as not to criminalize garden-variety torts. *Brett*, 2007 U.S. Dist. LEXIS 50833 at *12. Moreover, Verigy's interpretation would run afoul of other legislative history relating to the CFAA statute:

> First, in looking to the use to which an employee is permitted to put information, the cases often make the existence of a confidentiality or non-compete agreement dispositive of liability under the CFAA. It is unlikely that Congress, given its concern "about the appropriate scope of Federal jurisdiction" in the area of computer crime, intended essentially to criminalize state-law breaches of contract. S. Rep. 99-432, at 3 (1986).

*Id.* at *13.

The court in *Diamond Power* even more strongly rejected the reasoning of *Citrin* and *Shurgard* (see below). While first noting the split of authority about "without authorization," the

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**   10   **Case No. 5:07-cv-04330-RMW (HRL)**

court found that the reasoning of these cases (and by definition, *ViCHIP*) ignores both the plain meaning and statutory interpretation rules:

> In the Court's view, the latter line of cases provides the more correct interpretation of the phrase "without authorization" in the CFAA. Defining "authorization" based upon the use of computer information, rather than upon the presence or absence of initial permission to access the computer, is in tension with both a plain reading of the Act and the manner in which the term "authorization" is used in other parts of the Act. Most prominently, it is inconsistent with the Act's use of the term "authorization" in its definition of "exceeds authorized access."
> See 18U.S.C.§1030(e)(6).
>
> Section 1030(e)(6) defines "exceeds authorized access" as "to access a computer *with authorization* and to *use such access* to obtain or alter information in the computer *that the accesser is not entitled so to obtain or alter.*") (emphasis added). Thus, Section 1030(e)(6) contemplates that an "exceeds authorized access" violation occurs where the defendant first has initial "authorization" to access the computer. But, once the computer is permissibly accessed, the use of that access is improper because the defendant accesses information to which he is not entitled. Under *Citrin* and *Shurgard*, however, that distinction is overlooked. Under their reasoning, an employee who accesses a computer with initial authorization but later acquires (with an improper purpose) files to which he is not entitled--and in so doing, breaches his duty of loyalty--is "without authorization," despite the Act's contemplation that such a situation constitutes accessing "with authorization" but by "exceed[ing] authorized access." 18 U.S.C. § 1030(e)(6). The construction of *Citrin* and *Shurgan* [sic] thus conflates the meaning of those two distinct phrases and overlooks their application in § 1030(e)(6).

*Id.* at 1341-42.

Similarly, the court in *Shamrock Foods* followed the rationale of the *Werner-Matsuda* court in finding that principles of statutory construction also favored the more narrow reading of "without authorization." Those courts noted that the CFAA was amended in 1986 to substitute the language "exceeds authorized access" for the phrase "or having accessed a computer with authorization, uses the opportunity such access provides for purposes to which such authorization does not extend." *Shamrock Foods*, 535 F.Supp.2d at 966. Such amendment's intent was to "eliminate coverage for authorized access that aims at `purposes to which such authorization does not extend.'" *Id.*, citing *Werner-Matsuda*, 390 F.Supp.2d at 499 n.12.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**     11     Case No. 5:07-cv-04330-RMW (HRL)

Finally, the broad reading of "without authorization" that Verigy advances violates the rules applying to statutes that have criminal components. Under the rule of lenity, where a court is confronted with two rational readings of a criminal statute, it may choose the harsher reading only where Congress has spoken in clear and definite language. *Shamrock Foods*, 435 F.Supp.2d at 966-67. The courts have noted that the broad interpretation urged by Verigy would turn a simple breach of contract claim involving a computer into a criminal statute, in violation of this principle. *Id.*

As admitted by Verigy, Mr. Mayder was fully authorized to access the material on the Verigy computers and could in no event be found to have trespassed upon that computer system. The Third Claim for Relief fails, and summary adjudication cannot be granted to Verigy thereon.

    **b. There is at Least a Material Dispute Regarding Whether Mr. Mayder Ever Acted "Without Authorization."**

Verigy's Motion as to its CFAA claim must be denied for an additional, factual reasons. First, as already established above, a material dispute of fact exists as to whether Mr. Mayder breached his duty of loyalty to Verigy. Since such alleged breach of duty of loyalty is the core of Verigy's position that Mr.Mayder acted "without authorization," then, per force, there must be a material dispute of fact as to the latter. *MPC Containment Systems, Ltd. v. Moreland*, 2008 U.S. Dist. LEXIS 60546, at *50-*51 (N.D. Ill. July 23, 2008).

Second, while Verigy assumes that it has shown unauthorized access based upon breach of a duty of loyalty, there is a material factual dispute as to exactly *when* Mr. Mayder obtained the materials that Verigy now claims he misappropriated, and consequently, whether there was ever any unauthorized access by Mr. Mayder to support a CFAA claim.

The facts show all of the following:

1. Mr. Mayder often worked from home, with the knowledge and permission of his employer at the time, Agilent Corporation, and would email himself documents to work on, including all of the documents that Verigy alleges were misappropriated by Mr. Mayder. *See* R. Mayder Decl. at ¶12; Declaration of Melinda M. Morton in Support of Verigy's Motion for Summary Adjudication Of Its 3rd and 8th Claims for Relief ("Morton Decl."), at Exh. A, pp. 212-215.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**  12  **Case No. 5:07-cv-04330-RMW (HRL)**

//

2. When Mr. Mayder would email himself documents while working at Agilent so that he could work on them at home, on weekends, and so forth, he would download them to his home computer, not a Verigy computer.  R. Mayder Decl. at ¶12.

3. Verigy kept its confidential documents, including the ones it has claimed Mr. Mayder misappropriated, in its "E-room" server files.  R. Mayder Decl. at ¶17.

4. Verigy was formed as of June 1, 2006.  Mr. Mayder never accessed any documents, confidential or otherwise, from Verigy's E-room server files after its formation.  R. Mayder Decl. at ¶17.

5. The earliest acts of alleged improper actions by Mr. Mayder of which Verigy has complained were in "early June, "or no earlier than June 8, 2006.  Motion at 11.

Thus, given these facts, it is more likely than not, and certainly there remains a triable issue, as to when Mr. Mayder accessed the computers to obtain the documents he is accused of misappropriating.  The CFAA requires accessing of a *computer* without authorization, not information.  If Mr. Mayder in fact accessed the documents he is accused of misappropriating while he had authority to do so at Agilent, sent them to his home computer, while working for Agilent, so as to work on them at home and on weekends, then at no time did Mr. Mayder access a computer without authorization.  If he at some point in June 2006 opened the files he had downloaded to his home computer, then he would not then, either, be improperly accessing a Verigy computer.  Thus, summary judgment as to the Third Claim for Relief should be granted in favor of Defendants, and denied as to Verigy's Motion.

## **CONCLUSION**

Romi Mayder was fully authorized to access Verigy's computers and related information system while working for Verigy and its predecessor, Agilent.  Verigy has admitted his authorized access, but has attempted to rely, improperly, upon attorney argument and its unverified pleading to support its assertion that Romi Mayder took valuable, proprietary trade secret information and misused it.  Verigy never adduced the evidence required to demonstrate the alleged breach of duty of loyalty or trade secret misappropriation.  Further, the better-reasoned case law rejects the

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

**Defs.' Opp. to Verigy MSA re 3rd, 8th Claims**        13        **Case No. 5:07-cv-04330-RMW (HRL)**

1  criminalization of actions that are already sufficiently addressed under state tort law, and Verigy's
2  attempt to charge Defendants with criminal conduct is heavy-handed, and should not be part of this
3  action. As such this motion for summary adjudication should be denied and the related claims for
4  relief should be dismissed with prejudice.

Respectfully submitted,

Dated: September 12, 2008        By:   /s/ Tim C. Hale_____

Jack Russo
Tim C. Hale
John Kelley

ATTORNEYS FOR DEFENDANTS & COUNTERCLAIMANTS ROMI MAYDER, WESLEY MAYDER, STS, LLC AND STS, INC.

RUSSO & HALE LLP
Palo Alto, California
www.computerlaw.com ℠

Defs.' Opp. to Verigy MSA re 3rd, 8th Claims    14    Case No. 5:07-cv-04330-RMW (HRL)