DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
DONALD P. GAGLIARDI, Bar No. 138979
dgagliardi@be-law.com
JOHN W. FOWLER, Bar No. 037463
jfowler@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff
VERIGY US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation<br><br>Plaintiff,<br><br>vs.<br><br>ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive,<br><br>Defendants.<br><br>AND RELATED CROSS ACTIONS | Case No. C07 04330 RMW (HRL)<br><br>**PRELIMINARY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR TRO**<br><br>Date: October 17, 2008<br>Time: 9:00 am<br>Ctrm.: 6<br>Judge: Hon. Ronald M. Whyte<br><br>Complaint Filed: August 22, 2007<br>Trial Date: None Set |

Plaintiff, Verigy US, Inc. ("Verigy") respectfully submits the following preliminary brief in opposition to Defendants' motion for a temporary restraining order. (*See*, Docket No. 329).

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION AND BACKGROUND**

Defendants have brought a regularly-noticed motion, on 35-days' notice, for partial summary judgment on Verigy's second claim for relief for misappropriation of trade secrets and on their first and second counterclaims. Within the same motion, Defendants have also sought a temporary restraining order (TRO) and preliminary injunction "to prohibit Verigy and others acting in concert with Verigy from falsely threatening any of STS Stakeholders [defined as "any and all actual or potential employees, contractors, stakeholders, vendors, customers, and lenders of STS"] with trade secret litigation." (Motion, at p.1 & n.1, *citing* Fed.R.Civ.P. 55). Although the TRO component of the motion is regularly-noticed, and it does not appear that Defendants have sought expedited or ex parte relief, Verigy is concerned that the Court might grant such relief prior to Verigy's opportunity to be heard on the matter and therefore submits this preliminary brief in opposition to the TRO aspect of the motion, only, and without prejudice to Verigy's right to submit further briefing in opposition to the entire motion in due course.

The motion for a TRO appears to be an afterthought, consuming a scant page-and-a-half of Defendants' 25-page motion. (*See,* Motion, at pp. 23-24). There is no factual basis shown for believing that Verigy may "falsely threaten" all of STS' Stakeholders with trade secret litigation, nor any basis for believing that there is an imminent likelihood of false threats in the absence of provisional relief from a federal court. And Defendants' failure to specifically seek expedited relief underscores the lack of any actual urgency or real threat. Moreover, the nature of the relief sought appears to be constitutionally-impermissible prior restraint of speech that would deny Verigy its right to access the courts. The TRO should be denied as ill-conceived and baseless.

**II.    STATEMENT OF ISSUES**

1.    Are Defendants entitled to a temporary restraining order prohibiting Verigy and others acting in concert with Verigy from falsely threatening any of STS Stakeholders (defined as

"any and all actual or potential employees, contractors, stakeholders, vendors, customers, and lenders of STS") with trade secret litigation?

### III. ARGUMENT

As mentioned above, Defendants have moved for a TRO and preliminary injunction "to prohibit Verigy and others acting in concert with Verigy from falsely threatening any of STS Stakeholders with trade secret litigation." (Motion at 1 & n.1, *citing* Fed.R.Civ.P. 65 ("Rule 65"); *see also*, Motion, at 23, 24 & n.20).

#### A. Defendants Have Not Met The Procedural Requirements for a TRO.

Defendants are required by Rule 65 and Local Rule 65-1 to give notice to Verigy of the TRO *or* to certify why notice should not be required. Here, Defendants have set a hearing date of October 17, 2008 for "a TRO and a preliminary injunction," but it is not clear whether Defendants intend October 17 to be the hearing date for the TRO, the preliminary injunction, or both. (*See*, Motion at 1.) Defendants have not offered any certification regarding notice, nor have they notified Verigy of any TRO hearing date in advance of the October 17, 2008 hearing.[1] As Defendants' application for a TRO is procedurally invalid, it should be denied on these grounds alone. Further, as it is unclear whether Defendants intend the Court to consider their application for "a TRO and a preliminary injunction" before the October 17, 2008 hearing on the remainder of their motion for summary judgment, Verigy respectfully requests a hearing and an opportunity to oppose any such TRO should the Court decide that an expedited decision is appropriate.

#### B. Defendants Have Not Shown A Need for a TRO.

Defendants contend that they "would suffer irreparable harm if the TRO . . . were not granted." (Motion, at p.24). But Defendants have made absolutely no showing whatsoever to support this assertion. Instead, they simply argue that "[s]o long as Verigy *is able to* intimidate STS Stakeholders from working with STS, STS will be deprived of operating revenue and will be unable to advance its goodwill in the marketplace." (*Id.*) (emphasis added). Defendants submit a

---

[1] Indeed, if Defendants intended to notice the TRO only for October 17, 2008 and have a preliminary injunction hearing later should the Court so order, such a 35 day delay would negate their claims of immediate and irreparable harm.

brief declaration containing hearsay testimony concerning one of Defendants' suppliers, but they do not offer any admissible evidence in support of irreparable harm. (*See* Mayder Decl. in Supp. for Mot. for TRO ("Mayder Decl."), ¶ 3) Further, Defendants do not offer *any* evidence that Verigy has contacted or threatened anyone concerning "obtaining investments," "hiring employees," "taking orders"[2] or "securing loans," or that Verigy has contacted "actual or potential employees," "contractors," "stakeholders," "customers" or "lenders of STS." (Motion at n.1, 24.) Thus, there is no imminent crisis to be abated with a TRO and no likelihood of irreparable harm to Defendants in the absence of one.

### C. The TRO Sought Amounts to An Improper Prior Restraint of Speech.

Further, the TRO sought by Defendants, despite the lack of any need for one, plainly amounts to a prior restraint of speech, which the U.S. Constitution forbids.

"Temporary restraining orders . . . – *i.e.,* court orders that actually forbid speech activities – are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993). "[I]n general, when a district court issues a TRO, it is to 'review factors such as the party's likelihood of success on the merits and the threat of irreparable injury,' but '(i)n the case of a prior restraint on pure speech, the hurdle is substantially higher: publication must threaten an interest more fundamental than the First Amendment itself.'" *County Security Agency v. Ohio Dept. of Commerce,* 296 F.3d 477, 485 (6th Cir. 2002), *quoting, Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996).[3] "'Any system of prior restraints of expression (bears) a heavy presumption against its constitutional validity,' and a party who seeks to have such a restraint upheld 'thus carries a heavy burden of showing justification for the imposition of such a restraint.'" *County Security Agency*, 296 F.3d at 485, *quoting, New York Times Co. v United*

---

[2] Verigy notes, however, that Defendants are prohibited from marketing, distributing or selling their product by the Court's February 29, 2008 Preliminary Injunction Order, so if Defendants are attempting to "tak[e] orders," they are in contempt of the Preliminary Injunction.

[3] The same standards apply in the Ninth Circuit. *See, Hunt v. National Broadcasting Co., Inc.*, 872 F.2d 289, 293 (9th Cir. 1989) ("A party seeking a preliminary injunction must demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips in its favor. . . . [Additionally, because] 'prior restraints on speech and publication are the most serious and the least tolerable

*States*, 403 U.S. 713, 714 (1971); *see also, Columbia Broadcasting Systems, Inc. v. U.S. District Court for Central District of California*, 729 F.2d 1174, 1183 (9th Cir. 1984) ("under our constitutional system, prior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances").

Here, a TRO which would restrain "Verigy . . . from falsely threatening any STS Stakeholders with trade secret litigation" (Motion, at p.23), is undeniably directed at anticipatorily curtailing Verigy's freedom of speech and is, as such, a prior restraint of such speech. Thus, as mentioned, Defendants bear a very heavy burden to show a threat to an interest more fundamental than the First Amendment to the U.S. Constitution. Defendants cannot do so. Indeed, they have not even tried to do so.

### D.  The TRO Sought is Prohibited by Cal. Civ. Code § 47(b).

Defendants' request for a "TRO and a preliminary injunction" improperly seeks to deny Verigy access to the Courts. California Civil Code § 47(b) provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. The privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212, 266 (1990). The principal purpose of Section 47(b) is to afford to litigants "the utmost freedom of access to the courts." (*Id.* at 213.) Here, Defendants seek to restrict such access.

"The litigation privilege unequivocally applies to communications to third parties with a substantial interest in the outcome of pending litigation." *Bylin Heating Systems, Inc. v. M&M Gutters, LLC*, No. 207CV-00505-FCD-KJM, 2008 WL 744706 at *4 (E.D. Cal. Mar. 18, 2008) (plaintiffs' communications to defendant's distributors informing them that a patent and trademark infringement suit had been filed against defendant and threatening litigation against them had sufficient connection or logical relation to the action against defendant to fall under the protection

---

infringement on First Amendment rights,' . . . those seeking to justify a prior restraint must satisfy a heavy burden.") (internal citations omitted).

4

1 of the litigation privilege, *citing Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056,
2 1077-78 (N.D. Cal. 2006). Even assuming, *arguendo,* that Mayder's declaration in support is
3 accurate, like *Bylin,* it concerns communications with a third party with a substantial interest in
4 this litigation, and therefore, any communications with that supplier would be protected by the
5 litigation privilege.
6     Accordingly, no TRO should issue, and no provisional injunctive relief of any sort should
7 be afforded to Defendants prior to a duly noticed hearing of their motion.

**IV.    CONCLUSION**

9     For the foregoing reasons, Verigy respectfully requests that the Court deny Defendants'
10 motion for a TRO and withhold any grant of provisional injunctive relief to Defendants before the
11 matter may receive a noticed hearing.

13 Dated: September 15, 2008        BERGESON, LLP

By:    /s/
    Melinda M. Morton

Attorneys for Plaintiff
VERIGY US, INC.