DANIEL J. BERGESON, Bar No. 105439
dbergeson@be-law.com
MELINDA M. MORTON, Bar No. 209373
mmorton@be-law.com
DONALD P. GAGLIARDI, Bar No. 138979
dgagliardi@be-law.com
JOHN W. FOWLER, Bar No. 037463
jfowler@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone:  (408) 291-6200
Facsimile:   (408) 297-6000

**PUBLIC VERSION**

Attorneys for Plaintiff
VERIGY US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC, a Delaware Corporation<br><br>                              Plaintiff,<br><br>        vs.<br><br>ROMI OMAR MAYDER, an individual;<br>WESLEY MAYDER, an individual; SILICON<br>TEST SYSTEMS, INC., a California Corporation;<br>and SILICON TEST SOLUTIONS, LLC, a<br>California Limited Liability Corporation,<br>inclusive,<br><br>                              Defendants.<br><br>_____<br><br>AND RELATED CROSS ACTIONS | Case No. C07 04330 RMW (HRL)<br><br>**VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC**<br><br>Date:   October 7, 2008<br>Time:  10:00 am<br>Ctrm.:  2, 5th Floor<br>Judge:  Hon. Howard R. Lloyd<br><br>Complaint Filed:      August 22, 2007<br>Trial Date:              None Set |

**PUBLIC VERSION OF HIGHLY CONFIDENTIAL**

**ATTORNEYS' EYES ONLY**

**DOCUMENTS SUBMITTED UNDER SEAL**

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT..................................................... 1

II.     FACTUAL BACKGROUND ........................................................................................ 2

III.    DISCOVERY IN DISPUTE ....................................................................................... 2

IV.     ARGUMENT ............................................................................................................ 8

        A.      Defendants Motion Must Be Denied Because Defendants Failed To Meet
                And Confer With Verigy Before Filing Their Motion To Quash. .......................... 8

        B.      Defendants' Motion To Quash Should Be Denied Because Defendants Have
                Waived The Attorney-Client Privilege And Any Work Product Protection
                With Respect To The Subject Matter Of Communications Between
                Defendants And Mount & Stoelker Disclosed In Romi Mayder's Declaration...... 9

                1.      Mayder's Voluntary Disclosures Of Otherwise Privileged
                        Communications With Mount & Stoelker Constitute A Waiver Of
                        The Attorney-Client Privilege As To All Other Communications On
                        The Same Subject Matter. ........................................................................ 10

                        a.      The Documents Sought Pursuant To The M&S Subpoena Are
                                Relevant To Important Issues In This Case. ................................. 10

                        b.      The Requests Are Appropriately Tailored To The Broad
                                Subject Matter Scope Of The Waiver. ......................................... 11

                2.      Mayder's Voluntary Disclosures Of Mount & Stoelker's Work
                        Product Waives Any Work Product Protection As To The Subjects Of
                        Such Opinions And Advice. ...................................................................... 15

V.      CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Aclara Biosciences, Inc. v. Caliper Technologies Corp.*
    2001 WL 777083 (N.D. Cal. June 16, 2000) .................................................................. 16

*Bittaker v. Woodford*
    331 F.3d 715 (9th Cir. 2003) ................................................................................. 13, 15

*Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.*
    237 F.R.D. 618 (N.D. Cal. 2006) .......................................................................... 13, 14

*Carter v. Gibbs.*
    909 F.2d 1450 (Fed.Cir. 1990) ................................................................................... 13

*Chinnici v. Central Dupage Hospital Association*
    136 F.R.D. 464 (N.D. Ill. 1991) .................................................................................. 12

*Electro Scientific Industries, Inc v. General Scanning, Inc.*
    175 F.R.D. 539, 543 (N.D. Cal. 1997) ................................................................... 14, 17

*Fort James Corp. v. Solo Cup Co.*
    412 F.3d 1340 (Fed.Cir. 2005) ............................................................................. 14, 16

*Greater Newburyport Claimshell Alliance*
    838 F.2d at 21-22 ....................................................................................................... 15

*In re Echostar Communications Corp.*
    448 F.3d 1294 (Fed. Cir. 2006), *cert. denied*, 127 S.Ct. 846 (2006) ..................... 16, 17

*In Re Martin Marietta Corp.*
    856 F.2d 619 (4th Cir. 1988) ..................................................................................... 16

*In re Sealed Case*
    676 F.2d 793 (D.C.Cir.1982) ..................................................................................... 16

*Informatica Corp. v. Business Objects Data Integration, Inc.*
    454 F.Supp.2d 957 (N.D. Cal. 2006), *aff'd*, 2006 WL 2329460 (N.D.Cal. July 14,
    2006) .......................................................................................................................... 16

*Strickland v. Washington*
    466 U.S. 668 (1984) ................................................................................................... 15

*Trudeau v. New York State Consumer Protection Bd.*
    237 F.R.D. 325 (N.D.N.Y. 2006) ............................................................................... 16

*Trudeau v. New York State Consumer Protection Bd.*
    237 F.R.D. 325 (N.D.N.Y. 2006) ............................................................................... 16

*U.S. v. Nobles*
    422 U.S. 225 (1975) ................................................................................................... 16

1

*United States v. Amlani*
    169 F.3d 1189 (9th Cir. 1999) ........................................................ 14

2

*Weil v. Investment/Indicators, Research and Management, Inc.*
    647 F.2d 18 (9th Cir. 1981) ........................................................ 13

3

4

5

6

7

**Federal Statutes**

8

28 U.S.C. § 2254 ........................................................................................ 15

9

**Federal Rules**

10

11  F.R.C.P. 26(b)(1) ........................................................................................ 2

12  F.R.C.P. 26(b)(3) ........................................................................................ 16

13  F.R.C.P. 37(a)(1) ........................................................................................ 9

14  F.R.C.P. 37-1(a) ........................................................................................ 8, 9

15

**Local Rules**

16

17  N.D.Cal. Civil L.R. 37-1(a) ........................................................................ 8, 9

18

19

20

21

22

23

24

25

26

27

28

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC  Case No. C07 04330 RMW (HRL)

1    Plaintiff Verigy US, Inc. ("Verigy") respectfully submits the following memorandum of

2 points and authorities in opposition to Defendants' motion to quash the subpoena served on Mount

3 & Stoelker PC.

4    **MEMORANDUM OF POINTS AND AUTHORITIES**

5 **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

6    Defendants have moved to quash in its entirety the subpoena issued by Verigy to

7 Defendants' former counsel in this action, Mount & Stoelker, PC (hereinafter, the "M&S

8 Subpoena") because the M&S Subpoena seeks documents allegedly protected from disclosure by

9 the attorney-client privilege and/or the work product doctrine. The documents requested by the

10 M&S Subpoena are those documents which support or relate to certain statements made, advice

11 given or actions taken by Mount & Stoelker which were revealed by defendant Romi Mayder in

12 his declaration in support of Defendants' Motion for Summary Adjudication and Motion to

13 Modify Preliminary Injunction Order (hereinafter, "Modification Motion") and asserted as a

14 justification for his conduct.

15    By voluntarily disclosing otherwise attorney-client privileged communications and work

16 product in Romi Mayder's declaration, Defendants have waived any privilege or work-product

17 protection that may have attached to the documents requested by the M&S Subpoena. The scope

18 of the waiver is broad and covers the entire subject matter of the communications disclosed.

19 Further, because Mayder has disclosed specific advice he was given by Mount & Stoelker and

20 contends that he relied on the advice in acting in contravention of the TRO issued in this case, the

21 waiver reaches both "factual" and "opinion" work product. Defendants cannot voluntarily

22 disclose otherwise privileged communications and advice and opinions rendered by Mount &

23 Stoelker and then block production of documents evidencing other, possibly contradictory,

24 communications, opinions, and advice on the same subject matter. Verigy has the right to the

25 documents requested in order to challenge Defendants' assertions. Accordingly, Defendants'

26 motion to quash should be denied and Mount & Stoelker should be required to produce all

27 documents in their possession, custody, or control responsive to each of the ten categories of

28 documents requested in the M&S Subpoena.

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC Case No. C07 04330 RMW (HRL)

1      Further, counsel for Defendants failed to meet and confer with Verigy's counsel prior to

2  filing the instant motion to quash.  For this reason alone, the Court should deny Defendants'

3  motion to quash.

4  **II.      FACTUAL BACKGROUND**

5      On August 5, 2008, Verigy served Mount & Stoelker, PC with a subpoena seeking

6  documents relating to Romi Mayder's assertions about Mount & Stoelker's advice set forth in his

7  declaration, filed on July 10, 2008, in support of the Modification Motion.  As is evident by an

8  examination of them, the requests are specifically tailored to seek only those documents that

9  contain information relating to subjects as to which the attorney-client privilege and/or work

10  product protection has been expressly waived by voluntary disclosure.

11      On August 20, 2008, Mount & Stoelker served responses to the subpoena.  Mount &

12  Stoelker objected to each and every category of documents requested on, among other things, the

13  grounds that such requests sought information protected by the attorney-client privilege and/or the

14  work product doctrine.  Mount & Stoelker refused to produce any responsive documents, claiming

15  they had no documents that were not covered by a privilege or objection.

16      On August 28, 2008, Defendants filed this motion to quash the M&S Subpoena contending

17  that the M&S Subpoena violates the attorney-client privilege and the work product doctrine.

18  *Counsel for Defendants failed to meet and confer with Verigy's counsel prior to filing this motion.*

19  Had they done so, Verigy would have instructed them as to the broad waiver effectuated by

20  Defendants' own actions which compel production of the documents subpoenaed.  Verigy,

21  accordingly, opposes this motion, as more fully discussed below.

22  **III.      DISCOVERY IN DISPUTE**

23      Mount & Stoelker has refused to produce documents responsive to any of the ten requests

24  set forth in the M&S Subpoena and Defendants have moved to quash said subpoena in its entirety.

25  The specific categories of documents requested are set forth below, along with Mount &

26  Stoelker's responses to each request and a statement as to why Verigy is entitled to the requested

27  documents pursuant to F.R.C.P. 26(b)(1).

28

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC Case No. C07 04330 RMW (HRL)

1    **Verigy's POD Request No. 1: REQUEST NO. 1:** *All DOCUMENTS*
     *RELATING TO or supporting the statement by MOUNT & STOELKER to ROMI*
2    *MAYDER that DEFENDANTS "could continue to act in the manner that resulted*
     *in the contempt filing," as described on page 17 of DEFENDANTS'*
3    *Memorandum of Points and Authorities in Support of Motion for Summary*
     *Adjudication and for Modification of Preliminary Injunction, Docket No. 261 filed*
4    *in THIS LAWSUIT (a copy of which is hereby attached for reference), including,*
     *but not limited to, COMMUNICATIONS between YOU and DEFENDANTS.*[1]

5

6           This request is specifically tailored to seek documents related to the advice Defendants

7    received from Mount & Stoelker regarding the proper scope of their activities under the TRO, as

8    disclosed by Defendants on Page 17 of the Modification Motion brief, which states that

9    Defendants "were in fact advised by their former counsel that they could continue to act in the

10   manner that resulted in the contempt finding," and Paragraph 17 of Romi Mayder's Declaration,

11   which discloses the substance of an otherwise privileged discussion with Mount & Stoelker as

12   well as such counsel's opinion and conclusion regarding the proper scope of activities Defendants

13   could engage in while under the TRO, stating:

14          ***Dan Mount informed me***, based on Dr. Blanchard's expert opinion, ***that the TRO***
            ***was designed to maintain the 'status quo.'*** At the time the TRO was entered, I
15          was already engaged in design/development activity with █████████ as well as
            sales activities with ██████████████. ***Dan Mount informed me that***
16          ████████████████████████████ ***under the TRO was***
            ***proper because that was the status quo that the TRO was supposed to maintain.***
17          (Emphasis added.)

18          This information is relevant for a number of reasons. If documents are produced prior to a

19   ruling on the Modification Motion, Verigy could inform the Court as to the veracity of

20   Defendants' assertions. Likewise, the documents would be relevant to any appeal or motion for

21   _____

22   [1]      Mount & Stoelker responded to this request, and every other request at issue herein, as
     follows: "M&S incorporates by reference the Preliminary Statement and General Objections, as
23   though full set forth herein. M&S objects to Plaintiff's Instructions, as set forth above. M&S
     objects that this request is overbroad, unduly burdensome, and oppressive and not reasonably
24   calculated to lead to discovery of admissible evidence. M&S objects that this request seeks
     information subject to one or more Privileges, including but not limited to, the attorney-client
25   privilege, the trade secret privilege, the joint-defense or common-interest privilege, and the
     attorney work-product doctrine. M&S withdrew as counsel for DEFENDANTS, and is no longer
26   familiar with the litigation. As such, M&S may not fully understand the request or the context in
     which the Document is referenced. Subject to and without waiving any objections, including the
27   General Objections, and subject to M&S's understanding of this request, M&S responds as
     follows: Due to the scope of the objections, M&S will not produce any documents because it is
28   believed that there are no documents that are not covered by an applicable privilege or objection."

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC Case No. C07 04330 RMW (HRL)

1  reconsideration of the Court's ultimate decision on the Modification Motion.  The documents

2  would also be relevant to the issue of willfulness in connection with Defendants' misappropriation

3  of trade secrets, and might also shed light on additional activities undertaken by Defendants "on

4  the advice of counsel" which could be relevant to an additional motion for contempt of the TRO

5  and/or preliminary injunction, as well as for the simple purpose of challenging Mayder's

6  credibility at trial.

7      **Verigy's POD Request No. 2:** *All DOCUMENTS RELATING TO or supporting*
       *the statement by YOU to ROMI MAYDER that MOUNT & STOELKER "could*
8      *really not tell me what was in the various documents that comprise the Court's*
       *TRO," as described in the Declaration of Romi Mayder, filed July 10, 2008,*
9      *Docket No. 261-2 in THIS LAWSUIT ("MAYDER DECLARATION") – a copy of*
       *which is hereby attached for reference), including, but not limited to,*
10     *COMMUNICATIONS between YOU and DEFENDANTS.*

11         This Request quotes from and is again, specifically tailored to, a statement made by

12  Defendant Romi Mayder in his declaration in support of the Modification Motion regarding

13  communications with his Mount & Stoelker regarding the TRO.  In pertinent part, Paragraph 10 of

14  Mayder's declaration states:

15         I have NEVER been served the FULL, unredacted TRO with all of the referenced
           materials. . . .  Thus, I do not know if my past activities under the TRO would
16         have changed if I were allowed to read the FULL Court Order with all of the
           referenced materials, but I do know that I would have consulted in detail with
17         regard to whether there was any potential for being held in contempt and that
           consultation never happened because ***my former lawyers told me that they could***
18         ***really not tell me what was in the various documents that comprise the Court's***
           ***TRO.*** . . .  (Emphasis added.)
19

20         Responsive documents are relevant to the action for the same reasons set forth with respect

21  to the prior request.

22      **Verigy's POD Request No. 3:** *All DOCUMENTS RELATING TO the press*
       *release issued by DEFENDANTS referenced in paragraph 14 and Ex. 7 to the*
23     *MAYDER DECLARATION, including, but not limited to, COMMUNICATIONS*
       *between YOU and DEFENDANTS.*
24

25         Request No. 3 is tailored to Mayder's disclosure of communications with Mount &

26  Stoelker regarding the press release attached as Exhibit 7 and counsel's opinion regarding the

27  propriety of the press release.  In pertinent part, Paragraph 14 of Mayder's declaration states:

28         Verigy knows full well that the press release did not come from the defendants

- 4 -

but rather from the lawyers at Mount & Stoelker.  Attached as exhibit 7 is a true and correct copy of an email from Mr. Kevin Pasquinelli of Mount & Stoelker to Ms. Morton containing the press release that ***Mr. Pasquinelli and his firm said was proper*** and that would be issued. . . .  In effect, I have been blamed for something that ***my former lawyers told me was acceptable*** . . . (Emphasis added.)

Responsive documents would be relevant for the same reasons as set forth with respect to Request No. 1.  In addition, documents relating to the press release could also evidence Mount & Stoelker's opinions and conclusions about the proper scope of activities Defendants could engage in under the Preliminary Injunction, which may have been communicated to and acted upon by Defendants.  Documents relating to the press release could also evidence advice Mayder sought or was given regarding what he could say to potential customers ███████████████████ █████ have a relationship with Verigy, about the Preliminary Injunction and/or this lawsuit in general which could be relevant to Verigy's interference claim.

**Verigy's POD Request No. 4:** *All DOCUMENTS RELATING TO the proposed NDA with VERIGY referenced in paragraph 15 and Exs. 8 and 9 to the MAYDER DECLARATION, including, but not limited to, COMMUNICATIONS between YOU and DEFENDANTS.*

Request No. 4 is tailored to Mayder's statement in Paragraph 15 of his declaration that "Verigy claimed that I brazenly sent an email asking Verigy to sign an NDA with STS and this was a violation of the TRO.  However, the properties window of that document clearly shows that ***Kevin Pasquinelli, my former counsel, was the author of the NDA***."  (Emphasis added.) Responsive documents would again be relevant for the reasons set forth with respect to Request No. 1**.**

**Verigy's POD Request No. 5:** *All DOCUMENTS RELATING TO or supporting the statement by YOU to ROMI MAYDER that DEFENDANTS could "continue to develop ███████████," referenced in paragraph 17 of the MAYDER DECLARATION, including, but not limited to, COMMUNICATIONS between YOU and DEFENDANTS.*

Request No. 5 tracks Mayder's disclosure of his communication with Mount & Stoelker regarding the proper scope of Defendants' activities under the TRO and Mount & Stoelker's opinion as to what activities Defendants could continue to engage in, as set forth in Paragraph 17 of Mayder's declaration which states: "***Dan Mount informed me that*** continuing [design/development] work with ████████████████████ under the TRO was proper

- 5 -

1  because that was the status quo that the TRO was supposed to maintain." (Emphasis added.)

2  Responsive documents would again be relevant for the reasons set forth with respect to Request

3  No. 1.

4          **Verigy's POD Request No. 6:** *All DOCUMENTS RELATING TO or supporting*
       *the statement by YOU to ROMI MAYDER that that "continuing work with*

5       ██████████████████████ *under the TRO was proper because that was the*
       *status quo that the TRO was supposed to maintain," referenced in paragraph 17*

6       *of the MAYDER DECLARATION, including, but not limited to,*
       *COMMUNICATIONS between YOU and DEFENDANTS.*

7

8          Request No. 6 quotes from Paragraph 17 of Mayder's declaration which, as stated above,

9  discloses his communication with Mount & Stoelker regarding the proper scope of Defendants'

10  activities under the TRO and Mount & Stoelker's opinion as to what activities Defendants could

11  continue to engage in. Responsive documents would again be relevant for the reasons set forth

12  with respect to Request No. 1.

13          **Verigy's POD Request No. 7:** *All COMMUNICATIONS between YOU and*
       *DEFENDANTS relating to Dr. Blanchard, referenced in paragraph 19 of the*

14       *MAYDER DECLARATION.*

15          Paragraph 19 of Mayder's declaration, which serves as the basis for Request No. 7,

16  reveals a communication between Mayder and Mount & Stoelker relating to the opinion of Dr.

17  Blanchard, stating: "There is an ambiguity in my declaration that I submitted for the contempt

18  motion. The declaration states that Dr. Blanchard told me that my activities under the TRO were

19  proper. However, ***it was actually Dan Mount of Mount & Stoelker who told me my activities***

20  ***under the TRO were proper based on what Dr. Blanchard had said*** . . . ." (Emphasis added.)

21  Responsive documents would again be relevant for the reasons set forth with respect to Request

22  No. 1. In addition, responsive documents may call into question what other opinions Dr.

23  Blanchard may have expressed regarding the proper scope of Defendants' activities under the

24  TRO, and, if such opinions were relayed to Defendants by Mount & Stoelker, what actions they

25  may have taken or not taken based on these opinions.

26          **Verigy's POD Request No. 8:** *All COMMUNICATIONS between YOU and*
       *DEFENDANTS relating to the Contempt Motion, as referenced in paragraph 19-*

27       *24 of the MAYDER DECLARATION.*

28          **Verigy's POD Request No. 9:** *All COMMUNICATIONS between YOU and*

1   *DEFENDANTS relating to the TRO, as referenced in the MAYDER*
    *DECLARATION.*

2

3   **Verigy's POD Request No. 10:** *All COMMUNICATIONS between YOU and*
    *DEFENDANTS relating to the Preliminary Injunction motion and briefing, as*
    *referenced in the MAYDER DECLARATION.*

4

5   Requests Nos. 8, 9, and 10 seek communications between Defendants and Mount & Stoelker

6   relating to the Contempt Motion, the TRO, and the Preliminary Injunction.  As noted above,

7   Paragraphs 10, 14, 15, 17, and 19 of Mayder's declaration disclose in great detail his

8   communications with Mount & Stoelker relating to the Contempt Motion, the TRO, and the

9   Preliminary Injunction, as well as the strategic decisions of and opinions of counsel in connection

10  with such subjects.

11        Paragraphs 20 through 24 then make further disclosures on these subjects.  Paragraph 20

12  discloses Mayder's communications with Mount & Stoelker regarding the brief filed by

13  Defendants in connection with the Contempt Motion, stating:

14        ***I was informed by my previous counsel, Kevin Pasquinelli, that the defendants'***
          ***reply brief would explain to the Court that defendants were not given the***
15        ***opportunity to read the FULL, unredacted TRO.***  However, I have recently
          reviewed the Court's version of the defendants' reply brief submitted by
16        defendants.  The brief does not even attempt to explain to the Court that many
          critical documents referenced by the TRO were marked "FILED UNDER SEAL."
17        (Emphasis added.)

18        Paragraph 21 further discloses the substance of Mayder's communications with Mount &

19  Stoelker regarding Defendants' opposition to the Contempt Motion, stating in pertinent part:

20        I believed then (and now) that I was in compliance with the Court's TRO but I did
          not state in my declaration in opposition to the contempt motion that I was in
21        compliance with the TRO because of three reasons: . . . (b) ***My previous counsel***
          ***told me that I was not qualified to draw such a legal conclusion and thus could***
22        ***not make a statement as such; and (c) My previous counsel told me that such a***
          ***statement would not be a statement of fact.  It would be my opinion and***
23        ***opinions are not allowed in declarations***.  (Emphasis added.)

24        In Paragraph 22 of his declaration, Mayder expresses his understanding, apparently based

25  on discussions with Mount & Stoelker, that before retaining Russo & Hale, LLP as counsel, only

26  Defendants' previous attorneys,. Kevin Pasquinelli and Dan Mount of Mount & Stoelker, had

27  reviewed the full, unredacted TRO.

28        Paragraph 23 reveals several omissions made by Mount & Stoelker in their

- 7 -

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC  Case No. C07 04330 RMW (HRL)

communications with Mayder regarding the TRO, stating:

> ***I was never informed by my previous counsel*** that I had the right to an evidentiary hearing where I could have explained all these things to the Court. ***I was never informed*** that I had the right to a jury trial for the contempt of court motion. ***I was never informed that my previous counsel*** stipulated to several extensions of the TRO.  (Emphasis added.)

Then, in Paragraph 24 of his declaration, Mayder states that, as a result of the advice, opinions, and actions and omissions of Mount & Stoelker disclosed in the preceding paragraphs, he "ha[s] never understood (until now and only through new counsel at Russo & Hale LLP) what [his] rights are, what should have occurred in this case, and what did not occur which [he] believe[s] has caused a miscarriage of justice with regard to the extension of the Preliminary Injunction."

This broad, quite intentional disclosure of otherwise attorney-client privileged communications and work product mandates that the subject matter scope of the waiver reach all communications between Defendants and Mount & Stoelker regarding the Contempt Motion, the TRO, and the Preliminary Injunction.  In connection with their Modification Motion, Defendants have advanced the specific advice of counsel as a justification for taking certain actions, which advice has broad implications.  Verigy should be able to examine the true nature of that advice which should be revealed in responsive documents and to explore the scope of that advice and the extent of Defendants' conduct in reliance.  This evidence is relevant to the issue of willfulness of Defendants' conduct both before and after issuance of the TRO and would be germane to any appeal or motion for reconsideration of the Court's decision on the Modification Motion.  Accordingly, Defendants' motion to quash should be denied and Mount & Stoelker should be ordered to produce documents responsive to each category of documents sought pursuant to the M&S Subpoena.

## IV.    ARGUMENT

### A.    Defendants Motion Must Be Denied Because Defendants Failed To Meet And Confer With Verigy Before Filing Their Motion To Quash.

Local Rule 37-1 (a) requires that counsel meet and confer prior to filing a discovery motion with the Court.  Specifically, Rule 37-1(a) provides that "[t]he Court will not entertain a

1  request or a motion to resolve a disclosure or discovery dispute unless, pursuant to FRCivP 37,

2  counsel have previously conferred for the purpose of attempting to resolve all disputed issues."

3  N.D.Cal. Civil L.R. 37-1(a); *see also* F.R.C.P. 37(a)(1) (a discovery motion "must include a

4  certification that the movant has in good faith conferred or attempted to confer with the person or

5  party failing to make disclosure or discovery in an effort to obtain it without court action.").  Here,

6  counsel for Defendants never attempted to meet and confer with Verigy's counsel at any time

7  prior to filing the instant motion to quash.  Accordingly, Defendants' motion should be denied for

8  this reason alone**.**

9    **B.    Defendants' Motion To Quash Should Be Denied Because Defendants Have**
       **Waived The Attorney-Client Privilege And Any Work Product Protection**
10       **With Respect To The Subject Matter Of Communications Between**
       **Defendants And Mount & Stoelker Disclosed In Romi Mayder's Declaration.**
11

12         Defendants move to quash the M&S Subpoena, asserting that the subpoena seeks

13  documents protected from disclosure by the attorney-client privilege and/or the work product

14  doctrine.  Defendants further contend that the "limited statements" made by Defendant Romi

15  Mayder in his declaration in support of the Modification Motion "in no way constitute waiver of

16  such protections."  Defendants' position is without merit and their motion should be denied.

17         Each and every request set forth in the M&S Subpoena seeks documents relating to certain

18  statements made in the Mayder Declaration filed in support of the Modification Motion.  Mayder's

19  declaration, far from containing only "limited statements," as Defendants assert, discloses in detail

20  advice Mayder claims he received from Mount & Stoelker, his former counsel in this action,

21  regarding the proper scope of activities he could engage in under the TRO entered in this case.

22  Mayder voluntarily disclosed these otherwise protected attorney-client privileged communications

23  and attorney work product for the specific purpose of attempting to gain an advantage in this

24  litigation.  Specifically, Mayder was seeking to have the Preliminary Injunction modified to allow

25  STS to market and sell its ███████████████ .  (*See* Docket No. 261-2.).  Because Mayder's

26  voluntary disclosures waived any attorney-client privilege and/or work product protection as to the

27  subjects of such disclosures, Defendants cannot now prevent discovery of other documents and

28  communications on the same subject matters.

1. **Mayder's Voluntary Disclosures Of Otherwise Privileged Communications With Mount & Stoelker Constitute A Waiver Of The Attorney-Client Privilege As To All Other Communications On The Same Subject Matter.**

Verigy does not deny that the requests contained in the M&S Subpoena seek documents that would otherwise be protected from disclosure by the attorney-client privilege and/or the work product doctrine.  The issue on which the parties disagree is whether such protections have been *waived* as a result of the voluntary disclosure of privileged communications and work product, including the advice, opinions, and conclusions of Mount & Stoelker, set forth in the declaration filed by Defendant Romi Mayder in support of the Modification Motion.  As discussed in detail below, Defendants' voluntary actions have resulted in a broad waiver of any attorney-client privilege or work product protection as to the documents subpoenaed and, accordingly, Defendants' motion must be denied.

a. **The Documents Sought Pursuant To The M&S Subpoena Are Relevant To Important Issues In This Case.**

Defendants argue that Verigy is not entitled to the documents requested in the M&S Subpoena because "the only relevance of such communications is to the [Modification Motion] itself" and the M&S Subpoena was not served in such a time to allow Verigy to use any documents produced in connection with the motion.  Defendants further contend that the lack of relevance of these documents is evidenced by the fact that Verigy deposed Mayder on August 21, 2008 and did not ask him any questions about his declaration.

Defendants' argument as to the purported lack of relevance of these documents is without merit.  As discussed in detail above, the documents requested are relevant to a number of important issues in this case besides the Modification Motion itself, including any appeal or motion for reconsideration of the Court's decision thereon.  Specifically, all of the documents sought are relevant to the issue of willfulness in connection with Defendants' misappropriation of trade secrets and might also shed light on additional activities undertaken by Defendants "on the advice of counsel" which could be relevant to an additional motion for contempt of the TRO and/or preliminary injunction, as well as for the simple purpose of challenging Mayder's

1    credibility at trial.  Documents sought pursuant to Request No. 3, which seeks documents relating

2    to the press release issued by Defendants in connection with the preliminary injunction, could also

3    evidence Mount & Stoelker's opinions and conclusions about the proper scope of activities

4    Defendants could engage in under the preliminary injunction, which may have been

5    communicated to and acted upon by Defendants, as well as advice Mayder sought or was given

6    regarding what he could say to potential customers, including ████████████████████

7    have a relationship with Verigy, about the preliminary injunction and/or this lawsuit in general

8    which could be relevant to Verigy's interference claim.  Documents responsive to Request No. 7,

9    which seeks communication related to Dr. Blanchard, could evidence other opinions Dr.

10   Blanchard may have expressed regarding the proper scope of Defendants' activities under the

11   TRO, and, if such opinions were relayed to Defendants by Mount & Stoelker, what actions

12   Defendants may have taken or not taken based on these opinions.  Thus, the relevance of the

13   documents sought pursuant to the M&S Subpoena goes beyond the Modification Motion alone

14   and could have broad implications for this case depending upon what the documents produced

15   reveal.

16       The fact that Verigy chose not to serve the M&S Subpoena on shortened time (which

17   almost certainly would have been opposed and ultimately resulted in the same objections and

18   motion to quash currently pending) or to question Mayder about his declaration at his August 21st

19   deposition (which, again, would almost certainly have resulted in the same privilege and work

20   product objections asserted herein) is irrelevant and immaterial.  Verigy's strategic decisions

21   related to this case simply have no bearing on whether the documents sought are relevant.  Verigy

22   has gone through proper channels, through issuance of a subpoena to Mount & Stoelker (and

23   almost verbatim document requests to Defendants), to obtain the documents requested.

24                 **b.        The Requests Are Appropriately Tailored To The Broad
                               Subject Matter Scope Of The Waiver.**

25

26       Defendants argue that the subpoena should be quashed because the document requests are

27

28

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC Case No. C07 04330 RMW (HRL)

1   not particularized to issues "vital" to Verigy's position[2] and, instead, seek discovery of all

2   communications as to specified subjects based on "closely limited" statements in the Mayder

3   declaration.  Defendants cite as an example Request No. 7, which seeks production of all

4   communications between Mount & Stoelker and Defendants relating to Dr. Blanchard.  As stated

5   above, this request is predicated on the statement in Paragraph 19 of Mayder's declaration that

6   Dan Mount of Mount & Stoelker told Mayder that his activities under the TRO were proper based

7   on "what Dr. Blanchard had said."  This request is not overbroad.  By disclosing an

8   otherwise privileged communication related to one opinion allegedly expressed by Dr. Blanchard

9   and communicated to Mayder through Mount & Stoelker, Mayder has waived the attorney-client

10  privilege as to all communications embodying the same subject matter, in this case,

11  communications relating to opinions expressed by Dr. Blanchard.  Mayder cannot divulge

12  information about only one opinion allegedly expressed by Dr. Blanchard and then attempt to

13  prevent discovery of any other, possibly contrary, opinions Dr. Blanchard expressed.  *See, e.g.,*

14  *Chinnici v. Central Dupage Hospital Association,* 136 F.R.D. 464, 465 (N.D. Ill. 1991) (a party's

15  voluntary disclosure of advice of their attorney concerning particular subject waived the privilege

16  as to all other communications on that subject because "[a] party cannot selectively divulge

17  privileged information without impairing its attorney-client privilege as to the rest of that

18  information concerning the same subject. The privilege exists in the first instance to encourage

19  communications from a client to his attorney, and for that reason the confidence of such

20  communications must be protected. . . .  Once a party abandons this confidence by submitting

21  privileged material in a discovery proceeding, the rationale of the privilege is dissipated, insofar as

22  the subject matter of the privilege is concerned.").

23      The law is clear that Mayder cannot voluntarily disclose communications with Mount &

24  Stoelker and their work product and then attempt to hide behind the cloak of the attorney-client

25  privilege or work product doctrine to prevent production of other documents embodying the same

---

26

27  [2]     As discussed below, because this case involves an express waiver of the attorney-client
    privilege, as opposed to an implied waiver, Verigy does *not* need to establish that the documents

28  sought are "vital" to its position.

- 12 -

1    subject matter. "[I]t has been widely held that voluntary disclosure of the content of a privileged

2    attorney communication constitutes waiver of the privilege as to all other such communications on

3    the same subject." *Weil v. Investment/Indicators, Research and Management, Inc.,* 647 F.2d 18,

4    24 (9th Cir. 1981) (attorney-client privilege was waived when otherwise privileged information

5    was disclosed during discovery); *Board of Trustees of Leland Stanford Junior University v. Roche*

6    *Molecular Systems, Inc.,* 237 F.R.D. 618, 622  (N.D. Cal. 2006) ("Generally disclosure of

7    confidential communications or attorney work product to a third party, such as an adversary in

8    litigation, constitutes a waiver of privilege as to those items.") (citing *Carter v. Gibbs,* 909 F.2d

9    1450, 1451 (Fed.Cir. 1990) (en banc),).  "The rationale for this rule is that it would be unfair for a

10   party to insist on the protection of the attorney-client privilege for damaging communications

11   while disclosing other selected communications because they are self-serving." *McCormick-*

12   *Morgan, Inc. v. Teledyne Industries, Inc.,* 765 F. Supp. 611, 614 (N.D. Cal. 1991).

13          The fact that Romi Mayder's disclosures were voluntary and deliberate makes the waiver

14   analysis extremely straightforward.  In the case of an "express" waiver, such as this, "a party

15   discloses privileged information to a third party who is not bound by the privilege, or otherwise

16   shows disregard for the privilege by making the information public.  [Citations.]  Disclosures that

17   effect an express waiver are typically within the full control of the party holding the privilege;

18   [therefore,] courts have no role in encouraging or forcing the disclosure-they merely recognize the

19   waiver after it has occurred . . . [O]nce documents have been turned over to another party

20   voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery

21   of the information and related communications by his adversaries." *Bittaker v. Woodford,* 331

22   F.3d 715, 719-720 (9th Cir. 2003).  There can be no clearer a case of express waiver than a

23   situation in which a party discloses attorney-client communications and attorney work product in a

24   declaration filed with the Court in an attempt to gain an advantage in litigation.

25          As the Ninth Circuit has held, "[i]ndeed, when, as here, the privileged communication is

26   voluntarily disclosed without objection by the asserting party's counsel and in the absence of

27   surprise or deception by opposing counsel, it may be unnecessary to look beyond the objective

28   fact of disclosure in ruling on the question of waiver." *Weil,* 647 F.2d at 25, n.13; *see also Electro*

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC  Case No. C07 04330 RMW (HRL)

1   *Scientific Industries, Inc v. General Scanning, Inc.,* 175 F.R.D. 539, 543 (N.D. Cal. 1997) ("A

2   sophisticated, well-counseled party who intentionally discloses an important part of an otherwise

3   privileged communication acts in a manner that is thoroughly inconsistent with preserving the

4   confidentiality of that communication. Stated somewhat differently, a sophisticated party who

5   intentionally discloses the most significant part of an otherwise privileged communication, in an

6   act calculated to advance that party's commercial interests, cannot establish, as the law would

7   require, that the party reasonably believed that it would be able to preserve the confidentiality of

8   the other parts of that communication.").

9       The appropriate scope of the waiver in this case is a broad, subject matter waiver.  For

10  example, in a case in which a party voluntarily divulged attorney-client privileged

11  communications, including details of legal advice received, in declarations filed with the

12  U.S.P.T.O., the party waived the attorney-client privilege with regard to the subject matter of the

13  patent application.  *See Board of Trustees of Stanford University,* 237 F.R.D. 618.  In construing

14  the waiver broadly, the court emphasized that the University's disclosures were voluntary and

15  deliberate in order to obtain a legal advantage, specifically, an enforceable patent.  Therefore, the

16  University could not now "attempt to shield all other communications on the same subject matter,

17  as this would unfairly prejudice [the opposing party]." *Id*. at 625 (citing *Fort James Corp. v. Solo*

18  *Cup Co.,* 412 F.3d 1340, 1349 (Fed.Cir. 2005) (holding that a party cannot selectively choose to

19  disclose information that supports its position, while withholding information that might damage

20  its case)).

21      The instant case, therefore, is distinguishable from the cases cited by Defendants in which

22  the courts found a more narrow waiver to be appropriate under the "fairness principle."  While this

23  case involves an *express* waiver of the privilege as a result of specifically divulging privileged

24  communication and work product in a declaration filed with the Court, the cases relied on by

25  Defendants, *United States v. Amlani* and *Bittaker v. Woodford* both involved *implied* waiver by

26  assertion of a claim in litigation.  *See United States v. Amlani,* 169 F.3d 1189 (9th Cir. 1999)

27  (defendant waived attorney-client privilege when he asserted claim that prosecutor's disparaging

28  comments about defense counsel caused him to substitute counsel in violation of his Sixth

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC Case No. C07 04330 RMW (HRL)

Amendment right to counsel); *Bittaker v. Woodford,* 331 F.3d 715 (9th Cir. 2003) (scope of habeas

petitioner's waiver arising from claim of ineffective assistance of counsel raised in habeas petition

extended only to litigation of the federal habeas petition). The "fairness principle" relied upon by

Defendants in their moving papers is not even applicable to cases of express waiver like the case

at bar. *See Bittaker,* 331 F.3d at 720 ("Because these express waiver cases do not involve the

court-ordered disclosure of privileged information after 'the client [has] assert[ed] a claim or

defense that place[d] at issue the nature of the privileged material,' Mueller & Kirkpatrick § 5.30,

at 549, we do not find them particularly useful in ascertaining the scope of Bittaker's waiver of his

attorney-client privilege under the fairness principle.").[3]

> ## 2.    Mayder's Voluntary Disclosures Of Mount & Stoelker's Work Product Waives Any Work Product Protection As To The Subjects Of Such Opinions And Advice.

Defendants argue that the M&S Subpoena should be quashed because it seeks documents

protected from disclosure by the attorney work product doctrine and Verigy cannot show the

requisite "hardship and need" for production of such documents. Specifically, Defendants contend

that responding to the requests would require production of documents which "would naturally

contain [the] mental impressions, conclusions, opinions, or legal theories of the Mount & Stoelker

attorneys" and that courts "must protect against disclosure of the attorney's private 'mental

_____

[3]    Further, even were the "fairness principle" to apply, fairness in this case dictates that Verigy is entitled to the documents sought pursuant to the M&S Subpoena. In construing the appropriate scope of the waiver under the fairness principle, the Ninth Circuit in *Bittaker* was concerned with the fact that the waiver related to assertion of a constitutional right, stating: "It is no answer to say that Bittaker created this dilemma for himself-that he was the one who voluntarily 'chose' to challenge his conviction on grounds of ineffective assistance. The Constitution guarantees Bittaker the right to effective assistance of counsel at trial, *Strickland v. Washington,* 466 U.S. 668, 686 (1984), and Congress has provided him an avenue to claim that his constitutional rights were violated, 28 U.S.C. § 2254. As one of our sister circuits has recognized in a different context, one may be a 'voluntary' party only because there is no other means of protecting legal rights.... The scope of required disclosure should not be so broad as to effectively eliminate any incentive to vindicate [one's] constitutional right [s]...." *Greater Newburyport Clamshell Alliance,* 838 F.2d at 21-22 ." *Bittaker,* 331 F.3d at 723-724. Here, on the other hand, Mayder voluntarily chose to disclose certain privileged communications with Mount & Stoelker and certain of said counsel's legal opinions and conclusions in his declaration in an attempt to have the preliminary injunction in this case modified to allow STS to sell its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Thus, fairness dictates that Verigy be allowed to obtain discovery regarding the subjects Mayder chose to disclose in his declaration so that Verigy can have the opportunity to explore and challenge Mayder's assertions.

1    impressions, conclusions, opinions or legal theories,'" (Motion, at p. 5.) *citing* F.R.C.P. 26(b)(3).)

2    Defendants' argument again ignores the broad, voluntary waiver.  Defendants essentially want to

3    "have their cake and eat it too".  They want to disclose those opinions, conclusions, and mental

4    impressions of Mount & Stoelker that they feel will advance their case, but then block Verigy

5    from obtaining discovery regarding other opinions, conclusions, and mental impressions on the

6    same subject matter.  This tactic cannot be countenanced.  *See, e.g., Aclara Biosciences, Inc. v.*

7    *Caliper Technologies Corp.,* 2001 WL 777083, at *8 (N.D. Cal. June 16, 2000) (where Aclara

8    chose to defend itself by disclosing the communications between itself and its lawyer, including

9    the thoughts and impressions of its attorney, Aclara should expect that the opposing party will

10   want to challenge its version of events.  "Without discovery of work product, [the opposing party]

11   may well find it impossible to challenge Aclara's assertion that the communications with [its

12   attorney] prove the absence of any improper conduct . . .").

13          Courts have routinely found work product waiver "to prevent a party from using the advice

14   he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting

15   privilege to unfavorable advice." *In re Echostar Communications Corp.,* 448 F.3d 1294 (Fed. Cir.

16   2006), *cert. denied,* 127 S.Ct. 846 (2006) (citing *Fort James Corp.,* 412 F.3d at 1349;  *In Re*

17   *Martin Marietta Corp.,* 856 F.2d 619, 626 (4th Cir. 1988);  *In re Sealed Case,* 676 F.2d 793, 818

18   (D.C.Cir.1982) ("[W]hen a party seeks greater advantage from its control over work product than

19   the law must provide to maintain a healthy adversary system[,] then the balance of interests

20   recognized in *Hickman* ... shifts."); *see also U.S. v. Nobles,* 422 U.S. 225, 239-240 (1975) (where

21   a party decided to call an investigator as a witness, that party waived any work product privilege

22   with respect to such testimony); *Informatica Corp. v. Business Objects Data Integration, Inc.,* 454

23   F.Supp.2d 957 (N.D. Cal. 2006), *aff'd,* 2006 WL 2329460 (N.D.Cal. July 14, 2006)(following

24   *Echostar* and determining that waiver of attorney-client privilege and attorney work-product,

25   through assertion of advice of counsel defense, applied to documents which referenced any

26   attorney-client communications on the subject of the advice of counsel defense); *Trudeau v. New*

27   *York State Consumer Protection Bd.,* 237 F.R.D. 325, 339 (N.D.N.Y. 2006) ("[a] voluntary

28   disclosure of work product, for some or any inexplicable benefit, to a third party, especially if the

1   party is an adversary, may waive the immunity [of attorney work product].  Once a party allows an

2   adversary to share in an otherwise privileged document, the need for the privilege disappears, and

3   may disappear forever, even as to different and subsequent litigators.") (internal citations

4   omitted)).  Thus, Defendants cannot disclose only those opinions of Mount & Stoelker that are

5   favorable to their case and prevent discovery of any other, potentially unfavorable, opinions.

6           In cases such as this, work product waiver has been extended broadly, to cover not only

7   "factual" work product, but also "opinion" work product.[4]  For example, in *Electro Scientific*

8   *Industries,* 175 F.R.D. at 545-546, the Northern District extended the work product waiver to

9   "opinion" work product because, the fact that defendant asserted that it relied on advice contained

10  in an opinion letter from counsel did not preclude the possibility that the defendant had received

11  other, possibly contradictory advice, from counsel as well.  The court acknowledged that "it would

---

13  [4]     In *Echostar,* the Federal Circuit Court provided a detailed analysis of the distinction
14  between "factual" and "opinion" work product, emphasizing that "the line between 'factual' work
    product and 'opinion' work product is not always distinct, especially when, as here, an attorney's
15  opinion may itself be 'factual' work product."  *Echostar,* 448 F.3d at 1302.  As a preliminary
    matter, the Court recognized that three categories of work product were potentially relevant to the
16  advice of counsel at issue: "(1) documents that embody a communication between the attorney and
    client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents
17  analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions
    but were not given to the client; and (3) documents that discuss a communication between attorney
18  and client concerning the subject matter of the case but are not themselves communications to or
    from the client."  *Id.*  The court then determined that the first and third categories of work product
19  were waived based on the assertion of the advice of counsel defense, but the second category had
    not been waived.  *Id.* at 1303.  As to the third category of documents, the court stated: "In some
20  instances there may be documents in the attorney's file that reference and/or describe a
    communication between the attorney and client, but were not themselves actually communicated
21  to the client. For example, if an attorney writes a memorandum or an e-mail to his associate
    referencing a phone call with the client, in which he indicates that he discussed the client's
22  potential infringement, then such a memorandum is discoverable. Unlike work product that was
    uncommunicated, this work product references a specific communication to the client. Though it
23  is not a communication to the client directly nor does it contain a substantive reference to what
    was communicated, it will aid the parties in determining what communications were made to the
24  client and protect against intentional or unintentional withholding of attorney-client
    communications from the court."  *Id.* at 1304.  The court stated that, to the extent documents
25  falling into this third category also contained work product consisting of legal analysis that was
    not communicated to the client, such documents should be redacted and/or reviewed by the court
26  *in camera* to determine which portions of the document should be redacted.  Therefore, at a
    minimum, the waiver at issue herein encompasses documents that embody communications
27  between Mount & Stoelker and Defendants concerning the subject matters described in the
    document requests and documents that discuss a communication between Mount & Stoelker and
28  Defendants concerning such subject matters but are not themselves communications to or from
    Defendants and the Court should order that such documents be produced.

1   not be rational to assume that everything in counsel's files reached the client, or that counsel

2   communicated to the client all of what he or she really thought, but it would be comparably

3   irrational to assume that there could be no relationship between what counsel really thought (as

4   reflected in her private papers) and what she in fact communicated to her client. In this important

5   sense, evidence about what really was in the lawyer's mind could be quite relevant to the issue of

6   what really was in the client's mind." *Id.* at 545.  As it was impossible to know what these

7   documents might show and how they might impact the case, it would be unfair to deny the

8   plaintiff access to such documents. *Id.* at 546; *see also McCormick-Morgan,* 765 F.Supp. at 614

9   (by asserting an advice of counsel defense in an action for willful infringement of a patent, party

10  "explicitly waived its privilege even with respect to documents that otherwise might be protected

11  by the work product doctrine, and even if the contents of those documents were not

12  'communicated' to the client or do not record or directly allude to communications that were

13  actually made to the client").

14        This reasoning applies equally herein.  Romi Mayder cannot disclose only those

15  conclusions and opinions of Mount & Stoelker relating to the Contempt Motion, the TRO, and the

16  Preliminary Injunction that he feels will advance his case and prevent production of work product

17  evidencing other opinions, or further expanding on opinions expressed, relating to these same

18  subjects.  Verigy is entitled to discovery of such documents to counter Defendants' contentions as

19  to the effect this advice had on their actions.  As discussed above, at a minimum, these documents

20  are relevant to the Modification Motion, including any motion for reconsideration or appeal of the

21  Court's decision thereon, the issue of willfulness in connection with Defendants' misappropriation

22  of trade secrets, other actions Defendants may have taken or not taken based on the advice of

23  counsel, and Mayder's credibility.  Depending upon what these documents reveal about the

24  actions of Defendants in connection with the TRO and/or the Preliminary Injunction, these

25  documents could very well have incredibly broad implications for this case.  It would be unfair to

26  close the door on such discovery.

27        Accordingly, Defendants' motion to quash should be denied and Mount & Stoelker should

28  be ordered to produce all responsive documents in their possession, custody, or control, including,

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC Case No. C07 04330 RMW (HRL)

1  but not limited to, any documents expressing their mental impressions, conclusions, opinions or

2  legal theories that would otherwise be protected from disclosure by the work product doctrine.

3  **V.    CONCLUSION**

4       Defendants have waived any attorney-client privilege or work product protection with

5  respect to the documents requested pursuant to the M&S Subpoena.  Accordingly, Defendants'

6  motion to quash said subpoena should be denied and Mount & Stoelker should be ordered to

7  produce all documents in their possession, custody, or control responsive to each of the categories

8  of documents requested pursuant to the subpoena, including any documents that would otherwise

9  be protected from disclosure by the attorney-client privilege and/or the work product doctrine.

10

11  Dated: September 16, 2008         BERGESON, LLP

12

13

14            By:  _____/s/_____

15                    Donald P. Gagliardi

16            Attorneys for Plaintiff
          VERIGY US, INC.

17

18

19

20

21

22

23

24

25

26

27

28

VERIGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO QUASH SUBPOENA SERVED ON MOUNT & STOELKER PC Case No. C07 04330 RMW (HRL)