United States District Court
For the Northern District of California

**E-FILED on** 11/04/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

VERIGY US, INC.,

Plaintiff,

v.

ROMI OMAR MAYDER; WESLEY MAYDER; SILICON TEST SYSTEMS, INC.; and SILICON TEST SOLUTIONS, LLC.

Defendants.

No. C-07-04330 RMW

ORDER GRANTING DEFENDANT WESLEY MAYDER'S MOTION FOR SUMMARY JUDGMENT AND DENYING HIS MOTION FOR RULE 11 SANCTIONS

**[Re Docket Nos. 230 and 231]**

Defendant Wesley Mayder ("W. Mayder") moves for summary judgment as to all claims against him in this action. He also requests an order imposing Rule 11 sanctions against plaintiff Verigy US, Inc. ("Verigy"). Verigy opposes the motions. The court has reviewed the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court grants W. Mayder's motion for summary judgment and denies his motion for Rule 11 sanctions.

United States District Court
For the Northern District of California

## I. BACKGROUND

### A. Nature of Motion

This action arises from defendants' alleged misappropriation and unlawful use of plaintiff's trade secrets and confidential information. Verigy has sued Romi Omar Mayder ("R. Mayder"), his two companies Silicon Test Systems, Inc. ("STS, Inc.") and Silicon Test Solutions LLC ("STS LLC") (collectively "STS"), and his older brother W. Mayder. Verigy alleges breach of contract, misappropriation of trade secrets, computer and data fraud and unauthorized access, unfair competition, breach of duty of loyalty, false advertising, intentional interference with prospective economic advantage, declaratory relief, imposition of a constructive trust, and unjust enrichment. W. Mayder now moves for summary judgment, arguing that none of the claims against him are supported by substantial evidence and that he should be dismissed from the action and awarded Rule 11 monetary sanctions. Verigy opposes both motions.

### B. Factual Background

W. Mayder is an individual who owns a California corporation called WeDirect, Inc. ("WeDirect"), an online marketing company involved in optimizing internet traffic for its clients. W. Mayder Decl. ¶ 5. R. Mayder has no operating, business, ownership or other role in WeDirect. *Id*. Though WeDirect is an online marketing company, it does not market or promote any companies in the semiconductor industry. *Id.* ¶ 6.

R. Mayder was an employee of Verigy and its predecessors-in-interest, Agilent Technologies, Inc. and Hewlett Packard Company, from June 1998 to September 2006. Compl. ¶ 13. At Verigy R. Mayder was responsible for several research and development projects seeking to create new silicon chip testing products. *Id.* ¶ 17. In working on these projects he had access to confidential information regarding projects in development, business relationships, suppliers, and customers. *Id.* In September 2006, R. Mayder resigned his employment with Verigy and incorporated STS LLC. *Id.* ¶ 30.

W. Mayder first heard of R. Mayder's limited liability company in late September 2006 after the articles of incorporation had already been filed. W. Mayder Decl. ¶ 8. The brothers and then-business associate, Robert Pochowski, thought W. Mayder would become a member of STS LLC.

United States District Court
For the Northern District of California

*Id.* ¶ 8, 10; R. Mayder Decl. ¶ 21-24. But in December of 2006, Pochowski had a disagreement with R. Mayder and decided not to become a member. R. Mayder Decl. ¶ 23. Pochowski never signed the operating agreement, but R. Mayder and W. Mayder did. Gagliardi Decl., Ex. A (W. Mayder Depo. Tr. at 46:12-47:23; 50:1-54:11; Ex. 91) (copy of STS LLC Operating Agreement signed by W. Mayder and R. Mayder). In October 2006, W. Mayder invested $250,000 in STS LLC for a 20 percent stake, but the check was returned in early January 2007. *Id.* at Ex. A (W. Mayder Depo. Tr. at 31:14-38:21; 83:20-86:7; Ex. 94).

In January 2007, W. Mayder was invited by his brother to invest in R. Mayder's second company, STS, Inc., formed on December 26, 2006, by R. Mayder. W. Mayder Decl. ¶ 12. On January 3, 2007, W. Mayder invested $250,000 in return for 20,000 shares of common stock, or a 25 percent ownership in the company. *Id.* ¶ 12. W. Mayder currently has a 21 percent interest in STS, Inc. *Id.* ¶ 13.

W. Mayder referred another investor in STS, Inc. Ben Francois, to his brother. Gagliardi Decl., Ex. A (W. Mayder Depo. Tr. at 56:11-59:10; Ex. 92).

On January 17, 2007, R. Mayder asked W. Mayder in an email if he knew someone who could provide verification of dates in his lab notebook. *Id.* at Ex. A (W. Mayder Depo. Tr. at 89:1-91:15; Ex. 7). W. Mayder replied by email the same day recommending Jon Davidson, an employee of WeDirect. *Id.* Also in January of 2007, W. Mayder provided R. Mayder with approximately $500 of design work for the website of STS, Inc. W. Mayder Decl. ¶ 16. The design work was accomplished by an employee of WeDirect, John Prinz, and W. Mayder did not have any involvement in the design and did not review the work. *Id.*

W. Mayder learned in March 2007 that STS, Inc. was looking for office space in San Jose and heard that a suite was available in the same building as WeDirect. *Id.* ¶ 17; R. Mayder Decl. ¶ 28-29. W. Mayder referred R. Mayder to the office manager, and STS, Inc. leased the available suite. *Id.* ¶ 17. The companies are located on different floors and share no space, employees, phones, office support, or anything else. *Id.* Also in March, W. Mayder helped obtain a seller's permit for STS, Inc. by providing his personal driver's license to his brother. Gagliardi Decl., Ex. A (W. Mayder Depo. Tr. at 118:11-124:18; Exs. 97-99).

In July 2007, Verigy learned of R. Mayder's businesses and began an investigation to determine whether he was using Verigy trade secrets. In early July 2007, counsel for Verigy sent two letters to R. Mayder raising effectively the same allegations made in this lawsuit. *Id.* at Ex. A (W. Mayder Depo. Tr. at 132:12-136:25; 170:2-175:6; Exs. 101 & 104). Both letters were forwarded to W. Mayder who asked R. Mayder about the accuracy of the letters. *Id.* at Ex. A (W. Mayder Depo. Tr. at 170:2-175:6; Exs. 101 & 104). The letters discussed R. Mayder's continuing obligations to Verigy and Verigy's receipt of information suggesting R. Mayder had disclosed confidential information. *Id.* at Ex. A (W. Mayder Depo. Tr. at Ex. 101, 104). It stated "[y]our website at www.silicontest.com shows that you and your STS Entities have been promoting products that appear to incorporate confidential technology you worked on at Verigy." *Id*. On receipt of the second letter, R. Mayder sent W. Mayder an email requesting that he take down the website, which he did. The email stated "Take down the Web site. Verigy found the web sit [sic] and wrote us another letter." *Id.* at Ex. A (W. Mayder Depo. Tr. at Ex. 103).

**C. Procedural History**

On August 22, 2007, Verigy commenced this action against R. Mayder, W. Mayder and STS and sought a temporary restraining order ("TRO"). The complaint sets forth fourteen claims for relief: (1) Breach of Written Contract; (2) Misappropriation of Trade Secrets; (3) Violation of the Computer Fraud and Abuse Act; (4) Violation of the Electronic Communications Privacy Act; (5) Unauthorized Access to Computers, Computer Systems and Computer Data; (6) Unfair Competition under Bus. & Prof. Code § 172000 *et seq*.; (7) Common Law Unfair Competition; (8) Breach of Duty of Loyalty; (9) Violation of the Lanham Act; (10) False Advertising; (11) Intentional Interference With Prospective Economic Advantage; (12) Declaratory Relief; (13) Imposition of Constructive Trust; and (14) Unjust Enrichment. Plaintiff asserts twelve of these causes of action against all defendants and two – breach of written contract and breach of duty of loyalty – against R. Mayder only.

The Court granted the TRO on August 24, 2007 and it remained in force until replaced on February 29, 2008 by a five-month preliminary injunction. On May 22, 2008, the court found R. Mayder and STS in contempt of the preliminary injunction and the court extended it by four months.

United States District Court
For the Northern District of California

The preliminary injunction forbade R. Mayder and STS "from directly or indirectly marketing, distributing, selling, licensing, leasing, transferring or disposing of . . . Flash Enhancer, or any product developed with the use of, derived from, or incorporating all, or any part [of] Flash Enhancer." Order Granting in Part Plaintiff's Motion for a Preliminary Injunction, Docket No. 171.

## II. ANALYSIS

### A. Allegations of the Parties

Verigy alleges in its complaint that each of the defendants is and was "the agent, partner, joint venturer, employee, alter ego and/or conspirator of the remaining defendants," and is and was "in performing and failing to perform the acts and conduct hereinafter alleged, acting within the course and scope of such agency, partnership, joint venture, employment, and/or conspiracy." Compl. ¶ 7. Verigy further contends that "the acts and conduct of each of the defendants were known to, and authorized and ratified by, the remaining defendants, and that each of the defendants is legally responsible for the conduct and damages" alleged. Compl. ¶ 7. Moreover, Verigy alleges that "Romi Omar Mayder and Wesley Mayder (collectively the "Mayders") are brothers and are engaged in business together." Comp. ¶ 4.

W. Mayder has moved for summary judgment of all claims against him on the basis that Verigy has improperly named him as an individual defendant. Verigy asserts in its opposition that W. Mayder's liability is based on two theories. First, W. Mayder, as a director of STS Inc. and a member of STS LLC, is liable for any torts committed or authorized by him or harm to third parties caused by his negligence. Second, W. Mayder is jointly and severally liable for the torts committed by his brother R. Mayder based on a theory of civil conspiracy. Verigy argues that W. Mayder is not entitled to summary judgment because there are genuinely disputed issues of material fact concerning W. Mayder's involvement in the misappropriation and use of Verigy's intellectual property. Verigy essentially argues that W. Mayder's involvement can be reasonably inferred from the following facts: (1) W. Mayder agreed to become a member of STS LLC; (2) he is, or was at relevant times, a director of STS, Inc.; (3) he solicited investors for STS, Inc.; (4) he used his driver's license for a seller's permit for STS, Inc.; (5) he operated the STS, Inc. website; and (6) he was involved in the willful backdating of R. Mayder's inventor's notebook.

In addition to his motion for summary judgment, W. Mayder moves for Rule 11 sanctions, including attorney's fees and costs, because Verigy has refused to voluntarily dismiss him. In October of 2008, counsel for W. Mayder sent a letter alleging a complete lack of merit in Verigy's allegations against W. Mayder and formally requested that Verigy dismiss him. W. Mayder Decl. ¶ 18-20, Exs. D and E; Russo Decl., Ex. B. Counsel for W. Mayder noted that he would seek Rule 11 sanctions, including attorney's fees and costs, if Verigy persisted in its meritless suit. *Id.* Verigy refused to dismiss its lawsuit on W. Mayder's request. Russo Decl., Ex. C. On May 13, 2008, W. Mayder again served Verigy, through its counsel, with a formal motion as required under Rule 11, and has filed the motion given plaintiff's refusal to dismiss the action against him.

W. Mayder argues that Rule 11 sanctions are appropriate against Verigy because its claims against him are based on a purported connection between the two brothers and their respective businesses and a purported control relationship exercised by W. Mayder in the defendant STS businesses, claims that he asserts are completely false and without evidentiary support. Moreover, W. Mayder argues that Rule 11 sanctions are particularly appropriate because Verigy has been given two Rule 11 notices and two chances to dismiss him voluntarily but has refused to do so.

**B. Standard for Summary Judgment**

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* A party moving for summary judgment who does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party fails to discharge its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970). If the moving party

meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact, the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 631. However, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue of trial.' " *Matsushita*, 475 U.S. at 587 (citations omitted). When making this determination, the opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the favor of the opposing party. *Anderson*, 477 U.S. at 255.

**C. Analysis of W. Mayder's Alleged Liability**

Verigy predicates W. Mayder's liability on two theories: (1) corporate director or officer liability; and (2) liability resulting from the participation in a civil conspiracy. Opp. to W. Mayder's Mot. Summ. J. at 2: 6-12.

In *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, a case brought against former managers of a corporation who allegedly misappropriated the company's trade secrets, the court articulated the rule for director/officer liability:

> Corporate director or officer status neither immunizes a person from personal liability for tortious conduct nor subjects him or her to vicarious liability for such acts. . . . Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done.

*Id.* at 1379-80 (internal citations and quotations omitted).

**United States District Court**
For the Northern District of California

The essential question, therefore, is whether Verigy has offered evidence to support a claim that W. Mayder authorized, directed, or in some meaningful sense actively participated in the alleged misappropriation and use of Verigy's confidential or trade secret information.

Verigy argues that W. Mayder, as a director of STS, Inc. and member of STS LLC, is subject to liability based on his investment in and control of the companies and his knowledge, or reason to know, of the misappropriation of a Verigy's trade secrets. Verigy argues W. Mayder had control over the companies by his investments of $250,000 in each, and by various actions that show he is more than a mere passive investor. These actions include: the referral of Ben Francois to his brother as an investor for STS, Inc., the use of his driver's license to obtain a seller's permit for the company, the operation of a website for STS, Inc., and the recommendation of someone to help date R. Mayder's lab notebook. Gagliardi Decl., Ex. A (W. Mayder Depo. Tr. at 56:11-59:10; Ex. 92; 118:11-124:18; Exs. 97-99; 170:2-23; Ex. 104; 89:1-91:15; Ex. 7). Verigy further states that W. Mayder knew or had reason to know of his brother's misappropriation of Verigy's trade secrets prior to the lawsuit based on a pair of letters sent by Verigy to R. Mayder raising the same allegations made in the lawsuit. According to Verigy, these letters were immediately forwarded to W. Mayder, who allegedly failed to take or order appropriate action or perform an investigation. Gagliardi Decl., Ex. A (W. Mayder Depo Tr. at 132:12-136:8; 170:2-175:6; Ex. 101, Ex. 104). The only action W. Mayder allegedly took was to ask his brother's opinion of them. *Id.* Verigy argues that this behavior was negligent, objectively unreasonable and the type of behavior that should render W. Mayder liable for the misdeeds of the company under the doctrine enunciated in *Kadisha*.

The court finds that this evidence does not raise a material issue of fact as to W. Mayder's liability. Although W. Mayder's role in the companies is not entirely clear, the evidence does not show that he played an active role in, or authorized, the use of misappropriated material. Verigy has not established that he took control of the corporation and appointed personnel to run the corporation. His donation of less than $500 in web design work and the take down of the website upon R. Mayder's request, does not show control over a corporation. Neither does investing in STS, Inc. and recommending other investors. Verigy provides no evidence that W. Mayder appointed

**United States District Court**
For the Northern District of California

personnel to run the corporation or knowingly authorized or directed the use of misappropriated information.

Verigy also asserts that W. Mayder should be held liable on a conspiracy theory. In California, conspiracy is not a separate and distinct cause of action. *Entm't Research Group, Inc. v. Genesis Creative Group, Inc*., 122 F.3d 1211, 1228 (9th Cir. 1997). Rather, civil conspiracy is a legal doctrine that imposes liability on persons who, though not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). "Allegations of conspiracy add nothing whatever that is substantive to a civil complaint; their only purpose is to permit joinder as defendants of all parties who agreed to the tort, regardless of whether they directly participated in its commission." *Mox Incorporated v. Woods,* 202 Cal. 675, 677-78 (1927). By participation in a civil conspiracy, a co-conspirator effectively adopts as his or her own the torts of other co-conspirators within the ambit of the conspiracy. In this way, the co-conspirator incurs tort liability equal with the immediate tortfeasors. *Id.*

A civil conspiracy is an agreement together with an overt act to do an unlawful act or a lawful act for an unlawful purpose. To properly plead a civil conspiracy, the plaintiff must allege "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Mox*, 202 Cal. at 677. "Because civil conspiracy is so easy to allege, plaintiffs have a weighty burden to prove it. They must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it." *Choate v. County of Orange*, 86 Cal. App. 4th 312, 333 (2000). Mere knowledge or approval of an intended wrongful act is not enough; they have to cooperate or agree – expressly or tacitly – to achieve it. *Id.* "A civil conspiracy occurs when the parties have reached 'a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.' " *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1020 (1985) (citing *American Tobacco co. v. United States*, 328 U.S. 781, 809-10 (1946)).

The only allegations against W. Mayder in the complaint filed by Verigy are that he is R. Mayder's brother, that he allegedly is "engaged in business" with R. Mayder (Compl. ¶ 4), that he is and was "the agent, partner, joint venturer, employee, alter ego and/or conspirator of the remaining defendants," and that he is and was, "in performing and failing to perform the acts and conduct hereinafter alleged, acting within the course and scope of such agency, partnership, joint venture, employment, and/or conspiracy." Compl. ¶ 7. These allegations do not show a factual basis for a conspiracy.

For Verigy to show W. Mayder's involvement in a conspiracy with R. Mayder, Verigy must show (1) that W. Mayder knew that R. Mayder planned to misappropriate the trade secret; or (2) that he knew R. Mayder had misappropriated Verigy's trade secrets and agreed with him to use that wrongfully acquired information. Verigy argues that the signed LLC operating agreement shows W. Mayder's intent to engage in management of an enterprise and evidences his participation in an unlawful conspiracy, thereby exposing him to joint and several liability for his brother's actions in furtherance of the conspiracy. However, assuming that W. Mayder was active in R. Mayder's company or companies, whether he actually was or not, does not suggest a civil conspiracy without proof that he knew that the company was engaged in unlawful conduct and agreed to help the company continue to engage in that conduct. The lawful acts of signing an operating agreement and investing in R. Mayder's company do not show an intent by W. Mayder to join an unlawful enterprise. Likewise, soliciting investors, helping to obtain a seller's permit, and donating web design services to STS, without more, do not show the existence of an intent to engage or engagement in a civil conspiracy.

There are two pieces of evidence that Verigy tries to stretch to show W. Mayder's knowledge of R. Mayder's tortious acts and an agreement to conspire. First, is W. Mayder's participation in the backdating of R. Mayder's lab journal. Verigy asserts that the email from R. Mayder to W. Mayder stating "the witness will need to back date many of the pages in the notebook" gave W. Mayder knowledge of the unlawful nature of R. Mayder's request. Verigy argues that by providing the name of a potential witness W. Mayder agreed to help R. Mayder in this scheme. However, Verigy leaves out the first line of the email where R. Mayder tells W. Mayder the purpose of why he needs

United States District Court
For the Northern District of California

someone to back date the notebook. The email states: "in the event that we have patent dispute with Bob, my inventor's notebook needs to be witnessed by someone who does not stand to gain by the invention." Gagliardi Decl., Ex. A, (W. Mayder Depo. Tr. at Ex. 7). The email later states that "[i]t's just a precaution." *Id.* This email implies nothing more than W. Mayder trying to help R. Mayder prevent a patent dispute with R. Mayder's then-business partner Robert Pochowski. While circumstantial evidence may be considered it must do more than create a mere suspicion of a conspiracy. W. Mayder's actions do not suggest that he had agreed to engage in a civil conspiracy.

The second "action" allegedly taken by W. Mayder that Verigy asserts was in furtherance of the conspiracy is W. Mayder's take down of STS, Inc.'s website at his brother's request. Verigy argues that the take down of the website shows evidence of knowledge and intent based on the email sent by R. Mayder to W. Mayder. The email stated: "Verigy found the web sit [sic] and wrote us another letter." Gagliardi Decl., Ex. A (W. Mayder Depo. Tr. at Ex. 103). However, even if at this time W. Mayder had suspicion based upon Verigy's letters that R. Mayder may have been engaging in unlawful activities, nothing W. Mayder did shows participation in carrying out an unlawful act.

The evidence thus does not raise a triable issue of fact on the question of whether W. Mayder is liable for the torts of R. Mayder as a co-conspirator.

**D. Rule 11 Sanctions**

Litigants are subject to Rule 11 sanctions for, among other reasons, presenting to the court: (1) a complaint for "an improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation;" (2) "claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," (3) factual contentions that lack evidentiary support and likely will not have support after reasonable opportunity for investigation or discovery. Fed. R. Civ. P. 11(b)(1)-(3). W. Mayder contends that Rule 11 sanctions are appropriate against Verigy because its claims against him are: (1) presented for an improper purpose; (2) are not warranted by existing law; and (3) lack evidentiary support.

**1. Improper Purpose**

W. Mayder argues that Verigy's insistence on proceeding on the claims as to him are intended merely to "harass, cause unnecessary delay, or needlessly increase the cost of litigation" under Rule 11(b)(1), and that "Verigy and its counsel elected to pursue Wesley not because of any facts, any law, or any evidence; but, rather, they chose to do so (and still seek to do so) as a way to pressure and punish Wes Mayder." Def's Mot. Rule 11 Sanctions at 9:9-16; Def's Reply Mot. R. 11 Sanctions at 14:17-19. "Improper purpose" and "frivolousness" inquiries tend to overlap since the evidence bearing on whether a lawsuit or claim is frivolous will often be highly probative of purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). Complaints are generally not filed for an improper purpose if they are non-frivolous. *Id.* If the complaint is not frivolous, the plaintiff's purpose is immaterial. *Id.* at 1140. However, "[w]here there is no legal or factual basis for a claim, improper purpose may be deduced." *Paciulan v. George*, 38 F. Supp. 2d 1128, 1144 (N.D. Cal.1999) (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 833 (9th Cir.1986), *overruled on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399-405 (1990)).

**2. Legally Frivolous**

To be frivolous, a claim or pleading must have been both "legally or factually baseless from an objective perspective" and brought without a "reasonable and competent inquiry." *Intamin Ltd. v. Magnetar Technologies, Corp.*, 483 F.3d 1328, 1337 (Fed. Cir. 2007) (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990) (en banc)). An attorney has a duty prior to filing a complaint to conduct a reasonable factual investigation and perform adequate legal research to confirm whether the theoretical underpinnings of a complaint are " 'warranted by existing law or a good faith argument for an extension, modification or reversal of existing law.' " *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2000) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986)). In assessing whether the filing of a particular paper was frivolous under Rule 11, the court should not consider the ultimate failure on the merits or the subjective bad faith of the signing attorney, but rather whether the position taken was "legally unreasonable" or "without factual foundation." *Zaldivar*, 780 F.2d at 831.

Verigy's complaint and record in opposition to W. Mayder's motion for summary judgment are not legally or factually frivolous. Verigy counsel who signed the Complaint performed a pre-filing investigation as to the potential liability of W. Mayder that included: interviews with R. Mayder's supervisors at Verigy concerning the extent of R. Mayder and W. Mayder's business relationships; review of documents filed with the California Secretary of State regarding the STS Entities; review of information from the internet regarding W. Mayder's businesses; and an interview of Robert Pochowski and a review of documents provided by Pochowski. Fowler Decl. ¶ 3. The assertion of joint and several liability of W. Mayder was not unreasonable based on the pre-filling investigation by counsel and the position of W. Mayder as an individual invested in the defendant companies and the close relationship to defendant R. Mayder. Furthermore, Verigy's failure to defeat W. Mayder's motion for summary judgment based on insufficient factual evidence does not make its position "legally unreasonable" or "without factual foundation."

**3. Lacking Evidentiary Support**

The court also does not find that Verigy's claims against defendant are entirely without evidentiary support such that Rule 11 sanctions are warranted. While the court does not find that Verigy's case against W. Mayder survives a motion for summary judgment, it also does not find that Verigy's claims against W. Mayder were so devoid of support as to warrant sanctions under Rule 11. *See* discussion above. The failure to carry its burden of proof does not mean that its contentions were so devoid of evidentiary support so as to justify sanctions. The court thus concludes that Rule 11 sanctions against Verigy are not warranted.

“Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.” *Conn v. Borjorquez*, 967 F.2d 1418 (9th Cir. 1992) (citing *Operating Eng'rs Pension Trust v. A-C Company*, 859 F.2d 1336, 1345 (9th Cir.1988)). Sanctions can have an unintended detrimental impact on an attorney's career and personal well-being. *Id.* Verigy's initiation of a lawsuit against defendant and its refusal to dismiss him from the action were justified, as measured by an objective standard. Defendant's motion for sanctions is therefore denied. Plaintiff's request for reasonable attorneys' fees and costs incurred in opposing W. Mayder's Rule 11 sanctions motion is also denied.

**III. ORDER**

United States District Court
For the Northern District of California

For the reasons set forth above, the court grants defendant W. Mayder's motion for summary judgment and denies both motions for sanctions.

DATED: 11/03/08

RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Melinda Morton | mmorton@be-law.com |
| Daniel J. Bergeson | dbergeson@be-law.com |
| John W. Fowler | jfowler@be-law.com |
| Donald P. Gagliardi | dgagliardi@be-law.com |
| Michael William Stebbins | mstebbins@be-law.com |

**Counsel for Defendants:**

| | |
|---|---|
| Jack Russo | jrusso@computerlaw.com |
| Tim C. Hale | thale@computerlaw.com |
| John A.D. Kelley | jkelley@computerlaw.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 11/04/08

JAS
**Chambers of Judge Whyte**