1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  MICHAEL W. STEBBINS, Bar No. 138326
   mstebbins@be-law.com
4  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
5  San Jose, CA 95110-2712
   Telephone: (408) 291-6200
6  Facsimile: (408) 297-6000

7  Attorneys for Plaintiff
   VERIGY US, INC.
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

| | |
|---|---|
| 12  VERIGY US, INC, a Delaware Corporation, | Case No. C07 04330 RMW (HRL) |
| 13              Plaintiff, | **STIPULATED REQUEST THAT PORTIONS OF ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION BE REDACTED** |
| 14       vs. | |
| 15  ROMI OMAR MAYDER, an individual; WESLEY MAYDER, an individual; SILICON TEST SYSTEMS, INC., a California Corporation; and SILICON TEST SOLUTIONS, LLC, a California Limited Liability Corporation, inclusive, | |
| 18              Defendants. | Judge: Honorable Ronald M. Whyte<br>Ctrm: 6, 4th Fl. |
| 20 | Complaint Filed: August 22, 2007<br>Bench Trial Date: December 15, 2008 |
| 21  AND RELATED COUNTERCLAIMS | |

**STIPULATED REQUEST**

Plaintiff, Verigy US, Inc. ("Verigy"), by and through its counsel of record, Bergeson, LLP, and Defendants Romi Omar Mayder, an individual, Silicon Test Systems, Inc. a California Corporation, and Silicon Test Solutions, LLC ( collectively "Defendants") by and through their counsel of record, Russo & Hale LLP, do hereby request that the Order Granting in Part Defendants' Motion for Summary Adjudication and Denying Defendants' Motion for Modification of Preliminary Injunction be redacted as shown in the proposed redacted order which is attached hereto as Exhibit "A".  In so stipulating, (a) Defendants are not agreeing that redacted material constitutes trade secrets of Verigy; and (b) both parties reserve all of their rights under the protective order.

IT IS SO STIPULATED.

Dated:  November 11, 2008                        BERGESON, LLP


By: _____/s/_____
Colin G. McCarthy, Esq.
Attorneys for Plaintiff
VERIGY US, INC.

Dated:  November 11, 2008                        RUSSO & HALE, LLP


By: _____/s/_____
John Kelley, Esq.
Attorneys for Defendants
ROMI OMAR MAYDER, WESLEY MAYDER, SILICON TEST SYSTEMS, INC., and SILICON TEST SOLUTIONS, LLC


**ORDER**

In consideration of the foregoing stipulated request and good cause appearing therefor, IT IS SO ORDERED.

DATED: _____11/18/08_____, 2008         ___*Ronald M. Whyte*_____
                                                HONORABLE RONALD M. WHYTE
                                                U. S. DISTRICT COURT JUDGE

**EXHIBIT "A"**

**E-FILED on** 11/04/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERIGY US, INC., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>ROMI OMAR MAYDER; WESLEY MAYDER; SILICON TEST SYSTEMS, INC.; and SILICON TEST SOLUTIONS, LLC, <br><br>　　　　Defendants. | No. C-07-04330 RMW <br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION <br><br>**[Re Docket No. 261]** <br><br>**[UNREDACTED—FILED UNDER SEAL]** |

Defendants Romi Mayder ("R. Mayder"), Wesley Mayder ("W. Mayder") and Silicon Test Systems, Inc. and Silicon Test Solutions, LLC (collectively the "STS Entities") seek summary judgment on plaintiff's ninth cause of action under the Lanham Act. Defendants' motion also asks the court to modify the preliminary injunction entered against R. Mayder and the STS Entities on February 29, 2008 and extended by the court's May 22, 2008 contempt order. For the reasons set forth below, the court grants defendants' motion regarding plaintiffs' Lanham Act claim to the extent it is based upon reverse passing off by the defendants. The court denies the request to modify the extended preliminary injunction.

[UNREDACTED UNDER SEAL] ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION—No. C-07-04330 RMW
MAG

# I. BACKGROUND

## A. Procedural History

On August 24, 2007, the court granted Verigy's application for a TRO until the hearing on Verigy's motion for a preliminary injunction, which the court set for September 7, 2007. The parties stipulated to move the hearing to October 19, 2007 and then again stipulated to move the hearing to December 14, 2007, all the while keeping the TRO in effect. *See, e.g.*, Stipulation and Order, Docket Nos. 33, 86.

The TRO enjoined defendants from, among other things, "accessing, . . . disclosing, using, marketing, disseminating, . . . , making any use of, [and/or] attempting to disclose or use" (1) any of the Trade Secret Property enumerated in Exhibit A of the TRO; and (2) any product "developed with the use of, derived from, or incorporating all or any part of Verigy's Trade Secret Property." The Trade Secret Property as defined in Exhibit A to the TRO includes, in relevant part:

> Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to:
> (a)    The projects code-named: ▮▮▮▮▮▮▮▮▮▮
> (b)    The projects code-named by Mayder as Picaso and Picasso;
> . . .
> (l)    Verigy's non-public RFQs and associated documents;
> . . .
> (u)    Exhibits A and B to the Lee Declaration submitted in support of Verigy's Application for a TRO; and
> (v)    Exhibits A, B, C, D, E, and F to the Pochowski Declaration submitted in support of Verigy's Application for a TRO.

TRO, Ex. A ¶ 1. Trade Secret Property also includes:

> Inventions, designs, plans, know-how, research, techniques, proprietary or confidential information, tools, processes, software, hardware, economics and/or research and development relating to the ▮▮▮▮▮▮▮▮▮▮ filed September 28, 2006 and any provisional patent applications, patent applications or patents claiming priority to ▮▮▮▮▮▮▮▮▮▮

*Id.* ¶ 5. As discussed in further detail below, defendants themselves, as opposed to their counsel, only saw a redacted version of the TRO because Verigy designated the TRO "Highly Confidential" and thus for attorney's eyes only.

## C.    Preliminary Injunction Order

On February 29, 2008, the court entered a Preliminary Injunction Order, concluding that it was clear that Mayder had based the STS entities' original project, code named Picasso on the ▮▮▮▮▮ project he had worked on at Verigy. Preliminary Injunction Order, Docket No. 171, at 15-16. Analyzing defendants' argument that Flash Enhancer does not utilize Verigy's trade secrets, the court found that many features that defendants contended were solely related to their development efforts on behalf of Intel and directed toward Intel's unique customer requirements were present in the Picasso documentation prior to defendants receiving Intel's customer requirements in November 2006. *Id.* at 19-21. Although the court acknowledged that Flash Enhancer had some distinct features from Picasso, it stated "[t]hese features are unique, but appear to be enhancements built atop the foundation that was based originally on ▮▮▮▮▮ ▮▮▮▮▮" With respect to defendants' argument that Flash Enhancer was directed toward NOR flash memory testing while ▮▮▮▮▮ and Picasso were related to NAND flash memory testing, the court likewise concluded, ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ *Id.* at 23.

Overall, the court concluded its analysis as follows:

> Based upon the evidence before it, the court concludes that STS's ▮▮▮▮▮ product was based upon the ▮▮▮▮▮ ▮▮▮▮▮. As set forth above, Mayder admits to having used ▮▮▮▮▮. Further, he submitted the ▮▮▮▮▮ a vendor with whom he was familiar because of his work at Verigy on ▮▮▮▮▮ The misappropriation of ▮▮▮▮▮ ▮▮▮▮▮ combined with the exploitation of Verigy's ▮▮▮▮▮ resulted in defendants obtaining a head start in developing their fan-out testing solutions ▮▮▮▮▮ and Flash Enhancer.
>
> On the evidence presented, the court further concludes that Flash Enhancer, even though now directed toward testing NOR memory rather than NAND, is substantially based upon Verigy's trade secrets. It is clear that defendants' current product, Flash Enhancer, is, at the very least, ▮▮▮▮▮ ▮▮▮▮▮. It appears, however, that Flash Enhancer has some relatively significant changes from ▮▮▮▮▮, including ▮▮▮▮▮ ▮▮▮▮▮ and some features added based on customer

> requirements that were not originally collected by Verigy. Accordingly, the court cannot say that Flash Enhancer is solely an embodiment of Verigy's trade secrets. However, Flash Enhancer product clearly benefitted from the lead time that Mayder did not have to expend to get to the starting point represented ▮▮▮▮. Further, by having the customer requirements Verigy collected from ▮▮▮▮ in hand when approaching Intel and Spansion, it appears that defendants may have had an unwarranted competitive advantage. Understanding the requirements of other vendors may have permitted defendants to make a more convincing presentation to STS customers and thus win business they might not have been able to secure had they started without the information obtained from Verigy.

*Id.* at 23-24. The Preliminary Injunction Order enjoined defendants for five months from directly or indirectly marketing, distributing, selling, licensing, leasing, transferring or disposing of Picasso, Flash Enhancer or any product developed with the use of, derived from, or incorporating all or any part of Picasso or Flash Enhancer. *Id.* at 28.

**C.    Contempt Order**

Prior to the preliminary injunction hearing, Verigy moved on December 3, 2007 for an order to show cause why R. Mayder and the STS entities should not be held in contempt for violating the February 29, 2008 TRO. In its Preliminary Injunction Order, the court issued an order to show cause regarding the alleged violation of the TRO, ordering that "[d]efendants shall show cause why they should not be held in contempt for violating the court's temporary restraining order dated August 24, 2007 by continuing to use and disclose Verigy's Trade Secret information by continuing to work with Intel regarding STS's Flash Enhancer solution. *Id.* at 28.

At the hearing, defendants were represented by their prior counsel. The court found that Verigy had not presented clear and convincing evidence that defendants' interactions with Intel had occurred after the issuance of the TRO and that the access and use of an electronic copy of Exhibit A to the Lee Declaration after the litigation commenced at the offices of Chris Straube, Honeywell's sales representative, was at best a technical violation that was not sanctionable by contempt. However, the court found R. Mayder and the STS entities to be in contempt of the TRO for continuing to develop the Flash Enhancer product,[1] which the court found to be substantially based

---

[1] The court's contempt order originally stated that W. Mayder should be held in contempt along with R. Mayder and the STS entities, although Verigy did not seek to hold W. Mayder in contempt. The parties have since stipulated to correct the contempt order to exclude W. Mayder. *See* Docket No.

[UNREDACTED UNDER SEAL] ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION—No. C-07-04330 RMW MAG
4

1  upon Verigy's trade secrets because it constituted an evolution of the Picasso ASIC that was based
2  on R. Mayder's work on the ▮▮▮▮▮▮▮ project while he was employed by Verigy.  It also noted that
3  STS issued a press release entitled "US Court Denies Injunction Sought by Verigy" regarding the
4  disposition of Verigy's request for a preliminary injunction, that the court determined could not "be
5  viewed as other than as a deliberately misleading statement as to what the court ordered" and that
6  the press release "causes the court to question defendants' intent to comply with the TRO and
7  appears to be indirect marketing of STS's products."  Contempt Order, Docket No. 212 at 12.
8  Nevertheless, the court found that "the release does not directly advertise nor does it show use of
9  Verigy's confidential information" and did not find that to be the basis for imposing the contempt
10 sanction.  *Id.*  As a result of its findings, the court extended the duration of the preliminary
11 injunction by four months – from five months from February 29, 2008 to nine months from February
12 29, 2008 – as a sanction for defendants' contempt.  Following the issuance of the contempt order,
13 defendants replaced their prior counsel with their current counsel.

## II.  ANALYSIS

### A.  Verigy's Lanham Act Claim

Defendants contend that the undisputed facts establish that Verigy cannot show reverse passing off with respect to Verigy's claim for false designation of origin brought under the Lanham Act.  The Ninth Circuit "has established a rigorous test for proving 'reverse passing off' under the Lanham Act.  It is not enough that the misattributed material is 'substantially similar;' instead, there must be 'bodily appropriation.'"  *Cleary v. News Corp.*, 30 F.3d 1255, 1261 (9th Cir. 1994).  Here, although Verigy argues that defendants have "with only nominal alteration" put their name on the Verigy specification R. Mayder developed, there can be no bodily appropriation of any product.  Verigy has repeatedly acknowledged in hearings before this court that Verigy never produced a product based upon the project with which Mayder was involved while he was employed by Verigy.  Without such a product, there can be no reverse passing off within the meaning of the Lanham Act.

---

233.

In support of its reverse passing off contention, Verigy seeks to analogize the Picasso specification to an architectural plan in order to show that there has been "bodily appropriation" within the meaning of the Lanham Act. They also seek to analogize the present case to a recently decided case from the District Court for the Eastern District of California, in which the court found a sufficient Lanham Act claim was alleged where defendant had misappropriated the plaintiff's patterns, used the patterns to manufacture identical products, and stamped defendant's name on the products to pass them off as their own. *GNI Waterman LLC v. A/M Valve Company LLC*, No. CV F 07-0863 LJO TAG, 2007 WL 2669503, at *5 (E.D. Cal. Sept. 7, 2007). The court finds, however, that *GNI Waterman* is distinguishable, particularly in light of the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), in which the Supreme Court concluded that the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." The "origin" of the specification at issue refers not to the producer of any tangible good offered for sale, but of the concept of the tester embodied in the specification that Verigy has accused defendants of shopping around. Further, as discussed in the court's prior orders, it is clear that R. Mayder and STS in the development of Flash Enhancer have made more than nominal changes to the alleged trade secrets that R. Mayder is accused of misappropriating from Verigy. These changes preclude a finding of bodily appropriation as required for reverse passing off.

However, there are two prongs of § 43(a)(1): reverse passing off and false advertising. *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008) (citing *Dastar*, 539 U.S. at 31 and noting that the Supreme Court's decision in *Dastar* was limited to the first prong of 15 U.S.C. § 1125(a)(1), which concerns false designation of origin). In addition to the reverse passing off aspect of Verigy's Lanham Act claim, Verigy also asserts that defendants are falsely advertising that they have "invented a new paradigm for substantially increasing parallelism of ATE test cells," as set forth on the STS website at www.silicontests.com. Defendants have made no showing that they are entitled to summary judgment with respect to Verigy's claim for false advertising under the Lanham Act. Accordingly, the court grants summary adjudication as to Verigy's Lanham Act claim only to

1 the extent Verigy asserts to claim that defendants have engaged in reverse passing off by their sale
2 or marketing of Flash Enhancer or prior versions of the STS products.

### B.     Modification of the Preliminary Injunction Order

Defendants' motion also asks the court to modify the preliminary injunction order. As an initial matter, Verigy renews its contention that the motion to modify the preliminary injunction order is a motion for reconsideration. The court previously viewed this portion of defendants' motion was as one made under Rule 60(b). Defendants contend that modification is appropriate under Rule 60(b)(5) because under the circumstances of this case applying the preliminary injunction is "no longer equitable." Defendants also contend that modification is appropriate under Rule 60(b)(2) because of the existence of newly discovered evidence that could not with reasonable diligence have discovered in time for the preliminary injunction hearing. Subsequent to the court's ruling on Verigy's motion for clarification, the court identified a Ninth Circuit case that clearly holds that Rule 60(b) does not apply to preliminary injunctions. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) (a preliminary injunction is not a "final judgment, order, or proceeding" that may be addressed by a motion under Rule 60(b)). However, since a preliminary injunction is not a final order, the court has inherent power to modify it.

Defendants assert that there have been "significant changes in both legal and factual circumstances" that warrant revision of the preliminary injunction because these changes impact the assessment of the likelihood of success, the extent of irreparable harm, balance of hardships and changes in the public interest. First, defendants contend that this court's order in *Hologic, Inc. v. SenoRx, Inc.*, 2008 U.S. Dist. LEXIS 36693 (N.D. Cal. Apr. 25, 2008), which was issued two months after the preliminary injunction order, represents a change in law sufficient to justify the modification of the preliminary injunction order. The court disagrees. In *Hologic*, the court applied *eBay, Inc. v. MercExchange*, 547 U.S. 388 (2006), in the context of a motion for a preliminary injunction in a patent case. The court determined that the presumption of irreparable harm did not obtain in the context of a preliminary injunction. *eBay* was law at the time of the preliminary injunction; the split in courts applying *eBay* in the preliminary injunction context that was noted by

[UNREDACTED UNDER SEAL] ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION—No. C-07-04330 RMW
MAG                                                                        7

1 this court in the *Hologic* order likewise existed at the time of the preliminary injunction. The
2 *Hologic* decision does not represent a new law.

3 Defendants also contend that "[t]he volumes of evidence presented in the Dr. Blanchard
4 Decl. and the R. Mayder Decl. submitted with Defendants' moving papers" for the instant motion
5 represent "significant change in circumstances." They assert that these documents were not
6 submitted before the preliminary injunction order issued and thus constitute "a change in factual
7 conditions" sufficient to warrant the court's reconsideration of the appropriateness of the injunction.
8 Reply at 3, 6. Defendants present little argument regarding these "volumes of evidence," referring
9 instead to the Declaration of Dr. Blanchard. Dr. Blanchard's declaration contains little more than the
10 conclusory statement that the published patents and patent applications attached to his declaration as
11 exhibits B through U demonstrate that (1) "the overall concept for probe card circuit multiplexing
12 technology is publicly available or well known in the semiconductor test industry"; (2) that the
13 documents R. Mayder is alleged to have misappropriated "are all based on information that is
14 publicly available or well known in the semiconductor test industry"; (3) that the key functionalities
15 that the court determined were missing from the patent materials previously presented in support of
16 the preliminary injunction are "either (I) publicly available or well known in the semiconductor test
17 industry, (ii) readily ascertainable, or (iii) the type of information that I would expect would be
18 specified by the requirements of a particular customer of the semiconductor test industry"; and (4)
19 that daisy chain technology was well known in the industry. Blanchard Decl. ¶ 8(a)-(d). This
20 "analysis" does not explain how any of the cited references supports any of Dr. Blanchard's
21 assertions. The court does not find this evidence persuasive in light of the lack of specificity of Dr.
22 Blanchard's opinions regarding these newly-submitted documents.

23 The potentially most persuasive aspect of defendants' motion is their citation to the United
24 States Patent Application Publication No. US 2007/0247140 ("the '140 Application"). The '140
25 Application was filed by Verigy on April 24, 2006 and published on October 25, 2007. It lists R.
26 Mayder as an inventor and is titled "Apparatus, Systems and Methods for Processing Signals
27 Between a Tester and a Plurality of Devices under Test at High Temperatures and With Single
28 Touchdown of a Probe Array." Blanchard Decl., Ex. G. In his deposition, Verigy's expert, Wei

[UNREDACTED UNDER SEAL] ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION—No. C-07-04330 RMW
MAG                                           8

1 Wei, discussed the ▮▮▮

2 ▮▮▮ Decl. Wei Wei, Ex. A, 11/20/08 Dep. 92:20-22 ▮▮▮

3 ▮▮▮. Wei states that ▮▮▮

4 ▮▮▮ *Id.* at 94:25-95:17.

Although defendants' expert presents no opinion on the subject and defendants rely solely on the argument of counsel to make the point, it could certainly be that the publication of this patent application revealed some of the functionality that Verigy now claims as trade secret. At oral argument, defendants' counsel assured the court that taking the functionality described in the '140 patent and placing it on an ASIC was well-known and obvious. But attorney argument is not evidence, and, unfortunately, moving functionality to an ASIC is certainly not something that is sufficiently well-known that the court could take judicial notice of it. Without more, the court is unable to determine whether Verigy's claimed trade secret combination was revealed in its entirety in the '140 Application.

This application was published and available at the time of the preliminary injunction hearing, and, in fact, it is defendants' prior counsel who questioned Wei at his November 7, 2007 deposition about the '140 Application. Because this topic was discussed at Wei's November 2007 deposition, it is clear that this information was available to defendants at the time of the preliminary injunction and contempt hearings. Nevertheless, defendants' prior counsel did not argue that the existence of the '140 Application should have any impact on the court's rulings.

Defendants contend that only their former counsel was served with an unredacted copy of the TRO and that he failed to request that defendants (or their expert Richard Blanchard) be permitted to review an unredacted version. *See, e.g.*, Decl. Romi Mayder ("R. Mayder Decl.") ¶¶ 5-10. This, according to defendants, resulted in them having an incomplete understanding as to what actions were enjoined by the TRO. *Id.* ¶ 10. Although they did not have access to the unredacted TRO, they were apparently told by prior counsel that they could continue to develop the Flash Enhancer, as development was already in progress and the TRO was designed to preserve the status quo. *Id.* ¶ 17. This continuation of the Flash Enhancer development ultimately led the court to find them in contempt for violating a TRO that defendants claim never to have seen. Defendants claim their

unwitting violation of the TRO makes the court contempt order and its extension of the originally-issued 5-month preliminary injunction by an additional 4 months inequitable to apply going forward.

The substitution by defendants of new counsel, even assuming that prior counsel failed to raise the arguments now being made and failed to negotiate access to an unredacted version of the TRO, is not a sufficient change in factual circumstances to warrant this court's revisiting its preliminary injunction and contempt rulings.

### C.    Trade Secret Information in Published Patents or Patent Applications

Defendants seek summary adjudication "that, as a matter of law, material contained in a public patent or patent application cannot constitute trade secrets of Verigy, and that none of the information contained in the patents and patent applications submitted to the Court in connection with this Motion . . . can constitute trade secrets of Verigy." Mot. at 10. They further assert that they are "entitled to summary adjudication that (a) each of the patents or patent applications submitted by declaration on this Motion are in the public domain and (b) to the extent they contain any of Verigy's alleged trade secrets, such information cannot qualify as trade secrets in this action." *Id.* at 11. It would appear that defendants to ask the court to grant summary adjudication on a point of law that neither side disputes, without any particular application to the facts of this case. The court suspects that defendants ultimately seek to argue that the trade secrets Verigy asserts have been disclosed in patents or published patent applications. But a factual question remains as to whether Verigy's asserted trade secrets are, indeed, disclosed in any such patent or application. The court does not find this to be a matter that is appropriately the subject of summary adjudication at this time.

### III.  ORDER

For the foregoing reasons, the court dismisses Verigy's Lanham Act claim to the extent it seeks to hold defendants liable for false designation of origin for reverse passing off. Defendants' motion for summary judgment is otherwise denied. The motion to modify the preliminary injunction as extended is denied.

[UNREDACTED UNDER SEAL] ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION—No. C-07-04330 RMW MAG
10

1  An unredacted copy of this order will be publicly filed within seven (7) days of the date of
2  this order, absent a meritorious request by a party that certain portions of the order be redacted from
3  the publicly filed copy.

5  DATED:    11/03/08                          *Ronald M. Whyte*
                                                RONALD M. WHYTE
6                                               United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Melinda Morton | mmorton@be-law.com |
| Daniel J. Bergeson | dbergeson@be-law.com |
| John W. Fowler | jfowler@be-law.com |

**Counsel for Defendants:**

Jack Russo                jrusso@computerlaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**    11/04/08                                          _/s/ Ronald M. Whyte_

                                                          **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

[UNREDACTED UNDER SEAL] ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTION—No. C-07-04330 RMW MAG
12